# Exhibit 79

LSR2003.2-2-1819-1023    SKM2004.51.LSR    TfS 2004, 152

# Landsskatterettens kendelse af 19. december 2003, j.nr. 2-2-1819-1023

Aktielåneaftaler - udbyttekompensation og vederlag for låntager hhv. næringsdrivende og andre - Bindende forhåndsbesked

**Sagsnummer:** 2-2-1819-1023    **Domstol:** LSR

**Sagsnummer:** 2-2-1819-1023    **Afgørelsesdato:** 2003-12-19

Sagen vedrørte bindende forhåndsbesked vedr. ikke næringsdrivendes aktielån, dvs. standardiserede aftaler om børsnoterede aktier, hvor låntager mod vederlag modtager en post aktier som låntager herefter kan råde over. Ved aftalens udløb skal aktierne tilbageleveres til långiver. Spørgsmål 1 vedrørte situationen, hvor låntager videresælger aktierne, ikke modtager udbytte, men skal kompensere långiver for udbyttet. Det løbende vederlag og kompensationen for udbyttet skulle indgå ved opgørelsen af gevinst og tab ved arrangementet i henhold til statsskattelovens § 4 f. Spørgsmål 2 vedrørte situationen, hvor långiver ikke sælger de lånte aktier og ikke modtager udbytte. Det løbende vederlag var tab ved arrangementet som efter statsskattelovens § 4 f alene er fradragsberettiget i gevinst ved tilsvarende aftaler. Spørgsmål 3 vedrørte situationen, hvor låntager ikke videresælger aktier og oppebærer udbytte, som låntager skal kompenseres for. Udbyttet skal ikke beskattes hos låntager, da det i henhold til aftalen tilkommer långiver.

Sagen vedrørte bindende forhåndsbesked vedr. ikke næringsdrivendes aktielån, dvs. standardiserede aftaler om børsnoterede aktier, hvor låntager mod vederlag modtager en post aktier, som låntager herefter kan råde over. Ved aftalens udløb skal aktierne tilbageleveres til långiver. Spørgsmål 1 vedrørte situationen, hvor låntager videresælger aktierne, ikke modtager udbytte, men skal kompensere långiver for udbyttet. Det løbende vederlag og kompensationen for udbyttet skulle indgå ved opgørelsen af gevinst og tab ved arrangementet i henhold til statsskattelovens § 4 f. Det andet spørgsmål vedrørte situationen, hvor långiver ikke sælger de lånte aktier og ikke modtager udbytte. Det løbende vederlag var tab ved arrangementet, som efter statsskattelovens § 4 f alene er fradragsberettiget i gevinst ved tilsvarende aftaler. Tredje spørgsmål vedrørte situationen, hvor låntager ikke videresælger aktier og oppebærer udbytte, som låntager skal kompenseres for. Udbyttet skal ikke beskattes hos låntager, da det i henhold til aftalen tilkommer långiver. (Tidl. bindende forhåndsbesked i TfS 2002, 755).

## Landsskatteretten

Klagen vedrører Ligningsrådets bindende forhåndsbesked for så vidt angår besvarelsen af spørgsmålene A og C.

**Spørgsmålene til Ligningsrådet var følgende:**

**Spørgsmål 1 (ikke påklaget)**

Kan det bekræftes, at der er tale om lån og ikke realisation, hvis parterne i en aftale om lån af aktier vælger at benytte de internationalt anerkendte rammeaftaler Morgan Stanley & Co. International Limited - Overseas Securities Lender's Agreement eller Overseas Securities Lenders Association - Global Master Securities Lending Agreement, under forudsætning af, at låneaftalen omfatter børsnoterede aktier og låneperiodens varighed er fastlagt efter individuel aftale.

**Spørgsmål 2 (ikke påklaget)**

Kan det bekræftes, at et udlån af udenlandske børsnoterede aktier vil betragtes som et udlån og ikke en afståelse af aktier, såfremt aftalen indgås på vilkår svarende til "Standardvilkårene" godkendt af Ligningsrådet ved TfS 1999.408 og andre aftaler godkendt af Ligningsrådet. Ved udenlandske børsnoterede aktier skal i denne forbindelse forstås aktier noterede på markeder, der opfylder FIBV's markedsvilkår.

Spørgsmål A

Kan det bekræftes, at avanceopgørelsen for låntager, ved videresalg af de lånte aktier, foretages efter aktieavancebeskatningsloven og som én forretning i henhold til afgørelserne vedrørende baisseforretninger (Meddelelser fra Landsskatteretten 1966, nr. 13 samt TfS 1989, nr. 471).

**Spørgsmål B (ikke påklaget)**

Kan det bekræftes, at vederlaget herunder kompensation for udbytte til långiver er en fradragsberettiget driftsomkostning for næringsdrivende med aktier.

Spørgsmål C

Kan det bekræftes, at andre låntagere har fradragsret for vederlag herunder kompensation for udbytte til långiver efter følgende retningslinier:

Låntager har videresolgt aktierne og modtager derfor ikke udbytte, men skal på trods heraf kompensere långiver udbyttet:

Vederlaget inklusive kompensation for udbytte betragtes hos låntager som en omkostning og kan fratrækkes i låntagers avanceopgørelse ved aktiesalget.

    2. Låntager har ikke videresolgt aktierne har ikke modtaget udbytte.

    Udgifter til vederlag kan ikke fratrækkes.

    3. Låntager har ikke videresolgt aktierne, men modtaget udbytte:

Låntager kompenserer långiver udbyttet. Det kompenserede udbytte er en nødvendig omkostning ved erhvervelse af udbytte hos låntager, og kan derfor modregnes i det udbytte, som låntager modtager.

**Ligningsrådet besvarede spørgsmålene således:**

Ad spørgsmål 1

Ja .....

Ad spørgsmål 2

Ja ......

Ad spørgsmål A

Nej, låntager skal beregne sin avance efter statsskattelovens § 4 fra salg til genkøb. Dette gælder såvel for låntager, som har aktielån som hel eller delvis levevej, som for låntagere, der ikke har det.

Ad spørgsmål B

Der vil være en formodning for dette.

Ad spørgsmål C

Nej ....

Sagen drejer sig om den skattemæssige behandling af aktielån, forstået som standardiserede aftaler om lån af børsnoterede aktier, hvor låntager mod et vederlag og eventuelt i forbindelse med sikkerhedsstillelse modtager en given post aktier, som låntager herefter kan råde over ved f.eks. salg. Ved aftalens udløb skal aktierne tilbageleveres til långiver, eventuelt efter genkøb.

Det er oplyst, at klageren efter introduktionen af aktielånsordninger i maj 1999 ikke konstaterede den forventede låneaktivitet, hvilket skyldes, at kun aktier, der er noterede på Københavns Fondsbørs, er omfattet af standardvilkårene i den udformning, som blev godkendt af Ligningsrådet ved TfS 1999.408 (herefter standardvilkårene).

