# Exhibit 10





Skatteministeriet

# Intern Revision

# SKATs administration af udbytteskat og refusion af udbytteskat

✓ **Revision**
✓ **Rådgivning**
✓ **Rapportering**

SKAT_MDL_001_0075835

# Forord

Intern Revision er den 29. august 2015 blevet bedt om at gennemføre en vurdering af en række forhold i forbindelse med formodede bedragerier rettet mod ordningen for refusion af udbytteskat indeholdt i Danmark.

Skatteydere (personer og virksomheder), der er omfattet af udenlandsk skattepligt, har mulighed for at søge om refusion af den del af den danske indeholdte udbytteskat, der overstiger beskatningen i henhold til de indgåede dobbeltbeskatningsoverenskomster (DBO`ere). SKAT er blevet præsenteret for ansøgninger om refusion af indeholdt udbytteskat. Det har dog efterfølgende vist sig, at ansøgerne angiveligt ikke er aktionærer i de danske firmaer, for hvilke der søges refusion for udbetalt udbytteskat. Ansøgerne har ved ansøgningen om refusion for indeholdt dansk udbytteskat præsenteret SKAT for dokumenter, der formodes at være falske.

Der er fastsat en frist på 4 uger for Intern Revisions undersøgelse. Det er klart, at den relativt korte tidsfrist i sagens natur medfører, at Intern Revision ikke har kunnet gennemgå og vurdere samtlige detaljer i forbindelse med ovennævnte sag.

Intern Revision har således måttet fravælge en række forhold, hvor vi har vurderet, at de enkelte forhold ikke var væsentlige i forhold til at undersøge de områder, der er omfattet af formålsbeskrivelsen i kapitel 1.

Det skal nævnes, at statsrevisorerne den 16. september 2015 har anmodet Rigsrevisionen om at undersøge en række forhold i relation til udbytteskat og refusion heraf. Der er på en række områder sammenfald mellem Rigsrevisionens undersøgelse og Intern Revisions undersøgelse. Det påregnes, at Rigsrevisionen fremlægger resultatet af deres undersøgelse primo 2016, hvorfor Rigsrevisionens undersøgelse må påregnes at være mere omfattende end Intern Revisions undersøgelse.

Afslutningsvis skal det bemærkes, at Departementet og SKAT løbende har leveret det af Intern Revision rekvirerede materiale.

København, den 24. september 2015

Kurt Wagner
Revisionschef

SKAT_MDL_001_0075836

# Indholdsfortegnelse

1.   Formål ................................................................................................................5
2.   Omfang ...............................................................................................................6
3.   Læsevejledning ..................................................................................................7
4.   Konklusion .........................................................................................................8
5.   Bedrageri – Revisionens rolle ........................................................................ 12
   5.1 Delkonklusion ............................................................................................. 13
6.   Bedrageri – Administrationens rolle ............................................................ 14
   6.1 Delkonklusion ............................................................................................. 14
7.   Opgørelser – Udbytteskat og refusion ......................................................... 15
   7.1 Udbytteskat og refusioner i tal ................................................................. 15
   7.2 Analyse af refunderet udbytte ...................................................................22
   7.3 Refusion af udbytteskat – Antal årsværk ................................................29
   7.4. Delkonklusion............................................................................................30
8.   Generel vurdering af SKATs kontrol-niveau på § 38-området .................32
   8.1 Delkonklusion .............................................................................................35
9.   Overordnet proces for udbytteskat samt refusion .....................................36
   9.1 Overblik over processen ............................................................................36
   9.2 Angivelse....................................................................................................36
   9.3 Indberetning...............................................................................................37
   9.4 Refusion af udbytteskat ............................................................................ 41
   9.5 En effektiv grundlagskontrol ...................................................................43
   9.6 Delkonklusion ...........................................................................................44
10.    Organisatorisk forankring af opgaverne vedrørende udbytteskat.........45
   10.1 Vurdering af kontroller samt kontrolniveau ........................................45
   10.2 Ansvar for den daglige drift (operationelt ansvar) .............................45
   10.3 Overvågning af den samlede proces for udbyttebeskatning, herunder vurdering af det etablerede kontrolniveau ...............................................................................46
   10.4 Hvilke kontroller er reelt implementeret på udbytteområdet...........46
   10.5 Delkonklusion..........................................................................................47
11.    1. forsvarslinje - kontroller.....................................................................48
   11.1 Angivelse / indberetning.........................................................................48
   11.2 Afstemning mellem angivelse og indberetning ...................................49
   11.3 Refusioner – anmodninger via blanketordning ...................................50
   11.4 Refusioner – bankordningen ..................................................................55
   11.5 Refusioner – VP-ordningen.....................................................................57
   11.6 Løbende regnskabsgodkendelser ...........................................................58

SKAT_MDL_001_0075837

11.7 Delkonklusion ..................................................................................................63

12.      2. forsvarslinje – kontroller ..........................................................................65

12.1 Delkonklusion ..................................................................................................66

13.      Manglende effekt fra væsentlige IT-understøttede kontroller.....................67

13.1 Delkonklusion ..................................................................................................67

14.      Data i eKapital ..............................................................................................69

14.1 Fysiske personer ..............................................................................................69

14.2 Selskaber ..........................................................................................................69

14.3 Omnibusdepoter ..............................................................................................70

14.4 Aktier fordelt på depoter ejet af fysiske personer, selskaber samt omnibusdepoter ..70

14.5 Delkonklusion ................................................................................................. 71

15.      SKATs opfølgning på revisionsrapporter .................................................... 72

15.1 Intern Revisions rapportering og opfølgning ............................................... 72

15.2 Oversigt over Intern Revisions rapporter ..................................................... 72

15.3 SKATs opfølgning på Intern Revision anbefalinger .....................................73

15.4 SKATs interne opfølgningsprocedurer på revisionsrapporter .....................74

15.5 SKATs opfølgning på revisionsrapporten Udbytte- og royaltyskat for 2012 ...............75

15.6 Delkonklusion ................................................................................................. 77

16.      Gennemførelse af bedrageri ........................................................................78

16.1 Delkonklusion ..................................................................................................79

17.      Departementets initiativer for at styrke processer og kontroller .............. 80

.................................................................................................................................. 80

17.1 Turnusanalyse af betalings- og regnskabsområdet ..................................... 80

17.2 God processtyring i SKAT ...............................................................................83

17.3 Delkonklusion ..................................................................................................83

18.      Oversigt over sager i Skatteministeriet .......................................................84

19.      SKATs implementering af lovændringer .......................................................85

19.1 Delkonklusion ..................................................................................................87

20.      Forslag til fremadrettet administration ...................................................... 88

20.1 Delkonklusion ..................................................................................................89

21.      Bilagsoversigt ................................................................................................90

Bilag 1 Oversigt over tidsforløb vedrørende initiativer og lovgivning ..................90

Bilag 2A Oversigt over sager i Skatteministeriet .................................................. 95

Bilag 2B Procespapir vedrørende udsøgning af sager og dokumenter i Skatteministeriet vedrørende refusion af kildeskatter .................................................................... 122

SKAT_MDL_001_0075838

# 1.    Formål

Undersøgelsen skal omfatte de aktuelle udfordringer i forbindelse med SKATs administration af udbytteskat og i hvilket omfang, der er fulgt tilstrækkeligt op på anbefalingerne fra tidligere revisionsrapporter. Derudover skal undersøgelsen omfatte forslag til, hvorledes den fremadrettede administration af udbytteskat kan tilrettelægges.

Undersøgelsen vil blandt andet indeholde følgende hovedelementer:

- En redegørelse for den talmæssige udvikling i udbytteskat samt refusion.

- En beskrivelse og vurdering af den nuværende proces for administration af udbytteskat samt refusion heraf. Redegørelsen vil indeholde en beskrivelse af udfordringerne i den administrative løsning samt en beskrivelse af de foranstaltninger, som SKAT har iværksat med henblik på at forbedre administrationen.

- En redegørelse for SKATs håndtering af tidligere fremsatte revisionsbemærkninger/anbefalinger fra Skatteministeriets Interne Revision, herunder i hvilket omfang disse er implementeret.

- En redegørelse for sager i Skatteministeriet vedrørende refusion af udbytteskat, herunder konkrete lovforslag og forelæggelser for minister og departementschef.

- En vurdering af, i hvilket omfang lovinitiativerne konkret har forbedret administrationen af udbytteskat og refusionen heraf.

- En redegørelse for hvorledes den formodede svindel, der er rettet mod refusion af udbytteskat, har fundet sted.

- En vurdering af hvilke hovedfunktioner i SKAT, der varetager overvågningen af rutinerne vedrørende udbytteskat og refusion.

SKAT_MDL_001_0075839

## 2. Omfang

Intern Revision har udført undersøgelsen af SKATs administration af udbytteskat og refusion af udbytteskat. Formålet med undersøgelsen er beskrevet i kapitel 1. Undersøgelsen er udført i perioden 29. august - 24. september 2015.

Undersøgelsen har primært omfattet perioden 2012 - 2015, hvor de påståede bedragerier har fundet sted. På en række områder har det dog været nødvendigt at gå længere tilbage i tid for at afdække de undersøgte forhold.

Omfanget og arten af vores arbejde i forbindelse med besvarelsen af de spørgsmål, som fremgår af hovedelementer i kapitel 1 "Formål", er fastlagt ud fra en konkret vurdering samt under hensyntagen til den korte tidsperiode, som vi har haft til rådighed i forbindelse med undersøgelsen. Vi har i forbindelse med undersøgelsen interviewet medarbejdere i departementet og SKAT samt indhentet materiale og dokumentation fra SKAT.

Da de udførte arbejdshandlinger i forbindelse med undersøgelsen hverken er revision eller review i overensstemmelse med de internationale principper og standarder for offentlig revision, udtrykker vi ikke nogen grad af sikkerhed om de anvendte regnskabstal og oplysninger fra SKAT, der er anvendt i besvarelsen. Hvis vi havde udført yderligere arbejdshandlinger, revideret eller udført review af de anvendte regnskabstal og oplysninger fra SKAT i overensstemmelse med de internationale principper og standarder for offentlig revision, kunne andre forhold være fundet og rapporteret til skatteministeren. Besvarelsen af spørgsmålene er udelukkende udarbejdet med det formål at understøtte skatteministeren med at vurdere SKATs administration af udbytte og udbytteprocessen med henblik på at orientere Skatteudvalget herom. Besvarelsen vedrører kun de spørgsmål, som fremgår af hovedelementer i kapitel 1 "Formål", herunder de regnskabstal og oplysninger, som er inddraget fra SKATs regnskaber med videre og kan ikke udstrækkes til at omhandle SKATs regnskaber i undersøgelsesperioden som helhed.

Det skal særskilt anføres, at SKAT den 23. september 2015 har gjort Intern Revision opmærksom på, at der kan være fejl og mangler i de data, som Intern Revision har anvendt i forbindelse med analysen i kapitel 7. SKAT har i den forbindelse igangsat en afstemning mellem DataWarehouse og det bagvedliggende produktionssystem. Denne afstemning er ikke er afsluttet på tidspunktet for færdiggørelse af nærværende redegørelse. SKAT vurderer ikke, at datagrundlaget indeholder væsentlige fejl eller væsentlige mangler.

Det skal endvidere anføres, at SØIK har modtaget en anmeldelse om påstået bedrageri med refusion af udbytteskat. Af hensyn til SØIKs efterforskning har det været nødvendigt at udlade en række oplysninger i redegørelsen. Disse udelader har ikke haft betydning for vores konklusioner i redegørelsen.

Omfanget og arten af det arbejde, som Skatteministeriets departement har udført, vedrørende lovgivningsinitiativer med videre, fremgår af kapitel 19 og bilag 2A og 2B.

SKAT_MDL_001_0075840

## 3.  Læsevejledning

Rapportens kapitel 1 indeholder en beskrivelse af formålet med Intern Revisions undersøgelse, således som denne er meddelt til Skatteudvalget.

I kapitel 2 har vi redegjort for undersøgelsens omfang. Det skal i den forbindelse påpeges, at vi ikke har udført revision, hvorfor vi ikke kan udtrykke nogen grad af sikkerhed om de i besvarelsen anvendte regnskabstal og oplysninger fra SKAT.

Kapitel 4 indeholder en konklusion af den udførte undersøgelse. Konklusionen indeholder en besvarelse af de væsentligste spørgsmål, der er fremsat i forbindelse med det formodede bedrageri.
Konklusionen kan således læses uafhængigt af den øvrige rapport.

Kapitel 5 og 6 er at betragte som generelle afsnit, der kort redegør for revisionens henholdsvis administrationens rolle i forbindelse med bedrageri. Afsnittene skal således udgøre et grundlag for forståelsen af de øvrige afsnit i rapporten.

Kapitel 7 indeholder en række opgørelser vedrørende udbytteskat og refusion. Afsnittet skal bidrage til en forståelse af udbytteskattens finansielle omfang.

I kapitel 8 redegør vi overordnet for SKATs kontrolniveau på skatteindtægtsområdet. Afsnittet skal bibringe læseren en forståelse af det generelle kontrolniveau, som tillige har været gældende for udbyttebeskatningsområdet.

I afsnit 9 redegør vi for den overordnede proces for udbytteskat samt refusion. Afsnittet skal bibringe læseren et fundament for at forstå, hvorledes det formodede bedrageri er gennemført.

Formålet med de øvrige kapitler i redegørelsen er at besvare en række væsentlige spørgsmål vedrørende udbytteskat samt refusion heraf.

SKAT_MDL_001_0075841

# 4.   Konklusion

Intern Revision har gennemført en undersøgelse af området for udbytteskat samt refusion heraf i overensstemmelse med det formål, der er defineret i kapitel 1 (se kapitel 1).

## Hvordan har bedrageriet kunnet finde sted?

På baggrund af den gennemførte undersøgelse samt tidligere udført revision er det Intern Revisions vurdering, at en række indbyrdes afhængige forhold i SKAT har medført, at det er muligt at begå bedrageri rettet mod SKAT´s administration af udbytteskat. De væsentligste årsager, til at bedrageriet har været muligt, skal søges i følgende forhold: Interne kontroller, datastruktur samt placering af det overordnede ansvar (procesejerskab).

**Interne kontroller:**

Gode og velfungerende forretningsgange er kendetegnet ved, at der i forretningsgangen er indbygget kontroller, der skal medvirke til at hindre uønskede hændelser. Generelt vil det i forretningsgange, der omfatter udbetalingsrutiner, være ønskeligt med stærke interne kontroller, der skal medvirke til at reducere risikoen for fejlagtige udbetalinger. Intern Revision har gennemgået og vurderet forretningsgangene vedrørende refusion af udbytteskat, herunder de interne kontroller i forretningsgangen. Intern Revision har observeret, at:

- SKATs rutiner for godkendelse af udbetalingsanmodninger og efterfølgende udbetaling har omfattet en vurdering af, hvorvidt de modtagne refusionsanmodninger er bilagt påkrævet dokumentation.

- SKATs kontrol har tillige omfattet en efterregning af refusionsbeløbet med henblik på at efterprøve, hvorvidt dette er opgjort korrekt i henhold til den konkrete dobbeltbeskatningsoverenskomst.

- SKATs godkendelseskontrol har i mindre omfang omfattet en vurdering af store udsving i refusionsanmodningernes størrelse samt identifikation af refusionsanmodninger, der fremsendes af nye ukendte mellemmænd.

- Godkendelseskontrollen har i begrænset omfang omfattet en efterprøvning af, hvorvidt de modtagne refusionsanmodninger kan henføres til et aktionærforhold, samt om refusionsanmodningen kan henføres til en forudgående indeholdelse af udbytteskat. Det skal dog bemærkes, at denne kontrol p.t. er vanskeliggjort på grund af datamæssige forhold (se nedenstående).

Vi har tillige konstateret, at den efterfølgende opfølgning på regnskabsdata i forbindelse med de løbende regnskabsgodkendelser har været mangelfuld. Vi kan således konstatere, at perioderegnskaberne, der omfatter udbytteskat samt refusion af samme, er godkendt uden forbehold.

Det er vores vurdering, at den løbende regnskabsgodkendelse ikke er funderet i en systematisk regnskabsanalytisk efterprøvning af regnskabstallene.

SKAT_MDL_001_0075842

**Datastruktur:**

En række IT-systemer understøtter administrationen af udbytteskat samt refusion af udbytteskat. Systemerne indeholder dels oplysninger om virksomhedernes samlede udloddede udbytte og dels oplysninger om det udloddede udbytte til de enkelte aktionærer. En stor del af de udloddede udbytter er dog ikke registreret på aktionærniveau, men i stedet på den enkelte depotfører.

En stor del af de danske aktier, der er ejet af personer med begrænset dansk skattepligt, er således placeret i såkaldte omnibusdepoter. I disse tilfælde indeholder IT-systemerne ikke oplysninger om den enkelte ejer af aktierne, men kun oplysninger til identifikation af omnibusdepotet, der vil fremstå som udbyttemodtager. Det skal tillige anføres, at udbytterefusioner, der er administreret via de såkaldte bankordninger, ikke registreres i IT-systemerne.

På grund af den ikke fuldstændige og i mange tilfælde sumvise registrering af data i de IT-systemer, der understøtter administrationen af udbytteskat samt refusion heraf, medfører det, at det vil være vanskeligt at udføre en effektiv grundlagskontrol med baggrund i de registrerede data. En grundlagskontrol omfatter kontrol af, at der ligger et ægte aktionærforhold til grund for anmodningen om udbytterefusion, og at udbytteskatten er indeholdt.

Det er vores vurdering, at datastrukturen i det væsentligste er etableret med henblik på at kunne servicere skatteyderne og i mindre omfang med henblik på at kunne understøtte kontrol- og styringsmæssige formål.

**Procesejerskab:**

I SKAT er direktørområderne

- Kundeservice,
- Inddrivelse,
- Indsats samt
- IT

inddraget i den løbende administration af udbytteskat og refusion af samme. Det skal bemærkes, at direktørområderne "Kundeservice" og "Inddrivelse" i al overvejende grad har varetaget rutinerne på udbyttebeskatnings- og refusionsområdet. Direktørområdet "kundeservice" er ansvarlig for system, data og grænseflader til skatteyderne, og direktørområdet "Inddrivelse" er ansvarlig for bogførings-, regnskabs- og udbetalingsrutinerne.

Såfremt der er etableret et entydigt overordnet ansvar for hele processen vedrørende udbytteskat med videre, vil ovenstående organisering af de administrative opgaver ikke nødvendigvis give anledning til uhensigtsmæssige forhold. I praksis har der dog ikke i SKAT været placeret et overordnet ansvar for hele processen vedrørende udbytteskat. Det samlede procesejerskab har således ikke været organisatorisk forankret.

SKAT_MDL_001_0075843

Dette medfører en væsentlig forøget risiko for, at den samlede administration af udbytteskat ikke er omfattet af en tilstrækkelig ledelsesmæssig overvågning og vurdering, herunder en løbende vurdering af de indbyggede kontroller i forretnings-gangene.

Det skal dog bemærkes, at den manglende organisatoriske forankring af det samlede ansvar ikke friholder de enkelte direktørområder for at varetage følgende opgaver:

- Løbende overvågning og vurdering af de dele af udbyttebeskatningsprocessen, der er placeret i eget område

- Løbende vurdering af hvorledes direktørområdets egne rutiner (delprocesser) fungerer i sammenhæng med de rutiner (delprocesser), der udføres af andre direktørområder

## Har lovinitiativerne forbedret administrationen af udbytteskat?

Ved en lovændring i 2009, som udmøntes i 2 bekendtgørelser, der har virkning fra 2012 (unoterede aktier) og 2013 (noterede aktier) blev det muligt at fastsætte dato-erne for angivelse af virksomhedernes udlodning af udbytte samt indberetning af de enkelte udbyttemodtagere, således at angivelse og indberetning tidsmæssigt skete sammenfaldende. Hermed kan følgende fordele realiseres:

1. Umiddelbart efter deklareringen af udbytte vil SKAT modtage oplysninger om udbyttemodtagerne og indeholdt udbytteskat. Oplysningerne vil modtages enten på person eller depotniveau.

2. Afstemning mellem virksomhedernes udloddede udbytte og indberetning af udbyttemodtagere kan gennemføres. Herved opnås større sikkerhed om de samlede udbytter og udbytteskat

3. Ved anmodning om refusion af udbytteskat kan anmodningen sammenholdes med modtaget udbytte og indeholdt udbytteskat

Ved dateringen af denne redegørelse har SKAT endnu ikke implementeret de afstem-ningsrutiner for børsnoterede virksomheder, som der blev givet mulighed for fra 2013. SKAT har endnu ikke ændret rutiner/datastruktur med henblik på effektivt at udnytte oplysningerne om udbyttemodtagerne i kontrol øjemed.

## Har SKAT fulgt op på revisionsrapporter?

SKAT har etableret procedurer, der tilgodeser en løbende opfølgning på anbefalinger fra Intern Revisions rapporter.

SKAT_MDL_001_0075844

SKAT har dog endnu ikke implementeret en række væsentlige anbefalinger, der skal tilgodese følgende:

1. Etablering af et overordnet ansvar for hele processen til håndtering af udbytteskat

2. Sikring af at der ikke sker uretmæssig refusion af udbytteskat

3. Afstemning mellem angivelse og indberetning

Intern Revision skal afslutningsvis anføre, at implementeringen af ovenstående vil forudsætte en anseelig investering med henblik på at kunne implementere de påkrævede ændringer i forretningsgange og rutiner. Investeringen vil dels have karakter af investering i systemer m.m. og dels karakter af en løbende forøgelse af de lønomkostninger, der direkte medgår til at understøtte udbyttebeskat-ningsprocessen.

## Yderligere forhold
For yderligere undersøgte forhold henviser vi til kapitel 7 - 20 i denne rapport.

SKAT_MDL_001_0075845

# 5.  Bedrageri – Revisionens rolle

Intern Revision skal udføre revisionen i overensstemmelse med god offentlig revisionsskik. Dette omfatter blandt andet, at der skal indhentes overbevisning om, at regnskabet er rigtigt, hvilket vil sige uden væsentlige fejl og mangler.

Væsentlige fejl og mangler i regnskabet kan skyldes besvigelser.

Revisionen planlægges og udføres ud fra en vurdering af væsentlighed og risiko, herunder foretages ligeledes en vurdering af risikoen for besvigelser. Revisionsstrategien og de konkrete revisionshandlinger fastlægges ud fra en vurdering af væsentlighed og risiko samt med udgangspunkt i den interne kontrol i virksomheden.

En revision kan aldrig give fuldstændig sikkerhed for, at regnskabet ikke indeholder fejl og mangler som følge af besvigelser. Dette skyldes, at revisionsmetoderne ikke sigter særligt på at afsløre besvigelser, og at besvigelser ofte søges tilsløret eller holdt skjult gennem falske bilag med videre. Med mindre der er grund til at antage det modsatte, anses registreringer og dokumenter i virksomheden for at være ægte og gyldige.

Med henblik på at vurdere risikoen for besvigelser skal Intern Revision blandt andet påse, at forretningsgange og interne kontroller vedrørende sikring af aktiver og indtægter er betryggende. Endvidere forespørges den reviderede virksomheds ledelse om dennes vurdering af risikoen for besvigelser samt om implementerede kontroller til forebyggelse og opdagelse af besvigelser.

Såfremt Intern Revision identificerer mangler i den interne kontrol, herunder mangler som kan medføre en forøget risiko for besvigelser, drøftes risici med den reviderede virksomheds ledelse og afrapporteres i revisionsrapporter inklusive ledelsens handleplaner til imødegåelse af risici. Revisionsrapporter fremsendes til såvel de berørte funktioner og afdelinger som til virksomhedens ledelse.

Intern Revision foretager løbende opfølgning på afgivne anbefalinger i revisionsrapporter, herunder om virksomhedens ledelse inden for de aftalte tidsfrister har implementeret nødvendige tiltag til forbedring af de interne kontroller og forretningsgange.

Såfremt det vurderes, at der ikke er implementeret de nødvendige interne kontroller og forretningsgange til imødegåelse af de identificerede risici, vil dette fortsat blive rapporteret til den reviderede virksomheds ledelse. Samtidig foretages der en vurdering af, om forholdet medfører en ændret vurdering af risici, en udvidelse af revisionen, og om forholdet skal indgå i andre former for rapportering fra Intern Revision.

SKAT_MDL_001_0075846

## 5.1 Delkonklusion

Intern Revision skal udføre revisionen i overensstemmelse med god offentlig revisionsskik. Dette medfører, at der skal foretages en vurdering af risikoen for besvigelser. Såfremt Intern Revision identificerer mangler i den interne kontrol, som kan medføre en forøget risiko for besvigelser, rapporteres dette til ledelsen i virksomheden. Intern Revision foretager løbende opfølgning på, at ledelsen implementerer kontroller, som imødegår de identificerede risici.

SKAT_MDL_001_0075847

# 6.  Bedrageri – Administrationens rolle

I Skatteministeriets forretningsområde er tilrettelæggelsen af regnskabsgodkend-elsen inden for ministerområdet og de formaliserede tilsyns- og kontrolfunktioner i forbindelse hermed beskrevet i Ministerieinstruksen for Skatteministeriet samt i virk-somhedsinstrukser og regnskabsinstrukser for de enkelte virksomheder i Skattemi-nisteriets koncern.

Forvaltningen af udgifter og indtægter skal tilrettelægges ud fra hensyntagen til de konkrete forhold. Det vil sige, at væsentlighed og risiko samt størrelsen og arten af de forskellige typer udgifter og indtægter skal tages i betragtning ved udarbejdelsen af de konkrete forretningsgange. Hertil kommer, at der skal udvises skyldige økonomi-ske hensyn.

De enkelte virksomheder i Skatteministeriets koncern er ansvarlige for udgifts- og indtægtsforvaltningen inden for deres område. Det er virksomhederne, der har an-svaret for finansiel kontrol og økonomistyring. Der skal være etableret forretnings-gange og interne kontroller, som i videst muligt omfang sikrer, at de dispositioner, som er omfattet af regnskabsaflæggelsen, er i overensstemmelse med meddelte bevil-linger, love og andre forskrifter samt med indgåede aftaler og sædvanlig praksis.

I henhold til de generelle regler for statsadministrationens disponering over de bevil-linger, der er givet på de årlige bevillingslove, skal de enkelte institutioner i forbind-else med deres økonomiforvaltning overveje deres risikostyring, herunder overveje de administrative rutiner i institutionen, der anvendes til kontrol af risici med henblik på at eliminere og begrænse tab.

I tilslutning til ovenstående regler har Økonomistyrelsen i maj 2007 udarbejdet en praktisk guide til, hvordan statslige institutioner kan introducere risikostyring eller udbygge deres nuværende risikostyring.

## 6.1 Delkonklusion

Virksomheder i Skatteministeriets koncern skal tilrettelægge tilsyns- og kontrol-funktioner i overensstemmelser med Ministerieinstruksen for Skatteministeriet, virksomhedsinstrukser og regnskabsinstrukser. Derudover skal virksomhederne overveje deres risikostyring til kontrol af risici med henblik på at eliminere og begrænse tab.

SKAT_MDL_001_0075848

# 7.   Opgørelser – Udbytteskat og refusion

I afsnit 7.1 præsenteres forskellige opgørelser vedrørende udbytteskat og refusion. Vi gennemfører en række analyser og vurderinger med henblik på at beskrive udviklingen samt omfanget af indtægter og refusioner.

I afsnit 7.2 analyseres det, hvorvidt refusionerne for konkrete virksomheder udgør en rimelig andel af udbytteskatten.

Som en del af analyserne i afsnit 7.1 og 7.2 vurderes det, hvorvidt det fulde omfang af bedrageri er identificeret.

De anvendte data i afsnit 7.1 og 7.2 er leveret af SKAT.

## 7.1 Udbytteskat og refusioner i tal

Tabel 7.1 omfatter indtægter (udbytteskat), refusioner samt antallet af ansøgninger vedrørende refusion pr. år fra 2005 til juni 2015.

| | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 Jan - juni |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Indtægter i mia. kr. | 6,69 | 9,38 | 9,94 | 11,1 | 6,06 | 8,36 | 8,65 | 8,71 | 11,69 | 13,2 | 18,51 |
| Refusion i mia. kr. | 1,18 | 1,88 | 1,07 | 0,75 | 0,75 | 0,68 | 1,12 | 1,45 | 2,79 | 6,06 | 8,73 |
| Antal ansøgninger | 16.617 | 18.618 | 15.687 | 16.655 | 21.264 | 21.451 | 24.292 | 26.765 | 33.881 | 41.764 | 34.860 |

**Tabel 7.1.**

Indtægter omfatter den angivne bruttoudbyttebeskatning med den undtagelse, at refusion via nettoafregningsordningerne direkte er trukket fra forinden indregning i indtægter. Den andel, der trækkes fra via nettoordningerne, indgår således ikke i regnskabstal vedrørende refusioner. Nettoafregningsordningerne er nærmere beskrevet i kapitel 9.

SKAT_MDL_001_0075849

Graf 7.2, der fremgår nedenfor, omfatter indtægter, refusioner samt antal ansøgninger om refusioner for årene 2005 til juni måned 2015.



**Graf 7.2.**

Af graf 7.2 fremgår indtægter og refusioner i mia. kr. pr. år. Indtægter og refusioner kan aflæses på den primære y-akse (venstre side af grafen). På den sekundære y-akse (højre side af grafen) kan antal ansøgninger om refusion aflæses.

På baggrund af indtægter og refusioner opgøres en refusionsprocent. Refusionsprocenten viser, hvor stor en andel refusionerne udgør i forhold til indtægterne. Det vurderes, at nettoafregningsordningerne ikke øver nævneværdig indflydelse på de opgjorte refusionsprocenter.

Udviklingen i refusionsprocenten fremgår af graf 7.3:



**Graf 7.3.**

Refusionsprocenterne er i 2005 og 2006 relativt høje i forhold til perioden 2007 til 2012, mens refusionsprocenter i 2014 og 2015 udgør hhv. 45,9% og 47,2%. Altså en væsentlig stigning i forhold til tidligere år. Refusionsprocenten er relativ høj i 2013, mens refusionsprocenterne i 2014 og 2015 forekommer, umiddelbart vurderet, at være atypisk høje.

SKAT_MDL_001_0075850

Som supplement til refusionsprocenten kan det gennemsnitlige refusionsbeløb pr. ansøgning opgøres. Indtægter og refusioner, samt gennemsnitlig beløb pr. refusionsanmodning fremgår af graf 7.4.



**Graf 7.4.**

Som det fremgår af graf 7.4, er gennemsnitsbeløb pr. refusionsanmodning især øget fra 2013 til 2014 og igen fra 2014 til 2015.

Ansøgningsordninger
Ansøgninger vedrørende refusion tilgår SKAT via den såkaldte "bankordning" eller via den manuelle ordning benævnt "blanketordningen". Administrationen af begge ordninger er nærmere beskrevet i kapitel 9.

Data vedrørende antal ansøgninger fra bankordningen samt blanketordningen fremgår af tabel 7.5. Tabellen omfatter perioden 2010 til august måned 2015.

|  | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 Jan – aug |
|---|---|---|---|---|---|---|
| Antal refusioner - Ansøgninger | 21.451 | 24.292 | 30.765 | 33.861 | 41.764 | 34.850 |
| - Heraf ansøgninger via bankordning | 15.432 | 17.163 | 20.463 | 21.096 | 25.390 | 23.206 |
| - Heraf ansøgninger via blanketordning | 6.019 | 7.129 | 10.302 | 12.735 | 16.374 | 11.644 |

**Tabel 7.5.**

SKAT_MDL_001_0075851

Indtægter og refusioner samt antallet af ansøgninger pr. ansøgningsordning er vist i graf 7.6 nedenfor.



**Graf 7.6.**

Det bemærkes, at perioden for antal ansøgninger i 2015 ikke stemmer helt overens med perioden for opgørelse af indtægter og udgifter.

Det fremgår af graf 7.6, at antallet af ansøgninger via bankordningen og blanketordningen udviser en forholdsvis ens udvikling i perioden fra 2010 til 2015.

Nedenstående graf 7.7 viser de beløbsmæssige refusioner, der vedrører hhv. bankordningen og blanketordningen.



**Graf 7.7.**

Det fremgår af graf 7.7, at refusioner via blanketordningen er steget markant siden 2010, hvor blanketordningen var ca. halvt så stor som bankordningen. De beløbsmæssige refusioner fra blanketordningen udviser en stigning på flere hundrede procent. Det beløbsmæssige omfang vedrørende bankordningen er også øget, men ikke så markant som for blanketordningen.

SKAT_MDL_001_0075852

I graf 7.8 er udviklingen i det gennemsnitlige beløb pr. ansøgningsordning vist i sammenhæng med omfanget af refusioner pr. år:



**Graf 7.8.**

Af graf 7.8 fremgår det, at stigningstakten for blanketordningen var væsentlig større end bankordningen i perioden 2012 til 2015, mens begge ordninger udgjorde ca. samme niveau i perioden 2010 til 2012.

Omfang af formodet bedrageri

Af notat af 25. august 2015 til Skatteudvalget benævnt "Mistanke om omfattende økonomisk kriminalitet begået mod SKAT", fremgår bl.a. følgende oplysninger, der er gengivet i tabel 7.9:

|  | 2012 | 2013 | 2014 | 2015 | I alt |
|---|---|---|---|---|---|
| Antal ansøgninger i stk. | 30.765 | 33.861 | 41.764 | 33.638 | 140.028 |
| Politianmeldt antal ansøgninger om refusion i stk. | 15 | 251 | 954 | 900 | 2.120 |
| Beløb omfattet af politianmeldte ansøgninger i mia. kr. | 0,03 | 0,6 | 2,5 | 3,2 | 6,2 |

**Tabel 7.9.**

Af tabel 7.9 fremgår det, at ud af ca. 140.000 ansøgninger om refusion i årene 2012-2015, er der rettet mistanke mod 2.120 stk. ansøgninger svarende til ca. 1,5% af alle ansøgninger.

Beløbsmæssigt omfatter denne andel ca. 6,2 mia. kr., der svarer til, at det gennemsnitlige beløb pr. ansøgning, der er omfattet af mistanke om økonomisk kriminalitet (formodet bedrageri), andrager ca. 3 mio. kr.

SKAT har over for Intern Revision oplyst, at den politianmeldte andel alene vedrører blanketordningen. Det vil sige, at der ikke er rettet mistanke mod ansøgninger via bankordningen.

SKAT_MDL_001_0075853

Korrektion af regnskabstal for beløb omfattet af mistanke om formodet bedrageri
Vi har korrigeret regnskabstallene for beløb og antal sager, der er omfattet af formodet bedrageri. Herefter har vi gennemført en beregning af refusionsprocenter og ansøgninger om refusion fra blanketordningen. Formålet hermed er at vurdere udviklingen i regnskabstallene, når disse korrigeres for omfanget af formodet bedrageri.

De oprindelige og de korrigerede regnskabstal er vist i tabel 7.10.

| | 2012 | 2013 | 2014 | 2015 jan - juni |
|---|---|---|---|---|
| Refusionsprocent | 16,7 | 23,9 | 45,9 | 47,2 |
| Refusionsprocent (korrigeret) | 16,3 | 18,8 | 27,0 | 29,9 |
| Gns. ref. anmodning i kr. - blanketordning | 39.618 | 115.657 | 252.318 | 545.333 |
| Gns. ref. anmodning i kr. - blanketordning (korrigeret) | 36.760 | 70.031 | 105.801 | 293.174 |

**Tabel 7.10.**

Den korrigerede refusionsprocent i 2014 og 2015 er ca. 10 procentpoint højere end i 2012 og 2013. Den gennemsnitlige refusionsanmodning, der vedrører blanketordningen, ses også at være steget kraftigt år for år på trods af, at tallene er korrigeret for omfanget af det formodede bedrageri.

Det er vores vurdering, at der udestår en forklaring på udviklingen i regnskabstallene, selvom der korrigeres for omfanget af det formodede bedrageri.

Vi har ikke umiddelbart mulighed for at undersøge årsagen til de stigende beløb pr. refusionsanmodning. Vi har dog en formodning om, at stigningen i refusionsprocenter kan skyldes en tilsvarende stigning i den udenlandske andel af danske børsnoterede aktier. Vi har derfor valgt at undersøge, om udviklingen i refusionsprocenterne kan forklares ud fra udviklingen i andelen af danske aktier, der ejes af udlandet.

På baggrund af data over de udenlandske ejerandele kan der udledes en gennemsnitlig ejerandel pr. år. Den gennemsnitlige ejerandel kan sammenstilles med udviklingen i refusionsprocent pr. år. En sådan sammenstilling på gennemsnitsniveau tager dog ikke højde for ejerandelen af den enkelte aktie på det faktiske udbyttetidspunkt. De gennemsnitlige udenlandske ejerandele formodes dog at have en vis korrelation med udviklingen i refusionsprocenten. I afsnit 7.2 er der foretaget en nærmere gennemgang af de forhold, der påvirker refusionsprocenten.

SKAT_MDL_001_0075854

I graf 7.11 har vi vist udviklingen i den udenlandske ejerandel af aktier pr. måned for perioden 2010 til juni måned 2015.



Kilde: VP Securities A/S

**Graf 7.11.**

Den udenlandske ejerandel stiger fra 41,7% i januar 2010 til 56,0% i juni måned 2015.

Den udenlandske ejerandel og den korrigerede refusionsprocent er vist i tabel 7.12 nedenfor. Refusionsprocenten er, ligesom tidligere anført, korrigeret i forhold til det formodede omfang af bedrageri. Herudover omfatter tabel 7.12 udviklingen i procentpoint mellem årene.

| | 2012 | 2013 | 2014 | 2015 |
|---|---|---|---|---|
| Udenlandsk ejerandel | 46,15% | 48,88% | 52,22% | 55,00% |
| Refusionsprocent korrigeret | 16,30% | 18,80% | 27,00% | 29,90% |
| Udvikling - udenlandsk ejerandel pr. år | | 2,70% | 3,30% | 2,80% |
| Udvikling - refusionsprocent pr. år | | 2,50% | 8,20% | 2,90% |

**Tabel 7.12.**

På baggrund af tabel 7.12 kan det opgøres, at den udenlandske ejerandel er steget med i alt 8,8 procentpoint, mens refusionsprocenten er steget med i alt 13,6 procentpoint.

På baggrund af ovenstående er det vores umiddelbare vurdering, at udviklingen i ejerandelen af udenlandske aktier ikke kan forklare udviklingen i refusionsprocenter i perioden 2012 til 2015.

SKAT_MDL_001_0075855

En mulig forklaring kan være ændrede ejerforhold blandt udenlandske aktieejere. Vi har dog ikke haft mulighed for at undersøge dette forhold i indeværende analyse. En mulig forklaring kan dog også være, at det fulde omfang af bedrageri ikke er identificeret.

## 7.2 Analyse af refunderet udbytte

Vi har vurderet omfanget af den refunderede udbytteskat på virksomhedsniveau, herunder vurderet rimeligheden af refusionen ved at sammenholde refusionen med udbytteskatten. Analysen omfatter de 15 virksomheder fra C20 indekset, som SKAT formoder er omfattet af bedrageri.

Variationerne i udbytteskat og refusion på tværs af virksomhederne er illustreret i nedenstående figur 7.13, 7.14 og 7.15, der omfatter årene 2012-2014. Den enkelte virksomhed fremgår ved angivelse af et bogstav, så virksomheden ikke kan identificeres.



**Figur 7.13.**



**Figur 7.14**

SKAT_MDL_001_0075856



**Figur 7.15**

Refusionsprocenterne for hver virksomhed er angivet i tabel 7.16 nedenfor.

| Virksomhed | 2012 | 2013 | 2014 |
|---|---|---|---|
| A | 22% | 110% | 69% |
| B | 25% | 65% | 94% |
| C | 7% | 50% | 66% |
| D | 25% | 100% | 0% |
| E | * | 7% | 97% |
| F | 21% | 18% | 74% |
| G | 25% | 3% | 96% |
| H | 6% | 2% | 65% |
| I | 23% | 81% | 75% |
| J | 68% | 7% | 82% |
| K | 124% | 12% | 75% |
| L | 45% | 47% | 84% |
| M | * | 11% | 111% |
| N | | | 80% |
| O | 58% | 9% | |

*) der er udbetalt refusion, men ikke indeholdt udbytteskat
**Tabel 7.16**

Det fremgår af ovenstående figurer og tabel, at der er store variationer i refusionens andel af udbytteskatten, både når den enkelte virksomhed vurderes over tid, og når virksomhederne sammenlignes indbyrdes.

Vi har analyseret refusionens andel af udbytteskatten (benævnt refusionsprocenten) i nedenstående tabel 7.17 og 7.18. Analysens data er periodiseret efter indkomstår, således at refusioner og udbytteskat vedrører det samme år. Analysens tabeller adskiller sig derfor fra tabellerne i afsnit 7.1, der er opgjort på baggrund af det kalenderår, hvor betalingen er gennemført, hvilket typisk er året efter indkomståret.

SKAT_MDL_001_0075857

For hver virksomhed har vi opgjort den faktiske refusionsprocent. En refusionsprocent på 33% er således udtryk for, at refusionsbeløbet udgør 33% af den udbytteskat, der er indeholdt for den pågældende virksomhed.

SKAT har ikke fastlagt en forventet refusionsprocent, eller et interval herfor, der kan anvendes til at vurdere de faktiske refusionsprocenter. Vi har derfor beregnet et vægtet gennemsnit for refusionsprocenten, som er baseret på DBO-satser og ejerandele af danske børsnoterede aktiers fordeling på lande. Der er redegjort i detaljer for datagrundlag, metode og forudsætninger umiddelbart efter figur 7.22.

I henhold til vores beregninger andrager den vægtede refusionsprocent ca. 23%. Beregningen er baseret på to væsentlige forudsætninger:

1) Den andel af udbytteskatten, der vedrører udlandet, er lig med den udenlandske ejerandel af de danske børsnoterede aktier. Dvs., hvis 53% af de børsnoterede aktier ejes af udlandet, forudsættes det, at 53% af den samlede udbytteskat vedrører udlandet.

2) Den skattesats, som udbyttet er beskattet med i det enkelte land, svarer til satsen for almindelige aktionærer i henhold til DBO-satserne. Dvs., hvis DBO-satsen for almindelige aktionærer andrager 15%, forudsættes det, at denne sats har været anvendt for al udbytte, der vedrører det pågældende land.

Anvendelsen af disse forudsætninger medfører imidlertid en række væsentlige usikkerheder i opgørelsen.

Vi har derfor opgjort en alternativ refusionsprocent, der er baseret på nogle meget forsigtige forudsætninger. Forudsætningerne er her, at udlandets andel af udbytteskatten vægter dobbelt så højt, som ejerandelen af aktier tilsiger, og at skattesatsen for udbytte er lig med 0 i DBO-landene (dvs., at der opnås fuld refusion for udbytteskatten). Denne refusionsprocent kan ses som et yderpunkt med henblik på at kunne drage konklusioner med større grad af forsigtighed. Vi har beregnet den alternative refusionsprocent til ca. 67%.

Intervallerne i tabellerne er markeret med farve:

angiver refusionsprocenter, der forekommer rimelige under de givne forudsætninger

angiver refusionsprocenter, der bør gennemgås nærmere, da der er risiko for, at en del af refusionen er uretmæssig

angiver at refusionsprocenten er større end virksomhedens udbytteskat, hvilket ikke bør forekomme. En del af refusionen må derfor være uretmæssig.

De 15 virksomheders refusionsprocenter er henført til intervallerne i tabel 7.17 og 7.18. I tabellerne er anført samlet refunderet udbytteskat for de 15 virksomheder (opgjort i mio. kr.) og antal virksomheder, der kan henføres til de enkelte intervaller.

SKAT_MDL_001_0075858

**Refusionsprocent = 23%:**

| Refusions-andel af udbytteskat | 2012 | | 2013 | | 2014 | | I alt |
|---|---|---|---|---|---|---|---|
| | Refunderet udbytteskat | Antal virksomheder | Refunderet udbytteskat | Antal virksomheder | Refunderet udbytteskat | Antal virksomheder | Refunderet udbytteskat |
| 0%-23% | 169,7 | 4 | 95,5 | 8 | 0,2 | 1 | 265,3 |
| 23%-100% | 1.159,4 | 7 | 2.227,9 | 4 | 7.744,1 | 12 | 11.131,5 |
| Hovedtotal | 1.816,0 | 14 | 3.650,4 | 14 | 7.879,9 | 14 | 13.346,3 |

**Tabel 7.17.**

**Refusionsprocent = 67%:**

| Refusions-andel af udbytteskat | 2012 | | 2013 | | 2014 | | I alt |
|---|---|---|---|---|---|---|---|
| | Refunderet udbytteskat | Antal virksomheder | Refunderet udbytteskat | Antal virksomheder | Refunderet udbytteskat | Antal virksomheder | Refunderet udbytteskat |
| 0%-67% | 1.249,1 | 10 | 624,8 | 11 | 78,3 | 3 | 1.952,2 |
| 67%-100% | 80,0 | 1 | 1.698,6 | 1 | 7.666,0 | 10 | 9.444,6 |
| Hovedtotal | 1.816,0 | 14 | 3.650,4 | 14 | 7.879,9 | 14 | 13.346,3 |

**Tabel 7.18.**

Før tabellerne kommenteres, skal det bemærkes, at refusioner via bankordningen ikke indgår i opgørelserne, da de ikke er specificeret på virksomheder. Refusions-procenterne er derfor reelt noget større end det umiddelbart fremgår af tabellerne. Dette bidrager med en større grad af forsigtighed, når der konkluderes på baggrund af tabellerne, idet der sandsynligvis ville være flere virksomheder placeret i de gule og røde intervaller i tabellerne, såfremt refusioner via bankordningen indgik i opgørelserne.

I lyset heraf og i lyset af de meget forsigtige forudsætninger, der er lagt ind i opgørelserne, er det påfaldende, at der alligevel fremgår en del virksomheder, der ligger uden for det grønne område i tabellerne. Dette indikerer, at refusionerne er for store. Dette gælder i særlig grad for indkomståret 2014.

Det skal bemærkes, at udbytterefusioner fra virksomheder, der indgår i ovenstående tabeller, er omfattet af det formodede bedrageri. Tabellerne bekræfter således, at der er udbetalt for meget refusion.

Det er vores vurdering, at tankegangen bag analysemetoden kan anvendes fremadrettet til at rimelighedsvurdere den ansøgte refusion i forhold til udbytteskatten. Analysens resultater kan yderligere præciseres i det omfang, at et mere udbygget datagrundlag muliggør mere forfinede forudsætninger.

**Specifik analyse af to virksomheder**
Som et supplement til ovenstående analyse har vi rekvireret oplysninger om den udenlandske ejerandel for to af ovenstående virksomheder med henblik på en mere præcis vurdering af den udbetalte refusion.

Disse beregninger tager højde for, hvor stor andel af aktierne, der er ejet af udlandet i de konkrete virksomheder. Beregningerne tager ikke højde for aktionærernes fordeling på lande, eller såfremt udbyttesatsen i hjemlandet afviger fra DBO-satsen for almindelige aktionærer.

SKAT_MDL_001_0075859

Vi har sammenholdt forventet refusion med faktisk refusion. Endvidere har vi inddraget omfanget af formodet svig for de to virksomheder med henblik på at vurdere, om det formodede svig kan forklare en eventuel difference mellem forventet og faktisk refusion.

Vi har for hver af de to virksomheder opgjort den forventede refusion med udgangspunkt i henholdsvis virksomhedens samlede udbytte (Metode A) og henholdsvis den indeholdte udbytteskat (Metode B).

Nedenfor har vi vist resultatet af beregningerne. Beløbene er indekseret med den faktisk refunderede udbytteskat som indeks 100. Hermed kan virksomhederne ikke identificeres.

Virksomhed 1:

|  | Metode A | Metode B |
|---|---|---|
| Forventet refusion | 36 | 34 |
| - Faktisk refunderet udbytteskat | 100 | 100 |
| = Difference | 64 | 66 |
| - Formodet svig 2015 | 46 | 46 |
| = Ikke forklaret difference | 18 | 20 |

Tabel 7.19.

Virksomhed 2:

|  | Metode A | Metode B |
|---|---|---|
| Forventet refusion | 26 | 25 |
| - Faktisk refunderet udbytteskat | 100 | 100 |
| = Difference | 74 | 75 |
| - Formodet svig 2015 | 48 | 48 |
| = Ikke forklaret difference | 26 | 27 |

Tabel 7.20.

Det fremgår af ovenstående opgørelser, at det formodede bedrageri ikke fuldt ud kan forklare forskellen mellem forventet refusion og faktisk refusion. Der er hermed risiko for, at det fulde omfang af bedrageri ikke fuldt ud er afdækket. Vi skal dog igen understrege, at beregningerne er behæftet med stor usikkerhed.

SKAT_MDL_001_0075860

De to beregningsmetoder A og B er skitseret i nedenstående figur 7.21 og 7.22:

Metode A: Udgangspunkt i udbetalt udbytte, i alt



**Figur 7.21.**

Metode B: Udgangspunkt i udbytteskat, i alt



(*) Er opgjort ud fra de skattesatser, der er knyttet til de forskellige typer af aktieejerne i de konkrete selskaber.

**Figur 7.22.**

I de nedenstående 3 afsnit redegør vi i detaljer for:
- datagrundlag,
- metode og
- forudsætninger

for beregningen af den vægtede refusionsprocent, der indgår i ovenstående analyser.

**Datagrundlag**
SKAT har til brug for analysen leveret et dataudtræk vedrørende udbytteregistreringer fra DataWarehouse. Data vedrører 15 større virksomheder, som SKAT formoder har været omfattet af bedrageri. De 15 virksomheder omfatter næsten hele den refusion, der er indhentet ved manuelle ansøgninger i perioden 2012-2014. For hver af de 15 virksomheder har vi modtaget data om udbytte, udbytteskat og refusion fordelt på år.

SKAT har oplyst, at data ikke er afstemt med de underliggende produktionssystemer, men at de vurderes til at være rimeligt valide.

De leverede data omfatter ikke refunderet udbytteskat via bankordningen. Refusioner, der er udbetalt via bankordningen, udgør imidlertid en væsentlig andel af de samlede refusioner. For refusioner, der er udbetalt i årene 2013, 2014 og 2015 har vi fået oplyst, at udbetalinger via bankordningen udgør hhv. 47%, 32% og 27% af den samlede refusion. De opgjorte refusionsprocenter er derfor noget større, end vores opgørelser viser.

Endvidere omfatter data ikke udbytteskat og refunderet udbytteskat, som er underlagt nettoafregningsordningen. Dette udgør dog ikke et væsentligt omfang.

SKAT_MDL_001_0075861

**Metode**

Formålet er at beregne, hvor stor en andel refusionen kan forventes at udgøre af den samlede udbytteskat. Hermed kan de faktiske refusionsprocenter vurderes i forhold til denne procentsats.

En række specifikke forhold for den enkelte virksomhed har betydning for, hvor stor en andel refusionen bør udgøre af den samlede udbytteskat:

- Andelen af udbytteskat, der er udbetalt til refusionsberettigede udenlandske aktionærer i forhold til den andel af udbytteskatten, der vedrører danske aktionærer. Dette skyldes, at udbytteskat vedrørende udenlandske aktionærer er grundlag for opgørelse af refusionen.

- I hvilke lande de udenlandske aktionærer er bosat, idet omfanget af mulig refusion afhænger af hvilken sats, der gælder for udbytte i det enkelte land. Endvidere udbetales der ikke refusion til personer, der er bosat i lande, der ikke er omfattet af en dobbeltbeskatningsoverenskomst eller ikke er omfattet af en informationsudvekslingsaftale.

| For en aktionær bosat i Argentina (omfattet af dobbeltbe-skatningsoverenskomst) udgør refusionen 44% af den indeholdte udbytteskat: | |
|---|---|
| Aktieudbytte | 100 |
| Udbytteskat indeholdt i DK (27%) | 27 |
| - Udbytteskat ifølge DBO (15%) | 15 |
| = Refusionsbeløb | 12 |
| I % af indeholdt udbytteskat | 44% |

Vi har ikke data for den enkelte virksomheds udbytteskat fordelt på lande eller oplysninger om, hvilke udbyttesatser, der konkret er anvendt for udbytteudbetalingerne i de enkelte lande. Det er derfor ikke muligt eksakt at beregne, hvor stor en andel af de pågældende virksomheders indeholdte udbytteskat, der er refusionsberettiget.

Vi har derfor beregnet et vægtet gennemsnit for refusionsprocenten, der er baseret på de mere overordnede oplysninger, vi har til rådighed.

Vi har fra VP Securities rekvireret en oversigt over danske børsnoterede aktiers fordeling på lande pr. 31. december 2014. Den relative fordeling af aktiebeholdningerne på lande er benyttet til at vægte refusionsprocenten, der er opgjort på baggrund af de enkelte landes skattesats for udbytte. Udbyttelandets skattesats er fastlagt ud fra gældende DBO satser pr. 31. december 2014. Sammenvægtningen af landenes refusionsprocenter resulterer i en gennemsnitlig refusionsprocent på 23% af den samlede udbytteskat. Ud fra denne meget grove indikator forventes det derfor, at refusionen udgør 23% af den samlede udbytteskat.

SKAT_MDL_001_0075862

**Forudsætninger**

Opgørelsen af den vægtede refusionsprocent på 23% er baseret på en række forudsætninger, der medfører store usikkerheder i beregningen:

- Aktiernes fordeling på lande er anvendt til at vægte satserne for udbyttebeskatning. Det betyder, at danske aktiers andel af udbytteskatten er vægtet med andelen af aktier, der er dansk ejet. Stikprøvevise undersøgelser indikerer imidlertid, at aktier, der er ejet af personer bosiddende i Danmark, beskattes i langt mindre omfang end aktier, der er ejet af udlandet. En del af de danske aktier beskattes eksempelvis med 0% i udbytteskat, idet de er ejet af pensionskasser. Udenlandske aktier beskattes som udgangspunkt med 27%. Dette betyder, at andelen af udbytteskat, der vedrører udenlandske aktier, er højere end udlandets andel af danske aktier. Denne forudsætning taler for, at den faktiske refusion må udgøre en højere andel af udbytteskatten end de 23%.

- For at opgøre det refusionsberettigede beløb har vi anvendt DBO skattesatsen for almindelige aktionærer, og der tages derfor ikke højde for afvigelser i forhold til denne skattesats. Typisk anvendes der en lavere skattesats; eksempelvis er amerikanske pensionskasser fritaget for udbytteskat. Da USA ejer en stor andel af de danske aktier er denne forudsætning kritisk for opgørelsen. Denne forudsætning taler for, at den faktiske refusion må udgøre en højere andel af udbytteskatten end de 23%.

Som nævnt før har vi opgjort en alternativ refusionsprocent, der er baseret på nogle meget forsigtige forudsætninger. Disse forudsætninger medfører en refusionsprocent på 67%. Forudsætningerne er her, at:

- udlændingene ikke betaler udbytteskat i henhold til DBO, hvorved der ydes fuld refusion for den tilbageholdte udbytteskat.

- en større del af udbytteskatten kan henføres til udlandet, end aktieandelen tilsiger. Dette begrundes med, at en række typer af danske aktieejere (eksempelvis pensionskasser) beskattes med en lavere skattesats end de 27%, som udenlandske ejere som udgangspunkt beskattes med. Der er derfor anvendt en forudsætning om, at danske aktieejeres skatteandel udgør halvdelen af hvad aktieandelen tilsiger.

## 7.3 Refusion af udbytteskat – Antal årsværk

Siden fusionen i 2005 har opgaven vedrørende udbytteskat, herunder tilbagebetaling i henhold til dobbeltbeskatningsoverenskomster, været omfattet af flere organisatoriske ændringer. Opgaven var oprindelig placeret i kontoret "Udbytte" i Skattecenter Ballerup. Kontoret blev i forbindelse med en organisationsændring i 2009 overført til en ny landsdækkende afdeling "Regnskab", og blev omdøbt til "Regnskab 2", men videreført med samme leder og medarbejdere. Kontoret beskæftigede i årene 2005 – 2010 ca. 20 medarbejdere og løste ud over opgaverne med udbytteskat også opgaver vedrørende á conto-selskabsskat, samt attestationer vedrørende skattemæssigt hjemsted.

SKAT_MDL_001_0075863

Opgaven vedrørende á conto-selskabsskat blev i 2010 flyttet til Horsens, og i den sammenhæng reduceredes antallet af medarbejdere i "Regnskab 2" til 12 frem mod 1. april 2013. Kontoret beskæftigede sig med både udbytteskat og attestationer.

SKAT gennemførte den 1. april 2013 en større organisationsændring, hvor afdelingen "Regnskab" blev lagt sammen med "Betalingscentret" til afdelingen "Betaling og Regnskab". "Regnskab 2" blev i princippet opløst og opgaver og medarbejdere overført til et nyt kontor "DMO/DMS", hvor opgaven vedrørende udbytteskat kun udgjorde en mindre del. Opgaven vedrørende administration af udbytteskat løses i dag i to kontorer "DMO/DMS" med ca. 35 medarbejdere og "SAP38"med ca. 40 medarbejdere, men udgør kun en lille del af kontorernes opgaveportefølje. Samlet set anvendes der ca. 5 årsværk på den administrative håndtering af udbytteskatten samt ca. 1 årsværk til arbejdet med IT og vejledninger mv.

Gennem hele perioden har der været tale om, at selve kernen i administrationen af udbytteskat, herunder formel kontrol af udbetalingsgrundlag for tilbagebetaling i henhold til dobbeltbeskatningsaftaler, kun har været en del af opgaverne i den/de enheder, som har løst opgaven. Der kan derfor ikke ud fra ændringer i organiseringen og bemandingen af de relevante kontorer drages slutninger om ændringer af bemandingen af specifikke delopgaver. Opgørelser af årsværksforbrug på de specifikke opgaver tilbage i tiden vil være forbundet med stor usikkerhed, da der er sket ændringer i opgaveafgrænsningerne i registreringssystemerne.

## 7.4. Delkonklusion

Andelen af refusioner i forhold til udbytteskat (refusionsprocenten) er steget væsentligt fra 11,6% i 2012 til 47,2% i 2015. Især refusionsprocenterne i 2014 og 2015 er meget høje i forhold til tidligere. Det gennemsnitlige refusionsbeløb pr. ansøgning er ligeledes steget markant i 2014 og 2015. Dette vedrører især ansøgninger, der modtages via blanketordningen. Selv om vi korrigerer opgørelserne for det formodede omfang af bedrageri, ses der stadig at være meget høje stigninger i forhold til tidligere. Dette indikerer, at der er risiko for, at det fulde omfang af bedrageri ikke er afdækket.

Vi har analyseret refusionsprocenten for de 15 virksomheder, som SKAT formoder er omfattet af bedrageri. Beregningerne omfatter indkomstårene 2012 til 2014. På baggrund af det foreliggende datagrundlag har vi beregnet en forventet refusionsprocent og sammenholdt denne med virksomhedernes faktiske refusionsprocenter. Der er imidlertid store usikkerheder forbundet med at opgøre en forventet refusionsprocent. Selv om beregningerne gennemføres med meget forsigtige forudsætninger, er der virksomheder, hvor den faktiske refusionsprocent overstiger den forventede refusionsprocent. Dette indikerer, at en del af refusionerne er uretmæssige. Det er vores vurdering, at den overordnede analysemetode fremadrettet kan anvendes til at rimelighedsvurdere den ansøgte refusion i forhold til udbytteskatten.

SKAT_MDL_001_0075864

På baggrund af mere præcise data om aktiernes ejerforhold, har vi for to af virksomhederne tillige vurderet den refunderede udbytteskat i 2014 på baggrund af mere præcise data om aktiernes ejerforhold. Herudover har vi korrigeret for omfanget af det formodede bedrageri. De forventede refusionsprocenter overstiger i væsentlig grad de faktiske refusionsprocenter. Det er på den baggrund vores vurdering, at der er risiko for, at det fulde omfang af bedrageri ikke er identificeret for disse to virksomheder.

SKAT_MDL_001_0075865

# 8.   Generel vurdering af SKATs kontrol-niveau på § 38-området

Med udgangspunkt i den almindeligt anerkendte model for beskrivelse af intern kontrol, "De tre forsvarslinjer", har Intern Revision generelt beskrevet og vurderet de interne kontrolforanstaltninger i SKATs indtægtsadministration (§ 38) jf. figur 8.1 nedenfor.



**Figur 8.1.**

### Generelt om første forsvarslinje
Direktionen fastlægger retningslinjerne for den operationelle ledelse i første forsvarslinje gennem en række politikker, procedurer og instrukser, og rammerne for organisering af opgaverne.

Første forsvarslinje omfatter endvidere de interne kontroller, der er indbygget i de enkelte forretningsgange. Den interne kontrol skal designes og implementeres således, at de risici, som ledelsen har vurderet som væsentlige, herunder

- at regnskaber ikke aflægges korrekt
- at lovgrundlaget ikke overholdes og
- at forvaltningen ikke sker på en økonomisk forsvarlig måde,

reduceres i størst mulig omfang. I tilrettelæggelsen skal der endvidere indgå sandsynligheden for, at en uønsket hændelse indtræffer.

SKAT_MDL_001_0075866

Elementer i den interne kontrol kan eksempelvis være:

- Design og implementering af evalueringsprogrammer
- Ledelsesrapportering på væsentlige mål
- Identifikation af risici for at SKATs mål ikke nås
- Organisatorisk og systemmæssig funktionsadskillelse mellem forvaltning og udbetaling
- Kontrol af at forudsætningen for en given udbetaling er til stede

Det er væsentligt, at de designede kontroller afdækker de risici, som ledelsen har vurderet som væsentlige, og at kontrollerne udføres integreret i forretningsgangen for de enkelte områder. Ledelsen i SKAT opnår dermed, at styringen af SKAT som helhed for de enkelte områder, og for de enkelte transaktioner, løbende er under kontrol.

Kontroller, der er maskinelle og forebyggende, bør have første prioritet. Efterfølgende kontroller, der udføres efter hændelser er sket, bør nedprioriteres og helst fravælges, medmindre andet valg ikke er muligt eller hensigtsmæssigt.

*Ledelseskontroller i SKAT*
Ledelseskontrollerne i SKAT udføres i regi af det interne kvalitetsstyringssystem og er karakteriseret ved at være efterfølgende kontroller, der er rettet mod enkeltaktiviteter i forretningsgangene.

Der er ikke implementeret procesrettede ledelseskontroller til kontrol af, at opgaverne løses i overensstemmelse med de vedtagne forretningsgange. En af årsagerne til fraværet af procesrettede ledelseskontroller er, at ejerskabet og ansvaret for en proces ikke er placeret hos en ansvarlig. En proces er i stedet ansvarsplaceret hos flere ansvarlige for hver sin række af delprocesser, uden at der er etableret en samlet procesansvarlig.

For regnskabsprocessens vedkommende afrapporteres ledelseskontrollerne i regi af de løbende regnskabsgodkendelser. Regnskabsgodkendelserne er ikke en del af ledelsesinformationen til direktionen.

Regnskabsprocessen er karakteriseret ved at være forankret på kontorchefniveau. Intern Revision har flere gange påpeget, at de centralt fastsatte bestemmelser i regnskabsinstruksen ikke er dækkende for hele regnskabsprocessen. De er desuden beskrevet vagt, således at det ikke uden videre kan udledes, hvilke opgaver, der er regnskabsmæssige opgaver. Dette har medført, at regnskabsprocessen er blevet et appendiks til de øvrige processer, som reelt skaber de informationer, der regnskabsaflægges.

*Interne kontroller i SKAT*
Det gælder generelt for interne kontroller i SKAT, at der er en række centralt bestemte rutiner og kontroller, som skal implementeres i de enkelte forretningsgange inden for SKATs kerneområder. Der er således eksempelvis koncepter for intern kontrol i forbindelse med, at der træffes afgørelser i bestemte situationer.

SKAT_MDL_001_0075867

For interne kontroller, som ikke er centralt fastlagte, gælder det, at de interne kontroller er implementeret pr. aktivitet. Hovedparten af SKATs processer er ikke dokumenterede, således at der er skabt et overblik over forretningsgangene, aktiviteterne og dataflowene i processerne.

Den interne kontrol af, at det selvangivne datagrundlag (bilagskontrol) er korrekt, sker fortrinsvis ved kontrol i regi af indsatsprojekter på baggrund af SKATs aktivitetsplan. Hvilke områder af datagrundlaget, som skal udtages til kontrol, vurderes gennem en risikovurdering af dels skatte- og afgiftslovgivningen og dels de borgere og virksomheder, som lovgivningen vedrører.

> Det er vores vurdering, at kontrolforanstaltningerne i første forsvarslinje generelt er svage.
>
> Den interne kontrol i første forsvarslinje er påvirket af, at der ikke er et "end-to-end" procesansvar, og at der ikke er implementeret ansvar for processer på tværs af organisationen. Det medfører, at de ledelseskontroller, som udføres, ikke kontrollerer processerne på tværs af organisationen efter ensartede begreber og normer. Ledelseskontrollen omfatter kun isolerede enkeltaktiviteter i de respektive forretningsområder.
>
> Desuden vanskeliggøres identifikation og håndtering af risici af, at forretningsgangene og de heri tilhørende IT-systemer ikke er dokumenterede. Veldokumenterede forretningsgange giver overblik over dataflow og aktiviteter mellem enheder samt viden om risici og intern kontrol.

**Generelt om anden forsvarslinje**
Funktionerne i anden forsvarslinje har til formål at overvåge og analysere kontrollerne i første forsvarslinje, samt at udarbejde risikostyringsværktøjer, sørge for guidance og uddannelse relateret til risikostyring og intern kontrol. Arbejdet omfatter tillige eskalering af kritiske hændelser, således der foretages de nødvendige justeringer af processen.

*Overvågning, controlling & kvalitetssikring i SKAT*
Der er i SKAT ikke implementeret en samlet løbende overvågning af de udførte kontroller i første forsvarslinje, herunder de udførte ledelseskontroller.

Der er formelt set etableret controllerfunktioner, som er ansvarlige for det samlede risikooverblik, måling og analyse samt rådgivning. Controllerfunktionerne har ansvaret for at overvåge udførelsen af ledelseskontroller i første forsvarslinje og rapportere til direktionen.

Direktøren for det enkelte forretningsområde i SKAT har det endelige og overordnede ansvar for den interne kvalitetssikring for hele forretningsområdet. Dette indebærer, at kvalitetssikringen gennemføres, og at der rettes op på de kvalitetsproblemer, som kvalitetssikringen afdækker.

SKAT_MDL_001_0075868

Den gennemførte og rapporterede interne kvalitetssikring indgår som en del af den månedlige ledelsesinformation.

> Det er vores vurdering, at kontrolforanstaltningerne i anden forsvarslinje generelt er svage.
>
> Vurderingen skyldes primært, at de ledelseskontroller, som udføres, hverken kontrollerer processerne på tværs af organisationen efter ensartede begreber og normer, eller kontrollerer processen som helhed, men kun kontrollerer isolerede enkeltaktiviteter i de enkelte forretningsområder.
>
> Der er ligeledes ikke etableret en struktureret, systematisk og samlet overvågningsfunktion, som har til opgave at udføre de ovennævnte funktioner og de tilhørende aktiviteter. Den overvågning, som controllerfunktionerne udfører, omfatter kun de ledelseskontroller, som er etableret i regi af det interne kvalitetsstyringssystem og er ikke procesorienteret.

**Generelt om tredje forsvarslinje**

Skatteministeriets uafhængige interne revision, har til formål at bidrage med objektive vurderinger og rådgivning om effektiviteten og pålideligheden af den interne styring og kontrol og derigennem skabe værdi og medvirke til at forbedre organisationens interne kontrol.

Uafhængigt af SKAT, foretager Intern Revision løbende selvstændige, uafhængige vurderinger og tests af SKATs interne kontrol og rapporterer, om de retningslinjer, som ledelsen har udstukket, er effektive, og om de overholdes.

## 8.1 Delkonklusion

> Det er Intern Revisions vurdering, at 1. og 2. forsvarslinje samlet set ikke udgør et effektivt værn mod utilsigtede finansielle hændelser i SKAT. Dette medfører, at Intern Revision på en lang række områder ikke kan udføre en kontrolbaseret revision, der er baseret på en løbende vurdering af SKATs kontrolaktiviteter og opfølgning på samme. Den samlede effekt af de 3 forsvarslinjer bliver herved reduceret.

SKAT_MDL_001_0075869

# 9.  Overordnet proces for udbytteskat samt refusion

Dette kapitel indeholder en gennemgang og vurdering af den proces, der er etableret med henblik på at administrere udbytteskat, herunder refusion af udbytteskat. Kapitlet vil tillige redegøre for svagheder i IT-systemerne og eventuelle kompenserende manuelle handlinger.

## 9.1 Overblik over processen

Den samlede proces for udbytteskat samt refusion består af en række delprocesser, jf. figur 9.1.



**Figur 9.1.**

Processen "Angivelse" omfatter de udbytte udloddende selskabers angivelse af vedtaget udbytte og indeholdt udbytteskat samt indbetaling af indeholdt udbytteskat til SKAT. (Efterfølgende bliver de udbytte udloddende selskaber benævnt som udloddende selskaber). Processen "Indberetning" omfatter de udloddende selskabers indberetning om udbyttemodtagere. Processen "Refusion" omfatter registrering og udbetaling af udbytterefusion til udbyttemodtagere, der ikke er skattepligtige i Danmark.

## 9.2 Angivelse

Det udloddende selskab skal angive udbytte og indbetale udbytteskat i måneden efter vedtagelsen af udlodning af udbytte. Angivelsen til SKAT skal ske i form af samlede summer og indeholde følgende oplysninger, dog jævnfør afsnit 9.2.2 "Ikke noterede selskaber":

**Angivelse af udbytteskat**

|  | Udbytte før skat | Udbytteskat |
|---|---|---|
| 27 procent udbytteskat |  |  |
| 25 procent udbytteskat |  |  |
| Udbytteskat efter dobbeltbeskatnings overenskomster (kræver tilladelse af SKAT) |  |  |
| 15 procent udbytteskat investeringsselskaber |  |  |
| Egne aktier |  | 0 |
| Dispensation for udbetalt udbytte med 0 i skattetræk efter ligningslovens § 16 A, stk. 2 og 3 eller § 16 B, stk. 2 |  | 0 |
| Anden udbytte uden udbytteskat (herunder mor/datter) |  | 0 |
| Samlet udloddet udbytte og udbytteskat |  |  |

**Tabel 9.2.**

SKAT_MDL_001_0075870

Nedenstående figur 9.3 viser processen for _angivelse_ af udbytte og udbytteskat.



**Figur 9.3.**

I praksis angives udbytte og indeholdt udbytteskat ved indtastning i NyTastSelv Erhverv (herefter NTSE), der overfører data til 3S. Processen varierer alt efter, om der er tale om børsnoterede selskaber eller ikke noterede selskaber jævnfør oven-stående figur 9.3.

### 9.2.1. Børsnoterede selskaber
Oplysninger om aktionærer i børsnoterede selskaber er registreret i VP Securities (fremover benævnt VP). De børsnoterede selskaber angiver udbytte og udbytteskat på baggrund af modtagne oplysninger fra VP. Angivelserne indtastes i NTSE, der overfører data til 3S. VP har oplysninger om udbyttemodtagere fra de kontoførende bankers depotkunderegistreringer. Udbytteskatten opgøres med udgangspunkt i gældende danske skattesatser for udbytteskat.

### 9.2.2. Ikke noterede selskaber
De ikke noterede selskaber angiver udbytte og indeholdt udbytteskat ved at indtaste indberetninger i NTSE. Selskabet indberetter "udbetalt udbytte" samt "indeholdt ud-bytteskat" for den enkelte udbyttemodtager i NTSE. I NTSE dannes angivelsen som summen af de samlede indberetninger. Oplysningerne overføres til 3S.

## 9.3 Indberetning
For de enkelte udbyttemodtagere indberettes oplysninger om udloddet udbytte og indeholdt udbytteskat til SKAT. Denne indberetningspligt omfatter både aktionærer med skattepligt til Danmark og aktionærer med udenlandsk skattepligt.

Siden 2013 har både børsnoterede og ikke noterede selskaber skulle foretage ind-beretning om udbyttemodtagere i måneden efter vedtagelse af udlodning.

SKAT_MDL_001_0075871

Nedenstående figur 9.4 indeholder en skematisk oversigt over indberetning af udloddet udbytte og indeholdt udbytteskat fordelt på de enkelte aktionærer. Af figuren fremgår det, at indberetningsrutinerne er forskellige alt efter, om der er tale om børsnoterede selskaber eller ikke noterede selskaber.



**Figur 9.4.**

### 9.3.1 Børsnoterede selskabers indberetning af udbytte til aktionærer

VP indberetter for selskaber og investeringsforeninger, der er indskrevet i VP. VP indberetter oplysninger om udbyttemodtagerne på grundlag af de kontoførende bankers depotkunderegistreringer. Senere rettelser kan foretages af de kontoførende banker eller VP. VP fremsender en indberetningsfil direkte til SKAT´s system benævnt eKapital. VP skal foretage indberetning senest måneden efter vedtagelsen af udlodning af udbytte.

Til eKapital indberettes oplysning om udloddet udbytte, indeholdt udbytteskat, samt oplysninger til identifikation af udbyttemodtager, indberetter med videre.

Der skal foretages indberetning af udbyttemodtagere, både personer og selskaber, uanset om de er hjemmehørende i Danmark eller i udlandet. Indenlandske udbytte-modtagere skal indberettes med CPR-/CVR-/SE-nr.

**Indberetning af udenlandske modtagere**

Udbyttemodtageres fulde navn og adresse skal indberettes. Såfremt det er muligt, skal der tillige indberettes både dansk og udenlandsk identifikationsnummer (CPR nr./TIN nr. (Tax Identification number), eller fødselsdato).

SKAT_MDL_001_0075872

For udenlandske aktionærer kan der være en kæde af udenlandske banker mellem VP og den egentlige aktieejer jævnfør nedenstående figur 9.5.



**Figur 9.5.**

Det er tilfældet for de såkaldte omnibusdepoter, hvor en udenlandsk bank har oprettet en konto med et samledepot i en dansk bank, men hvor de danske selskabers aktier er placeret i den udenlandske banks depot (jævnfør figur 9.5, mulighed 1).

En udenlandsk bank vil også kunne have et samledepot direkte i VP, ligesom en udenlandsk værdipapircentral kan registrere en aktiebeholdning direkte i VP (jævnfør figur 9.5, mulighed 2 og 3).

For disse omnibusdepoter vil de registreringer af aktiebeholdninger, som VP modtager, som udgangspunkt være sumposter, hvor der ikke er oplysning om den enkelte udenlandske aktieejer. Dette skyldes, at VP registrerer depotejer som udbyttemodtager jævnfør kapitel 14.

Endelig kan en dansk pensionskasse/pensionsselskab vælge at investere gennem en udenlandsk bank. Derved bliver den danske pensionskasses/pensionsselskabs investeringer registreret i et udenlandsk samledepot, hvor VP ligeledes ikke har oplysning om den enkelte aktieejer.

### 9.3.2 Ikke noterede selskabers indberetning af udbytte til aktionærer
De ikke noterede selskaber indberetter udloddet udbytte og tilbageholdt udbytteskat for de enkelte udbyttemodtagere via NTSE.

Oplysningerne registreres i systemet 3S og overføres til eKapital. Processen er gengivet i figur 9.4.

SKAT_MDL_001_0075873

Til eKapital indberettes oplysning om udloddet udbytte, indeholdt udbytteskat, samt oplysninger til identifikation af udbyttemodtager med videre.

Der skal foretages indberetning om udbyttemodtagere både for personer og selskaber, uanset om de er hjemmehørende i Danmark eller i udlandet. Indenlandske udbyttemodtagere skal indberettes med CPR-/CVR-/SE-nr.

Ved indberetning af udenlandske modtagere skal der indberettes udbyttemod-tagernes fulde navn og adresse samt med både et dansk og et udenlandsk identifika-tionsnummer (CPR nr./TIN nr.), såfremt det er muligt.

Det er i NTSE muligt at indberette udenlandske udbyttemodtagere uden en entydig identifikation af den enkelte aktieejer.

### 9.3.3 Nettoafregning af udbytteskat via VP-ordningen

"VP-ordningen" er en aftale, der er indgået mellem VP og SKAT. Ordningen går ud på, at VP med udgangspunkt i de gældende dobbeltbeskatningsoverenskomster indeholder den korrekte udbytteskat (nettoafregning).

Forudsætningen for at deltage i denne ordning er, at aktionæren er en fysisk person, og såvel aktionær som depotfører har valgt at deltage i ordningen. Desuden er det en forudsætning, at de udbyttegivende aktier er indlagt i depot i en dansk bank i ejerens eget navn, og at ejeren afgiver dokumentation til pengeinstituttet om sine bopæls- og skatteforhold.



**Figur 9.6.**

VP indberetter den indeholdte udbytteskat på grundlag af de kontoførendes depotkunderegistreringer. VP fremsender en indberetningsfil direkte til SKATs system benævnt eKapital. Fordelen med ordningen er, at der over for den enkelte udbyttemodtager kan ske en fuld og endelig afregning af udbytteskatten i forbindelse med udbetaling af udbytte.

SKAT_MDL_001_0075874

### 9.3.4 Nettoafregning – særlig tilladelse for ikke noterede selskaber

Derudover har hovedaktionærer i ikke noterede selskaber mulighed for at få en særlig tilladelse fra SKAT til at anvende en reduceret sats ved indeholdelse af udbytteskat. Tilladelsen kan gives for skattepligtige personer, der er omfattet af en dobbeltbeskatningsoverenskomst. Disse aktionærer vil således få indeholdt den relevante udbytteskat (nettoafregning) efter dobbeltbeskatningsoverenskomsten. Det udloddende selskab indberetter udbyttemodtageren med den reducerede sats i NTSE under henvisning til den særlige tilladelse fra SKAT.

## 9.4 Refusion af udbytteskat

En udbyttemodtager, som har fået indeholdt udbytteskat ved udlodning fra et dansk selskab, kan søge om refusion, hvis denne ikke er fuldt skattepligtig i Danmark og er omfattet af en dobbeltbeskatningsoverenskomst (DBO), eller er skattepligtig til et EU land. Refusionen er en tilbagesøgning af for meget indeholdt udbytteskat. Refusionen udgør forskellen mellem den indeholdte udbytteskat og satsen, der er aftalt i en DBO.

Udbyttemodtageren kan anmode om refusion via refusionsblanket til SKAT eller anmode om refusion via bankordningen.

### 9.4.1 Refusion af udbytteskat via den manuelle ordning (blanketordning)
Ved udlodning fra et dansk selskab, kan en udbyttemodtager, som opfylder betingelserne jævnfør afsnit 9.4, anmode om refusion af for meget indeholdt udbytteskat. Udbyttemodtageren kan selv, eller via agent anmode om refusion.



**Figur 9.7.**
Ved anmodning om refusion, skal ansøger indsende en udfyldt refusionsblanket til SKAT. Blanketten kan rekvireres på SKATs hjemmeside eller ved henvendelse til SKAT.

SKAT_MDL_001_0075875

Ansøger skal, ud over den udfyldte blanket, vedlægge følgende materiale/oplys-ninger:

- Udbyttenota fra depotføreren.
- Attestation om bopæl/skattepligt fra den lokale skattemyndighed.
- Oplysning om kontonummer.
- Fuldmagt, såfremt anmodning er indsendt af en agent for den retmæssige ejer.

SKAT efterregner, at det ansøgte refusionsbeløb er beregnet korrekt i forhold til DBO, og at den krævede dokumentation er medsendt.

SKAT udbetaler det ansøgte refusionsbeløb til det oplyste kontonummer, hvis ansøgning er udfyldt, og der samtidig er medsendt den krævede dokumentation. Såfremt, det krævede materiale ikke er komplet, returnerer SKAT ansøgningen til ansøger med oplysning om, på hvilke punkter ansøgningen er mangelfuld.

*SKAT efterprøver ikke*, om udbyttemodtageren har ejet aktierne ved udlodningen og, om udlodningen og den tilbageholdte skat er indberettet til eKapital.


### 9.4.2 Refusion af udbytteskat via bankordningen

Nedenstående figur 9.8 viser processen for refusion af udbytteskat via bankordningen.



**Figur 9.8.**

SKAT har indgået aftale med tre banker. Disse tre banker sender refusionsanmodning på de udenlandske bankers vegne (bankordningen). De udenlandske banker sender refusionsanmodningerne på regneark, der indeholder specifikation på de beløb, som tilbagesøges. For den enkelte anmodning fremgår navn på ansøger, aktie, antal aktier, vedtagelsesdato, udloddet udbytte samt den ønskede reduktion i udbytteskat.

Aktierne, der søges refusion for, ligger i separatdepoter eller samledepoter i den udenlandske bank. Regnearkene, som SKAT modtager, indeholder de samme oplys-ninger, uanset om aktierne ligger i separatdepoter eller samledepoter.

SKAT_MDL_001_0075876

Der er *ikke noget krav om*, at den udenlandske bank skal sende attest fra de udenlandske skattemyndigheder til banken, der er omfattet af bankordningen.

De tre banker, der er omfattet af bankordningen, foretager følgende kontrol:
- Kontrol i forhold til aktiebeholdninger i separatdepoter
- Sandsynliggørelse i forhold til samledepoter.

De tre banker, der er omfattet af bankordningen, kontrollerer, at udbyttet er afregnet til den pågældende bank, og at udbytteskatten er tilbageholdt. Den udenlandske bank opbevarer den nødvendige dokumentation i indtil 5 år efter udbetalingsåret.

Når SKAT modtager refusionsanmodningen fra en bank, der er omfattet af bankordningen, gennemgår SKAT dokumentationen, hvis denne er vedlagt, men der vil ikke være vedlagt dokumentation i alle tilfælde. Refusioner via bankordningen registreres ikke i 3S, modsat refusioner via blanketter, men bogføres direkte i SAP38 som sumbeløb. Flere anmodninger fra samme bank kan opsummeres til et samlet beløb, som danner grundlag for en samlet pengeoverførsel.

SKAT overfører betaling til en af de tre banker, der er omfattet af bankordningen. Banken sender refusionsbeløbet videre til den udenlandske bank, der efterfølgende foretager den endelige afregning over for udbyttemodtagerne.

## 9.5 En effektiv grundlagskontrol

Det er Intern Revisions vurdering, at en grundlagskontrol, i forbindelse med udbetaling af refusion af indeholdt udbytteskat, skal sikre, at der er et korrekt/gyldigt grundlag til stede for udbetaling af refusionen.

Dette medfører, at udbetalingskontrollen ikke kun bør omfatte en gennemgang og vurdering af det modtagne materiale, men tillige en kontrol af, at der, forud for udbetalingen af refusion, er foretaget indeholdelse af udbytteskat.

Siden 2013 har VP foretaget indberetning af udbyttemodtagere i eKapital senest i måneden efter, at en udlodning er vedtaget på generalforsamlingen. For udenlandske udbyttemodtagere kan der være en kæde af udenlandske banker mellem VP og den egentlige aktieejer. Dette medfører, at de oplysninger, som VP har og indberetter til eKapital om udenlandske udbyttemodtager, ofte vil være sumposter, og ikke en entydig identifikation af den endelige udbyttemodtager.

Dette betyder, at det, i forbindelse med behandling af en refusionsanmodning fra udlændige, ofte ikke vil være muligt for SKAT at identificere den enkelte udbyttemodtager. Ligeledes er det ikke muligt at kontrollere, om der er sket indeholdelse af udbytteskat, som udbyttemodtageren søger refusion for. SKAT har ikke arbejdet på at inddrage oplysningerne om udbyttemodtagere i eKapital ved behandling af en refusionsanmodning.

SKAT_MDL_001_0075877

## 9.6 Delkonklusion

SKAT påser om refusionsanmodningen er vedlagt den krævede dokumentation.

SKAT efterprøver ikke, om udbyttemodtageren har ejet aktierne ved udlodningen, og om der forud for udbetalingen af refusion er foretaget indeholdelse af udbytteskat.

For at SKAT kan udføre en effektiv kontrol ved behandling af en refusionsanmodning, er det nødvendigt, at SKAT har oplysning om indeholdt udbytteskat for den enkelte udbyttemodtager.

Siden 2013 har SKAT modtaget indberetning om udbyttemodtagere i måneden efter vedtagelsen af udlodningen og har dermed oplysningerne ved behandlingen af anmodningen.

SKAT har ikke arbejdet på at inddrage indberettede oplysninger om udbyttemodtagere fra eKapital ved behandling af en refusionsanmodning.

For de udenlandske udbyttemodtagere har SKAT imidlertid ikke haft oplysningerne på et tilstrækkeligt detaljeringsniveau, så den enkelte udlodning kan identificeres til en aktionær.

SKAT_MDL_001_0075878

# 10. Organisatorisk forankring af opgaverne vedrørende udbytteskat

Den nuværende organisatoriske forankring af opgaverne vedrørende udbytteskat blev implementeret i forbindelse med organisationsændringen pr. 1. april 2013.

Ved organisationsændringen pr. 1. april 2013 blev arbejdsopgaverne vedrørende udbytteskat samt refusion heraf forankret ved følgende direktørområder:

- Kundeservice
- Inddrivelse
- Indsats
- IT

Den samlede proces for administration af udbytteskat er således opdelt i en række delprocesser, der er forankret ved de involverede direktørområder.

## 10.1 Vurdering af kontroller samt kontrolniveau

Ved organisationsændringen pr. 1. april 2013 blev der gennemført en overordnet fordeling af arbejdsopgaver på de enkelte direktørområder. Ved organisationsændringen pr. 1. april 2013 blev der ikke gennemført en vurdering af kontrollerne i forbindelse med udbytteadministrationen. Der blev således ikke aktivt taget stilling til kontrolniveauet på udbytteområdet, herunder en opdeling af kontrollerne i de enkelte forretningsgange samt kontroller af overvågende karakter. Som en følge heraf blev der ikke taget stilling til en eventuel fordeling af kontroller på de involverede direktørområder. Organisationsændringen havde ikke til formål at tage aktiv stilling til disse områder.

## 10.2 Ansvar for den daglige drift (operationelt ansvar)

**Direktørområdet Kundeservice** er procesejer og varetager den løbende administration af systemerne vedrørende angivelse af udbytte, indberetning af udbytte samt refusion af udbytteskat. Kundeservice varetager ansvaret for afstemning mellem angivelse og indberetning samt ansvaret for afstemning mellem indeholdt udbytteskat og den efterfølgende bogføring.

**Direktørområdet Inddrivelse** varetager den løbende udbetaling af udbytteskatterefusion. Processen omfatter udbetaling af ansøgt udbytteskatterefusion fra aktieejere, der er omfattet af udenlandsk skattepligt. Processen omfatter i det væsentligste følgende elementer:

- Modtage anmodning om udbytteskatterefusion bilagt påkrævede dokumenter
- Kontrollere at anmodningen er bilagt relevante dokumenter
- Efterregning af det anmodede beløb for udbytteskatterefusion
- Udbetaling af udbytteskatterefusion

SKAT_MDL_001_0075879

**Direktørområdet Indsats** gennemfører løbende projekter med henblik på at reducere "skattegabet". For så vidt angår udbytteskat har direktørområdet Indsats ikke gennemført indsatsprojekter, der er rettet mod refusion af udbytteskat (Se kapitel 11, henvisning til afsnittet vedr. 1. forsvarslinje).

**Direktørområdet IT** initierer løbende ændringer af IT-understøtningen i henhold til ændringsønsker fra de enkelte procesejere.

## 10.3 Overvågning af den samlede proces for udbyttebeskatning, herunder vurdering af det etablerede kontrolniveau

I SKAT har der ikke været implementeret en samlet løbende overvågning af udbytteområdet på tværs af de involverede direktørområder.

Den manglende konsolidering af procesejeransvaret for hele udbytteprocessen har tillige medført, at der ikke er gennemført en konsolideret risikovurdering, der har kunnet udgøre en platform for løbende velbegrundede ændringer af processen for udbytteskat.

Det skal bemærkes, at den manglende etablering af et samlet procesejeransvar ikke er ensbetydende med, at der ikke skal ske en løbende vurdering af den samlede udbytteproces. De enkelte involverede direktørområder vil, ud over at være ansvarlige for en løbende vurdering og efterfølgende forbedring af den del af processen, der er forankret ved det pågældende direktørområde, ligeledes være ansvarlige for en samlet og effektiv udbytteproces.

## 10.4 Hvilke kontroller er reelt implementeret på udbytteområdet

Ved organisationsændringen pr. 1. april 2013 blev følgende kontroller forudsat implementeret på udbytteområdet:

- Afstemning mellem angivelse og indberetning
- Afstemning mellem registrering af udbytteskat og efterfølgende bogføring
- Bilagskontrol i forbindelse med udbetalingen af refusionsbeløb
- Løbende regnskabsgodkendelser

SKAT_MDL_001_0075880

## 10.5 Delkonklusion

Ved organisationsændringen pr. 1. april 2013 blev arbejdsopgaverne vedrørende udbytteskat samt refusion heraf forankret ved følgende direktørområder i SKAT:

- Kundeservice
- Inddrivelse
- Indsats
- IT

I SKAT har der ikke været implementeret en samlet løbende overvågning af udbytteområdet på tværs af de involverede direktørområder.

Den manglende konsolidering af procesejeransvaret for hele udbytteprocessen har tillige medført, at der ikke er gennemført en konsolideret risikovurdering, der har kunnet udgøre en platform for løbende velbegrundede ændringer af processen for udbytteskat.

Det skal bemærkes, at den manglende etablering af et samlet procesejeransvar ikke er ensbetydende med, at der ikke skal ske en løbende vurdering af den samlede udbytteproces. De enkelte involverede direktørområder vil, ud over at være ansvarlige for en løbende vurdering og efterfølgende forbedring af den del af processen, der er forankret ved det pågældende direktørområde, ligeledes være ansvarlige for en samlet og effektiv udbytteproces.

SKAT_MDL_001_0075881

# 11.  1. forsvarslinje - kontroller

I forbindelse med angivelse og indberetning af udbytteskat og refusioner har vi for nedenstående område vurderet de implementerede kontroller i 1. forsvarslinje.



**Figur 11.1.**

I kapitlet gennemgår vi de implementerede kontroller og vurderer, hvorvidt kontrollerne (kontrolmiljøet) er effektivt for følgende områder.

1. Angivelse/ -Indberetning
2. Afstemning mellem angivelse og indberetning
3. Refusion – manuelle anmodninger
4. Refusion – bankordningen
5. Refusion – VP-ordningen
6. Løbende regnskabsgodkendelser

Desuden vurderer vi, hvorvidt de løbende regnskabsgodkendelser udgør effektive kontroller i 1. forsvarslinje.

## 11.1 Angivelse / indberetning

I forbindelse med selskabernes angivelse af udbytte og indeholdt udbytteskat samt indberetning af udbyttemodtagerne, benytter selskaberne et centralt system i SKAT benævnt Ny TastSelvErhverv (NTSE).

Indtil den 1. januar 2014 foretog de ikke noterede selskaber en indtastning i form af en angivelse af udbytte og udbytteskat i NTSE. Ligeledes foretog de ikke noterede selskaber en indtastning i form af en indberetning af den enkelte udbyttemodtager i NTSE.

Efter den 1. januar 2014 skal de ikke noterede selskaber kun indberette udbytte og udbytteskat for de enkelte udbyttemodtagere i NTSE, hvorefter NTSE med udgangspunkt i indberetningen beregner den samlede "angivelse" af udbytte og udbytteskat for selskabet. De indberettede oplysninger overføres til 3S.

SKAT_MDL_001_0075882

Processen for de børsnoterede selskaber er, at de skal benytte NTSE i forbindelse med indtastning af angivelse af udbytte og udbytteskat.

Indberetning om udbyttemodtagere foretager VP for de børsnoterede selskaber i form af elektronisk indberetningsfil til eKapital. SKAT foretager ikke nogen kontrol af, om oplysningerne fra VP er korrekte. Oplysningerne om udbyttemodtagerne overføres ikke til 3S.

Der er dog i forbindelse med modtagelsen af indtastningsfilen til eKapital indlagt en maskinel kontrol, som bevirker, at de filer og datafelter, som ikke har et korrekt format, og dermed ikke kan indlæses i eKapital, kommer på en fejliste til manuel opfølgning. For indlæste filer udfører eKapital forskellige krydsvalideringer til sikring af, at data er fuldstændige.

Intern Revision har foretaget en vurdering af inddata kontrollerne i NTSE og kan konstatere, at der i begrænset omfang gøres brug af obligatoriske felter, som skal udfyldes, før en indberetning kan gennemføres. Der er dog konstateret omfattende brug af krydsvalideringer/afhængigheder imellem de felter som selskaberne kan udfylde. Eksempelvis hvis et selskab angiver ISO landekoden til "DK", så kan selskabet ikke samtidig angive TIN nr. (Tax Identification number), men derimod er der krav om, at selskabet skal udfylde felterne i relation til navne- og adresseoplysningerne på modtageren. Dette bevirker, at en del af felterne indirekte bliver obligatoriske alt afhængig af, hvad selskaberne indberetter og dermed bliver der krav om, at der skal tastes flere informationer.

I forhold til beløbsfelterne er det set, at NTSE kun accepterer positive tal i forbindelse med angivelser af udbytteløb, og at de enkelte felter valideres, når feltet forlades, og eventuelle fejltekster vises. Ligeledes sker der, i relation til angivelse af SE.nr og CPR.nr, modulus-check af det indtastede.

Det er Intern Revisions vurdering, at inddata kontrollerne i NTSE medvirker til en sikring af fuldstændige og ensartede data i bestemte felter.


## 11.2 Afstemning mellem angivelse og indberetning

SKAT har i flere år arbejdet på at få tidspunktet for angivelse af udbytte og udbytteskat samt indberetning om udbyttemodtagere gjort sammenfaldende. Det har ikke tidligere været muligt at foretage en tidstro afstemning, da indberetningen om udbyttemodtagere blev foretaget op til et år efter angivelsen.

Med den nuværende løsning for de ikke noterede selskaber fremkommer angivelsen af udbytte og udbytteskat som en sum af de indberetninger, der er foretaget, hvilket fjerner behovet for en afstemning. De børsnoterede selskaber indtaster en angivelse af udbytte og udbytteskat i NTSE samtidig med, at VP leverer en elektronisk indberetningsfil til eKapital om udbyttemodtagerne.

SKAT_MDL_001_0075883

Der vil således fortsat være behov for en afstemning, i relation til de børsnoterede selskaber, mellem angivelsen og beløbet for de anførte udbyttemodtagere. SKAT har oplyst, at de på nuværende tidspunkt ikke foretager en afstemning for de børsnoterede selskaber, men at SKAT er i proces med at finde en løsning.

Før 2014 har der været en intern maskinel udbyttekontrol, hvor oplysninger fra selskabernes selvangivelse blev sammenholdt med angivelserne i 3S. Hvis selskaberne har selvangivet en udlodning af udbytte, men ikke har indsendt angivelser til SKAT, blev disse selskaber skrevet ud på en rykkerliste til manuel opfølgning.

Intern Revision har konstateret, at denne funktionalitet ikke er blevet videreført i forbindelse med en ændring af 3S primo 2014.

## 11.3 Refusioner – anmodninger via blanketordning

Ved fysisk modtagelse af en refusionsanmodning fra udbyttemodtagere eller disses agenter via blanketordningen bliver relevante felter fra blanketten indtastet manuelt i 3S af en sagsbehandler i SKAT.

Den overordnede proces er gengivet i nedenstående figur 11.2.



**Figur 11.2.**

SKAT_MDL_001_0075884

### 11.3.1 Manuelle kontroller i forbindelse med registrering i 3S

Forud for indtastningen af relevante felter, foretager sagsbehandleren en manuel kontrol af, at anmodningen (blanket 06.003) er udfyldt korrekt, og at der er den krævede dokumentation, herunder (se figur 11.2):

- At den er attesteret korrekt af skattemyndigheden, hvor aktionæren er skattepligtig.
- At dokumentation for modtaget udbytte og indeholdt udbytteskat er vedlagt.
- At der foreligger den fornødne fuldmagt, såfremt anmodningen er fra andre (agenter) end den retmæssige ejer.
- At kontonummer til udbetaling af refusion har et korrekt format, og at navn, adresse med videre stemmer til den vedlagte dokumentation. I de tilfælde, hvor der er oplyst et IBAN.nr., kontrolleres dette format først ved indberetning i 3S.

Intern Revision har fået oplyst, at sagsbehandleren i flere tilfælde vanskeligt kan vurdere, hvorvidt fremsendte dokumenter samt attestationerne fra de udenlandske skattemyndigheder er gyldige. Dette skyldes, at sagsbehandleren ikke har et sammenligningsgrundlag, i form af vejledende oversigter af dokumenter fra de forskellige lande, der muliggør en sammenligning og validering af de modtagne dokumenter. Derfor kan sagsbehandleren kun forkaste de fremsendte dokumenter i de tilfælde, hvor dokumenterne er åbenlyst mangelfulde.

Det er revisionens vurdering, at den manuelle kontrol, i forbindelse med undersøgelsen af de fremsendte blanketter, derfor ikke er effektiv.

Sagsbehandleren foretager også en manuel kontrol af det ansøgte beløb. I den forbindelse kontrolleres følgende:

- At refusionsbeløbet er beregnet korrekt i forhold til den relevante dobbeltbeskatningsoverenskomst (DBO'en). Sagsbehandler har en oversigt i et regneark med alle DBO'er og satser, der anvendes til kontrol af, at der er anvendt den korrekte sats.

- At beløbet er beregnet korrekt i forhold til den vedlagte dokumentation. Der vil ofte være tale om flere forskellige udbyttemeddelelser for samme anmodning. Det ansøgte beløb efterprøves på følgende måde:

  - Beregning gennemføres i regneark (journaliseres dog ikke)

  - Der omregnes til og udbetales i danske kroner. Ifølge dokumentationen opgøres beløbet som udbytteskat pr. aktie i danske kroner gange antal aktier og sammenholdes med det ansøgte beløb.

Såfremt det ansøgte beløb ikke er opgjort korrekt, korrigeres beløbet. Ved manglende oplysninger returneres ansøgningen til dennes agent med angivelse af, på hvilke punkter ansøgningen er mangelfuld.

SKAT_MDL_001_0075885

Er blanketterne og informationerne fundet fuldstændige og korrekte, indtaster sagsbehandleren de relevante oplysninger i 3S. Samtidig noteres det ansøgte beløb i et internt regneark til brug for:

- Efterfølgende kontrol af indberetningen i 3S.
- Opgørelse af den samlede statistik over antal sager og udbetalte beløb
- Eventuel efterfølgende fremsøgning af sagen/anmodningen.

Når sagsbehandleren taster i 3S, sker der først fremfinding af det udloddende selskabs udbytteangivelse. Når selskabet er fundet, vælges funktionen "Indberet fritagelse for dansk udbytteskat" og relevante data for refusion tastes og gemmes.

Intern Revision har i forbindelse med gennemgangen rekvireret kopi af seneste brugervejledning. Vejledningen er dateret den 18. december 2002 i en version 1.4 og beskriver, hvordan brugerne skal benytte 3S. Intern Revision har kenskab til, at systemet 3S har haft ændringer efterfølgende, hvilket burde have medført en opdatering af brugervejledningen.

Vi har i forbindelse med gennemgangen spurgt til forretningsgangsbeskrivelser for identifikation af grænseflader og funktionsadskillelse. Tilgængelige forretnings-gangsbeskrivelser var ikke ajourført på undersøgelsestidspunkt, men er efterfølgende blevet ajourført og sendt til revisionen.

Manglende opdaterede brugervejledninger og forretningsgangsbeskrivelser med-fører, at sagsbehandlerne ikke kan finde "hjælp" i de tilfælde, hvor der er tvivl om håndteringen af de enkelte handlinger, hvilket øger risikoen for forkert behandling af ansøgte refusionsanmodninger.

### 11.3.2 Systemunderstøttede kontroller efter registrering i 3S

#### 11.3.2.1 Inddatakontroller
Intern Revision har fået oplyst, at der, i forbindelse med indberetning af refusionsansøgning for udbytteskat i 3S, er et antal obligatoriske felter, som skal udfyldes, før en ansøgning kan accepteres i 3S. I den seneste vejledning fra 2002 har vi set, at felterne; "Navn", "Adresse", "Udbytte", "Modtagelsesdato" og "Bundt nr." er obligatoriske felter, som kræves udfyldt. 3S stiller ikke krav til selve indholdet af felterne bortset fra, at feltet "Udbytte" skal indeholde tal, og feltet "Modtagelsesdato" ikke må være større end dags dato, og datoen skal være større end vedtagelsesdatoen samt i et bestemt datoformat. For så vidt angår felterne "Navn" og "Adresse", er der ikke krav til indholdet af registreringerne. Der er således i begrænset omfang gjort brug af inddatakontroller til sikring af unikke, fuldstændige, valide og ensartede data i bestemte felter.

I forbindelse med gennemgangen af 3S er det konstateret, at sagsbehandleren kun i begrænset omfang indtaster relevante felter til identifikation og fastholdelse af udbyttemodtageren, ligesom angivelse af udbyttemodtagerens land bliver tastet i adressefeltet med mulighed for at angive unøjagtige og ikke ensartede landeangivelser.

### 11.3.2.2 Kontrol af dubletter

Intern Revision har konstateret, at der i 3S er etableret en maskinel kontrol, som kan identificere dubletter. Systemet giver en besked til sagsbehandleren, hvis der er tastet flere refusionsanmodninger for samme modtager på samme udlodning. Intern Revision har set dokumentation, som viser, at der er indtastet og fundet en dublet, som er annulleret før overførsel til økonomidelen. Dermed har kontrollen virket og har forhindret en dobbelt udbetaling.

I vejledningen fra 2002 er det bemærket, at dubletkontrollen er opsat således, at 3S foretager en sammenligning af de data, som er anført i feltet "Navn". Det vil sige hvis sagsbehandleren indtaster en refusionsanmodning på en udbyttemodtager, som tidligere har søgt om refusion på samme udlodder, så vil 3S give besked herom, hvis sagsbehandleren har tastet det nøjagtig samme navn. Hvis sagsbehandleren taster et tegn forkert, eller hvis ansøgeren har ændret et tegn i forhold til tidligere fremsendt refusionsanmodning, så vil dette blive opfattet som en ny refusionsanmodning og ikke blive identificeret af kontrollen.

Ved gennemgangen blev det konstateret, at der i 3S, i forbindelse med refusions-anmodningen, ikke er mulighed for at angive et eventuelt CPR-nr. / CVR-nr. eller TIN-nr. på udbyttemodtageren.

Den manglende fuldstændige indtastning af "Navn" og "Adresse", sammenholdt med en manglende angivelse af eventuelt CPR-nr. / CVR-nr. eller TIN-nr. på udbyttemod-tageren bevirker, at SKAT ikke har mulighed for at benytte disse felter til brug for søgning af dubletter.

### 11.3.2.3 Kontrol af samlet udbytterefusion pr. selskab

Intern Revision har konstateret, at der i 3S er etableret en systemkontrol, som orien-terer sagsbehandleren, hvis der for et selskab er anmodet om et højere refusionsbeløb, samlet set, end selskabet har angivet i udbytteskat.

Ved revisionens gennemgang blev det oplyst, at kontrollen i relation til enkelte børsnoterede selskaber ikke har kunnet gennemføres i 2013 og 2014, fordi en fejl i 3S bevirkede, at det ikke var muligt at "taste" modtagne refusionsanmodninger på det udloddende selskabs angivelse. I stedet oprettede sagsbehandleren en 0-angivelse på det udloddende selskab, hvorpå de fremsendte refusionsanmodninger er blevet registreret. 3S har i forbindelse med indtastningen orienteret sagsbehandleren om, at "Sum af beløb på indberetninger er større end udlodning på angivelsen", hvilket skyldes at beløbet på den tastede refusionsanmodning er større end 0-angivelsen.

Denne fremgangsmåde har bevirket, at kontrollen reelt har været sat ud kraft og dermed ikke har kunnet bidrage til, at der ikke blev udbetalt mere i refusion, end selskaberne har angivet i udbytteskat for de anmodninger, som bliver behandlet via 3S.

Det er endvidere Intern Revisions vurdering, at designet af kontrollen ikke er hensigts-mæssig, fordi kontrollen ikke tager højde for de refusionsanmodninger, som SKAT modtager via bankordningen og indeholdt udbytteskat for danske udbyttemodtagere.

SKAT_MDL_001_0075887

Refusionsanmodninger via bankordningen indtastes ikke i 3S og indgår dermed ikke i kontrollen af, om der refunderes mere, end selskabet har indeholdt i udbytteskat. Derudover anvender 3S den samlede udbytteskat (27%) som sammenligningsgrundlag, selvom det kun er indeholdt udbytteskat fra udlændige, der kan refunderes.

Vi har set materiale, som viser, at SKAT i 2013, 2014 og 2015 har rapporteret om, at 3S i forbindelse med indrapportering af refusionsanmodninger i enkeltstående tilfælde er fremkommet med en "grøn skærm", som har forhindret en indrapportering på selskabets angivelse.

Vores gennemgang af modtaget materiale viser, at "grøn skærm" fejlen opstår i de tilfælde, hvor der i 3S har været registreret 2 angivelser for samme udlodning. 3S har ikke kunnet håndtere flere angivelser i forbindelse med den efterfølgende indrapportering af refusionsanmodninger.

Primo juli 2015 blev systemet ændret, hvorefter 3S igen i alle tilfælde har kunnet sammenholde refusionsanmodninger i 3S med angivelsen af udbytteskat. SKAT oplyser, at der ikke er gennemført kompenserende kontroller for de børsnoterede selskaber i perioden, hvor den maskinelle kontrol var sat ud af kraft.

### 11.3.2.4 Adviseringer fra 3S til sagsbehandler
I de tilfælde, hvor kontrollerne i 3S finder en "fejl" i forbindelse med indtastningerne, orienteres sagsbehandleren via skærmbilledet i 3S. Orienteringen til sagsbehandleren bevirker ikke, at indberetningen afvises, men er blot en orientering om, at der er forhold, som sagsbehandleren skal være særlig opmærksom på. Efter orienteringen skal sagsbehandleren foretage en vurdering af, om der reelt er tale om en fejl, som skal rettes, eller om refusionsanmodningen skal gennemføres.

Endvidere kan sagsbehandleren vælge ikke at foretage sig noget og dermed tilsidesætte kontrollerne, hvilket vil påvirke datakvaliteten. I de fremsendte forretningsgangsbeskrivelser fremgår det ikke, hvordan sagsbehandleren skal forholde sig i de tilfælde, hvor der fremkommer en orientering til sagsbehandleren.

Intern Revision har modtaget materiale, der viser, at der for et af de børsnoterede selskaber, hvor der formentlig er sket bedrageri, er refunderet mere udbytteskat, end der er indeholdt.

### 11.3.2.5 Sammenholdelse mellem anmodning og indberetning
Intern Revision har kendskab til, at de "ikke noterede selskaber" indberetter de enkelte udbyttemodtagere i NTSE med efterfølgende elektronisk overførsel til 3S. Denne overførsel giver mulighed for, at der, i forbindelse med behandlingen af refusionsanmodningerne, der er modtaget via blanketordningen, kan ske sammenholdelse mellem den enkelte udbyttemodtager og dennes refusionsanmodning. Intern Revision har ved demonstration af systemet ikke kunnet konstatere, at sådan en sammenholdelse foretages, ligesom det ikke fremgår af forretningsgangbeskrivelserne, at denne sammenholdelse skal udføres.

SKAT_MDL_001_0075888

SKAT har endvidere oplyst, at "Behandlingen af anmodning om refusion af udbytte-skat er en administrativ arbejdsopgave, hvor der udelukkende foretages kontrol med, at den krævede dokumentation er fremsendt med anmodningen samt at anmodningen er attesteret af den udenlandske skattemyndighed". Det er derfor revisionens vurdering, at sådan en sammenholdelse ikke udføres.

For de børsnoterede selskaber er det VP, som indberetter udbyttemodtagerne til systemet eKapital i SKAT. Disse informationer overføres ikke til 3S, hvorfor en sammenholdelse for de børsnoterede selskaber ikke er mulig.

## 11.4 Refusioner – bankordningen

SKAT modtager også refusionsanmodninger direkte fra tre banker, som sender anmodningerne i et "regneark" til SKAT på vegne af deres kunder.

Den overordnede proces er gengivet i nedenstående **figur 11.3.**



**Figur 11.3.**

De fremsendte anmodninger kan være specificeret på udbyttemodtager, men der kan også være flere udbyttemodtagere på den enkelte anmodning/regneark.
Der er ikke aftalt krav om samtidig fremsendelse af dokumentation for bopæls- og skattepligtsforholdet, men i nogle tilfælde fremsender bankerne også dokumentation i lighed med den dokumentation, som modtages, når den enkelte udbyttemodtager selvstændigt fremsender en anmodning om udbytterefusion. I disse tilfælde foretager sagsbehandleren en manuel kontrol af det fremsendte materiale i lighed med "blanketordningen", se ovenstående afsnit 11.3.

Refusionsanmodningerne fra de tre banker indtastes ikke i 3S, men udskrift af registreringerne i regnearkene summeres til et samlet beløb pr. bank og danner grundlag for bogføringen i SAP38 og efterfølgende udbetaling af refusionen, se figur 11.3.

SKAT_MDL_001_0075889

Den manglende indtastning i 3S systemet bevirker, at der ikke er mulighed for en sammenholdelse til eventuelle udbyttemodtagere, som selskaberne har indberettet i forbindelse med deres angivelse af tilbageholdt udbytteskat. Det kan ligeledes ikke udelukkes, at udbyttemodtageren, som får refusion via bankordningen, ikke også selv søger via blanketordningen.

Efter behandlingen bliver anmodningen/regnearket med eventuel dokumentation printet ud og arkiveret i 5 år. Den enkelte anmodning/regneark kan herefter fremfindes ved hjælp af bilagsnummeret.

SKAT oplyser, at der er indgået aftale med bankerne om, at disse foretager en valideringskontrol af registreringerne i regnearket. Det er aftalt, at bankerne kontrollerer følgende:

- Kontrol af rigtigheden af beløbene vedrørende aktiebeholdninger i separatdepoter
- Sandsynliggørelse i forhold til omnibusdepoter/samledepoter

Kontrollen består i, at banken kontrollerer rigtigheden af beløbene; det vil sige at udbyttet er afregnet til den pågældende bank, og at udbytteskatten er tilbageholdt.

Intern Revision har fået oplyst, at den udenlandske bank opbevarer den nødvendige dokumentation, som kan forevises efter anmodning i indtil 5 år efter udbetalingsåret. SKAT følger ikke op på, om disse kontroller er effektive.

Når SKAT har overført betaling, der svarer til de ansøgte beløb til banken, videresender banken det modtagne refusionsbeløb til den udenlandske bank, der vil foretage den endelige afregning over for udbyttemodtageren.

SKAT_MDL_001_0075890

## 11.5 Refusioner – VP-ordningen

"VP-ordningen" er en aftale, der er indgået mellem VP og SKAT. Ordningen går ud på, at VP, med udgangspunkt i de gældende dobbeltoverenskomster, indeholder den korrekte udbytteskat (nettoafregning).

Den overordnede proces er gengivet i **nedenstående figur 11.4.**



**Figur 11.4.**

Aftalen vedrører følgende lande:
Sverige, Norge, Tyskland, Grækenland, Holland, Belgien, Luxembourg, England, Irland, Schweiz, USA og Canada.

For at udbyttemodtageren kan benytte VP-ordningen, skal udbyttemodtager være en fysisk person og aktierne skal være indskrevet i et depot i et dansk pengeinstitut. Udbyttemodtageren skal endvidere over for det kontoførende pengeinstitut dokumentere sine bopæls- og skatteforhold via en skatteblanket (blanket 02.009), der skal attesteres af de udenlandske skattemyndigheder.

Det er dermed de kontoførende pengeinstitutter, som foretager en vurdering og god-kendelse af de dokumenter, som udbyttemodtageren fremsender. SKAT følger ikke op på, om disse kontroller er effektive.

SKAT har fået oplyst, at de udbyttemodtagere, som er omfattet af ordningen, vil modtage udbyttenotaer, hvoraf det fremgår, at der er tilbageholdt den korrekte udbytteskat i helhold til DBO'en. De enkelte udbyttemodtagere skal derfor ikke selvstændigt anmode om udbytterefusion hos SKAT.

SKAT_MDL_001_0075891

## 11.6 Løbende regnskabsgodkendelser

Der er i "Bekendtgørelse om statens regnskabsvæsen mv." og fra Moderniserings-styrelsens side fastlagt en række krav til godkendelser af de regnskaber, der via SKS indgår i statsregnskabet.

Kravene er indarbejdet i Skatteministeriets rammer for regnskabsaflæggelse. Ram-merne udgøres af:

- En ministerieinstruks
- En virksomhedsinstruks
- En regnskabsinstruks
- En vejledning i regnskabsaflæggelse for lokale firmakoder samt
- En vejledning for den centrale regnskabsaflæggelse.

Skatteministeriet har i rammerne fastlagt en række yderligere krav til kontrol ud over de førnævnte eksterne krav.

Regnskabsgodkendelserne er slutproduktet af den kontrol, som perioderegnskabet underkastes forud for, at det aflægges. I regnskabsgodkendelsen redegøres for fejl og mangler i det aflagte regnskab, og der fremgår en samlet konklusion. Regnskabs-godkendelserne er fysiske dokumenter, der udarbejdes med forskellig frekvens og underskrives på forskellige ledelsesniveauer i SKAT.

I nedenstående tabel 11.5. har vi, for de enkelte regnskabsgodkendelser, anført de kontrolkrav, som vurderes at være relevante i forhold til kontrol af refusion af udbytteskat:

SKAT_MDL_001_0075892

| Benævnelse | Frekvens | Indhold |
|---|---|---|
| Regnskabsgodkendelse for lokale firmakoder<br><br>Underskrives af:<br>Funktionsledere/ kontorchefer i Betaling og Regnskab | Månedlig | *Alle regnskabsenheder skal hver måned foretage en kontrol af, at aktiver og passiver er regnskabsmæssigt afstemt for egne firmakoder (pkt. 2.6.2 i Regnskabsinstruks for Skatteministeriets Koncern §38).*<br><br>*I Vejledning til Regnskabsafslutning udbygges kravene til kontrol:*<br><br>*Det er indledningsvist anført, at vejledningen skal betragtes som retningslinjer for, hvilke kontroller der som et minimum skal udfærdiges for at medvirke til at sikre regnskabets rigtighed.*<br><br>*Under denne fase er der tale om kontrol af aktivernes tilstedeværelse og en begrundet overbevisning om indtægternes/udgifternes rigtighed. Som eksempler herpå kan nævnes:*<br>*[bl.a. er nedenstående punkt nævnt:]*<br>• *at der ikke er væsentlige forskydninger i et provenu for f.eks. FO 2300 registreringsafgift ifht. samme måned sidste år*<br>*(Vejledning til Regnskabsafslutning lokale firmakoder april 2015).* |
| Central regnskabsgodkendelse<br><br>Underskrives af:<br>Underdirektør for Betaling og Regnskab og kontorchefen for §38 kontoret | Månedlig | *Godkendelsen af månedsregnskaberne i SKS omfatter:*<br>1. *at der er overensstemmelse mellem data i de lokale økonomisystemer og SLS og SKS.*<br>2. *at der i SKS foreligger godkendelse af de underliggende regnskaber.*<br>*(Afsnit 3.2.1 i Ministerieinstruks for Skatteministeriet)*<br><br>*Regnskabsinstruksen for §38 præciserer og stiller en række yderligere krav til kontrollerne:*<br><br>*I forbindelse med regnskabsaflæggelsen foretages følgende kontroller [bl.a. er nedenstående punkt nævnt]:*<br>• *en vurdering af om indtægter og udgifter forekommer rimelige i den forløbne periode under iagttagelse af indtægter og udgifter de seneste to regnskabsår med udgangspunkt i udviklingen i de enkelte perioder samt år-til-dato (sandsynlighedskontrol). For afvigelser, der undersøges i forbindelse med sandsynlighedskontrollen skal forklaringerne dokumenteres eller vedlægges som bilag.*<br>*(Pkt. 2.6.1 i Regnskabsinstruks for Skatteministeriets Koncern §38)* |
| Kvartalsvis regnskabsgodkendelse<br><br>Underskrives af:<br>Underdirektør for Betaling og Regnskab og kontorchefen for §38 kontoret | Kvartalsvis | *Der skal gennemføres en substantiel godkendelse af kvartalsregnskaberne, som omfatter:*<br>*[bl.a. er nedenstående punkt nævnt:]*<br>• *at forbruget af bevillingerne forekommer rimeligt under hensyntagen til aktiviteterne i den forløbne periode.*<br>*(Afsnit 3.2.2 i Ministerieinstruks for §38)*<br><br>*I dokumentet indeholdende den kvartalsvise regnskabsgodkendelse er yderligere præciseret:*<br><br>*Regnskabet er gennemgået og godkendt i overensstemmelse med ministerieinstruksen. 11 punkter krydses af i godkendelsen, herunder pkt. 3) "Er eventuelle underliggende regnskaber og godkendelser gennemgået mhp. kontrol af eventuelle bemærkninger eller andre forhold, som kan give anledning til bemærkninger?"*<br>*(Godkendelse af regnskab for §38 for 2. kvartal 2015)* |
| Særlig godkendelsesskrivelse vedr. det afsluttede regnskab<br><br>Underskrives af:<br>Underdirektør for Betaling og Regnskab | Årlig | *I forbindelse med den årlige regnskabsgodkendelse i SKS skal påses de samme forhold som ved den kvartalsmæssige godkendelse af regnskabet (Afsnit 3.2.3 i Ministerieinstruks for §38)*<br><br>*Regnskabet er udarbejdet på baggrund af regnskabsbekendtgørelsens bestemmelser og indeholder efter vor opfattelse:*<br>• *Alle bogføringskredse og delregnskaber, som virksomheden er ansvarlig for*<br>• *En korrekt opgørelse af de forbrugte bevillinger*<br>• *En korrekt opgørelse af aktiver og passiver*<br>*(Særlig godkendelsesskrivelse (regnskabserklæring) vedr. det afsluttende regnskab for §38 for 2014)* |

**Tabel 11.5**

Det skal præciseres, at den månedlige regnskabsgodkendelse består af:

• Dels en lokal regnskabsgodkendelse og
• Dels af en central regnskabsgodkendelse.

SKAT_MDL_001_0075893

I processen for regnskabsaflæggelse indgår en række kontrolaktiviteter forud for den lokale regnskabsgodkendelse. Disse indgår som grundlag for godkendelse og aflæggelse af det centrale regnskab, hvor der også gennemføres en række yderligere kontrolaktiviteter, herunder en sandsynlighedskontrol.

Det fremgår af ovenstående tabel, at de månedlige regnskabsgodkendelser skal indeholde en vurdering af, hvorvidt udviklingen i udgifter og indtægter er rimelig. Intern Revision har derfor undersøgt, om der i regnskabsgodkendelserne fremgår forhold vedrørende usædvanlig udvikling i omfanget af refusion af udbytteskat, eller om der er taget egentlige forbehold for regnskabernes korrekthed som følge heraf.

Vi har gennemgået samtlige regnskabsgodkendelser i perioden 2012-2015. Der er ikke taget egentlige forbehold i regnskabsgodkendelserne i den undersøgte periode. Der forekommer dog bemærkninger i de månedlige regnskabsgodkendelser vedrørende udviklingen i udgifterne til refusion af udbytteskat. Bemærkningerne fremstår for læseren som årsagsforklaret og ses ikke videreført i de kvartalsvise eller årlige regnskabsgodkendelser.

Vi har i de nedenstående tabeller præsenteret bemærkningerne i regnskabsgod-kendelserne. Tabellerne omfatter de år, hvor der er anført bemærkninger i de månedlige centrale eller lokale regnskabsgodkendelser. 2012 er udeladt, idet der ikke er anført bemærkninger. Vi har (i forkortet form) gengivet eventuelle bemærkninger fra regnskabsgodkendelserne.

Tabellerne indeholder tillige den udbetalte refusion i den pågældende måned, ændring i forhold til samme måned året før, samt den udbetalte refusion opgjort år til dato. Alle beløb er opgjort i mio. kr.

## 2013 (opgjort i mio. kr.)

| Måned | Refusion | Ændring ifht. samme md. året før | Refusion (år til dato) | Lokal regnskabsgodkendelse* | Central regnskabsgodkendelse |
|---|---|---|---|---|---|
| 1 | 66 | 22 | 66 | ingen bemærkninger | ingen bemærkninger |
| 2 | 27 | -9 | 93 | ingen bemærkninger | ingen bemærkninger |
| 3 | 57 | 30 | 150 | ingen bemærkninger | ingen bemærkninger |
| 4 | 373 | 351 | 523 | ingen bemærkninger | ingen bemærkninger |
| 5 | 434 | 86 | 957 | ingen bemærkninger | ingen bemærkninger |
| 6 | 738 | 486 | 1.695 | ingen bemærkninger | Refunderet udbytteskat udviser en stigning på 486 mio. kr. ifht. samme periode sidste år. Af periodens saldo kan de 533 mio. kr. henføres til to virksomheder. |
| 7 | 327 | 136 | 2.022 | ingen bemærkninger | ingen bemærkninger |
| 8 | 126 | 15 | 2.148 | ingen bemærkninger | ingen bemærkninger |
| 9 | 50 | -115 | 2.199 | ingen bemærkninger | ingen bemærkninger |
| 10 | 141 | 77 | 2.340 | ingen bemærkninger | ingen bemærkninger |
| 11 | 344 | 320 | 2.684 | ingen bemærkninger | ingen bemærkninger |
| 12 | 110 | -56 | 2.794 | ingen bemærkninger | ingen bemærkninger |
| 13 | - | - | 2.794 | N/A | ingen bemærkninger |

**Tabel 11.6**

SKAT_MDL_001_0075894

## 2014 (opgjort i mio. kr.)

| Måned | Refusion | Ændring ifht. samme md. året før | Refusion (år til dato) | Lokal regnskabsgodkendelse* | Central regnskabsgodkendelse |
|---|---|---|---|---|---|
| 1 | 119 | 53 | 119 | ingen bemærkninger | ingen bemærkninger |
| 2 | 66 | 39 | 185 | ingen bemærkninger | ingen bemærkninger |
| 3 | 83 | 27 | 268 | ingen bemærkninger | ingen bemærkninger |
| 4 | 612 | 239 | 881 | ingen bemærkninger | ingen bemærkninger |
| 5 | 1.385 | 951 | 2.266 | ingen bemærkninger | Refunderet udbytteskat udviser en stigning på 1,0 mia. kr. ifht. samme periode sidste år. Af periodens saldo kan 0,8 mia. kr. henføres til udbetalinger til to udenlandske banker, der herefter foretager videre overførsel. |
| 6 | 1.842 | 1.104 | 4.108 | Der er udbetalt 4,1 mia. kr. år til dato (åtd), hvilket overstiger den udbetalte refusion i hele 2013 med 1,3 mia. kr. En årsag hertil kan være, at flere ...... [specifikt land nævnt] pensionskasser foretager opkøb i danske virksomheder. De ...... [specifikt land nævnt] pensionskasser skal ikke betale dansk skat, så derfor de meget store tilbagebetalinger. | Refunderet udbytteskat udviser en stigning på 1,1 mia. kr. ifht. samme periode sidste år. Den væsentlige stigning, der har været i 2014 skyldes, at flere ...... [specifikt land nævnt] pensionskasser foretager opkøb i danske virksomheder. Da disse ikke skal betale dansk skat, medfører disse opkøb meget store tilbagebetalinger. |
| 7 | 729 | 402 | 4.838 | Der er udbetalt 4,8 mia. kr. åtd, hvilket overstiger den udbetalte refusion i hele 2013 med 2,0 mia. En årsag hertil kan være, at flere ...... [specifikt land nævnt] pensionskasser foretager opkøb i danske virksomheder. De ...... [specifikt land nævnt] pensionskasser skal ikke betale dansk skat, så derfor de meget store tilbagebetalinger. | Refunderet udbytteskat udviser en stigning på 402 mio. kr. Den væsentlige stigning der har været i 2014 skyldes, at flere ...... [specifikt land nævnt] pensionskasser foretager opkøb i danske virksomheder. Da disse ikke skal betale dansk skat, medfører disse opkøb meget store tilbagebetalinger. |
| 8 | 614 | 488 | 5.451 | Der er udbetalt 4,8 mia. kr. åtd. | Refunderet udbytteskat udviser en stigning på 488 mio. kr. Den væsentlige stigning, der har været i 2014 skyldes, at flere ...... [specifikt land nævnt] pensionskasser foretager opkøb i danske virksomheder. Da disse ikke skal betale dansk skat, medfører disse opkøb meget store tilbagebetalinger. |
| 9 | 135 | 84 | 5.586 | Der er udbetalt 5,6 mia. kr. åtd. | ingen bemærkninger |
| 10 | 260 | 118 | 5.846 | Der er udbetalt 5,8 mia. kr. åtd. | ingen bemærkninger |
| 11 | 130 | -214 | 5.976 | Der er udbetalt 6,0 mia. kr. åtd. | ingen bemærkninger |
| 12 | 87 | -23 | 6.063 | Der er udbetalt 6,1 mia. kr. åtd. | ingen bemærkninger |
| 13 | - | - | 6.063 | N/A | ingen bemærkninger |

**Tabel 11.7**

*) Ud over de anførte bemærkninger vedr. refusion af udbytteskat, er der i perioden marts-oktober under punktet *"Manglende udførsel af opgaver"* anført, at *"Udbytteskat er blevet meget sårbar, da driftsenheden har haft meget stor personaleafgang og der er få medarbejdere tilbage, som er meget specialiseret inden for de enkelte områder. Det bør overvejes, hvorvidt opgaverne helt eller delvist skal overflyttes til DMO/DMS i Horsens eller Ringkøbing".*

SKAT_MDL_001_0075895

## 2015 (opgjort i mio. kr.)

| Måned | Refusion | Ændring ifht. samme md. året før | Refusion (år til dato) | Lokal regnskabsgodkendelse* | Central regnskabsgodkendelse |
|---|---|---|---|---|---|
| 1 | 93 | -26 | 93 | ingen bemærkninger | ingen bemærkninger |
| 2 | - | -86 | 93 | ingen bemærkninger | ingen bemærkninger |
| 3 | 78 | -5 | 172 | ingen bemærkninger | ingen bemærkninger |
| 4 | 1.109 | 497 | 1.281 | Der er udbetalt 1,3 mia. kr. i 2015. | |
| 5 | 4.227 | 2.842 | 5.508 | Der er udbetalt 5,5 mia. kr. åtd i 2015. Samme tidspunkt i 2014 var der udbetalt 2,3 mia. kr. | Refunderet udbytteskat udviser en stigning ifht. samme periode 2014. En del af stigningen kan henføres til, at flere ...... [specifikt land nævnt] pensionskasser foretager opkøb i danske selskaber. Da disse ikke skal betale dansk skat, medfører disse opkøb store refusioner af udbytteskat. |
| 6 | 1.072 | -770 | 6.580 | Der er udbetalt 6,6 mia. kr. åtd i 2015. Samme tidspunkt i 2014 var der udbetalt 4,1 mia. kr. Der er igangsat en opgave pga. det stigende antal sager om refusion af udbytteskat samt SIR's bemærkninger ifm. gennemgang af området. Det nævnes, at det bør vurderes, om de adm. processer for refusion af udbytteskat kan forbedres og effektiviseres. | Refunderet udbytteskat udviser et fald ifht. samme periode 2014, men år til dato refusion viser en stigende tendens. En del af stigningen kan henføres til, at flere ...... [specifikt land nævnt] pensionskasser foretager opkøb i danske selskaber. Da disse ikke skal betale dansk skat, medfører disse opkøb store refusioner af udbytteskat. |
| 7 | 2.149 | 1.420 | 8.729 | Der er udbetalt 8,7 mia. kr. åtd i 2015. Samme tidspunkt i 2014 var der udbetalt 4,8 mia. kr. Det nævnes, at der skal afholdes møde vedr. beskrivelsen af opgaven med refusion af udbytteskat (dateret 5. august 2015) | Refunderet udbytteskat udviser en stigning ifht. samme periode 2014. Der er år til dato en stigende tendens. Der verserer i øjeblikket en sag om formodet svindel, som er overgivet til SØIK. Udbetaling er sat i bero midlertidigt. (dateret 28. august 2015) |
| 8 | 565 | -49 | 9.294 | N/A | N/A |

**Tabel 11.8**

*) Ud over de anførte bemærkninger vedrørende refusion af udbytteskat er der i perioden januar-maj under punktet "Status på arbejdsopgaver" anført, at "*Udbytteskat er ramt af langtidssygdom og at der er iværksat oplæring af medarbejdere fra SAP38 Horsens samt overflytning af opgaver".*

Det fremgår af ovenstående tabeller, at første bemærkning til udviklingen i refusion af udbytteskat fremgår af den centrale regnskabsgodkendelse i juni 2013. Udviklingen er årsagsforklaret ved to store udbetalinger. Der er ikke bemærkninger i den lokale regnskabsgodkendelse.

I maj 2014 anvendes en tilsvarende årsagsforklaring i den centrale regnskabs-erklæring. Der er ikke bemærkninger i den lokale regnskabsgodkendelse.

I juni og juli 2014 er der bemærkninger til udviklingen i både den lokale og centrale regnskabsgodkendelse. I den lokale regnskabsgodkendelse er der anført følgende forklaring: "*En årsag hertil kan være, at flere ...... [specifikt land nævnt] pensionskasser foretager opkøb i danske virksomheder*".

I den centrale regnskabsgodkendelse er der anført følgende: "*Den væsentlige stigning, der har været i 2014 i forhold til sidste år, skyldes, at flere ...... [specifikt land nævnt] pensionskasser foretager opkøb i danske virksomheder*".

SKAT_MDL_001_0075896

Af dokumentationen til den centrale sandsynlighedskontrol fremgår det, at forklaringen er oplyst af pågældende medarbejder, der har udarbejdet den lokale regnskabsgodkendelse.

I august 2014 er bemærkningen videreført i den centrale regnskabsgodkendelse, men ikke i den lokale regnskabsgodkendelse. I den lokale regnskabsgodkendelse er der dog, under punktet "Indtægter eller udgifter, som skønnes at have væsentlig betydning for, om regnskabet er retvisende", anført størrelsen af udbetalt refusion år til dato. Den udbetalte refusion er tillige oplyst i de lokale regnskabsgodkendelser i perioden september – december 2014.

Der er ingen bemærkninger i perioden januar – marts 2015.

I april 2015 er der igen i den lokale månedsgodkendelse anført størrelsen af udbetalt refusion år til dato. Der fremgår ingen bemærkninger af den centrale månedsgodkendelse.

I maj og juni 2015 er der i den centrale månedsgodkendelse anført bemærkninger til udviklingen. Det er anført, at "En del af stigningen kan henføres til at flere …… [specifikt land nævnt] pensionskasser foretager opkøb i danske virksomheder". Af dokumentationen til den gennemførte kontrol på centralt niveau fremgår det, at medarbejderen, der udarbejder lokal månedsgodkendelse, har oplyst, at "stigningen kan begrundes med flere …… [specifikt land nævnt] pensionskasser, der foretager opkøb i danske virksomheder". Af mailen fra pågældende medarbejder fremgår det desuden, at to specifikke virksomheders udlodning har forøget den samlede udbytteudlodning.

Det fremgår af dokumentationen til den gennemførte kontrol på centralt niveau, at medarbejderens årsagsforklaring vedrørende pensionskassernes opkøb vil blive omtalt som en del af forklaringen. I den lokale regnskabsgodkendelse for juni 2015 er der endvidere fremført, at der er igangsat en opgave med henblik på forbedring og effektivisering af processerne for refusion som følge af Intern Revisions bemærkninger til området.

Endelig er der i juli 2015 i begge regnskabsgodkendelser bemærkninger til udviklingen i den udbetalte refusion. Den centrale regnskabsgodkendelse er udarbejdet efter, at besvigelsessagen blev afdækket, og der henvises derfor til den.

## 11.7 Delkonklusion

I relation til blanketordningen, er det Intern Revisions vurdering, at de manuelle kontroller i relation til validering af fremsendte refusionsanmodningsblanketter ikke er tilstrækkelige. Dette skyldes, at sagsbehandleren ikke har et sammenligningsgrundlag, i form af vejledende oversigter af dokumenter fra de forskellige lande, der muliggør en sammenligning og validering af de fremsendte dokumenter.

SKAT_MDL_001_0075897

Vores gennemgang af 3S systemet viser, at der kun i begrænset omfang er indarbejdet programmerede inddata kontroller til sikring af fuldstændige, valide og ensartede data. Der er dog identificeret en kontrol til identifikation af dubletter, men kontrollen forudsætter en nøjagtig og ens angivelse af refusionsansøgeren i et tekstfelt.

Gennemgangen af 3S systemet viser endvidere et begrænset brug af programmerede kontroller. Der er en kontrol, som sikrer, at sagsbehandleren bliver orienteret, hvis der for et selskab samlet set, er anmodet om mere refusion, end selskabet har angivet i udbytteskat. Men kontrollen har for visse børsnoterede selskaber ikke fungeret i en periode på 2 år, og er først blevet genetableret i 2015. Det er Intern Revisions vurdering, at kontrollen ikke er designet hensigtsmæssigt, fordi kontrollen ikke tager højde for de refusionsanmodninger, som SKAT modtager via bankordningen.

En gennemgang af brugervejledninger og forretningsgangsbeskrivelser viser, at disse ikke løbende er ajourført i forbindelse med systemændringer. Det er forhold, som påvirker det samlede kontrolmiljø.

I relation til bankordningen, har SKAT uddelegeret en del af kontrolopgaverne til de involverede banker, og hermed er SKAT afhængig af, at bankerne har etableret effektive kontroller på området. Udbytteanmodningerne importeres ikke i 3S, hvorfor det ikke er muligt at foretage en sammenholdelse til eventuelle udbyttemodtagere, som selskaberne har indberettet til SKAT. Det kan ligeledes ikke udelukkes, at udbyttemodtageren, som får refusion via bankordningen, ikke også selv søger via blanketordningen.

I VP-ordningen har SKAT overladt kontrolopgaven med verifikation af udbytte-modtageren og udbetalingen af korrekt udbytteskat til VP. VP har etableret kontroller på området. SKAT følger ikke op på om disse kontroller er effektive.

SKAT foretager periodiske regnskabsgodkendelser. Det fremgår af de løbende regnskabsgodkendelser, at regnskaberne er godkendt uden forbehold. Udsvingene i refusion af udbytteskat er imidlertid bemærket i de månedlige regnskabs-godkendelser. Det er vores vurdering, at det fremstår for læseren, som om udsvingene er årsagsforklaret og dermed, at der ikke er problematiske forhold. Ud fra den foreliggende dokumentation, er det vores vurdering, at der ikke har været en tilstrækkelig kritisk stillingtagen til årsagsforklaringerne ved indarbejdelsen af disse i regnskabsgodkendelserne. Bemærkningerne til udsvingene er ikke ind-arbejdet i de kvartalsvise eller årlige regnskabsgodkendelser. Dette kan skyldes, at udsvingene fremstår som værende uproblematiske i de månedlige regnskabs-godkendelser.

SKAT_MDL_001_0075898

# 12.  2. forsvarslinje – kontroller

Anden forsvarslinie skal generelt omfatte de overvågende kontroller, som SKAT har implementeret med henblik på at sikre, at udbytteprocessen forløber som forudsat: Kontrollerne i 2. forsvarslinie bør primært omfatte styrings- og kontrolfunktioner for at støtte 1. forsvarslinie og vil omfatte følgende:

- Risikostyring
- Controlling
- Compliance
- Informationssikkerhed

**Risikostyring:**

Udbytteprocessen skal løbende være omfattet af en risikostyring, der omfatter hele processen. Risikostyringen skal løbende identificere de risici i udbytteprocessen, der kan medføre, at processens leverancer ikke realiseres med den ønskede kvalitet (korrekt angivelse, korrekt indberetning, systemafstemninger, bogføring samt korrekt opgørelse af udbytterefusion). Udbytteprocessen ses ikke at være omfattet af en løbende risikovurdering.

**Controlling:**

Controllingen, der omfatter hele udbytteprocessen, skal omfatte en løbende vurdering af, hvorvidt processen forløber som defineret af ledelsen. Controllingen skal tillige omfatte en vurdering af, om forretningsgangene indeholder indbyggede kontroller, der effektivt kan imødekomme de risici, der er identificeret ved risikostyringen. Controllingen skal tillige indeholde en vurdering af, hvorvidt forretningsgangene i udbytteprocessen indeholder overflødige kontrolforanstaltninger. Udbytteprocessen ses ikke at være omfattet af en systematisk controlling. En systematisk controlling vil tillige være besværliggjort af, at der ikke er implementeret et entydigt ansvar for processen i SKAT. Procesansvaret er fordelt på 3 direktørområder.

**Compliance:**

Udbytteområdet må betegnes som værende et relativt komplekst område. Det er derfor væsentligt, at de interne kontroller i forretningsgangene afspejler det juridiske regelsæt, samt at der løbende følges op på compliance.

SKAT_MDL_001_0075899

SKAT har til dato følgende afsluttede eller igangværende complianceundersøgelser:

1. Borgernes og virksomhedernes efterlevelse af skattereglerne.
2. Compliance - de største virksomheder, igangværende undersøgelse
3. Compliance told
4. Compliance punktafgifter, igangværende undersøgelse

Borgernes og virksomhedernes efterlevelse af skattereglerne, herunder udbytteskat, er undersøgt af tre omgange siden indkomståret 2006. Den seneste afsluttede complianceundersøgelse vedrører indkomståret 2012, hvor resultaterne af virksomhedernes regelefterlevelse dog ikke er afrapporteret endnu.

I complianceundersøgelsen for indkomståret 2010 blandt virksomhederne med mindre end 250 ansatte, har SKAT gennemført 2.998 kontroller (2.090 kontroller blandt selvstændig erhvervsdrivende og 908 kontroller blandt selskaber). Ved hver enkelt kontrol er der foretaget en grundig gennemgang af alle virksomhedens skattemæssige forhold. Der er ved complianceundersøgelsen konstateret manglende regelefterlevelse vedrørende udbytteskat.

**Informationssikkerhed:**

SKAT har etableret et informationssikkerhedskontor, som er placeret i koncernservice med rapportering til økonomidirektøren.

Som en del af 2. forsvarslinje er det informationssikkerhedskontorets primære opgave at vejlede, rådgive og assistere Skatteministeriets koncern, så kritiske og følsomme informationer, uanset medie, bliver beskyttet.

Sikkerhedskontoret har blandt andet fokus på IT-sikkerhed, medarbejdersikkerhed og fysisk sikkerhed, som udføres i tæt samarbejde med alle koncernens enheder. Kontoret udarbejder sikkerhedshåndbøger for medarbejdere og risikoejere samt vejledninger og yder rådgivning i en balanceret triangel af informationens karakter i forhold til fortrolighed, integritet og tilgængelighed.

Forhold som også dækker området for udbytteskat.

## 12.1 Delkonklusion

Generelt har risikostyringsaktiviteterne samt controllingaktiviteterne ikke fungeret tilfredsstillende for så vidt angår administrationen af udbytteskat og refusion af udbytteskat. 2 forsvarslinie har således ikke fungeret tilfredsstillende på dette område.

SKAT_MDL_001_0075900

# 13. Manglende effekt fra væsentlige IT-understøttede kontroller

Dette kapitel er medtaget for at synliggøre de væsentligste fundne svagheder i de IT-understøttede kontroller.

I 3S er der en forebyggende kontrol, som kan identificere refusionsanmodnings-dubletter. Systemet giver en besked til sagsbehandleren, hvis der er tastet flere refusionsanmodninger for samme modtager på samme udlodning. Dubletkontrollen er opsat således, at 3S kun foretager en sammenligning af de data, som er anført i feltet "Navn". Dette skyldes manglende indtastning af øvrige relevante data til identifikation af udbyttemodtageren, som kan gøres til genstand for en dubletsøgning, fx CPR-nr/CVR-nr eller Tinnr.

I 3S findes der en forebyggende kontrol, som orienterer sagsbehandleren, hvis der for et selskab bliver anmodet om et højere refusionsbeløb samlet set, end selskabet har angivet i udbytteskat. Designet af kontrollen tager dog ikke højde for de refusionsanmodninger, som SKAT modtager via bankordningen eller den del, som vedrører udbytteskat for danske udbytte modtagere. Dette bevirker, at den reelle udbytteskat, som SKAT kan forvente at modtage refusionsanmodninger om, er væsentligt lavere end den angivelse som 3S benytter i kontrollen.

I 3S har det for enkelte børsnoterede selskaber i 2013, 2014 og 2015 ikke været muligt at "taste" modtagne refusionsanmodninger på det udloddende selskabs angivelse. Fejlen er opstået i de tilfælde, hvor der i 3S har været registreret 2 angivelser for samme udlodning. 3S har ikke kunnet håndtere flere angivelser i forbindelse med den efterfølgende indrapportering af refusionsanmodninger og har præsenteret en "grøn skærm" for sagsbehandleren. Fejlen blev rettet i juli 2015, hvorefter 3S igen i alle tilfælde har kunnet sammenholde refusionsanmodninger i 3S med angivelsen af udbytteskat.

## 13.1 Delkonklusion

Der er i 3S etableret et antal forebyggende kontroller, som efter revisionens vurdering ikke er designet hensigtsmæssigt. Dubletkontrollen validerer kun på et tekstfelt og kunne forbedres ved også at omfatte andre felter fx Tinnr.

Kontrollen i relation til, at der ikke bliver anmodet om et højere refusionsbeløb samlet set, end selskabet har angivet i udbytteskat, tager ikke højde for de refusionsanmodninger, som SKAT modtager via bankordningen eller den del, som vedrører udbytteskat for danske udbytte modtagere. Angivelsesbeløbet i kontrollen skulle reduceres med disse anmodninger.

SKAT_MDL_001_0075901

Det har i en periode på 3 år, for enkelte børsnoterede selskaber, ikke været muligt at "taste" modtagne refusionsanmodninger på det udloddende selskabs angivelse. Fejlen skyldtes, at 3S ikke har kunnet håndtere flere angivelser for samme udlodning og har givet sagsbehandleren en "grøn skærm". Fejlen er udbedret i juli 2015.

SKAT_MDL_001_0075902

# 14. Data i eKapital

I eKapital indberettes oplysninger om udbyttemodtagere og udloddet udbytte med videre. Som beskrevet i kapitel 9 registreres indberetninger om udbyttemodtagere både fra børsnoterede og ikke noterede selskaber. Dette kapitel indeholder en beskrivelse af de væsentligste oplysninger, der er registreret i eKapital omkring valutaudlændinge. Kapitlet vil tillige redegøre for svagheder som følge af manglende oplysninger i systemerne.

Der er stor forskel på, hvilke oplysninger, der findes i eKapital om aktieejer, alt efter om en fysisk person har et depot med aktier, et selskab har et depot med aktier, som det selv ejer eller aktierne ligger i et samledepot i en udenlandsk bank (omnibusdepot).

Nedenfor er der redegjort for, hvilke væsentlige oplysninger der, som udgangspunkt, er indberettet i eKapital om udbyttemodtager for fysiske personer, selskaber og omnibusdepoter.

## 14.1 Fysiske personer

I Tabel 14.1. er der vist, hvilke oplysninger eKapital indeholder om fysiske personer:

Tabel 14.1 Oplysninger om den reelle udbyttemodtager for fysiske personer i eKapital:

| Identifikation af reelle udbyttemodtager | Depot-nummer | Navn på udloddende selskab | Antal aktier | Udloddet udbytte | Indeholdt udbytteskat | Omfattet af VP-ordning |
|---|---|---|---|---|---|---|
| ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |

**Tabel 14.1**

For fysiske personer indeholder eKapital således oplysninger om den enkelte udbyttemodtager.

## 14.2 Selskaber

I tabel 14.2 er der vist, hvilke oplysninger eKapital indeholder om selskaber, der har depot med egen beholdning af aktier.

Tabel 14.2 Oplysninger om den reelle udbyttemodtager for selskaber i eKapital:

| Identifikation af reelle udbytte-modtagere | Depot-nummer | Navn på udloddende selskab | Antal aktier | Udloddet udbytte | Indeholdt udbytteskat | Omfattet af VP-ordning |
|---|---|---|---|---|---|---|
| ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ₍✓₎ |

**Tabel 14.2**

For selskaber, der har depot med egen beholdning af aktier, indeholder eKapital således oplysninger om den enkelte udbyttemodtager.

## 14.3 Omnibusdepoter

I modsætning til et selskab, der har depot med egen beholdning af aktier som vist ovenover, vil depotføreren af et omnibusdepot ikke selv eje aktierne i depotet, men alene repræsentere aktieejer/udbyttemodtager. Som det fremgår af tabel 14.3 og tabel 14.3a nedenfor, får de indberettede oplysninger en anden karakter.

Tabel 14.3 Oplysninger om depotfører af omnibusdepot i eKapital:

| Identifikation af reelle udbytte-modtagere | Depot-nummer | Navn på udloddende selskab | Antal aktier | Udloddet udbytte | Indeholdt udbytteskat | Omfattet af VP-ordning |
|---|---|---|---|---|---|---|
| Nej kun oplysning om depotfører | ✓ | ✓ | ✓ | ✓ | ✓ | ./. |

**Tabel 14.3**

Tabel 14.3a Oplysninger om de reelle udbyttemodtagere for omnibusdepot i eKapital:

| Identifikation af reelle udbytte-modtagere | Depot-nummer | Navn på udloddende selskab | Antal aktier | Udloddet udbytte | Indeholdt udbytteskat | Omfattet af VP-ordning |
|---|---|---|---|---|---|---|
| ./. | ./. | ✓ | ./. | ./. | ./. | ./. |

**Tabel 14.3a**

Indberetningen til eKapital vil, som det fremgår i tabel 14.3 og 14.3a, ikke indeholde oplysning om den reelle udbyttemodtager. eKapital vil kun indeholde oplysninger til identifikation af omnibusdepotet og omnibusdepotet vil fremstå som udbyttemodtager.

## 14.4 Aktier fordelt på depoter ejet af fysiske personer, selskaber samt omnibusdepoter

Intern Revision har med udgangspunkt i to børsnoterede selskaber blandt C20 undersøgt, hvorledes aktierne for valutaudlændinge er fordelt på depoter, der er ejet af fysiske personer, selskaber samt omnibusdepoter.

SKAT_MDL_001_0075904

Data er udsøgt for indberetninger i eKapital via Business Objects.

| |
|---|
| For de børsnoterede selskaber var der følgende fordeling af antal aktier ejet af valutaudlændinge:<br><br>Selskab A:<br>• Fysiske personer    5 %<br>• Selskaber    1 %<br>• Omnibusdepoter    94 %<br><br>Selskab B:<br>• Fysiske personer    0 %<br>• Selskaber    3 %<br>• Omnibusdepoter    97 % |

**Tabel 14.4**

Fordelingen i tabel 14.4 viser, at danske aktier, der er ejet af valutaudlændinge, i langt overvejende grad ligger i omnibusdepoter.

Banker bliver ligesom øvrige selskaber indberettet i eKapital som "selskab". Det er ikke muligt at skelne, hvorvidt en bank har depot med egen beholdning af aktier, eller er depotfører. Vi har derfor kategoriseret alle banker som omnibusdepoter.

Indberetningen til eKapital om omnibusdepoter indeholder, som det fremgår i tabel 3 og 3a, ikke oplysninger om den reelle udbyttemodtager for aktier, der er placeret i depotet. eKapital vil kun indeholde oplysninger til identifikation af omnibusdepotet, og omnibusdepotet vil fremstå som udbyttemodtager.

SKAT vil derfor, i langt de fleste tilfælde, ikke være i besiddelse af oplysninger om den enkelte udbyttemodtager, der vil kunne danne grundlag for en kontrol ved behandling af en refusionsanmodning.

## 14.5 Delkonklusion

| |
|---|
| Indberetningen til eKapital om omnibusdepoter indeholder ikke oplysninger om den reelle udbyttemodtager for aktier, der er placeret i depotet. eKapital vil kun indeholde oplysninger til identifikation af omnibusdepotet, og omnibusdepotet vil fremstå som udbyttemodtager.<br><br>SKAT vil derfor, i langt de fleste tilfælde, ikke have oplysninger om den enkelte udbyttemodtager, der vil kunne danne grundlag for en grundlagskontrol ved behandling af en refusionsanmodning.<br><br>Intern Revisions undersøgelse af to børsnoterede selskaber blandt C20 viser, at danske aktier, der er ejet af valutaudlændinge, i langt overvejende grad er placeret i banker (bankdepoter), som sandsynligvis er omnibusdepoter. |

SKAT_MDL_001_0075905

# 15. SKATs opfølgning på revisionsrapporter

## 15.1 Intern Revisions rapportering og opfølgning

Intern Revision rapporterer løbende resultatet af den udførte revision til SKAT i særskilte revisionsrapporter. Revisionsrapporterne indeholder følgende informationer:

- En beskrivelse af det observerede forhold (observation)
- En beskrivelse af de risici, som observationen giver anledning til
- En anbefaling til reduktion af de identificerede risici

SKAT udarbejder handleplaner med henblik på at reducere de identificerede risici. Intern Revision vurderer handleplanerne og følger op på implementeringen af disse.

## 15.2 Oversigt over Intern Revisions rapporter

Intern Revision har de senere år (fra 2001 og frem) udarbejdet flere revisionsrapporter omhandlende udbytteskat. I nedenstående figur 15.1. er der præsenteret en oversigt over de udarbejdede rapporter:

| Dato | Revisionsrapporter | Revisionsomfang |
|---|---|---|
| 27. september 2001 J.nr 99/01-0721-00335 | Finansiel Revision af udbytte- og royaltyskatten ved Told- og Skatteregion Nærum | At gennemføre en finansiel revision af udbytte- og royaltyskat ved Told og Skatteregion Nærum. |
| 8. november 2002 J.nr. 99/02-0721-00414 | Finansiel opfølgningsrevision af udbytte- og royaltyskatten ved Told- og Skatteregion Nærum | At give en status på løsninger af de problemer, der blev bemærket i rapport fra 27. september 2001 "Finansiel Revision af udbytte- og royaltyskatten ved Told- og Skatteregion Nærum". |
| 30. januar 2006 J.nr. 05-0721-006524 | Revision af udbytteskatte-administrationen ved Skattecenter Ballerup. | At afdække om behandlingen af udbytteskat mv. sker på en tilfredsstillende måde i udbytteskatteadministrationen ved Skattecenter Ballerup. |
| 10. maj 2010 J.nr. 09-172022 | Undersøgelse af Provenuet fra kildebeskatningen af ud-lændinge - udbytteskat | Målet med den revisionsmæssige undersøgelse har været at undersøge om: |
| | | * Der kan opgøres et korrekt nettoprovenu fra refusions-ordningen ud fra de indberetninger, der sendes til SKAT om udbytter. |
| | | * SKAT mangler indberetninger/oplysninger til at kunne opgøre et korrekt nettoprovenu fra refusionsordningen. |
| | | * Forretningsprocesserne til opkrævning af udbytteskat er dokumenteret og kendte. |
| | | * Regnskab og IT-systemer i tilstrækkelig grad under-støtter en korrekt opgørelse af nettoprovenu fra refu-sionsordningen. |
| 30. maj 2013 J.nr. 13-005403 | Revision af udbytte- og royaltyskat for 2012 | Formålet med revisionen er at vurdere: |
| | | * Om SKAT har tilrettelagt regnskabsfunktionen på en tilfredsstillende måde, herunder etableret forretnings-gange og interne kontroller, der medvirker til at sikre en korrekt regnskabsaflæggelse. |
| | | * Om de initiativer som SKAT har sat i værk som følge af tidligere undersøgelser er dækkende og tilstrækkelige (jfr. Intern Revisions rapport af området maj 2010, hvori der blev givet en række anbefalinger). |

**Figur 15.1**

SKAT_MDL_001_0075906

Som eksempel har vi i **nedenstående figur 15.2.** vedrørende revisionsrapporten om udbytte- og royaltyskatten for 2012 præsenteret en oversigt over:

1.  Anbefaling opgjort på kategori (1 - rød, 2 - gul eller 3 grøn)
2.  Opgørelse på tidspunktet for de aftalte handleplaner samt
3.  Opgørelse over tidspunkter for fornyede handleplaner.

## 15.3 SKATs opfølgning på Intern Revision anbefalinger

**Revision af udbytte- og royaltyskat for 2012:**

| Revisionsrapport udbytte- og royaltyskat 2012 | Anbefaling | Handleplan tidsfrist | Ny tidsfrist for handle-plan | Ny tidsfrist for handle-plan | Ny tidsfrist for handle-plan | Ny tidsfrist for handle-plan | Tidsplan overskredet |
|---|---|---|---|---|---|---|---|
| Kategori 1 | 1. At få fastlagt klare regler for regnskabspraksis. Indregning af indtægter for udbytteskat bør foretages, så de indregnes indenfor de retningslinjer / regler som Budgetvejledningen og Moderniseringsstyrelsen fastsætter. | 31.12.2013 | 01.03.2014 | Q1 2014 Punktet er afsluttet | Ikke relevant punktet er afsluttet | Ikke relevant punktet er afsluttet | Ja 2 måneder |
| Kategori 1 | 2. At der bliver etableret et overordnet ansvar for hele processen til håndtering af udbytteskat | 30.04.2014 | 30.06.2014 | 30.09.2014 | Q3 2014 Punktet er afsluttet | Ikke relevant punktet er afsluttet | Ja 5 måneder |
| Kategori 1 | 3. At der bliver etableret afstemning eller anden form for kontrol, som sikrer, at alle data leveres nøjagtigt og fuldstændigt mellem systemerne | 30.04.2014 | 30.09.2014 | 31.12.2014 | Q4 2014 punktet er afsluttet | Ikke relevant punktet er afsluttet | Ja 8 måneder |
| Kategori 1 | 4. At der foretages afstemning mellem angivelse og indberetning | 30.04.2014 | 30.09.2014 | 31.12.2014 | Q4 2014 punktet er afsluttet | Ikke relevant punktet er afsluttet | Ja 8 måneder |
| Kategori 1 | 5. At der ledelsesmæssigt tages stilling til, hvorvidt bestemmelserne for at pålægge dagbøder samt skønsmæssigt fastsættelse tages i anvendelse som andre steder i organisationen | 31.12.2013 | 30.04.2014 | 30.09.2014 | 31.12.2014 | Q4 2014 punktet er afsluttet | Ja 1 år |
| Kategori 2 | 6. At SKAT sikrer sig bedre imod, at der ikke sker uretmæssig refusion af udbytteskat | 31.12.2013 | 30.04.2014 | 30.09.2014 | 31.12.2014 | Q4 2014 punktet er afsluttet | Ja 1 år |
| Kategori 2 | 7. At justere Regnskabsgodkendelsen, således at informationsværdien øges og den lever op til SKATs vejledning Regnskabsafslutning - lokale firmakoder | Punktet er afsluttet | Punktet er afsluttet | Punktet er afsluttet | Punktet er afsluttet | Ikke relevant punktet er afsluttet | N/A |
| Kategori 3 | 8. At der i forretningsgangene for udbetaling af refusion beskrives, hvad der skal kontrolleres / påses forinden anmodning imødekommes. | 31.12.2013 | 30.04.2014 | 30.09.2014 | 31.12.2014 | 31.05.2015 | Ja ca.1½ år |

**Figur 15.2**

Kategori 1 er udtryk for en væsentlig svaghed, der vurderes som et kritisk problem, som omgående bør vurderes af den ansvarlige direktør. Kategori 2 er udtryk for en betydelig svaghed, der vurderes som et problem, der bør tages hånd om. Kategori 3 er udtryk for et problem af mere formel karakter. Derudover er kategorisering af anbefalinger ligeledes et udtryk for, i hvilken rækkefølge anbefalingerne bør løses.

Det fremgår af figur 15.2, at tidsfristerne for afklaring af anbefalinger (uanset kategori som observation 1, 2 eller 3) er blevet udskudt op til flere gange.

SKAT_MDL_001_0075907

Det er ikke et enkeltstående tilfælde, at tidsfristerne for afklaring af anbefalinger overskrides. I revisionsrapport af 27. juni 2014 fremgår det, at:

> "Intern Revision har ved gennemgangen konstateret, at der kun i begrænset omfang er sket opfølgning. De enkelte revisionsbemærkninger er ansvarsplaceret, og der er afsat tidsfrister for tiltag. Tidsfristerne for flere tiltag er imidlertid udskudt af flere omgange".

*(Revisionsrapporten vedrører* SKATs opfølgning på Intern Revisions anbefalinger og identificerede, ikke-korrigerede fejl fra tidligere år, j.nr. 14-0387758, side 1).

## 15.4 SKATs interne opfølgningsprocedurer på revisionsrapporter

SKAT har beskrevet de interne opfølgningsprocedurer på revisionsrapporter i notat fra februar 2013. Opfølgningen på kritiske revisionsrapporter ("ikke helt tilfredsstillende" og "ikke tilfredsstillende") er gengivet i nedenstående figur 15.3:



**Figur 15.3**

Intern Revision sender revisionsrapporter, der vedrører SKAT til afdelingen Budget og Regnskab i SKAT.

Kritiske revisionsrapporter ("ikke helt tilfredsstillende" og "ikke tilfredsstillende") drøftes i SKATs direktion. Det besluttes, hvilken (hvilke) direktør/-er for de enkelte forretningsområder, der er ansvarlige for at foretage opfølgningen på den pågældende revisionsrapport. Direktørerne har 3 uger til at melde tilbage til Budget og Regnskab om, hvilken opfølgning revisionsrapporten giver anledning til.

I SKAT (Budget og Regnskab) koordineres indsatsen med revisionsrapporterne, hvor der udføres følgende:

- Opfølgning på revisionsrapporterne fra de enkelte direktører
- Vurdering af hvorvidt opfølgningen er dækkende
- Indfører oplysninger i opfølgningsprotokollen

SKAT_MDL_001_0075908

Status fra direktørerne på opfølgningen, herunder Budget og Regnskabs vurdering af hvorvidt opfølgningen er dækkende, opsamles i en opfølgningsprotokol, der forelægges SKATs Direktion, inden den sendes til Intern Revision.

Intern Revision har fra foråret 2014 ændret rapporteringen. Opfølgningen foregår nu med udgangspunkt i handleplaner, der indarbejdes i revisionsrapporterne. Derfor modtager Intern Revision ikke længere opfølgningsprotokoller.

SKAT har over for Intern Revision oplyst, at en markering af en lukning ikke nødvendigvis betyder, at SKAT betragter anbefalingen som lukket, da der fortsat pågår et arbejde i SKAT med henblik på at implementere anbefalingen. Anbefalingen vil dog ikke længere stå som udestående i den efterfølgende opfølgningsoversigt til ledelsen. Det er Intern Revisions vurdering, at der er risiko for, at ledelsen i SKAT, ikke vil have tilstrækkelig opmærksomhed på risici, der reelt ikke er afdækket, efter der er foretaget en lukkemarkering af en anbefaling.

## 15.5 SKATs opfølgning på revisionsrapporten Udbytte- og royaltyskat for 2012

I forbindelse med revisionen af **Udbytte- og royaltyskat for 2012** kan vi, på baggrund af direktionsreferat af 17. juni 2013, konstatere, at direktionen i SKAT besluttede, at forretningsenhederne Kundeservice og Inddrivelse skulle følge op på rapporten fra Intern Revision. I det efterfølgende er der givet 2 eksempler på SKATs opfølgning på anbefalinger fra revisionsrapporten Udbytte- og royaltyskat for 2012.

### 15.5.1. Anbefaling – uretmæssig refusion af udbytteskat
I SKATs kvartalsvise opfølgningsprotokol fremgår det, at den efterfølgende operationelle opfølgning er udført med forretningsenheden Inddrivelse som ansvarlig.

En af anbefalingerne i revisionsrapporten omhandlede, at der er behov for, at SKAT sikrer sig bedre mod, at der ikke sker uretmæssig refusion af udbytteskat jf. nedenstående figur 15.4. Denne anbefaling var særlig rettet mod refusion af udbytteskat, der foregår via bankordningen. (Refusion af udbytteskat via bankordningen er beskrevet i kapitel 9.).

**Anbefaling fra Intern Revision**:
"Der er behov for, at SKAT sikrer sig bedre imod, at der ikke sker uretmæssig refusion af udbytteskat".

**Opfølgning fra SKAT Q4 2014 - argumentation for afslutning af anbefaling**
"Proces for refusion af udbytteskat er under udarbejdelse i Udvikling Erhverv i samarbejde med Betaling og Regnskab. Udvikling Erhverv deltager i TRACE projektet, hvor der i EU-regi er taget beslutning om fælles regler for etablering af et system til indeholdelse/refusion af udbytteskat til udenlandske udbyttemodtagere, herunder muligheden for nettoindeholdelse".

**Figur 15.4**

SKAT_MDL_001_0075909

Anbefalingen blev markeret lukket i Q4 2014 af SKAT med henvisning til, at Udvikling Erhverv deltager i TRACE projektet. Intern Revision vurderer, at anbefalingen er blevet markeret afsluttet på et utilstrækkeligt grundlag. Det er vores vurdering, at området stadig burde være genstand for behandling i direktionen i SKAT.

På baggrund af Intern Revisions undersøgelse 2010 blev der i SKAT nedsat en arbejdsgruppe som bl.a. kom frem til, at refusion af dansk udbytteskat til udenlandske udbyttemodtagere og den tekniske behandling heraf mangler revisionsspor. I revisionsrapporten Udbytte- og royaltyskat for 2012 fulgte Intern Revision op på status af arbejdsgruppen anbefalinger.

"Intern Revision konstaterede, at SKAT sammen med andre OECD-lande arbejder på en fælles nettoafregning af udbytte til udenlandske aktionærer og at der lå en brugbar model klar. SKAT var imidlertid afhængig af, at udenlandske pengeinstitutter ville deltage samt at større lande ville tilslutte sig modellen. Det var Intern Revisions opfattelse, at SKAT havde gjort et tilfredsstillende arbejde i forhold til at indføre en fælles nettoafregning af udbytte til udenlandske aktionærer".

Det er fortsat Intern Revisions vurdering, at en fuld nettoafregning af udbytteskat over for udbyttemodtagere som ikke er fuldt skattepligtige til Danmark, vil være den mest optimale løsning. En fælles ordning vedrørende nettoafregning er imidlertid ikke taget i brug. Der er derfor fortsat behov for, at SKAT reducerer risici i forhold til, at der sker uretmæssig refusion af udbytteskat.

### 15.5.2. Anbefaling – ledelsesmæssigt fokus
En tredje kritisk anbefaling i revisionen af Udbytte- og royaltyskat for 2012 omhandlede det ledelsesmæssige ansvar for processen jf. nedenstående figur.

> **Anbefaling fra Intern Revision:**
> "Der er behov for, at der bliver etableret et overordnet ansvar (ledelsesmæssigt fokus) for hele processen til håndtering af udbytteskat".
>
> **Opfølgning fra SKAT Q3 2014 - argumentation for afslutning af anbefaling**
> "Ved implementeringen af Ny Tastselv-løsning nedsættes en arbejdsgruppe mellem Betaling & Regnskab samt procesejer, hvor formålet bliver at beskrive den arbejdsmæssige proces samt belyse eventuelle fokusområder i forbindelse med fremtidig Intern Kvalitetssikring".

Figur 15.5

Anbefalingen blev markeret lukket i Q3 2014 af SKAT. Intern Revision vurderer, at anbefalingen er blevet markeret afsluttet på et utilstrækkeligt grundlag. Det er vores vurdering, at området stadig burde være genstand for behandling i direktionen i SKAT.

SKAT_MDL_001_0075910

### 15.5.3 Intern Revisions sparring med SKAT

På foranledning af SKAT har der i perioden efteråret 2014 til foråret 2015 været afholdt opfølgende mødeaktiviteter vedrørende anbefalingerne i Intern Revisions revisionsrapport om revision af Udbytte- og royaltyskat for 2012. Mødeaktiviteterne har været afholdt mellem SKAT (Afdeling for Selskaber og Digitalisering) og Intern Revision. Møderne var rettet imod afstemninger mellem systemer samt afstemning og kontrolmuligheder. I forlængelse af mødeaktiviteterne har Intern Revision i juli 2015 bedt SKAT give en redegørelse inkl. dokumentation for de 5 væsentligste anbefalinger i revisionsrapporten. SKAT har den 20. august 2015 redegjort for status for de 5 væsentligste bemærkninger i revisionsrapporten. I SKATs redegørelse august 2015 er i overvejende grad gengivet SKATs begrundelser i forbindelse med lukning af anbefalingerne i 2014 med en tilføjelse af yderligere orientering om processen efter lukningen af anbefalingen.

## 15.6 Delkonklusion

Direktionen i SKAT besluttede i forlængelse af Intern Revisions revisionsrapport om revisionen af **Udbytte- og royaltyskat for 2012**, at forretningsenhederne Kundeservice og Inddrivelse skulle følge op på rapporten.

Rapporten **Udbytte- og royaltyskat for 2012** indeholdt en række anbefalinger fra Intern Revision, hvoraf tre af anbefalinger var:

- At der blev etableret et overordnet ansvar (ledelsesmæssig fokus) for hele processen til håndtering af udbytteskat.
- At SKAT sikre sig bedre i mod, at der ikke sker uretmæssig refusion af udbytteskat. Anbefalingen var særligt rettet mod refusioner via bankordningen.
- At der foretages afstemning mellem angivelse og indberetning for de børsnoterede selskaber.

Intern Revision har konstateret, at SKAT har markeret de tre ovennævnte anbefalinger som lukket i 2014. Det er Intern Revisions vurdering, at SKAT ikke har elimineret eller reduceret risiciene knyttet til de tre ovennævnte anbefalinger forinden anbefalingerne markeres som lukket af SKAT.

Selvom en anbefaling bliver markeret som lukket af SKAT, kan der fortsat pågå et arbejde i SKAT med henblik på at imødegå risikoen. Det er Intern Revisions vurdering, at såfremt der fortsat pågår et arbejde på at imødegå risikoen, kan risikoen ikke anses for at være afdækket. Anbefalingen kan dermed ikke betragtes som værende lukket.

SKAT_MDL_001_0075911

# 16. Gennemførelse af bedrageri

SKAT har fået 2 uafhængige anmeldelser om, at SKAT kan have været udsat for økonomisk kriminalitet. Bedrageriet er blevet udført via den manuelle ordning, der er beskrevet under kapitel 9 (afsnit 9.4.1.) Modellen er gengivet i nedenstående figur 16.1.



**Figur 16.1**

De implicerede i sagen benytter selskaber beliggende i lande, som Danmark har indgået en _dobbeltbeskatningsoverenskomst (DBO)_ med.

SKATs foreløbige undersøgelse viser, at den økonomiske kriminalitet har bestået i, at selskaberne søger refusion af indeholdt udbytteskat fra danske aktieselskaber, som de angiver at eje en del af.

SKATs foreløbige undersøgelse har endvidere vist, at hovedparten af et større antal navngivne udenlandske selskaber har fået udbetalt refusion fra SKAT for påstået indeholdt udbytteskat.

Den økonomiske kriminalitet har foregået i perioden 2012 - 2015 og har omfattet i alt 15 børsnoterede selskaber i C20 indekset. Processen for bedrageriet er illustreret i nedenstående figur **jævnfør 16.2**.



Et antal udenlandske selskaber
har fået udbetalt refusion i
perioden 2010-2015

Indsendte dokumenter til SKAT

Punkt 4. Depotoversigt formodes
at være falsk

**Figur 16.2**

SKAT_MDL_001_0075912

Ved ansøgning om refusion har ansøgerne i forbindelse med anmodning om refusion indsendt følgende dokumenter til SKAT:

1. SKAT _blanke_t med oplysning om selskabets navn, den tilbagesøgte udbytteskats størrelse og bankkonto til brug for SKATs udbetaling.
2. _Fuldmagt_, som giver agenten ret til at handle på selskabets vegne.
3. _Erklæring_ fra den udenlandske skattemyndighed om, at selskabet er hjemmehørende i et bestemt land.
4. _Depotoversigt_ fra depotførende selskab

SKAT formoder, at det sidstnævnte dokument er falsk. Der er ikke tale om en original depotoversigt. Dokumentet indeholder oplysninger om ejeren af aktien, navnet på aktien, antal aktier, udbytte og udbytteskattens størrelse. Dokumentet indeholder ingen oplysninger om depotnummer eller andet.

## 16.1 Delkonklusion

Gennemførelse af bedrageriet er sket ved, at et større antal navngivne udenlandske selskaber har ansøgt refusion af indeholdt udbytteskat fra danske aktieselskaber i C20 indekset, som de angiver at eje aktier i.

SKAT_MDL_001_0075913

# 17. Departementets initiativer for at styrke processer og kontroller

## 17.1 Turnusanalyse af betalings- og regnskabsområdet

Intern Revision har i en række revisionsrapporter, der omhandler regnskabet for finanslovens §38, afgivet anbefalinger til afklaring af en række kritiske forhold. Departementet har oplyst, at rapporterne har bidraget til, at betalings- og regnskabsområdet har været betragtet som forbundet med høj risiko i departementets overordnede risikostyring af SKAT. På denne baggrund har departementet iværksat en turnusanalyse af betalings- og regnskabsområdet i SKAT. Analysen er gennemført i perioden august 2014 til marts 2015 og med rapportering i juni 2015.

SKAT har i væsentlig omfang været involveret ved gennemførelsen af turnusanalysen.

Analysen har omfattet regnskabsopgaven, der er knyttet til statens samlede indtægter jævnfør finanslovens §38. Betalings- og regnskabsområdet i SKAT skal sikre korrekt håndtering af alle betalinger af skatter og afgifter mellem staten og borgere/virksomheder samt aflæggelse af et korrekt og retvisende regnskab for finanslovens §38. I analysen er det dels undersøgt, om SKAT løser de rigtige opgaver, dels om SKAT løser sine opgaver med den tilsigtede effekt og med den fornødne produktivitet.

Analysen viser, at der vil være gode muligheder for både at understøtte bedre kvalitet i opgaveløsningen og reducere ressourceanvendelsen til formålet. Vurderingen i analysen er, at det vil være nødvendigt at tilføre specialiserede kompetencer til Betaling og Regnskab for at sikre den fulde implementering af forslagskataloget.

Analysens forslagskatalog indeholder forslag til styrkelse af 1. og 2. forsvarslinje jævnfør modellen for de tre forsvarslinjer. Nedenfor er der fokuseret på forslag til styrkelse af 2. forsvarslinje, der omfatter tilsynsopgaverne med ledelsen og den interne kontrol.

Analyserapporten fremsætter bl.a. følgende forslag:

1. Etablering af en grundlæggende governance struktur for regnskabsprocessen
2. Definition og placering af proces-, system-, og dataejerskab og samarbejde med dataejere
3. Løbende risikoanalyse
4. Monitorerings- og rapporteringsstruktur
5. Fejlanalysefunktion og hændelses managementsystem
6. Optimering af regnskabsprocesser.

Nedenfor er analyserapportens omtale af formålet med det enkelte forslag og de forventede gevinster for hvert forslag resuméret:

SKAT_MDL_001_0075914

**Ad 1 Etablering af en grundlæggende governance struktur for regnskabs-processen**

Formålet med forslaget er at fastlægge og tydeliggøre den basale ansvars- og rollefordeling for udarbejdelse af §38 regnskabet. Den bør opbygges i overensstemmelse med modellen for de tre forsvarslinjer.

Formålet er endvidere at styrke overvågningen, rådgivningen samt at evaluere risikorapporteringen med henblik på at vejlede om tilstrækkeligheden af risikoanalyser og kontrolaktiviteter.

Forventede gevinster:
- Etablering af det afgørende grundlag for opbygningen af det nødvendige kontrolmiljø og den nødvendige risikostyring, der vil styrke kvaliteten i opgaveløsningen i betalings- og regnskabsområdet, og dermed de centrale aftagere af det tilhørende data

- I takt med at kontroller og risikostyring reducerer omfanget af fejl i regnskaber og transaktioner, vil forslaget være en forudsætning for indhøstning af effektiviseringsgevinster.

- Det vurderes at have særskilt værdi at tydeliggøre indholdet af betalings- og regnskabsopgaven med tilhørende beføjelser i en rolle som koncernregn-skabschef, og at det overordnede ansvar for at løfte disse opgaver forankres formelt på underdirektørniveauet.

**Ad 2 Definition og placering af proces-, system-, og dataejerskab, og samar-bejdet med dataejere**

Formålet med forslaget er at operationalisere governance strukturen og dermed, at alle de processer og data flows, der har betydning for betalings- og regnskabsopgaven, defineres og placeres, uanset om de hører hjemme inden for eller uden for betalingsområdet. Endvidere er formålet at sikre, at koncernregnskabschefen, som ejer af regnskabsprocessen, kan stille krav til de relevante data-, proces-, og systemejere om kvaliteten af data, der skal indgå i regnskabs-processen.

Forventede gevinster:
- Styrkelse af kvaliteten af betalings- og regnskabsopgaven.
- Styrkelse af anvendeligheden af data.
- Effektivisering af opgaveløsningen.
- Bidrag til at skabe klarhed i governance strukturen vedrørende samspillet mellem procesejerskab og dataejerskab i relation til regnskabsprocessen.

SKAT_MDL_001_0075915

**Ad 3 Betaling og Regnskab skal foretage løbende risikoanalyser**

Formålet med forslaget er at foretage en tværgående analyse af regnskabspro-cesserne for at vurdere risikoen for, at fejl opstår. Analysen skal udpege, hvor fejl kan opstå, dokumentere karakteren af disse potentielle fejl og kvantificere sandsynligheden og konsekvensen af disse fejl.

Forventede gevinster:
- Styrkelse af kvaliteten af betalings- og regnskabsopgaven
- Styrkelse af anvendeligheden af data, og reducering af mulige kilder til afvigelser fra det forventede
- Effektivisering af opgaveløsningen.


**Ad 4 Monitorerings- og rapporteringsstruktur**

Formålet med forslaget er at etablere monitorering af de interne kontroller for at sikre at de udføres i henhold til planen. Videre peger analysen på at overveje at flytte nuværende kontrolaktiviteter fra første til anden forsvarslinje.

Forventede gevinster:
- Styrkelse af kvaliteten i betalings- og regnskabsopgaven
- Styrkelse af anvendeligheden af data, og reducering af mulige kilder til afvigelser fra det forventede
- Effektivisering af opgaveløsningen.


**Ad 5 Fejlanalysefunktion og hændelses managementsystem**

Formålet med forslaget er at eventuelle fejl eller uregelmæssigheder, der påvirker regnskabet, opdages, analyseres, korrigeres og forbygges, så arbejdet med fejl samlet set drejes i en så proaktiv retning som muligt.

Forventede gevinster:
- Styrkelse af kvaliteten i betalings- og regnskabsopgaven
- Effektivisering af opgaveløsningen ved at fjerne fejl og dermed behovet for ressourcer til at afhjælpe fejl.

**Ad 6 Optimering af regnskabsprocesser**

Formålet med forslaget er at sikre samme kvalitetsniveau til de regnskabsmæssige processer på tværs af skattearter, at undgå overlappende kontroller ved at fokusere på skattearten frem for systemanvendelsen, og at fremskynde regnskabsaflæggelsen til gavn for aftagerne af regnskabet.

Forventede gevinster:
- Sikre overholdelse af en (forventet strammere) tidsplan for lukkeprocessen
- Sikre at alle væsentlige konti er afstemt efter en afstemningsplan
- Sikre et fundament for løbende optimering af processer.

SKAT_MDL_001_0075916

## 17.2 God processtyring i SKAT

Departementet har i forbindelse med etableringen af en ny, integreret styringsmodel for SKAT identificeret et behov for at præcisere styringen af processer i SKAT. Der blev med henblik herpå gennemført en analyse i 2014. Analysens anbefalinger er ved at blive implementeret af SKAT gennem følgende initiativer end-to- end, på tværs af direktørområderne i SKAT:

- Der er etableret en procesejer rolle for alle SKATs processer, og at ansvar og beføjelser for procesejere er klart defineret.
- Der er etableret roller for koordinering på tværs af SKATs processerne, og at ansvar og beføjelser for koordinatorrollen er klart defineret.
- Det er i procesejer rollen og koordineringsrollen konkretiseret, hvad der skal iagttages, for at sikre deres juridiske holdbarhed, deres økonomisk forsvarlige forvaltning, og udarbejdelsen af rigtige regnskaber.
- Der er etableret et fælles begrebskatalog, som anvendes i al kommunikation.
- Der er etableret en entydig sammenhæng mellem SKATs processer og SKATs overordnede mål, og der følges løbende op på målopfyldelsen for væsentlige processer via rettidig, relevant og aktuel ledelsesrapportering.

## 17.3 Delkonklusion

Det er Intern Revisions vurdering, at de initiativer Skatteministeriets departement har iværksat på regnskabs- og betalingsområdet samt på procesområdet i væsent- lig omfang vil højne kvaliteten af SKATs regnskabsprocesser dels via en systematisk struktur for regnskabsprocessen og dels via en løbende overvågning, der i langt højere grad er analytisk funderet, end det er tilfældet på nuværende tidspunkt.

SKAT_MDL_001_0075917

# 18. Oversigt over sager i Skatteministeriet

I forbindelse med Intern Revisions undersøgelse af SKATs administration af udbytteskatten har skatteministeren oplyst til Skatteudvalget, at Intern Revisions redegørelse ligeledes vil indeholde en redegørelse for sager i Skatteministeriet (SKM) vedrørende refusion af udbytteskat, herunder konkrete lovforslag og forelæggelser for minister og departementschef.

SKM har i den forbindelse udarbejdet bilag 2A, Oversigt over sager i Skatteministeriet samt bilag 2B, Procespapir vedrørende udsøgning af sager og dokumenter i Skatteministeriet vedrørende refusion af kildeskatter.

Intern Revision har gennemgået bilag 2A og 2B og har ikke bemærkninger hertil.

Det skal særskilt anføres, at der ikke har været ministerforelæggelser af spørgsmål om tilbagebetaling af udbytter siden 2005, herunder efter advarslerne fra SKATs interne revision i 2010 og 2013.

SKAT_MDL_001_0075918

# 19. SKATs implementering af lovændringer

Fremm den til 1. januar 2012 blev angivelse af deklareret udbytte og indberetning af udbyttemodtagere foretaget på forskellige tidspunkter. Angivelse af deklareret udbytte skulle ske i umiddelbar tidsmæssig tilknytning til selskabets udbyttemeddelelse. Indberetning af udbyttemodtagere skulle ske senest den 20. januar i året efter deklarationen af udbytte.

Dette medførte to uhensigtsmæssige forhold:

- Afstemningen mellem angivet udbytte og indberettede udbyttemodtagere kunne først gennemføres på et fuldstændigt og nøjagtigt grundlag med en forsinkelse på op til et år.

- Aktionærer havde mulighed for at søge om refusion af udbytteskat umiddelbart efter selskabets deklaration af udbytte. På dette tidspunkt havde SKAT ingen informationer om udbyttemodtagerne. Efter renteloven skal der tidligst betales rente, når der er gået 30 dage efter den dag, hvor skyldneren var i stand til at indhente de oplysninger, som må anses for nødvendige for at bedømme kravets berettigelse og størrelse. Ved administrationen af refusion af udbytteskat har SKAT dog lagt til grund, at tilbagebetaling som udgangspunkt skal ske inden for 30 dage efter, at SKAT har modtaget anmodningen om tilbagebetaling.

Med henblik på at styrke SKATs mulighed for kontrol med udbytteskat blev der i 2009 gennemført en ændring af skattekontrolloven. Ændringen gav mulighed for at ændre bekendtgørelse om indberetningspligt efter skattekontrolloven (indberetnings-bekendtgørelsen), herunder sikre samtidighed mellem angivelse og indberetning af udbytte. Ændringer i indberetningsbekendtgørelsen blev gennemført med virkning for udlodning af udbytte på unoterede aktier fra og med den 1. januar 2012 og for udlod-ning af udbytte på noterede aktier fra og med den 1. januar 2013.

Endvidere blev der ved lov af 18. juni 2012 indført en bestemmelse i kildeskatteloven om, at der tidligst sker forrentning 6 måneder efter, at grundlaget for udbetaling er tilstrækkeligt oplyst.

**Implementering af ændringerne i SKAT**
SKAT har i forbindelse med ændringerne i indberetningsbekendtgørelsen tilpasset den systemmæssige opsætning.

For så vidt angår de unoterede selskaber er processen ændret således, at angivelse og indberetning sker på samme tid. I forbindelse med angivelse og indberetning sker der en systemmæssig sammentælling og afstemning.

For så vidt angår de børsnoterede selskaber gennemføres angivelse og indberetning fortsat som to adskilte processer. Der er dog tidsmæssig overensstemmelse mellem de to processer.

SKAT_MDL_001_0075919

Medio 2015 har SKAT endnu ikke etableret en afstemning mellem angivelse af udbytte og indberetning af udbyttemodtagere for de børsnoterede selskaber.

Ændringerne i indberetningsbekendtgørelsen medfører, at SKAT umiddelbart efter virksomhedernes deklarering af udbytte har adgang til viden om de udbyttemodtagende aktionærer. Disse data har dog ikke fuldt ud kunnet anvendes som kontrol ved efterfølgende anmodning om refusion af udbytteskat, da en del af disse data foreligger på sumniveau. SKAT har i perioden efter ændringen i indberetningsbekendtgørelsen ikke arbejdet med ændring af datastruktur med videre.

De væsentligste initiativer og lovgivning i perioden 2007-2015 er vist i bilag 1.

Figur 18.1 Sammenhænge mellem angivelse og indberetning af udbytte før og efter ændringer i indberetningsbekendtgørelsen.

**Angivelse og indberetning af udbytte før ændring af indberetningsbekendtgørelsen**

Deklarering af udbytte og angivelse heraf f. eks. 10 mio. kr. den 1/3 20x1 uden fordeling på udbyttemodtagere

Indberetning af de enkelte udbyttemodtagere for i alt 10 mio. kr. sker den 20/1 20x2 - altså året efter, at udbyttet er udloddet

1/3 20x1    15/3 20x1    20/1 20x2

15/3 20x1-20/1 20x2
SKAT modtager anmodninger om refusion af udbytteskat.

SKAT har ikke mulighed for at afstemme anmodninger til udbyttemodtagere.

Sagsbebehandlingsted presset af bestemmelser i renteloven om 30 dages frist/6 måneders frist.

Fra den 20/1 20x2 etableres der mulighed for at afstemme anmodninger om refusion af udbytteskat til udbyttemodtage-

**Angivelse og indberetning af udbytte efter ændring af indberetningsbekendtgørelsen**

Deklarering af udbytte og angivelse heraf f. eks. 10 mio. kr. samt indberetning af de enkelte udbyttemodtagere af de 10. mio. kr. den 1/3 20x1

1/3 20x1    15/3 20x1

15/3 20x1-
SKAT modtager anmodninger om refusion af udbytteskat.

SKAT har mulighed for at afstemme anmodninger til udbyttemodtagere.

Sagsbebehandlingsted fortsat presset af bestemmelser i renteloven om 30 dages frist/6 måneders frist

**Figur 19.1**

SKAT_MDL_001_0075920

## 19.1 Delkonklusion

SKATs administration har i perioden 2007-2015 løbende gjort Skatteministeriets departement opmærksom på en række uhensigtsmæssigheder i de administrative processer samt om behov for ændringer i bekendtgørelser og love vedrørende udbytteskat – særligt således, at det sikres, at angivelse og indberetning af udbytte sker samtidigt. Departementet har udarbejdet udkast til lovforslag og udkast til bekendtgørelser som opfølgning på dette. Folketinget har i 2009 vedtaget en ændring i skattekontrolloven, der giver hjemmel til at sikre samtidighed mellem angivelse og indberetning af udbytte og dermed mulighed for bedre kontrol med refusion af udbytteskat.

Lovhjemlen er udnyttet i indberetningsbekendtgørelser i 2011 og 2012 for henholdsvis unoterede og noterede aktier. Ændringerne i indberetningsbekendtgørelserne havde virkning for udlodning af udbytte fra og med den 1. januar 2012 for unoterede aktier og fra og med den 1. januar 2013 for note-rede aktier. Skatteministeren har været forelagt udkast til lovforslag og udkast til bekendtgørelser. I disse forelæggelser redegøres for problemerne med manglende samtidighed mellem angivelse og indberetning af udbytte. SKAT har i perioden efter ændring af indberetningsbekendtgørelsen ikke arbejdet med ændring af datastruktur samt ikke etableret en afstemning mellem angivelse af udbytte og indberetning af udbyttemodtagere for de børsnoterede selskaber.

SKAT_MDL_001_0075921

# 20. Forslag til fremadrettet administration

**Nuværende grundlag**
Det fremgår af denne rapport, at de indbyggede interne kontroller i udbetalingsrutinerne har været svage. Udbetalingskontrollen har hovedsageligt omfattet en vurdering og efterregning af modtagne dokumenter fra de refusionssøgende aktionærer eller deres repræsentanter. Udbetalingskontrollen har ikke omfattet en vurdering af, hvorvidt forudsætningen for udbetaling af udbytterevision har været tilstede:

- Er refusionsansøgeren aktionær i det selskab for hvilket, der søges refusion for indeholdt udbytteskat

- Repræsenterer diverse refusionsansøgende "mellemmænd" reelle aktionærer

- Foreligger der, forud for refusionsansøgningen, en indeholdelse og betaling af udbytteskat

**Effektive kontroller i de fremtidige forretningsgange**
Det forudsættes, at de fremtidige forretningsgange og heri indbyggede interne kontroller skal designes således, at risikoen for at gennemføre fejlagtige udbetalinger reduceres i størst muligt omfang. Der skal således designes interne kontroller, der effektivt kan reducere følgende risiko:

> Risiko for at acceptere og godkende refusionsanmodninger, der ikke har relation til et konkret aktionærforhold og en forudgående udbytteindeholdelse og udbyttebetaling.

Effektive interne kontroller kan kun implementeres, såfremt det er muligt effektivt at anvende oplysninger om de udbyttemodtagende aktionærer. Tidligere i denne rapport er der redegjort for, at det udbyttebetalende selskab dels skal angive det udloddede udbytte til SKAT og dels skal indberette udbyttemodtagerne til SKAT. Umiddelbart burde det således være relativt enkelt ved behandlingen af refusionsbehandlingen at kontrollere, hvorvidt der er gennemført en forudgående udbyttebetaling. De relevante data, der skal anvendes for at udføre denne kontrol burde være i SKATs besiddelse.

I mange tilfælde vil SKAT dog ikke være i besiddelse af data vedrørende de enkelte udbyttemodtagere (aktionærer). Såfremt aktionærer, der er underkastet udenlandsk skattepligt, har placeret aktierne i et såkaldt omnibusdepot, vil SKATs systemer kun indeholde informationer om den pågældende depotfører samt oplysninger om de aktier, der administreres af omnibusdepotet. Endvidere registreres udbetalt udbytte jf. de etablerede bankordninger ikke i udbyttesystemerne. I stedet gennemføres en direkte udbetaling til refusionsansøgeren.

SKAT_MDL_001_0075922

**Etablering af et fuldstændigt datagrundlag**

Der bør etableres et fuldstændigt datagrundlag i SKATs udbyttesystemer (3S, eKapital). Endvidere bør data foreligge i en form, der tilgodeser udbetalingskontrollen. Der skal være samsvar mellem udbyttemodtager i SKATs systemer (eKapital) og de modtagne refusionsanmodninger. Systemet eKapital skal ikke nødvendigvis indeholde information om den enkelte aktionær men de modtagne refusionsanmodninger (på aktionærniveau eller depotniveau) skal repræsentere de depotførere/aktionærer, der er registreret i eKapital.

**Udarbejdelse af udbetalingsgrundlag**

I henhold til den nuværende praksis udarbejder udbyttemodtager en refusionsanmodning bilagt relevante dokumenter. Det kan overvejes at ændre praksis, således at SKAT med udgangspunkt i egne registreringer beregner refusionen for de enkelte udbyttemodtagere. Herved vil SKAT i højere grad kunne styre udbetalingsprocessen.

## 20.1 Delkonklusion

Ved etablering af et fremtidigt system for en effektiv administration af udbytterefusion bør registreringer, om de enkelte udbyttemodtagere, udgøre det centrale element ved design af en effektiv kontrol. Den interne kontrol skal understøttes af IT-løsningen. Det bør kun være muligt at registrere udbytterefusioner i SKATs udbyttesystemer, såfremt den pågældende refusionsansøger i forvejen er registreret som udbyttemodtager.

SKAT_MDL_001_0075923

# 21.  Bilagsoversigt

## Bilag 1 Oversigt over tidsforløb vedrørende initiativer og lovgivning

**Oversigt over tidsforløb vedrørende initiativer og lovgivning**

| Emne | Tidspunkt | SKAT | Tidspunkt | Skatteministeriets departement | Tidspunkt | Foreslagsgøbe for ministeren | Tidspunkt | Ministeriet | Konsekvenser for forretningsgange og interne kontroller vedrørende udbytteprocessen hos SKAT |
|---|---|---|---|---|---|---|---|---|---|
| Manglende sammenhæng mellem angivelse og indberetning af udbytte | 5/9 2007 | SKATs udbytteadministration påpeger, at der er uhensigtsmæssige sammenspil mellem de forskellige indberetter vedrørende refusion af udbytteskat. Der er blandt andet manglende sammenhæng mellem angivelse og indberetning. | 14/11 2007 | SKM påpeger, at ændringer af lovgivning rejser spørgsmålet om administrative byrder for borgere og virksomheder. SKM anfører, at SKAT først og fremmest skal sikre, at der ikke udbetales refusion af udbytteskat, der udbyttem&katten er betalt. SKM foreslår SKAT at ændre arbejdsgangen vedrørende udbytteadministration ved at anvende og ændre de gældende administrative fastsatte regler, herunder at kræve oplysninger, der dokumenterer, at modtageren er berettiget til refusion af udbytteskat. Sagen ses ikke at have været viderført departementschefen. | - | Nej | - | Nej | Ingen oplyste ændringer |
| Lovhjemmel til at indføre sammenhæng mellem angivelse og indberetning mv. | 2009 | 1) Forslaget stammer fra SKAT  2) Forslaget stammer angiveligt fra SKAT  3) Forslaget stammer angiveligt fra SKAT | 2009 | Lov nr. 462 af 12. juni 2009 – Lov om ændring af aktieavancebeskatningsloven, skattekontrolloven mv.  1) Der indsættes hjemmel for skatteministeren til at fastsætte indberetningsfrister, der afviger fra de normale frister i kontrolloven til at indføre sammenlighed mellem angivelse og indberetning). Lovændringen trådte i kraft den 14/6 2009.  2) I de tilfælde, hvor indberetteren (det udloddende selskab) ikke har kendskab til identiteten af den aktieejer, der modtager udbytte, skal identiteten af den, der udbetales til, indberettes. Lovændringen trådte i kraft pr. 1/1 2011 med virkning for kalenderåret 2010.  3) Indberetningspligten for depotbanker ændres, således at indberetningspligten | 30/3 2009 | 1) Foreslagget samkirke for og godkendte af ministeren  2) Forelagt ministeret  3) Forelagt ministeren | 19/5 2009 | Forelagt vil forbedre SKATs udbytteadministration og modtere hermo fejl i indeholdelsen af udbytteskat, indberetninger og angivelser, da det udloddende selskab skal håndtere dette samtidigt. | Ingen oplyste ændringer |

SKAT_MDL_001_0075924

| Emne | Tids. punkt | SKAT | Tids. punkt | Skatteministeriets departement | Tids. punkt | Forelæggelse for ministeren | Tids. punkt | Ministersvar | Tids. punkt | Konsekvens for forretningsgang og interna kontroller vedrørende udbytteprocessen hos SKAT |
|---|---|---|---|---|---|---|---|---|---|---|
| Advarsel om negative kildeskatter vedr. udlændinge | Sep-tember 2009 | - | 9/10 2009 | Ikke blot omfatter børsnoterede aktier, men også unoterede aktier, der er registreret i en værdipapircentral. Lovændringen træder i kraft pr. 1/2 2011 med virkning for kildeskatten 2010. | | | | | | Ingen oplyste ændringer |
| | | | | SKM adviserer i et notat om, at det reelt ikke er muligt at kontrollere, hvorvidt skatteydere, der ansøger om refusion, ikke allerede har modtaget refusion en gang. Af notatet fremgår det, at kildeskatterne er diverse negative i anledning år. SKATs it-system Business Objects bør indgå mere aktivt i indsatsstrategien. En række forhold vedrørende refusionsordningen bør undersøges nærmere af Intern Revision. | | | | | | |
| | | | | Sagen er foreslået departementschefen, der har tiltrådt indstillingen. | | | | | | |
| | | | | Intern Revision gennemgår udbytteskatterprocessen hos SKAT og udarbejder på grundlag heraf en rapport, hvori der redegøres for en række risici, jf. revisionsrapport af 10. maj 2010. | | | | | | |
| TRACE og FACTA projekter | 5/2 2010 | Se SKM | 5/2 2010 | SKM og SKATs hovedcenter var i gang sammen i perioden 2010-2012 i notat af 5. februar 2010 fremgår det, at der pågår overvejelser om et internationalt samarbejde vedrørende nettoindeholdelsia vedr. udbytteskat. | - | Nej | - | Nej | | Ingen oplyste ændringer |
| | | | | Det fremgår af notatet, at Danmark havde en særlig stor interesse i projektet, idet den danske ordning for refusion af kildeskat, herunder den særlige ordning for indeholdelsia af nettobeløbsskat i forhold til visse udvalgte lande, ikke helt til i fungerer tilfredsstillende. | | | | | | |
| | | | | Sagen har været foreslået direktionen på et direktionsmøde den 11. februar 2010. | | | | | | |
| Spørgsmål fra Folketinget om indberetning | 2010 | SKAT havde i 2010 problemer med implementeringen af en ny version af TastSelv Erhverv. | 29/6 2010 | Svar til skatte- og afgiftsudvalget (SAU) alm. del spm. 548. Det oplyses, at finansen af tidsstrejling for udbytteskatteangivelser i 1. halvår 2010 bestod merarbejde svarende til | 29/6 2010 | Underskrevet 29/6 2010 | 29/6 2010 | Svar til SKU | | Indberetningen af udbytter har ikke været decideret forhindret. |

SKAT_MDL_001_0075925

| Emne | SKAT | Tids-punkt | Skatteministeriets departement | Tids-punkt | Forelæggelse for ministeren | Tids-punkt | Ministersvar | Tids-punkt | Konsekvens for forvaltningsopgave og interne kontroller vedrørende udbytteprocessen hos SKAT |
|---|---|---|---|---|---|---|---|---|---|
| af udbytteskat | | | ca. 2 årsværk. Dette skulle sammenholdes med, at det blev vurderet, at 60 pct. af den samlede mængde udbytteangivelser indgår i 1. halvår 2010. | | | | | | |
| Opfølgning på Intern Revisions beretning [periodisk tilsyn] af 10. maj 2010 | Se SKAT | 28/9 2010 | I Juridisk Forum (fælles organ i perioden 2010-2012, hvor SKM og SKATs hovedcentre var lagt sammen) behandles Intern Revisions rapport af 10. maj 2010, der er afleveret til Økonomi og behandlet i Produktionsforum, der som opfølgning på rapporten har besluttet, at der skal nedsættes en arbejdsgruppe, der skal komme med konkrete forslag om håndteringen af kildeskat. Juridisk Forum bakker op om Intern Revisions anbefalinger vedrørende bedre kontrol med kildeskatsningen af udstedninge og opfølgningen herpå. | 28/9 2010 | Nej | Nej | - | Nej | Ingen oplyste procesændringer, men der nedsættes en arbejdsgruppe til behandling af problemerne. |
| Særlig ordning om refusion regning til visse hovedaktionærer | SKAT forespurger SKM, hvorvidt der er hjemmel til at give individuelle tilladelser til aktieklasser til at foretage nettoafregning af udbytte. Spørgsmålet vedrører serieaktier, der ikke udbetaler udbytte gennem VP. / SKATs udbytteadministration redegør for en række problemer med refusion af udbytteskat, herunder spørgsmålet om nettoindeholdelse. | Sep./oktober 2010 / 4/10 2011 | SKM oplyser, at der er hjemmel hertil, men at der er behov for at skabe fuldstændig klarhed over den fremtidige håndtering før der udstedes flere tilladelser. / SKM har drøftet ordningen om nettoindeholdelse for visse hovedaktionærer. Da det er muligt at lave en forenflig systemunderstøttelse til registrering hos SKAT oplyser SKM, at der inden for kort tid vil blive udarbejdet vilkår for at give tilladelse til nettoindeholdelse. Nyt tilladelsesinstitut offentliggøres i SKM 2012.117SKAT. Sagerne skal ikke at løse været Forenkling departementschefen. | 22/9 2010 / 1/11 2011 | Nej | Nej | - | Nej | Styregruppen giver mulighed for at give tilladelse til nettoindeholdelse for visse hovedaktionærer. |
| Samtidighed for unoterede aktier ......... | | 2011 | Der indføres samtidighed mellem angivelse og indberetning af udbytte for unoterede aktier i bekendtgørelse nr. 1315 af 15. december 2011. Ændringen har virkning for indberetning afgørelse specifikt nævnt. ibrug af udbuttringen vedtaget eller besluttet den 1. januar 2012 eller senere. | 15/12 2011 | Forelæggelse for ministeren den 29/11 2011, hvor forholdet vedr. indberetning specifikt nævnes. Efter hørring nævnes. | 29/11 2011 | Nej | - | Mulighed for bedre kontrol ifbm. refusion af udbytteskat på unoterede aktier. |

SKAT_MDL_001_0075926

| Emne | Ikr. punkt | SKAT | Ikr. punkt | Skatteministeriets departement | Ikr. punkt | Forslag/gave for ministeren | Ikr. punkt | Ministersvar | Ikr. punkt | Konsekvens for forretningsgange og interne kontroller vedrørende udbytteprocessen hos SKAT |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Grunden til, at hjemlen i lovændringen den 14/6 2009 til at indføre samtidighed mellem angivelse og indberetning først udnyttes i bekendtgørelsen den 15/11 2011 skyldes ifølge SKAT, at SKAT først skulle udvikle en it-mæssig understøttelse til indberetningsopgaven. Hjemlen til at indføre samtidighed mellem angivelse og indberetning udnyttes ikke for så vidt angår noterede aktier som følge af tre indvendinger fra Finanstilsynet, som kræver de yderligere overvejelser | | det, at DI handle en bemærkning til betalingsfristen for udbyttefristen for noterede aktier. | | | | Lovforslaget skal give SKAT bedre grundlag dels for at kontrollere, om der indberettes og afregnes udbytteskat korrekt, dels udbytteskat nævnes anmoldinger om refusion af udbytteskat |
| Samtidighed for noterede aktier, udvidede oplysninger mv. | 2012 | - | 2012 | Lov nr. 1354 af 21. december 2012 om ændring af skattekontrolloven mv. indfører lovhjemmel til at indføre samtidighed mellem angivelse og indberetning for alle udbytter, som udloddes fra danske selskaber, inkl. noterede aktier. Ændringerne træder i kraft 1. januar 2014. Det foreslås endvidere at udvide de oplysninger, som skal være omfattet af indberetningerne, herunder skal der oplyses om baggrunden, hvis der ikke er foretaget indeholdelse af udbytteskat eller, hvis der er foretaget indeholdelse med en nedsat sats, herunder bl.a. af attesteret dokumentation samt hvilket land, der har attesteret dokumentationen. | 19/9 2012 | Lovforslag fremlægges ministeren den 19/9 2012. Ændringer vedrørende udbytteskat nævnes ikke på forslagsniveau, men indgår i et resume, som er vedlagt forslagspunkten. Det fremgår ikke af forslagspunkten om ministeren har godkendt sagen. | - | Nej | | |
| Indførelse af samtidighed for noterede aktier | 2012 | - | 2012 | Bekendtgørelse nr. 1123 af 30. november 2012 om indberetningspligter efter skattekontrolloven indfører krav om samtidighed mellem angivelse og indberetning af udbytte for alle udbytter, som udloddes fra danske selskaber. Ændringsbekendtgørelsen har virkning for indberetning af udbytter, der vedtages eller besluttes den 1/1 2013 eller senere. | 2/10 2012 | Af forslagspunkten fremgår det bl.a., at en hurtigere gennemførelse af de månedlige indberetninger vil sikre en hurtig forbedring af SKATs administration af udbytteskatten. | - | Nej | | Månedlige indberetninger vil øge SKATs muligheder for hurtig afstemning, herunder også kontrolmuligheder i forbindelse med refusionssager. |
| Krav om digital indberetningspligt af | 2013 | SKAT har taget om at få indført digital pligt på indberetning af udbytte inden idriftsættelsen af en skattekonto den 1/8 2013. | 2013 | Udstedelse af 3 bekendtgørelser, der indfører pligt for virksomheder til at angive og indberette digitalt. Bekendtgørelsen får virkning for indberetninger, der foretages den | - | | | Ikke oplyst | - | Ændringen vil medføre forbedrede muligheder for at anvende systemmæssige |

SKAT_MDL_001_0075927

| Emne | Tids-punkt | SKAT | Tids-punkt | Skatteministeriets departement | Tids-punkt | Forelæggelse for ministeren | Tids-punkt | Ministersvar | Konsekvens for forretningsgange og interne kontroller vedrørende udbytteprocessen hos SKAT |
|---|---|---|---|---|---|---|---|---|---|
| udbytter | | | | 1/7 2013 eller senere. | | | | | forretningsgange og interne kontroller. |
| Early warning vedr. aktieløn | 7/5 2015 | SKAT Jura oplyser, at det er et problem, at der er forskel mellem den skattemæssige og civilretlige behandling af aktieløn. Långiver er skattemæssigt den retmæssige ejer, mens låntager civilretligt er den retmæssige ejer. VP modtager låntager som ejer af aktien og det er således risiko for, at SKAT modtager refusionsanmodninger fra såvel långiver som låntager vedrørende det samme udbytte. | | Problemstillingen behandles pt. i SKM | . | ikke oplyst | . | ikke oplyst | Ingen oplyste ændringer |

SKAT_MDL_001_0075928

## Bilag 2A Oversigt over sager i Skatteministeriet

Journal nr.: 15-2486327

Intern Revision er ultimo august 2015 anmodet om at undersøge SKATs administration af udbytteskatten. Som det fremgår af skatteministerens svar af 15. september 2015 til Skatteudvalget på alm. del spørgsmål 56, vil undersøgelsen bl.a. også indeholde en redegørelse for sager i Skatteministeriet (SKM) vedrørende refusion af udbytteskat, herunder konkrete lovforslag og foreløggelser for minister og departementschef.

Det skal i den forbindelse bemærkes, at baggrunden for Intern Revisions undersøgelse er en mistanke om omfattende økonomisk kriminalitet begået mod SKAT. Det fremgår af orienteringen af Skatteudvalget (Skatteudvalget 2014-15 (2. samling) SAU Alm. Del bilag 23), at der tilsyneladende er et større netværk af selskaber, der med afsæt i fiktive aktiebeholdninger har søgt om refusion af dansk indeholdt udbytteskat på baggrund af indsendt forfalsket dokumentation.

Til brug for denne redegørelse har SKM søgt på sager og dokumenter fra medio 2007 til 25. august 2015. Søgningen er ikke målrettet problemstillingen i den konkrete svindelsag, men omfatter bredt sager om administration af refusion af udbytteskat.

Søgningen i journalsystemerne i SKM går tilbage til sager og dokumenter fra medio 2007, hvor SKAT retter henvendelse til SKM på baggrund af en rapport udarbejdet af SKAT om administration af refusion af udbytteskat. Rapporten peger bl.a. på et muligt uheldigt samspil i reglerne, der kan have betydning for administrationen af refusion af udbytteskat. Søgningen på sager og dokumenter dækker perioden indtil den 25. august 2015, hvor Skatteudvalget modtager orientering om den formodede svindel med refusion af udbytteskat.

Konkret er der valgt en række søgeord, som er anvendt til at identificere relevante sager og dokumenter. Der er søgt i de forskellige journalsystemer, der dækker den søgte periode. De søgekriterier, der er anvendt for at identificere relevante sager og dokumenter, fremgår af bilag 1.

I oversigten over sager og dokumenter fra SKM redegøres der kronologisk for indholdet af de identificerede sager og dokumenter. Oversigten dækker således ikke, hvad der er sket efterfølgende i SKAT med hensyn til SKATs ansvar i forhold til opfølgning på lovgivning og bekendtgørelser.

Intern Revisions rapport fra 2013 om refusion af udbytte- og royaltyskat for 2012 er ikke en del af oversigten, da der ikke er fundet en sag herom i journalsystemerne i perioden. Det skyldes, at det relevante kontor i SKM kun har modtaget rapporten fra Intern Revision i kopi (Cc) i en mail stilet til Rigsrevisionen, og at mailens indhold gav indtryk af, at fremsendelsen var til orientering, og at orienteringen af ledelsen blev foretaget direkte af Intern Revision. Dette er dog ikke sket i dette tilfælde. En foreløggelse af rapporten ville ikke have ændret på, at ansvaret for opfølgning på rapportens anbefalinger ligger hos SKATs ledelse, som har ansvaret for at følge op på de rapporter fra Intern Revision, der vedrører SKATs

SKAT_MDL_001_0075929

administration. Som en del af opfølgningen på sagen i SKM er det imidlertid præciseret, hvordan ministeriet følger op på rapporter fra Intern Revision.

I oversigten over sager og dokumenter er det anført, om der i sagen ses at være forelæggelser for skatteminister og/eller departementschef. Det bemærkes, at SKM har rettet henvendelse til SKAT med henblik på afklaring af, om der i deres parallelsøgning i perioden har været forelæggelser for skatteminister eller departementschef vedrørende refusion af udbytteskat. SKAT har oplyst, at dette ikke ses at være tilfældet.

Henset til den korte tid, der har været til at foretage søgning i sager og dokumenter, herunder den efterfølgende håndtering, må SKM tage forbehold for, at der kan være sager eller dokumenter, som ikke er identificeret.

| Sag | Bemærkninger |
| --- | --- |
| **1.** *Sag nr.:* *2007-351-0006* Refusion af DK-udbytteskat i forhold til begrænset skattepligtige. | Der er tale om en sag, som er oprettet på grundlag af en henvendelse fra SKAT om administration af refusion af udbytteskat. SKAT påpeger over for SKM, at der er et uheldigt samspil mellem de forskellige frister i reglerne for tilbagebetaling af indeholdt dansk udbytteskat til fysiske og juridiske personer, der er begrænset skattepligtige til Danmark. Problemstillingen fremgår af en rapport fra maj 2007, der er udarbejdet af SKATs "KoncernArbejdsgruppen    Fremrykket    ligning". Problemstillingen fremgår desuden af et notat af 5. september 2007, der er udarbejdet af SKATs udbytteadministration. Det bemærkes, at SKATs rapport fra maj 2007 ikke er akteret på sagen. Rapportens delkonklusion er imidlertid beskrevet i et 13-siders notat, der er udarbejdet af SKM, dateret den 17. september 2007. Notatet af 17. september 2007 ses ikke oversendt til SKAT. Derimod er konklusionerne i notatet af 17. september 2007 sammenfattet i et 3-siders notat dateret den 14. november 2007. Dette notat er oversendt til SKAT, hvilket fremgår af en mail dateret den 26. august 2008, hvor notatet genfremsendes til SKAT i anden anledning. I sagen foreligger desuden en række notater udarbejdet af SKAT om ovenstående problemstilling, der formentlig alle er fra 2008. SKAT påpeger i sin henvendelse til SKM, at angivelse af udloddet udbytte og indbetaling af indeholdt udbytteskat normalt sker i måneden efter vedtagelsen i selskabet med anførelse af udbyttets størrelse, udbytteskattens størrelse og aktiens identitet mv. Indberetning af udbyttemodtagerens identitet, udbyttets størrelse og hvilken aktie, der er tale om mv., sker med frist til den 20. januar i året efter udlodningen. SKAT gør opmærksom på, at da anmodning om refusion skal effektueres inden 30 dage, hvis ikke der skal påløbe renter, kan |

| | |
|---|---|
| | SKAT være nødt til at tilbagebetale udbytteskat uden at have oplysning om udbyttemodtageren. Det foreslås derfor, at fristerne for angivelse og indberetning harmoniseres. SKAT foreslår således, at lovgivningen ændres på dette punkt. |
| | SKM svarer SKAT i notat, dateret den 14. november 2007, at en harmonisering af fristerne for angivelse og indberetning rejser spørgsmålet om administrative byrder for borger og virksomheder, der vil kræve yderligere analyse af forslagene. SKM foreslår i stedet, at udbytteadministrationen justerer arbejdsgangen på området ved at anvende – og ændre – de gældende administrativt fastsatte regler. |
| | SKM anfører, at SKAT først og fremmest ikke skal tilbagebetale udbytteskat, før skatten er indbetalt. SKAT vil således kunne anmode ansøgeren om dokumentation for den oprindelige indbetaling af den udbytteskat, der søges tilbagebetalt. Endvidere må den, der anmoder om tilbagebetaling af indeholdt dansk udbytteskat, kunne godtgøre sit krav. SKAT vil kunne stille krav om, at en anmodning om tilbagebetaling af udbytteskat er vedlagt dokumentation og oplysninger, der viser, at modtageren af den tilbagebetalte danske udbytteskat er berettiget hertil. Endelig kan SKAT skærpe sin praksis om påløb af renter, således at fristen for forrentning først løber fra det tidspunkt, hvor SKAT har fået attesteret, at ansøgeren både civilretlig og skatteretlig er den retmæssige ejer af udbyttet. |
| | SKM er dog opmærksom på, at ønsket om at harmonisere fristerne for angivelse og indberetning i sig selv vil kunne være medvirkende til at forbedre administrationen af udbytteskat, og SKM udarbejder senere et lovforslag herom, jf. sag nr. 2. |
| | Der ses ikke i sagen at være forelæggelser for ministeren eller departementschefen. |
| **2.**<br>*Sag nr.:*<br>*2009-711-0030*<br><br>L 201 – forslag til lov om ændring af avancebeskatningsloven, skattekontrolloven, kildeskatteloven, ligningsloven og forskellige andre love (enkel og effektiv kontrol samt mindre skatteplanlægning). | Der er tale om en sag vedrørende udarbejdelse af lovforslag nr. L 201 (Folketingsåret 2008-2009). Lovforslaget fremsættes den 22. april 2009 af den daværende skatteminister. Lovforslaget vedtages den 28. maj 2009 (Lov nr. 462 af 12. juni 2009).<br><br>Det vedtagne lovforslag indeholder en række elementer vedrørende kildeskat på udbytter:<br><br>   1.  Der indsættes en hjemmel for skatteministeren til at fastsætte indberetningsfrister, der afviger fra de normale frister (skattekontrollovens § 9 A, stk. 5).<br><br>   2.  I de tilfælde, hvor indberetteren (det udloddende selskab) ikke har kendskab til identiteten af den aktieejer, der modtager udbyttet, skal identiteten af |

den, der udbetales til, indberettes (skattekontrollovens § 9 B, stk. 5. 3. pkt.).

3. Indberetningspligten for depotfører ændres, således at indberetningspligten ikke blot omfatter børsnoterede aktier, men også unoterede aktier der er registreret i en værdipapircentral.

I forhold til hjemlen til at fastsætte andre frister, jf. nr. 1, angives det i lovforslagets bemærkninger, at det er tanken, at fristen for indberetning vedrørende udbytter fra såvel depotførere som det udloddende selskab skal harmoniseres med fristen for angivelse og indbetaling af udbytteskatten. Det anføres i lovforslagets bemærkninger, at de nuværende forskellige frister for henholdsvis angivelse og indberetning hindrer en afstemning mellem angiverserne og indberetningerne. Ændring nr. 1 er således en opfølgning på de lovgivningsmæssige ønsker, som SKAT tidligere har fremført, jf. sag nr. 1.

I forhold til ændring nr. 2 anføres det i lovforslagets bemærkninger, at indberetningen skal være med til at sikre, at udbytterne kommer til beskatning, og til at forbedre SKATs administration af udbytteskatten.

Følgende fremgår desuden af lovforslagets almindelige bemærkninger:

"Tankegangen bag indberetningsfristen den 20. januar er, at beløbene skal bruges til årsopgørelsen. Hvert år tilbagebetaler SKAT imidlertid indeholdte udbytteskatter på ca. 1-2 mia. kr. til udlandet som følge af nedslag i udbytteskatten efter dobbeltbeskatningsoverenskomster (i 2008 var beløbet dog kun ca. 750 mio. kr.). For at undgå forrentning af tilbagebetalingsbeløbene sker tilbagebetalingen som udgangspunkt inden 30 dage efter, at SKAT har modtaget anmodningen om tilbagebetaling. Ændringen vil sikre, at der ved disse tilbagebetalingssager vil kunne foretage afstemning af anmodningen med henholdsvis angiverserne og indberetningerne.

En sammenlægning af fristerne for indberetning og angivelse vil herudover føre til færre fejl i indeholdelserne af udbytteskat, indberetningerne og angiverserne, da det udloddende selskab efter forslaget vil skulle håndtere udlodningen, indeholdelsen, angivelsen, afregningen og indberetningen samtidig. Med en indberetning i måneden efter udlodningen vil der desuden blive skabt bedre mulighed for at korrigere fejl i registreringen af selskabet, fejl i klassifikationen af udloddende investeringsforeninger og fejl i udbytteindeholdelsen inden dannelse af udbyttemodtagerens

SKAT_MDL_001_0075932

årsopgørelse og servicebrev for de skatteydere, der ikke modtager en fortrykt årsopgørelse.".

Ændring nr. 2 og 3 blev indarbejdet i udkastet til lovforslag, der er forelagt skatteministeren. Elementerne var med i høringsfasen. Forslagene stammer angiveligt fra SKAT, men dette fremgår ikke nærmere af sagen.

Ændring nr. 1 kom ind, efter at lovforslaget havde været i ekstern høring, men før fremsættelsen. Som nævnt stammer dette forslag fra SKAT, jf. sag nr. 1, og ændringen forelægges særskilt for skatteministeren, der den 30. marts 2009 godkender, at ændringen medtages i lovforslaget.

Begrundelsen for at medtage denne ændring er ifølge forelæggelsen, at det vil give SKAT en yderligere mulighed for at forbedre SKATs udbytteadministration, og at de daværende frister hindrede en afstemning mellem angiverne og indberetningerne. Herudover nævnes det, at en sammenlægning af fristerne kan føre til færre fejl.

I forbindelse med lovforslagets behandling i Folketinget er ændring nr. 1 berørt i en kommentar til en henvendelse fra Finansrådet (L 201 - bilag 18). I kommentaren svarer ministeren bl.a., at forslaget vil forbedre SKATs udbytteadministration, og at forslaget vil medføre færre fejl i indeholdelsen af udbytteskat, indberetninger og angivelser, da det udloddende selskab skal håndtere det samtidig.

Svaret til Folketinget er forelagt skatteministeren. Der redegøres her for, at Finansrådet har anført, at forslaget om harmonisering af fristerne for indberetning af udbytte med fristerne for angivelse vil være byrdefuld for erhvervslivet og indebære risiko for fejl. Det anføres hertil, at forslaget må forventes at medføre nogle omkostninger for den finansielle sektor. De løbende omkostninger skønnes dog begrænsede. Endvidere bemærkes det på forelæggelsen, at SKM ikke er enig i, at forslaget medfører en større fejlrisiko, men at forslaget tværtimod giver bedre mulighed for, at fejl kan opdages og rettes tidligt, og dermed inden udbyttemodtagernes årsopgørelser skal dannes. Skatteministeren godkender kommentaren til Finansrådet den 19. maj 2009.

Det fremgår af loven, at det er skatteministeren, der fastsætter ikrafttrædelsen af ændring nr. 2 og 3. Ændring nr. 2 og 3 er efterfølgende sat i kraft ved bekendtgørelse nr. 1182 af 9. december 2009. Ændringerne har herefter virkning for indberetning af udbytter vedrørende kalenderåret 2010 eller senere.

SKAT_MDL_001_0075933

| | |
|---|---|
| | Ændring nr. 1, der giver hjemmel for ministeren til at fastsætte andre indberetningsfrister træder i kraft den 14. juni 2009. Hjemlen udnyttes dog først senere, jf. sag nr. 14 og 17. |
| **3.**<br>*Sag nr.:*<br>*2009-351-0023*<br><br>Provenu fra kildeskat på udbytter. | Der er tale om en sag i SKM, der er startet i september 2009. Baggrunden for sagen er, at der generelt er fokus på kildeskatter på udbytter, herunder særligt på beregning af provenuet fra kildeskatterne.<br><br>I forbindelse med sagen har SKM i samarbejde med SKAT udarbejdet et notat, der bl.a. beskriver provenuet fra kildebeskatningen af udlændinge. Af notatet fremgår det, at nettoprovenuet fra kildeskatterne direkte er negative i enkelte år. Det fremhæves, at det ikke kan udelukkes, at der refunderes for meget kildeskat både fra refusionsordningen, men også fra VP-ordningen, hvor provenuet synes at være meget lavt. Analysen dækker perioden 2006-2008.<br><br>Udbytteadministrationen har til dette oplyst, at de reelt set ikke har været i stand til at kontrollere, at skatteydere, der ansøger om refusion, ikke allerede én gang har modtaget refusion.<br><br>Sagen er forelagt departementschefen ved en forelæggelse af 5. oktober 2009. Det fremgår af forelæggelsen, at SKATs IT-system Business Objects bør indgå som et mere aktivt instrument i indsatsstrategien, hvilket dog forudsætter, at SKAT prioriterer kontrollen og afstemningen af data i Business Objects.<br><br>Endvidere indstilles det, at en række forhold vedrørende refusionsordningen bør undersøges nærmere af Intern Revision.<br><br>Departementschefen har tiltrådt indstillingerne den 9. oktober 2009. Sagen ses ikke at være forelagt skatteministeren.<br><br>Intern Revision får den 21. oktober 2009 en henvendelse fra departementschefen om en revisionsmæssig undersøgelse vedrørende refusionsordningen.<br><br>Henvendelsen er baggrund for Intern Revisions rapport fra 2010, der er afleveres til Økonomi og behandles i Produktionsforum, der som opfølgning på rapporten beslutter, at der skal nedsættes en arbejdsgruppe, der skal komme med konkrete forslag om håndteringen af kildeskat. Rapporten behandles også i Juridisk Forum. Der kan henvises til sag nr. 7. |

SKAT_MDL_001_0075934

| | |
|---|---|
| **4.**<br>*Sag nr.:*<br>*2009-351-0026*<br>*2009-352-0027*<br><br>Kapitalfondskomplekset – To early warnings vedrørende kildeskat i koncernforhold og inddrivelse heraf. | Der er tale om en sag i SKM, der er oprettet på grundlag af modtagelsen af to early warnings fra SKAT. De to early warnings omhandler kildeskat på renter og inddrivelsen heraf.<br><br>I det såkaldte kapitalfondskompleks var SKAT blevet opmærksom på en problemstilling vedrørende hæftelse for kildeskatter, hvilket udmønter sig i to early warnings, der modtages i SKM hhv. den 16. og den 29. oktober 2009.<br><br>I begge tilfælde er der tale om konkrete sager, hvor problemstillingen er:<br><br>• Administrationsselskabet i en dansk koncern betaler renter til sit moderselskab i et "skattelyland" gennem to svenske selskaber. De indeholder ikke kildeskat af rentebetalingen, selvom det er moderselskabet i skattelylandet, der efter SKATs opfattelse er retmæssig ejer.<br>• Underskud, som følge af fradrag for renter i det betalende danske selskab, er helt eller delvist udnyttet af de andre danske selskaber i koncernen gennem sambeskatning.<br>• Administrationsselskabet afstår efter nogle år aktierne i de danske datterselskaber koncerninternt, hvorefter den modtagne betaling udloddes/bruges til at tilbagebetale lånet.<br>• Selskabet er herefter tømt for værdier og placeret "på et sidespor" i koncernen, men indgår stadig i sambeskatningen med koncernens øvrige danske selskaber. Det vil sige, at selskabets resterende underskud kan anvendes af de øvrige selskaber.<br>• Selskabet kan sandsynligvis ikke betale den rentekildeskat, som skulle være indeholdt.<br><br>Der foreligger i sagen et notat af 1. december 2009 fra SKM vedrørende de to early warnings. Notatet er forelagt afdelingschefen, der den 3. december 2009 har godkendt, at notatet sendes til Koncerngruppen Lov og Proces i overensstemmelse med de daværende retningslinjer for behandling af early warnings.<br><br>SKM vurderede i notatet, at den mest effektive løsning var at genindføre generel solidarisk hæftelse i sambeskatningsforhold- og udvide den solidariske hæftelse til også at omfatte kildeskatter på udbytter og renter. Men det vurderes, at det er vanskeligt at begrunde et så vidtgående indgreb, når der er mulighed for at gennemføre mere målrettede, om end ikke helt så effektive ændringer.<br><br>I forelæggelsen vurderes det, at der – i samarbejde med SKAT Store Selskaber – bør udarbejdes et beslutningsgrundlag med |

SKAT_MDL_001_0075935

| | |
|---|---|
| | henblik på at lovgive om, at fradrag for renter m.v. kan underkendes, hvis der fejlagtigt ikke er indeholdt kildeskat. Det foreslås endvidere, at erfaringerne fra kapitalfondskomplekset, som omhandler kildeskat på renter og udbytter, inddrages i overvejelserne.<br><br>Solidarisk hæftelse i sambeskatningsforhold gennemføres senere, jf. sag nr. 15.<br><br>I sagen ses der ikke at være forelæggelser for ministeren eller departementschefen. |
| **5.**<br>*Sag nr.:*<br>*2010-351-0030/*<br>*14-2117449* - TRACE<br><br>og<br><br>2011-620-0026/<br>*13-5775296* – FATCA. | Sagerne vedrører TRACE og FATCA-projektet. TRACE projektet (Treaty Relief And Compliance Enhancement) er et tiltag, der er forankret internationalt i OECD.<br><br>Sagerne stammer fra den periode, hvor SKM og SKATs hovedcenter var lagt sammen i én enhed (Koncerncentret). Koncerncentret blev ledet af en direktion.<br><br>Det fremgår af en forelæggelse for departementschefen/direktionen dateret 5. februar 2010, at projektet går ud på at fastlægge designet på et system, hvor modtagere af aktieudbytter fra andre lande kan få indeholdt nettokildeskat ved modtagelsen og dermed slippe for at søge refusion af kildeskat efter dobbeltbeskatningsaftalerne til gengæld for, at deres bank påtager sig på automatisk basis, en gang om året, at levere oplysninger om skatteyderen og de modtagne beløb til såvel kildestaten som bopælsstaten. Videre fremgår det af notatet, at Danmark havde særlig stor interesse i projektet, idet den danske ordning for refusion af kildeskat, herunder den særlige ordning for indeholdelse af nettokildeskat i forhold til visse udvalgte lande, ikke lod til at fungere tilfredsstillende. Ved nettokildeskat forstås, at det udloddende selskab alene indeholder det beløb, der skal beskattes i henhold til den relevante dobbeltbeskatningsoverenskomst.<br><br>Forelæggelsen har været forelagt direktionen på et direktionsmøde den 11. februar 2010.<br><br>Projektet blev færdigt og godkendt af CFA (OECD´s Committee on Fiscal Affairs) i 2013, men blev overhalet af FATCA og dermed aldrig taget i brug.<br><br>FATCA (Foreign Account Tax Compliance) er en bilateral aftale på initiativ af USA, som i marts 2010 vedtog nye bestemmelser om forpligtelserne for udenlandske finansielle operatører. FATCA havde virkning fra den 1. januar 2012. FATCA går ud på, at alle ikke USA baserede banker og andre finansielle |

SKAT_MDL_001_0075936

| | |
|---|---|
| | operatører, der modtager renter, udbytter eller anden finansiel indkomst fra USA, indgår i en omfattende aftale med IRS (USA´s føderale skattemyndighed) om at rapportere om kapital og afkast af kapital for alle kunder, der er USA skatteydere, eller som er selskaber eller andre enheder, hvori USA skatteydere ejer mere end 10 pct. Indgås aftalen, skal bankerne underlægges forpligtelse til ekstern due diligence. Hvis aftalen ikke indgås, skal der indeholdes 30 pct. kildeskat af alt kapitalafkast fra kilder i USA til ikke USA operatører. Denne form vil tvinge alle operatører til at indgå aftaler eller holde op med at have aktivitet med USA.

Der ses ikke i sagen at være forelæggelser for ministeren. |
| **6.**<br>*Sag nr.:*<br>*2010-080-0051*<br><br>Ministerbetjening SAU alm. del spm. 541-546 om indberetning af udbytteskat. | Der er tale om en sag i SKM vedrørende en række spørgsmål fra Folketinget om indberetning af udbytteskat.

SKAT havde i 2010 problemer med implementeringen af en ny version af Tast SELV erhverv. Den 7. juni 2010 blev der stillet en række SAU spørgsmål (SAU alm. del 541-546) om indberetning af udbytteskat. Spørgsmålene blev besvaret den 30. juni 2010.

I SAU alm. del spm. 546 blev der spurgt om, hvor mange årsværk SKAT skulle bruge til manuel behandling af indberetning af udbytte og udbytteskat via indsendelse på papir i 2010 på grund af, at SKATs TastSelv system for udbytteskat ikke fungerede i 1. halvår 2010.

Der blev svaret, at det blev anslået, at fraværet af en TastSelv løsning for udbytteskatteangivelser i 1. halvår 2010 betød merarbejde svarende til ca. 2 årsværk. Dette skulle sammenholdes med, at det blev vurderet, at 60 pct. af den samlede mængde udbytteangivelser, indløb i 1. halvår 2010.

Svarene til SAU har været forelagt den daværende skatteminister. I forbindelse med forelæggelsen orienteres om, at der har været problemer med den digitale indberetning vedrørende udbytter, men at indberetning ikke har været decideret forhindret. Skatteministeren har underskrevet forelæggelsen den 29. juni 2010. |
| **7.**<br>Sag nr.:<br>2010-009-0036<br><br>Juridisk Forum. | Der er tale om en sag i SKM om behandlingen af visse sager i Juridisk Forum.

Juridisk Forum eksisterede i perioden 2010-2012, hvor SKM og SKATs hovedcenter var lagt sammen i én enhed (Koncerncentret). En række sager, der vedrører SKATs administration, blev i denne periode behandlet i Juridisk Forum. |

SKAT_MDL_001_0075937

På Juridisk Forums møde den 2. marts 2010 bliver Juridisk Forum orienteret om TRACE-projektet. Det blev aftalt, at projektet bemandes med relevante personer.

Juridisk Forum holdt et møde den 7. september 2010. Det fremgår af dagsordenens pkt. 10, at Intern Revisions rapport om kildeskatbeskatningen af udbytte for udlændinge fra 2010 har været behandlet. Af den kommenterede dagsorden fremgår det, at Intern Revisions rapport forinden har været behandlet i Produktionsforum. Produktionsforum havde i den pågældende periode til opgave at drøfte, planlægge og tilrettelægge den løbende drift og produktion i SKAT. Det fremgår, af den kommenterede dagsorden, at Produktionsforum har besluttet at nedsætte en arbejdsgruppe i SKAT, der skal komme med konkrete forslag til, hvordan opgaven med kildeskat skal håndteres fremover. Juridisk Forum anmodes om en udtalelse til Intern Revisions rapport.

I en forelæggelse af 15. september 2010 for den juridiske direktør, der er formand for Juridisk Forum, indstilles det, at Juridisk Forum melder tilbage til Økonomi, der bl.a. står for koordineringen i forhold til Rigsrevisionen og Intern Revision, at Juridisk Forum bakker op om Intern Revisions anbefalinger i revisionsrapporten vedrørende kildebeskatningen af udlændinge, og at Juridisk Forum finder, at situationen er kritisk, og at det er en opgave, der bør fremmes mest muligt. Forelæggelsen er godkendt af den juridiske direktør den 15. september 2010.

Af beslutningsprotokollen fra mødet den 28. september 2010 i Juridisk Forum fremgår det, at det besluttes at bakke op om Intern Revisions anbefalinger, og at det er en opgave, der bør fremmes. Det fremgår af protokollen, at Produktionsforum har besluttet at nedsætte en styre-/arbejdsgruppe til at følge op på rapporten, hvor også afdelingen Jura og Samfundsøkonomi indbydes til at deltage.

På Juridisk Forums møde den 30. august 2011 orienteres Juridisk Forum om opfølgningen på revisionsrapporten om håndtering af udbytteskat. Juridisk Forum orienteres på mødet om rapporten fra den arbejdsgruppe, der var blevet nedsat på baggrund af rapporten fra Intern Revision fra 2010.

Overordnet indstiller arbejdsgruppen, at der arbejdes videre med et forslag om at ændre kildeskattelovens § 66 samt de heraf følgende procesbeskrivelser og eventuelle feltlåsninger.

Arbejdsgruppen foreslår, at i stedet for at angive og betale måneden efter udlodningen og indberette

SKAT_MDL_001_0075938

udbyttemodtagerne den 20. januar året efter, skal indberetning af udbyttemodtagere ske på angivelsestidspunktet.

Arbejdsgruppen foreslår desuden, at kildeskattelovens § 66 ændres, så udbytteangivelserne bortfalder. I stedet opgøres den udbytteskat, selskabet skal indbetale, ved en sammentælling af indberetningerne. Desuden foreslås det at skabe hjemmel til, at selskaber, som ikke udlodder udbytte, skal indsende et 0 i indberetning/angivelse, da det ellers ikke er muligt at have mandtal over selskaber m.v., som kan udlodde udbytte.

Det angives desuden, at der ikke er hjemmel til at gøre indberetteren ansvarlig for manglende eller forkert indberetning af udbyttemodtagere. Det angives, at der bør være en sådan hjemmel.

Endelig foreslås det, at der indføres tvungen digital indberetning.

Det fremgår af beslutningsprotokollen for mødet i Juridisk Forum den 30. august 2011, at Juridisk Forum ligesom Produktionsforum bakker op om notatets forslag og vil følge arbejdet med at udmønte forslagene.

Forslagene fra arbejdsgruppen er konkret implementeret ved følgende initiativer:

Hjemlen, der blev indført ved lov nr. 462 af 12. juni 2009, til at indføre indberetning af udbytter i måneden efter udlodningen, jf. sag nr. 2, blev udnyttet ved ændring af indberetningsbekendtgørelsen ad to omgange, jf. sag nr. 14 vedrørende de unoterede aktier og sag nr. 17 vedrørende de noterede aktier. De to bekendtgørelser har virkning fra 1. januar 2012 og 1. januar 2013.

Udbytteangivelsen for unoterede aktier er afskaffet ved lov nr. 1354 af 21. december 2012, jf. sag nr. 16. Den fastholdes dog i forhold til de noterede aktier, idet de noterede selskaber i givet fald ikke ville have mulighed for at påvirke opgørelsen af den udbytteskat, de skal indbetale ved fx fejlindberetninger fra depotførerne.

Med hensyn til forslaget om 0-indberetning er der pligt til på forespørgsel af SKAT at oplyse, om der er foretaget udlodning af udbytte. Dermed er det vurderingen, at behovet for 0-indberetning ved manglende udbytteudlodning er knap så stort.

SKAT_MDL_001_0075939

| | |
|---|---|
| | Med hensyn til hjemmelen til at gøre indberetteren ansvarlig for manglende eller forkert indberetning, er det opfattelsen, at en sådan allerede findes i skattekontrolloven § 14.<br><br>Der er indført tvungen digital indberetning, jf. sag nr. 18.<br><br>Der ses ikke i sagen at være forelæggelser for minister eller departementschef. |
| **8.**<br>*Sag nr.:*<br>*2010-701-0058*<br><br>Møde i Det Eksterne Kontaktudvalg den 1. december 2010. | Der er tale om en sag i SKM vedrørende udarbejdelse af materiale til et møde i SKM´s Eksterne Kontaktudvalg den 1. december 2010. Det Eksterne Kontaktudvalg fungerede som kontaktorgan mellem ministeriet og en række af dets interessenter. Udvalget drøftede bl.a. behovet for kommende lovgivningsinitiativer og evaluerede virkningerne af gennemført lovgivning.<br><br>I sagen indgår et referat af mødet den 1. december 2010. Det fremgår af referatets punkt 8.a. under emner rejst af Finansrådet, at Finansrådet ønskede en status på arbejdet vedrørende udbytter m.v.<br><br>Finansrådet efterspurgte en status og tidsplan for OECD-arbejdet, da de gerne så ordningen med nettoindeholdelse af kildeskatter for udbytter fra aktier udvidet til omnibusdepoter.<br><br>SKM redegjorde på mødet for, at samarbejdet mellem SKAT og pengeinstitutterne blev indstillet, da det var blevet overhalet af OECD-projektet TRACE, jf. sag nr. 5. Det forventedes, at der vil ske en foreløbig afrapportering til CFA (OECD´s Committee on Fiscal Affairs) medio 2011**.**<br><br>Det blev også oplyst, at en arbejdsgruppe i SKAT var i gang med at se på en optimering af processerne i forbindelse med indeholdelse af kildeskatter.<br><br>Referatet er forelagt departementschefen, der har godkendt referatet den 8. december 2010.<br>I sagen indgår herudover et notat om problemstillingen, udarbejdet af det relevante fagkontor i SKM. Dette notat indgår i den generelle briefing til departementschefen med henblik på mødet den 1. december 2010. I notatet og dermed i briefingen redegøres der bl.a. for tidsplanen i TRACE-projektet. |
| **9.**<br>*Sags nr.:*<br>*2012-462-0189* | Der er tale om en sag i SKM vedrørende udarbejdelse af et styresignal, der nærmere beskriver administrationen af den særlige ordning om tilladelse til nettoafregning for visse hovedaktionærer. |

SKAT_MDL_001_0075940

| | |
|---|---|
| Styresignal om tilladelse til nettoindeholdelse af kildeskat på udbytter. | SKAT rettede henvendelse til SKM (koncerncentret) i september 2010, hvor SKAT ønskede en bekræftelse på, at der var hjemmel i bekendtgørelse nr. 1442 af 20. december 2005 om indeholdelse af udbytteskat og royaltyskat til at give individuelle tilladelser til selskaber, der ikke udbetaler udbytte gennem VP, til at indeholde med den procentsats, der gælder efter en dobbeltbeskatningsoverenskomst (nettoafregning).

På et møde med SKAT den 22. september 2010 meddelte SKM, at der var hjemmel i bekendtgørelsen. SKAT redegjorde bl.a. for den hidtidige håndtering af tilladelserne. Det blev oplyst, at der på dette tidspunkt var givet ca. 150 tilladelser. Der var ikke lavet et digitalt system til håndteringen af disse sager, og det var meget usikkert, om tilladelserne var givet efter ens retningslinjer.

Den 28. september 2010 skrev SKM til SKAT, at det er afgørende, at en tilladelse knyttes op på en række betingelser (fx tidsbegrænsning og dokumentationskrav) med henblik på at undgå misbrug. Betingelserne for at udstede en tilladelse til nettoafregning skal derudover være ensartede med henblik på at skabe klarhed for både SKAT og for den skattepligtige. Endelig er det afgørende, at tilladelserne registreres i et system, der kan håndtere relevante data, således at man til enhver tid kan identificere, hvem der har modtaget en tilladelse mv.

Videre bemærkes, at henset til behovet for, at der skabes fuldstændig klarhed over den fremtidige håndtering af tilladelsesordningen, er det SKMs opfattelse, at SKAT indtil videre må stille alle fremtidige tilladelser i bero, herunder anmodninger om forlængelse af allerede udstedte tilladelser. Endelig anerkendes behovet for at finde en operationel løsning på ovenstående, og SKM vil derfor undersøge nærmere, på hvilket grundlag eventuelle fremtidige tilladelser skal gives.

Den 8. juni 2011 rejste FSR spørgsmålet om tilladelser til nettoindeholdelser på et møde i Det eksterne Kontaktudvalg, jf. sag nr. 12.

Den 4. oktober 2011 rettede en medarbejder i SKATs udbytteadministration henvendelse til SKM, hvor der redegøres for en række problemer med refusion af udbytter, herunder spørgsmålet om tilladelse til nettoindeholdelse.

SKM svarede den 1. november 2011 bl.a., at SKM har drøftet ordningen, hvorefter personlige hovedaktionærer efter aftale med selskabet har haft mulighed for nettoindeholdelse. De systemansvarlige I SKAT har oplyst, at det er muligt at lave en fornuftig elektronisk løsning med hensyn til registreringen. |

SKAT_MDL_001_0075941

| | |
|---|---|
| | SKM vil derfor inden for ganske kort tid udarbejde nogle vilkår for at give tilladelsen.<br><br>Et udkast til tilladelsesordning vedrørende nettoindeholdelse af udbytteskat blev sendt i ekstern høring via det Specielle Eksterne Kontaktudvalg den 23. januar 2012.  Det nye tilladelsesinstitut til nettoindeholdelse blev offentliggjort den 23. februar 2012 som en SKM-meddelelse – SKM2012.117SKAT.<br><br>Der ses ikke i sagen at være forelæggelser for minister eller departementschef. |
| **10.**<br>Sag nr. 2011-038-0077<br><br>Møde i Revisionsudvalget den 31. marts 2011. | Der er tale om en sag i SKM vedrørende et møde i Revisionsudvalget den 31. marts 2011. Revisionsudvalget eksisterede i perioden 2010-2012, hvor SKM og SKATs hovedcenter var lagt sammen i én enhed (Koncerncentret).<br><br>Et af dagsordenspunkterne på mødet er en opfølgning på kritiske rapporter. Herunder behandles et statusnotat om arbejdsgruppen i SKAT, der skal komme med forslag til håndteringen af kildeskat.<br><br>Af statusnotatet fremgår det, at Intern Revision i 2010 afgav en rapport om udbytteskat, der ikke var tilfredsstillende. Videre fremgår det, at SKAT efterfølgende har indskærpet gældende regler for frikortsmarkering over for Finansrådet, og at SKAT deltager i et IT-projekt i OECD regi, der skal etablere et system, hvor bankerne administrerer indeholdelsen af udbytter til udlandet. Derudover er der nedsat en arbejdsgruppe, der inden 30. juni 2011 skal komme med forslag til administrative og systemmæssige ændringer, der kan imødegå de uafklarede forhold i rapporten. Produktionsforum har taget den afgivne status til efterretning.<br><br>Det fremgår af en mail dateret 23. marts 2011, at dagsordenspunktet vedrørende statusnotatet er godkendt af departementschefen.<br><br>I sagen er en forelæggelse stilet til departementschefen angående et brief til brug for mødet. I briefet indgår statusnotatet. Forelæggelsen ses ikke at være underskrevet af departementschefen.<br><br>Af protokollen for mødet, som er dateret den 1. april 2011, fremgår det, at departementschefen deltog på mødet, og at status på arbejdsgruppen blev givet. |
| **11.**<br>Sag nr. 2010-038-059 | I sagen er en forelæggelse til departementschefen med en status på opfølgning på Intern Revisions rapporter for |

| | |
|---|---|
| Opfølgning på intern Revisions rapporter for finansåret 2010 | finansåret 2010, herunder Intern Revisions rapport fra 2010 om udbytteskat. Materialet skal også anvendes til et møde i Revisionsudvalget den 23. juni 2011.<br><br>Det fremgår af forelæggelsen, at det indstilles, at opfølgningen på punktet vedrørende udbytteskat afsluttes efter den status, der blevet givet på mødet den 31. marts 2011, jf. sag nr. 10.<br><br>Forelæggelsen er underskrevet af departementschefen. |
| **12.**<br>Sag nr.2011-701-0070<br><br>Møde i Det eksterne kontaktudvalg den 8. juni 2011. | Der er tale om en sag i SKM vedrørende udarbejdelse af materiale til et møde i SKMs Eksterne Kontaktudvalg den 8. juni 2011.<br><br>I sagen indgår et notat, der formentlig udgør en briefing til departementschefen med henblik på et møde.<br><br>På mødet den 8. juni 2011 fremgår det af referatets punkt 3.c. under emner rejst af FSR, at FSR ønskede en afklaring af, hvorfor SKAT ikke længere overholder bekendtgørelse nr. 1442 af 20. december 2005. Bekendtgørelsen indeholder bl.a. hjemlen til VP-ordningen, dvs. danske aktier, der er i depot i Danmark, som ejes af begrænset skattepligtige fysiske personer i 12 fremmede stater (USA, Canada og 10 europæiske stater), der giver mulighed for nettoindeholdelse, og til individuelle tilladelser til nettoindeholdelse for udenlandske hovedaktionærer<br><br>SKM svarede, at bekendtgørelsen naturligvis skal overholdes. Ordningen med Værdipapircentralen, (VP-ordningen), er uændret. I forhold til individuelle tilladelser til nettoindeholdelser, der midlertidig var stillet i bero, arbejdes der på en løsning, der kan administreres fremadrettet. Dette sker senere via udarbejdelsen af et styresignal om administration af ordningen for nettoafregning, jf. sag nr. 9.<br><br>Departementschefen deltog ikke i det pågældende møde. |

SKAT_MDL_001_0075943

| 13. | Denne sag er en "samlesag" af henvendelser fra SKAT og |
| --- | --- |
| *Sags nr.:*<br>*2010-490-0016/*<br>*10-0214448*<br><br>Samlesag om henvendelser fra SKAT og eksterne rådgivere til SKM/koncerncentret vedrørende kildeskat på udbytter. | eksterne rådgivere mv., der strækker sig over perioden 2010-2012, og som dækker den periode, hvor SKM og SKATs hovedcenter var lagt sammen i én enhed (Koncerncentret). Sagen indeholder ikke forelæggelser for departementschef eller skatteminister.<br><br>Henvendelserne drejer sig bl.a. om dokumentationskrav i konkrete sager, om forståelsen af retsregler, om kvalifikation af udenlandske statsenheder, dvs. statsejede virksomheder, og hvorvidt de er begrænset skattepligtige til Danmark, om tilbagesøgning af kildeskat fra pensionskasser og investeringsinstitutter, om omnibusdepoter, og om gennemstrømningsproblematikken, herunder hvem der er den retmæssige ejer af udloddede udbytter og dermed berettiget til refusion.<br><br>En af henvendelserne i samlesagen er dateret den 4. oktober 2011, og stammer fra en medarbejder i SKATs udbytteadministration.<br><br>SKM svarer bl.a., at det på nuværende tidspunkt ikke kan svare sig at udvide VP-ordningen, idet der pt. arbejdes intensivt på en løsning i OECD vedrørende TRACE. Sideløbende pågår der et samarbejde med de nordiske lande med henblik på at finde en model for indeholdelse.<br><br>SKM bemærkede i svaret, at ordningen, hvorefter personlige hovedaktionærer efter aftale med selskabet har haft mulighed for nettoindeholdelse, har været drøftet i SKM. De ansvarlige for SAP-systemet havde oplyst, at det var muligt at lave en fornuftig elektronisk løsning med hensyn til registreringen. SKM lovede inden for ganske kort tid at udarbejde nogle vilkår for at give tilladelsen. Det kunne ikke med sikkerhed siges, hvornår tilladelsessystemet kunne genoptages, men at det burde være klar inden længe, dog afhængigt af de systemtekniske udfordringer. Se også dag nr. 9.<br><br>SKM svarede videre, at det fremgår af procesvejledningens afsnit A.A.12.3, at SKAT skal forrente tilbagebetalte skatter mv. når tilbagebetaling finder sted på statens vegne. Forrentningen af tilbagebetalingsbeløbet sker efter renteloven, når der ikke findes særlige regler om forrentning i anden lovgivning.<br><br>Forrentning af tilbagebetalte skatter for begrænset skattepligtige ses hverken at være reguleret i kildeskatteloven eller selskabsskatteloven, herunder bekendtgørelser tilknyttet de to love. Dette indebærer, at det er rentelovens |

SKAT_MDL_001_0075944

<table>
<tr>
<td></td>
<td>bestemmelser, der finder anvendelse ved behandling af sager om refusion af indeholdt kildeskat på udbytter.

Herefter gælder det, at der først skal betales renter, når der er gået 30 dage fra SKAT modtager anmodningen om tilbagebetaling. Renten er den officielle udlånsrente, som Nationalbanken har fastsat den 1. januar og den 1. juli det pågældende år med tillæg på 7 pct.

I henhold til rentelovens § 3, stk. 3, gælder det, at der tidligst skal betales rente, når der er gået 30 dage efter den dag, hvor skyldneren var i stand til at indhente de oplysninger, som må anses for nødvendige for at bedømme kravets berettigelse og størrelse.

Med ovennævnte bestemmelse var det efter SKMs opfattelse muligt at udskyde/suspendere 30 dages reglen – dvs. det tidspunkt, hvor renten skal tilskrives – såfremt SKAT vurderer og begrunder, at det er nødvendigt med yderligere oplysninger for at kunne bedømme kravets berettigelse. Dette er ifølge svaret særligt relevant i de situationer, hvor der findes anledning til at spørge den, der anmoder, om anmoder er den retmæssige ejer. Reglerne vedrørende forrentning ændres senere, jf. sag nr. 15.

Der ses ikke i sagen at være forelæggelser for minister eller departementschef.</td>
</tr>
<tr>
<td>**14.**
*Sag nr.:*
*2011-712-0082 /*
*2011-712-0083*

*Ændring af bekendtgørelse om indberetningspligter m.v.*</td>
<td>Der er tale om en sag om ændring af bekendtgørelsen om indberetningspligter mv. efter skattekontrolloven. Den nye bekendtgørelse underskrives den 15. december 2011 af den daværende skatteminister (bekendtgørelse nr. 1315 af 15. december 2011).

Ved lov nr. 462 af 12. juni 2009 (Lovforslag L 201 folketingsåret 2008-2009) blev der indsat en hjemmel for skatteministeren til at fastsætte indberetningsfrister, der afviger fra de normale frister. Hjemlen blev indsat i skattekontrollovens § 9 A, stk. 5, og udnyttes ved den nye indberetningsbekendtgørelse.

Hjemlen udnyttes i bekendtgørelsen til at fastsætte, at indberetninger om udbytter efter skattekontrollovens § 9 B, stk. 2, (unoterede aktier, der ikke er registreret i en værdipapircentral), som udgangspunkt skal ske senest i den følgende måned efter vedtagelsen eller beslutningen om at udbetale eller godskrive udbyttet.

Det fremgår af forelæggelsen i forbindelse med udsendelse af bekendtgørelsen til ekstern høring, at selskaber, som ikke er optaget til handel på et reguleret marked og ikke er registreret</td>
</tr>
</table>

SKAT_MDL_001_0075945

i en værdipapircentral (unoterede aktier), efter de tidligere regler skulle angive udbyttet og den indeholdte udbytteskat i måneden efter udlodningen af udbytte. Herudover skulle de senest den 20. januar i året efter udbyttebetalingen indberette identiteten af de enkelte udbyttemodtagere og det udbytte, de enkelte har modtaget.

Hvis indberetningen kommer samtidigt med angivelsen, vil det give SKAT mulighed for hurtigere at kontrollere, om der er indeholdt og afregnet den korrekte skat af udbyttet. Desuden giver det bedre mulighed for at kunne behandle anmodninger fra udlandet om refusion af indeholdt udbytteskat på grundlag af indberetninger om, hvem modtagerne er. Med henblik på at få de sidste unoterede selskaber til at indberette samtidig med, at de angiver, gøres det obligatorisk at indberette inden udløbet af angivelsesfristen. Dermed vil man også på sigt kunne sammensmelte indberetningen og angivelsen.

Bekendtgørelsen har virkning for indberetning af udlodninger vedtaget eller besluttet den 1. januar 2012 eller senere.

Et udkast til bekendtgørelse forelægges den daværende skatteminister, der den 29. november 2011 har godkendt, at bekendtgørelsen sendes i ekstern høring. I forbindelse med forelæggelsen er elementet vedrørende indberetning af udbytteskat specifikt nævnt. Det nævnes, at bekendtgørelsen kun ændres for så vidt angår unoterede aktier, men at der arbejdes på en løsning vedrørende børsnoterede aktier. Det nævnes dog, at der vil være behov for en lovændring i denne forbindelse.

Bekendtgørelsen er desuden forelagt den daværende skatteminister efter den eksterne høring med henblik på underskrift. I forbindelse med forelæggelsen nævnes det, at DI har knyttet en bemærkning til betalingsfristen for udbytteskat for noterede selskaber. Det nævnes dog også, at denne bemærkning vedrører lovgivningen og ikke bekendtgørelserne, der som nævnt kun ændrer reglerne fsva unoterede selskaber. Det bemærkes dog, at problemstillingen vil blive undersøgt nærmere.

Baseret på en medarbejders hukommelse må det antages, at grunden til, at udnyttelsen af bemyndigelsen først udnyttes i 2011, er, at den it-mæssige understøttelse i SKAT vedrørende de fremskyndede indberetninger skulle indarbejdes i et system, som først forventedes klar i 2011. Dette fremgår dog ikke af dokumenter eller andre noteringer på sagen.

SKAT_MDL_001_0075946

|  | Når hjemlen alene udnyttes, for så vidt angår unoterede selskaber, skyldes det yderligere overvejelser i anledning af tre indvendinger fra Finansrådet:

For det første foretages indberetningen vedrørende noterede selskaber af de depotførere, der fører den konto i værdipapircentralen, de pågældende aktier føres på. Depotføreren ved ikke nødvendigvis, hvilken angivelsesfrist, det udloddende selskab har. Angivelsesfristen er den samme som fristen for indberetning af A-skat til e-Indkomst. Selskaber med få ansatte har dermed den 10. i måneden efter udlodningen som frist, mens fristen for selskaber med flere ansatte er den sidste hverdag i måneden efter udlodningsmåneden.

For det andet ville fristen for indberetning være ganske kort, hvis der sker en udlodning i slutningen af en måned, og indberetningen skal ske allerede den 10. i den efterfølgende måned. Da udlodninger oftest foretages i foråret, kan problemerne med kort indberetningsfrist øges yderligere, især hvis påsken ligger i perioden mellem udlodningen og indberetningsfristen.

For det tredje var en af tankerne med at harmonisere angivelses- og indberetningsfristerne, at angivelsen kunne afskaffes, da den kan dannes på grundlag af en sammentælling af indberetningerne. Dette ville imidlertid betyde, at det udloddende selskab vil være bundet af depotførernes indberetninger i forhold til afregningen af udbytteskat. Dette anså Finansrådet for urimeligt såvel i forhold til depotførerne som i forhold til selskaberne.

Der var derfor behov for yderligere overvejelser i forhold til de noterede selskaber.

Harmonisering af angivelse og indberetning fsva unoterede aktier gennemføres ved bekendtgørelse nr. 1123 af 30. november 2012, jf. sag nr. 17. |
| **15.**<br>*Sag nr.:*<br>2011-411-0044<br><br>L 173 – forslag til lov om ændring af selskabsskatteloven, kildeskatteloven, skattekontrolloven og forskellige andre love (styrkelse af indsatsen | Der er tale om en sag vedrørende udarbejdelse af lovforslag nr. L 173 (Folketingsåret 2011-2012). Lovforslaget blev fremsat den 25. april 2012 af den daværende skatteminister. Lovforslaget blev vedtaget den 13. juni 2012 (Lov nr. 591 af 18. juni 2012).

Det vedtagne lovforslag indeholder flere elementer vedrørende kildeskat på udbytter:

1. Det fremgår af bemærkningerne til lovforslaget, at sambeskatningsreglerne medfører, at en koncern reelt |

SKAT_MDL_001_0075947

| | |
|---|---|
| mod nulskatteselskaber, beregning af indkomsten i et fast driftssted og åbenhed om selskabers skattebetalinger m.v.) | bliver beskattet af den samlede koncernindkomst, uanset hvordan de skattepligtige indkomster og værdier i øvrigt er fordelt i koncernen. Dette, sammenholdt med at koncernens midler kan flyttes skattefrit rundt i koncernen, tilsiger, at koncernen også hæfter solidarisk for skatter m.v. af hensyn til at mindske risikoen for, at SKAT står tilbage med et udækket krav, selvom der i andre dele af koncernen ville være dækning herfor.<br><br>Det foreslås derfor, at hæftelsen for udbytteskat m.v., royaltyskat og renteskat, samt tillæg og renter ud over det selskab, der over for det offentlige er forpligtet til betaling efter reglerne i kildeskattelovens § 69, stk. 1 og 2, som udgangspunkt også skal omfatte selskaber, der er sambeskattet med det udbetalende selskab på indeholdelsestidspunktet.<br><br>2. Ved et ændringsforslag til 2. behandlingen af lovforslaget foreslås der en ændret forrentning af kildeskattekravet i de situationer, hvor et udenlandsk udbyttemodtagende selskab eller person har krav på udbetaling af indeholdt kildeskat, hvis skattemyndighederne har tabt en sag om indeholdelse af kildeskat.<br><br>Herudover foreslås det i ændringsforslaget, at skattemyndighederne får mulighed for at afbryde udbetalingsfristen og dermed forrentningen, hvis modtagerens forhold hindrer kontrol af, om modtageren reelt er den udbetalingsberettigede.<br><br>I de situationer, hvor modtageren vægrer sig ved at medvirke til at afklare de forhold, der skal danne grundlag for vurderingen af, om modtageren er den reelt berettigede, eller ikke afgiver tilstrækkelige oplysninger, kan skattemyndighederne afbryde den frist for tilbagebetaling. Med loven af 18. juni 2012 blev der i kildeskatteloven indført en bestemmelse om, at der tidligst sker forrentning 6 måneder efter at grundlaget for udbetaling er tilstrækkeligt oplyst.<br><br>Ændringsforslaget indebærer desuden, at der gives mulighed at stille krav om sikkerhedsstillelse. Skønner skattemyndighederne efter en konkret vurdering, at udbetaling af kildeskat vil medføre en nærliggende risiko for tab, giver ændringsforslaget mulighed for, at skattemyndighederne kan kræve, at modtageren stiller sikkerhed, forinden udbetaling foretages. Skattemyndighederne kan dog kun stille krav om sikkerhed, hvis kravet er omtvistet og ikke endeligt afgjort ved en administrativ klageinstans eller domstolene. |

Ændring nr. 1 om solidarisk hæftelse i sambeskatningskredsen stammer tilbage fra to early warnings fra SKAT af den 16. oktober 2009 og den 29. oktober 2009, jf. sag nr. 4.

Dette element var med i det oprindelige udkast til lovforslag, som blev sendt i ekstern høring. Forslaget gav anledning til en del kritik fra både selskaberne og fra folketingsmedlemmer, men blev med nogle enkelte justeringer vedtaget.

Ændringerne under nr. 2 kom ind som et ændringsforslag til 2. behandlingen af lovforslaget.

Ændring nr. 1 om hæftelse for indkomstskat for sambeskattede selskaber har virkning for indkomstår, der påbegyndes den 1. juli 2012 eller senere. Ændringen, der vedrører hæftelse for kildeskatter har virkning for skattebetalinger, der forfalder til betaling den 1. juli 2012 eller senere.

Ændringerne som nævnt i nr. 2 har virkning for anmodninger om tilbagebetaling af kildeskatter, der ikke er afgjort senest den 30. juni 2012. Dette gælder, uanset at indeholdelse af kildeskat er sket før den 1. juli 2012.

Den daværende skatteminister orienteres ved en forelæggelse dateret den 16. juni 2011 om lovforslaget, som vil blive sat på lovprogrammet i den kommende folketingssamling. I forelæggelsen nævnes, at lovforslaget bl.a. kommer til at indeholde en ændring vedrørende solidarisk hæftelse i sambeskatningsforhold for selskabsskatter og kildeskatter. Lovforslaget følger op på en aftale indgået mellem den daværende regering, Dansk Folkeparti og Pia Christmas-Møller om fair beskatning af multinationale virksomheder. Ændringen indgår også i et faktaark fra Finansministeriet fra 27. maj 2011. Skatteministeren har godkendt forelæggelsen.

Den 20. november 2011 indgik den daværende regering en aftale med Enhedslisten om finansloven for 2012. Det fremgår af den aftale, at der er enighed om at gennemføre skatteministerens initiativer om bl.a. solidarisk hæftelse ved sambeskatning.

I en forelæggelse af 17. januar 2012 med udkast til lovforslag nævnes bl.a., at lovforslaget indeholder en ændring om solidarisk hæftelse for selskabsskatter/kildeskatter i sambeskatningsforhold. Forelæggelsen er godkendt af departementschefen den 17. januar 2012. Det fremgår ikke af forelæggelsen, om ministeren har set sagen.

SKAT_MDL_001_0075949

| | |
|---|---|
| | Ved forelæggelse af 25. januar 2012 forelægges ministeren et spørgsmål/svar-katalog. Det fremgår, at spørgsmål/svar-kataloget er sendt til ordførerne den 30. januar 2012. Spørgsmål/svar-kataloget indeholder et afsnit om indførelsen af solidarisk hæftelse i sambeskatningsforhold.

Ved forelæggelse af 1. maj 2012 indstilles det, at der bør fremsættes et ændringsforslag til 2. behandlingen af L 173. Der henvises i forelæggelsen til, at ændringen har sammenhæng til nogle verserende retssager. Det oplyses, at hvis SKM måtte få medhold ved domstolene, vil man reelt ikke have mulighed for at inddrive den udbetalte kildeskat fra moderselskabet i udlandet. Det foreslås derfor at indføre en bestemmelse om, at det indeholdelsespligtige danske selskab, der oprindeligt indeholdt kildeskatten, fortsat skal hæfte for kildeskatten, indtil der foreligger endelig kendelse eller dom. Det anføres i forelæggelsen, at de eksisterende regler i relation til hæftelse for kildeskatter er mangelfulde, og at det er afgørende med et indgreb hurtigst muligt. Det indstilles, at dette sker som et ændringsforslag til L 173, som allerede indeholder en ændring vedrørende kildeskatter. Forelæggelsen er godkendt af den daværende skatteminister den 2. maj 2012.

Det konkrete ændringsforslag til 2. behandlingen er forelagt skatteministeren ved en forelæggelse af 16. maj 2012. Oversendelsen af ændringsforslaget er godkendt af skatteministeren den 20. maj 2012. |
| **16.**<br>*Sag nr.:*<br>*12-0173537*<br><br>L 67 – forslag til lov om ændring af skattekontrolloven, kildeskatteloven og forskellige andre love (udvidelse af årsopgørelsesordningen, indberetning af udbytter m.v.) | Der er tale om en sag vedrørende udarbejdelse af lovforslag nr. L 67 (Folketingsåret 2012-2013). Lovforslaget fremsættes den 14. november 2012 af den daværende skatteminister. Lovforslaget vedtages den 17. december 2012 (Lov nr. 1354 af 21. december 2012).

Lovforslaget indeholder et element vedrørende kildeskat på udbytter:
Det fremgår af de almindelige bemærkninger, at det foreslås, at indberetning af udbytter af aktier m.v. til SKAT i alle tilfælde skal ske senest i måneden efter vedtagelsen eller beslutningen om at foretage udlodningen, når der er tale om aktier i danske selskaber m.v. Samtidig foreslås det at foretage nogle udvidelser af kravene til indholdet af indberetningerne.

Bestemmelserne i såvel skattekontrollovens §§ 9 B som 10 A om indberetning af udbytter omtaler, at indberetningen skal ske henholdsvis hvert år og mindst en gang årligt. Endvidere har skatteministeren efter skattekontrollovens § 9 A, stk. 5, mulighed for at fastsætte indberetningsfrister, der afviger fra de normale frister (20. januar i året efter det kalenderår, indberetningen vedrører). Bemyndigelsen blev indsat ved lov |

SKAT_MDL_001_0075950

nr. 462 af 12. juni 2009 (Lovforslag L 201 – Folketingsåret 2008-2009). Det fremgik af bemærkningerne til L 201, at tanken med bestemmelsen var at harmonisere indberetningsfristen med fristen for angivelse og indbetaling af udbytteskatten. Det vil sige regler om indberetninger af udbytter i måneden efter vedtagelsen af eller beslutningen om udlodningen.

Det fremgår af L 67 at det er tanken at udnytte bemyndigelsen i skattekontrollovens § 9 A, stk. 5, i relation til alle udbytter, som udloddes fra danske selskaber m.v. Dvs. ikke som tidligere blot i forhold til udbytter af unoterede aktier i danske selskaber. Det angives, at dette kan ske ved en ændring af bekendtgørelse nr. 1315 af 15. december 2011 om indberetningspligter m.v. efter skattekontrolloven.

Det foreslås samtidig at udvide de oplysninger, der skal være omfattet af indberetningerne. Bl.a. foreslås det, at der skal oplyses om baggrunden, hvis der ikke er foretaget indeholdelse af udbytteskat, eller hvis der er foretaget indeholdelse med en nedsat sats. Det angives i lovforslaget, at det på baggrund af lovændringen er hensigten, at der foretages en ændring af bekendtgørelse nr. 1315 af 15. december 2011 om indberetningspligter m.v. efter skattekontrolloven, hvorefter indberetningen om baggrunden for anvendelse af nedsat sats i medfør af en dobbeltbeskatningsoverenskomst skal omfatte oplysninger om datoen for den dokumentation, der har dannet grundlag for anvendelse af nedsat sats, og oplysninger om, hvilket land der har attesteret dokumentationen.

Dette skal samlet give SKAT bedre grundlag dels for at kontrollere, om der indeholdes og afregnes udbytteskat korrekt, dels for at behandle anmodninger om refusion af indeholdt udbytteskat.

Ændringen om, at der er hjemmel til at kræve indberetning af yderligere oplysninger, træder i kraft den 1. januar 2014. Hjemlen udnyttes senere i forbindelse med udstedelse af en ny bekendtgørelse om indberetningspligter efter skattekontrolloven, jf. sag nr. 19.

Et udkast til lovforslag forelægges for den daværende skatteminister den 19. september 2012. Ændringerne vedrørende udbytteskat nævnes ikke på forelæggelsen, men indgår i et resumé og et notat over forslaget, som er vedlagt forelæggelsen. Det fremgår ikke af forelæggelsen, om skatteministeren har godkendt sagen.

I forbindelse med 1. behandlingen af lovforslaget er udarbejdet en forelæggelse af 21. november 2012. Her

SKAT_MDL_001_0075951

<table>
<tr><td></td><td>forelægges bl.a. et spørgsmål/svar-katalog og et udkast til talepunkter for skatteministeren. Elementet om indberetning af udbytter af aktier indgår i spørgsmål/svar-kataloget. Spørgsmål/svar-kataloget er sendt til skatteordførerne den 20. december 2012. Af kataloget fremgår det bl.a., at formålet er at forbedre SKATs administration af udbytteskatten, idet månedlige indberetninger vil øge SKATs muligheder for hurtig afstemning, herunder øgede kontrolmuligheder i forbindelse med refusionssagerne. Forelæggelsen er godkendt af departementschefen den 25. november 212. Det ses ikke, at skatteministeren har set forelæggelsen, men det fremgår, at materialet er sendt til ordførerne.

Bemyndigelsen fra L 201 udnyttes til at ændre bekendtgørelsen om indberetningspligter efter skattekontrolloven til også at omhandle de noterede aktier, jf. sag nr. 17. L 67 er således en opfølgning på L 201, herunder Intern Revisions rapport fra 2010 vedrørende SKATs administration af udbytteskatten og SKATs arbejdsgruppe, der efterfølgende blev nedsat, og som afrapporterede arbejdet den 8. juni 2011 om refusion af udbytteskat.</td></tr>
<tr><td>**17.**<br>*Sag nr.:*<br>*12-0181424*<br><br>Ændring af bekendtgørelse om indberetningspligter m.v.</td><td>Der er tale om en sag om ændring af bekendtgørelsen om indberetningspligter mv. efter skattekontrolloven. Den nye bekendtgørelse underskrives den 30. november 2012 af den daværende skatteminister (bekendtgørelse nr. 1123 af 30. november 2012).

I bemærkninger til lov nr. 1354 af 21. december 2012 (L 67 Folketingsåret 2012-2013) varsles det at ændre bekendtgørelsen om indberetningspligter mv. efter skattekontrolloven, så der indføres månedlige indberetninger om alle udbytter efter vedtagelsen eller beslutningen om udlodningen. Før L 67 var det alene udbytter fra unoterede danske aktier, der skulle indberettes senest i måneden efter vedtagelsen eller beslutningen om udlodningen. Med L 67 foreslås det at udnytte bemyndigelsen fra L 201 til også at skulle gælde for udbytter af danske aktier mv., som er noterede.

Ændringen af indberetningsbekendtgørelsen er således i realiteten en opfølgning på L 67, jf. sag nr. 16. Det er vurderingen, at bekendtgørelsen kan udstedes med hjemmel i allerede eksisterende lovgivning, hvorfor bekendtgørelsen ikke afventer den endelige vedtagelse af L 67.

Ændringsbekendtgørelsen har virkning for indberetninger vedrørende udbytter, der vedtages eller besluttes den 1. januar 2013 eller senere.</td></tr>
</table>

SKAT_MDL_001_0075952

| | |
|---|---|
| | Et udkast til bekendtgørelse forelægges den 26. september 2012 for skatteministeren, der den 2. oktober 2012 godkender, at bekendtgørelsen udsendes i ekstern høring den 2. oktober 2012. Det bemærkes på forelæggelsen, at bekendtgørelsens indførelse af de månedlige indberetninger vil kunne gennemføres uafhængigt af lovforslag nr. L 67 (Folketingsåret 2012-13), jf. sag nr. 16. Af forelæggelsen fremgår det desuden, at en hurtigere gennemførelse af de månedlige indberetninger, sikrer en hurtig forbedring af SKATs administration af udbytteskatten, og at det alene betyder en ændring af indberetningsterminer og –frister for den finansielle sektor. Det anføres, at det derfor kan gennemføres hurtigere end udvidelsen af oplysningerne. Udvidelsen af oplysninger, som er indeholdt i L 67, sikrer en efterfølgende yderligere forbedring af administrationen af udbytteskatten.

Efter høringen forelægges bekendtgørelsen den 27. november 2012 for skatteministeren, der den 30. november 2012 underskriver bekendtgørelsen. Af forelæggelsen fremgår det bl.a., at der er sket en justering på baggrund af et ønske fra Finansrådet vedrørende indberetninger fra udlandet. |
| **18.**<br>*Sag nr.:*<br>*13-0064112*<br><br>Ændring af bekendtgørelse om indberetningspligter m.v. | Der er tale om en sag om udstedelse af 3 bekendtgørelser, der indfører pligt for virksomheder til at angive og indberette digitalt. Ved ændringsbekendtgørelse nr. 734 af 21. juni 2013 indføres der hjemmel til, at indberetninger efter skattekontrollovens § 9 B skal indgives digitalt. Bekendtgørelsen underskrives af den daværende skatteminister den 21. juni 2013.

Ved lov nr. 545 af 26. maj 2010 er der indsat en bemyndigelse i skatteforvaltningslovens § 35 til at pålægge digitalpligt. Det er SKAT, som har bedt om at få indført digitalpligt på indberetning af udbytte inden idriftsættelsen af én skattekonto den 1. august 2013. Med ændringen ved denne bekendtgørelse sikres det, at der er pligt til at indberette udbytter digitalt.

Bekendtgørelsen har virkning for indberetninger, der foretages den 1. juli 2013 eller senere.

Bekendtgørelsen forelægges den 19. juni 2013 for skatteministeren. På forelæggelsen nævnes det bl.a., at man for at imødekomme høringssvar fra nogle organisationer har indsat en overgangsregel, der betyder, at indsendelse på anden måde end digitalt i en overgangsperiode vil blive accepteret. Departementschefen har godkendt forelæggelsen den 20. juni 2013. Det fremgår ikke af forelæggelsen, at ministeren har set forelæggelsen. |

| | |
|---|---|
| **19.**<br>*Sag nr.:*<br>13-0201155 | Der er tale om en sag om udstedelse af en ny bekendtgørelse om indberetningspligter mv. efter skattekontrolloven. Den nye bekendtgørelse underskrives den 26. september 2013 af den daværende skatteminister (bekendtgørelse nr. 1148 af 26. september 2013).<br><br>Bekendtgørelsen er bl.a. en opfølgning på lov nr. 1354 af 21. december 2012, jf. sag nr. 16. Ved bekendtgørelsen udvides de oplysninger, som skal indberettes vedrørende udbytter.<br><br>Efter den ændrede bekendtgørelse skal der således ikke alene indberettes om størrelsen af udbyttet, men om størrelsen af udbyttet før og efter indeholdelse af udbytteskat, den procentsats, der er anvendt ved eventuel indeholdelse af udbytteskat, og det indeholdte beløb.<br><br>Indeholdes der med en reduceret sats, dvs. en sats på mindre end 27 pct., skal der endvidere oplyses om baggrunden for brugen af den reducerede sats.<br><br>Efter bekendtgørelsen skal der indberettes om datoen for udlodningen, og, hvis en udbetaling af en udlodning af udbytte vedrørende unoterede aktier sker til en anden end ejeren, skal der indberettes om den konto, udbetalingen sker til.<br><br>Efter bemærkningerne til lov nr. 1354 af 21. december 2012 (L 67, 2012/13), som ændringerne af bekendtgørelsen udmønter, er formålet med ændringerne at give SKAT bedre grundlag dels for at kontrollere, om der indeholdes og afregnes udbytteskat korrekt, dels for at behandle anmodninger om refusion af indeholdt udbytteskat.<br><br>Bekendtgørelsen forelægges med henblik på udsendelse i ekstern høring. Ændringerne af indberetningerne af udbytter omtales ikke direkte i forelæggelsen, som dog omtaler, at der bliver foretaget "en række ændringer som følge af ændret lovgivning". Forelæggelsen er godkendt af departementschefen den 27. juni 2013, men har ikke været set af skatteministeren. Bekendtgørelsen er endvidere forelagt med henblik på godkendelse. Forelæggelsen omtaler alene resultatet af høringen, som alene førte til mindre tekniske rettelser. Forelæggelsen er ikke underskrevet af skatteministeren, men han underskrev bekendtgørelsen den 26. september 2013.<br><br>Bekendtgørelsen træder i kraft den 1. januar 2014. |
| **20.**<br>*Sag nr.:*<br>15-2051530 | Der er tale om en sag vedrørende en early warning, som SKM har modtaget den 7. juli 2015 fra SKAT Jura vedrørende aktielån og godskrivning af udbytteskat. SKAT Juras early |

| | |
|---|---|
| Early Warnings vedrørende aktielån og udnyttelse af reglerne for refusion. | warning baserer sig på en early warning, som SKAT Jura modtog den 27. marts 2015 om emnet fra SKAT Store Selskaber.<br><br>I begge early warnings synes et centralt element i forhold til problemstillingen at være, at den skattemæssige og civilretlige behandling af aktielån er forskellig. Selvom långiver skattemæssigt er den retmæssige ejer af aktierne, er det låntager, der indberettes til SKAT som ejer af aktierne. De mulige risici i forbindelse med aktielån skal således først og fremmest ses i lyset af, at SKAT kan modtage fejlagtige oplysninger om den skattemæssige udbyttemodtager, herunder at der kan være uoverensstemmelser mellem de til SKAT indberettede oplysninger og det faktiske skattemæssige ejerforhold.<br><br>Der er således ikke tvivl om, hvem der er berettiget til refusion af udbytteskat, men begge early warnings adresserer primært SKATs problemer med at kontrollere, at de gældende regler for aktielån overholdes. |

SKAT_MDL_001_0075955

Journal nr.: 15-2486327

## Bilag 2B Procespapir vedrørende udsøgning af sager og dokumenter i Skatteministeriet vedrørende refusion af kildeskatter

Der er søgt i fritekstssøgning i henholdsvis Captia 4.2 og 4.6 på både sager og dokumenter.

I Captia 4.2 er anvendt følgende søgeord er anvendt:

- Kildeskat*
- Udbytte*
- Udlodning*
- Refusion*
- Aktielån*
- Cum/ex
- Trace
- Tilbagesøgning
- Indberetningspligt* bekendtgørelse*

I Captia 4.2 kommer der rigtig mange søgeresultater frem, når man anvender søgeordene "kildeskat", "udbytte", "udlodning" og "refusion" enkeltvis til søgning i dokumenter (ca. 60.000 i alt). For at få resultaterne ned på et lavere antal blev følgende kombinationer anvendt:

- Indeholde* af kildeskat*
- Udbytte* kildeskat*
- Udbytte* refusion*
- Udbytte* indeholde*
- Udbytte* udlodning*

Endvidere er der anvendt følgende kombinationer:
- Skl § 9A §9B
- Skattekontrolloven § 9A § 9B
- Tilbagesøgning*
- Indberetningspligt* bekendtgørelse*

I Captia 4.6 er der anvendt følgende søgeord:

- Kildeskat*
- Udbytte*
- Udlodning*
- Refusion*
- Aktielån*
- Cum/ex
- Trace
- Tilbagesøgning*
- Indberetningspligt* bekendtgørelse*

SKAT_MDL_001_0075956

Ved søgning på "kildeskat", "udbytte", "udlodning" i dokumenter i Captia 4.6 kom en meddelelse op om, at søgekriterierne ikke var gyldige. Det antages, at dette skyldes, at antallet af resultater er meget stort. Der er derfor anvendt følgende kombinationer ved søgning i dokumenter:

- Indeholde* af kildeskat*
- Udbytte* kildeskat
- Udbytte* refusion*
- Udbytte* indeholde*
- Udbytte* udlodning*
- Tilbagesøgning* udbytteskat*
- Tilbagesøgning* kildeskat*

Endvidere er anvendt følgende kombinationer:
- Skattekontrolloven § 9A § 9B
- Skl § 9A § 9B
- Indberetningspligt* bekendtgørelse*

Det bemærkes, at der er søgt på ovenstående søgeord med stjernemarkering (*). Stjernemarkering er anvendt med henblik på at finde variationer af søgeordene, fx kildeskat med stjerne fanger også kildeskatter, kildeskattebekendtgørelse m.v.

Ved søgning i Captia 4.2 og 4.6 er følgende procedure anvendt:

Sager og dokumenter, hvor det klart fremgår af titlen, at de ikke har relevans, er ikke læst. Resultater, hvor det fremgår af titlen, at de klart har relevans, kunne have relevans, eller hvor det er usikkert, om de har relevans, er læst igennem. Det er titler, hvor overstående søgeord indgår.

Sager og dokumenter, der vurderes at have relevans eller kunne have relevans, er skrevet ned på en liste. Derefter er de enkelte sager og dokumenter søgt frem og gennemgået nærmere.

Ved søgning på de enkelte sager er dokumenter og bilag på hver sag blevet gennemgået. Hvis sagerne er relevante for sagen, er de blevet indskrevet i et sagsark med en beskrivelse af sagen.

Ved søgning på dokumenter er de enkelte dokumenter gennemlæst for at se, om de er relevante for sagen. Hvis de er relevante for sagen, er dokumentnummeret skrevet ind i sagsarket med en tilhørende forklaring. Hvis dokumentet tilhører en af de sager, som allerede fremgik af sagsarket, blev der sat hak ved sagen.

SKAT_MDL_001_0075957





Skatteministeriet

# Internal Audit

# SKAT's administration of dividend tax and dividend tax refunds

✓ **Auditing**
✓ **Advice**
✓ **Reporting**

Confidential Pursuant to Protective Order

SKAT_MDL_001_0075835_T

# Preface

On August 29, 2015, Internal Audit was requested to assess a number of matters in connection with presumed fraud aimed at the scheme for refund of dividend tax withheld in Denmark.

Taxpayers (individuals and businesses) with a foreign tax liability may apply for a refund of the part of the dividend tax withheld in Denmark that exceeds the taxation in accordance with the double taxation agreements (DTAs) concluded. The Danish Customs and Tax Administration (SKAT) has received applications for refund of withheld dividend tax. However, it has subsequently turned out that the applicants are reportedly not stockholders in the Danish companies for which they are applying for a refund of dividend tax. In connection with their applications for a refund of withheld Danish dividend tax, the applicants have submitted documents to SKAT that are presumably false.

A deadline of four weeks was set for Internal Audit's investigation. It is clear that the relatively short deadline naturally means that Internal Audit has not been able to review and assess all details in connection with the above case.

Internal Audit has therefore had to refrain from examining a number of circumstances for which we have assessed that the individual matters were not significant in relation to an investigation of the areas covered by the description of the purpose of the investigation in Chapter 1.

It should be mentioned that on September 16, 2015, the Public Accounts Committee (Statsrevisorerne) requested Rigsrevisionen (the Office of the Auditor General) to investigate a number of matters concerning dividend tax and dividend tax refunds. There is an overlap between Rigsrevisionen's investigation and Internal Audit's investigation in a number of areas. Rigsrevisionen is expected to present the findings of its investigation at the beginning of 2016, and Rigsrevisionen's investigation must therefore be expected to be more extensive than Internal Audit's investigation.

Finally, it should be noted that the Department of the Ministry of Taxation and SKAT have continuously supplied the material requested by Internal Audit.


Copenhagen, September 24, 2015


Kurt Wagner
Chief Auditor

Confidential Pursuant to Protective Order

SKAT_MDL_001_0075835_T

# Contents

[ TOC \o "1-2" \h \z \u ]

Confidential Pursuant to Protective Order

SKAT_MDL_001_0075835_T

# 1.   Objective

The analysis includes all current challenges in relation to SKAT's administration of dividend tax and the extent to which the recommendations from previous audit reports have been sufficiently followed up on. The analysis also includes suggestions as to how the future administration of dividend tax is to be planned.

The analysis includes the following key elements:

- An account of the development in the dividend tax amounts and the refund amounts.

- A description and an assessment of the current administration procedure in respect of dividend tax and the refund of dividend tax. The account contains a description of the challenges of the administrative solution as well as a description of the measures that SKAT has initiated to improve the administration.

- An account of how SKAT has handled the audit comments/recommendations previously made by Intern Revision of the Danish Ministry of Taxation, including the extent to which they have been implemented.

- An account of the matters handled by the Ministry of Taxation regarding a refund of dividend tax, including specific bills and submissions to the Minister and the head of the department.

- An assessment of the extent to which the proposed acts have specifically improved the administration of dividend tax and the refund of dividend tax.

- An account of how the presumed fraud in connection with the refund of dividend tax has taken place

- An assessment of the principal functions in SKAT that monitor the dividend tax and the refund procedures.

## 2.    Scope

Intern Revision has carried out an analysis of SKAT's administration of dividend tax and the refund of dividend tax. The objective of the analysis is described in chapter 1. The analysis was carried out in the period from 29 August to 24 September 2015.

The analysis primarily included the period from 2012 to 2015 when the alleged fraud took place. However, in a number of areas it has been necessary to go further back in time in order to uncover the issues subject to the analysis.

The scope and the nature of our work in connection with answering the questions in the key elements in chapter 1 "Objective" have been determined based on a specific assessment and in consideration of the short period of time that we have had for the analysis. We have interviewed department employees and SKAT employees and obtained material and documentation from SKAT in connection with the analysis.

As the work in connection with the analysis is neither an audit nor a review in accordance with the international principles and standards for a public audit, we do not express any degree of certainty as to the accounting figures and the information from SKAT used in the answers. If we had done further work, audited or reviewed the used accounting figures and information from SKAT in accordance with the international principles and standards for a public audit, other issues could have been discovered and reported to the Danish Minister for Taxation. The answers to the questions have only been prepared for the purpose of supporting the Minister for Taxation to assess SKAT's administration of dividend and the dividend procedure in order to inform the Danish Fiscal Affairs Committee (*Skatteudvalget*). Only the questions in the key elements in chapter 1 "Objective" have been answered, including the accounting figures and the information from SKAT's accounts etc, and the answers cannot be extended to be about SKAT's accounts as a whole in the analysis period.

Please note that on 23 September 2015 SKAT informed Intern Revision that the data that Intern Revision has used in connection with the analysis in chapter 7 could be incorrect. SKAT has initiated a reconciliation between DataWarehouse and the underlying production system. This reconciliation had not been concluded when this report was completed. SKAT is of the opinion that the data do not contain any significant errors.

Please also note that a report has been filed with the Danish Public Prosecutor for Serious Economic Crime (*SØIK*) for alleged fraud in relation to the refund of dividend tax. Because of SØIK's investigations, it has been necessary to omit some information in this report. However, the omissions have not had any effect on our conclusions in this report.

The scope and the nature of the work that the department of the Ministry of Taxation has done regarding the proposed acts etc are described in chapter 19 and appendices 2A and 2B.

## 3.  Reading guide

Chapter 1 of the report contains a description of the purpose of Internal Audit's investigation, as communicated to the Fiscal Affairs Committee.

In Chapter 2, we have accounted for the scope of the investigation. It is pointed out in this connection that we have not conducted an audit and that we consequently cannot express any degree of certainty about the accounting figures and information from SKAT used in our report.

Chapter 4 contains a conclusion based on the investigation performed. The conclusion includes answers to the most significant questions raised in connection with the presumed fraud.
The conclusion can thus be read independently of the rest of the report.

Chapters 5 and 6 are to be regarded as general chapters which provide a brief account of the role of the auditors and the administration, respectively, in connection with the fraud. These chapters thus constitute a basis for understanding the other chapters in the report.

Chapter 7 contains a number of dividend tax and refund statements. The chapter is to contribute to an understanding of the financial scope of the dividend tax.

In Chapter 8, we provide an overall account of SKAT's level of control in the field of tax revenues. The chapter is to give the reader an understanding of the general level of control, which is also applicable to the field of dividend taxation.

In Chapter 9, we account for the overall process for dividend tax and refunds. The chapter is to provide the reader with a basis for understanding how the presumed fraud has been committed.

The purpose of the other chapters in the report is to answer a number of important questions concerning dividend tax and dividend tax refund.

# 4.    Conclusion

Intern Revision has carried out an analysis of the areas of dividend tax and the refund of dividend tax for the purpose defined in chapter 1 (see chapter 1).

## How has the fraud been carried out?

Based on the analysis carried out and the previously conducted audit Intern Revision finds that a number of interdependent issues at SKAT have meant that it is possible to commit fraud directed at SKAT's administration of dividend tax. the most important reasons why the fraud has been possible are: the internal controls, the data structure and the determination of the overall responsibility (process ownership).

*Internal controls:*

Proper and well-functioning procedures are characterised by the procedure having built-in controls to prevent any unwanted events. Strong internal controls are generally advisable in procedures that include disbursements in order to reduce the risk of any incorrect payments. Intern Revision has gone through and assessed the procedures relating to the refund of dividend tax, including the internal controls in the procedure. Intern Revision has observed that:

- SKAT's procedures for the approval of payment requests and subsequent disbursements have included an assessment of whether the requests for a refund received have been accompanied by the required documentation.

- SKAT's control has also included a recalculation of the refund amount to verify whether it has been calculated correctly under the relevant double taxation treaty.

- To a lesser extent SKAT's approval procedure has included an assessment of any big fluctuations in the amounts of the requests for a refund as well as an identification of the requests for a refund forwarded by new, unknown intermediaries.

- To a limited extent the approval procedure has included verification of whether the received requests for a refund can be traced back to a shareholding and whether the request for a refund can be traced back to prior withholding of dividend tax. It is noted, however, that this control is currently made difficult because of the data (see below).

We have also established that the subsequent follow-up on the accounting data in connection with the periodical approvals of accounts has been inadequate. We have thus established that the interim financial statements which include dividend tax and the refund of dividend tax have been approved with an unqualified opinion.

It is our assessment that the periodical approval of the accounts is not based on any systematic analytical verification of the accounting figures.

*Data structure:*

A number of IT systems support the administration of dividend tax and the refund of dividend tax. The systems partly contain information about the companies' distribution of dividend in total and partly information about the dividend distributed to the individual shareholders. However, a large part of the distributed dividend is not registered for each shareholder but is instead registered for each custodian.

A large part of the Danish shares held by individuals with limited Danish tax liability has thus been deposited in omnibus accounts. In such situations the IT systems do not contain any information about the individual holder of the shares, but only information to identify the omnibus account which will be registered as the recipient of the dividend. Please also note that any refunds of dividend administered through the programme with the banks are not registered in the IT systems.

The result of the incomplete and in many cases random registration of data in the IT systems supporting the administration of dividend tax and the refund of dividend tax is that it will be difficult to carry out an effective control based on the registered data. A control of the basis includes checking whether the request for a refund of dividend tax is based on an actual shareholding and that the dividend tax has been withheld.

It is our assessment that essentially the data structure was established for the purpose of servicing the tax payers and to a lesser extent for the purpose of being able to support any control and management.

*Process ownership:*
The areas in SKAT

- Kundeservice (*customer service*);
- Inddrivelse (*collection*);
- Indsats (*action*); and
- IT

have been included in the administration of dividend tax and the refund of dividend tax. It is noted that the areas "Kundeservice" and "Inddrivelse" have predominantly administered the dividend tax and refund areas. The area "Kundeservice" is responsible for the system, the data and the interfaces with the taxpayers and the area "Inddrivelse" is responsible for the bookkeeping, accounts and the disbursements.

If clear and overall responsibility for the entire procedure regarding dividend tax etc has been established, the above organisation of the administrative tasks will not necessarily cause any undesirable situation. In practice, however, no one was responsible for the entire dividend tax procedure in SKAT. It means that the organisational structure did not determine the overall process ownership.

The result is an increased risk of the overall administration of dividend tax not being subject to sufficient monitoring and assessment, including periodical assessments of the built-in controls of the procedures.

However, the individual areas are not exempted from carrying out the following tasks because the organisational structure did not determine the overall responsibility:

- Ongoing monitoring and assessment of the parts of the dividend taxation procedure placed in the relevant area

- Ongoing assessments of how the procedures in the areas (partial procedures) work

together with the procedures (partial procedures) carried out by other areas?

## Have the proposed acts improved the administration of dividend tax?

By an amendment to legislation in 2009 which resulted in two statutory orders which came into effect from 2012 (unlisted shares) and 2013 (listed shares), it became possible to fix the dates for the determination of the company's distribution of dividend and the registration of the individual recipients of dividend, the result being that the determination and the registration were made at the same time. It had the following advantages:

1. Immediately after the announcement of dividend SKAT receives information about the recipients of dividend and the withheld dividend tax. The information is received either for each person or for each custodian.

2. The reconciliation between the dividend distributed by the companies and the registration of the recipients of dividend can be carried out. The result is that the total dividends and the dividend tax are more certain.

3. When a refund of dividend tax is requested, the request can be compared to the received dividend and the withheld dividend tax.

On the date of this report SKAT had not yet implemented the reconciliation procedures for listed companies made possible from 2013. SKAT has not yet changed the procedures/data structure in order to effectively use the information about the recipients of dividend for control purposes.

## Has SKAT followed up on the audit reports?

SKAT has established procedures that allow for regular follow-ups on recommendations from the reports of Intern Revision.

However, SKAT has not yet implemented a number of important recommendations that allow for:

1. The establishment of the general responsibility for the entire administration of dividend tax.

2. Making sure that dividend tax is not wrongfully refunded.

3. Reconciliation between the determination and the reporting.

Finally, Intern Revision notes that the implementation of the above is conditional on a considerable investment for the purpose of implementing the required changes in the procedures. The investment would partly be an investment in systems, etc and partly be an increase in the labour costs spent directly on supporting the dividend taxation procedure.

## Additional issues

As for any additional issues that have been analysed, we refer to chapters 7-20 in this report.

# 5. Fraud – the auditors' role

Internal Audit must conduct its audit in accordance with generally accepted public auditing standards. This includes obtaining reasonable assurance that the financial statements are correct, i.e. without material errors and omissions.

Material errors and omissions in the financial statements may be due to fraud.

The audit is planned and conducted based on an assessment of materiality and risk, including an assessment of the risk of fraud. The audit strategy and the specific audit procedures are established based on an assessment of materiality and risk as well as on the basis of the enterprise's internal control.

An audit can never provide absolute certainty that the financial statements do not contain errors and omissions resulting from fraud. The reason for this is that the auditing procedures are not specifically aimed at detecting fraud and that fraudsters often seek to conceal or hide their fraudulent acts behind false documents, vouchers, etc. Unless there is reason to assume the contrary, the records and documents in the enterprise are regarded as genuine and valid.

In order to assess the risk of fraud, Internal Audit must, among other checks, assure that procedures and internal controls relating to the protection of assets and revenues are adequate. In addition, the audited enterprise's management is asked about its assessment of the risk of fraud and about controls implemented for the prevention and detection of fraud.

If Internal Audit identifies deficiencies in the internal control, including deficiencies which may lead to an increased risk of fraud, the risks are discussed with the audited enterprise's management and reported in audit reports, including the management's action plans for countering risks. Audit reports are forwarded to the affected functions and departments as well to the enterprise's management.

Internal Audit performs ongoing follow-up on recommendations given in audit reports, including on whether the enterprise's management has implemented necessary measures to improve internal controls and procedures within the agreed deadlines.

If it is found that the necessary internal controls and procedures to counter the risks identified have not been implemented, this will still be reported to the audited enterprise's management. It will also be considered whether the matter entails a changed assessment of risks, an extension of the audit, and whether the matter must be included in other types of reporting from Internal Audit.

## 5.1 Interim conclusion

Internal Audit must conduct its audit in accordance with generally accepted public auditing standards. This means that an assessment must be made of the risk of fraud. If Internal Audit identifies internal control deficiencies which may result in an increased risk of fraud, this is reported to the enterprise's management. Internal Audit performs ongoing follow-up on whether the management implements controls that counter the risks identified.

Confidential Pursuant to Protective Order

# 6. Fraud – the administration's role

In the Danish Ministry of Taxation's business area, the procedures for approval of the financial statements within the Minister's competency area and the related formalized supervisory and control functions are described in the Ministerial Instructions for the Ministry of Taxation as well as in business instructions and accounting instructions for the individual enterprises in the Ministry of Taxation's group.

The management of expenses and revenues must be planned based on the specific circumstances. This means that materiality and risk as well as the size and nature of the different types of expenses and revenues must be taken into account in the preparation of the specific procedures. In addition, due economic and financial considerations must be made.

The individual enterprises in the Ministry of Taxation's group are responsible for the management of expenses and revenues in their area. The enterprises themselves are responsible for financial control and financial management. Procedures and internal controls must be established which ensure, to the greatest possible extent, that the transactions and decisions covered by the financial reporting are in accordance with the licenses granted, acts, and other regulations as well as with agreements concluded and usual practice.

In accordance with the general rules for the State Administration's allocation of the funds granted in the annual appropriations acts, the individual institutions must, in connection with their financial management, consider their risk management, including the administrative routines in the institution which are used to control risks in order to eliminate and limit losses.

In addition to the above rules, in May 2007, the Danish Agency for Governmental Management prepared a practical guide on how government institutions can introduce risk management or expand their current risk management.

## 6.1 Interim conclusion

Enterprises in the Ministry of Taxation's group must organize supervisory and control functions in accordance with the Ministerial Instructions for the Ministry of Taxation, business instructions, and accounting instructions. In addition, the enterprises must consider their risk management for control of risks in order to eliminate and limit losses.

# 7.     Calculations - Dividend tax and refunds

Section 7.1 includes various calculations regarding dividend tax and refunds. We carry out a number of analyses and assessments in order to describe the development and the scope of revenue and refunds.

Section 7.2 includes an analysis of whether the refunds regarding specific companies are a reasonable part of the dividend tax.

It is assessed as a part of the analyses in sections 7.1 and 7.2 whether the full extent of the fraud has been uncovered.

The data used in sections 7.1 and 7.2 have been provided by SKAT.

## 7.1     Dividend tax amounts and refund amounts

Table 7.1 shows the revenue (the dividend tax), refunds and the number of applications for refunds annually from 2005 to June 2015.

| | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 Jan - juni |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Indtægter i mia. kr. | 6,69 | 9,36 | 9,94 | 11,1 | 8,06 | 8,38 | 9,65 | 8,71 | 11,89 | 13,2 | 18,51 |
| Refusioner i mia. kr. | 1,18 | 1,88 | 1,07 | 0,75 | 0,75 | 0,68 | 1,12 | 1,45 | 2,79 | 6,06 | 8,73 |
| Antal ansøgninger | 16.817 | 18.618 | 15.687 | 16.655 | 21.284 | 21.481 | 24.282 | 30.765 | 33.861 | 41.764 | 34.850 |

*Table 7.1*

The revenue includes the stated gross dividend tax with the exception that any refunds through the net settlement programmes have been deducted directly before recognition in the revenue. It means that the part deducted through the net programmes is not included in the accounting figures regarding refunds. The net settlement programmes are described in detail in chapter 9.

Graph 7.2 below shows the revenue, refunds and the number of applications for refunds for the years 2005 to June 2015.



*Graph 7.2*

Graph 7.2 shows the revenue and refunds in billions of Danish kroner annually. The revenue and refunds are shown on the primary Y axis (the left part of the graph). The number of applications for refunds is shown on the secondary Y axis (the right part of the graph).

A refund percentage is calculated based on the revenue and the refunds. The refund percentage shows the refunds compared to the revenue. It is assessed that the net settlement programmes do not affect the calculated refund percentages to any significant degree.

The development in the refund percentage is shown in graph 7.3:




*Graph 7.3*

**TRANSLATION**

The refund percentages in 2005 and 2006 are relatively high compared to the period 2007 to 2012 whereas the refund percentages in 2014 and 2015 were 45.9% and 47.2% respectively, which is a significant increase compared to previous years. The refund percentage was relatively high in 2013 whereas the refund percentages in 2014 and 2015 seem, on the fact of it, to be untypically high.

SKAT_MDL_001_0075835_T

The average refund amount for each application can be calculated as a supplement to the refund percentage. The revenue and the refunds and the average amounts for each application for a refund can be found in graph 7.4.



Graph 7.4

The average amount for each request for a refund increased from 2013 to 2014 and again from 2014 to 2015 in particular, see graph 7.4.

Application programmes
SKAT receives the applications for refunds through the programme with the banks or through the manual programme called the "form programme". The administration of both programmes is described in detail in chapter 9.

The data regarding the number of applications from the bank programme and the form programme can be found in table 7.5. The table includes the period from 2010 to August 2015.

| | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 Jan – aug |
|---|---|---|---|---|---|---|
| Antal refusioner - Ansøgninger | 21.451 | 24.292 | 30.765 | 33.851 | 41.764 | 34.850 |
| - Heraf ansøgninger via bankordning | 15.432 | 17.163 | 20.463 | 21.096 | 25.390 | 23.206 |
| - Heraf ansøgninger via blanketordnir | 6.019 | 7.129 | 10.302 | 12.765 | 16.374 | 11.644 |

Table 7.5

Confidential Pursuant to Protective Order

The revenue, the refunds and the number of applications in each application programme are shown in graph 7.6 below.



*Graph 7.6*

It is noted that the period for the number of applications in 2015 is not quite the same as the period for the calculation of revenue and expenditure.

It appears from graph 7.6 that the number of applications from the programme with the banks and the form programmes shows a relatively similar development in the period from 2010 to 2015.

Graph 7.7 below shows the refund amounts from the bank programme and the form programme respectively.





**TRANSLATION**

*Graph 7.7*

It appears from graph 7.7 that refunds through the form programme have increased significantly since 2010 when the form programme was about half as big as the bank programme. The refund amounts from the form programme show an increase of several hundred per cent. The amounts regarding the bank programme has also increased but not as much as for the form programme.

Confidential Pursuant to Protective Order                                                                SKAT_MDL_001_0075835_T

Graph 7.8 shows the development in the average amount for each application programme shown together with the number of annual refunds:



| | 2010 | 2011 | 2012 | 2013 | 2014 | June-15 |
|---|---|---|---|---|---|---|
| Refunds in total in billions of DKK | 0.68 | 1.12 | 1.45 | 2.79 | 6.06 | 8.73 |
| The bank programme in DKK | 29,612 | 47,436 | 51,012 | 62,473 | 76,093 | 102,511 |
| The form programme in DKK | 37,113 | 43,449 | 39,618 | 115,657 | 252,318 | 545,333 |

Refunds in total in billions of DKK    The bank programme in DKK    The form programme in DKK

*Graph 7.8*

It appears from graph 7.8 that the rate of increase regarding the form programme was significantly bigger in the period from 2012 to 2015 whereas both programmes had about the same level in the period from 2010 to 2012.

<u>The extent of the assumed fraud</u>
The memorandum of 25 August 2015 to the Danish Fiscal Affairs Committee with the title "Suspected large-scale white-collar crime against SKAT" contains the following information which is reproduced in table 7.9:

| | 2012 | 2013 | 2014 | 2015 | I alt |
|---|---|---|---|---|---|
| Antal ansøgninger i stk. | 30.765 | 33.361 | 41.764 | 33.638 | 140.028 |
| Politianmeldt antal ansøgninger om refusion i stk. | 15 | 251 | 954 | 900 | 2.120 |
| Beløb omfattet af politianmeldte ansøgninger i mia. kr. | 0,03 | 0,6 | 2,5 | 3,2 | 6,2 |

*Table 7.9*

It appears from table 7.9 that 2,120 applications out of approximately 140,000 applications for a refund in the years 2012-2015 are under suspicion, which is the equivalent of approximately 1.5% of all applications.

The amount is about DKK 6.2 billion which means that the average amount for each application suspected of white-collar crime (assumed fraud) is approximately DKK 3 million.

SKAT has informed Intern Revision that only applications through the form programme have been

**TRANSLATION**

reported to the police. It means that the applications through the bank programme is not under any suspicion.

Confidential Pursuant to Protective Order

<u>Adjustment of the accounting figures for amounts suspected to be included in the alleged fraud</u>

We have adjusted the accounting figures for the amounts and the number of cases included in the assumed fraud. We then calculated the refund percentages and the applications for refunds from the form programme. The objective was to assess the development in the accounting figures when they have been adjusted for the assumed fraud.

The original and the adjusted accounting figures are shown in table 7.10.

|  | 2012 | 2013 | 2014 | 2015 Jan-June |
|---|---|---|---|---|
| Refund percentage | 16.7 | 23.9 | 45.9 | 47.2 |
| Refund percentage (adjusted) | 16.3 | 18.8 | 27.0 | 29.9 |
| Average refund request in DKK - form programme | 39,61 | 115,65 | 252,31 | 545,33 |
| Average refund request in DKK - form programme | 36,76 | 70,03 | 105,80 | 293,17 |

*Table 7.10*

The adjusted refund percentages in 2014 and 2015 are approximately 10 percentage points higher than in 2012 and 2013. The average request for a refund from the form programme also increased significantly year by year despite the figures being adjusted for the extent of the assumed fraud.

It is our opinion that an explanation is needed for the development in the accounting figures even though an adjustment has been made for the extent of the alleged fraud.

At the moment we are not able to look into the reason for the increasing amounts for each request for a refund. However, we assume that the reason for the increase in the refund percentages is a corresponding increase in the foreign ownership of Danish listed shares. This is why we have decided to investigate whether the development in the refund percentages can be explained by the development in the ownership of Danish shares by foreign shareholders.

Average annual ownership can be calculated based on the data of the foreign ownership. The average ownership can be compared with the development in the annual refund percentage. However, such an average comparison does not take into account the ownership of the individual share on the actual date of the distribution of dividend. The average foreign ownership is assumed, however, to have a certain correlation with the development in the refund percentage. A detailed analysis of the issues affecting the refund percentage is carried out in section 7.2.

We show the development in the foreign ownership of shares for each month for the period from 2010 to June 2015 in graph 7.11.



Source: VP Securities A/S

*Graph 7.11*

The foreign ownership increased from 41.7% in January 2010 to 56.0% in June 2015.

The foreign ownership and the adjusted refund percentage are shown in table 7.12 below. As previously stated, the refund percentage has been adjusted for the assumed extent of the fraud. Table 7.12 also shows the yearly development in percentage points.

| | 2012 | 2013 | 2014 | 2015 |
|---|---|---|---|---|
| Foreign ownership | 46.15% | 48.88% | 52.22% | 55.00% |
| Refund percentage adjusted | 16.30% | 18.80% | 27.00% | 29.90% |
| Development - annual foreign ownership | 2.70% | 3.30% | 2.80% | |
| Development - annual refund percentage | 2.50% | 8.20% | 2.90% | |

*Table 7.12*

Based on table 7.12, it can be calculated that the foreign ownership increased by a total of 8.8 percentage points whereas the refund percentage increased by a total of 13.6 percentage points.

Based on the above, it is our immediate opinion that the development in the ownership of foreign shares cannot explain the development in the refund percentages in the period from 2012 to 2015.

A possible explanation could be changed ownership among the foreign shareholders. However, we have not been able to look into this issue in this analysis. However, a possible explanation could also be that the full extent of the fraud had not been established.

## 7.2    Analysis of refunded dividend

We have assessed the extent of the refunded dividend tax at company level, including assessed the reasonableness of the refund by comparing the refund with the dividend tax. The analysis includes the 15 companies from the C20 index that SKAT assumes have been subject to the fraud.

The variations in the dividend tax and the refunds across the companies are illustrated in figures 7.13, 7.14 and 7.15 below which include the years 2012-2014. Each company is recognised by a letter so that the company cannot be identified.



*Figure 7.13*

*Figure 7.14*



*Figure 7.15*

The refund percentages for each company is shown in table 7.16 below.

| Company | 2012 | 2013 | 2014 |
|---|---|---|---|
| A | 22% | 110% | 69% |
| B | 25% | 65% | 94% |
| C | 7% | 50% | 66% |
| D | 25% | 100% | 0% |
| E | * | 7% | 97% |
| F | 21% | 18% | 74% |
| G | 25% | 3% | 96% |
| H | 6% | 2% | 65% |
| I | 23% | 81% | 75% |
| J | 68% | 7% | 82% |
| K | 124% | 12% | 75% |
| L | 45% | 47% | 84% |
| M | * | 11% | 111% |
| N | | | 80% |
| O | 58% | 9% | |

*) refunds have been paid, but no dividend tax has been

*Table 7.16*

The above figures and table show that the part of the refund of the dividend tax varies greatly, both when it comes to the individual company assessed over time and when the companies are compared to each other.

We have analysed the part of the refund of the dividend tax (called the refund percentage) in tables 7.17 and 7.18 below. The data in the analysis have been accrued according to the tax year with the result that the refunds and the dividend tax are for the same year. As a consequence, the tables in the analysis differ from the tables in section 7.1 which have been calculated based on the calendar

**TRANSLATION**

year when the payment was made, which is typically the year after the tax year.

Confidential Pursuant to Protective Order                    SKAT_MDL_001_0075835_T

We have calculated the actual refund percentage for each company. A refund percentage of 33% thus means that the refund amount is 33% of the dividend tax withheld in respect of the company in question.

SKAT has not fixed an expected refund percentage or an interval for the refund percentage to be used to assess the actual refund percentages. We have thus calculated a weighted average for the refund percentage based on double taxation treaty rates and the ownership of Danish listed shares broken down by country. A detailed account is provided for the data, the method and the assumptions immediately below figure 7.22.

According to our calculations, the weighted refund percentage is approximately 23%. The calculation is based on two important assumptions:

1) The share of the dividend tax pertaining to foreign countries is equal to the foreign ownership of Danish listed shares. It means that if 53% of the listed shares are held by foreign shareholders, it is assumed that 53% of the total dividend tax pertains to foreign countries.

2) The tax rate applying to the dividend in the individual country is equal to the rate for ordinary shareholders according to the double taxation treaty rates. It means that if the double taxation treaty rate for ordinary shareholders is 15%, it is assumed that this rate has been applied to all dividend regarding the country in question.

However, the result of the application of these assumptions is that the calculation is subject to considerable uncertainty.

This is why we have calculated an alternative refund percentage based on some very prudent assumptions. The assumptions are that the foreign share of the dividend tax weights twice as much as the ownership of shares suggests and that the tax rate for dividend is 0 in the double taxation treaty countries (meaning that a full refund for the dividend tax is obtained). This refund percentage can be seen as an extreme in order to be able to draw a conclusion with a greater degree of caution. We have calculated the alternative refund percentage to be approximately 67%.

The intervals in the tables are shown in colour:

shows the refund percentages that seem reasonable considering the circumstances

shows the refund percentages that should be looked into in more detail as there is a risk that a part of the refund has been wrongful

shows that the refund percentage is higher than the company's dividend tax which should not be the case. It means that a part of the refund must be wrongful.

The 15 companies' refund percentages are included in the intervals in tables 7.17 and 7.18. The total refunded dividend tax for the 15 companies (calculated in mDKK) and the number of companies included in the individual intervals are shown in the tables.

SKAT_MDL_001_0075835_T

**Refund percentage = 23%:**



*Table 7.17*

**Refund percentage = 67%:**

| Share of refund of dividend | 2012 | | 2013 | | 2014 | | In total |
|---|---|---|---|---|---|---|---|
| | Refunded dividend tax | Number of companies | Refunded dividend tax | Number of companies | Refunded dividend tax | Number of companies | Refunded dividend tax |
| 0%-67% | 1,249.1 | 10 | 624.8 | 11 | 78.3 | 3 | 1,952.2 |
| 67%-100% | 80.0 | 1 | 1,698.6 | 1 | 7,666.0 | 10 | 9,444.6 |
| 67%-100% | | | | | | | |
| In total | 1,816.0 | 14 | 3,650.4 | 14 | 7,879.9 | 14 | 13,346.3 |

*Table 7.18*

Before the tables are commented on, it is noted that the refunds through the bank programme are not included in the calculations as they are not broken down by company. It means that in reality the refund percentages are a little higher than the refund percentages shown in the tables. The consequence is that the conclusions based on the tables are uncertain as it is likely that more companies would be in the yellow and the red intervals in the tables if the refunds through the bank programme were included in the calculations.

Because of this and because of the very cautious assumptions included in the calculations, it is noteworthy that there are still quite a lot of companies that are outside the green area in the tables. This indicates that the refunds were too big. This is especially the case for the tax year 2014.

It is noted that the refunds of dividend from companies included in the above tables are included in the assumed fraud. It means that the tables confirm that the refunds were too big.

It is our opinion that the line of thought behind the analysis method can be used going forward to assess the reasonableness of the claimed back refund compared to the dividend tax. It is possible to make the results of the analysis more detailed to the extent that more detailed data make more refined assumptions possible.

*Specific analysis of two companies*

As a supplement to the above analysis, we have obtained information about the foreign ownership of two of the above companies for the purpose of making a more exact assessment of the paid-out refund.

These calculations take into account the part of the shares owned by foreign shareholders in the specific companies. The calculations do not take into account the break-down of the shareholders by country or if the dividend rate in the home country deviates from the rate of the double taxation treaty rate for ordinary shareholders.

We have compared the expected refund with the actual refund. We have also included the extent of the assumed fraud regarding the two companies in order to assess whether the assumed fraud can be explained by a possible difference between the expected and the actual refund.

We have calculated the expected refund for each of the two companies based on the company's total dividend (method A) and the withheld dividend tax (method B).

The results of our calculations are shown below. The amounts have been indexed by the actually refunded dividend tax as index 100. It means that the companies cannot be identified.

Company 1:

|  | Method A | Method B |
|---|---|---|
| Expected refund | 36 | 34 |
| - Actually refunded dividend tax | 100 | 100 |
| **= Difference** | **64** | **66** |
| - Assumed fraud 2015 | 46 | 46 |
| **- Unexplained difference** | **18** | **20** |

*Table 7.19*

Company 2:

|  | Method A | Method B |
|---|---|---|
| Expected refund | 26 | 25 |
| - Actually refunded dividend tax | 100 | 100 |
| **= Difference** | **74** | **75** |
| - Assumed fraud 2015 | 48 | 48 |
| **- Unexplained difference** | **26** | **27** |

*Table 7.20*

The above calculations show that the assumed fraud cannot be fully explained by the difference in the expected refund and the actual refund. It means that there is a risk that the full extent of the fraud has not been completely uncovered. However, we must emphasise once again that the calculations are subject to great uncertainty.

The two calculation methods A and B are outlined in figures 7.21 and 7.22 below:

Method A: the basis is the paid dividend, in total



*Figure 7.21*

Method B: the basis is the dividend tax, in total



(*) Has been calculated based on the tax rates applying to the different types of shareholders in the companies in question.

*Figure 7.22*

The three paragraphs below include a detailed account of:

- the data;
- the method; and
- the assumptions

for the calculation of the weighted refund percentage used in the above analyses.

*The data*

For the purpose of the analysis SKAT has provided a data extraction regarding the dividend registrations from DataWarehouse. The data concern 15 big companies that SKAT assumes have been included in the fraud. The 15 companies include almost all the refunds received by manual applications in the period from 2012 to 2014. We have received data regarding the dividend, the dividend tax and the refunds broken down by year for each of the 15 companies.

SKAT has informed us that the data have not been reconciled with the underlying production systems, but that it is assessed that the data are reasonably valid.

The supplied data do not include the refunded dividend tax through the bank programme. However, the refunds paid out through the bank programme is an important part of the total refunds. As for the refunds paid out in the years 2013, 2014 and 2015, we have been informed that the payments through the bank programme amount to 47%, 32% and 27% respectively of the total refunds. It means that the calculated refund percentages are somewhat higher than shown in our calculations.

**TRANSLATION**

Moreover, the data do not include any dividend tax and refunded dividend tax subject to the net settlement programme, but not to a considerable extent.

Confidential Pursuant to Protective Order                                    SKAT_MDL_001_0075835_T

*Method*

The objective is to calculate the expected part of the refund of the total dividend tax. The result is that the actual refund percentages can be assessed compared to this percentage.

A number of specific issues regarding the individual company affect how big the part of the refund of the total dividend tax should be.

- The part of dividend tax paid out to foreign shareholders entitled to refunds compared to the part of the dividend tax relating to Danish shareholders. The reason is that dividend tax regarding foreign shareholders is the basis for the calculation of the refund.

- The countries in which the foreign shareholders are resident as the extent of a possible refund depends on the rate applying to dividend in each country. Moreover, no refunds are paid out to individuals resident in countries not subject to a double taxation treaty or not subject to an information exchange agreement.

    The refund is 44% of the withheld dividend tax for a shareholder resident in Argentina (subject to a double taxation treaty):

| | |
|---|---|
| Dividend | 100 |
| | |
| Dividend tax withheld in Denmark (27%) | 27 |
| - Dividend tax according to the double taxation treaty (15%) | 15 |
| = Refunded amount | 12 |
| | |
| In per cent of the withheld dividend tax | 44% |

We do not have any data for the individual company's dividend tax broken down by country or information about the dividend rates specifically used for the distributions of dividend in the individual countries. It is consequently not possible to calculate exactly the part of the relevant company's withheld dividend tax that is refundable.

We have thus calculated a weighted average for the refund percentage based on the more general information available to us.

We have obtained an overview of Danish listed shares broken down by country as at 31 December 2014 from VP Securities. The relative breakdown of the shareholdings by country has been used to weight the refund percentage calculated based on each country's dividend tax rate. The dividend country's tax rate has been fixed based on the double taxation treaty rates in force as at 31 December 2014. The result of a total weighting of the countries' refund percentages is an average refund percentage of 23% of the total dividend tax. Based on this very rough indicator, it is thus expected that the refund is 23% of the total dividend tax.

Confidential Pursuant to Protective Order

*Assumptions*

The calculation of the weighted refund percentage of <u>23%</u> is based on a number of assumptions that lead to the calculation being uncertain:

  ▯ The breakdown of the shares by country is used to weight the dividend tax rates. It means that the part of Danish shares of the dividend tax is weighted by the part of the shares owned by Danish shareholders. However, sample surveys indicate that shares owned by individuals resident in Denmark are taxed to a far lesser degree than shares owned by foreign shareholders. For example, a part of the Danish shares is subject to a dividend tax of 0% as they are owned by pension funds. Foreign shares are generally subject to a dividend tax of 27%. It means that the part of dividend tax relating to foreign shares is higher than the foreign shareholders' part of Danish shares. This assumption indicates that the actual refund must be a higher part of the dividend tax than the 23%.

  ▯ In order to calculate the refundable amount we have used the tax rate of the double taxation treaty for ordinary shareholders, which means that any deviations in this tax rate are not taken into account. A lower tax rate is typically used. For example, US pension funds are exempt from paying dividend tax. As the US owns a large part of the Danish shares, this assumption has an important effect on the calculation. This assumption indicates that the actual refund must be a higher part of the dividend tax than the 23%.

As mentioned above, we have calculated an alternative refund percentage based on some very cautious assumptions. The assumptions result in a refund percentage of <u>67%</u>. The assumptions are:

  ▯ foreigners do not pay any dividend tax under a double taxation treaty that stipulates a full refund for the withheld dividend tax.

  ▯ a larger part of the dividend tax can be attributed to foreign countries than suggested by the shareholding. The reason is that certain types of Danish shareholders (for example pension funds) are subject to a lower tax rate than the 27% that foreign shareholders are generally subject to. It has thus been assumed that the Danish shareholders' tax share is half of what the tax share suggests.

### 7.3    Refund of dividend tax - Number of man-years

Since the merger in 2005, the work regarding dividend tax, including any repayments under double taxation treaties, has been subject to several organisational changes. Originally, the work was done by the department called "Udbytte" (*dividend*) at Skattecenter Ballerup. In connection with an organisational change in 2009 the department was moved to a new national department "Regnskab" (accounts) and was renamed "Regnskab 2", but the head of the department and the employees were the same. In the years 2005-2010, approximately 20 employees worked in the department and in addition to the work involving dividend tax they also carried out tasks involving company tax on account as well as certifications regarding residence for tax purposes.

The work involving company tax on account was moved to Horsens, Denmark, in 2010 and the number of employees in "Regnskab 2" had been reduced to 12 on 1 April 2013. The office also administered dividend tax and certifications.

On 1 April 2013, SKAT carried out a big organisational change where the department "Regnskab" was merged with "Betalingscentret" (*the payment centre*) and the new department was called "Betaling og Regnskab" (*payment and accounts*). In principle, "Regnskab 2" was dissolved and the work and the employees were moved to a new department "DMO/DMS" where the work relating to dividend tax was only a small part of the work. The work relating to the administration of dividend tax is currently done by two departments "DMO/DMS" of approximately 35 employees and "SAP38" of approximately 40 employees, but the work is only a small part of the departments' work. Overall, approximately five man-years are spent on the administration of dividend tax and approximately one man-year is spent on IT and guidelines etc.

Throughout the period the core of the administration of dividend tax, including the formal control of the payment basis for the refund under double taxation treaties, has only been a part of the work in the department(s) that has done the work. The consequence is that no conclusions can be drawn about the changes in the number of employees to handle the specific work based on the changes in the organisation and the number of employees in the departments in question. The calculations of the man-years spent on the specific work back in time will be subject to great uncertainty as the work specifications have been changed in the registration systems.

### 7.4.    Sub-conclusion

The part of refunds compared to dividend tax (the refund percentage) increased significantly from 11.6% in 2012 to 47.2% in 2015. The refund percentages in 2014 and 2015 in particular are very high compared to previous years. The average refund amount for each application thus increased significantly in 2014 and 2015. This is especially the case for applications received through the form programme. Even if we adjust the calculations for the assumed extent of the fraud, the increases are still very high compared to previous years. It indicates that there is a risk that the full extent of the fraud has not been uncovered.

We have analysed the refund percentage for the 15 companies that SKAT assumes have been subject to the fraud. The calculations include the tax years 2012 to 2014. Based on the data available, we have calculated an expected refund percentage and compared this percentage with the company's actual refund percentages. However, the calculation of an expected refund percentage is subject to great uncertainty. Even if the calculations are made with very cautious assumptions, the actual refund percentage exceeds the expected refund percentage for some companies. It indicates that a part of the refunds has been unlawful. It is our opinion that the general analysis method can be used going forward to assess the reasonableness of the claimed back refund compared to the dividend tax.

Based on more exact data about the ownership of the shares, we also assessed the refunded dividend tax in 2014 in respect of two companies based on more exact data about the ownership of the shares. We also made an adjustment for the extent of the assumed fraud. The expected refund percentages significantly exceed the actual refund percentages. Against this background, it is our assessment that there is a risk that the full extent of the fraud has not been uncovered in respect of these two companies.

Confidential Pursuant to Protective Order    SKAT_MDL_001_0075835_T

# 8.   General assessment of SKAT's level of control in the section 38 area

Based on the generally recognized model for a description of internal control, "The three lines of defense" (DK: De tre forsvarslinjer), Internal Audit has generally described and assessed the internal control measures in SKAT's revenue management (section 38); see Figure 8.1 below.



**Figure 8.1.**

**General comments on first line of defense**
The Executive Board lays down the guidelines for operational management in the first line of defense through a number of policies, procedures, and instructions as well as the framework for organization of the tasks.

The first line of defense also includes the internal controls built into the individual procedures. The internal control must be designed and implemented in such a way that the risks regarded as material by the management, including

- that the financial statements are not presented correctly
- that the legal framework is not complied with, and
- that the management is not financially sound,

are reduced to the greatest possible extent. The organization must also include the probability of the occurrence of an adverse event.

Elements in the internal control may, for example, be:

- Design and implementation of evaluation programs
- Management reporting on key targets and objectives
- Identification of risks that may prevent SKAT from meeting its targets and objectives
- Organizational and system-related segregation of duties between management and disbursement
- Control that the prerequisite for a given disbursement is present

It is important that the controls deal with the risks which the management has regarded as material and that the controls are performed in an integrated manner in the procedure for the individual areas. The management in SKAT thus achieves that SKAT is managed in a controlled manner as a whole for the individual areas and for the individual transactions.

Automated and preventive controls should have first priority. Subsequent controls performed after the occurrence of events should be given lower priority and preferably be opted out of unless another choice is not possible or expedient.

*Management controls in SKAT*
The management controls in SKAT are performed under the internal quality management system and are characterized by being subsequent controls aimed at individual activities in the procedures.

No process-oriented management controls have been implemented for checking that the tasks are performed in accordance with the adopted procedures. One of the reasons for the lack of process-oriented management controls is that ownership and responsibility for a process are not placed with one single officer responsible. The responsibility for a process is instead placed with several officers who are each responsible for a number of sub-processes, without an officer with overall process responsibility being designated.

As concerns the accounting process, the management controls are reported under the continuous approvals of the financial statements. The approvals of the financial statements do not form part of the management information to the Executive Board.

The accounting process is characterized by being rooted at head of office level. Internal Audit has pointed out several times that the centrally established provisions in the accounting instructions do not cover the whole accounting process. Furthermore, they are described in vague terms, making it impossible immediately to determine which tasks are accounting tasks. This has meant that the accounting process has become an appendix to the other processes which, in effect, create the financial reporting information.

*Internal controls in SKAT*
A general rule for internal controls in SKAT is that there are a number of centrally established routines and controls which must be implemented in the individual procedures in SKAT's core areas. For example, there are concepts for internal control in connection with decision-making in certain situations.

Internal controls which are not centrally established must be implemented for each activity. Most of SKAT's processes are not documented so that an overview is created of the procedures, activities, and data flows in the processes.

The internal control that the reported data basis (vouching) is correct is primarily performed by control via compliance projects on the basis of SKAT's activity plan. The areas of the data basis which are to be selected for control are assessed through a risk assessment of the legislation on taxes and duties and of the individuals and businesses that the legislation concerns.

> Our assessment is that the control measures in the first line of defense are generally weak.
>
> The internal control in the first line of defense is affected by the absence of "end-to-end" process responsibility and by responsibility for cross-organizational processes not having been implemented. This means that the management controls performed do not check the processes across the organization in accordance with uniform concepts and standards. The management control only comprises isolated individual activities in the respective business areas.
>
> In addition, identification and handling of risks are hampered by the procedures and inherent IT systems not being documented. Well-documented procedures provide an overview of data flow and activities between units as well as knowledge about risks and internal control.

**General comments on second line of defense**
The purpose of the functions in the second line of defense is to monitor and analyze the controls in the first line of defense as well as preparing risk management tools and providing guidance and training related to risk management and internal control. The work also includes escalation of critical events so that the necessary adjustments to the process are made.

*Monitoring, controlling, and quality assurance in SKAT*
SKAT has not implemented comprehensive continuous monitoring of the controls performed in the first line of defense, including the management controls performed.

Formally, controller functions have been established which are responsible for the overall risk overview, measurement, and analysis as well as consultancy. The controller functions are responsible for monitoring the performance of management controls in the first line of defense and reporting to the Executive Board.

The deputy director general of the individual business area in SKAT has the final and overall responsibility for the internal quality assurance for the whole business area. This means that quality assurance is performed and that quality problems identified through the quality assurance are remedied.

SKAT_MDL_001_0075835_T

The implemented and reported internal quality assurance forms part of the monthly management briefing.

Our assessment is that the control measures in the second line of defense are generally weak.

The primary reason for our assessment is that the management controls performed do not check the processes across the organization in accordance with uniform concepts and standards, nor do they check the process as a whole, but only isolated individual activities in the individual business areas.

Likewise, there is no established structured, systematic, and overall monitoring function for performing the above functions and the accompanying activities. The monitoring that the controller functions perform only comprises the management controls established under the internal quality management system, and the monitoring is not process-oriented.

**General comments on third line of defense**

The purpose of the Ministry of Taxation's independent internal audit is to contribute with objective assessments and advice on the effectiveness and reliability of the internal management and control, thereby creating value and contributing to improving the internal control of the organization.

Independently of SKAT, Internal Audit performs continuous separate and independent assessments and tests of SKAT's internal control and reports on whether the guidelines laid down by the management are effective and whether they are complied with.

# 8.1 Interim conclusion

Internal Audit's assessment is that the first and second lines of defense overall do not constitute an effective safeguard against unintended financial events in SKAT. This means that, in a large number of areas, Internal Audit cannot conduct a control-based audit which is based on a continuous assessment of SKAT's control activities and the follow-up on these activities. The overall effect of the three lines of defense is thus reduced.

# 9.    The general procedure applying to dividend tax and refunds

This chapter contains an analysis and an assessment of the procedure established for the purpose of administering dividend tax, including the refund of dividend tax. The chapter also contains an account of the weaknesses of the IT systems and any compensating manual actions.

## 9.1    Overview of the procedure

The entire procedure for the administration of dividend tax and refunds consists of a number of sub-procedures, see figure 9.1.



*Figure 9.1*

The procedure "Angivelse" (*declaration*) includes the declaration by the dividend-distributing companies of adopted dividend and withheld dividend tax as well as the payment of withheld dividend tax to SKAT. (The dividend-distributing companies are hereinafter referred to as the distributing companies). The procedure "Indberetning" (*reporting*) includes the distributing companies' reporting of the recipients of dividend. The procedure "Refusion" (*refund*) includes the registration and the refund of dividend tax to the recipients of dividend not liable to Danish tax.

## 9.2    Declaration

The distributing company must declare the dividend and pay dividend tax the month after the adoption of the distribution of dividend. The declaration to SKAT must be in total amounts and contain the following information, but see section 9.2.2 "Unlisted companies".

*Declaration of dividend tax*

|  | Dividend before tax | Dividend tax |
|---|---|---|
| 27% dividend tax |  |  |
| 25% dividend tax |  |  |
| Dividend tax under double taxation treaties (subject to SKAT's approval) |  |  |
| 15% dividend tax, investment companies |  |  |
| Treasury shares |  | 0 |
| An exemption applies to distributed dividend with a tax deduction of 0 under section 16A(2) and (3) or section 16B(2) |  | 0 |
| Other dividend without dividend tax (including parent |  | 0 |
| Distributed dividend and dividend tax in total |  |  |

**Table 9.2**

Confidential Pursuant to Protective Order

Figure 9.3 below shows the procedure applying to the _declaration_ of dividend and dividend tax.



*Figure 9.3*

In practice, dividend and withheld dividend tax are declared by entering the data in NyTastSelv Erhverv (NTSE) which transfers the data to 3S. The procedure varies, depending on whether the company is a listed or an unlisted company, see figure 9.3 above.

### 9.2.1.    Listed companies
The information about the shareholders in listed companies is registered in VP Securities (SP). The listed companies declare the dividend and the dividend tax based on information received from VP. The declarations are entered into NTSE which transfers the data to 3S. VP has received the information about the recipients of dividend from the custodians' registrations of the owners of the custody accounts. The dividend tax is calculated based on the current Danish dividend tax rates.

### 9.2.2.    Unlisted companies
The unlisted companies declare dividend and withheld dividend tax by registering the declarations in NTSE. The company reports the "distributed dividend" and the "withheld dividend tax" for each recipient of dividend in NTSE. In NTSE the declaration is the total of all declarations. The information is transferred to 3S.

## 9.3    Reporting
Information about the distributed dividend and the withheld dividend tax is reported to SKAT in respect of each recipient of dividend. This duty to report includes both the shareholders liable to Danish tax and the shareholders liable to foreign tax.

Since 2013, both listed and unlisted companies have been under an obligation to report the information about the recipients of dividend the month after the adoption of the distribution.

Figure 9.4 below contains a schematic overview of the reporting of distributed dividend and withheld dividend tax for each shareholder. The figure shows that the reporting procedures vary, depending on whether the company is a listed or unlisted company.



*Figure 9.4*

### 9.3.1    Listed companies' reporting of dividend to shareholders

VP reports the information about the companies and the investment funds registered with VP. VP reports the information about the recipients of dividend based on the custodians' registrations of the owners of the custody accounts. The custodians or VP may make subsequent corrections. VP uploads a reporting file directly to SKAT's system called eKapital. VP is to carry out the reporting no later than the month after the adoption of the distribution of dividend.

The information about the distributed dividend, the withheld dividend tax and the information to identify the recipient of the dividend and the reporting agent, etc is submitted to eKapital.

Information about the recipients of dividend, both individuals and companies, is to be submitted irrespective of whether they are resident in Denmark or abroad. The information about the foreign recipients of dividend tax is to include the civil registration no/CVR no/VAT no.

*Reporting of foreign recipients*

The recipient of dividend's full name and address must be submitted. If possible, both the Danish and the foreign identification numbers (civil registration no/Tax Identification Number (TIN) or the date of birth) are to be reported.

In the case of foreign shareholders, there can be a chain of foreign banks between VP and the actual shareholder, see figure 9.5 below.



*Figure 9.5*

That is the case of the so-called omnibus accounts where a foreign bank has opened a collective custody account with a Danish bank, but where the Danish companies' shares are kept in the foreign bank's custody account (see figure 9.5, option 1).

It is also possible that a foreign bank has a collective custody account directly with VP just as a foreign securities centre may register a shareholding directly with VP (see figure 9.5, options 2 and 3).

The registrations of the shareholdings in these omnibus accounts that VP receives will generally be total amounts if there is no information about the individual foreign shareholders. The reason is that VP registers the owner of the account as a recipient of the dividend, see chapter 14.

Finally, a Danish pension fund/pension company may decide to make investments through a foreign bank. It means that the Danish pension fund's/pension company's investments are registered in a foreign collective custody account and the consequence is that VP does not have any information about the individual shareholder.

### 9.3.2    *Unlisted companies' reporting of dividend to shareholders*
The unlisted companies report the distributed dividend and the withheld dividend tax in respect of the individual recipients of dividend through NTSE.

The information is registered in the system 3S and is transferred to eKapital. The procedure is illustrated in figure 4.

The information about the distributed dividend, the withheld dividend tax and the information to identify the recipient of the dividend, etc is reported to eKapital.

The information about the recipients of dividend, both in respect of individuals and companies, is to be submitted irrespective of whether the recipients are resident in Denmark or abroad. The information about the foreign recipients of dividend tax is to include the civil registration no/CVR no/VAT no.

When submitting the information about the foreign recipients, the foreign recipients' full name and address as well as a Danish and a foreign identification number (civil registration no/TIN) are to be registered if possible.

It is possible in NTSE to register foreign recipients of dividend without any clear identification of the individual shareholder.

### 9.3.3    *Net settlement of dividend tax through the VP programme*

The VP programme is an agreement entered into between VP and SKAT. The programme is that based on the current double taxation treaties VP withholds the correct dividend tax (net settlement).

The prerequisite for participating in the programme is that the shareholder is a natural person and both the shareholder and the custodian must have decided to participate in the programme. It is also a prerequisite that the dividend-distributing shares are kept in a custody account with a Danish bank in the holder's own name and that the holder submits documentation to the bank about its address and taxation.



*Figure 9.6*

VP reports the withheld dividend tax based on the custodians' registrations of the owners of the custody accounts. VP uploads a reporting file directly to SKAT's system called eKapital. The advantage of the programme is that it is possible to fully and finally settle the recipient of dividend's dividend tax in connection with the distribution of dividend.

Confidential Pursuant to Protective Order

### 9.3.4    *Net settlement - special permission for unlisted companies*

It is also possible for principal shareholders in unlisted companies to get a special permission from SKAT to apply a reduced rate in connection with the withholding of dividend tax. The permission is given to persons liable to pay tax who are covered by a double taxation treaty. The consequence is that the relevant dividend tax (net settlement) will be withheld in respect of these shareholders under the double taxation treaty. The distributing company registers the recipient of dividend with the reduced rate in NTSE by referring to the special permission from SKAT.

## 9.4    Refund of dividend tax

A recipient of dividend whose dividend tax has been withheld in connection with the distribution of dividend from a Danish company may apply for a refund if the recipient is not fully liable to pay tax in Denmark and is subject to a double taxation treaty or is liable to pay tax in a EU Member State. The refund is a payment back of excess amounts of dividend tax. The refund is the difference between the withheld dividend tax and the rate agreed in the double taxation treaty.

It is possible for the recipient of dividend tax to request a refund by submitting a refund form to SKAT or by requesting a refund through the bank programme.

### 9.4.1    *Refund of dividend tax through the manual programme (the form programme)*
In connection with the distribution from a Danish company a recipient of dividend that fulfils the conditions, see section 9.4, may request a refund of any excess amount of dividend tax. The recipient of dividend may ask for a refund itself or through an agent.



*Figure 9.7*

When requesting a refund, the applicant is to submit a filled-in refund form to SKAT. The form is available on SKAT's website or by contacting SKAT.

In addition to filling in the form, the applicant is also to enclose the following material/information:

- Documentation for the receipt of the dividend from the custodian.
- Confirmation of the address/liability to pay tax from the local tax authority.
- Information about the account number.
- A power of attorney, if the request has been submitted by an agent for the beneficial owner.

SKAT checks that the refund amount claimed back has been calculated correctly under the double taxation treaty and that the required documentation has been submitted.

SKAT pays out the refund amount claimed back into the specified account if the application has been filled in and the required documentation has been submitted. If the required material is incomplete, SKAT sends back the application to the applicant, informing the applicant of what information that is missing.

_SKAT does not check_ whether the recipient of dividend held the shares when the distribution was made and whether the distribution and the withheld tax have been reported to eKapital.

### 9.4.2    Refund of dividend tax through the bank programme

Figure 9.8 below shows the procedure for a refund of dividend tax through the bank programme.



_Figure 9.8_

SKAT has entered into an agreement with three banks. These three banks submit the request for a refund on behalf of the foreign banks (the bank programme). The foreign banks submit the requests for a refund in a spreadsheet specifying the amounts that are claimed back. Each application contains information about the applicant's name, the share, the number of shares, the adoption date, the distributed dividend as well as the requested reduction in dividend tax.

The shares in respect of which a refund is claimed back are kept in separate custody accounts or collective custody accounts with the foreign bank. The spreadsheets that SKAT receives contain the same information regardless of whether the shares are kept in a separate custody account or a collective custody account.

Confidential Pursuant to Protective Order                                                                SKAT_MDL_001_0075835_T

*It is not a requirement* that the foreign bank is to submit a certificate from the foreign tax authorities to the bank participating in the bank programme.

The three banks participating in the bank programme carry out the following checks:
- Check the shareholdings in separate custody accounts
- Establish the credibility of the request considering the collective custody accounts.

The three banks participating in the bank programme check that the dividend has been distributed to the bank in question and that the dividend tax has been withheld. The foreign bank keeps the necessary documentation up to five years after the year of the distribution.

When SKAT receives the request for a refund from a bank participating in the bank programme, SKAT goes through the documentation if documentation has been submitted, but documentation is not submitted in every case. Contrary to the refunds made by using the form, the refunds through the bank programme are not registered in 3S but are booked directly in SAP38 as a total sum. Several requests from the same bank may be added together and this total amount provides the basis for a total payment transfer.

SKAT transfers the payment to one of the three banks participating in the bank programme. The bank passes on the refund amount to the foreign bank that subsequently makes the final payment to the recipients of dividend.

### 9.5    Effective control of the basis

Intern Revision finds that a control of the basis in connection with the payment of the refund of withheld dividend tax is to ensure that the correct/valid basis for paying out the refund exists.

It means that the payment control should not just include an analysis and an assessment of the received material but also checking that the dividend tax was withheld before paying the refund.

Since 2013, VP has submitted the information about the recipients of dividend with eKapital no later than the month after distribution has been adopted at the general meeting. In the case of foreign recipients of dividend, there can be a chain of foreign banks between VP and the actual shareholder. The consequence is that the information that VP has and submits to eKapital about foreign recipients of dividend is often total amounts and not a clear identification of the final recipient of dividend.

It means that in connection with the processing of a request for a refund by a foreigner it will often not be possible for SKAT to identify the individual recipient of dividend. Correspondingly, it is not possible to check whether the dividend tax for which the recipient of dividend seeks a refund has been withheld. SKAT has not worked on including the information about the recipients of dividend in eKapital in connection with the processing of a request for a refund.

**TRANSLATION**

### 9.6    Sub-conclusion

SKAT checks whether the request for a refund is accompanied by the required documentation.

SKAT does not check whether the recipient of dividend held the shares when the distribution was made and whether dividend tax has been withheld before the payment of the refund.

In order for SKAT to be able to carry out an effective control in connection with the request for a refund SKAT must have information about the withheld dividend tax in respect of the individual recipients of dividend.

Since 2013, SKAT has received reporting about the recipients of dividend the month after the adoption of the distribution, which means that SKAT has the information when it processes the application.

SKAT has not worked on including the submitted information about the recipients of dividend from eKapital in connection with the processing of a request for a refund.

However, SKAT did not have sufficiently detailed information about the foreign recipients of dividend in order for each distribution to be traced back to one specific shareholder.

Confidential Pursuant to Protective Order
SKAT_MDL_001_0075835_T

TRANSLATION

# 10. Organizational rooting of tasks concerning dividend tax

The current organizational rooting of the tasks concerning dividend tax was implemented in connection with the reorganization as at April 1, 2013.

In connection with the reorganization as at April 1, 2013, the work tasks concerning dividend tax and dividend tax refund were rooted in the following deputy director general areas:

- Customer Service
- Collection
- Compliance
- IT

The overall dividend tax administration process is thus divided into a number of sub-processes rooted in the deputy director general areas involved.

## 10.1 Assessment of controls and level of control

In connection with the reorganization as at April 1, 2013, the overall work tasks were distributed on the individual deputy director general areas. The controls used in the dividend administration were not assessed in connection with the reorganization as at April 1, 2013. No active decision was thus made on the level of control in the dividend tax area, including a division of the controls in the individual procedures as well as controls of a monitoring nature. As a result, any distribution of controls on the deputy director general areas involved was not considered. The purpose of the reorganization did not include active decision-making on these areas.

## 10.2 Responsibility for day-to-day operations (operational responsibility)

**The Customer Service deputy director general area** is the process owner and is responsible for the ongoing administration of the systems for declaration of dividend, reporting of dividend, and refunding of dividend tax. Customer Service is responsible for reconciliation between declaration and reporting as well as for reconciliation between dividend tax withheld and the subsequent bookkeeping.

**The Collection deputy director general area** is responsible for the ongoing disbursement of dividend tax refunds. The process comprises the disbursement of dividend tax refunds applied for by stockholders with foreign tax liability. The process includes the following principal elements:

- Receiving a claim for dividend tax refund, with the required documents enclosed
- Checking that the relevant documents are enclosed with the claim
- Checking the claimed dividend tax refund amount
- Disbursement of dividend tax refund.

Confidential Pursuant to Protective Order
SKAT_MDL_001_0075835_T

**TRANSLATION**

Confidential Pursuant to Protective Order                    SKAT_MDL_001_0075835_T

TRANSLATION

**The Compliance deputy director general area** implements ongoing projects aimed at reducing the "tax gap." Regarding dividend tax, the Compliance deputy director general area has not implemented compliance projects aimed at dividend tax refunds (see Chapter 11, reference to the section on first line of defense).

**The IT deputy director general area** initiates ongoing changes of IT support in accordance with requests for changes from the individual process owners.


## 10.3  Monitoring of the overall dividend taxation process, including assessment of the established level of control

SKAT has not implemented overall continuous monitoring of the dividend area across the deputy director general areas involved.

The non-consolidation of process owner responsibility for the whole dividend process has also meant that no consolidated risk assessment has been performed which could have constituted a platform for ongoing well-founded changes to the dividend tax process.

It should be noted that the non-establishment of overall process owner responsibility does not mean that a continuous assessment of the overall dividend process is not required. The individual deputy director general areas involved will also be responsible for an overall and effective dividend process in addition to being responsible for continuous assessment and subsequent improvement of that part of the process which is rooted in the relevant deputy director general area.


## 10.4 Controls actually implemented in the dividend tax area
In connection with the reorganization as at April 1, 2013, the following controls were presupposed to be implemented in the dividend tax area:

* Reconciliation between declaration and reporting
* Reconciliation between registration of dividend tax and subsequent bookkeeping
* Control of enclosed documents and vouchers in connection with the disbursement of refund amounts
* Continuous approvals of financial statements.

Confidential Pursuant to Protective Order

SKAT_MDL_001_0075835_T

TRANSLATION

## 10.5 Interim conclusion

In connection with the reorganization as at April 1, 2013, the work tasks concerning dividend tax and dividend tax refund were rooted in the following deputy director general areas in SKAT:

- Customer Service
- Collection
- Compliance
- IT

SKAT has not implemented overall continuous monitoring of the dividend area across the deputy director general areas involved.

The non-consolidation of process owner responsibility for the whole dividend process has also meant that no consolidated risk assessment has been performed which could have constituted a platform for ongoing well-founded changes to the dividend tax process.

It should be noted that the non-establishment of overall process owner responsibility does not mean that a continuous assessment of the overall dividend process is not required. The individual deputy director general areas involved will also be responsible for an overall and effective dividend process in addition to being responsible for continuous assessment and subsequent improvement of that part of the process which is rooted in the relevant deputy director general area.

Confidential Pursuant to Protective Order                                        SKAT_MDL_001_0075835_T

TRANSLATION

# 11. First line of defense – controls

In connection with declaration and reporting of dividend tax and refunds, we have assessed the controls implemented in the first line of defense for the area below.



**Figure 11.1.**

In the chapter, we review the controls implemented and assess whether the controls (the control environment) are effective for the following areas.

1. Declaration/reporting
2. Reconciliation between declaration and reporting
3. Refund – manual claims
4. Refund – bank scheme
5. Refund – VP scheme
6. Continuous approvals of financial statements.

In addition, we assess whether the continuous approvals of the financial statements constitute effective controls in the first line of defense.

## 11.1 Declaration/reporting

In connection with the companies' declaration of dividend and withheld dividend tax as well as reporting of dividend recipients, the companies use a central system in SKAT called New E-tax for Businesses (Ny TastSelvErhverv (NTSE)).

Until January 1, 2014, non-listed companies entered the amounts in the form of a declaration of dividend and dividend tax in NTSE. Likewise, non-listed companies made entries in the form of reporting of the individual dividend recipient in NTSE.

After January 1, 2014, non-listed companies are only required to report dividend and dividend tax for the individual dividend recipients in NTSE, after which, based on the reporting, NTSE calculates the total "declaration" of dividend and dividend tax for the company. The information reported is transferred to the 3S system.

Confidential Pursuant to Protective Order

SKAT_MDL_001_0075835_T

The process for listed companies is that they must use NTSE when entering their declaration of dividend and dividend tax.

VP Securities (VP) handles the reporting of dividend recipients for listed companies in the form of an electronic reporting file to eKapital. SKAT does not check whether the information from VP is correct. Information about dividend recipients is not transferred to 3S.

However, in connection with receipt of the input file for eKapital, there is an automated control which means that the files and data fields that do not have a correct format, and thus cannot be loaded in eKapital, are entered on an error list for manual follow-up. For loaded files, eKapital performs various cross-validations to ensure that the data is complete.

Internal Audit has performed an assessment of the input data controls in NTSE and can ascertain that, to a limited extent, there is use of mandatory fields which must be filled in before reporting can be completed. However, Internal Audit has ascertained extensive use of cross-validations/dependencies between the fields which the companies can fill in. For example, if a company states "DK" as the ISO country code, the company cannot concurrently state TIN no. (Tax Identification Number); instead, the company is required to fill in the fields for name and address details of the recipient. This means that some of the fields will indirectly become mandatory, depending on what the companies report, and there will consequently be a requirement for entering more information.

In relation to the amount fields, it has been ascertained that NTSE only accepts positive figures in connection with declarations of dividend amounts, and that the individual fields are validated when leaving the field and any error texts are displayed. Likewise, when VAT registration number and civil registration number are entered, there is a modulus check of the data entered.

Internal Audit's assessment is that the input data controls in NTSE contribute to ensuring complete and uniform data in specific fields.

## 11.2 Reconciliation between declaration and reporting

For several years, SKAT has worked on harmonizing the deadlines for declaration of dividend and dividend tax and reporting of dividend recipients. It has not previously been possible to make a real-time reconciliation, as the reporting of dividend recipients was made up to one year after the declaration.

With the current solution for non-listed companies, the declaration of dividend and dividend tax is stated as a sum of the reporting made, which eliminates the need for reconciliation. The listed companies enter a declaration of dividend and dividend tax in NTSE concurrently with VP delivering an electronic reporting file to eKapital about the dividend recipients.

Confidential Pursuant to Protective Order                    SKAT_MDL_001_0075835_T

TRANSLATION

For listed companies, there will thus still be a need for reconciliation between the declaration and the amount for the stated dividend recipients. SKAT has stated that it currently does not make a reconciliation of listed companies, but that SKAT is in the process of finding a solution.

Prior to 2014, there was internal automated dividend control, in which information from the companies' tax return was compared with the declarations in 3S. If the companies had reported a distribution of dividend in their tax returns, but had not submitted declarations to SKAT, they were printed out on a reminder list for manual follow-up.

Internal Audit has ascertained that this functionality has not been continued in connection with a change of 3S in early 2014.

## 11.3 Refunds – claims via form scheme

On physical receipt of a refund claim from dividend recipients or their agents via the form scheme, relevant fields from the form are entered manually in 3S by a case officer in SKAT.

The overall process is described in Figure 11.2 below.



**Figure 11.2.**

Confidential Pursuant to Protective Order

SKAT_MDL_001_0075835_T

### 11.3.1  Manual controls in connection with registration in 3S

Prior to the entry of relevant fields, the case officer checks manually that the claim (form 06.003) has been filled in correctly and that the required documentation is there, including (see Figure 11.2):

- That it has been certified correctly by the tax authority in the country in which the stockholder is tax liable.
- That documentation for dividend received and dividend tax withheld is enclosed.
- That the required power of attorney has been provided if the claim is made by an individual (representative) other than the beneficial owner.
- That the account number for the disbursement of refund has the correct format, and that the name, address, etc. match the enclosed documentation. If an IBAN number has been provided, its format is only checked upon reporting in 3S.

Internal Audit has been informed that, in several cases, it may be difficult for the case officer to assess whether the submitted documents and certifications from foreign tax authorities are valid. The reason for this is that the case officer does not have a basis of comparison, in the form of advisory lists of documents from the different countries, which allows for a comparison and validation of the documents received. The case officer can therefore only reject the submitted documents in those cases in which the documents are manifestly inadequate.

Internal Audit's assessment is that the manual control in connection with the examination of the forms submitted is therefore not effective.

The case officer also manually checks the amount applied for. In this connection, the following is checked:

- That the refund amount is correctly calculated in relation to the relevant double taxation agreement (the DTA). The case officer has a spreadsheet overview of all DTAs and rates, which is used to check that the correct rate has been used.

- That the amount is correctly calculated in relation to the enclosed documentation. There will often be several different dividend notifications for the same claim. The amount claimed is verified as follows:

  - A calculation is performed in a spreadsheet (not filed, however).

  - The amount is converted into and disbursed in Danish kroner. According to the documentation, the amount is stated as dividend tax per stock in Danish kroner times the number of stocks and is compared with the amount claimed.

If the amount claimed has not been correctly calculated, the amount is corrected. If information is missing, the application is returned to the applicant's agent with a specification of the items in the application for which further information is required.

Confidential Pursuant to Protective Order                                              SKAT_MDL_001_0075835_T

If the forms and information are found to be complete and correct, the case officer enters the relevant information in 3S. The amount claimed is also entered in an internal spreadsheet for use for:

- Subsequent checking of the reporting in 3S.
- Compilation of combined statistics on the number of cases and amounts disbursed.
- Any subsequent retrieval of the case/claim.

When the case officer enters the information in 3S, the dividend-paying company's dividend declaration is first retrieved. When the company has been found, the function "Report relief from Danish dividend tax" ("Indberet fritagelse for dansk udbytteskat") is selected, and relevant refund data is entered and saved.

In connection with the review, Internal Audit has obtained a copy of the latest user guide. The guide is dated December 18, 2002, in a version 1.4, and it describes how users should use 3S. Internal Audit is aware that the 3S system has undergone subsequent changes, which should have resulted in an update of the user guide.

In connection with the review, we have asked SKAT about procedure descriptions for identification of interfaces and segregation of duties. Available procedure descriptions were not updated at the time of the review, but they have subsequently been updated and sent to Internal Audit.

The lack of updated user guides and procedure descriptions means that the case officers are unable to find "help" in cases in which there is doubt about the handling of the individual actions, which increases the risk of incorrect processing of refund claims submitted.

### 11.3.2   System-supported controls after registration in 3S

### 11.3.2.1   Input data controls
Internal Audit has been informed that, in connection with the reporting of a dividend tax refund application in 3S, a number of mandatory fields must be filled in before an application can be accepted in 3S. In the most recent guide from 2002, we have seen that the fields "Name" ("Navn"), "Address" ("Adresse"), "Dividend" ("Udbytte"), "Date of receipt" ("Modtagelsesdato"), and "Batch no." ("Bundt nr.") are mandatory fields which must be filled in. 3S does not have requirements for the actual contents of the fields except that the "Dividend" field must contain figures, the date in the "Date of receipt" field must be later than the current date, and the date must be later than the adoption date and be stated in a specific date format. As regards the "Name" and "Address" fields, there are no requirements for the contents of the entries. Input data controls have thus been used to a limited extent to ensure unique, complete, valid, and consistent data in specific fields.

In connection with the review of 3S, it has been ascertained that the case officer only enters relevant fields for identification and retention of the dividend recipient to a limited extent, and that the statement of the dividend recipient's country is entered in the address field with the possibility that inaccurate and non-uniform country denominations may be stated.

Confidential Pursuant to Protective Order                                    SKAT_MDL_001_0075835_T

### 11.3.2.2     Control of duplicates

Internal Audit has ascertained that automated control has been established in 3S which can identify duplicates. The system notifies the case officer if several refund claims have been entered for the same dividend recipient for the same dividend distribution. Internal Audit has seen documentation showing that a duplicate has been entered and found, which has been cancelled before transfer to the finance component. The control has thus worked and prevented a double disbursement.

In the guide from 2002, it is noted that the duplicate control is set up in such a way that 3S makes a comparison of the data stated in the "Name" field. This means that if the case officer enters a refund claim for a dividend recipient who has previously applied for a refund for the same dividend-paying company, 3S will notify the case officer thereof if the case officer has entered exactly the same name. If the case officer enters a character incorrectly, or if the applicant has changed a character in relation to the previously submitted refund claim, this will be regarded as a new refund claim and will not be identified by the control.

During the review, it was ascertained that it is not possible in the 3S system to state any civil registration number, central business registration number (CVR no.), or TIN no. for the dividend recipient in connection with the refund claim.

The lack of complete entry of "Name" and "Address" in conjunction with the lack of statement of any civil registration number, CVR no., or TIN no. of the dividend recipient means that SKAT cannot use these fields to search for duplicates.

### 11.3.2.3   Control of total dividend refund per company

Internal Audit has found that a system control has been established in 3S which notifies the case officer if a total refund has been claimed for a company which is higher than the dividend tax declared by the company.

In connection with Internal Audit's review, information has been received that it was not possible to perform this control in relation to some listed companies in 2013 and 2014 because an error in 3S meant that it was not possible to "enter" refund claims received in the dividend-paying company's declaration. Instead, the case officer created a 0 declaration for the dividend-paying company in which the refund claims submitted were registered. In connection with the entry, 3S notified the case officer that "The total amounts reported exceed the distribution in the declaration," which is due to the amount on the entered refund claim being higher than the 0 declaration.

This procedure has meant that the control has, in effect, been disabled and has thus not contributed to ensuring that no refunds are disbursed which exceed the amounts declared by the companies in the dividend tax refund claims processed via 3S.

Internal Audit also finds that the design of the control is not expedient because the control does not take into consideration the refund claims which SKAT receives via the bank scheme and dividend tax withheld for Danish dividend recipients.

Confidential Pursuant to Protective Order                                                    SKAT_MDL_001_0075835_T

Refund claims via the bank scheme are not entered in 3S, and they are thus not included in the control of whether the company is refunded a higher amount than it has withheld in dividend tax. In addition, 3S uses the total dividend tax (27%) as a basis of comparison even though refunds can only be made for dividend tax withheld from foreigners.

We have seen records showing that SKAT has reported in 2013, 2014, and 2015 that 3S has displayed a "green screen" in some cases in connection with the reporting of refund claims, which has prevented the reporting of the company's declaration.

Our review of records received show that the "green screen" error occurs in those cases in which two declarations have been registered for the same dividend distribution in 3S. 3S has not been able to handle multiple declarations in connection with the subsequent reporting of refund claims.

At the beginning of July 2015, the system was changed, after which it has again been possible for 3S to compare refund claims in 3S with the declaration of dividend tax. SKAT states that no compensating checks were made for the listed companies in the period in which the automated control was not working.

### 11.3.2.4  Notifications from 3S to the case officer

In those cases in which the controls in 3S discover an "error" in connection with data entries, the case officer is notified via the screen in 3S. The notification to the case officer does not mean that the reporting is rejected, it is merely a notification to the effect that there are matters to which the case officer must pay particular attention. After the notification, the case officer must make an assessment of whether there is, in fact, an error that needs to be corrected or whether the refund claim is to be met.

The case officer may also choose not to take any action, and thus disregard the controls, which will affect the data quality. The procedure descriptions submitted do not contain information about how the case officer is to act in cases in which the case officer receives a notification.

Internal Audit has received records showing that, for one of the listed companies for which there is a suspicion of fraud, the dividend tax refund disbursed exceeds the amount of dividend tax withheld.

### 11.3.2.5  Comparison between claim and reporting

Internal Audit is aware that the "non-listed companies" report the individual dividend recipients in NTSE with subsequent electronic transfer to 3S. This transfer makes it possible to check the individual dividend recipient against the recipient's refund claim in connection with the processing of the refund claims received via the form scheme. In connection with a demonstration of the system, Internal Audit has not been able to ascertain that such a check is made, nor does it appear from the procedure descriptions that such a check must be made.

Confidential Pursuant to Protective Order                                SKAT_MDL_001_0075835_T

TRANSLATION

SKAT has also stated that "Processing of dividend tax refund claims is an administrative task in which it is solely checked that the required documentation has been submitted with the claim and that the claim has been certified by the foreign tax authority." Internal Audit therefore finds that such a check is not done.

For listed companies, VP reports the dividend recipients to the eKapital system in SKAT. This information is not transferred to 3S, and a check of the listed companies is therefore not possible.

## 11.4 Refunds – the bank scheme

SKAT also receives refund claims directly from three banks, which send the claims in a "spreadsheet" to SKAT on behalf of their customers.

The overall process is outlined in **Figure 11.3** below.



**Figure 11.3.**

The claims submitted can be itemized on dividend recipients, but there may also be several dividend recipients in the individual claim/spreadsheet.
There is no agreed requirement for concurrent submission of documentation of place of residence and tax liability, but, in some cases, the banks also submit documentation in conformity with the documentation received when the individual dividend recipient independently submits a claim for dividend tax refund. In these cases, the case officer performs a manual check of the material submitted in conformity with the "form scheme"; see section 11.3. above.

Refund claims from the three banks are not entered in 3S, but transcripts of the entries in the spreadsheets are added up to one overall amount per bank and form the basis for the booking in SAP38 and the subsequent disbursement of the refund; see Figure 11.3.

Confidential Pursuant to Protective Order

SKAT_MDL_001_0075835_T

TRANSLATION

The lack of entry in the 3S system means that there is no possibility of a comparison with any dividend recipients reported by the companies in connection with their declaration of dividend tax withheld. Furthermore, it cannot be ruled out that the dividend recipient who receives a refund via the bank scheme may also apply for a refund via the form scheme.

After the request has been processed, the claim/spreadsheet with any documentation is printed out and archived for five years. The individual claim/spreadsheet can then be retrieved by means of the document number.

SKAT states that it has been agreed with the banks that they will perform a validation check of the entries in the spreadsheet. It has been agreed that the banks will check the following:

- The correctness of the amounts regarding stockholdings in separate custody accounts
- Probability in relation to omnibus custody accounts/pooled custody accounts

The control consists in the bank checking the correctness of the amounts, i.e. that the dividend has been settled with the bank in question and that dividend tax has been withheld.

Internal Audit has been informed that the foreign bank stores the necessary documentation, which can be produced on request, for up to five years after the year of disbursement. SKAT does not follow up on whether these controls are effective.

When SKAT has transferred payment corresponding to the amounts applied for to the bank, the bank forwards the refund amount received to the foreign bank, which will handle the final settlement with the dividend recipient.

## 11.5 Refunds – the VP scheme

The "VP scheme" is an agreement entered into between VP and SKAT. The scheme entails that VP withholds the correct dividend tax (net settlement) based on the current double taxation agreements.

The overall process is outlined in **Figure 11.4 below**.

Confidential Pursuant to Protective Order    SKAT_MDL_001_0075835_T

TRANSLATION



**Figure 11.4.**

The agreement concerns the following countries:
Sweden, Norway, Germany, Greece, the Netherlands, Belgium, Luxembourg, the UK, Ireland, Switzerland, the US, and Canada.

For a dividend recipient to be entitled to use the VP scheme, the dividend recipient must be a natural person and the stocks must be registered in a custody account with a Danish bank. Furthermore, the dividend recipient must have documented his or her residence and tax liability to the custodian bank via a tax form (form 02.009), which must be certified by the foreign tax authorities.

The custodian banks are thus responsible for assessing and approving the documents submitted by the dividend recipient. SKAT does not follow up on whether these controls are effective.

SKAT has been informed that the dividend recipients covered by the scheme will receive dividend notes showing that the correct dividend tax has been withheld in accordance with the DTA. The individual dividend recipients therefore do not need to independently claim a dividend tax refund from SKAT.

Confidential Pursuant to Protective Order                    SKAT_MDL_001_0075835_T

## 11.6 Continuous approvals of financial statements.

In the Executive Order on Central Government Accounting, etc. (Bekendtgørelse om statens regnskabsvæsen mv.) and by the Agency for Modernisation, a number of requirements have been laid down for approvals of the financial statements which, via SKS, are included in the central government accounts.

The requirements are incorporated in the Ministry of Taxation's framework for financial reporting. The framework consists of:

- Ministerial instructions
- Business instructions
- Accounting instructions
- A guide to financial reporting for local business codes and
- A guide to the central financial reporting.

In the framework, the Ministry of Taxation has laid down a number of further requirements for control in addition to the above external requirements.

The approvals of the financial statements are the end product of the control to which the interim financial statements are subjected prior to being presented. In the approval of the financial statements, a report is presented on errors and omissions in the presented financial statements, and an overall conclusion is provided. The approvals of the financial statements are physical documents prepared with different frequencies and signed at different management levels in SKAT.

In Table 11.5 below, we have stated, for the individual approvals of financial statements, the control requirements which are deemed to be relevant in relation to the control of dividend tax refunds:

| Designation | Frequency | Contents |
|---|---|---|
| **Approval of financial statements for local business codes** <br> To be signed by: <br> Functional managers/heads of office in Payments and Accounts | Monthly | *Each month, all accounting units must check that assets and liabilities have been reconciled for the unit's own business codes (paragraph 2.6.2 of Accounting Instructions for the Ministry of Taxation's Group, section 38).* <br><br> In Guide to Closing of Financial Statements, the requirements are extended to control: <br><br> It is stated by way of introduction that the *guide must be regarded as guidelines for the controls which must, as a minimum, be prepared to contribute to ensuring the correctness of the financial statements.* <br><br> *During this phase, this concerns control of the presence of the assets and reasonable assurance of the correctness of revenues/expenses. Examples of this include:* <br> [for example, the paragraph quoted below is mentioned:] <br> • *that there are no significant changes in proceeds, for example FO 2300 registration tax in relation to the same month of the previous year* <br> (Guide to Closing of Financial Statements, local business codes, April 2015). |
| **Central approval of financial statements** <br><br> To be signed by: The Director for Payments and Accounts and the Head of Office for the Section 38 Office | Monthly | *Approval of the monthly financial reporting in SKS includes:* <br> 1. *that there is consistency between the data in the local financial reporting systems and SLS and SKS* <br> 2. *that there is approval of the underlying financial statements in SKS.* <br> (Paragraph 3.2.1 of Ministerial Instructions for the Ministry of Taxation) <br><br> The accounting instructions for section 38 specify and lay down a number of additional control requirements: <br><br> *In connection with the financial reporting, the following controls are performed* [for example the item below is mentioned]: |

Confidential Pursuant to Protective Order                                SKAT_MDL_001_0075835_T

| | | |
|---|---|---|
| | | • an assessment of whether revenues and expenses for the past period appear reasonable, taking into consideration revenues and expenses in the past two fiscal years based on the development in the individual periods and year-to-date (probability check). For deviations examined in connection with the probability check, the explanations must be documented or enclosed as appendices.<br>(Clause 2.6.1 in Accounting Instructions for the Ministry of Taxation's Group, section 38) |
| **Quarterly approval of financial statements**<br><br>To be signed by: The Director for Payments and Accounts and the Head of Office for the Section 38 Office | Quarterly | A substantial approval of quarterly financial statements must be provided, comprising:<br>[for example, the paragraph quoted below is mentioned:]<br>• that the spending of appropriations seems reasonable based on the activities in the past period.<br>(Paragraph 3.2.2 of Ministerial Instructions for section 38)<br><br>The following is further specified in the document containing the quarterly approval of the financial statements:<br><br>The financial statements have been reviewed and approved in accordance with the Ministerial Instructions. Eleven items are ticked in the approval, including item 3) "Have any underlying financial statements and approvals been reviewed to check any comments or other circumstances which may give rise to comments?"<br>(Approval of the financial statements for section 38 for second quarter of 2015) |
| **Special approval letter concerning the closed financial statements**<br><br>To be signed by: Director for Payments and Accounts | Annually | In connection with the annual approval of the financial statements in SKS, the same matters must be checked as in the quarterly approval of the financial statements (Paragraph 3.2.3 of Ministerial Instructions for section 38)<br>The financial statements have been prepared on the basis of the provisions of the Executive Order on Financial Reporting (Regnskabsbekendtgørelsen) and, in our opinion, they contain:<br>• All bookkeeping units and sub-accounts for which the company is responsible<br>• A correct statement of the appropriations used<br>• A correct statement of assets and liabilities<br>(Special letter of approval (letter of representation) for the closing financial statements for section 38 for 2014) |

**Table 11.5**

It should be noted that the monthly approval of the financial statements consists of:

- A local approval of the financial statements and
- A central approval of the financial statements.

The financial reporting process includes a number of control activities prior to the local approval of the financial statements. These form the basis for approval and presentation of the central financial statements, which also comprise a number of additional control activities, including a probability check.

The above table shows that the monthly approvals of the financial statements must contain an assessment of whether the development in expenses and revenues is reasonable. Internal Audit has therefore examined whether the approvals of the financial statements contain any comments on an unusual development in the extent of dividend tax refunds or whether actual qualifications have been expressed regarding the correctness of the financial statements as a result thereof.

We have reviewed all approvals of financial statements in the period 2012-2015. No actual qualifications have been expressed in the approvals of the financial statements in the period reviewed. However, there are comments in the monthly approvals of financial statements regarding the development in expenses for dividend tax refunds. It appears to the reader that a causal explanation has been provided for the comments, and that the comments do not appear to have been continued in the quarterly or annual approvals of the financial statements.

Confidential Pursuant to Protective Order
SKAT_MDL_001_0075835_T

TRANSLATION

In the tables below, we have presented the comments in the approvals of the financial statements. The tables comprise the years in which comments have been made in the monthly central or local approvals of the financial statements. 2012 has been left out, as there were no comments. We have (in abbreviated form) repeated any comments from the approvals of the financial statements.

The tables also include the disbursed refund in the month in question, the change in relation to the same month of the previous year as well as the disbursed refund stated year-to-date. All amounts are stated in DKK million

## 2013 (stated in DKK million)

| Month | Refund | Change relative to the same month of the previous year | Refund (year-to-date) | Local approval of financial statements* | Central approval of financial statements |
|---|---|---|---|---|---|
| 1 | 66 | 22 | 66 | No comments | No comments |
| 2 | 27 | -9 | 93 | No comments | No comments |
| 3 | 57 | 30 | 150 | No comments | No comments |
| 4 | 373 | 351 | 523 | No comments | No comments |
| 5 | 434 | 86 | 957 | No comments | No comments |
| 6 | 738 | 486 | 1,695 | No comments | Refunded dividend tax shows an increase of DKK 486 million compared with the same period of the previous year. Of the balance for the period, DKK 533 million can be attributed to two companies. |
| 7 | 327 | 136 | 2,022 | No comments | No comments |
| 8 | 126 | 15 | 2,148 | No comments | No comments |
| 9 | 50 | -115 | 2,199 | No comments | No comments |
| 10 | 141 | 77 | 2,340 | No comments | No comments |
| 11 | 344 | 320 | 2,684 | No comments | No comments |
| 12 | 110 | -56 | 2,794 | No comments | No comments |
| 13 | - | - | 2,794 | N/A | No comments |

**Table 11.6**

Confidential Pursuant to Protective Order

SKAT_MDL_001_0075835_T

TRANSLATION

## 2014 (stated in DKK million)

| Month | Refund | Change relative to the same month of the previous year | Refund (year-to-date) | Local approval of financial statements* | Central approval of financial statements |
|---|---|---|---|---|---|
| 1 | 119 | 53 | 119 | No comments | No comments |
| 2 | 66 | 39 | 185 | No comments | No comments |
| 3 | 83 | 27 | 268 | No comments | No comments |
| 4 | 612 | 239 | 881 | No comments | No comments |
| 5 | 1,385 | 951 | 2,266 | No comments | Refunded dividend tax shows an increase of DKK 1.0 billion compared with the same period of the previous year. Of the balance for the period, DKK 0.8 billion can be attributed to disbursements to two foreign banks, which then handle the transfer to the recipients. |
| 6 | 1,842 | 1,104 | 4,108 | DKK 4.1 billion has been disbursed year-to-date (YTD), which exceeds the refunds disbursed for the whole of 2013 by DKK 1.3 billion. One reason for this may be that more ... .... [specific country mentioned] pension funds make acquisitions in Danish companies. The ... ........ [specific country mentioned] pension funds are not liable to pay Danish tax, hence the very large refunds. | Refunded dividend tax shows an increase of DKK 1.1 billion compared with the same period of the previous year. The reason for the marked increase seen in 2014 is that more ... ..... [specific country mentioned] pension funds make acquisitions in Danish companies. As these pension funds are not liable to pay Danish tax, these acquisitions result in very large refunds. |
| 7 | 729 | 402 | 4,838 | DKK 4.8 billion has been disbursed YTD, which exceeds the refunds disbursed for the whole of 2013 by DKK 2.0 billion. One reason for this may be that more ... .... [specific country mentioned] pension funds make acquisitions in Danish companies. The ... ........ [specific country mentioned] pension funds are not liable to pay Danish tax, hence the very large refunds. | Refunded dividend tax shows an increase of DKK 402 million. The reason for the marked increase seen in 2014 is that more ... ..... [specific country mentioned] pension funds make acquisitions in Danish companies. As these pension funds are not liable to pay Danish tax, these acquisitions result in very large refunds. |
| 8 | 614 | 488 | 5,451 | DKK 4.8 billion has been disbursed YTD. | Refunded dividend tax shows an increase of DKK 488 million. The reason for the marked increase seen in 2014 is that more ... ..... [specific country mentioned] pension funds make acquisitions in Danish companies. As these pension funds are not liable to pay Danish tax, these acquisitions result in very large refunds. |
| 9 | 135 | 84 | 5,586 | DKK 5.6 billion has been disbursed YTD. | No comments |
| 10 | 260 | 118 | 5,846 | DKK 5.8 billion has been disbursed YTD. | No comments |
| 11 | 130 | -214 | 5,976 | DKK 6.0 billion has been disbursed YTD. | No comments |
| 12 | 87 | -23 | 6,063 | DKK 6.1 billion has been disbursed YTD. | No comments |
| 13 | . | . | 6,063 | N/A | No comments |

**Table 11.7**

*) In addition to the comments stated on refund of dividend tax, it has been stated under the item *"Non-performance of tasks"* in the March-October period that *"Dividend tax has become very vulnerable, as the operating unit has had very large staff reductions and there are few employees left who are highly specialized in the individual areas. It should be considered whether the tasks are to be transferred in full or in part to DMO/DMS in Horsens or Ringkøbing."*

Confidential Pursuant to Protective Order

SKAT_MDL_001_0075835_T

TRANSLATION

## 2015 (stated in DKK million)

| Month | Refund | Change relative to the same month of the previous year | Refund (year-to-date) | Local approval of financial statements* | Central approval of financial statements |
|---|---|---|---|---|---|
| 1 | 93 | -26 | 93 | No comments | No comments |
| 2 | - | -66 | 93 | No comments | No comments |
| 3 | 78 | -5 | 172 | No comments | No comments |
| 4 | 1,109 | 497 | 1,281 | DKK 1.3 billion has been disbursed YTD in 2015 | |
| 5 | 4,227 | 2,842 | 5,508 | DKK 5.5 billion has been disbursed YTD in 2015. DKK 2.3 billion had been disbursed at the same time in 2014. | Refunded dividend tax shows an increase compared with the same period in 2014. Part of the increase is attributable to more ... .... [specific country mentioned] pension funds making acquisitions in Danish companies. As these pension funds are not liable to pay Danish tax, these acquisitions result in large dividend tax refunds. |
| 6 | 1,072 | -770 | 6,580 | DKK 6.6 billion has been disbursed YTD in 2015. DKK 4.1 billion had been disbursed at the same time in 2014. A task has been initiated due to the increasing number of cases concerning dividend tax refunds as well as SIR's comments in connection with a review of the area. It is mentioned that it should be assessed whether the administrative processes for dividend tax refund can be improved and made more effective. | Refunded dividend tax shows a decrease relative to the same period in 2014, but refunds show an increasing trend year-to-date. Part of the increase is attributable to more ... .... [specific country mentioned] pension funds making acquisitions in Danish companies. As these pension funds are not liable to pay Danish tax, these acquisitions result in large dividend tax refunds. |
| 7 | 2,149 | 1,420 | 8,729 | DKK 8.7 billion has been disbursed YTD in 2015. DKK 4.8 billion had been disbursed at the same time in 2014. It is mentioned that a meeting must be held regarding the description of the task on dividend tax refund. [dated August 5, 2015] | Refunded dividend tax shows an increase compared with the same period in 2014. There is an increasing trend year-to-date. A case of presumed fraud is currently pending, and it has been handed over to the State Prosecutor for Serious Economic and International Crime (SØIK). Disbursements have been suspended temporarily. [dated August 26, 2015] |
| 8 | 565 | -49 | 9,294 | N/A | N/A |

**Table 11.8**

*) In addition to the comments stated on refund of dividend tax, it has been stated under the item "Status on work tasks" in the January-May period that *"Dividend tax is affected by long-term illness, and training of employees from SAP38 Horsens has been commenced as well as a transfer of tasks."*

It appears from the above tables that the first comment on the development in dividend tax refunds was made in the central approval of the financial statements in June 2013. The causal explanation for the development are two large disbursements. There are no comments in the local approval of the financial statements.

In May 2014, a corresponding causal explanation was given in the central letter of representation. There are no comments in the local approval of the financial statements.

In June and July 2014, the development was commented on in both the local and central approvals of the financial statements. The following explanation is stated in the local approval of the financial statements: *"One reason for this may be that more … …. [specific country mentioned] pension funds make acquisitions in Danish companies."*

Confidential Pursuant to Protective Order

SKAT_MDL_001_0075835_T

The following is stated in the central approval of the financial statements: *"The reason for the significant increase seen in 2014 relative to last year is that more … …. [specific country mentioned]* pension funds make acquisitions in Danish companies.*"*

The documentation for the central probability check shows that the explanation was provided by the employee who has prepared the local approval of the financial statements.

In August 2014, the comment was repeated in the central approval of the financial statements, but not in the local approval of the financial statements. However, the size of the refunds disbursed year-to-date is stated in the local approval of the financial statements under the item "Revenues or expenses which are regarded as being of significant importance to whether the financial statements give a true and fair view." The refunds disbursed are also stated in the local approvals of the financial statements in the period September - December 2014.

There are no comments in the period January - March 2015.

In April 2015, the size of the refunds disbursed year-to-date is again stated in the local monthly approval of the financial statements. There are no comments in the central monthly approval of the financial statements.

The central monthly approval for May and June 2015 contains comments on the development. It is stated that *"Part of the increase is attributable to more … …. [specific country mentioned]* pension funds making acquisitions in Danish companies.*"* The documentation for the check performed at central level shows that the employee who prepares the local monthly approval has stated that *"the increase is attributable to more … …. [specific country mentioned]* pension funds making acquisitions in Danish companies.*"* The email from the employee in question also contains information that two specific companies' dividend distribution has increased the total dividend distribution.

It appears from the documentation for the check carried out at central level that the employee's causal explanation for the pension funds' acquisitions will be mentioned as part of the explanation. In the local approval of the financial statements for June 2015, it is also stated that a task has been initiated with a view to improving and streamlining the refund processes as a result of Internal Audit's comments on this matter.

Finally, both approvals of the financial statements for July 2015 contain comments on the development in the refunds disbursed. The central approval of the financial statements has been prepared after the fraud was revealed, and reference is therefore made to it.

## 11.7 Interim conclusion

In relation to the form scheme, Internal Audit's assessment is that the manual controls for validation of refund claim forms submitted are not sufficient. The reason for this is that the case officer does not have a basis of comparison in the form of advisory

Confidential Pursuant to Protective Order

SKAT_MDL_001_0075835_T

lists of documents from the different countries which allows for a comparison and validation of the documents submitted.

Our review of the 3S system shows that programmed input data controls to ensure complete, valid, and consistent data has been incorporated to a limited extent only. However, a control for identification of duplicates has been identified, but it requires a precise and uniform statement of the refund applicant in a text field.

The review of the 3S system also shows limited use of programmed controls. There is a control which ensures that the case officer is notified if a total refund claim for a company exceeds the dividend tax declared by the company. But, for certain listed companies, the control has not functioned for a period of two years, and it has only been re-established in 2015. Internal Audit finds that the design of the control is not expedient because the control does not take into consideration the refund claims which SKAT receives via the bank scheme.

A review of user manuals and procedure descriptions shows that these are not updated continuously in connection with system changes. These are conditions that affect the overall control environment.

In relation to the bank scheme, SKAT has delegated part of the control tasks to the banks involved, and SKAT is thus dependent on the banks having established effective controls in the area. The dividend tax refund claims are not imported in 3S, and it is therefore not possible to make a comparison with any dividend recipients which the companies have reported to SKAT. Furthermore, it cannot be ruled out that the dividend recipient who receives a refund via the bank scheme may also apply for a refund via the form scheme.

Under the VP scheme, SKAT has left the control task of verification of the dividend recipient and the disbursement of correct dividend tax to VP. VP has established controls in the area. SKAT does not follow up on whether these controls are effective.

SKAT performs periodic approvals of the financial statements. These continuous approvals of the financial statements show that the financial statements have been approved without qualifications. The fluctuations in the dividend tax refund are, however, noted in the monthly approvals of the financial statements. Our assessment is that it appears to the reader that there is a causal explanation for the fluctuations and that there are thus no problematic issues involved. Based on the documentation available, our assessment is that there has not been a sufficiently critical appraisal of the causal explanations when these were incorporated in the approvals of the financial statements. The comments on the fluctuations have not been incorporated in the quarterly or annual approvals of the financial statements. This may be due to the fluctuations appearing as unproblematic in the monthly approvals of the financial statements.

Confidential Pursuant to Protective Order                                        SKAT_MDL_001_0075835_T

TRANSLATION

# 12. Second line of defense – controls

The second line of defense must generally comprise the monitoring controls which SKAT has implemented to ensure that the course of the dividend process is as presupposed: The controls in the second line of defense should primarily comprise management and control functions that support the first line of defense and will include the following:

- Risk management
- Controlling
- Compliance
- Information security

**Risk management:**

The dividend process must continuously be covered by a risk management that comprises the whole process. The risk management must continuously identify the risks in the dividend process which may result in the elements in the process not being of the desired quality (correct declaration, correct reporting, system reconciliations, bookkeeping, and correct calculation of dividend tax refund). The dividend process is not regarded as being covered by a continuous risk assessment.

**Controlling:**

The controlling, which comprises the whole dividend process, must include a continuous assessment of whether the process is progressing as defined by the management. The controlling must also include an assessment of whether the procedures contain built-in controls that can effectively address the risks identified in connection with the risk management. The controlling must further include an assessment of whether the procedures in the dividend process contain superfluous control measures. The dividend process is not regarded as being covered by systematic controlling. Systematic controlling will also be complicated by the failure to implement unambiguous responsibility for the process in SKAT. The process responsibility is distributed on three deputy director general areas.

**Compliance:**

The dividend area must be characterized as being a relatively complex area. It is therefore important that the internal controls in the procedures reflect the body of legal rules and that there is continuous monitoring of compliance.

Confidential Pursuant to Protective Order                    SKAT_MDL_001_0075835_T

To date, SKAT has the following completed or ongoing compliance reviews:

1. Compliance of individuals and businesses with the tax rules
2. Compliance – the largest companies, ongoing review
3. Compliance – customs
4. Compliance – excise duties, ongoing review

The compliance of individuals and businesses with the tax rules, including dividend tax, has been reviewed on three occasions since the 2006 income year. The recently concluded compliance review concerns the 2012 income year, for which the results of the businesses' compliance with the rules have not yet been reported.

In the compliance review for the 2010 income year in respect of businesses with less than 250 employees, SKAT has completed 2,998 checks (2,090 checks among self-employed persons and 908 checks among companies). In connection with each individual check, a detailed review has been made of all the business's tax-related matters. Non-compliance with the rules on dividend tax has been ascertained in connection with the compliance review.

**Information security:**

SKAT has established an information security office, which is located in Corporate Service and reports to the Deputy Director General of Finance.

As part of the second line of defense, the information security office's primary task is to guide, advise, and assist the Ministry of Taxation's group, so that critical and sensitive data is protected, regardless of media.

The information security office focuses on, among other areas, IT security, employee security, and physical security, which are ensured in close cooperation with all the group's entities. The office prepares security manuals for employees and risk owners as well as guidelines, and provides advice in a balanced triangle according to the nature of the information in relation to confidentiality, integrity, and availability.

Factors which are also applicable to the dividend tax area.

## 12.1 Interim conclusion

The risk management activities and the controlling activities have generally not been satisfactory in terms of administration of dividend tax and dividend tax refunds. The second line of defense has thus not functioned satisfactorily in this area.

Confidential Pursuant to Protective Order

SKAT_MDL_001_0075835_T

# 13. Lack of effect of key IT-supported controls

This chapter has been included to highlight the main weaknesses ascertained in the IT-supported controls.

In the 3S system, there is a preventive control which can identify refund claim duplicates. The system notifies the case officer if several refund claims have been entered for the same dividend recipient for the same dividend distribution. The duplicate control is set up in such a way that 3S only makes a comparison of the data stated in the "Name" field. This is due to no other relevant data being entered for identification of the dividend recipient which can form the basis for a duplicate search, e.g. civil registration number/CVR no. or TIN no.

In 3S, there is a preventive control which notifies the case officer if a total refund is claimed for a company which is higher than the dividend tax declared by the company. However, the control design does not take into account the refund claims that SKAT receives via the bank scheme or the part which concerns dividend tax for Danish dividend recipients. This has the effect that the actual dividend tax for which SKAT can expect to receive refund claims is significantly lower than the declaration which 3S uses in the control.

For individual listed companies, it has not been possible to "enter" refund claims received for the dividend-paying company in 3S in 2013, 2014, and 2015. The error has occurred in the cases in which two declarations have been registered for the same distribution in 3S. 3S has not been able to handle multiple declarations in connection with the subsequent reporting of refund claims and has displayed a "green screen" to the case officer. The error was corrected in July 2015, after which 3S has again been able to compare refund claims in 3S with the declaration of dividend tax in all cases.

## 13.1 Interim conclusion

There are a number of established preventive controls in 3S which Internal Audit finds are not of an expedient design. The duplicate control validates only on one text field and could be improved by also including other fields, for example TIN no.

The control to verify that a claim is not made for a total refund amount which is higher than the dividend tax declared by the company does not take into account the refund claims that SKAT receives via the bank scheme or the part which concerns dividend tax for Danish dividend recipients. The declaration amount in the control should be reduced by these claims.

Confidential Pursuant to Protective Order                    SKAT_MDL_001_0075835_T

**TRANSLATION**

For individual listed companies, it has not been possible to "enter" refund claims received for the dividend-paying company in 3S for a period of three years. The reason for the error was that 3S was unable to handle multiple declarations for the same distribution and gave the case officer a "green screen." The error was corrected in July 2015.

Confidential Pursuant to Protective Order                                    SKAT_MDL_001_0075835_T

# 14. Data in eKapital

In eKapital, information is reported about dividend recipients and distributed dividend, etc. As described in Chapter 9, reporting on dividend recipients is registered from both listed and non-listed companies. This chapter contains a description of the most important information registered in eKapital about <u>non-residents</u>. The chapter will also give an account of weaknesses resulting from a lack of information in the systems.

There is a great difference between the stockholder information found in eKapital, depending on whether a natural person has a stock custody account, a company has a stock custody account which it owns itself, or the stocks are deposited in a pooled custody account (omnibus custody account) with a foreign bank.

Below, an account is given of the significant information which has generally been reported in eKapital on the <u>dividend recipient</u> for natural persons, companies, and omnibus custody accounts.

## 14.1 Natural persons

Table 14.1. shows the information that eKapital contains about natural persons:

<u>Table 14.1 Information about the actual dividend recipient for natural persons in eKapital:</u>

| Identification of actual dividend recipients | Custody account number | Name of dividend-paying company | Number of stocks | Dividend distributed | Dividend tax withheld | Covered by VP scheme |
|---|---|---|---|---|---|---|
| ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |

**Table 14.1**

For natural persons, eKapital thus contains information about the individual dividend recipient.

## 14.2 Companies

Table 14.2 shows the information which eKapital contains about companies that have a custody account with their own holding of stocks.

<u>Table 14.2 Information about the actual dividend recipient for companies in eKapital:</u>

| Identification of actual dividend recipients | Custody account number | Name of dividend-paying company | Number of stocks | Dividend distributed | Dividend tax withheld | Covered by VP scheme |
|---|---|---|---|---|---|---|
| ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ./. |

Confidential Pursuant to Protective Order

SKAT_MDL_001_0075835_T

TRANSLATION

**Table 14.2**

For companies which have a custody account with their own holding of stocks, eKapital thus contains information about the individual dividend recipient.

## 14.3 Omnibus custody accounts

Unlike a company which has a custody account with its own holding of stocks as shown above, the custodian of an omnibus custody account will not itself own the stocks in the custody account, but only represents the stockholder/dividend recipient. As shown in Table 14.3 and Table 14.3a below, the information reported is of a different nature.

Table 14.3 Information about custodian of omnibus custody account in eKapital:

| Identification of actual dividend recipients | Custody account number | Name of dividend-paying company | Number of stocks | Dividend distributed | Dividend tax withheld | Covered by VP scheme |
|---|---|---|---|---|---|---|
| No, only information about the custodian | ✓ | ✓ | ✓ | ✓ | ✓ | ./. |

Table 14.3

Table 14.3a Information about the actual dividend recipients for omnibus custody accounts in eKapital:

| Identification of actual dividend recipients | Custody account number | Name of dividend-paying company | Number of stocks | Dividend distributed | Dividend tax withheld | Covered by VP scheme |
|---|---|---|---|---|---|---|
| ./. | ./. | ✓ | ./. | ./. | ./. | ./. |

Table 14.3a

As shown in Table 14.3 and Table 14.3a, the information reported to eKapital does not contain information about the actual dividend recipient. eKapital will only contain information for identification of the omnibus custody account, and the omnibus custody account will appear as the dividend recipient.

## 14.4    Stocks distributed on custody accounts held by natural persons, companies, and omnibus custody accounts

Based on two listed companies in the C20 Cap index, Internal Audit has examined how the stocks of non-residents are distributed on custody accounts owned by natural persons and companies as well as omnibus custody accounts.

Confidential Pursuant to Protective Order                                    SKAT_MDL_001_0075835_T

Data has been selected for reporting in eKapital via Business Objects.

| |
|---|
| The two listed companies had the following distribution of the number of stocks held by non-residents:<br><br>Company A:<br>  &bull; Natural persons      5%<br>  &bull; Companies           1%<br>  &bull; Omnibus custody accounts  94%<br><br>Company B:<br>  &bull; Natural persons      0%<br>  &bull; Companies           3%<br>  &bull; Omnibus custody accounts  97% |

**Table 14.4**

The distribution in Table 14.4 shows that Danish stocks owned by non-residents are predominantly held in omnibus custody accounts.

Like other companies, banks are reported in eKapital as "company" ("selskab"). It is not possible to distinguish between whether a bank has a custody account with its own holding of stocks or is a custodian. We have therefore categorized all banks as omnibus custody accounts.

As shown in Table 3 and Table 3a, the information reported to eKapital about omnibus custody accounts does not contain information about the actual dividend recipient for stocks placed in the custody account. eKapital will only contain information for identification of the omnibus custody account, and the omnibus custody account will appear as the dividend recipient.

In by far the majority of cases, SKAT will therefore not be in possession of information about the individual dividend recipient which could form the basis of a control in the processing of a refund claim.

## 14.5 Interim conclusion

| |
|---|
| The information reported to eKapital about omnibus custody accounts does not contain information about the actual dividend recipient for stocks placed in the custody account. eKapital will only contain information for identification of the omnibus custody account, and the omnibus custody account will appear as the dividend recipient.<br><br>In by far the majority of cases, SKAT will therefore not have information about the individual dividend recipient which could form the basis of a control of the refund basis in the processing of a refund claim. |

Confidential Pursuant to Protective Order                                    SKAT_MDL_001_0075835_T

**TRANSLATION**

Internal Audit's review of two listed companies in the C20 Cap index shows that Danish stocks owned by non-residents are predominantly placed with banks (bank custody accounts), which are probably omnibus custody accounts.

Confidential Pursuant to Protective Order                    SKAT_MDL_001_0075835_T

# 15. SKAT's follow-up on audit reports

## 15.1 Internal Audit's reporting and follow-up

Internal Audit continuously reports the results of the audit conducted to SKAT in separate audit reports. The audit reports contain the following information:

- A description of the observed matter (observation)
- A description of the risks to which the observation gives rise
- A recommendation for reduction of the risks identified.

SKAT prepares action plans in order to reduce the risks identified. Internal Audit assesses the action plans and follows up on the implementation thereof.

## 15.2 Overview of Internal Audit's reports

In recent years (from 2001 and onwards), Internal Audit has prepared several audit reports on dividend tax. Figure 15.1. below presents an overview of the reports prepared:

| Date | Audit reports | Scope of audit |
|------|---------------|----------------|
| September 27, 2001 Ref. no. 99/01-0721-00335 | Financial audit of dividend and royalty tax at the Regional Customs and Tax Administration in Nærum | To carry out a financial audit of dividend and royalty tax at the Regional Customs and Tax Administration in Nærum. |
| November 8, 2002 Ref. no. 99/02-0721-00414 | Financial follow-up audit of dividend and royalty tax at the Regional Customs and Tax Administration in Nærum | To provide a status report on the solution to the problems noted in the report from September 27, 2001 "Financial audit of dividend and royalty tax at the Regional Customs and Tax Administration in Nærum." |
| January 30, 2006 Ref. no. 05-0721-006524 | Audit of the Dividend Tax Administration at Tax Center Ballerup | To find out whether the processing of dividend tax, etc. takes place in a satisfactory manner in the Dividend Tax Administration at Tax Center Ballerup. |
| May 10, 2010 Ref. no. 09-172022 | Investigation of the proceeds from the withholding tax charged from non-residents – dividend tax | The objective of this audit was to examine whether: |
| | | * The correct net proceeds from the refund scheme can be calculated based on the dividend reporting submitted to SKAT. |
| | | * SKAT lacks reporting /information to be able to calculate the correct net proceeds from the refund scheme. |
| | | * The business processes for the collection of dividend tax have been documented and are known. |
| | | * The accounting and IT systems sufficiently support the correct calculation of net proceeds from the refund scheme. |
| May 30, 2013 Ref. no. 13-005403 | Audit of dividend and royalty tax for 2012 | **The purpose of the audit was to assess:** |
| | | * Whether SKAT has planned its accounting function in a satisfactory manner, including established procedures and internal controls that contribute to ensuring correct financial reporting. |
| | | * Whether the measures taken by SKAT following previous investigations have been adequate and sufficient; see Internal Audit's report of May 2010 on this topic, in which a number of recommendations are given. |

**Figure 15.[PAGE]**

Confidential Pursuant to Protective Order                                    SKAT_MDL_001_0075835_T

As an example, in **figure 15.2 below** regarding the audit report on dividend and royalty tax for 2012, we have presented an overview of:

1. Recommendation divided by category (1 – red, 2 – amber, or 3 – green)
2. Statement at the time of the agreed action plans as well as
3. Statement of dates for renewed action plans.

## 15.3 SKAT's follow-up on Internal Audit's recommendations

**Audit of dividend and royalty tax for 2012:**

| Audit report on dividend and royalty tax 2012 | Recommendation | Action plan deadline | New deadline for action plan | New deadline for action plan | New deadline for action plan | New deadline for action plan | Deadline exceeded |
|---|---|---|---|---|---|---|---|
| Category 1 | | 12/31/2013 | 03/01/2014 | Q1 2014 The item has been closed | Not relevant, the item has been closed | Not relevant, the item has been closed | Yes, two months |
| Category 1 | | 04/30/2014 | 06/30/2014 | 09/30/2014 | Q3 2014 The item has been closed | Not relevant, the item has been closed | Yes, five months |
| Category 1 | | 04/30/2014 | 09/30/2014 | 12/31/2014 | Q4 2014 The item has been closed | Not relevant, the item has been closed | Yes, eight months |
| Category 1 | | 04/30/2014 | 09/30/2014 | 12/31/2014 | Q4 2014 The item has been closed | Not relevant, the item has been closed | Yes, eight months |
| Category 1 | | 12/31/2013 | 04/30/2014 | 09/30/2014 | 12/31/2014 | Q4 2014 The item has been closed | Yes, one year |
| Category 2 | | 12/31/2013 | 04/30/2014 | 09/30/2014 | 12/31/2014 | Q4 2014 The item has been closed | Yes, one year |
| Category 2 | | The item has been closed | The item has been closed | The item has been closed | The item has been closed | Not relevant, the item has been closed | N/A |
| Category 3 | | 12/31/2013 | 04/30/2014 | 09/30/2014 | 12/31/2014 | 05/31/2015 | Yes, approx. 1½ years |

**Figure 15.2**

Category 1 is an expression of a material weakness, which is regarded as a critical problem that should immediately be evaluated by the deputy director general responsible. Category 2 is an expression of a significant weakness, which is regarded as a problem that should be dealt with. Category 3 is an expression of a problem of a more formal nature. In addition, the categorization of the recommendations is also an expression of the order in which the recommendations should be implemented.

It appears from Figure 15.2 that the deadlines for clarification of recommendations (regardless of whether they are categorized as observation 1, 2, or 3) have been postponed several times.

It is not an isolated case that the deadlines for clarification of recommendations are exceeded. In the audit report of June 27, 2014, it appears that:

Confidential Pursuant to Protective Order

SKAT_MDL_001_0075835_T

TRANSLATION

*"Internal Audit has ascertained in connection with the review that there has been limited follow-up only. The responsibility for the individual audit comments has been placed, and deadlines have been set for implementation of measures. However, the deadlines for several measures have been postponed several times."*

*(The audit report concerns* SKAT's follow-up on Internal Audit's recommendations and identified, non-corrected errors from previous years, ref. no. 14-0387758, page 1).

## 15.4 SKAT's internal follow-up procedures on audit reports

SKAT has described its internal follow-up procedures on audit reports in a memo from February 2013. The follow-up on critical audit reports ("not completely satisfactory" and "not satisfactory") is reproduced in Figure 15.3 below:



**Figure 15.3**

Internal Audit sends audit reports concerning SKAT to the Budget and Accounts department in SKAT.

Critical audit reports ("not completely satisfactory" and "not satisfactory") are discussed on SKAT's Executive Board. It is decided which deputy director(s) general for the individual business areas is/are responsible for follow-up on the audit report in question. The deputy directors general have three weeks in which to report back to Budget and Accounts on the follow-up to which the audit report gives rise.

In SKAT (Budget and Accounts), the initiatives based on the audit reports are coordinated, and the following actions are taken:

- Follow-up on the audit reports by the individual deputy directors general
- Assessment of whether the follow-up is adequate
- Entry of information in the follow-up protocol.

Confidential Pursuant to Protective Order

SKAT_MDL_001_0075835_T

The status on the follow-up from the deputy directors general, including an assessment by Budget and Accounts of whether the follow-up is adequate, is summarized in a follow-up protocol, which is submitted to SKAT's Executive Board before being sent to Internal Audit.

Internal Audit has changed the reporting procedure from spring 2014. The follow-up is now done based on action plans incorporated in the audit reports. Internal Audit therefore no longer receives follow-up protocols.

SKAT has informed Internal Audit that if a recommendation is marked as closed, this does not necessarily mean that SKAT regards the recommendation as closed, as work is being done in SKAT aimed at implementing the recommendation. However, the recommendation will no longer be stated as outstanding in the subsequent follow-up overview to the management. Internal Audit's assessment is that there is a risk that the management in SKAT will not pay sufficient attention to risks that have not been properly dealt with after a recommendation has been marked as closed.

## 15.5 SKAT's follow-up on the audit report "Dividend and royalty tax for 2012"

In connection with the audit of **dividend and royalty tax for 2012**, we can ascertain on the basis of the minutes of the Executive Board meeting on June 17, 2013 that the Executive Board in SKAT decided that the Customer Service and Collection business units should follow up on the report from Internal Audit. In the following, two examples are provided of SKAT's follow-up on recommendations from the audit report "Dividend and royalty tax for 2012."

### 15.5.1. Recommendation – wrongfully refunded dividend tax

SKAT's quarterly follow-up protocol shows that the subsequent operational follow-up has been done with the Collection business unit as the unit responsible.

One of the recommendations in the audit report was that there is a need for SKAT to have better safeguards against wrongful refunds of dividend tax; see Figure 15.4 below. This recommendation was particularly aimed at dividend tax refunds via the bank scheme. (Dividend tax refunds via the bank scheme are described in Chapter 9).

| Recommendation from Internal Audit: |
| --- |
| "SKAT should do more to ensure that dividend tax is not wrongfully refunded." |
| **Follow-up from SKAT Q4 2014 – argumentation for closing of recommendation** |
| "A process for the refund of dividend tax is being prepared in Development Business in cooperation with Payments and Accounts. Development Business participates in the TRACE project in which, under the auspices of the EU, it has been decided to lay down common rules on the establishment of a system for withholding and refund of dividend tax for foreign dividend recipients, including the possibility of net withholding." |

Confidential Pursuant to Protective Order                    SKAT_MDL_001_0075835_T

**Figure 15.[PAGE]**

The recommendation was marked as closed in Q4 2014 by SKAT with reference to the participation of Development Business in the TRACE project. Internal Audit finds that the recommendation has been marked as closed on an inadequate basis. Our assessment is that the area should still be discussed on SKAT's Executive Board.

On the basis of Internal Audit's review in 2010, a working group was appointed in SKAT which, among other findings, concluded that there is no audit trail for the refund of Danish dividend tax to foreign dividend recipients and the technical processing thereof. In the audit report "Dividend and royalty tax for 2012", Internal Audit followed up on the status of the working group's recommendations.

"Internal Audit has found that SKAT, in collaboration with other OECD countries, is working on a scheme for joint net settlement of dividend to foreign stockholders and that a workable model is ready for use. However, for this scheme to be used, foreign banks must be willing to participate and large countries must join the model. In Internal Audit's opinion, SKAT had made a satisfactory effort to introduce joint net settlement of dividend to foreign stockholders."

Internal Audit still finds that full net settlement of dividend tax vis-à-vis dividend recipients who are not fully tax liable in Denmark will be the most optimal solution. A joint scheme on net settlement has, however, not been taken into use. There is consequently still a need for SKAT to reduce the risks of wrongfully refunded dividend tax.

### 15.5.2. Recommendation – management focus

A third critical recommendation in the audit of dividend and royalty tax for 2012 concerned managerial responsibility for the process; see the figure below.

**Recommendation from Internal Audit:**
"Overall responsibility (management focus) for the entire dividend tax management process should be allocated."

**Follow-up from SKAT Q3 2014 – argumentation for closing of recommendation**
"In connection with the implementation of the New E-tax solution, a working group is appointed between Payments and Accounts and the process owner, the purpose of which is to describe the work process and highlight any focus areas in connection with future Internal Quality Assurance."

**Figure 15.5**

The recommendation was marked as closed in Q3 2014 by SKAT. Internal Audit finds that the recommendation has been marked as closed on an inadequate basis. Our assessment is that the area should still be discussed on SKAT's Executive Board.

### 15.5.3  Internal Audit's sparring with SKAT

Confidential Pursuant to Protective Order                                          SKAT_MDL_001_0075835_T

At SKAT's request, follow-up meeting activities were held regarding the recommendations in Internal Audit's audit report "Dividend and royalty tax for 2012" in the period from fall 2014 to spring 2015. The meetings were held between SKAT (Department for Companies and Digitization) and Internal Audit. The meetings were aimed at reconciliations between systems as well as reconciliation and control options. In continuation of the meeting activities, in July 2015 Internal Audit asked SKAT to provide an account, including documentation, of the five most important recommendations in the audit report. On August 20, 2015, SKAT presented an account of the status of the five most important comments in the audit report. SKAT's account of August 2015 primarily repeats SKAT's arguments in connection with the closing of the recommendations in 2014, with the addition of further information about the process after the closing of the recommendations.

## 15.6 Interim conclusion

In continuation of Internal Audit's report on the audit of **dividend and royalty tax for 2012**, SKAT's Executive Board decided that the Customer Service and Collection business units were to follow up on the report.

The audit report **Dividend and royalty tax for 2012** included a number of recommendations from Internal Audit; three of these recommendations were:

- That overall responsibility (management focus) for the entire dividend tax management process should be allocated.
- That SKAT should do more to ensure that dividend tax is not wrongfully refunded. The recommendation was especially aimed at refunds via the bank scheme.
- That reconciliation between declaration and reporting should be performed for listed companies.

Internal Audit has ascertained that SKAT marked the above three recommendations as closed in 2014. Internal Audit finds that SKAT has not eliminated or reduced the risks connected with the above three recommendations prior to the recommendations being marked as closed by SKAT.

Even though a recommendation is marked as closed by SKAT, work may still be done in SKAT aimed at countering the risk. Internal Audit's assessment is that if work is still being done to counter the risk, the risk cannot be regarded as having been dealt with. The recommendation therefore cannot be regarded as closed.

Confidential Pursuant to Protective Order    SKAT_MDL_001_0075835_T

# 16. Commitment of fraud

SKAT has received two independent reports that SKAT may have been the victim of economic crime. The fraud has been committed via the manual system, which is described in Chapter 9 (section 9.4.1). The model is shown in Figure 16.1. below.



**Figure 16.1**

The parties involved in the case use companies located in countries with which Denmark has entered into a _double taxation agreement (DTA)_.

SKAT's preliminary investigation shows that the economic crime has consisted in the companies applying for a refund of dividend tax withheld from Danish limited liability companies in which they claim to be stockholders.

SKAT's preliminary investigation has also shown that the majority of a large number of named foreign companies have received a refund from SKAT for claimed dividend tax withheld.

The economic crime was committed in the period 2012-2015 and comprised a total of 15 listed companies in the C20 Cap index. The process used for the fraud is illustrated in the figure below; **see 16.2.**



**Figure 16.[PAGE]**

Confidential Pursuant to Protective Order                          SKAT_MDL_001_0075835_T

**TRANSLATION**

When applying for a refund, the applicants have submitted the following documents to SKAT in connection with their refund claim:

1. SKAT's _form_ with information about the company's name, the amount of dividend tax for which a refund is applied and the bank account to be used for SKAT's disbursement.
2. _Power of attorney_, which authorizes the agent to act on behalf of the company.
3. _Declaration_ from the foreign tax administration that the company is resident in a particular country.
4. _Custody account summary_ from the custodian company.

SKAT presumes that the latter document is false. It is not an original custody account summary. The document includes information about the stockholder, the name of the stock, the number of stocks, the dividend, and the amount of dividend tax. The document does not contain any information about the custody account number or any other information.

## 16.1 Interim conclusion

> The fraud has been committed by a large number of named foreign companies having applied for refund of dividend tax withheld from Danish limited liability companies in the C20 Cap index in which they claim to be stockholders.

Confidential Pursuant to Protective Order                    SKAT_MDL_001_0075835_T

# 17. Department of the Ministry of Taxation's initiatives to strengthen processes and controls

## 17.1 Rotation analysis of the payments and accounts area

In a number of audit reports on the financial statements under section 38 of the Danish Finance and Appropriation Act (Finansloven), Internal Audit has issued recommendations for clarification of a number of critical issues. The Department of the Ministry of Taxation (the Department) has stated that the reports have contributed to the payments and accounts area having been regarded as a high-risk area in the Department's overall risk management of SKAT. Against this background, the Department has implemented a rotation analysis of the payments and accounts area in SKAT. The analysis has been performed in the period August 2014 to March 2015 and with reporting in June 2015.

SKAT has been closely involved in the performance of the rotation analysis.

The analysis included the accounting task linked to the State's overall revenues under section 38 of the Danish Finance and Appropriation Act. The payments and accounts area in SKAT must ensure correct handling of all payments of taxes and duties between the State and individuals/businesses as well as the presentation of correct and true and fair financial statements under section 38 of the Danish Finance and Appropriation Act. In the analysis, it has been examined whether SKAT is performing the right tasks and whether SKAT is performing its tasks with the intended effect and with the necessary productivity.

The analysis shows that there is much leeway for supporting better task performance quality and reducing the resources used for the purpose. The assessment in the analysis is that it will be necessary to add specialized competencies to Payments and Accounts to ensure the full implementation of the catalog of proposals.

The catalog of proposals in the analysis contains proposals aimed at strengthening the first and second lines of defense; see the model for the three lines of defense. Below, the focus is on proposals aimed at strengthening the second line of defense, which comprises supervisory tasks regarding management and internal control.

The analysis report includes the following proposals:

1. Establishment of a basic governance structure for the accounting process
2. Definition and location of process, system, and data ownership as well as cooperation with data owners
3. Ongoing risk analysis
4. Monitoring and reporting structure
5. Error analysis function and incident management system
6. Optimization of accounting processes.

Confidential Pursuant to Protective Order

SKAT_MDL_001_0075835_T

Below, a summary is provided of the description in the analysis report of the purpose of the individual proposal and the expected gains from each proposal:

**Re 1 Establishment of a basic governance structure for the accounting process**

The purpose of the proposal is to define and clarify the basic division of responsibilities and roles for the preparation of the section 38 financial statements. It should be structured in accordance with the model for the three lines of defense.

An additional purpose is to strengthen monitoring and advice and to evaluate the reporting of risks with a view to providing guidance on the adequacy of risk analyses and control activities.

Expected gains:
- Establishment of an essential basis for the implementation of the necessary control environment and the necessary risk management, which will strengthen task performance quality in the payments and accounts area and thus the central primary recipients of the accompanying data.

- In line with controls and risk management reducing the number of errors in financial statements and transactions, the proposal will be a prerequisite for reaping efficiency improvement gains.

- It is assessed as being of separate value to clarify the content of the payments and accounts task with associated powers in a role as group CFO, and that the overall responsibility for solving these tasks is anchored formally at director level.

**Re 2 Definition and location of process, system, and data ownership as well as cooperation with data owners**

The purpose of the proposal is to operationalize the governance structure and thus ensure that all the processes and data flows which are important to the payments and accounts task are defined and placed regardless of whether they belong inside or outside the payments area. An additional purpose is to ensure that the group CFO, as the owner of the accounting process, can lay down requirements for the relevant data, process, and system owners regarding the quality of data to be included in the accounting process.

Expected gains:
- Strengthening of the quality of the payments and accounts task.
- Strengthening of data usability.
- Improvement of task performance efficiency.
- Contribution to creating clarity in the governance structure regarding the interaction between process ownership and data ownership in relation to the accounting process.

Confidential Pursuant to Protective Order                    SKAT_MDL_001_0075835_T

**Re 3 Payment and Accounts must perform ongoing risk analyses**

The purpose of the proposal is to perform an interdisciplinary analysis of the accounting processes to assess the error occurrence risk. The analysis is to pinpoint where errors may occur, document the nature of these potential errors, and quantify the probability and consequences of these errors.

Expected gains:
- Strengthening of the quality of the payments and accounts task.
- Strengthening of data usability and reduction of possible sources of deviations from the expected level.
- Improvement of task performance efficiency.

**Re 4 Monitoring and reporting structure**

The purpose of the proposal is to establish monitoring of internal controls to ensure that they are performed as planned. Furthermore, the analysis points out the need to consider moving current control activities from the first to the second line of defense.

Expected gains:
- Strengthening of the quality of the payments and accounts task.
- Strengthening of data usability and reduction of possible sources of deviations from the expected level.
- Improvement of task performance efficiency.

**Re 5 Error analysis function and incident management system**

The purpose of the proposal is to ensure that any errors or irregularities affecting the financial statements are detected, analyzed, corrected, and prevented, so that the overall error prevention work becomes as proactive as possible.

Expected gains:
- Strengthening of the quality of the payments and accounts task.
- Streamlining of task performance by eliminating errors and thus the need for error correction resources.

**Re 6 Optimization of accounting processes**

The purpose of the proposal is to ensure the same quality level of the accounting processes across tax types, to avoid overlapping controls by focusing on tax type rather than on system application and to expedite the financial reporting for the benefit of the users of the financial statements.

Expected gains:
- Ensure compliance with a (probably tighter) schedule for the closing process.
- Ensure that all significant accounts are reconciled in accordance with a reconciliation plan.
- Ensure a foundation for continuous optimization of processes.

Confidential Pursuant to Protective Order

TRANSLATION

## 17.2 Good process control in SKAT

In connection with the establishment of a new integrated governance model for SKAT, the Department has identified a need for clarification and specification of process management in SKAT. With a view to implementation of this, an analysis was performed in 2014. The recommendations of the analysis are being implemented by SKAT through the following end-to-end initiatives across the deputy director general areas in SKAT:

- A process owner role has been established for all SKAT's processes, and the process owners' responsibilities and powers have been clearly defined.
- Roles have been established for coordination across SKAT's processes and the coordinator role's responsibilities and powers have been clearly defined.
- It has been specified in concrete terms in the process owner role and the coordination role what must be observed in order to ensure their legal validity, their financially responsible governance, and the preparation of correct financial statements.
- A joint catalog of terms and concepts has been established which is used in all communication.
- An unambiguous correlation has been established between SKAT's processes and SKAT's overall targets and objectives, and there is continuous target performance follow-up for significant processes through timely, relevant, and current management reporting.

## 17.3 Interim conclusion

Internal Audit's assessment is that the initiatives launched by the Department in the payments and accounts area and in the process area will significantly improve the quality of SKAT's accounting processes via a systematic structure for the accounting process and via continuous monitoring which is much more analytically based than is currently the case.

Confidential Pursuant to Protective Order

SKAT_MDL_001_0075835_T

**TRANSLATION**

# 18. Overview of cases in the Ministry of Taxation

In connection with Internal Audit's investigation of SKAT's dividend tax administration, the Minister for Taxation has informed the Fiscal Affairs Committee that Internal Audit's report will also contain a report on cases in the Ministry of Taxation (MoT) concerning dividend tax refunds, including specific bills and submissions to the Minister and Permanent Secretary.

In this connection, MoT has prepared Appendix 2A, "Overview of cases in the Ministry of Taxation," and Appendix 2B, "Process Paper regarding searches on cases and documents in the Ministry of Taxation concerning refund of withholding taxes."

Internal Audit has reviewed Appendices 2A and 2B and does not have any comments on these.

It must be stated separately that there have been no submissions to the Minister of matters regarding refund of dividends since 2005, including after the warnings following the internal audits in SKAT in 2010 and 2013.

Confidential Pursuant to Protective Order

SKAT_MDL_001_0075835_T

# 19. SKAT's implementation of amendments to acts

Up to January 1, 2012, dividends were declared and dividend recipients were reported at different times. Declaration of dividend had to be made in immediate connection with the company's dividend announcement. Reporting of dividend recipients had to be made by January 20 of the year following the declaration of dividend.

This had two inexpedient effects:

- The reconciliation between declared dividend and reported dividend recipients could only be made on a complete and exact basis with a delay of up to one year.

- The stockholders could apply for a dividend tax refund immediately after the company's declaration of dividend. At this time, SKAT did not have any information about the dividend recipients. In accordance with the Danish Interest on Overdue Payments Act (Renteloven), interest is only payable 30 days after the day on which the debtor was able to obtain the information which must be regarded as necessary to assess the legitimacy and size of the claim. However, in SKAT's administration of dividend tax refunds, SKAT has found that refunds should, as a general rule, be paid within 30 days after SKAT has received the refund claim.

To strengthen SKAT's access to controlling dividend tax, an amendment was made to the Danish Tax Control Act (Skattekontrolloven) in 2009. The amendment made it possible to amend the Executive Order on Reporting Obligations, etc. under the Danish Tax Control Act (the Reporting Order (Indberetningsbekendtgørelsen)), including ensuring that the declaration and reporting of dividend took place concurrently. Amendments to the Reporting Order were made with effect for distribution of dividend on unlisted stocks as from January 1, 2012 and for distribution of dividends on listed stocks as from January 1, 2013.

In addition, by an act of June 18, 2012, a provision was introduced in the Danish Withholding Tax Act (Kildeskatteloven) that no interest accrues on the amount until, at the earliest, six months after the basis for the disbursement has been sufficiently clarified.

**Implementation of the amendments in SKAT**
In connection with the amendments to the Reporting Order, SKAT has adjusted its system setup.

As regards unlisted companies, the process has been changed so that the declaration and reporting must be done at the same time. In connection with the declaration and reporting, the amounts are added up and reconciled in the system.

Declaration and reporting for listed companies still take place as two separate processes. However, the two processes take place at the same time.

Confidential Pursuant to Protective Order

SKAT_MDL_001_0075835_T

**TRANSLATION**

As at mid-2015, SKAT has not yet established a reconciliation procedure for the declaration of dividend and reporting of dividend recipients for listed companies.

The amendments to the Reporting Order means that SKAT has access to knowledge about the dividend-receiving stockholders immediately after the companies' declaration of dividend. However, it has not been possible to use this data fully for control purposes in connection with subsequent claims for refunds of dividend tax, as part of the data is at sum total level. In the period after the amendments to the Reporting Order, SKAT has not worked on making changes to its data structure, etc.

The most important initiatives and pieces of legislation in the period 2007-2015 are shown in Appendix 1.

Figure 18.1 Correlations between declaration and reporting of dividend before and after amendments to the Reporting Order.

| Declaration and reporting of dividend before amendments to the Reporting Order | | | | | | | |
|---|---|---|---|---|---|---|---|
| Declaration of dividend and statement thereof, | | | | | Reporting of the | | |
| | | | | | individual dividend recipients for | | |
| e.g. DKK 10 million, | | | | | a total of DKK 10 million takes place on | | |
| on 03/01 20x1 | | | | | 01/20 20x2, i.e. the year after | | |
| without distribution on | | | | | the dividend was distributed | | |
| dividend recipients | | | | | | | |
| 03/01 20x1 | 03/15 20x1 | | | | 01/20 20x2 | | |
| | | | | | | | » |
| | | | | | | | » |
| | 03/15 20x1-01/20 20x2 | | | | | | |
| | SKAT receives claims for refund of dividend tax. | | | | | | |
| | SKAT cannot reconcile claims with | | | | | | |
| | dividend recipients. | | | | | | |
| | 1 | | | | | | |
| | The case processing time is under pressure from provisions | | | | | | |
| | in the Danish Interest on Overdue Payments Act on 30 days'/6 months' deadline. | | | | | | » |
| | | | | | From 01/20 20x2, it has become possible to reconcile | | |
| | | | | | claims for refund of | | |
| | | | | | dividend tax with dividend recipients | | |
| **Declaration and reporting of dividend after amendments to the Reporting Order** | | | | | | | |
| Declaration of dividend and statement thereof, | | | | | | | |
| e.g. DKK 10 million, and reporting of the | | | | | | | |
| individual dividend recipients | | | | | | | |
| of the DKK 10 million | | | | | | | |
| on 03/01 20x1 | | | | | | | |
| 03/01 20x1 | 03/15 20x1 | | | | | | |
| | | | | | | | » |
| | | | | | | | » |

Confidential Pursuant to Protective Order    SKAT_MDL_001_0075835_T

**TRANSLATION**

| | 03/15 20x1- | | | | | | |
|---|---|---|---|---|---|---|---|
| | SKAT receives claims for refund of dividend tax. | | | | | | |
| | | | | | | | |
| | SKAT can reconcile the claims with dividend recipients. | | | | | | |
| | | | | | | | |
| | The case processing time is still under pressure due to provisions in the Danish Interest on Overdue Payments Act on 30 days'/6 months' deadline. | | | | | | |

**Figure 19.1**

Confidential Pursuant to Protective Order
SKAT_MDL_001_0075835_T

TRANSLATION

## 19.1 Interim conclusion

In the period 2007-2015, SKAT's administration has regularly pointed out to the Department of the Ministry of Taxation a number of irregularities in the administrative processes as well as the need for amendments to executive orders and acts relating to dividend tax – especially so that it is ensured that declaration and reporting of dividend take place concurrently. The Department has prepared a draft bill and draft executive orders as a follow-up on this. In 2009, the Danish Parliament (Folketinget) passed an amendment to the Danish Tax Control Act which provided statutory authority for ensuring that the declaration and reporting of dividend take place concurrently, thus allowing for better control of dividend tax refunds.

This statutory authority was exercised in Reporting Orders in 2011 and 2012 for unlisted and listed stocks, respectively. The amendments to the Reporting Orders had effect for the distribution of dividend for unlisted stocks as from January 1, 2012 and for listed stocks as from January 1, 2013. A draft bill and draft executive orders were submitted to the Minister for Taxation. In these submissions, an account was given of the problems with non-concurrence between declaration and reporting of dividend. In the period after the amendments to the Reporting Order, SKAT has not worked on making changes to its data structure, nor has SKAT established reconciliation between declaration of dividend and reporting of dividend recipients for listed companies.

Confidential Pursuant to Protective Order
SKAT_MDL_001_0075835_T

TRANSLATION

# 20. Proposal for future administration

**Current basis**

This reports highlights that the built-in internal controls in the disbursement routines have been weak. The disbursement control has primarily included an assessment and checking of documents received from the refund-applying stockholders or their representatives. The disbursement control has not included an assessment of whether the prerequisite for disbursement of dividend refund has been met:

- Is the refund applicant a stockholder in the company for which a refund of withheld dividend tax is applied?

- Do various refund-applying "agents" represent actual stockholders?

- Has dividend tax been withheld and paid prior to the refund application?

**Effective controls in future procedures**

It is a prerequisite that the future procedures and the built-in controls for these procedures must be designed so that the risk of making incorrect disbursements is reduced to the greatest possible extent. Internal controls must therefore be designed which can effectively reduce the following risk:

> The risk of accepting and approving refund claims which are not related to a specific stockholder relationship and to prior dividend withholding and dividend distribution.

Effective internal controls can only be implemented if it is possible to use information about the dividend-receiving stockholders effectively. Earlier in this report, it has been described that the dividend-paying company must both declare the dividend distributed to SKAT and report the dividend recipients to SKAT. On the face of it, it should thus be relatively simple to verify in the processing of the refund claim whether there has been a prior dividend distribution. The relevant data to be used to perform this control should be in SKAT's possession.

In many cases, however, SKAT will not be in possession of data concerning the individual dividend recipients (stockholders). If stockholders subject to a foreign tax liability have placed the stocks in a so-called omnibus custody account, SKAT's systems will only contain information about the custodian in question as well as information about the stocks managed in the omnibus custody account. Furthermore, in accordance with the established bank schemes, dividend distributed is not registered in the dividend systems. Instead, a direct disbursement is made to the refund applicant.

Confidential Pursuant to Protective Order

SKAT_MDL_001_0075835_T

TRANSLATION

**Establishment of a complete data basis**
A complete data basis should be established in SKAT's dividend systems (3S, eKapital). Data should, moreover, be available in a form that facilitates the disbursement control. There must be accordance between the dividend recipient in SKAT's systems (eKapital) and the refund claims received. The eKapital system does not necessarily contain information about the individual stockholder, but the refund claims received (at stockholder level or custody account level) must represent the custodians/stockholders registered in eKapital.

**Preparation of disbursement basis**
In accordance with the current practice, the dividend recipient prepares a refund claim with the relevant documents enclosed. A change of practice may be considered, so that SKAT calculates the refund for the individual dividend recipients based on its own registrations. This will enable SKAT to control the disbursement process to a higher degree.

## 20.1 Interim conclusion

In connection with the establishment of a future system for effective administration of dividend tax refunds, registrations of the individual dividend recipients should constitute the key element in the design of an effective control system. The internal control must be supported by the IT solution. It should only be possible to register dividend refunds in SKAT's dividend systems if the refund applicant in question is already registered as dividend recipient.

Confidential Pursuant to Protective Order    SKAT_MDL_001_0075835_T

**TRANSLATION**

# 21.   List of appendices

## Appendix 1 Timeline for initiatives and legislation

**Timeline for initiatives and legislation**

|  |  |  |  |  |  |  |  |  |
|--|--|--|--|--|--|--|--|--|
|  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |

Confidential Pursuant to Protective Order

SKAT_MDL_001_0075835_T

**TRANSLATION**

|  |  |  |  |  |  |  |  |
|--|--|--|--|--|--|--|--|
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |

Confidential Pursuant to Protective Order

SKAT_MDL_001_0075835_T

**TRANSLATION**

|  |  |  |  |  |  |  |  |  |
|---|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |

Confidential Pursuant to Protective Order
SKAT_MDL_001_0075835_T

**TRANSLATION**

|  |  |  |  |  |  |  |  |
|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |

Confidential Pursuant to Protective Order
SKAT_MDL_001_0075835_T

**TRANSLATION**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

Confidential Pursuant to Protective Order                                    SKAT_MDL_001_0075835_T

**TRANSLATION**

## Appendix 2A Overview of cases in the Ministry of Taxation

Reference no.: 15-2486327

At the end of August 2015, Internal Audit requested an investigation of SKAT's dividend tax administration. As shown in the Minister for Taxation's reply of September 15, 2015 to the Fiscal Affairs Committee regarding the general part of question 56, the investigation would also include a review of cases in the Ministry of Taxation (MoT) regarding refunds of dividend tax, including specific bills and submissions to the Minister for Taxation and the Permanent Secretary.

It should be noted in this connection that the reason for Internal Audit's investigation was a suspicion that large-scale economic crime had been committed against SKAT. It appears from the briefing from the Fiscal Affairs Committee (The Fiscal Affairs Committee 2014-15 (Second Session) SAU, General Part, Appendix 23) that there was seemingly a large network of companies which, based on fictitious stockholdings, had applied for refunds of withheld Danish dividend tax on the basis of falsified documentation submitted.

For use in this review, MoT conducted a search on cases and documents from mid-2007 to August 25, 2015. The search was not targeted specifically at the present case of fraud, but comprised a wide range of cases concerning administration of dividend tax refunds.

The search in the archive systems in MoT dates back to cases and documents from mid-2007, when SKAT contacted MoT based on a report prepared by SKAT on the administration of dividend tax refunds. The matters highlighted in the report include a potentially unfortunate interaction in the rules which may be of importance to the administration of dividend tax refunds. The search on cases and documents covers the period up to August 25, 2015, at which time the Fiscal Affairs Committee received information about the presumed fraud involving refund of dividend tax.

In specific terms, a number of keywords were chosen which were used to identify relevant cases and documents. A search was conducted in the various file systems covering the search period. The search criteria used to identify relevant cases and documents are stated in Appendix 1.

In the overview of cases and documents from MoT, a chronological account is given of the contents of the cases and documents identified. The overview thus does not show what has subsequently happened in SKAT regarding SKAT's responsibility for follow-up on legislation and executive orders.

Internal Audit's report from 2013 on refund of dividend and royalty tax for 2012 is not included in the overview as no case on this was found in the archiving systems in the period. The reason for this is that the relevant office in MoT only received the report from Internal Audit in a copy (Cc) in an email addressed to Rigsrevisionen (the Office of the Auditor General) and that the contents of the email gave the impression that it was forwarded for Rigsrevisionen's information and that the management had been informed directly by Internal Audit. However, this was not the case. A submission of the report would not have

Confidential Pursuant to Protective Order                                          SKAT_MDL_001_0075835_T

**TRANSLATION**

changed the fact that the responsibility for follow-up on the recommendations in the report lies with SKAT's management, which is responsible for following up on the reports from Internal Audit on SKAT's administration.

Confidential Pursuant to Protective Order

SKAT_MDL_001_0075835_T

As part of the follow-up on the case in MoT, it was, however, specified how the Ministry follows up on reports from Internal Audit.

In the overview of cases and documents, it is stated whether there were submissions to the Minister for Taxation and/or the Permanent Secretary in the case. It should be noted that MoT has contacted SKAT for a clarification of whether there have been submissions to the Minister for Taxation or the Permanent Secretary regarding refund of dividend tax in connection with the parallel search in the period. SKAT has stated that this does not appear to be the case.

Considering the short period of time that has been available to perform a search for cases and documents, including the subsequent handling, MoT must make a reservation that there may be cases or documents which have not been identified.

| Case | Comments |
|---|---|
| **1.**<br>*Case no.:*<br>*2007-351-0006*<br><br>Refund of Danish dividend tax in relation to taxpayers with limited tax liability. | This is a case which was created on the basis of a request from SKAT on administration of dividend tax refunds.<br><br>SKAT pointed out to MoT that there was an unfortunate interaction between the various deadlines in the rules on refund of Danish dividend tax withheld to natural and legal persons with limited tax liability in Denmark. The problem was raised in a report from May 2007, prepared by SKAT's "Group Task Force on Expedited Assessment." The problem was also mentioned in a memo of September 5, 2007, prepared by SKAT's dividend administration.<br><br>It should be noted that SKAT's report from May 2007 does not form part of the records in the case. However, the sub-conclusion of the report was described in a 13-page memo prepared by MoT, dated September 17, 2007.<br><br>The memo of September 17, 2007 does not appear to have been sent to SKAT. The conclusions of the memo of September 17, 2007 were, however, summarized in a three-page memo dated November 14, 2007. This memo was sent to SKAT, which is shown by an email dated August 26, 2008, at which time the memo was resent to SKAT in another context. The case also contains a number of memos prepared by SKAT on the above problem, all presumably dating from 2008.<br><br>SKAT points out in its letter to MoT that <u>declaration</u> of distributed dividend and payment of withheld dividend tax normally take place in the month following the adoption of dividend in the company with a statement of the size of the dividend, the amount of dividend tax, and identification of the stock, etc. The deadline for <u>reporting</u> of the dividend recipient's identity, the amount of dividend, and specification of the stock, etc. is January 20 of the year after the distribution. SKAT notes that as the refund claim must be dealt with within 30 days to avoid accrual of interest, SKAT may have to refund dividend tax without having information about the dividend recipient. |

Confidential Pursuant to Protective Order                    SKAT_MDL_001_0075835_T

**TRANSLATION**

Confidential Pursuant to Protective Order

| | |
|---|---|
| | It is therefore proposed that the deadlines for declaring and reporting be harmonized. SKAT thus proposes that the legislation be amended on this point.

In a memo dated November 14, 2007, MoT answered SKAT that a harmonization of the deadlines for declaration and reporting raised the question of administrative burdens for individuals and businesses, which meant that further analysis of the proposals was required. Instead, MoT suggested that the dividend administration should adjust the workflow in the area by applying (and changing) the current administrative rules.

MoT stated that SKAT should first and foremost not refund dividend tax before the tax had been paid. SKAT would thus be able to request that the applicant provide documentation of the original payment of dividend tax for which a refund application was submitted. Furthermore, the party claiming a refund of withheld Danish dividend tax had to be able to prove the claim. SKAT would be able to require that a claim for refund of dividend tax be accompanied by documentation and information showing that the recipient of the Danish dividend tax withheld was entitled to such a refund. Finally, SKAT could tighten its practice on accrual of interest, so that interest would not accrue until from the date on which SKAT has received certification showing that the applicant is the beneficial owner of the dividend in both civil law and tax law.

However, MoT stated that it was aware that the wish to harmonize the deadlines for declaration and reporting might in itself contribute to improving the dividend tax administration, and MoT subsequently drafted a bill on this; see case no. 2.

There do not seem to have been submissions to the Minister or the Permanent Secretary in the case. |
| **2.**
*Case no.:*
*2009-711-0030*

Bill no. L 201 – bill to amend the Danish Capital Gains Tax Act (Avancebeskatningsloven), the Danish Tax Control Act, the Danish Withholding Tax Act, the Danish Tax Assessment Act (Ligningsloven), and various other acts (simple | This is a case concerning the drafting of bill no. L 201 (parliamentary year 2008-2009). The bill was introduced on April 22, 2009 by the then Minister for Taxation. The bill was passed on May 28, 2009 (Danish Act no. 462 of June 12, 2009).

The bill passed contains a number of elements concerning withholding tax on dividends:

1. The Minister for Taxation is provided with statutory authority to lay down reporting deadlines deviating from the normal deadlines (section 9 A(5) of the Danish Tax Control Act).

2. In those cases in which the reporting entity (the dividend-paying company) has no knowledge of the identity of the dividend-receiving stockholder, the |

Confidential Pursuant to Protective Order                                          SKAT_MDL_001_0075835_T

**TRANSLATION**

| and effective control and less tax planning). | identity of the party receiving the disbursement must be reported (section 9 B(5), third sentence, of the Danish Tax Control Act). |
|---|---|

Confidential Pursuant to Protective Order

SKAT_MDL_001_0075835_T

3. The reporting obligation for custodians is changed so that the reporting obligation not only comprises listed stocks, but also unlisted stocks registered in a central securities depository.

Regarding the statutory authority to lay down different deadlines (see no. 1), it is stated in the explanatory notes to the bill that the idea is that the deadline for reporting of dividends from both the custodian and the dividend-paying company must be harmonized with the deadline for declaration and payment of the dividend tax. It is stated in the explanatory notes to the bill that the current different deadlines for declaration and reporting, respectively, prevent a reconciliation between the declarations and the reporting. Amendment no. 1 is thus a follow-up on the legislative wishes previously presented by SKAT; see case no. 1.

Regarding amendment no. 2, it is stated in the explanatory notes to the bill that the reporting must contribute to ensuring that the dividends are taxed and to improving SKAT's dividend tax administration.

The following also appears from the general explanatory notes to the bill:

"The reason for the January 20 reporting deadline is that the amounts are to be used for the tax assessment notice. However, SKAT refunds withheld dividend taxes of approximately DKK 1-2 billion each year to non-resident recipients as a result of dividend tax reductions under double taxation agreements (in 2008, however, the amount was only approx. DKK 750 million). In order to avoid accrual of interest on the refund amounts, the refund is generally disbursed within 30 days after SKAT has received a refund claim. The amendment will ensure that a reconciliation of the claim can be made with the declarations and reporting, respectively, in these refund cases.

Having the same deadline for declaration and reporting will also result in fewer errors in dividend taxes withheld, reporting, and declarations, as, in accordance with the bill, the dividend-paying company must handle the distribution, withholding, declaration, settlement, and reporting concurrently. Reporting in the month after the dividend distribution will also make it easier to correct errors in the registration of the company, errors in the classification of dividend-paying investment funds, and errors in withholding of dividend tax before the generation of the recipient's tax assessment notice and service letter for the taxpayers who do not receive a preprinted tax assessment notice."

Confidential Pursuant to Protective Order

SKAT_MDL_001_0075835_T

Amendments nos. 2 and 3 were incorporated into the draft bill submitted to the Minister for Taxation. The elements were included in the consultation round. The proposals reportedly come from SKAT, but there is no further information about this in the case.

Amendment no. 1 was submitted after the bill had been for external consultation, but before the introduction to the Danish Parliament. As mentioned above, this proposal originated from SKAT (see case no. 1) and the amendment was submitted separately to the Minister for Taxation, who approved, on March 30, 2009, that the amendment could be included in the bill.

According to the submission, the reason for including this amendment was that it would enable SKAT to further improve its dividend administration and that the deadlines applicable at the time prevented a reconciliation between declarations and reporting. In addition, it was mentioned that harmonization of the deadlines could reduce the number of errors.

In connection with the hearing of the bill in the Danish Parliament, amendment no. 1 was mentioned in a comment on an inquiry from the Danish Bankers Association (bill no. L 201 – Appendix 18). In the comments, the Minister mentions, among other observations, that the proposal will improve SKAT's dividend administration and result in fewer errors in the withholding of dividend tax, reporting, and declarations, as the dividend-paying company must handle this concurrently.

The answer to the Danish Parliament was submitted to the Minister for Taxation. It is mentioned that the Danish Bankers Association has stated that the proposal on harmonization of the deadlines for reporting of dividends with the deadlines for declaration would be onerous on the business sector and entail a risk of errors. It is stated in response to this that the proposal must be expected to entail some costs for the financial sector. However, the current costs are estimated to be limited. Furthermore, it is noted in the submission that MoT does not agree that the proposal will entail a greater risk of error, but that, on the contrary, the proposal will increase the possibility of discovering and correcting errors at an early stage and thus before the dividend recipients' tax assessment notices are to be generated. The Minister for Taxation approved the comment to the Danish Bankers Association on May 19, 2009.

It appears from the act that the Minister for Taxation sets the date of entry into force of amendments nos. 2 and 3. Amendments nos. 2 and 3 were subsequently put into force by Executive Order no. 1182 of December 9, 2009. The amendments are thus applicable to dividends reported for the 2010 calendar year and subsequent years.

Confidential Pursuant to Protective Order

SKAT_MDL_001_0075835_T

**TRANSLATION**

Confidential Pursuant to Protective Order

SKAT_MDL_001_0075835_T

| | |
|---|---|
| | Amendment no. 1, giving the Minister statutory authority to set other reporting deadlines, entered into force on June 14, 2009. The statutory authority was, however, only exercised later on; see case nos. 14 and 17. |
| **3.**<br><br>*Case no.:*<br>*2009-351-0023*<br><br>Proceeds from withholding tax on dividends. | This is a case in MoT which commenced in September 2009. The background of the case is that there was general focus on withholding taxes on dividends, including, in particular, on the calculation of the proceeds from the withholding taxes.<br><br>In connection with the case, MoT prepared a memo, in cooperation with SKAT, which includes a description of the proceeds from withholding taxes levied on non-residents. The memo shows that the net proceeds from withholding taxes are directly negative in some years. It is stressed that it cannot be ruled out that excess withholding tax is refunded from both the refund scheme and the VP scheme, in which the proceeds appear to be very low. The analysis covers the period 2006-2008.<br><br>In response to this, the dividend administration stated that they had, in effect, been unable to check that taxpayers applying for refund had not already received a refund.<br><br>The case was submitted to the Permanent Secretary in a submission of October 5, 2009. It appears from the submission that SKAT's IT system Business Objects should be included as a more active instrument in the action strategy, which, however, would require that SKAT prioritizes control and reconciliation of data in Business Objects.<br><br>It was also recommended that a number of issues concerning the refund scheme be examined further by Internal Audit.<br><br>The Permanent Secretary approved the recommendations on October 9, 2009. The case does not seem to have been submitted to the Minister for Taxation.<br><br>On October 21, 2009, Internal Audit was approached by the Permanent Secretary, who requested an audit of the refund scheme.<br><br>The request was the basis for Internal Audit's report from 2010, which was submitted to Finance and discussed in Production Forum, which, as follow-up on the report, decided to appoint a working group to submit concrete proposals for the handling of withholding tax. The report was also discussed in Legal Forum. Reference is made to case no. 7. |

Confidential Pursuant to Protective Order

SKAT_MDL_001_0075835_T

| | |
|---|---|
| **4.**<br>*Case no.:*<br>*2009-351-0026*<br>*2009-352-0027*<br><br>The capital funds complex – two early warnings regarding withholding tax in group affiliations and collection thereof. | This is a case in MoT which was set up based on receipt of two early warnings from SKAT. The two early warnings concern withholding tax on interest and collection thereof.<br><br>In the so-called capital funds complex, SKAT had become aware of a problem regarding liability for withholding taxes, which triggered two early warnings received in MoT on October 16 and 29, 2009.<br><br>Both these cases concern specific issues in which the problem is as follows:<br><br>• The management company in a Danish group pays interest to its parent company in a "tax haven" through two Swedish companies. They do not withhold tax on the interest payment even though the parent company in the tax haven is, in SKAT's view, the beneficial owner.<br>• Loss resulting from a deduction of interest in the paying Danish company has been fully or partly utilized by other Danish companies in the group through joint taxation.<br>• After a few years, the management company sells the stocks in the Danish subsidiaries internally in the group, after which the payment received is distributed/used to repay the loan.<br>• The company has subsequently been completely stripped of assets and "sidelined" in the group, but it still forms part of the joint taxation with the group's other Danish companies. This means that the company's remaining losses can be used by the other companies.<br>• The company probably cannot pay the interest withholding tax which should have been withheld.<br><br>In the case, there is a memo of December 1, 2009 from MoT regarding the two early warnings. The memo was submitted to the Permanent Secretary, who approved on December 3, 2009 that the memo could be sent to the Group Task Force on Law and Process in accordance with the guidelines applicable at the time on handling of early warnings.<br><br>In the memo, MoT assessed that the most effective solution was to reintroduce general joint and several liability in joint taxation relations and to extend the joint and several liability to comprise withholding taxes on dividends and interest. But it was found that it was difficult to justify such a far-reaching measure when it was possible to implement more targeted, albeit not quite as effective, changes.<br><br>In the submission, it is assessed that a decision-making basis should be prepared – in collaboration with SKAT Large Businesses – for the introduction of legislation under which deductions of interest, etc. can be rejected if withholding tax has mistakenly not been withheld. |

Confidential Pursuant to Protective Order

SKAT_MDL_001_0075835_T

| | |
|---|---|
| | It is also proposed that experience from the capital funds complex concerning withholding tax on interest and dividends be included in the considerations.<br><br>Joint and several liability in companies with joint taxation was introduced later on; see case no. 15.<br><br>There do not seem to have been submissions to the Minister or the Permanent Secretary in the case. |
| **5.**<br>*Case no.:*<br>*2010- 351-0030/*<br>*14-2117449* – TRACE<br><br>and<br><br>*2011- 620-0026/*<br>*13-5775296* – FATCA. | The cases concern the TRACE and FATCA projects. The TRACE (Treaty Relief and Compliance Enhancement) project is an initiative anchored internationally in OECD.<br><br>The cases originate from the period in which MoT and SKAT's headquarters were merged into one unit (the Group Center). The Group Center was managed by an Executive Board.<br><br>It appears from a submission to the Permanent Secretary/Executive Board dated February 5, 2010 that the project concerns the establishment of the design of a system in which recipients of dividends from other countries may have net withholding tax withheld on dividends on receipt thereof and can thus avoid having to apply for a withholding tax refund under the double taxation agreements in return for their bank undertaking to provide automated information, once a year, about the taxpayer and the amounts received to both the country of source and the country of residence. The memo also states that Denmark had a particularly strong interest in the project, as the Danish scheme for refund of withholding tax, including the special scheme for withholding of net withholding tax in relation to certain selected countries, did not appear to function satisfactorily. Net withholding tax means that the dividend-paying company withholds only the amount to be taxed in accordance with the relevant double taxation agreement.<br><br>The submission was presented to the Executive Board at a board meeting held on February 11, 2010.<br><br>The project was completed and approved by CFA (OECD's Committee on Fiscal Affairs) in 2013, but it was overtaken by FATCA and thus never brought into use.<br><br>FATCA (Foreign Account Tax Compliance) is a bilateral agreement drawn up on the initiative of the US, under which new provisions on the obligations of foreign financial operators were adopted in March 2010. FATCA took effect from January 1, 2012. |

Confidential Pursuant to Protective Order

| | FATCA entails that all non-US-based banks and other financial operators which receive interest, dividends, or other financial income from the US are covered by a comprehensive agreement with the IRS (the US Inland Revenue Service) on reporting of capital and return on capital for all customers which are US taxpayers or which are companies or other entities in which US taxpayers own more than 10%. If the agreement is entered into, the banks must be made subject to an obligation on external due diligence. If the agreement is not entered into, 30% withholding tax must be deducted at source on all capital gains from sources in the US to non-US operators. This arrangement will force all operators to enter into agreements or cease their US activities.<br><br>There do not seem to have been submissions to the Minister in the case. |
|---|---|
| **6.**<br>*Case no.:*<br>*2010-080-0051*<br><br>Service to the Minister, SAU, general part, questions 541-546 on reporting of dividend tax. | This is a case in MoT regarding a number of parliamentary questions on reporting of dividend tax.<br><br>In 2010, SKAT had problems with the implementation of a new version of E-tax for businesses. On June 7, 2010, a number of SAU questions regarding reporting of dividend tax (SAU, general part, 541-546) were submitted. The questions were answered on June 30, 2010.<br><br>In SAU, general part, question 546, a question was raised about how many full-time equivalents SKAT needed to use for manual processing of the reporting of dividends and dividend tax via submission of returns on paper in 2010 as a result of the failure of SKAT's E-tax dividend tax system to work in the first half of 2010.<br><br>The answer was that the absence of an E-tax solution for dividend tax returns in the first half of 2010 meant additional work corresponding to approximately two full-time equivalents. This should be compared with the assessment that 60% of the total number of dividend declarations were received in the first half of 2010.<br><br>The answers to SAU were submitted to the then Minister for Taxation. In accordance with the submission, information was provided that there had been problems with the electronic reporting of dividends, but that reporting had not been prevented outright. The Minister for Taxation signed the submission on June 29, 2010. |
| **7.**<br>Case no.:<br>2010-009-0036<br><br>Legal Forum. | This is a case in MoT on the handling of certain cases in Legal Forum.<br><br>Legal Forum existed in the period 2010-2012, in which MoT and SKAT's headquarters were merged into one unit (the Group |

Confidential Pursuant to Protective Order

SKAT_MDL_001_0075835_T

**TRANSLATION**

| | Center). A number of cases concerning SKAT's administration were dealt with in Legal Forum in this period. |
|---|---|

Confidential Pursuant to Protective Order

SKAT_MDL_001_0075835_T

At Legal Forum's meeting on March 2, 2010, Legal Forum was briefed on the TRACE project. It was agreed that the project was to be manned with relevant persons.

Legal Forum held a meeting on September 7, 2010. It appears from item 10 on the agenda that Internal Audit's report on the withholding of dividend tax for non-residents from 2010 was discussed. The annotated agenda shows that Internal Audit's report had previously been discussed in Production Forum. In the period in question, it was Production Forum's task to discuss, plan, and organize the day-to-day operations and production in SKAT. It appears from the annotated agenda that Production Forum had decided to appoint a working group in SKAT tasked with presenting specific proposals on how dividend withholding tax was to be handled going forward. Legal Forum was requested to comment on Internal Audit's report.

In a submission of September 15, 2010 to the Deputy Director General of Legal Affairs, who was the Chairman of Legal Forum, it was recommended that Legal Forum report back to Finance, which, among other responsibilities, handles the coordination in relation to Rigsrevisionen and Internal Audit, that Legal Forum support Internal Audit's recommendations in the audit report concerning withholding tax for non-residents, and that Legal Forum find that the situation is critical and that the task should be given the highest possible priority. The submission was approved by the Deputy Director General of Legal Affairs on September 15, 2010.

The minutes of decisions from the meeting held on September 28, 2010 in Legal Forum show that it was decided to support Internal Audit's recommendations and that the task should be prioritized. It appears from the minutes that Production Forum had decided to appoint a steering committee/working group to follow up on the report, in which also Law & Economics was invited to participate.

At Legal Forum's meeting on August 30, 2011, Legal Forum was briefed on the follow-up on the audit report on the handling of dividend tax. At the meeting, Legal Forum was briefed on the report by the working group appointed based on the report from Internal Audit from 2010.

Overall, the working group recommended that work be continued on a proposal to amend section 66 of the Danish Withholding Tax Act and the resulting process descriptions and any locking of fields.

The working group proposed that, instead of declaration and payment in the month after the distribution and reporting of dividend recipients by January 20 of the following year, the

Confidential Pursuant to Protective Order                    SKAT_MDL_001_0075835_T

**TRANSLATION**

| | |
|---|---|
| | reporting of dividend recipients take place at the time of declaration. |

Confidential Pursuant to Protective Order

SKAT_MDL_001_0075835_T

**TRANSLATION**

The working group also proposed that section 66 of the Danish Withholding Tax Act be amended so that the dividend declarations would be abolished. Instead, the dividend tax payable by the company was to be stated by adding up the amounts reported. In addition, it was proposed to create statutory authority for requiring that companies which do not distribute dividends submit a 0 in the reporting/declaration, as it would otherwise not be possible to have an overview of companies, etc. which can distribute dividends.

It was also stated that there is no statutory authority for holding the reporting party liable for failure to report or incorrect reporting of dividend recipients. It was stated that such statutory authority should be introduced.

Finally, it was proposed to introduce compulsory electronic reporting.

It appears from the minutes of decisions from the meeting in Legal Forum held on August 30, 2011 that Legal Forum, just like Production Forum, supported the proposal in the memo and would monitor the work on implementing the proposals.

The proposals from the working group were specifically implemented by way of the following initiatives:

The statutory authority, introduced by Danish Act no. 462 of June 12, 2009, to introduce reporting of dividends in the month after the distribution (see case no. 2) was exercised in an amendment to the Reporting Order on two occasions; see case no. 14 regarding unlisted stocks and case no. 17 regarding listed stocks. The two executive orders took effect as from January 1, 2012 and January 1, 2013.

Dividend declaration for unlisted stocks was abolished by Danish Act no. 1354 of December 21, 2012; see case no. 16. However, it was maintained for listed stocks, as listed companies would otherwise not be able to influence the calculation of the dividend tax payable by them in connection with, for example, incorrect reporting from the custodians.

Regarding the proposal for 0 reporting, there is a duty to provide information, at SKAT's request, about whether the company has distributed dividend. It was thus found that there was less need for 0 reporting in the event of no dividend distribution.

Confidential Pursuant to Protective Order                    SKAT_MDL_001_0075835_T

TRANSLATION

| | |
|---|---|
| | Regarding the statutory authority to hold the reporting party liable for non-reporting or incorrect reporting, the view was that such authority already existed under section 14 of the Danish Tax Control Act.<br><br>Compulsory electronic reporting has been introduced; see case no. 18.<br><br>There do not seem to have been submissions to the Minister or the Permanent Secretary in the case. |
| **8.**<br>*Case no.:*<br>*2010-701-0058*<br><br>Meeting of the External Liaison Committee on December 1, 2010. | This is a case in MoT concerning preparation of material for a meeting in MoT's External Liaison Committee on December 1, 2010. The External Liaison Committee served as a liaison body between the Ministry and a number of its stakeholders. The committee discussed, among other items, the need for future legislative initiatives and evaluated the effects of legislation introduced.<br><br>The case includes minutes of the meeting held on December 1, 2010. It appears from item 8.a. of the minutes under topics raised by the Danish Bankers Association that the Danish Bankers Association wanted a status on the work regarding dividends, etc.<br><br>The Danish Bankers Association requested a status on and schedule for the OECD work as they would like to see the scheme with net withholding of withholding taxes on dividends extended to omnibus custody accounts.<br><br>At the meeting, MoT explained that the cooperation between SKAT and the banks had been discontinued, as it had been overtaken by OECD's TRACE project; see case no. 5. It was expected that there would be preliminary reporting to CFA (OECD's Committee on Fiscal Affairs) in mid-2011.<br><br>It was also stated that a working group in SKAT was looking at how to optimize the processes in connection with the withholding of withholding taxes.<br><br>The minutes were submitted to the Permanent Secretary, who approved the minutes on December 8, 2010.<br>The case also includes a memo on this matter, prepared by the relevant office in MoT. This memo is included in the general briefing of the Permanent Secretary regarding the meeting on December 1, 2010. The memo, and thus the briefing, includes an account of the schedule in the TRACE project. |
| **9.**<br>*Case no.:*<br>*2012-462-0189* | This is a case in MoT concerning the preparation of a control signal which further describes the administration of the special scheme for permission for net settlement of withholding tax for certain principal stockholders. |

Confidential Pursuant to Protective Order

SKAT_MDL_001_0075835_T

**TRANSLATION**

| | |
|---|---|
| | |

Confidential Pursuant to Protective Order                                        SKAT_MDL_001_0075835_T

| | |
|---|---|
| Control signal for permission for net withholding of withholding tax on dividends. | SKAT contacted MoT (the Group Center) in September 2010 because SKAT wanted confirmation that there was statutory authority in Executive Order no. 1442 of December 20, 2005 on the Withholding of Dividend Tax and Royalty Tax (Bekendtgørelse om indeholdelse af udbytteskat og royaltyskat) to grant individual permissions to companies which do not distribute dividends through VP to withhold tax at the rate applicable under a double taxation agreement (net settlement).

At a meeting with SKAT held on September 22, 2010, MoT informed SKAT that the executive order provided such statutory authority. SKAT accounted for the previous handling of these permissions, among other things. It was stated that, at the time in question, approximately 150 permissions had been granted. No electronic system had been established for the handling of these cases, and it was highly uncertain whether the permissions had been granted in accordance with uniform guidelines.

On September 28, 2010, MoT wrote to SKAT that it was essential that a permission be linked to a number of conditions (e.g. time limit and documentation requirements) in order to avoid abuse. Moreover, the conditions for granting a permission for net settlement had to be uniform to create clarity for both SKAT and the taxpayer. Finally, it was crucial that the permissions be registered in a system which could handle the relevant data, so that it could be identified at any given time who had received a permission, etc.

It was further noted that, because of the need to create complete clarity about the future handling of the permission scheme, MoT was of the opinion that SKAT had to shelve all future permissions for the time being, including requests for renewals of permissions already granted. Finally, the need to find an operational solution to the above was recognized, and MoT would therefore examine further on which basis any future permissions were to be granted.

On June 8, 2011, the Institute of State Authorized Public Accountants in Denmark (FSR) raised the question of permissions for net withholding at a meeting in the External Liaison Committee; see case no. 12.

On October 4, 2011, an employee in SKAT's dividend administration contacted MoT and described a number of problems regarding refund of dividends, including the question of permission for net withholding.

On November 1, 2011, MoT answered that it had discussed the scheme under which personal principal stockholders had had the option of net withholding by agreement with the company. According to information from the officers with system |

Confidential Pursuant to Protective Order

SKAT_MDL_001_0075835_T

**TRANSLATION**

| | responsibility in SKAT, it was possible to create a sensible electronic registration solution. |
|---|---|

Confidential Pursuant to Protective Order

SKAT_MDL_001_0075835_T

**TRANSLATION**

|  | MoT would therefore shortly prepare a set of terms for granting such permissions.<br><br>A draft for the permission scheme for net withholding of dividend tax was submitted for external consultation via the Special External Liaison Committee on January 23, 2012. The new permission scheme for net withholding was published on February 23, 2012 as an MoT announcement – SKM2012.117SKAT.<br><br>There do not seem to have been submissions to the Minister or the Permanent Secretary in the case. |
|---|---|
| **10.**<br>Case no. 2011-038-0077<br><br>Audit Committee meeting on March 31, 2011. | This concerns a case in MoT regarding a meeting in the Audit Committee held on March 31, 2011. The Audit Committee existed in the period 2010-2012, in which MoT and SKAT's headquarters were merged into one unit (the Group Center).<br><br>One of the items on the agenda at the meeting is follow-up on critical reports. This includes discussion of a status report on the working group in SKAT, which was to present proposals on how to handle the question of withholding tax.<br><br>The status report shows that Internal Audit submitted a critical report on dividend tax in 2010. It also appears that SKAT subsequently enjoined on the Danish Bankers Association the rules applicable to tax exemption card marking and that SKAT was participating in an OECD IT project aimed at establishing a system with administration of the withholding of dividend tax for non-residents by the banks. In addition, a working group had been appointed which was to present proposals before June 30, 2011 on administrative and system changes that could solve the unresolved issues raised in the report. Production Forum adopted the status report submitted.<br><br>It appears from an email dated March 23, 2011 that the item on the agenda concerning the status report was approved by the Permanent Secretary.<br><br>In the case, there is a submission to the Permanent Secretary regarding a brief to be used at the meeting. The brief includes the status report. The submission does not appear to have been signed by the Permanent Secretary.<br><br>The minutes from the meeting, dated April 1, 2011, show that the Permanent Secretary participated in the meeting and that a status on the working group was given. |
| **11.**<br>Case no. 2010-038-059 | In this case, a submission is made to the Permanent Secretary with a status on the follow-up on Internal Audit's reports for the 2010 fiscal year, including Internal Audit's report on dividend tax from 2010. |

Confidential Pursuant to Protective Order                    SKAT_MDL_001_0075835_T

**TRANSLATION**

Confidential Pursuant to Protective Order

**TRANSLATION**

| | |
|---|---|
| Follow-up on Internal Audit's reports for the 2010 fiscal year | The material was also to be used for an Audit Committee meeting on June 23, 2011.<br><br>It appears from the submission that it was recommended that the follow-up on the item on dividend tax be concluded after the status given at the meeting held on March 31, 2011; see case no. 10.<br><br>The submission was signed by the Permanent Secretary. |
| **12.**<br>Case no. 2011-701-0070<br><br>Meeting in the External Liaison Committee on June 8, 2011. | This is a case in MoT concerning preparation of material for a meeting in MoT's External Liaison Committee on June 8, 2011.<br><br>The case includes a memo which is presumably a briefing of the Permanent Secretary regarding a meeting.<br><br>It appears from item 3.c. of the minutes of the meeting held on June 8, 2011, under topics raised by the Institute of State Authorized Public Accountants in Denmark (FSR), that FSR wanted a clarification of why SKAT no longer complied with Executive Order no. 1442 of December 20, 2005. The executive order includes the statutory authority for the VP scheme, i.e. Danish stocks held in custody in Denmark which are owned by natural persons with limited tax liability in 12 foreign states (the US, Canada, and ten European states), under which net withholding can take place and individual permissions can be granted for net withholding for foreign principal stockholders.<br><br>MoT replied that the executive order obviously had to be complied with. The scheme with VP Securities (the VP scheme) was unchanged. In relation to the scheme with individual permissions for net withholdings, which was shelved temporarily, work was being done to arrive at a future solution for the administration of this. This was subsequently done via the preparation of a control signal on administration of the scheme for net settlement; see case no. 9.<br><br>The Permanent Secretary did not participate in the meeting in question. |

Confidential Pursuant to Protective Order                                            SKAT_MDL_001_0075835_T

| 13. | This case is an "omnibus case" of inquiries from SKAT and external consultants, etc. covering the period 2010-2012, which was the period in which MoT and SKAT's headquarters were merged into one unit (the Group Center). The case does not comprise submissions to the Permanent Secretary or the Minister for Taxation. |
|---|---|
| *Case no.:* *2010-490-0016/* *10-0214448* Omnibus case on inquiries from SKAT and external consultants to MoT/the Group Center concerning withholding tax on dividends. | The inquiries include matters pertaining to documentation requirements in specific cases, the interpretation of legal rules, qualification of foreign state entities, i.e. state-owned companies, and whether they have limited tax liability in Denmark, applications for refund of withholding tax from pension funds and investment institutions, omnibus custody accounts, and the flow issue, including who is the beneficial owner of dividends distributed and thus entitled to a refund. |
| | One of the inquiries in the omnibus case is dated October 4, 2011, and comes from an employee in SKAT's dividend administration. |
| | MoT's reply included the observation that it was not currently worthwhile to extend the VP scheme, as intensive work was being done on finding a solution in OECD regarding TRACE. Concurrently, there was cooperation with the Nordic countries aimed at finding a withholding tax model. |
| | MoT noted in its reply that the scheme under which personal principal stockholders could agree on net withholding with the company had been discussed in MoT. According to information provided by the officers responsible for the SAP system in SKAT, it was possible to create a sensible electronic registration solution. MoT promised that it would shortly prepare a set of terms for granting such permissions. It could not be said with certainty when the permission system could be resumed, but that it should be ready soon, however, depending on the technical challenges with the system. See also case no. 9. |
| | MoT also answered that, according to section A.A.12.3 of the process guidelines, SKAT must pay interest on tax refunds, etc. when the refund is made on behalf of the State. The interest on the refund amount was based on the Danish Interest on Overdue Payments Act as there were no special rules on accrual of interest in other legislation. |
| | Accrual of interest on refunded taxes for taxpayers with limited tax liability did not appear to have been regulated in the Danish Withholding Tax Act or the Danish Corporation Tax Act (Selskabsskatteloven), including executive orders pertaining to the two acts. |

Confidential Pursuant to Protective Order                                    SKAT_MDL_001_0075835_T

| | This meant that the provisions of the Danish Interest on Overdue Payments Act were applicable to the handling of cases on refund of dividend tax withheld. |
|---|---|
| | According to the rules, interest was only payable from 30 days after SKAT had received the refund claim. The interest rate was the official lending rate of Danmarks Nationalbank, the Danish central bank, on January 1 and on July 1 in the year in question with a surcharge of 7%. |
| | In accordance with section 3(3) of the Danish Interest on Overdue Payments Act, interest was payable from 30 days after the day on which the debtor was able to obtain the information regarded as necessary to assess the legitimacy and size of the claim. |
| | Based on the above provision, MoT was of the opinion that it was possible to postpone/suspend the 30-day rule, i.e. the time at which interest had to be added, if SKAT found and documented that it was necessary to obtain further information in order to assess the legitimacy of the claim. According to the reply, this was especially relevant in situations in which there was reason to ask the applicant whether the applicant was the rightful owner. The rules on accrual of interest were subsequently amended; see case no. 15. |
| | There do not seem to have been submissions to the Minister or the Permanent Secretary in the case. |
| **14.**<br>*Case no.:*<br>*2011-712-0082 /*<br>*2011-712-0083*<br><br>Amendment of the Executive Order on Reporting Obligations, etc. | This concerns a case on amendment of the Executive Order on Reporting Obligations, etc. (the Reporting Order) under the Danish Tax Control Act. The new executive order was signed on December 15, 2011 by the then Minister for Taxation (Executive Order no. 1315 of December 15, 2011). |
| | By Danish Act no. 462 of June 12, 2009 (bill no. L 201, parliamentary year 2008-2009), the Minister for Taxation was provided with statutory authority to lay down reporting deadlines deviating from the normal deadlines. The statutory authority was inserted in section 9 A(5) of the Danish Tax Control Act and exercised in the new Reporting Order. |
| | In the executive order, the statutory authority was exercised to stipulate that reporting on dividends under section 9 B(2) of the Danish Tax Control Act (unlisted stocks which are not registered in a central securities depository) must, as a general rule, be made no later than in the month after the adoption or decision to distribute or credit the dividend. |
| | It appears from the submission in connection with the external consultation round for the executive order that, in accordance with the previous rules, companies which are not admitted to trading on a regulated market and which are not registered in a central securities depository (unlisted stocks) were to report the |

Confidential Pursuant to Protective Order    SKAT_MDL_001_0075835_T

**TRANSLATION**

|  | dividend and the dividend tax withheld in the month following the dividend distribution. |
|---|---|

Confidential Pursuant to Protective Order                    SKAT_MDL_001_0075835_T

**TRANSLATION**

In addition, they were to report the identity of the individual dividend recipients and the dividend received by the individual recipient no later than on January 20 of the year after the dividend distribution.

If the reporting was made concurrently with the declaration, this would make it possible for SKAT to check more quickly whether the correct dividend tax has been withheld and paid. It would also make it easier for SKAT to process claims from non-residents for refund of dividend tax withheld based on the reporting of the identity of the dividend recipients. In order to ensure reporting by these unlisted companies concurrently with their declarations, reporting before the expiry of the declaration deadline was made compulsory. This means that the reporting and declaration deadlines could be harmonized in the long term.

The executive order was applicable to the reporting of distributions adopted or decided on or after January 1, 2012.

A draft executive order was submitted to the then Minister for Taxation, who, on November 29, 2011, approved that the executive order could be sent for external consultation. The element concerning reporting of dividend tax was specifically mentioned in connection with the submission. It was mentioned that the executive order was only changed for unlisted stocks, but that work was being done to find a solution for listed stocks. However, it was mentioned that there would be a need for a legislative amendment in this connection.

The executive order was also submitted to the then Minister for Taxation for signing after the external consultation. In connection with the submission, it was mentioned that the Confederation of Danish Industry (DI) had made a comment on the deadline for payment of dividend tax for listed companies. However, it was also mentioned that this comment concerned the legislation and not the executive orders, which, as mentioned, only concerned amendments to the rules for unlisted companies. However, it was noted that the matter would be examined further.

Based on an employee's memory, it must be assumed that the reason why the statutory authority was only exercised in 2011 is that the IT support in SKAT in respect of the expedited declarations was to be incorporated in a system that was only expected to be ready in 2011. However, this does not appear from documents or other annotations in the case.

Confidential Pursuant to Protective Order                                      SKAT_MDL_001_0075835_T

**TRANSLATION**

| | |
|---|---|
| | The reason why the statutory authority was only exercised for unlisted companies is that three objections from the Danish Bankers Association were being considered:<br><br>Firstly, the reporting for listed companies is handled by the custodians responsible for the account with VP Securities (VP) in which the stocks in question are entered. The custodian does not necessarily know the declaration deadline for the dividend-paying company. The declaration deadline is the same as the deadline for reporting A-tax to eIndkomst. Companies with few employees thus have the 10th of the month after the distribution as their deadline, while the deadline for companies with more employees is the last business day of the month following the month of distribution.<br><br>Secondly, the reporting deadline would be very short if distribution is made at the end of a month and reporting must take place already on the 10th of the following month. As distributions are often made in the spring, the problems with a short deadline may increase further, especially if Easter falls in the period between the distribution and the reporting deadline.<br><br>Thirdly, one of the ideas behind a harmonization of the declaration and reporting deadlines was that the declaration could be abolished, as it can be formed by adding up the amount reported. However, this would mean that the dividend-paying company will be bound by the custodians' reporting in relation to the settlement of dividend tax. The Danish Bankers Association regarded this as unreasonable for both the custodians and the companies.<br><br>There was therefore a need for further reflections in relation to listed companies.<br><br>Harmonization of the declaration and reporting deadlines for unlisted stocks was implemented by Executive Order no. 1123 of November 30, 2012; see case no. 17. |
| **15.**<br>*Case no.:*<br>2011-411-0044<br><br>Bill no. L 173 – bill to amend the Danish Corporation Tax Act, the Danish Withholding Tax Act, the Danish Tax Control Act and various other acts (strengthening of actions against zero tax companies, calculation of income in a permanent establishment, and openness about | This is a case concerning the drafting of bill no. L 173 (parliamentary year 2011-2012). The bill was introduced on April 25, 2012 by the then Minister for Taxation. The bill was adopted on June 13, 2012 (Danish Act no. 591 of June 18, 2012).<br><br>The passed bill contains several elements concerning withholding tax on dividends:<br><br>1. It appears from the explanatory notes to the bill that the joint taxation rules mean that a group is, in effect, taxed on the total group income regardless of how the taxable incomes and other values are distributed in the group. |

Confidential Pursuant to Protective Order

SKAT_MDL_001_0075835_T

**TRANSLATION**

| | |
|---|---|
| companies' tax payments, etc.) | |

Confidential Pursuant to Protective Order

SKAT_MDL_001_0075835_T

**TRANSLATION**

Together with the fact that the group's funds can be transferred tax-free within the group, this warrants that the group is also jointly and severally liable for taxes, etc. in order to reduce the risk of SKAT being left with an uncovered claim even though there may be cover for the claim in other parts of the group.

It is therefore proposed that the liability for dividend tax, etc., royalty tax, and interest tax as well as surcharges and interest, in addition to the company that is liable to pay in accordance with the rules in section 69(1) and (2) of the Danish Withholding Tax Act, must generally also cover companies jointly taxed with the dividend-paying company at the time of the withholding.

2. In a proposed amendment in connection with the second reading of the bill, a change was proposed to the accrual of interest on the withholding tax claim in the situations in which a foreign dividend-receiving company or person is entitled to disbursement of withholding tax withheld if the tax authorities have lost a case on withholding of withholding tax.

In addition, it was proposed in the proposed amendment that the tax authorities be granted the possibility to suspend the payment deadline, and thus the interest accrual, if the recipient's circumstances prevented a control of whether the recipient was actually the party entitled to receive the refund.

In situations in which the recipient refuses to participate in clarifying the circumstances that form the basis of the assessment of whether the recipient is the actual beneficiary or does not provide sufficient information, the tax authorities may interrupt the deadline for a refund. With the Danish Act of June 18, 2012, a provision was introduced in the Danish Withholding Tax Act that no interest accrues on the amount until, at the earliest, six months after the basis for the disbursement has been sufficiently documented.

The proposed amendment also means that provision of security may be demanded. If, based on a specific assessment, the tax authorities find that disbursement of a withholding tax refund will entail an obvious risk of loss, the proposed amendment allows the tax authorities to demand that the recipient put up security before the disbursement is made. However, the tax authorities may only demand security if the claim is disputed and has not been finally settled by an administrative appeals body or the courts.

Confidential Pursuant to Protective Order

SKAT_MDL_001_0075835_T

**TRANSLATION**

Amendment no. 1 on joint and several liability in the group of jointly taxed companies dates back to two early warnings of October 16, 2009 and October 29, 2009 from SKAT; see case no. 4.

This element was included in the original draft bill, which was sent for external consultation. The proposed amendment triggered a great deal of criticism from both companies and members of the Danish Parliament, but it was passed with a few adjustments.

The changes under amendment no. 2 were presented in a proposed amendment during the second reading of the bill.

Amendment no. 1 on liability for income tax for jointly taxed companies has effect for income years starting on or after July 1, 2012. The amendment concerning liability for withholding taxes has effect for tax payments falling due for payment on or after July 1, 2012.

The amendments mentioned in no. 2 have effect for claims for refund of withholding taxes which have not been decided by June 30, 2012. This applies regardless of whether the withholding tax has been withheld before July 1, 2012.

By a submission of June 16, 2011, the then Minister for Taxation was briefed on the bill, which would be tabled in the coming parliamentary session. It is mentioned in the submission that the bill will include a change to the joint and several liability for corporation taxes and withholding taxes in joint taxation relations. The bill followed up on an agreement concluded between the then Government, the Danish People's Party (Dansk Folkeparti) and Pia Christmas-Møller on the fair taxation of multinational companies. The amendment is also included in a fact sheet from the Ministry of Finance dating May 27, 2011. The Minister for Taxation approved the submission.

On November 20, 2011, the then Government entered into an agreement with the Red-Green Alliance (Enhedslisten) on the Danish Finance and Appropriation Act for 2012. It appears from the agreement that there was agreement to implement the Minister's initiatives for, among other measures, joint and several liability in connection with joint taxation.

In a submission of January 17, 2012 regarding the draft bill, it is mentioned that the bill contains a change of the joint and several liability for corporation taxes/withholding taxes in joint taxation relations. The submission was approved by the Permanent Secretary on January 17, 2012. It does not appear from the submission whether the Minister saw the case.

Confidential Pursuant to Protective Order                                    SKAT_MDL_001_0075835_T

| | |
|---|---|
| | By a submission of January 25, 2012, the Minister was presented with a catalog of questions and answers. It appears that the catalog of questions and answers was sent to the spokespersons on January 30, 2012. The catalog of questions and answers contains a section on the introduction of joint and several liability in joint taxation relations.<br><br>In the submission of May 1, 2012, it is recommended that a proposed amendment be presented for the second reading of bill no. L 173. In the submission, reference is made to the amendment being connected with some pending legal actions. It is stated that if MoT succeeds in its claim before the courts, it will, in effect, not be possible to recover the withholding tax disbursed from the parent company abroad. It is therefore proposed to introduce a provision that the Danish company which was obliged to withhold the tax and which originally withheld the tax is to continue to be liable for the withholding tax until a final ruling or judgment has been delivered. It is stated in the submission that the existing rules on liability for withholding taxes are inadequate, and that it is essential to intervene as quickly as possible. It is recommended that this be done as a proposed amendment to bill no. L 173, which already contains an amendment regarding withholding taxes. The submission was approved by the then Minister for Taxation on May 2, 2012.<br><br>The specific proposed amendment at the second reading was presented to the Minister for Taxation in a submission of May 16, 2012. The proposed amendment sent was approved by the Minister for Taxation on May 20, 2012. |
| **16.**<br>*Case no.:*<br>*012-0173537*<br><br>Bill no. L 67 – bill to amend the Danish Tax Control Act, the Danish Withholding Tax Act and various other acts (extension of the tax assessment notice scheme, reporting of dividends, etc.) | This is a case concerning the drafting of bill no. L 67 (parliamentary year 2012-2013). The bill was introduced on November 14, 2012 by the then Minister for Taxation. The bill was adopted on December 17, 2012 (Danish Act no. 1354 of December 21, 2012).<br><br>The bill contains an element regarding withholding tax on dividends:<br>It appears from the general explanatory notes that it is proposed that the reporting of dividends on stocks, etc. to SKAT always be done no later than the month after the adoption or decision to make the distribution when this concerns stocks in Danish companies. It is also proposed to make some extensions to the requirements for the contents of the reporting.<br><br>The provisions in both sections 9 B and 10 A of the Danish Tax Control Act on the reporting of dividends mention that reporting must be done each year and at least once a year. Furthermore, under section 9 A(5) of the Danish Tax Control Act, the Minister for Taxation may lay down reporting deadlines that deviate from |

Confidential Pursuant to Protective Order                SKAT_MDL_001_0075835_T

**TRANSLATION**

|  | the normal deadlines (January 20 of the year following the calendar year which the reporting concerns). |
|---|---|

Confidential Pursuant to Protective Order

SKAT_MDL_001_0075835_T

**TRANSLATION**

The statutory authority was introduced by Danish Act no. 462 of June 12, 2009 (bill no. L 201 – parliamentary year 2008-2009). It followed from the explanatory notes to bill no. L 201 that the idea behind this provision was to harmonize the reporting deadline with the deadline for declaration and payment of dividend tax. This means rules on reporting of dividends in the month following the adoption of or decision on the dividend distribution.

It appears from bill no. L 67 that the idea is to exercise the statutory authority in section 9 A(5) of the Danish Tax Control Act in relation to all dividends distributed from Danish companies, etc., i.e. not as previously only in relation to dividends from unlisted stocks in Danish companies. It is stated that this can be done by an amendment to Executive Order no. 1315 of December 15, 2011 on Reporting Obligations, etc. under the Danish Tax Control Act.

It is also proposed to increase the information that must be covered by the reporting. One proposal is that information must be provided about the reason if no dividend tax has been withheld, or if dividend tax has been withheld at a reduced rate. It is stated in the bill, that, on the basis of the amendment to the act, the intention is to make an amendment to Executive Order no. 1315 of December 15, 2011 on Reporting Obligations, etc. under the Danish Tax Control Act, after which the reporting of the reason for the use of a reduced rate under a double taxation agreement must include information on the date of the documentation which has formed the basis for using the reduced rate and information about the country which has certified the documentation.

This is to provide SKAT with a better overall basis for checking whether dividend tax is withheld and settled correctly and for processing claims for refund of dividend tax withheld.

The amendment that provides statutory authority to require reporting of additional information entered into force on January 1, 2014. The statutory authority was subsequently exercised in connection with the issue of a new executive order on reporting obligations, etc. under the Danish Tax Control Act; see case no. 19.

A draft bill was submitted to the then Minister for Taxation on September 19, 2012. The amendments concerning dividend tax are not mentioned in the submission, but are included in a summary and a memo of the bill enclosed with the submission. It does not appear from the submission whether the Minister for Taxation approved the case.

In connection with the first reading of the bill, a submission was prepared on November 21, 2012.

Confidential Pursuant to Protective Order

SKAT_MDL_001_0075835_T

**TRANSLATION**

Confidential Pursuant to Protective Order

SKAT_MDL_001_0075835_T

| | Here, several documents, including a catalog of questions and answers and a draft for talking points are submitted to the Minister for Taxation. The element on reporting of dividends from stocks was included in the catalog of questions and answers. The catalog of questions and answers was sent to the tax spokespersons in the Danish Parliament on December 20, 2012. The catalog shows that the purpose is to improve SKAT's dividend tax administration, as monthly reporting will increase SKAT's possibilities for quick reconciliation, including through increased control possibilities in connection with refund cases. The submission was approved by the Permanent Secretary on November 25, 2012. It does not appear that the Minister for Taxation saw the submission, but it appears that the material was sent to the spokespersons.<br><br>The authorization granted by bill no. L 201 was used to amend the Executive Order on Reporting Obligations, etc. under the Danish Tax Control Act to include listed stocks; see case no. 17. Bill no. L 67 is thus a follow-up on bill no. L 201, including Internal Audit's report from 2010 on SKAT's dividend tax administration and SKAT's working group, which was subsequently appointed and which submitted a report on the work on dividend tax refunds on June 8, 2011. |
|---|---|
| **17.**<br>*Case no.:*<br>*012-0181424*<br><br>Amendment of the Executive Order on Reporting Obligations, etc. | This concerns a case on amendment of the Executive Order on Reporting Obligations, etc. (the Reporting Order) under the Danish Tax Control Act. The new executive order was signed on November 30, 2012 by the then Minister for Taxation (Executive Order no. 1123 of November 30, 2012).<br><br>In the explanatory notes to Danish Act no. 1354 of December 21, 2012 (bill no. L 67, parliamentary year 2012-2013), notice is given of an amendment to the Executive Order on Reporting Obligations, etc. under the Danish Tax Control Act, in accordance with which monthly reporting is introduced on all dividends after the adoption of or decision on the dividend distribution. Before bill no. L 67, only dividends from unlisted Danish stocks had to be reported no later than in the month after the adoption of or decision on the dividend distribution. With bill no. L 67, it is proposed to exercise the statutory authority from bill no. L 201 to comprise dividends from listed Danish stocks, etc. as well.<br><br>The amendment to the Reporting Order is thus, in effect, a follow-up on bill no. L 67; see case no. 16. The assessment was that the executive order could be issued under existing legislation without awaiting the final passing of bill no. L 67.<br><br>The executive order introducing the amendments applies to the reporting of dividends adopted or decided on or after January 1, 2013. |

Confidential Pursuant to Protective Order

SKAT_MDL_001_0075835_T

**TRANSLATION**

Confidential Pursuant to Protective Order                                                      SKAT_MDL_001_0075835_T

| | |
|---|---|
| | A draft executive order was submitted to the Minister for Taxation on September 26, 2012, and, on October 2, 2012, the Minister approved that the executive order could be sent for external consultation on October 2, 2012. It is noted in the submission that the executive order's introduction of monthly reporting can be implemented independently of bill no. L 67 (parliamentary year 2012-13); see case no. 16. It also appears from the submission that quicker implementation of the monthly reporting ensures a rapid improvement of SKAT's dividend tax administration and that it only entails a change of reporting dates and deadlines for the financial sector. It is stated that it can therefore be implemented more quickly than the increase in the information required. The increase in the information required contained in bill no. L 67 will ensure a subsequent further improvement of the dividend tax administration.<br><br>After the consultation round, the executive order was submitted to the Minister for Taxation on November 27, 2012 , and the Minister signed the executive order on November 30, 2012. The submission shows that, based on a wish from the Danish Bankers Association, an adjustment was made regarding reporting from non-residents. |
| **18.**<br>*Case no.:*<br>*013-0064112*<br><br>Amendment of the Executive Order on Reporting Obligations, etc. | This is a case concerning the issue of three executive orders which introduce an obligation for companies to declare and report dividends electronically. By Amendment Executive Order no. 734 of June 21, 2013, statutory authority was introduced for requiring electronic submission of reporting under section 9 B of the Danish Tax Control Act. The executive order was signed by the then Minister for Taxation on June 21, 2013.<br><br>By Danish Act no. 545 of May 26, 2010, statutory authority for imposing an electronic reporting obligation was inserted in section 35 of the Danish Tax Administration Act (Skatteforvaltningsloven). SKAT had requested that an electronic dividend reporting obligation be introduced before the introduction of one single tax account on August 1, 2013. With the amendment through this executive order, it was ensured that there is an obligation to report dividends electronically.<br><br>The executive order applies to reporting made on or after July 1, 2013.<br><br>The executive order was submitted to the Minister for Taxation on June 19, 2013.<br><br>In connection with the submission, it was stated that, to accommodate claims made by some organizations in the consultation round, a transitional rule had been inserted under which non-electronic reporting would be accepted for a |

Confidential Pursuant to Protective Order

SKAT_MDL_001_0075835_T

**TRANSLATION**

|  | transitional period. The Permanent Secretary approved the submission on June 20, 2013. It does not appear from the submission that the Minister read it. |
|---|---|

Confidential Pursuant to Protective Order                                           SKAT_MDL_001_0075835_T

**TRANSLATION**

| | |
|---|---|
| **19.**<br>*Case no.:*<br>13-0201155 | This concerns a case on the issue of a new executive order on reporting obligations, etc. under the Danish Tax Control Act. The new executive order was signed on September 26, 2013 by the then Minister for Taxation (Executive Order no. 1148 of September 26, 2013).<br><br>The executive order was also a follow-up on Danish Act no. 1354 of December 21, 2012; see case no. 16. Under the executive order, the information to be reported regarding dividends was increased.<br><br>According to the amended executive order, information must be reported not only on the size of the dividend, but on the size of the dividend before and after withholding of dividend tax, the percentage used in any withholding of dividend tax, and the amount withheld.<br><br>If dividend tax is withheld at a reduced rate, i.e. a rate of less than 27%, information must be provided about the reason for the use of the reduced rate.<br><br>Under the executive order, the dividend distribution date must be reported, and if the distribution of dividend for unlisted stocks is made to a party other than the stockholder, information must be reported about the account into which the payment has been made.<br><br>In accordance with the explanatory notes to Danish Act no. 1354 of December 21, 2012 (bill no. L 67, 2012/13) which the amendments to the executive order implement, the purpose of the changes is to provide SKAT with a better basis for checking whether dividend tax is withheld and paid correctly and to process claims for refund of withheld dividend tax.<br><br>The executive order was submitted with a view to being sent for external consultation. The changes to the reporting on dividend distributions are not mentioned directly in the submission, which, however, mentions that "a number of changes will be made as a result of amended legislation." The submission was approved by the Permanent Secretary on June 27, 2013, but it was not seen by the Minister for Taxation. The executive order was, moreover, submitted for approval. The submission only mentioned the outcome of the consultation round, which only resulted in minor technical corrections. The submission was not signed by the Minister for Taxation, but the Minister signed the executive order on September 26, 2013.<br><br>The executive order entered into force on January 1, 2014. |
| **20.**<br>*Case no.:*<br>015-2051530 | This is a case concerning an early warning received by MoT from SKAT Legal Affairs on July 7, 2015 regarding stock lending and crediting of dividend tax. |

Confidential Pursuant to Protective Order

SKAT_MDL_001_0075835_T

**TRANSLATION**

Confidential Pursuant to Protective Order

SKAT_MDL_001_0075835_T

**TRANSLATION**

| | |
|---|---|
| Early warnings regarding stock lending and exploitation of the rules on refunds. | The early warning from SKAT Legal Affairs is based on an early warning which SKAT Legal Affairs received on the matter from SKAT Large Businesses on March 27, 2015.<br><br>A key element in both these early warnings seems to be that stock lending is treated differently in a tax perspective and in civil law. Even though, from a tax perspective, the lender is the beneficial owner of the stocks, the borrower is the party reported to SKAT as the stockholder. The possible risks in connection with stock lending must first and foremost be seen in light of the fact that SKAT may receive incorrect tax-related information about the dividend recipient, including that there may be discrepancies between the information reported to SKAT and the actual tax-related ownership.<br><br>There is thus no doubt about who is entitled to a refund of dividend tax, but both early warnings primarily address SKAT's problems with checking that the applicable rules for stock lending are complied with. |

Confidential Pursuant to Protective Order                                    SKAT_MDL_001_0075835_T

**TRANSLATION**

Reference no.: 15-2486327

## Appendix 2B Process Paper regarding searches on cases and documents in the Ministry of Taxation concerning refund of withholding taxes

Searches have been made as free text searches in Captia 4.2 and 4.6, respectively, on both cases and documents.

In Captia 4.2, the following keywords were used:

- Kildeskat* (withholding tax*)
- Udbytte* (dividend*)
- Udlodning* (distribution*)
- Refusion* (refund*)
- Aktielån* (stock lending*)
- Cum/ex
- Trace
- Tilbagesøgning (refund application)
- Indberetningspligt* bekendtgørelse* (reporting obligation* executive order*)

In Captia 4.2, there are a very large number of hits when using the keywords "kildeskat" ("withholding tax"), "udbytte" ("dividend"), "udlodning" ("distribution"), and "refusion" ("refund") individually to search for documents (a total of approximately 60,000 hits). In order to reduce the number of hits, the following combinations were used:

- Indeholde* af kildeskat* (withholding* of withholding tax*)
- Udbytte* kildeskat* (dividend* withholding tax*)
- Udbytte* refusion* (dividend* refund*)
- Udbytte* indeholde* (dividend* withhold*)
- Udbytte* udlodning* (dividend* distribution*)

The following combinations were also used:
- Skl § 9A § 9B (Danish Tax Control Act s. 9 A s. 9 B)
- Skattekontrolloven § 9A § 9B (Danish Tax Control Act s. 9 A s. 9 B)
- Tilbagesøgning* (refund application*)
- Indberetningspligt* bekendtgørelse* (reporting obligation* executive order*)

In Captia 4.6, the following keywords were used:

- Kildeskat* (withholding tax*)
- Udbytte* (dividend*)
- Udlodning* (distribution*)
- Refusion* (refund*)
- Aktielån* (stock lending*)
- Cum/ex
- Trace
- Tilbagesøgning* (refund application*)

Confidential Pursuant to Protective Order

SKAT_MDL_001_0075835_T

**TRANSLATION**

- Indberetningspligt* bekendtgørelse* (reporting obligation* executive order*)

Confidential Pursuant to Protective Order

SKAT_MDL_001_0075835_T

When searching on "kildeskat" ("withholding tax"), "udbytte" ("dividend"), "udlodning" ("distribution") in documents in Captia 4.6, a message was displayed that the search criteria were not valid. The reason for this is assumed to be that the number of hits is very high. The following combinations have therefore been used in document searches:

- Indeholde* af kildeskat* (withholding* of withholding tax*)
- Udbytte* kildeskat (dividend* withholding tax*)
- Udbytte* refusion* (dividend* refund*)
- Udbytte* indeholde* (dividend* withhold*)
- Udbytte* udlodning* (dividend* distribution*)
- Tilbagesøgning* udbytteskat* (refund application* dividend tax*)
- Tilbagesøgning* kildeskat* (refund application* withholding tax*)

In addition, the following combinations were used:
- Skattekontrolloven § 9A § 9B (Danish Tax Control Act s. 9 A s. 9 B)
- Skl § 9A § 9B (Danish Tax Control Act s. 9 A s. 9 B)
- Indberetningspligt* bekendtgørelse* (reporting obligation* executive order*)

It should be noted that an asterisk (*) was used in searches on the above keywords. The asterisk was used to find variations of the keywords, for example using "kildeskat" (withholding tax) with an asterisk also produces hits on "kildeskatter" (withholding taxes), "kildeskattebekendtgørelse" (executive order on withholding taxes), etc.

The following procedure was used for searches in Captia 4.2 and 4.6:

Cases and documents which, based on their title, are clearly of no relevance have not been read. Hits for which the title shows that they are clearly of relevance, might be of relevance, or where it is uncertain whether they are of relevance have been read. These are titles which include the above keywords.

Cases and documents which are regarded as being of relevance or of potential relevance have been entered on a list. The individual cases and documents have then been retrieved and reviewed in greater detail.

In connection with searches on the individual cases, documents and appendices in each case have been reviewed. If the cases are relevant to the case, they have been entered into a case sheet with a description of the case.

In connection with searches on documents, the individual documents have been reviewed to verify if they are relevant to the case. If they are relevant to the case, the document number is entered in the case sheet with an accompanying explanation. If the document belongs to one of the cases already entered in the case sheet, the case was ticked.

Confidential Pursuant to Protective Order                                    SKAT_MDL_001_0075835_T