# Exhibit 6

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SKATTEFORVALTNINGEN, | Civil Action No. 18-cv-09841 |
| Plaintiff, | Honorable Lewis A. Kaplan |
| vs. | April 22, 2020 |
| AMERICAN INVESTMENT GROUP OF NEW YORK, L.P. PENSION PLAN, ROBERT CREMA, STACEY KAMINER, and ACER INVESTMENT GROUP, LLC, | **AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** |
| Defendants. | |

Plaintiff Skatteforvaltningen[1] ("**SKAT**"), which is the Customs and Tax Administration of the Kingdom of Denmark, by its attorneys Hughes Hubbard & Reed LLP, alleges against Defendants American Investment Group of New York, L.P. Pension Plan ("**American Investment Group**"), Robert Crema ("**Crema**"), Stacey Kaminer ("**Kaminer**"), and Acer Investment Group, LLC ("**Acer**") as follows:

I.    **INTRODUCTION**

1.    Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.

2.    This case stems from a fraudulent tax refund scheme that deceived SKAT into paying out over 12.7 billion Danish Kroner ("**DKK**"), the equivalent of approximately $2.1 billion (US), of allegedly withheld dividend tax.

---

1.    At the time of the events alleged in this Amended Complaint, Plaintiff was known as "SKAT," and thereafter, pursuant to Danish legal order 804, entered on June 6, 2018, Plaintiff changed its legal name to Skatteforvaltningen, effective July 1, 2018.

3.     The essence of the fraudulent scheme is that each of over 300 entities pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index, the 20 most-traded stocks in Denmark.  The Danish companies are required to withhold 27% tax on dividends they pay to shareholders.  Under certain double taxation treaties between Denmark and other countries, including the United States, this tax is reimbursable to non-Danish shareholders that meet certain qualifications that meet certain qualifications.

4.     The entities, acting through their agents and representatives, applied to SKAT claiming repayments of tax withheld on dividends that they purported to have earned on shares of Danish companies.  These applications were fraudulent because the claimants did not own the shares that they claimed to own, did not earn the dividends they claimed to have earned, and were not entitled to the tax refunds they claimed.  These applications were also fraudulent because the claimants falsely represented that they met the qualifications set forth in the double taxation treaty between Denmark and the United States for a full repayment of the tax withheld on dividends.

5.     The claimants effectuated the scheme by appointing agents to apply to SKAT for refunds in respect of shares in Danish companies that they did not own.  The agents submitted the fraudulent applications at the direction of, and on behalf of, the claimants and their authorized representatives, with false documentation representing that the claimants owned substantial shares in Danish companies, had earned substantial dividends for which tax had been withheld, and were entitled to a tax refund.  The agents obtained over $2.1 billion in refunds from SKAT, and distributed the proceeds of the scheme to the claimants and other participants in the fraud.  During the period 2012 to 2015, SKAT received fraudulent requests for tax refunds from several agents on behalf of 277 pension plans in the United States, including Defendant American Investment Group, as well as entities in the United Kingdom, Canada, Malaysia, and Luxembourg.

6.     On June 15, 2015, SKAT received information indicating that certain claimants may have submitted fraudulent tax refund claims based on the double taxation treaty between Denmark and Malaysia.  Based on this information, SKAT undertook an investigation and subsequently discovered that the claimants had submitted requests for tax refunds by misrepresenting that they owned shares in Danish companies, had earned substantial dividend income on their shares, and were entitled to refunds of tax withheld in respect of those dividends. Through its investigation, SKAT discovered that these representations were false: the claimants did not own the shares and they were not entitled to a refund of withholding tax.

7.     As a result of these false claims, the claimants and their agents received cash payments of what were supposed to be "refunds" of tax to which they were not entitled.  During the course of its investigation, SKAT also learned that the scheme involved entities and individuals not just in Malaysia, but also in the United States, Canada, United Kingdom, and Luxembourg.