Et af formålene med de formaliserede låneordninger har været at gøre afviklingen af indgåede handler mere smidig. Danmark har normalt en velfungerende clearing og afvikling, men der er opstået flere afviklingsproblemer i takt med, at antallet af udenlandske aktører på det danske marked er vokset. Det er klagerens erfaring, at udenlandske aktører har vanskeligheder ved at levere aktier til tiden. En årsag hertil er bl.a., at de udenlandske modparter er vant til, at der eksisterer en velfungerende låneordning, som de kan benytte, hvis de ikke umiddelbart kan skaffe aktierne i markedet.

Samtidig er det konstateret, at de udenlandske modparter foretrækker internationalt anerkendte rammeaftaler, når de indgår låneforretninger. Dette kan f.eks. være Morgan Stanley & Co. International Limited - Overseas Securities Lender's Agreement (herefter benævnt OSLA) eller Overseas Securities Lenders Association - Global Master Securities Lending Agreement (herefter benævnt ISLA).

Generelt kan bemærkes om de to aftaler, at de i overensstemmelse med engelsk aftaleretlig tradition er meget detaljerede, og at de omfatter flere typer af værdipapirer. Klagerens anmodning om bindende forhåndsbesked omfatter alene aftaler om udlån af børsnoterede aktier. OSLA har altid Morgan Stanley & Co. International Limited som den ene part i aktieudlånet, mens ISLA er en rammeaftale, der kan indgås mellem vilkårlige parter.

Der er ikke i de to aftaler indarbejdet en maksimal løbetid, men begge parter kan opsige aftalen med 15 dages varsel. Standardvilkårenes pkt. 7 indeholder en maksimal løbetid på 6 måneder. Klagerens forespørgsel vedrører alene aftaler, hvor der er fastsat en endelig udløbstermin, således at parterne individuelt i den konkrete aftale har fastsat udløbsterminen for aftalen.

Det fremgår af henholdsvis OSLA pkt. 1 c og pkt. 4 B og ISLA pkt. 4.2, at ejendomsretten over aktierne overgår til låntager i forbindelse med udlånet, idet de fulde økonomiske og forvaltningsmæssige rettigheder overgår til låntager, herunder retten til at låntager kan afstå eller genudlåne aktierne til tredjemand efter overdragelsen af aktieposten. Ejendomsrettens overgang registreres i de relevante ejerregistre. Af OSLA aftalens pkt. 4 B fremgår dog, at låntager, før denne benytter sig af sine forvaltningsmæssige rettigheder, skal spørge långiver, hvordan denne ville have udøvet rettigheden og handle i overensstemmelse hermed. Långiver har samme forpligtelse for så vidt angår de rettigheder, der udspringer af værdipapirer, som er stillet til sikkerhed for det primære aktielån. Begge forpligtelser er under forudsætning af, at det rent faktisk er en af parterne i låneaftalen, der er i besiddelse af papirerne på tidspunktet for rettighedens udøvelse.

Ved de tre forskellige standardaftaler skal der betales et vederlag fra låntager til långiver for udlånet af aktierne. I OSLA og ISLA aftalerne benævnes dette vederlag "rates" og beregnes som en aftalt procentsats af den daglige

markedskurs på de udlånte aktier. Vederlaget påløber derfor som hovedregel dagligt med månedlig afregning til långiver, jf. OSLA pkt. 5 og ISLA pkt. 7. Ifølge ISLA skal der endvidere beregnes en rente af det kontantbeløb, som låntager - hvis dette er aftalt - har overført til långiver til sikkerhed for aftalen. Skyldigt vederlag for lånet kan modregnes i renten på sikkerhedsstillelsen. Ifølge standardvilkårene beregnes vederlaget på baggrund af den aftalte løbetid og aktiernes kursværdi og forfalder ved lånetidens udløb, jf. standardvilkårenes pkt. 11.

For så vidt angår udbytte, der udbetales til de udlånte aktier i udlånsperioden, bestemmer standardvilkårenes pkt. 8. 1, at udbyttet skal tilfalde låntager, hvis det forfalder i lånets løbetid, dog skal udbyttet afregnes til långiver, uanset om låntager på forfaldstidspunktet er i besiddelse af aktierne eller har videresolgt disse. Der tages ikke stilling til "frugter" af en eventuel sikkerhedsstillelse.

Ifølge OSLA pkt. 4 B i skal låntager afregne indkomster fra de udlånte værdipapirer til långiver, såfremt en sådan indkomst forfalder i lånets løbetid. Af pkt. 5 B kan det udledes, at eventuelle indtægter af sikkerhedsstillelsen, som måtte modtages af långiver, fordi vedkommende er i besiddelse af aktivet, skal overføres til låntager. Tilsvarende forpligtes både låntager og långiver efter ISLA pkt. 4 til at afregne indkomst, der forfalder af henholdsvis udlånte aktier og kontante beløb eller værdipapirer, der er stillet til sikkerhed for de lånte aktier.

Efter alle tre aftaler overgår retten til at modtage udbytte fra de udlånte aktier til låntager, men samtidig har låntager en forpligtelse til at udbetale et tilsvarende beløb til långiver, uanset om låntager rent faktisk er i besiddelse af aktierne og dermed modtager udbyttebeløbet.

Efter standardvilkårene kan långiver forlange, at låntager stiller sikkerhed for tilbagelevering af aktier og for de øvrige forpligtelser, idet det i øvrigt overlades til parterne at aftale størrelsen og karakteren af denne sikkerhed. Efter OSLA pkt. 6 A skal sikkerhedsstillelse ske ved en overførsel af enten kontanter eller værdipapirer til långiver, der opnår samme rettigheder over sikkerhedsstillelsen, som låntager opnår over de udlånte aktier. Beløbet skal løbende reguleres efter værdien af de udlånte aktier, jf. pkt. 6 H. Ifølge ISLA pkt. 5 stilles sikkerhed ved overførsel af kontantbeløb eller værdipapirer til långiver, idet låntager ved overførslen kan overdrage den fulde ejendomsret til det aktiv, der stilles til sikkerhed for aftalen, til långiver.

Når den aftalte låneperiode er udløbet og låntager ikke som aftalt leverer de lånte papirer tilbage, kan långiver i henhold til de danske standardvilkårs pkt. 13.2, umiddelbart foretage dækningskøb, hvorefter långivers krav mod låntager skifter til at være en pengefordring. I samme situation giver OSLA pkt. 7 C og D långiver valget mellem at forlænge lånet eller at foretage dækningskøb. Dækningskøb kan dog først foretages, når låntager har fået meddelelse om, at långiver vil foretage et sådant på hans regning. Ifølge ISLA pkt. 9.1 og 2 kan begge parter foretage dækningskøb af de værdipapirer, der ikke aftalemæssigt leveres tilbage til parten.