8.     On or about August 24, 2015, SKAT stopped paying all claims for refunds of dividend withholding tax, while it investigated the fraudulent scheme.  At the same time, SKAT reported the alleged fraud to the Danish Public Prosecutor for Serious Economic and International Crime ("**SØIK**").  The fraudulent scheme is currently under investigation by law enforcement authorities in Denmark, the United Kingdom, Germany, and other jurisdictions.  At least three individuals have been criminally charged by SØIK.

9.     The claimants obtained substantial assistance in the fraudulent scheme from several other entities and individuals, including, but not limited to:

a.     The Authorized Representatives of the claimants, such as Defendant Kaminer, who, among other things, executed at the direction of, and on behalf of, the

96447160_5

claimants documents authorizing the Payment Agents to submit the claimants' tax refund claims and to receive from SKAT payments in respect of those claims;

b.      The non-party Payment Agents, which are companies that submitted fraudulent tax refund claims to SKAT at the direction of, and on behalf of, the claimants and Authorized Representatives; and

c.      The non-party Broker-Custodians, which are financial institutions that provided statements falsely representing that the claimants owned shares in Danish companies and had earned dividends on those shares.

10.     The Defendants did know or should have known that these false representations would cause SKAT to make payments to which the Defendants were not entitled.

11.     SKAT made all the payments to the claimants' Payment Agents, which, on information and belief, distributed the proceeds to other participants in the fraud, including the claimants and the Authorized Representatives.

12.     As a result of the overall fraudulent scheme, SKAT paid baseless withholding tax refund claims of approximately $2.1 billion (US).

13.     As a result of the fraudulent claims by the Defendants in this action, SKAT paid baseless withholding tax refund claims and was damaged in the amount of DKK 21,060,000, or at least $3,388,000 (US), plus interest.

## II.     JURISDICTION & VENUE

14.     Pursuant to 28 U.S.C. § 1332(a)(4), this Court[2] has jurisdiction over all claims because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and

---

2.  This action was originally filed in the United States District Court for the District of New Jersey and transferred to this Court for pretrial proceedings pursuant to Order of the United States Judicial Panel on Multidistrict

costs, and is between an agency or instrumentality of a foreign state and citizens of a state or of different states.

15.    Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.  In the alternative, venue is proper because at least one of the Defendants is subject to the jurisdiction of this Court.

## III.   <u>PARTIES</u>

16.    Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.  SKAT is located at Østbanegade 123, 2200 København Ø, Denmark.  During the period material to the events described in this Amended Complaint, SKAT used a mailing address of Skattecenter Høje-Taastrup, Postboks 60, DK-2630 Taastrup, Denmark.

17.    Defendant American Investment Group is a pension plan which, in its requests to SKAT for tax refunds, listed its address as 75 Claremont Road, Suite 309, Bernardsville, New Jersey 07924, USA.  Upon information and belief, each of the participants, or members, of Defendant American Investment Group is a citizen of a State of the United States.  At all times material to the allegations in this Amended Complaint, Defendant American Investment Group purported to be a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code, exempt from taxation under section 501(a) of the United States Internal Revenue Code, and resident in the United States of America for purposes of U.S. taxation.

18.    Defendant Crema is a citizen of a State of the United States.  Defendant Crema was the sole participant in Defendant American Investment Group.  At times relevant to the allegations

---

Litigation dated October 3, 2018.  The jurisdictional allegations made in this Amended Complaint relate to the jurisdiction in which the original action was filed.

96447160_5

in this Amended Complaint, Defendant Crema was an officer or employee of Defendant Acer and worked at Acer's office located at 75 Claremont Road, Suite 309, Bernardsville, New Jersey 07924, the same address listed by Defendant American Investment Group in its refund claims to SKAT.

19.     Defendant Kaminer is a citizen of a State of the United States.  At all times material to the allegations in this Amended Complaint, Defendant Kaminer served as the Authorized Representative for Defendant American Investment Group.  At relevant times, Defendant Kaminer was a Member and the Chief Compliance Officer of Defendant Acer.