**Spørgsmål A:**

Ligningsrådet er af den opfattelse, at låntager skal beregne avancen fra salg til genkøb efter statsskattelovens § 4 f, og at dette gælder såvel for låntagere, som har aktielån som hel eller delvis levevej, som for låntagere, der ikke har det. Dette indebærer, at låntagere, der er næringsdrivende skal medregne gevinster og har fradrag for tab, medens øvrige låntagere skal medregne gevinster og ikke har fradrag for tab.

Det er til støtte herfor bl.a. anført, at formueændringer, der skyldes værdistigninger eller fald på skatteyderens ejendele, som udgangspunkt er indkomstopgørelsen uvedkommende, jf. statsskattelovens § 5 a. Al lovgivning, der gør avance eller tab på aktiver i skatteyderens besiddelse skattepligtig eller fradragsberettiget er derfor undtagelser til denne hovedregel. Dette principielle udgangspunkt er dog - som skatteretten har udviklet sig - mere teoretisk end praktisk. Avancebeskatningen er således i sin natur beskatning af værdistigninger på ejendele, der opstår i den tid, skatteyderen har disse i sin besiddelse. Når avancebeskatningen har dette indhold, kan man derfor ikke tale om gevinst eller tab ved ikke at eje et aktiv. Der er i så fald ikke tale om en værdiændring af skatteyderens formue, men derimod om værdiændring på andre personers ejendele. Også aktieavancebeskatningsloven er baseret på beskatning af værdistigninger og fald på aktier i besiddelsestiden. Dette fremgår af såvel ordvalg og systematik i

den gældende lov, som af forarbejderne til både den første vedtagne aktieavancebeskatningslov som også de forudgående bestemmelser i lov om særlig indkomstskat af 11.6.1960. Aktieavancebeskatningsloven anvendes ikke nødvendigvis, når blot der er tale om en gevinst eller et tab, der følger af 2 modsatrettede aktiehandler. Der skal være tale om en avance eller et tab, der fremkommer ved, at aktierne i ejerens besiddelsestid mellem en erhvervelse og en afståelse har været udsat for kursstigning eller kursfald. Der er uden tvivl ikke i forbindelse med udarbejdelse af reglerne om beskatning af aktieavancer tænkt på en situation som den foreliggende, men loven er udarbejdet med traditionelle haussegevinster for øje. Ikke desto mindre er det Ligningsrådets opfattelse, at lovens ordlyd og systematik er bygget op på en sådan måde, at loven ikke hjemler, at gevinst fra salg til genkøb beskattes direkte. Låntager i en aktielånsordning kan derfor ikke opgøre sin avance efter reglerne i aktieavancebeskatningsloven.

Ligningsrådet har med samme begrundelse afvist at statsskattelovens § 5 a kan anses at indeholde hjemmel til beskatning, såfremt aktieavancebeskatningsloven ikke kan anses at finde anvendelse. Også denne bestemmelse forudsætter en avance i den periode, hvor det pågældende aktiv er ejet af den skattepligtige.

Ligningsrådet er derimod af den opfattelse, at den genvist eller det tab, der opstår, når lånte aktier sælges og tilbagekøbes, skal beskattes efter reglerne i statsskatteloven i lighed med tidligere praksis for beskatning af finansielle instrumenter. Dette medfører, at skattepligtige, der har det som hel eller delvis led i deres næringsvej at lån aktier med baisseforretninger for øje, beskattes af gevinst og har fradrag for tab efter statsskattelovens § 4 a. For øvrige skattepligtige gælder, at det er skattepligtige af gevinster efter statsskattelovens § 4 f, jf. TfS 1998.625 H. Selvom en skatteyder måtte været lagerbeskattet af visse aktier omfattede af aktieavancebeskatningsloven, skal en opgørelse af gevinst og tab efter statsskatteloven først ske, når forretningen er afsluttet. På dette tidspunkt kan det afgøres, om aftalen er gennemført efter sit indhold eller misligholdt.

Klagerens advokat har nedlagt påstand om, at den bindende forhåndsbesked ændres, principalt således at beskatning af gevinst og tab ved låntagers videresalg og genkøb af lånte aktier (låntagers baisseforretning) skal ske efter aktieavancebeskatningslovens regler. Hvis Landsskatteretten tiltræder Ligningsrådets opfattelse, at der ikke er hjemmel til at beskatte gevinst og tab ved låntagers videresalg og genkøb af de lånte aktier efter aktiebeskatningslovens regler har hun subsidiært gjort gældende, at beskatning skal ske efter reglerne i statsskattelovens § 5 a, herunder reglerne for ikke-næringsdrivende om spekulation.

Hun har til støtte for den principale påstand bl.a. anført, at der er hjemmel i aktieavancebeskatningslovens § 4 til beskatning af låntageres gevinst og tab ved salg og genkøb af de lånte aktier, og at det vil være besynderligt, hvis køb og salg af aktier som led i et aktielån skulle behandles som "lotterispil samt andet spil og væddemål", jf. statsskatteloven § 4 f. Når salg og genkøb af aktier som led i aktielån skal indpasses i lovgivningen, er det mest nærliggende at beskatte efter aktieavancebeskatningsloven, enten direkte eller ved analog eller parallel anvendelse af loven, der udtømmende gør op med beskatningen ved køb og salg af aktier. Det forhold, at aktieavancebeskatningsloven opfattes som udtømmende, lægger ikke op til en indskrænkende fortolkning af loven. Det er helt åbenbart, at disse køb og salg af aktier har langt mere lighed med andre køb og salg af aktier, der omfattes af aktieavancebeskatningsloven, end de har med statsskattelovens § 4 og væddemålsbestemmelsen. Det gælder, uanset om aktieavancebeskatningsloven umiddelbart vedrører det typetilfælde, at der erhverves aktier, der efterfølgende afstås. Det bemærkes, at der er tale om egentlige salg og køb, hvor pengestrømmene følger dispositionerne, ikke terminsforretninger, der ikke forudsætter konkrete handler og som typisk differenceafregnes. Aktielån må vurderes som en helhed og som en samlet transaktion, bestående i lån, salg, genkøb og tilbagelevering af de lånte aktier. Erhvervelsen af aktierne sker ved lånet, gevinst-/tabsrisiko opstår ved det efterfølgende salg, og størrelsen heraf konstateres ved genkøbet af aktierne.

Hun har subsidiært gjort gældende, at beskatningen skal ske efter statsskatteloven § 5a, hvis det er statsskatteloven og ikke aktieavancebeskatningsloven, der finder anvendelse.

**Landsskatteretten udtaler:**

Indledningsvis bemærkes det, at Ligningsrådet ved besvarelsen af spørgsmålene 1 og 2 bekræftede, at der er tale om lån og ikke realisation ved de omhandlede aftaler om aktielån. Disse spørgsmål er ikke påklaget til Landsskatteretten, og denne opfattelse må derfor lægges til grund ved besvarelsen af **spørgsmål A**.