20.     On information and belief, Defendant Acer is a financial services firm incorporated in the State of Delaware and is or was registered to do business in the States of Florida, New Jersey, and Utah.  At relevant times, Defendant Acer had an office located at 75 Claremont Road, Suite 309, Bernardsville, New Jersey 07924, the same address listed by Defendant American Investment Group in its refund claims to SKAT.

## IV.     FACTUAL ALLEGATIONS

### A.     The Danish Withholding Tax System

21.     Withholding tax is a common fiscal device by which taxes are deducted at the source by a payer of income, and are reported to the relevant tax authority.  In this case, the relevant tax authority is SKAT.

22.     Under the Danish Withholding Tax Act section 65, Danish companies are required to withhold 27% of the dividend distributed as to their shares.

23.     Foreign shareholders may be entitled to a refund if the withheld tax exceeds the amount of tax owed according to a double taxation treaty between Denmark and the shareholder's country of residence.

96447160_5

24. A double taxation treaty between Denmark and the United States[3] ("**the Treaty**") allows for a full refund of tax withheld on dividends paid by Danish companies to qualified U.S. pension plans, which are exempt from taxation.  In order to qualify for a full refund under the Treaty, the U.S. pension plans must possess tax-qualified status under section 401(a) of the Internal Revenue Code and the dividend serving as the basis of the refund request cannot arise from the carrying on of a business by the pension fund.  For the reasons set forth in further detail below, the pension plan claimants, including Defendant American Investment Group, did not satisfy these requirements and were therefore not entitled under the Treaty to the refunds they claimed from SKAT.

25. SKAT paid claims for refunds of dividend withholding tax made by claimants who represented that they were qualified pension plans, had shareholdings in Danish companies, and had received dividends on those shareholdings net of the tax.  The claimants submitted refund claims seeking the full 27% withholding tax that had allegedly been withheld from distributions on shares that the claimants purported to own.

26. It was SKAT's normal practice to accept claims from designated payment agents and to transmit refunds to claimants through their designated payment agents.

**B.** **The Fraudulent Scheme**

27. As a result of its investigation, SKAT has now determined that, during the period 2012 through 2015, it received fraudulent dividend withholding tax refund claims as part of a scheme involving (i) a pension plan or other claimant, (ii) an Authorized Representative, (iii) a

---

3. Protocol Amending Tax Convention with Denmark, U.S.-Den., art. 10, ¶ 3(c), May 2, 2006, S. Treaty Doc. No. 109-19 (amending Convention and Protocol Between the United States and Denmark for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, U.S.-Den., Aug. 19, 1999, S. Treaty Doc. No. 106-12).

96447160_5

Payment Agent, and (iv) a Broker-Custodian. The respective roles of each of these participants are described in further detail in paragraphs 35 through 63 below.

### 1. The Fraudulent Refund Claims Process

28. The claimants submitted fraudulent claims to SKAT through Payment Agents, including non-party Goal TaxBack Limited ("**Goal**"), each of which submitted claims by mail or by email transmissions.

29. The claimants received payments with respect to their refund claims from their designated Payment Agents, to which SKAT transmitted payment by bank transfer.

30. Each of the claimants provided the following documentation to SKAT through their designated agents:

    a.    a short cover letter, printed on a Payment Agent's letterhead and addressed to SKAT in Taastrup, Denmark;

    b.    a SKAT "Claim to Relief from Danish Dividend Tax" form (the "**Claim Form**"), which set out:

        i.    the identity of the claimant representing that it owned the relevant shares and had received dividends net of withholding tax;

        ii.    the amount of the tax refund claim;

        iii.    a certification that the claimant was covered by the relevant double taxation treaty between Denmark and the country in which the claimant was resident; and

        iv.    the bank account to which SKAT should pay the claim;

    c.    a "credit advice" note purporting to describe the shareholding (or security) and the amount of dividend tax withheld;

     d.     a signed Power of Attorney, by which the claimant's Authorized Representative appointed a Payment Agent to act on behalf of the stated claimant; and

     e.     in respect of United States-based pension plans, a statement from the Internal Revenue Service ("**IRS**"), certifying that each pension plan was (I) a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code (the "**Code**"), (II) exempt from U.S. taxation under section 501(a) of the Code, and (III) resident in the United States for purposes of United States taxation.