Det må videre lægges til grund, at den bindende forhåndsbesked alene vedrører de tilfælde, hvor enten der rent faktisk sker salg og efterfølgende køb af aktierne eller hvor låntager beholder aktierne i hele perioden, og ikke de tilfælde, hvor aftalen misligholdes. Samtidig må det lægges til grund, at låntager ikke er næringsdrivende med handel med aktier. Endelig må det anses for ubestridt, at låntagers tab eller gevinst skal opgøres med udgangspunkt i differencen mellem afståelsessummen ved salget af aktierne og købesummen ved genkøbet af aktierne.

Ifølge aktieavancebeskatningslovens § 1, stk. 2, omfatter loven fortjeneste eller tab ved afståelse af aktier, afståelse af tegningsret til aktier samt afståelse af aktieretter.

Loven er indrettet således, at der for så vidt angår ikke-næringsdrivende sondres mellem på den ene side de tilfælde, hvor erhvervelsen af aktier sker på et tidspunkt, der ligger mindre end 3 år før afståelsen (§ 2), og på den anden side de tilfælde, hvor erhvervelsen sker mere end 3 år før afståelsen (§ 4). Reglerne om opgørelse af avance eller tab findes i § 5 og § 6, der begge indledes med udtrykket fortjeneste eller tab "ved afståelse af aktier".

Aktieavancebeskatningsloven antager således som sit udgangspunkt, at fortjeneste eller tab konstateres ved erhvervelse og efterfølgende afståelse af aktier. Ved aktielån konstateres fortjeneste eller tab ved afståelse og efterfølgende generhvervelse af aktier.

Landsskatteretten finder, at fortjeneste eller tab ved salg og køb af aktier som led i en aftale om aktielån ikke kan anses for omfattet af aktieavancebeskatningsloven. Dette skyldes, at gevinst og tab ved en sådan transaktion ikke knytter sig til låntagers besiddelse af aktierne, men til den periode, hvor låntager ikke ejer aktierne og til selve aftalen om aktielånet. Denne konstruktion er ikke omfattet af aktieavancebeskatningsloven, der efter sin ordlyd og systematik omfatter gevinst eller tab ved afståelse af aktier, tegningsretter og aktieretter og forudsætter, at gevinsten eller tabet er konstateret ved erhvervelse og efterfølgende afståelse af aktierne. Det er derfor en forudsætning for anvendelse af denne lov, at fortjeneste eller tab dels konstateres ved afståelse, dels knytter sig til den periode, hvor skatteyderen har været ejer af aktierne.

Aftalen om aktielån kan heller ikke anses for omfattet af statsskattelovens § 5 a, idet denne lovbestemmelse omhandler indtægt ved salg af den skattepligtiges ejendele, hvorfor en indtægt konstateret ved tilbagekøb af aktier ikke er omfattet.

Retten finder derimod, at gevinst og tab ved sådanne aktielånsordninger må anses for omfattet af statsskattelovens § 4 f. Dette indebærer, at nettogevinsten er skattepligtig, mens tab ikke vil være fradragsberettigede.

Retten kan således tiltræde Ligningsrådets besvarelse af spørgsmål A, og den bindende forhåndsbesked stadfæstes på dette punkt.

**Spørgsmål C:**

Ligningsrådet finder, at vederlag og kompensation for udbytte er omkostninger af en karakter, der er avanceopgørelsen uvedkommende. Ligningsrådet er af den opfattelse, at der ikke skal sondres mellem situationer, hvor aktierne er solgt, og de situationer, hvor låntager har aktierne i behold. Vederlag og udbyttekompensation kvalificeres uafhængigt af, om låntager besidder aktierne og dermed modtager udbytte fra selskabet eller ej. Afgørende for muligheden for at tillægge omkostninger til anskaffelsessummen på en aktiepost er, om det er en omkostning, der relaterer sig til gennemførelsen af handelen. Låntager i et aktielån modtager en aktiepost. Eventuelle transaktionsomkostninger vil kunne tillægges en anskaffelsessum på aktierne, såfremt de medgår til

erhvervelse af denne post. Vederlag og kompensation for udbytte må dog anses som en integreret del af selve låneaftalen og ikke en omkostning i forbindelse med erhvervelse af aktierne. Der kan eksempelvis indtræde misligholdelsesbeføjelser for aftalen som sådan, såfremt beløbene ikke betales. Omkostningerne er derfor heller ikke en omkostning i forbindelse med salg og genkøb af aktieposten eller en del af denne på et senere tidspunkt. Omkostningerne er derfor også genanskaffelsessummen uvedkommende. Dette kommer bl.a. til udtryk ved, at udgiften afholdes uafhængigt af, om hele den lånte aktiepost sælges og genanskaffes, om ingen af de lånte aktier videresælges eller som en tredje mulighed, at kun en del af posten afstås og genanskaffes. Omkostningerne er altså uafhængige af, om aktierne sælges og genkøbes.

Advokaten har nedlagt påstand om ændring af Ligningsrådets besvarelse af dette spørgsmål. Hun har til støtte herfor gjort gældende, at det fastholdes, at ikke-erhvervsdrivende låntagere bør beskattes efter ABL § 2. Ved beskatning efter disse regler fastholdes det, at vederlag for aktielånet til långiver kan fratrækkes i låntagers avanceopgørelse ved aktiesalget. Det samme gælder for det kompenserende udbytte, der er betalt til långiver. Hvis de lånte aktier ikke er videresolgt, og låntager har oppebåret udbytte, som videregives til långiver, kan det betalte udbytte skattemæssigt modregnes i det udbytte, som låntager oppebærer. Hun kan således ikke tiltræde Ligningsrådets synspunkt, at der er tale om en omkostning, der ikke relaterer sig til gennemførslen af handlen. Aktielån er en samlet transaktion, og de udgifter, der er afholdt til vederlag og udbytte til långiver, er omkostninger, der afholdes for at erhverve gevinsten ved salg og genkøb af aktier, det vil sige gevinsten ved baisseforretningen. Aktielånet kan ikke splittes op i enkelte bestanddele.