31.     By filing a refund application requesting the full 27% refund and enclosing the statement from the IRS, the United States pension plan claimants falsely represented to SKAT that they were qualified U.S. pension plans entitled to the maximum refunds provided by the Treaty.

32.     The fraudulent claims alleged shareholdings in some of the largest Danish listed companies belonging to the OMX Copenhagen 20 Index in Denmark.

33.     It was SKAT's practice to pay claims that included the required supporting documentation.

34.     SKAT made payments by bank transfer to the Payment Agents for the benefit of the claimants.

### 2.     The Role of the Claimants

35.     Out of the over 300 claimants that SKAT has, to date, determined were participants in the fraudulent scheme, 277 were in the United States.

36.     Each of the claimants, including Defendant American Investment Group, made withholding tax refund claims through their Payment Agents, as described in paragraphs 30, above.

37.     As part of the fraudulent claims, each of the Authorized Representatives confirmed to SKAT that they were agents of the claimants and were authorized to act on behalf of the

claimants with respect to the dividend withholding tax refund claims. Defendant American Investment Group represented that Defendant Kaminer was its Authorized Representative and agent who had authority to act on its behalf with respect to Defendant American Investment Group's claims.

38.     As part of their fraudulent claims, each of the claimants designated one of the Payment Agents as its agent to act on behalf of that claimant with respect to the claim. Defendant American Investment Group represented that non-party Goal was its agent and had authority to act on its behalf with respect to its claims.

39.     Each of the claimants represented to SKAT that they held shares in, and received dividends net of withholding tax from, large Danish listed companies. Defendant American Investment Group made eleven (11) separate withholding tax refund claims and represented that it was entitled to refunds totaling DKK 21,060,000, or at least $3,388,000 (US). These refund claims were submitted to SKAT on March 5, 2014; March 26, 2014; April 4, 2014; April 16, 2014; August 14, 2014; December 3, 2014; December 10, 2014; March 4, 2015; and April 8, 2015.

40.     In fact, Defendant American Investment Group did not own the shares it represented to SKAT that it owned, and had no dividend tax withheld.

41.     In addition to falsely representing that it owned the shares that were the subject of the refund claims, Defendant American Investment Group falsely represented to SKAT in each refund claim that it was a qualified U.S. pension plan entitled to a full refund under the Treaty. This representation was false because Defendant American Investment Group did not meet the criteria for a qualified pension plan set forth in section 401(a) of the Internal Revenue Code and purportedly carried on debt-financed activities in breach of the Treaty's prohibition on such activities by a pension plan.

10

42.     Far from being a qualified U.S. pension plan, Defendant American Investment Group cannot have satisfied the requirements in section 401(a) of the Internal Revenue Code because it did not operate for the exclusive benefit of its sponsoring entity's employees and their beneficiaries.  Rather, Defendant American Investment Group was operated for the benefit of entities and individuals who facilitated or participated in the fraud.  After SKAT paid the amount requested in Defendant American Investment Group' refund claims, American Investment Group subsequently directed or permitted the transfer of the large majority of the illicit proceeds of the scheme to these other individuals and entities.

43.     In effect, Defendant American Investment Group became a vehicle for the fraudulent scheme whose purpose and continued existence was, at least in significant part, directly tied to the continuation of the fraudulent scheme as opposed to a legitimate business purpose.

44.     Defendant American Investment Group's representation that it was a qualified pension plan was also false because it was not properly funded.  The number of shares in Danish companies that Defendant American Investment Group claimed to have owned would have required funding from sources outside of contributions from the employees of its plan sponsor and matching contributions from the plan sponsor.  This external funding would violate the funding requirements of the Internal Revenue Code and disqualify Defendant American Investment Group from being a qualified pension plan.