Hvis låntager oppebærer udbytte på de lånte aktier (som altså ikke er solgt på det tidspunkt, hvor der deklareres udbytte) og i overensstemmelse med aftalen afgiver dette udbytte til långiver, har låntager ikke erhvervet nogen indkomst, der er skattepligtig. Det er et grundvilkår for beskatning af al indkomst, at der er erhvervet en indtægt. Hvis aktielån henføres under statsskattelovens § 4, må sædvanlig praksis for fradrag af ikke-erhvervsmæssigt anvendte udgifter gælde. For ikke-erhvervsmæssig virksomhed, der beskattes efter statsskattelovens § 4, er indtægter skattepligtig indkomst. Udgifter, der er afholdt med henblik på at erhverve indtægter ved ikke-erhvervsmæssig virksomhed, fradrages disse indtægter efter et nettoindkomstprincip, jf. Redegørelse fra Skatteretsrådet, april 2001: "Notat om indkomstopgørelsen i ikke-erhvervsmæssig virksomhed." I dette notat antages det videre, at underskud ved, at en ikke-erhvervsmæssig virksomheds omkostninger er større end virksomhedens indtægter, ikke kan fratrækkes ved årets samlede indkomstopgørelse og heller ikke fremføres til modregning i senere års overskud fra ikke-erhvervsmæssig virksomhed. Denne praksis modificeres dog, såfremt der kan konstateres en direkte sammenhæng mellem udgifter, der kan indeholdes i årets underskud, og indtægter, erhvervet i senere år. Disse udgifter vil formentlig kunne fremføres til modregning i de sammenhængende indtægter. Det gøres i overensstemmelse hermed gældende, at låntager ikke skal beskattes af det udbytte, som han modtager for lånte aktier og efter kontrakten afgiver til långiver. Låntager har ikke herved erhvervet nogen skattepligtig indkomst. Det gøres videre gældende, at alle udgifter, som låntager afholder, fratrækkes i en eventuel gevinst ved salg og genkøb af de lånte aktier og i andre indtægter, som låntager måtte oppebære, eksempelvis ved udbytte på de lånte aktier. Det gælder ikke kun aktieafgift, købs- og salgsprovisioner samt eventuelle advokat- og revisorudgifter, men også afgivelse af ikke-oppebåret udbytte til långiver i tilfælde, hvor aktiernes sælges før og genkøbes efter generalforsamlingen, og de omkostninger, der betales til långiver som vederlag for aktielånet. Det gøres videre gældende, at tab på aktielåneforretninger kan fratrækkes i gevinst på andre aktielåneaftaler, hvis beskatning skal ske efter statsskattelovens § 4.

**Landsskatteretten udtaler:**

Det må lægges til grund, at spørgsmål C alene drejer sig om de skattemæssige forhold for personer eller selskaber, der ikke er næringsdrivende med aktier.

Den første del af spørgsmålet vedrører den situation, hvor låntager har videresolgt aktierne, ikke modtager udbytte, men skal kompensere långiver for udbyttet. Det løbende vederlag og det beløb, der er betalt til långiver som kompensation for udbyttet, har en sådan direkte forbindelse til aftalen om aktielån, at udgifterne skal indgå ved

opgørelsen af låntagers gevinst eller tab ved salg og køb af aktierne efter reglerne i statsskattelovens § 4 f. Besvarelsen af denne del af spørgsmålet skal derfor ændres til en bekræftelse.

Den anden del af spørgsmålet drejer sig om de tilfælde, hvor låntager ikke sælger de lånte aktier og ikke modtager udbytte i låneperioden. Låntager kan ikke have konstateret en gevinst ved låneaftalen, da han ikke har solgt eller genkøbt aktierne. Udgifterne til vederlaget for at låne aktierne udgør derfor hans tab ved aftalen, og dette tab er efter statsskattelovens § 4 f ikke fradragsberettiget ved opgørelsen af den skattepligtige indkomst, men alene i eventuelle andre gevinster ved tilsvarende aftaler i samme år. Besvarelsen af denne del af spørgsmål vil med denne begrundelse være at ændre til en bekræftelse.

I den tredje situation har låntager ikke videresolgt aktierne, men har i låneperioden modtaget udbytte, som han skal kompensere långiver for. Da låntager ikke er blevet ejer af aktierne i kraft af låneaftalen eller på anden måde, er han ikke skattepligtig af udbyttet, der tilkommer långiver i henhold til de indgåede aftaler. Dette har skattemæssigt samme effekt som modregning, og uanset formuleringen af denne del af spørgsmålet, kan besvarelsen af denne del af spørgsmålet derfor ændres til en bekræftelse.

Den bindende forhåndsbesked vil således for så vidt angår spørgsmål C samlet være at ændre til et Ja.

| LSR2003.2-2-1819-1023 | SKM2004.51.LSR | TfS 2004, 152 |

# Order of the National Tax Tribunal of 19 December 2003, j.no. 2-2-1819-1023

Share loan agreements - dividend compensation and consideration for the borrower, respectively. traders and others - Binding advance notice

**Case number:** 2-2-1819-1023           **Court:** LSR

**Case number:** 2-2-1819-1023           **Decision date:** 19 Dec 2003

The case concerned a binding advance notice regarding non-traders' share loans, i.e. standardized agreements on listed shares, where the borrower receives a post of shares for consideration which the borrower can then dispose of. At the end of the agreement, the shares must be returned to the lender. Question 1 concerned the situation where the borrower resells the shares, does not receive dividends, but must compensate the lender for the dividends. The current remuneration and the compensation for the dividend was to be included in the calculation of gain and loss for the arrangement according to State Tax Act § 4 f. Question 2 concerned the situation where the lender does not sell the borrowed shares and does not receive dividends. The current remuneration was a loss on the event which according to the State Tax Act § 4 f is only deductible in gains on similar agreements. Question 3 concerned the situation where the borrower does not resell shares and receives dividends for which the borrower must be compensated. The borrower is not to be taxed on the dividend, as the tax is on the lender according to the agreement.

The case concerned a binding advance notice regarding non-traders' share loans, i.e. standardized agreements on listed shares, where the borrower receives a post of shares for consideration, which the borrower can then dispose of. At the end of the agreement, the shares must be returned to the lender. Question 1 concerned the situation where the borrower resells the shares, does not receive dividends, but must compensate the lender for the dividends. The current remuneration and the compensation for the dividend was to be included in the calculation of gain and loss for the arrangement according to State Tax Act § 4 f. The second question concerned the situation where the lender does not sell the borrowed shares and does not receive dividends. The current remuneration was a loss for the arrangement, which according to State Tax Act § 4 f alone is deductible in gains in similar agreements. The third question concerned the situation where the borrower does not resell shares and receives dividends for which the borrower must be compensated. The borrower is not to be taxed on the dividend, as the tax is on the lender according to the agreement. (Formerly binding advance notice in TfS 2002, 755).

## The National Tax Court

The complaint concerns the Tax Assessment Council's binding advance notice as regards the answer to questions A and C.

**The questions to the Tax Assessment Council were the following:**

**Question 1 (not appealed)**

Can it be confirmed that this is a loan and not a realization if the parties to an agreement on loan of shares choose to use the internationally recognized framework agreements Morgan Stanley & Co. International Limited - Overseas Securities Lender's Agreement or Overseas Securities Lenders Association - Global Master Securities Lending Agreement, provided that the loan agreement includes listed shares and the duration of the loan period is determined by individual agreement?

**Question 2 (not appealed)**

Can it be confirmed that a loan of foreign listed shares will be considered a loan and not a disposal of shares, if the agreement is entered into on terms corresponding to the "Standard Terms" approved by the Tax Assessment Council by TfS 1999.408 and other agreements approved by the Tax Assessment Council. In this context, foreign listed shares shall mean shares listed on markets that meet FIBV's market conditions.

Question A

Can it be confirmed that the profit statement for the borrower, when reselling the borrowed shares, is made in accordance with the Capital Gains Tax Act and as one transaction in accordance with the decisions concerning bearish transactions (Announcements from the National Tax Court 1966, no. 13 and TfS 1989, No. 471).