45.     Defendant American Investment Group also falsely represented to SKAT that it was entitled to a full refund under the Treaty to the extent that it engaged in any activities that were debt-financed, in breach of the Treaty's prohibition on the carrying on of leveraged investment activities by a pension fund.

46.     Based on the false statements in the refund claims listed in paragraphs 39 through 45, SKAT made payments totaling DKK 21,060,000, or at least $3,388,000 (US), to Defendant American Investment Group on March 19, 2014; April 23, 2014; April 24, 2014; May 6, 2014; September 3, 2014; December 19, 2014; January 7, 2015; April 16, 2015; and May 8, 2015.

47.     On information and belief, Defendant Crema caused Defendant American Investment Group's fraudulent claims to be submitted to SKAT, evidenced in part by the fact that Defendant American Investment Group used Defendant Crema's former New Jersey office address in its claims to SKAT.  Defendant Crema exerted control over Defendant American Investment Group as the plan's sole participant, and used this control to commit the fraud on SKAT.

48.     Defendant Crema was listed as the only "officer" or "director" of non-party American Investment Group of New York, L.P., the plan sponsor for Defendant American Investment Group, in the plan sponsor's Annual Report filed with the State of New Jersey on January 19, 2011.  Defendant Crema's name and New Jersey office address were similarly listed as non-party American Investment Group of New York, L.P.'s registered agent and registered office.

### 3.     The Role of the Claimants' Authorized Representatives

49.     Each Authorized Representative executed at the direction of, and on behalf of, the claimant for which he or she was the Authorized Representative a form entitled "Power of Attorney."  By the Power of Attorney, the claimant, acting through its respective Authorized Representative, granted the Payment Agent authority to act on behalf of the claimant.

50.     Defendant Kaminer executed at the direction of, and on behalf of, Defendant American Investment Group a "Power of Attorney" dated February 19, 2014, that granted to Payment Agent Goal authority "to be the attorney of [American Investment Group] and in [American Investment Group's] name and otherwise on [American Investment Group's] behalf

12

and as [American Investment Group's] act and deed to sign, seal, execute, deliver, perfect and do all deeds, instruments, acts and things which may be required (or which [Goal] shall consider requisite) for or in connection with the provision of any tax services provided to [American Investment Group] from time to time, including the reclaiming from any taxation authority in any jurisdiction (as appropriate) amounts in respect of payments made to [American Investment Group] or through [Goal] on behalf of [American Investment Group]."

51.     As a result of the executed Power of Attorney, Payment Agent Goal also agreed to act for Defendant Kaminer and be subject to her direction and control with respect to Defendant American Investment Group's claims to SKAT.

52.     Defendant Kaminer executed the Power of Attorney with knowledge that the plan was not properly funded, was not established for the exclusive benefit of its sponsor's employees, and was not entitled to a refund under the Treaty.

53.     Defendant Kaminer signed Power of Attorney documents as the Authorized Representative for at least eight of the 277 U.S. entities that pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index and that fraudulent requested tax refunds from SKAT, including Defendant American Investment Group.

### 4.     The Role of the Payment Agents

54.     The Payment Agents submitted the fraudulent withholding tax refund claims at the direction of the claimants and Authorized Representatives and on behalf of the claimants.

55.     By means of the Power of Attorney described in paragraphs 49-50 above, each claimant and Authorized Representative authorized their respective Payment Agent to act on their behalf and subject to their control with respect to submitting the withholding tax refund claims.

56.     With each claim, the Payment Agents submitted substantially similar cover letters attaching the documentation described in paragraph 30 above. The documentation submitted with

the cover letter falsely represented to SKAT that Defendant American Investment Group was a qualified pension plan that satisfied the criteria under the Treaty and was therefore entitled to a full 27% refund.

57.     In connection with each Claim Form, the Payment Agent:

      a.     provided its email address as the contact address for the claimant on whose behalf it was acting;

      b.     signed and stamped the form, and stated it was applying on behalf of the claimant;

      c.     enclosed the Power of Attorney executed by the claimant's Authorized Representative; and

      d.     requested that SKAT pay the claim to its bank account.