**Question B (not appealed)**

Can it be confirmed that the consideration, including compensation for dividends to the lender, is a deductible operating cost for traders with shares.

Question C

Can it be confirmed that other borrowers have a right to deduct for consideration, including compensation for dividends to the lender according to the following guidelines:

The borrower has resold the shares and therefore does not receive dividends, but must nevertheless compensate the lender for the dividend:

The consideration, including compensation for dividends, is regarded by the borrower as an expense and can be deducted from the borrower's profit statement at the sale of shares.

> 2. The borrower has not resold the shares, and the shares have not received dividends.
>
> Expenses for remuneration cannot be deducted.
>
> 3. The borrower has not resold the shares, but received dividends:

The borrower compensates the lender for the dividend. The compensated dividend is a necessary cost of acquiring dividends from the borrower, and can therefore be set off against the dividends that the borrower receives.

**The Tax Assessment Council answered the questions as follows:**

To question 1

Yes .....

To question 2

Yes ......

To question A

No, the borrower must calculate his profit according to the State Tax Act § 4 from sale to repurchase. This applies both to borrowers who have share loans as a full or partial livelihood, as well as to borrowers who do not have them.

To question B

There will be a presumption for this. To

question C

No ....

The case concerns the tax treatment of share loans, understood as standardized agreements on loans of listed shares, where the borrower for a consideration and possibly in connection with collateral receives a given item of shares, which the borrower can then dispose of by e.g. sale. At the end of the agreement, the shares must be returned to the lender, possibly after repurchase.

It is stated that the complainant after the introduction of share loan schemes in May 1999 did not establish the expected loan activity, which is due to the fact that only shares listed on the Copenhagen Stock Exchange are covered by the standard terms in the form approved by the Tax Assessment Council by TfS 1999.408 (hereinafter the standard terms).

One of the purposes of the formalized loan schemes has been to make the settlement of concluded trades smoother. Denmark usually has a well-functioning clearing and settlement, but several settlement problems have arisen as the number of foreign players in the Danish market has grown. It is the complainant's experience that foreign players have difficulty delivering shares on time. One reason for this is, among other things, that the foreign counterparties are used to the existence of a well-functioning loan scheme, which they can use if they cannot immediately acquire the shares in the market.

At the same time, it has been found that the foreign counterparties prefer internationally recognized framework agreements when entering into loan transactions. This can e.g. be Morgan Stanley & Co. International Limited - Overseas Securities Lender's Agreement (hereinafter referred to as OSLA) or Overseas Securities Lenders Association - Global Master Securities Lending Agreement (hereinafter referred to as ISLA).

In general, it can be noted about the two agreements that they are very detailed in accordance with English contract law tradition and that they include several types of securities. The complainant's request for binding prior notice only covers agreements for the lending of listed shares. OSLA always has Morgan Stanley & Co. International Limited as the one party to the share lending, while ISLA is a framework agreement that can be entered into between arbitrary parties.

The two agreements do not include a maximum term, but both parties can terminate the agreement with 15 days' notice. Clause 7 of the standard terms contains a maximum term of 6 months. The complainant's inquiry only concerns agreements where a final expiry date has been set, so that the parties have individually in the specific agreement set the expiry date for the agreement.

It appears from OSLA clause 1 c and clause 4 B and ISLA clause 4.2, respectively, that the ownership of the shares is transferred to the borrower in connection with the lending, as the full financial and administrative rights are transferred to the borrower, including the right for the borrower to waive or re-lend the shares to third parties after the transfer of the shareholding. The transfer of ownership is registered in the relevant owner registers. Clause 4 B of the OSLA agreement states, however, that the borrower, before exercising his or her administrative rights, must ask the lender how he or she would have exercised the right and act accordingly. The lender has the same obligation with respect to the rights arising from securities pledged as collateral for the primary share loan. Both obligations are subject to the condition that it is in fact one of the parties to the loan agreement who is in possession of the securities at the time the right is exercised.

In the case of the three different standard agreements, a consideration must be paid by the borrower to the lender for the lending of the shares. In the OSLA and ISLA agreements, this remuneration is called "rates" and is calculated as an agreed percentage of the daily

market price of the lent shares. The remuneration therefore accrues as a general rule daily with monthly settlement to the lender, cf. OSLA clause 5 and ISLA clause 7. According to ISLA, interest must also be calculated on the amount of cash that the borrower - if this has been agreed - has transferred to the lender as security for the agreement. Due payment for the loan can be set off against the interest on the security. According to the standard terms, the consideration is calculated on the basis of the agreed term and the market value of the shares and falls due at the end of the loan period, cf. section 11 of the standard terms.

With regard to dividends paid to the shares lent during the lending period, section 8. 1 of the standard terms stipulates that the dividend must accrue to the borrower if it falls due during the term of the loan, however, the dividend must be settled to the lender, regardless of whether the borrower is possession of the shares or has resold them. No consideration is given to the "fruits" of any collateral.

According to OSLA clause 4 B i, the borrower must settle income from the loans lent to the lender if such income falls due during the term of the loan. From point 5 B, it can be deduced that any income from the collateral that may be received by the lender because he or she is in possession of the asset must be transferred to the borrower. Similarly, both the borrower and the lender are obliged under ISLA clause 4 to settle income that falls due of lent shares and cash amounts or securities pledged as security for the borrowed shares, respectively.

Under all three agreements, the right to receive dividends from the lent shares passes to the borrower, but at the same time the borrower has an obligation to pay a corresponding amount to the lender, regardless of whether the borrower actually owns the shares and thus receives the dividend amount.

Under the standard terms, the lender may require the borrower to provide security for the return of shares and for the other obligations, as it is otherwise left to the parties to agree on the size and nature of this security. Pursuant to OSLA clause 6 A, collateral must be provided by a transfer of either cash or securities to the lender, who obtains the same rights over the collateral as the borrower obtains over the lent shares. The amount must be adjusted on an ongoing basis according to the value of the shares lent, cf. clause 6 H. According to ISLA clause 5, security is provided by transfer of cash or securities to the lender, as the borrower can transfer full ownership of the asset provided to the transfer. security of the agreement, to the lender.

When the agreed loan period has expired and the borrower does not return the borrowed securities as agreed, the lender may, in accordance with section 13.2 of the Danish standard terms, immediately make cover purchases, after which the lender's claim against the borrower changes to a monetary claim. In the same situation, OSLA clauses 7 C and D give the lender the choice between extending the loan or making cover purchases. However, cover purchases can only be made when the borrower has been notified that the lender will make such on his account. According to ISLA clauses 9.1 and 2, both parties may make cover purchases of the securities that are not returned to the party in accordance with the agreement.

**Question A:**

The Tax Assessment Council is of the opinion that the borrower must calculate the profit from sale to repurchase in accordance with the State Tax Act § 4 f, and that this applies both to borrowers who have equity loans as a full or partial subsistence, as well as to borrowers who do not have it. This means that borrowers who are self-employed must include gains and have a deduction for losses, while other borrowers must include gains and have no deduction for losses.