58.     As per the directions included in the submission to SKAT, the Payment Agents received payment of the refunds from SKAT on behalf of the claimants.  Upon information and belief, the Payment Agents subsequently distributed the proceeds to the claimants and other participants in the fraud, including the Authorized Representatives, and the Payment Agents themselves.

**5.     The Role of the Broker-Custodians**

59.     Each entity claiming a withholding tax refund submitted to SKAT a "credit advice," "income advice," "tax voucher" or similar document from a Broker-Custodian that purported to show the claimant's ownership of shares in Danish companies listed on the OMX Copenhagen 20 Index.

60.     By way of example, with respect to Defendant American Investment Group, one example of a "credit advice":

      a.     is made out by ED&F Man Capital Markets Limited;

14

b. is signed by Christina MacKinnon;

c. purports to certify Defendant American Investment Group's ownership of 7,750,000 shares in Danske Bank A/S (a genuine company), whose shares were (and are) publicly traded on the Copenhagen Stock Exchange; and

d. states an International Securities Identification Number ("**ISIN**") for Danske Bank A/S shares as "DK0010274414". An ISIN is a twelve character alpha-numerical code that uniquely identifies securities for trading and settlement purposes.

61. Defendant American Investment Group, which was not a qualified U.S. pension plan for purposes of the Treaty, never owned the shares described above, never received any dividend from Danish companies in which it was a purported shareholder and was not entitled to claim a refund of dividend withholding tax.

### 6. The Role of Acer

62. On information and belief, Defendant American Investment Group—through a signed Power of Attorney or otherwise—granted Defendant Acer the authority to act as its representative and agent with Broker-Custodian ED & F Man Capital Markets Limited. Defendant Acer used this authority to direct ED & F Man Capital Markets Limited to take actions that caused the creation and submission of the fraudulent "tax vouchers" described in paragraphs 59-60 above. As part of this authority, Defendant Acer determined which Danish security and the number of shares that would be listed in the "tax vouchers" that were submitted to Plaintiff SKAT. Defendant Acer also coordinated the submission of the "tax vouchers" to non-party Goal, which used those "vouchers" to obtain refunds for dividend withholding tax to which Defendant American Investment Group was not entitled. Defendant Acer received a portion of the dividend withholding tax refund purportedly paid by SKAT for the benefit of Defendant American Investment Group.

63. Through Defendant Kaminer and other directors or employees, Defendant Acer took the actions described in paragraph 62 knowing that Defendant American Investment Group did not own the shares or receive the dividends listed in the "tax vouchers" and was not entitled to claim a refund of dividend withholding tax from Plaintiff SKAT. Defendant Acer took these actions knowing that the purpose for submitting each of the "tax vouchers" to SKAT was to induce SKAT to pay tax "refunds" to Defendant American Investment Group in the amounts reflected in the "tax vouchers."

## CAUSES OF ACTION

## COUNT I

**(Fraud – Against Defendants American Investment Group, Crema & Kaminer)**

64. SKAT repeats and realleges paragraphs 1 through 63 above as if fully set forth herein.

65. Defendants intentionally, knowingly and/or recklessly made or caused to be made the material, false and fraudulent statements described in paragraphs 30 through 32, 39 through 45, and 59 through 61 to support claims for withholding tax refund payments.

66. Defendants intentionally, knowingly, and/or recklessly made or caused to be made these false and fraudulent statements to induce SKAT to pay the claims.

67. In reliance on the false and fraudulent misrepresentations, SKAT paid baseless withholding tax refund claims of DKK 21,060,000, or at least $3,388,000 (US), and thereby suffered damages of that amount, plus interest.

68. Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

96447160_5

## COUNT II

### (Aiding and Abetting Fraud – Against All Defendants)

69.     SKAT repeats and realleges paragraphs 1 through 68 above as if fully set forth herein.

70.     As alleged above, a massive fraud was perpetrated on SKAT by the claimants, the Authorized Representatives, the Payment Agents, and/or other non-parties.