In support of this, it is stated that changes in assets due to increases in value or decrease in the taxpayer's assets are, as a rule, irrelevant to the income statement, cf. the State Tax Act § 5 a. All legislation that makes gains or losses on assets in the taxpayer's possession taxable or deductible are therefore exceptions to this general rule. However, this principled starting point is - as tax law has developed - more theoretical than practical. The capital gains taxation is thus by its nature taxation of increases in value of assets that occur during the time the taxpayer has these in his possession. When capital gains tax has this content, one can therefore not talk about gain or loss by not owning an asset. In that case, it is not a question of a change in the value of the taxpayer's assets, but rather a change in the value of other persons' property. Also the Capital Gains Tax Act is based on taxation of increases in value and decreases in shares during the holding period. This is evident from both word choice and systematics in

the applicable law, as by the preparatory work for both the first adopted share capital gains taxation law as well as the preceding provisions of the law on special income tax of 06/11/1960. The Capital Gains Tax Act does not necessarily apply as long as it is a gain or loss resulting from 2 opposing share trades. There must be a gain or loss arising from the fact that the shares during the owner's holding period between an acquisition and a divestment have been exposed to a rise in price or a fall in price. There is no doubt that in connection with the preparation of the rules on taxation of share gains, a situation such as the present has not been considered, but the law has been prepared with traditional capital gains in mind. Nevertheless, the Tax Assessment Council is of the opinion that the wording and systematics of the Act are structured in such a way that the Act does not authorize the gains from sales to repurchases be taxed directly. A borrower in a share loan scheme can therefore not calculate his profit according to the rules in the Capital Gains Tax Act.

For the same reason, the Tax Assessment Council has rejected that the State Tax Act § 5 a can be considered to contain a legal basis for taxation if the Capital Gains Tax Act cannot be considered applicable. This provision also presupposes a profit during the period in which the asset in question is owned by the taxpayer.

The Tax Assessment Council, on the other hand, is of the opinion that the repatriated or the loss that occurs when borrowed shares are sold and repurchased must be taxed in accordance with the rules in the State Tax Act similar to previous practices for the taxation of financial instruments. This means that taxpayers who have it as a full or partial part of their business to borrow shares with bearish transactions in mind are taxed on gains and have a deduction for losses according to the State Tax Act § 4 a . For other taxpayers, it is taxable on gains according to the State Tax Act § 4 f , cf. TfS 1998.625 H. Although a taxpayer may have been taxed on stock of certain shares covered by Capital Gains Tax Act, a statement of gains and losses under the State Tax Act must first be made, when the business is completed. At this point, it can be determined whether the agreement has been implemented according to its content or breached.

The complainant's lawyer has filed a claim that the binding prior notice be amended, in principle so that taxation of gains and losses on the borrower's resale and repurchase of borrowed shares (borrower's down payment business) must take place in accordance with the Capital Gains Tax Act rules . If the National Tax Court agrees with the Tax Assessment Council's view that there is no legal basis for taxing gains and losses on the borrower's resale and repurchase of the borrowed shares in accordance with the rules of the Share Taxation Act, she has in the alternative argued that taxation must be in accordance with the rules of the State Tax Act § 5 a , including the rules for non-traders on speculation.

In support of the principal claim, she has, among other things, stated that there is a legal basis in the Capital Gains Taxation Act § 4 for taxation of borrowers' gains and losses on the sale and repurchase of the borrowed shares, and that it would be strange if the purchase and sale of shares as part of a share loan were to be treated as "lottery games and other games and bets", cf. the State Tax Act § 4 f. When the sale and repurchase of shares as part of share loans is to be incorporated into the legislation, it is most obvious to tax according to the   Capital Gains Tax Act  , either directly or by analogous or parallel application of the Act, which makes exhaustive up with the taxation on the purchase and sale of shares. The fact that the Capital Gains Tax Act is perceived as exhaustive does not call for a restrictive interpretation of the Act. It is quite obvious that these purchases and sales of shares are far more similar to other purchases and sales of shares covered by the Capital Gains Tax Act, than they have with State Tax Act § 4 and the betting provision.
This applies regardless of whether the Capital Gains Tax Act directly relates to the type of case that shares are acquired which are subsequently disposed of. It is noted that these are actual sales and purchases, where the cash flows follow the dispositions, not futures transactions that do not require specific trades and which are typically settled by difference. Share loans must be assessed as a whole and as a total transaction, consisting of loans, sales, repurchases and repayment of the borrowed shares. The shares are acquired on the loan, the gain/loss risk arises from the subsequent sale, and the size of this is determined by the repurchase of the shares.

In the alternative, she has argued that taxation must take place in accordance with the State Tax Act § 5a, if it is the State Tax Act and not the Capital Gains Tax Act, which applies.

**The National Tax Court states:**

Initially, it is noted that the Tax Assessment Council, in answering questions 1 and 2, confirmed that these are loans and not realization of the agreements on share loans in question. These questions have not been appealed to the National Tax Tribunal, and this view must therefore be taken into account when answering **question A.**

It must also be assumed that the binding advance notice only relates to cases where either the actual sale and subsequent purchase of the shares takes place or where the borrower retains the shares for the entire period, and not the cases where the agreement is breached. At the same time, it must be assumed that the borrower is not a trader in trading in shares. Finally, it must be considered undisputed that the borrower's loss or gain must be calculated on the basis of the difference between the surrender price on the sale of the shares and the purchase price on the repurchase of the shares.

According to the Capital Gains Taxation Act, § 1, para. 2, the law includes gain or loss on disposal of shares, disposal of pre-emptive rights to shares and disposal of share rights.

The Act is designed in such a way that, with regard to non-traders, a distinction is made between, on the one hand, the cases where the acquisition of shares takes place at a time less than 3 years before the disposal (§ 2), and on the other hand the cases where the acquisition takes place more than 3 years before the disposal (§ 4). The rules on the calculation of profit or loss are found in § 5 and § 6, both of which begin with the term profit or loss "on disposal of shares".

The Capital Gains Tax Act thus assumes as its starting point that gains or losses are established by acquisition and subsequent disposal of shares. In the case of share loans, gains or losses are established on the disposal and subsequent repurchase of shares.

The National Tax Court finds that gains or losses on the sale and purchase of shares as part of an agreement on share loans cannot be considered covered by the Capital Gains Tax Act. This is because the gain and loss on such a transaction is not related to the borrower's holding of the shares, but to the period in which the borrower does not own the shares and to the actual agreement on the share loan. This construction is not covered by the Capital Gains Tax Act, which according to its wording and systematics includes gain or loss on disposal of shares, subscription rights and share rights and presupposes that the gain or loss is ascertained by acquisition and subsequent disposal of the shares. It is therefore a prerequisite for the application of this Act that profits or losses are partly established by divestment and partly linked to the period in which the taxpayer has been the owner of the shares.