71.     As alleged in paragraphs 27 through 63 above, the Defendants, with knowledge, participated in the massive fraud on SKAT.

72.     The Defendants acted with knowledge, willful blindness, and/or recklessness in submitting claims for refunds of dividend withholding tax to SKAT with knowledge that they were not entitled to receive any refunds.

73.     The Defendants intentionally furthered the fraud and substantially assisted the fraud through their conduct described in paragraphs 27 through 63 above.

74.     As a direct and natural cause of the Defendants' aiding and abetting of the fraudulent scheme, SKAT has suffered substantial damages.

75.     Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

## COUNT III

### (Unjust Enrichment – Against All Defendants)

76.     SKAT repeats and realleges paragraphs 1 through 75 above as if fully set forth herein.

77.     This is a claim by SKAT for recovery of monies by which the Defendants were unjustly enriched.

78. By obtaining proceeds from withholding tax refund claims, directly or indirectly, to which they were not entitled, the Defendants were unjustly enriched.

79. SKAT suffered a loss because of the Defendants' unjust enrichment.

80. The Defendants are liable to account and pay to SKAT the amount of dividend withholding tax refund payments they received from SKAT to which they were not entitled, plus interest.

## COUNT IV

### (Money Had & Received – Against All Defendants)

81. SKAT repeats and realleges paragraphs 1 through 80 above as if fully set forth herein.

82. As a result of their fraudulent scheme, Defendants received proceeds from withholding tax refunds to which they were not entitled.

83. It is against equity and good conscience to permit Defendants to keep these monies, and they should account for and pay to SKAT the amount of withholding tax refund payments they received to which they were not entitled, plus interest.

## COUNT V

### (Negligent Misrepresentation – Against Defendants American Investment Group, Crema & Kaminer)

84. SKAT repeats and realleges paragraphs 1 through 83 above as if fully set forth herein.

85. In submitting claims for withholding tax refund payments, Defendants had a duty to SKAT to provide claims information that was truthful, accurate, and complete in all material respects.

96447160_5

86.     Defendants made material misstatements described in paragraphs 30 through 32, 39 through 45, and 59 through 61 in connection with the withholding tax refund claims they submitted or caused to be submitted to SKAT.  Defendants knew, or should have known, that these statements were inaccurate.

87.     Defendants intended their material misstatements to induce SKAT to rely upon them, and defendants expected SKAT to rely upon them.

88.     SKAT reasonably relied on the misstatements while reviewing defendants' claims, and as a direct and proximate result incurred damages of DKK 21,060,000, or at least $3,388,000 (US), plus interest.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff SKAT requests that this Court enter judgment in its favor against Defendants as follows:

1.     For Counts I, II and V, for fraud, aiding and abetting fraud, and negligent misrepresentation, the damages sustained by SKAT as a result of the Defendants' wrongful acts, plus pre-judgment interest, fees, costs and expenses.

2.     For Counts III and IV, for unjust enrichment and money had and received, the damages sustained or the amounts by which the Defendants were justly enriched, or by which the Defendants received money to which they were not entitled, plus pre-judgment interest, fees, costs and expenses.

3.     For Counts I and II, punitive damages.

4.     The costs of this action.

5.     All other and further relief that is just and proper

## **JURY DEMAND**

Plaintiff SKAT demands a jury trial on all issues so triable.

Respectfully submitted,

HUGHES HUBBARD & REED LLP

/s/ Marc A. Weinstein
William R. Maguire
Marc A. Weinstein
John T. McGoey
One Battery Park Plaza
New York, New York 10004-1482
(212) 837-6000 (t)
(212) 422-4726 (f)
Bill.maguire@hugheshubbard.com
Marc.weinstein@hugheshubbard.com
John.mcgoey@hugheshubbard.com

Counsel for Plaintiff Skatteforvaltningen
(Customs and Tax Administration of the
Kingdom of Denmark)