The agreement on share loans can also not be considered covered by the State Tax Act §5 a, as this statutory provision deals with income from the sale of the taxpayer's assets, for which reason an income found on the repurchase of shares is not covered.

On the other hand, the court finds that gains and losses from such share loan schemes must be regarded as covered by section the State Tax Act § 4 f. This means that the net gain is taxable, while losses will not be deductible.

The court can thus agree with the Tax Assessment Council's answer to question A, and the binding advance notice is confirmed on this point.

**Question C:**

The Tax Assessment Council finds that remuneration and compensation for dividends are costs of a nature that is irrelevant to the profit statement. The Tax Assessment Council is of the opinion that no distinction should be made between situations where the shares have been sold and the situations where the borrower retains the shares. Remuneration and dividend compensation are qualified regardless of whether the borrower owns the shares and thus receives dividends from the company or not. Decisive for the possibility of adding costs to the acquisition cost of a shareholding is whether it is a cost that relates to the completion of the trade. The borrower in a share loan receives a shareholding. Any transaction costs may be added to the acquisition cost of the shares if they are included in the

acquisition of this item. Remuneration and compensation for dividends must, however, be regarded as an integral part of the loan agreement itself and not a cost in connection with the acquisition of the shares. For example, default rights may arise for the agreement as such if the amounts are not paid. The costs are therefore also not a cost in connection with the sale and repurchase of the shareholding or part of it at a later date. The costs are therefore also irrelevant to the replacement cost. This is expressed by that the expense is incurred regardless of whether the entire borrowed shareholding is sold and repurchased, whether none of the borrowed shares are resold or, as a third option, that only part of the item is divested and repurchased. The costs are therefore independent of whether the shares are sold and repurchased.

The lawyer has filed a motion to change the Tax Assessment Council's answer to this question. In support of this, she argues that it is maintained that non-business borrowers should be taxed under ABL § 2. When taxing according to these rules, it is maintained that consideration for the share loan to the lender can be deducted from the borrower's profit statement at the sale of the shares. The same applies to the compensatory dividend paid to the lender. If the borrowed shares have not been resold and the borrower has received dividends, which are passed on to the lender, the dividends paid can be offset for tax purposes in the dividends that the borrower receives. She can thus not agree with the Tax Assessment Council's view that this is a cost that does not relate to the implementation of the transaction.
Share loans are a total transaction, and the expenses incurred for remuneration and dividends to the lender are costs incurred to acquire the gain on the sale and repurchase of shares, i.e. the gain on the down payment. The share loan cannot be divided into individual components.

If the borrower receives dividends on the borrowed shares (which are not sold at the time when dividends are declared) and in accordance with the agreement pays this dividend to the lender, the borrower has not acquired any income that is taxable. It is a basic condition of taxation of all income that an income has been acquired. If share loans are classified under the State Tax Act § 4, the customary practice for deduction of non-business expenses must apply. For non-business activities taxed under the State Tax Act § 4,, income is taxable income. Expenses incurred with a view to acquiring income from non-commercial activities are deducted from this income according to a net income principle, cf. Statement from the Tax Law Council, April 2001: "Note on the income statement in a non-commercial enterprise." In this note, it is further assumed that losses in that a non-commercial enterprise's costs are greater than the enterprise's income, cannot be deducted from the year's total income statement, nor can they be carried forward for set-off in recent years' profits from non-commercial enterprise. However, this practice is modified if a direct correlation can be found between expenses that can be included in the loss for the year and income acquired in recent years. These expenses will probably be offset against the current income. It is argued accordingly that the borrower should not be taxed on the dividends which he receives for borrowed shares and after the contract gives to the lender. The borrower has not thereby acquired any taxable income. It is further claimed that all expenses incurred by the borrower are deducted from any gain on the sale and repurchase of the borrowed shares and in other income that the borrower may receive, for example by dividends on the borrowed shares. This applies not only to share tax, purchase and sale commissions as well as any legal and auditing expenses, but also the payment of unpaid dividends to the lender in cases where the shares are sold before and repurchased after the general meeting, and the costs paid to the lender as consideration for the share loan. It is further argued that losses on share loan transactions can be deducted from gains on other share loan agreements if taxation is to take place in accordance with the State Tax Act § 4.

**The National Tax Court states:**

It must be assumed that question C only concerns the tax conditions of persons or companies that are not traders in shares.

The first part of the question concerns the situation where the borrower has resold the shares, does not receive dividends, but must compensate the lender for the dividends. The current consideration and the amount paid to the lender as compensation for the dividend have such a direct connection to the share loan agreement that the expenses must be included in

the statement of the borrower's gain or loss on the sale and purchase of the shares in accordance with the rules in <u>the State Tax Act § 4 f</u>. The answer to this part of the question must therefore be changed to an affirmation.

The second part of the question concerns the cases where the borrower does not sell the borrowed shares and does not receive dividends during the loan period. The borrower may not have found a gain on the loan agreement as he has not sold or repurchased the shares. The cost of the consideration for borrowing the shares therefore constitutes his loss under the agreement, and this loss is according to <u>the State Tax Act § 4 f</u> not deductible by the statement of taxable income, but only in any other gains on similar agreements in the same year. The answer to this part of the question will, for this reason, be to change to a confirmation.

In the third situation, the borrower has not resold the shares, but has received dividends during the loan period, for which he must compensate the lender. As the borrower has not become the owner of the shares by virtue of the loan agreement or otherwise, he is not liable to tax on the dividends due to the lender in accordance with the agreements entered into. This has the same tax effect as set-off, and regardless of the wording of this part of the question, the answer to this part of the question can therefore be changed to an affirmation.

The binding advance notice will thus, as far as Question C as a whole is concerned, be changed to a Yes.

<20>
<20>
<20>
<20>
<20>
<20>

<20>

<20>
<20>

<20>
<20>

<20>

<20>

<20>

<20>

<20>
<20>

<20>

<20>

<20>

<20>

<20>

<20>

<20>

<20>

<20>

<20>

<20>

<20>

<20>

<20>

<20>

<20>

<20>

<20>

<20>

<20>

<20>

<20>



100 Park Avenue, 16th Fl

New York, NY 10017

www.consortra.com

STATE of NEW YORK    )
                     )                ss:
COUNTY of NEW YORK   )

### CERTIFICATE OF ACCURACY

This is to certify that the attached document, "TfS 2004.152" - originally written in Danish, -- is, to the best of our knowledge and belief, a true, accurate, and complete translation into English.

Dated: 4/14/2022

_____

Heather Cameron
Projects Manager
Consortra Translations

Sworn to and signed before ME
This 14th day of April, 2022

_____
Notary Public

JAMES G MAMERA
Notary Public - State of New York
No. 01MA6157195
Qualified in New York County
My Commission Expires Dec. 4, 2022

Your legal translation partner

New York, NY  |  Washington DC  |  Houston, TX  |  San Francisco, CA  |  Hong Kong