# Exhibit 14

Reply Report of Emre Carr, Ph.D., CFA

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br>CUSTOMS AND TAX ADMINISTRATION<br>OF THE KINGDOM OF DENMARK<br>(SKATTEFORVALTNINGEN) TAX<br>REFUND SCHEME LITIGATION | MASTER DOCKET<br>18-md-2865 (LAK) |

## <u>REPLY REPORT OF EMRE CARR, PH.D., CFA</u>

Emre Carr, Ph.D., CFA

February 28, 2022

**CONFIDENTIAL**

**Reply Report of Emre Carr, Ph.D., CFA**

## TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................ 4

    A.    Assignment and Scope ...................................................................... 4
    B.    Information Relied Upon .................................................................. 5
    C.    Summary of Opinions ...................................................................... 6

II.   THE BELLWETHER PENSION PLANS ALL ENGAGED IN THE PENSION PLAN STRATEGY, A TAX-ADVANTAGED STRUCTURED FINANCE TRANSACTION TO CAPTURE DIVIDENDS USING NUMEROUS ACCEPTED MARKET PRACTICES ...................................................................... 16

III.  OWNERSHIP OF DEMATERIALIZED SECURITIES IS TRACKED THROUGH BOOK ENTRIES; BOTH TRADE CONFIRMATIONS AND THE CUSTODIAN STATEMENTS CONFIRM THAT THE PENSION PLAN TRADES WERE REAL ................................................................................................................... 18

    A.    Mr. Dubinsky's Assertion That Solo Capital Fabricated Trade Confirmations and Account Statements Is Fundamentally Flawed ....................................... 19

IV.   THE PENSION PLANS HAD AN ECONOMIC CLAIM TO RECEIVE PAYMENTS OF DIVIDEND AMOUNTS BECAUSE THEY PURCHASED SHARES AT CUM-DIVIDEND PRICES ............................................................. 21

    A.    The SKAT Experts' Claim That The Bellwether Plans Did Not Receive Dividends Is Fundamentally Flawed ................................................................. 23

V.    THE SKAT EXPERTS IGNORE INTERNALIZED SETTLEMENT AND NETTING; MR. WADE INCORRECTLY ASSERTS THAT FLEX FUTURES TRADES WERE WASH TRADES ......................................................................... 29

    A.    Mr. Wade's Claim That The Stock Trades Were Not and Could Not be Settled Is Fundamentally Flawed And Ignores The Common Practice of Netting In Settlement .......................................................................... 31
    B.    The SKAT Experts' Ignore That, Under Internalized Settlement, There Would Be No Book Entries Related To Pension Plan Share Purchases At Any Sub Custodian and Ignore the Book Entries Related to Pension Plan Flex Future Trades That Did Exist at JP Morgan ................................................ 35
    C.    Contrary to Mr. Wade's Assertion, There Was No Wash Trading In Futures ................................................................................................................. 38
    D.    Mr. Wade's Incorrectly Asserts That Solo Had No Authority To Settle The Trades ........................................................................................................ 40

VI.   MR. WADE'S ASSERTIONS REGARDING CREDIT TERMS, AND FINANCING ARRANGEMENTS DO NOT DEMONSTRATE THAT THE TRANSACTIONS WERE FAKE ............................................................................................... 41

    A.    Mr. Wade's Assertion That Credit Terms Were Ignored or Not on an Arm's-Length Basis Does Not Demonstrate That The Pension Plan Trades Were Not Real ........................................................................................................... 41

**Reply Report of Emre Carr, Ph.D., CFA**

|  | B. | Mr. Wade's Assertions Regarding Financing Arrangements Are Irrelevant And Fundamentally Flawed ........................................................................... 44 |

VII.    MR. WADE'S ASSERTIONS ABOUT THE PENSION PLAN STRATEGY NOT BEING A GENUINE INVESTMENT STRATEGY AND FLAWS IN MY TRADE ANALYSIS ARE WITHOUT ANY MERIT ........................................................... 47

A.    Mr. Wade's Assertions About the Counterparties in the Analyzed Transactions Are Irrelevant to the Pension Plans' Trades ............................ 48

B.    Mr. Wade's Assertions About the Transaction Agreements Are Without Basis ........................................................................................................... 49

C.    Mr. Wade's Claim That Pension Plan Strategy Was Not A Genuine Investment Strategy Is Fundamentally Flawed And His Alternative Calculations are Partial and Thus Incorrect and Misleading ........................ 50

VIII.   MR. WADE'S ASSERTIONS OF PURPORTED REGULATORY VIOLATIONS DO NOT DEMONSTRATE THAT THE PENSION PLAN TRADES WERE FAKE ..................................................................................................................... 54

IX.    MR. WADE'S STATEMENTS ABOUT THE ACADEMIC LITERATURE I CITED ARE IRRELEVANT FOR ASSESSING WHETHER THE PENSION PLANS TRADE WERE FAKE ......................................................................................... 56

X.    CONCLUSION ........................................................................................................ 58

APPENDIX A: THE DELVIAN PLAN MARCH 2014 TDC TRANSACTION ................. 59

**Reply Report of Emre Carr, Ph.D., CFA**

## List of Exhibits to This Report

Exhibit 1: Materials Relied Upon

Exhibit 2: List of Bellwether Transactions

Exhibit 3: Summary of the Other Analyzed Transactions

Exhibit 4: Annual General Meeting Dates of Issuers Related to All Bellwether Plan Transactions

Exhibit 5: Equity Price Analysis of Bellwether Plan Transactions

Exhibit 6: TDC Dividend Dates, March 2014 Semi-Annual Dividend

Exhibit 7: Summary of Trading and Clearing Fees The Delvian Plan March 2014 TDC Transaction

## List of Figures

Figure 1: The Delvian Plan 2014 Transactions Related To TDC Stock

## List of Tables

Table 1: The Delvian 2014 Transactions Related to TDC Stock Profit Calculations

**Reply Report of Emre Carr, Ph.D., CFA**

## I.    INTRODUCTION

### A.    Assignment and Scope

1.    I have been retained by counsel to certain Defendants to review trades in Danish securities and associated instruments conducted by certain U.S.-based pension plans in connection with the above-captioned multidistrict litigation, *In re Customs and Tax Administration of the Kingdom of Denmark (Skatteforvaltningen) Tax Refund Scheme Litigation*, 18-md-02865 (LAK).

2.    I previously reviewed reports submitted by two experts ("SKAT Experts") retained on behalf of Plaintiff Skatteforvaltningen ("SKAT"):

   a.    Expert Report of Bruce G. Dubinsky dated December 31, 2021 ("Dubinsky Report"), including as revised on February 1, 2022;

   b.    Expert Report of Graham Wade dated December 31, 2021 ("Wade Report").

3.    I submitted critiques of the SKAT Experts' reports in my rebuttal dated February 1, 2022 ("Carr Rebuttal Report"). The SKAT Experts similarly submitted rebuttal reports that, among other things, offer criticisms of opinions in my initial report.[1] Counsel has asked me to review and respond to these criticisms. The two rebuttal reports are:

   a.    Rebuttal Report of Bruce G. Dubinsky dated February 1, 2022 ("Dubinsky Rebuttal Report")

   b.    Rebuttal Report of Graham Wade dated February 1, 2022 ("Wade Rebuttal Report")

4.    In this reply report, I review and respond to those criticisms.[2] My review is limited to the analyses that relate to those pension plan trades that used one of the following four custodians: Solo Capital ("Solo"), Telesto Markets LLP ("Telesto"), Old Park Lane Capital PLC ("Old Park Lane"), and West Point Derivatives Limited ("West

---

[1] Expert Report of Emre Carr, Ph.D., CFA, dated December 31, 2021 (hereinafter "Initial Carr Report").

[2] Several of the SKAT Experts' statements in their rebuttal reports are irrelevant to the question of whether the pension plans' trades in Danish securities and related instruments were real. The fact that I do not address a particular statement should not be understood to mean that I agree with that statement.

**Reply Report of Emre Carr, Ph.D., CFA**

Point"). Mr. Dubinsky refers to these four custodians as "Solo Custodians," and, for the Court's convenience, I adopt the same terminology.[3]

5. Mr. Wade refers to two transactions that he analyzed in the Wade Report as "Solo Transactions" and also references them in his rebuttal report. These transactions are a) Delvian LLC Pension Plan ("Delvian Plan")'s 2013 transactions related to Carlsberg B shares, and b) Roadcraft Technologies LLC Roth 401(k) Plan ("Roadcraft Plan")'s 2015 transactions in Novozymes A/S – B shares. For the Court's convenience, I adopt the same terminology.

6. I understand that the parties have now agreed to consider 15 pension plans involved in this litigation as "bellwether" plans (the "Bellwether Plans"), of which I reviewed trades by two plans and presented detailed analyses of transactions related to one stock for each plan in Initial Carr Report.[4] In this report, I address transactions by additional Bellwether Plans.

7. Additionally, I have also been provided with the Rebuttal Expert Report Of Felicity Toube QC ("Toube Rebuttal Report") to review and consider to the extent it addresses opinions presented in the Initial Carr Report.

**B.    Information Relied Upon**

8. In performing my analyses and forming my opinions and conclusions, I have relied upon data and information from various sources, all of which are reasonably relied upon by experts in my field. In addition to the materials I considered in connection with my opening report and rebuttal report, additional materials I have considered in

---

[3] Dubinsky Report ¶19.

[4] Specifically, in the Initial Carr Report, I reviewed trades conducted by two bellwether plans: the RJM Capital LLC Pension Plan ("RJM Plan") and The Proper Pacific LLC 401(k) Plan ("Proper Pacific Plan"). I understand that the parties have now agreed on the full slate of bellwether plans. The additional 13 Bellwether Plans are: (i) Bernina Pension Plan ("Bernina Plan"); (ii) Delvian LLC Pension Plan ("Delvian Plan"); (iii) Basalt Ventures LLC Roth 401(k) Plan ("Basalt Plan"); (iv) Avanix Management LLC Roth 401(k) Pension Plan ("Avanix Plan"); (v) Bareroot Capital Investments LLC 401(k) Plan ("Bareroot Plan"); (vi) Loggerhead Services LLC Roth 401(k) Plan ("Loggerhead Plan"); (vii) Roadcraft Technologies LLC Roth 401(k) Plan ("Roadcraft Plan"); (viii) Stor Capital Consulting LLC 401(k) Plan ("Stor Plan"); (ix) The Costello Advisors Pension Plan ("Costello Plan"); (x) The FWC Capital LLC Pension Plan ("FWC Capital Plan"); (xi) The LBR Capital Pension Plan ("LBR Capital Plan"); (xii) The Oaks Group Pension Plan ("Oaks Group Plan"); and (xiii) The SVP 401(k) Plan ("SVP Plan").

preparing this reply report are set forth in **Exhibit 1**. Additionally, I considered the materials cited in both the Dubinsky and Wade Reports, and in the Dubinsky, Wade, and Toube Rebuttal Reports. The documents that I rely upon include documents cited in this report and its exhibits. I have also relied upon my professional experience and expertise obtained over many years as a professional economist. I am prepared to amend and expand my analyses if I consider it necessary after receiving further information regarding this action.

9.    Regarding any anticipated trial testimony in this action, I may use various documents produced in this litigation that refer to or relate to the matters discussed in this report. Although I may cite to a particular page or pages of documents in this report, such pinpoint cites are provided for clarification purposes only, and other portions of the documents and depositions cited may be relevant for my analyses in this matter. In addition, citations to a document or documents are intended to be illustrative and are not exhaustive. Further, I may create or assist in the creation of certain demonstrative schedules to assist me in testifying. To date, I have yet to create such demonstratives.

### C.    Summary of Opinions

10.    As discussed in detail throughout this report and my previous two reports filed in this matter, my opinions include the following:

i.    The Pension Plan Strategy[5] that the Bellwether Plans pursued is a type of dividend arbitrage strategy. While the implementation details of such strategies may differ, they all require careful structuring and execution for a successful outcome and aim to take advantage of the tax status of the investors pursuing them. Dividend arbitrage strategies are neither new nor unique examples of how tax incentives influence financial decisions and investment strategies. Academic research has shown that investors in

---

[5] I use "Pension Plan Strategy" as I did in the Initial Carr Report to describe the tax-advantaged trading strategy that aimed to generate profits from market participants' tax differentials on dividends while managing the price risk of the underlying shares. *See* Initial Carr Report, § II.

Reply Report of Emre Carr, Ph.D., CFA

numerous countries have engaged in various types of dividend arbitrage strategies.

ii. The Pension Plan Strategy was a tax-advantaged structured transaction with the potential to generate significant profits with mitigated market risks. As the SEC and other regulators recognize, structured transactions are commonly used, and are non-standard transactions that can be used to achieve specific economic, tax, or other objectives and may result in "elevated levels of market, credit, operational, legal or reputational risks."[6]

iii. The Pension Plan Strategy trades were in large volumes and executed over-the-counter ("OTC") rather than on an exchange. Trading OTC is a widely-accepted market practice, particularly for large trades, and is not suspicious or inherently fraudulent. In Europe, trillions of Euros of OTC trades are reported every year.[7] Starting in approximately early 2015, an automated system that Solo developed was used to facilitate the execution of certain trades. The fact that the structured transactions were facilitated by an automated system does not support a conclusion that the trades executed by the pension plans were "fictitious."

iv. The Bellwether Transactions followed numerous other accepted market practices, as evidenced by the use of industry-standard templates underlying various agreements, trade acknowledgments, approvals, and confirmations.[8] The pension plans used an industry-standard template for give-up agreements related to the trade executions and the industry-standard Global Master Securities Lending Agreement ("GMSLA") template for their stock lending

---

[6] U.S. Securities and Exchange Commission, "Policy Statement: Interagency Statement on Sound Practices Concerning Complex Structured Finance Activities," section titled "II. Definition And Key Risks Of Complex Structured Finance Transactions," *available at* https://www.sec.gov/rules/policy/34-49695.htm (last accessed on January 23, 2022).

[7] ESMA, "EU Securities Markets: ESMA Annual Statistical Report," November 2020, p. 6, *available at* https://www.esma.europa.eu/sites/default/files/library/esma50-165-1355_mifid_asr.pdf (last accessed on January 17, 2022).

[8] The "Bellwether Transactions" refer to select exemplar transactions by each of the Bellwether Plans that I have reviewed in detail. The Bellwether Transactions are listed in **Exhibit 2**.

Reply Report of Emre Carr, Ph.D., CFA

transactions.  The flex future contracts, whenever used, were typical contracts for which BClear provided the clearing services.  The forward contracts were executed by reference to the industry-standard 2002 ISDA Master Agreement.  The pension plans paid commissions to the inter-dealer brokers ("IDBs") and custodians.

v.    As soon as a pension plan's order to purchase shares of a Danish company was executed by a registered IDB, the economic risk associated with holding shares in those companies was instantly transferred from the seller of the shares to the buyer even though clearing and settlement did not happen instantaneously.  Because the pension plans paid market prices for the shares that reflected the anticipated dividend amount ("cum-dividend prices"), they had an economic claim to receive payments of dividend[9] amounts.  As discussed later in this report, the Bellwether Plans purchased shares in Danish securities at prices that were always at or between the high and low price of the day and often at the daily closing price at which Danish stocks traded that day on an exchange.[10]

vi.    The share purchases were reflected on, among other things, trade confirmations issued by IDBs and account statements provided to the plans by Solo Custodians.[11]

---

[9] As used herein, the term "dividend" refers to the per-share amount declared by the issuer.  The term encompasses both what the SKAT Experts label a "real dividend"— *i.e.*, where the payment originates from the issuer of the securities and flows through a chain of custody to one or more custodians— and "substitute" dividend payments where the payment is made to compensate investors.

[10] The referenced high, low, and closing prices are for exchange-traded securities and obtained from Bloomberg L.P., a source widely used in the finance industry and also relied upon Mr. Wade.  "The Bloomberg Terminal and associated Financial Data Platform ("Bloomberg") is a third-party data vendor offering a trading platform that is widely used in the finance industry to review historical financial data." (Wade Report n. 31)

[11] In the Initial Carr Report, I presented analyses of transactions related to two Danish stocks (the "Analyzed Transactions") by the Bellwether Plans: the RJM Plan and the Proper Pacific Plan.  As explained in the Initial Carr report, the share purchases for Analyzed Transactions are also mentioned in the emails from the pension plans to IDBs (*i.e.*, seeking one or more counterparties willing to sell the requisite number of shares) and approvals given by the Solo Custodian.  I considered all the evidence in arriving at my opinions.

**Reply Report of Emre Carr, Ph.D., CFA**

    vii.    After the execution, the IDBs gave up the share purchases to the Solo Custodians for clearing and settlement and were settled using the well-accepted and common practice of internalized settlement and netting, recognized by reputable institutions such as  VP Securities ("VP"), European Securities and Markets Authority ("ESMA"), Bank of England, and London Stock Exchange ("LSE").  An ESMA report shows that equity trades worth trillions of Euros were settled through internalized settlement.[12]

    viii.    Because the pension plan purchases of shares of stocks in Danish Companies were offset by sales by other clients, the Solo Custodians did not need to source the shares for the pension plan purchases from an external source.

    ix.    Entering a derivative position (*e.g.,* flex futures contracts, forward contracts) tied to the value of underlying shares does not alter the underlying long position in that stock.  Such derivative contracts on a stock are distinct from the stock itself.  Derivative instruments are very commonly used to hedge price risk.

    x.    Securities lending is a common practice in the market and is widely understood to promote market efficiency and liquidity.  A party that lends shares maintains economic exposure to those shares.  Investors sometimes use securities lending for financing, and, in economic substance, a stock lending transaction is effectively a loan collateralized by the shares when used for financing purposes.  The cash collateral provided by the stock borrower is a matter of negotiation between the borrower and lender.

11.  I have reviewed analyses and assertions offered by the SKAT Experts, and I continue to find that the SKAT Experts failed to demonstrate that the pension plans did not

---

[12] ESMA, "Report to the European Commission: CSDR Internalised Settlement," November 5, 2020, at p. 25 reporting that total internalized settlement in equities was, at a minimum, 15.8 trillion euros per quarter for the period from the second quarter of 2019 through the third quarter of 2020 *available at* https://www.esma.europa.eu/sites/default/files/library/esma70-156-3729_csdr_report_to_ec_-_internalised_settlement.pdf (last accessed on January 31, 2022).

have an economic claim (including any dividends) to the Danish shares they purchased at cum-dividend prices.

  i.   The SKAT Experts' failure to locate holdings in Danish shares at some of the Solo sub-custodians[13] is not sufficient to demonstrate that the pension plan purchases were fake. The SKAT Experts ignore the fact that, as discussed above, if Solo Custodians settled the trades through the well-accepted and common practice of internalized settlement and netting, then the shares purchased by the pension plans would not show up in Solo Capital's omnibus accounts with various sub-custodians. Further, there would not even be any parallel book entries in the omnibus accounts, as was the case for the flex futures.

  ii.  The flex futures contracts that the pension plans traded were required to be reported to BClear for processing and clearing, and, for the contracts I reviewed, I find that Solo Capital fulfilled that requirement through JP Morgan, one of its sub-custodians. As the SKAT Experts are aware, the contracts are clearly reflected in the statements issued by JP Morgan, a sub-custodian through which Solo Capital accessed BClear.[14] In other words, the SKAT Experts fail to consider that the pension plans' ownership of Danish securities that should be reflected with a sub-custodian (*i.e.*, flex futures) do appear in Solo Capital's subaccount statement from JP Morgan.

  iii. Mr. Wade is aware of the flex futures trading and resulting positions reflected in Solo Capital's JP Morgan account. Nonetheless, in the Wade Report, he characterizes the trading in flex futures as "fictitious."[15] Because the

---

[13] *See, e.g.*, Wade Rebuttal Report ¶12.

[14] *See, e.g.*, SCPADMINISTRATORS_00047101-7 (August 2012 JPMorgan statement showing TDC flex futures trades); SCPADMINISTRATORS_00045387-401 at SCPADMINISTRATORS_00045387 (September 2012 JPMorgan statement showing TDC flex futures trades); ELYSIUM-01460217 (March 2013 JPMorgan statement showing Novo Nordisk flex futures trades); SCPADMINISTRATORS_00041860-2757 (JPMorgan statements throughout 2013 showing flex futures trades for various Danish securities in which the bellwether plans made trades).

[15] Wade Report ¶256.

statement shows two offsetting contracts (*i.e.*, one that encompasses a right to buy shares at a later date and the other that encompasses a right to sell shares at the same later date), Mr. Wade asserts the trades were "ostensibly" executed by two different Solo clients, and, allegedly fake because the offsetting contracts "meant that Solo itself never held an open futures position."[16]  As I explained above,  the offsetting entries show up in JP Morgan's account statement because of the clearing and processing requirements for flex futures.  None of the SKAT Experts have provided any evidence that the statements issued by JP Morgan are fake.

    iv.    Further, in his rebuttal report, Mr. Wade changes his position and characterizes flex futures trading as wash trading instead of fictitious.[17] Under various regulations that Mr. Wade cites, wash trading in the flex futures would require that the buy and sell orders for the contracts with otherwise the same terms reflected in Solo Capital's omnibus account were done by the same beneficial owner.  Mr. Wade is again incorrect because the offsetting flex futures contracts that Solo Capital facilitated were indeed on behalf of "two separate clients"[18] and, Mr. Wade has not shown otherwise in his rebuttal report.  In fact, as Mr. Wade should be aware, on any given date, none of the pension plans traded flex futures more than once – either for opening the hedge or unwinding the hedge.  Therefore, contrary to Mr. Wade's assertions, the flex futures trades would not be wash trades under the regulations that Mr. Wade cites, let alone fake.[19]

    v.    Because shares in Danish companies are dematerialized, the shares held in a given stock would be reflected in the pension plans' accounts as electronic book entries and on the associated account statements.  Further, the

---

[16] *Id*.

[17] Wade Rebuttal Report ¶120.

[18] *Id* at ¶256.  *See* ELYSIUM-01746161 for Solo's response to an inquiry from JP Morgan verifying that the transactions were for different beneficial owners.

[19] Wade Rebuttal Report ¶127.

**Reply Report of Emre Carr, Ph.D., CFA**

Bellwether Plans received, among other communications, confirmations informing them that their stock purchases were executed. The confirmations were issued by regulated IDBs. The SKAT Experts do not provide evidence that these electronic book entries, account statements, trade confirmations, or other related communications (*e.g.*, approvals under give-up agreements) are "fictitious."

vi.  Mr. Wade repeatedly claims that the transactions had "unusual" or "irregular" terms and they were not the "market standard."[20] First of all, these claims do not speak to the legitimacy of the trades because "unusual" transactions can be real transactions. Second, Mr. Wade implicitly asserts – without basis – that requirements for standard on-exchange transactions apply to the OTC markets. As Mr. Wade acknowledges, the OTC transactions are "bespoke" transactions.[21] Given the "bespoke" nature of the transactions, there is no reason that the transactions should, much less must, conform to Mr. Wade's view of purported standard on-exchange practices.

vii.  The SKAT Experts ignore that an investor's economic exposure to a stock starts when a stock purchase is executed and is not impacted by how the custodian settles the trade or the identity of the counterparty to the trade. In fact, in his discussion of settlement risk, Mr. Wade implicitly acknowledges that an investor's economic exposure to a stock starts when a trade is executed.[22]

viii.  The fact that an investor received substitute dividend payments does not support the SKAT Experts' assertions that the stock purchases executed under the Pension Plan Strategy were fabricated. From an economic perspective, a tax-exempt investor like a pension plan buying shares prior to

---

[20] *See, e.g.*, *Id* at ¶¶ 16 and 241.

[21] *Id.* at ¶90.

[22] *Id* at ¶50 discussing settlement risk of the RJM Plan's purchase of Maersk B stock. In Mr. Wade's example, if the plan's exposure did not start until the settlement date (*i.e.*, not on the execution date), there would not be any settlement risk.

**Reply Report of Emre Carr, Ph.D., CFA**

an ex-dividend date has a claim to the same amount irrespective of whether the amount is labeled as a "real" or "substitute" dividend. Further, even the payment sourced from an issuer may be labeled as "real" or "substitute." For example, a purchaser in a Cum-Cum[23] trade that fails to settle on time and instead settles after the dividend record date will receive the same amount that the purchaser would have received had the trade settlement not been delayed. The only difference is that the amount received when a trade settles after the record date will be labeled a "substitute dividend" instead of a "real dividend" (as would have been the case without a settlement delay). Mr. Wade conflates an analysis of whether dividends are "real" (to use his term) versus "substitute" with an analysis of whether the underlying transactions are real or are fictitious. The label (*i.e.*, real or substitute) for dividends in a transaction depends on its terms and operational details, such as the one discussed above for the Cum-Cum trade, and does not constitute a basis for asserting that the transactions are fictitious.

ix.   Contrary to Mr. Wade's assertion,[24] a Cum-Ex stock purchase is different from entering into a forward contract that gives a party the right to buy shares of the same stock on the intended settlement date for the stock purchase. An investor buying a forward contract generally does not have an economic claim to dividends declared by the underlying stock, whereas, as I discussed earlier, an investor buying shares in a Cum-Ex transaction at cum-dividend prices has an economic claim to receive dividends.

x.   Mr. Wade's assertions about my trade analysis are fundamentally flawed. Mr. Wade relies on assertions about parties that are not part of this

---

[23] I refer to Cum-Ex and Cum-Cum transactions to have the same meaning as in the Carr Rebuttal Report. *See* Carr Rebuttal Report ¶85 and n. 105.

[24] *Id* at ¶144.

## Reply Report of Emre Carr, Ph.D., CFA

litigation.[25]  Mr. Wade also presents an unusual calculation that curiously excludes both the tax reclaim and transactions costs from the profit calculations to assert zero net cash flows.[26]  As Mr. Wade agrees, the "theoretically correct" way to do the calculation is to include all payoffs (including tax reclaims) and all transaction costs (including all brokerage, custody, and other fees), as I did.  As I showed in my rebuttal report, such calculations that include these amounts do not find zero net cash flows.

xi.   The SKAT Experts' repeated assertions that the transactions were "circular" does not demonstrate that the pension plan transactions were fake.[27] In fact, the SKAT Experts do not define what they mean by circular.  Often they just present figures showing a series of transactions, some of which are between parties outside this litigation, that they connect with arrows purportedly completing a circle.  Relatedly, the SKAT Experts also assert that "the very same shares" were used in the various legs of the purported circular transactions.[28]  As shares are dematerialized, it does not make sense to talk about the "very same shares" without examining what other transactions the entities involved in those transactions might have undertaken.  Furthermore, the SKAT Experts do not provide any evidence demonstrating that the pension plans were aware of the transactions to which they were not a party or the identity of the counterparties in those transactions.  The pension plans' trade confirmations from IDBs and account statements from Solo did not provide information about the other side of their stock and futures trades.

---

[25] As I explained in the Carr Rebuttal Report, the SKAT Experts rely on information about parties not involved in this litigation, and the correctness of those assertions cannot be evaluated given absence of those parties from this litigation.  For example, both the SKAT Experts have repeatedly asserted that Solo Capital used only three sub custodians, and my review found at least one more sub custodian – the National Bank of Abu Dhabi – that the SKAT Experts fail entirely to address.

[26] *See, e.g.,* Wade Rebuttal Report ¶38.

[27] *See, e.g., Id* at ¶106 and Dubinsky Report ¶17.

[28] *See, e.g.,* Dubinsky Report ¶17, and Wade Report ¶128.

### Reply Report of Emre Carr, Ph.D., CFA

xii.   Mr. Wade also raises some regulatory compliance, disclosure, and capital adequacy issues related to Solo Capital and certain IDBs.[29]  Even if these firms' regulatory compliance and capital adequacy were deficient in some respect, these deficiencies do not invalidate the pension plans' stock trades, which, as noted above, were executed and settled and reflected in trade confirmations, account statements, and related communications.  Relatedly, I note that Solo Capital had a relationship with the LSE for the use of UnaVista, a software platform provided by LSE to facilitate, among other things, trade reporting by brokers.[30]

12.  In short, I find that the SKAT Experts have failed to demonstrate the trades were not real.  Their assertions are directly contradicted by the following:

   i.    The Bellwether Plans placed orders to purchase shares of real Danish companies;

   ii.   The purchases were executed by external, regulated IDBs, and supported by trade confirmations, other related communications, and various agreements (*e.g.*, give-up agreements, custody agreements, etc.);

   iii.  The purchases were executed at cum-dividend market prices, *i.e.*, the market prices at which other real trades with a claim to dividend were executed on exchanges;

   iv.   The share purchases were cleared and settled by a real broker/custodian; and

   v.    The share purchases and other related transactions are reflected through book entries in the plans' account statements.  For flex futures, the transactions are also reflected through book entries in the statements issued by JP Morgan.

---

[29] *See, e.g.*, Wade Rebuttal Report p. 62.

[30] *See, also*, files attached in ELYSIUM-02456224.eml and ELYSIUM-04736480.eml.  Based on ELYSIUM-04280092.msg, it is my understanding that the email attachments are the end of the day transaction reports that Solo Capital prepared for the LSE reporting.

Reply Report of Emre Carr, Ph.D., CFA

13. In her report, Ms. Toube offers a purely legal analysis and interpretation of certain custody agreements under English law.  Her opinions do not substantively address, much less impact, my finding that, from an economic perspective, a pension plan's exposure to a stock (including its dividends) started as soon as the trade was executed at a cum-dividend price.

## II.    THE BELLWETHER PENSION PLANS ALL ENGAGED IN THE PENSION PLAN STRATEGY, A TAX-ADVANTAGED STRUCTURED FINANCE TRANSACTION TO CAPTURE DIVIDENDS USING NUMEROUS ACCEPTED MARKET PRACTICES

14. In the Initial Carr Report, I discussed the Analyzed Transactions.[31]  I refer to the various trades and associated hedging activity related to one hedged dividend capture transaction as described in the Initial Carr Report as a "Transaction."[32]

15. I understand the parties have now agreed to 13 additional pension plans as Bellwether Plans.  I have since reviewed two Transactions related to Danish stock by each of the 13 other Bellwether Plans (the "Other Analyzed Transactions").  As described above, collectively, I refer to Analyzed Transactions and Other Analyzed Transactions as the "Bellwether Transactions."

16. As I noted in the Initial Carr Report, the Analyzed Transactions followed the Pension Plan Strategy.  I find that the Other Analyzed Transactions similarly followed the Pension Plan Strategy.  Similar to the Analyzed Transactions described in the Initial Carr Report, the Other Analyzed Transactions involved an opening and unwind structure.  In each of the transactions, the opening leg of the transaction included the following components: shares were purchased, futures or forward contracts on the same stock were sold, and the purchased shares were loaned out by the plans.  The unwind leg of the transaction included the following components: the shares were sold, the futures or forward contracts on the same stock were purchased, and the

---

[31] *See* Initial Carr Report § VIII, for a detailed discussion of the Analyzed Transactions involving the RJM Plan and the Proper Pacific Plan.

[32] *Id.*

## Reply Report of Emre Carr, Ph.D., CFA

loaned-out shares were recalled by the plans.[33]  **Exhibit 3** presents a summary of numerous characteristics of the Other Analyzed Transactions.[34]

17.  Similar to the Analyzed Transactions described in the Initial Carr Report, the Other Analyzed Transactions followed accepted market practices.  I examined documents for those transactions that included industry-standard templates underlying various agreements, trade acknowledgments, approvals, and confirmations as part of the trade documentation.  I also examined give-up agreements or broker agreements in relation to trade executions and the industry-standard GMSLA for stock lending transactions.  Many of the plans also had custody account agreements.

18.  In **Appendix A,** I explain one of the Other Analyzed Transactions by the Delvian Plan.  The transaction was initiated in 2014 and related to TDC shares issued by TDC Holding A/S, a large Danish company.

19.  Further, as I explained in the Carr Rebuttal Report, the Pension Plan Strategy involved numerous transactions by the pension plans and is an example of a structured finance transaction.  Structured transactions, especially complex ones, are facilitated by financial intermediaries.[35]

---

[33] In some of the Other Analyzed Transactions, if the Pension Plan had not yet unwound its stock trade by the futures or forward contract expiration date, it would purchase a futures or forward contract with the same maturity date as the one it had sold before that maturity date to close its position and sell another futures or forward contract with a later maturity date.  For example, in Basalt Ventures' March 2015 transaction involving Carlsberg, Basalt Ventures sold a forward contract on March 26, 2015, with a maturity date of June 19, 2015, as part of the opening leg. It purchased the same contract on June 16, 2015, and sold another forward contract on June 16, 2015, with a maturity date of September 18, 2015.  It then purchased on June 30, 2015, a contract with a maturity date of September 18, 2015, as part of the unwind leg including the stock sale and stock loan recall on the same date. *See* **Exhibit 3.**

[34] This exhibit includes the following information: pension plan name; ticker of the underlying equity; ex-dividend date; details related to the equity purchases and sales including trade date, settlement date, IDB name, share quantity, and per share price; details related to the derivative sales and purchases including trade date, counterparty or IDB, security type, settlement type, maturity date, contract quantity, and contract price; and details related to the securities loan and recall including loan term start date, loan term end date, counterparty, and quantity.

[35] I note that it is not unusual for a broker to be active in facilitating investors' trades even when they are not complex.  For example, when companies offer shares in initial public offerings or secondary offerings, brokers establish the allocations of those shares to various investors before the offering is closed.

Reply Report of Emre Carr, Ph.D., CFA

20.  A notice for an interagency statement ("Interagency Notice") requesting public comments explains the definition and key risks of complex structured finance transactions as follows:

> *Structured finance transactions encompass a broad array of products with varying levels of complexity. This guidance addresses complex structured finance transactions, which usually share several common characteristics. First, they typically result in a final product that is often non-standard and structured to meet the specific financial objectives of a customer. Second, they often involve professionals from multiple disciplines within the financial institution and may have significant fees or high returns in relation to the market and credit risks associated with the transaction. Third, they may be associated with the creation or use of one or more special purpose entities (SPEs) designed to address the economic, legal, tax or accounting objectives of the customer and/or the combination of cash and derivative products. Finally, and perhaps most importantly, they may expose the financial institution to elevated levels of market, credit, operational, legal or reputational risks. These criteria are not exclusive and institutions should supplement or modify these criteria as appropriate to reflect the institution's business activities and changes in the marketplace.*[36]

21.  Thus, structured transactions, among other things, are non-standard transactions that can be used to achieve specific economic, tax, or other objectives and involve "elevated levels of market, credit, operational, legal or reputational risks."[37]

## III.    OWNERSHIP OF DEMATERIALIZED SECURITIES IS TRACKED THROUGH BOOK ENTRIES; BOTH TRADE CONFIRMATIONS AND THE

---

[36] U.S. Securities and Exchange Commission, "Policy Statement: Interagency Statement on Sound Practices Concerning Complex Structured Finance Activities," section titled ""II. DEFINITION AND KEY RISKS OF COMPLEX STRUCTURED FINANCE TRANSACTIONS," *available at* https://www.sec.gov/rules/policy/34-49695.htm (last accessed on January 23, 2022).

[37] *Id*.

Reply Report of Emre Carr, Ph.D., CFA

**CUSTODIAN STATEMENTS CONFIRM THAT THE PENSION PLAN TRADES WERE REAL**

22. As discussed in both the Initial Carr Report and the Carr Rebuttal Report, Danish shares are dematerialized.[38] That is, there are no physical certificates for Danish shares, only book entries that track trading and ownership, often in electronic form.[39]

23. The London Stock Exchange notes that settled transactions are to be "recorded in **electronic form**."[40]

24. Thus, book entries are commonly used by all involved parties, including custodians, to track shareholdings. As a result, investors, such as pension plans, necessarily rely on book entries to track their ownership of dematerialized securities.

    **A.**     **Mr. Dubinsky's Assertion That Solo Capital Fabricated Trade Confirmations and Account Statements Is Fundamentally Flawed**

25. Mr. Dubinsky claims that "**Solo Capital fabricated** supporting documentation such as trade confirmations and account statements..."[41] He also asserts that the conclusions in the Initial Carr Report "are premised on the false presumption that the purported securities transactions reflected in the trade confirmations and **book entries on the customer account statements had in fact occurred**."[42]

26. As an initial matter, I note that Mr. Dubinsky, on the one hand, discounts the presence of "simply a book entry" as having provided evidence that the trades were real,[43] but, on the other hand, he reviewed bank statements in his effort to find "evidence that Solo Capital or the Plans received dividend payments in their

---

[38] Initial Carr Report ¶29 and Carr Rebuttal Report ¶80.

[39] *See, e.g.*, Regulation (EU) No 909/2014 Of The European Parliament And Of The Council of 23 July 2014 on improving securities settlement in the European Union and on central securities depositories and amending Directives 98/26/EC and 2014/65/EU and Regulation (EU) No 236/2012, Art. 2.1(4) ("dematerialised form' means the fact that financial instruments exist **only** as book entry records") (emphasis added).

[40] London Stock Exchange, "Rules of the London Stock Exchange: Rule Book," Effective July 1, 2019, *available at* https://docs.londonstockexchange.com/sites/default/files/documents/rules-lse.pdf (last accessed on February 10, 2022) (emphasis in original).

[41] Dubinsky Rebuttal Report ¶8 (emphasis added).

[42] *Id* at ¶7(emphasis added).

[43] *Id* at ¶18.

**Reply Report of Emre Carr, Ph.D., CFA**

respective bank accounts."[44]  In other words, Mr. Dubinsky looked for records of book entries to confirm that the dividends were received.

27.  Mr. Dubinsky's assertion that Solo Capital fabricated share trade confirmations seems to be based on a misunderstanding that Solo Capital issued the trade confirmations when in fact, external IDBs issued those confirmations.  He ignores the standard practice of give-ups under which a broker executes the trade and gives that trade to another broker for clearing and settlement[45] and mischaracterizes Solo Capital's written approvals of trades under the terms of the give-up agreements as trade confirmations.  As I explained in the Carr Rebuttal Report by way of example, Mr. Dubinsky fails to acknowledge the trade confirmation issued by FGC securities and instead suggests that Solo Capital's corresponding trade approval under the terms of the give-up agreement was the relevant trade confirmation.[46]

28.  Mr. Dubinsky does not provide any evidence to support his assertion that trade confirmations and book entries are "fabricated" other than to note that there were no shares at some of Solo Capital's sub-custodians.[47]

29.  Mr. Dubinsky's claim of trades and book entries being fake based on his purported claim of "no shares" shows that he fails to consider the process of internalized settlement.[48]  Similarly, Mr. Wade bases his opinion that the pension plan transactions through Solo Custodians were fake in part on his assertion that there were "no shares."[49]

---

[44] *Id* at ¶¶20-21.

[45] *See* Initial Carr Report ¶¶39-42.

[46] Carr Rebuttal Report ¶33 and Exhibit 2.

[47] Dubinsky Rebuttal Report ¶9 ("the evidence shows that these purported transactions were fictitious as there is no evidence of the underlying Danish shares ever being owned by the purported sellers of the shares or by the Plans and there is no evidence of the related dividend payments ever being received by either Solo Capital as the custodian for the Plans, or for that matter the Plans themselves.")

[48] *Id*.

[49] Wade Rebuttal Report ¶12

Reply Report of Emre Carr, Ph.D., CFA

30.  As I explained in the Carr Rebuttal Report, and again explain below (in Section V), a custodian doing internalized settlement would not need to source the shares externally if the long and short positions are completely offset (as was the case with the pension plan trades).

31.  In his discussion of book entries, Mr. Dubinsky brings up his examination of the Madoff book entries without explaining as to why that examination is relevant for assessing whether the pension plan trades were not real as Mr. Madoff has no involvement in this matter.[50]  Given the fact that virtually all the ownership of securities in both Denmark and in U.S. is tracked through book entries, it would be incorrect to assume that book entries, in general, are unreliable.

32.  Mr. Dubinsky's cursory analogy to the Madoff fraud does not pass scrutiny.  That case involved fabricated internal trading records and DTC reports concerning those fictitious trades.[51]  By contrast, the documentation in this case was issued by several different external parties—like the IDBs and JP Morgan—showing actual stock trades, futures and forwards trades, and stock loans.

33.  Further, in addition to Danish stocks, the pension plans also traded flex futures through BClear, an NYSE Euronext platform.[52]  Mr. Dubinsky also does not explain why BClear flex future securities shown in a JP Morgan sub-custodian account are fake.

## IV.    THE PENSION PLANS HAD AN ECONOMIC CLAIM TO RECEIVE PAYMENTS OF DIVIDEND AMOUNTS BECAUSE THEY PURCHASED SHARES AT CUM-DIVIDEND PRICES

34.  As I explained in the Initial Carr Report, the pension plans' economic ownership of Danish stocks began as soon as their trades were executed by IDBs.  The pension

---

[50] Dubinsky Rebuttal Report n. 13.

[51] *See, e.g.*, Declaration of Bruce G. Dubinsky in *Irving H. Picard v. Saul B. Katz et al.* filed January 26, 2012, Figure 20 showing a "FAKE DTC REPORT" and ¶117 stating that 496 unique transactions "traded outside the daily market traded price range[.]"

[52] Initial Carr Report §IV.B.

Reply Report of Emre Carr, Ph.D., CFA

plans purchased the shares before the relevant stock's "ex-dividend" date and paid cum-dividend prices.

35. As I explained in my initial report, from an economic perspective, the pension plans had an economic claim to dividends because the prices that the pension plans paid for the shares were cum-dividend, *i.e.*, market prices that reflected a claim to forthcoming dividends. Notably, in Denmark, "all transactions made prior to and on the date of the AGM carry an entitlement to the dividend."[53] Consistent with this, a stock ex-dividend date follows the date of the AGM. Mr. Ekstrand, SKAT's corporate representative, confirmed this in his testimony when he testified:

> *Q: So if the shares are purchased on or before the date of the annual general meeting, the purchaser's entitled to the dividend declared at that meeting. ...*
>
> *A: As long as a legal, binding agreement has been made on the purchase and payment, then yes.[54]*

36. The SEC's website explains that "If you purchase a stock on its ex-dividend date or after, you will not receive the next dividend payment. Instead, the seller gets the dividend. If you purchase before the ex-dividend date, you get the dividend."[55]

37. **Exhibit 4** shows the purchase dates of all of the Bellwether Plans' Danish stock purchases, which were consistently before the stock's ex-dividend date. As the Exhibit demonstrates, the date of the issuer's annual general meeting is generally the day before the ex-dividend date for the relevant stock.[56]

---

[53] *See, e.g.*, RBC Investor & Treasury Services, "Market Profiles: Denmark," *available at* https://www rbcits.com/en/gmi/global-custody/market-profiles/market.page?dcr=templatedata/globalcustody/marketprofiles/data/denmark (last accessed on December 17, 2021).

[54] Deposition transcript of Christian Ekstrand, Volume 1, p. 145:8-16.

[55] U.S. Securities and Exchange Commission, "Ex-Dividend Dates: When Are You Entitled to Stock and Cash Dividends," *available at* https://www.investor.gov/introduction-investing/investing-basics/glossary/ex-dividend-dates-when-are-you-entitled-stock-and (last accessed on November 30, 2021).

[56] Two securities, Coloplast B and TDC, had board approvals of interim dividends outside of annual general meetings. For those, the Bellwether Plans' purchase dates also were before the cum-dividend period ended.

**Reply Report of Emre Carr, Ph.D., CFA**

38. In **Exhibit 5,** I compare the prices at which Bellwether Plans purchased stocks in the Bellwether Transactions to prices reported by Bloomberg for trades that occurred on an exchange on that same date.[57]  Since those Bloomberg prices are prices at which trades occurred on an exchange prior to an ex-dividend date, they are cum-dividend prices reflecting an economic claim to the forthcoming dividend payment.[58] As shown in **Exhibit 5**, all Bellwether Transactions involved purchases of shares in Danish securities at cum-dividend market prices (the close price of the day or between the high and low price of the day).

### A.    The SKAT Experts' Claim That The Bellwether Plans Did Not Receive Dividends Is Fundamentally Flawed

39. Mr. Dubinsky asserts that the pension plans did not receive dividends stating that there "is no evidence of funds from dividends being paid to the [Bellwether] Plans' bank account statements..."[59]  However, Mr. Dubinsky's observations are fundamentally flawed for several reasons.

40. First, he ignores that the receipt of dividends (net of taxes) should be reflected in pension plans' account statements with the Solo Custodians and not their retail U.S.

---

[57] Initial Carr Report n. 5 ("I access the Bloomberg database through a Bloomberg terminal. Bloomberg describes the terminal as: 'Sitting on the desks of 325,000 of the world's most influential decision makers, the Bloomberg Terminal is a modern icon of financial markets. Launched in 1981, long before PCs and the internet became ubiquitous, the Bloomberg Terminal brought transparency to financial markets. It connected market participants to a groundbreaking data, analytics and information-delivery service — and revolutionized an industry.'")

[58] As Mr. Wade acknowledges, investors that bought shares at these market prices on the exchange had economic claims to dividend payments.  *See*, *e.g.*, Wade Rebuttal Report ¶142 ("To explain this point in more detail I start by considering what the Ex-Dividend Date actually means. Nasdaq, a company which owns and operates stock exchanges in the U.S. and Europe including the Copenhagen Stock Exchange defines the Ex-Dividend Date as 'the first day of trading when the buyer of a stock is no longer entitled to the most recently announced dividend payment (i.e., the trade will settle the day after the record date, too late for the buyer to appear on the shareholder record and receive the dividend).'" (internal citations omitted)

[59] Dubinsky Rebuttal Report ¶27.

bank accounts.[60]  Because the plans maintained their shareholdings with Solo Custodians, there is no reason for dividends (net of taxes) to show up directly in the pension plans' bank accounts.

41.  Second, even if a pension plan were to transfer amounts equivalent to the dividends it received from its custody account to its U.S. retail bank account, the bank statement would show only a deposit of a corresponding dollar amount.

42.  Finally, his assertion is directly contradicted by SKAT's own practices.  Unlike pension plans whose dividend payments are received in their broker's account, SKAT receives a portion of dividends (*i.e.*, withholding taxes) directly from companies.  According to SKAT itself, there can be situations in which SKAT is deemed to have received a portion of dividends (*i.e.*, withholding taxes) from a company even though there is no record of receipt in SKAT's bank account. SKAT's corporate representative testified that:

> *Q The company in this example has still paid its withholding tax, right?*
>
> *A Yes, because they have a tax credit of 50 million and they have to pay withholding tax of 50 million.  So those amounts even out each other, and so then the account is zero.*
>
> *…*
>
> *Q But there won't be a bank receipt or a SWIFT confirm for the payment of the withholding tax, correct?*
>
> *A No, because there was no bank transfer.* [61]

---

[60] Mr. Dubinsky seems to be aware that dividends received by the plans are reflected in their broker account statements because he finds fault with the way Solo Custodians maintained their records.  He asserts "A legitimate account statement in the real world would show the date a dividend was actually received in the account.  This date should also closely reconcile with the dividend payment date announced by the subject Company. … For 239 of the 257 dividends these Plans purportedly received, the Solo account statement either provides no date on which the payment was supposedly received or provides the dividend ex-date for the particular security." *Id* at ¶22.  Even if Mr. Dubinsky's assertion is correct, his observations only pertain to how Solo implemented its record keeping, not whether the pension plan trades were fake.

[61] Deposition transcript of Christian Ekstrand, Volume 1, pp. 100:3-9 and 101:9-13.

**Reply Report of Emre Carr, Ph.D., CFA**

43.   Mr. Wade makes a number of statements related to the pension plans' dividend claims, including an assertion that my understanding of the nature of Cum-Ex transactions and the meaning of ex-dividend date are both wrong.[62]   His claims are fundamentally flawed.   As discussed below, it is Mr. Wade's assertion of ex-dividend date, cum-dividend prices, and their relationship to economic claims to dividend claims that is fundamentally flawed.

44.   Mr. Wade states that I asserted that "a party had an economic claim to a dividend simply by virtue of the date or price at which a trade was executed,"[63] and characterizes it as a "novel" assertion.   The assertion is not novel.

45.   As I explained in my initial report, and repeated by Mr. Wade, "as soon as a trade is executed, the economic risk associated with holding the underlying shares is instantly transferred from the seller of the shares to the buyer… Upon the trade's execution, the investor immediately bears the economic risk … irrespective of the time taken to complete the 'background' processes of clearing and settling the trade."[64]   Mr. Wade implicitly acknowledges that economic exposure to a trade begins at the time of its execution when he discusses a hypothetical transaction failure "from a customer credit event."[65]

46.   Further, if a stock trade is executed at a cum-dividend price, *i.e.*, a price that reflects an economic claim to dividend payments, then irrespective of the date of the settlement, the purchaser has an economic claim to dividends.

47.   The fact that cum-dividend market prices reflect an economic claim to forthcoming dividends is well recognized.   For example, in December 2011, the London Stock Exchange incorrectly published prices of some securities "as 'ex' prices although the trading in these securities would (unless agreed otherwise) have been on a 'cum'

---

[62] Wade Rebuttal Report, p. 72.

[63] *Id* at ¶147.

[64] *Id* at ¶138.

[65] *Id* at ¶15.   Under Mr. Wade's hypothetical scenario, there would be no impact of a failed trade on Solo if the economic ownership did not start at the time of trade execution.

dividend basis."[66]  Later, the exchange restated those "ex" prices "to include the value of the dividend" and thereby converted them into "cum" prices.[67]

48.    Mr. Wade also asserts that the pension plan trades were fictitious because, although there were no Danish shares at some of Solo Capital's possible sub-custodians, Solo credited the plans' accounts with net dividends.[68]

49.    Mr. Wade's assertion is fundamentally flawed because he curiously ignores the common practice of internalized settlements employed here.  As I explain below (in Section V), a custodian employing internalized settlement would not need to source the shares externally if the long and short sales settling on the same day result in positions that are completely offsetting of each other (as was the case with the pension plan trades).  Therefore, Mr. Wade's observation that he observed no Danish shares at some of Solo Capital's sub-custodians is irrelevant for assessing whether the pension plans had economic claims to dividends for the shares they purchased (which, as discussed above, they did).

50.    In fact, even where shares are purchased on an exchange before the ex-dividend date (*i.e.*, a purchase for which Mr. Wade does not dispute economic dividend claims[69]) dividends can be paid even if the buyer does not receive shares by the record date. In Denmark, "[d]ividend entitlements on trades failing over the record date are claimed from the counterparty in the trade."[70]

51.    Further in support of his argument that the pension plans were not entitled dividends, Mr. Wade states, "[t]here is no economic difference between a Cum-Ex Transaction

---

[66] London Stock Exchange, "Stock Exchange Notice: MF Global UK Limited – Revision of Hammer Prices to Reflect Securities Going Ex-Dividend," December 6, 2011, *available at* https://docs.londonstockexchange.com/sites/default/files/documents/n2411.pdf (last accessed on February 18, 2022).

[67] *Id.*

[68] Wade Rebuttal Report ¶26.

[69] *Id* at ¶142.

[70] RBC Investor & Treasury Services, "Market Profiles: Denmark," *available at* https://www.rbcits.com/en/gmi/global-custody/market-profiles/market.page?dcr=templatedata/globalcustody/marketprofiles/data/denmark (last accessed on December 17, 2021). As discussed above, Mr. Ekstrand's testimony in this matter is consistent with this.

**Reply Report of Emre Carr, Ph.D., CFA**

and a forward contract executed on the day before the Ex-Dividend Date with delivery on the day after the Record Date."[71]  Consistent with this assertion, Mr. Wade claims that the Cum-Ex shares should be priced using the formula for a forward contract.[72]  He also points to the practice of dividend and coupon stripping.[73]

52.  Mr. Wade is wrong.  There is an economic difference between a Cum-Ex share purchase and a share purchase under the forward contract that is entered before the ex-dividend date with a maturity date after the ex-dividend date.  An investor buying such a forward contract typically does not receive dividends.  While a forward contract of the type that Mr. Wade refers to can be priced using a no-arbitrage condition (*i.e.*, investors, in general, do not have an opportunity to make risk-free profits), there is no corresponding unique ex-dividend price at which a stock must trade.

53.  In fact, the purported correct "Cum-Ex" price that Mr. Wade asserts as the correct price for a plan's share purchase was not - and cannot be - known on the day when the plans purchased shares.  Mr. Wade asserts that the Cum-Ex price equals the cum-dividend price less the gross dividend amount.[74]  In other words, on the ex-dividend day, a stock's price declines by the full dividend amount.  Contrary to Mr. Wade's assertion, academic research has shown that the stock price typically falls by an

---

[71] Wade Rebuttal Report ¶141.  The opinion Mr. Wade offers seems to be a legal opinion as he asserts that "In actual practice, each transaction must be viewed in its totality and with proper regard to the terms of the trade, which, although often executed in shorthand terms are **nevertheless part of a legal contract** for the purchase and sale of shares.  A proper analysis shows that the Solo Cum-Ex purchases **were contracts** to acquire shares after the dividend's Record Date. Therefore, irrespective of the date the trades were executed, the **rights purchased under the contract do not include the right to a dividend**." (*Id* at ¶139, emphasis added). I do not offer any opinion in response to the extent Mr. Wade is offering a legal opinion.

[72] *Id* at ¶145.

[73] *Id* at ¶147

[74] *Id* at ¶146.

amount less than the gross dividend due to the presence of taxes.[75]  Further, the decline cannot be predicted with precision.

54.    Mr. Wade's discussion of dividend and coupon stripping merely points to an ability to separate dividends from the shares, and does not demonstrate that the no-arbitrage conditions were violated by the pension plans' purchase of the shares at the prevailing market prices cum-dividend.  The pension plans acquired an economic claim to both the shares and dividends.

55.    Furthermore, Mr. Wade asserts that, under Cum-Ex, there is no limit on "the [tax] reclaims that could have been claimed."[76]  In my opinion, Mr. Wade's assertion is rhetorical as the assertion relates to ascertaining the possibility of how many trades pension plans could have done and does not demonstrate that the transactions that the Bellwether Plans, in fact, did were fake.

56.    In short, the pension plans had an economic claim to dividend payments because they purchased shares at cum-dividend prices.

---

[75] Frank, Murray, and Ravi Jagannathan, "Why do stock prices drop by less than the value of the dividend? Evidence from a country without taxes," *Journal of Financial Economics* 47, no. 2 (1998): 161-188, noting "In a perfect Walrasian market with no taxes or transactions costs, **on the ex-dividend day share prices would fall by exactly the value of the dividend that is paid** on each share. It is well known that in fact, on average share prices do not fall by the full amount." (emphasis added)

[76] Wade Rebuttal Report ¶27.

Reply Report of Emre Carr, Ph.D., CFA

## V.    THE SKAT EXPERTS IGNORE INTERNALIZED SETTLEMENT AND NETTING; MR. WADE INCORRECTLY ASSERTS THAT FLEX FUTURES TRADES WERE WASH TRADES

57.    The SKAT Experts repeatedly assert that the transactions were not real because there were no Danish shares at some[77] of Solo Capital's sub-custodians.[78]  Mr. Dubinsky simply ignores internalized settlement and netting.  Mr. Wade, in his initial report, incorrectly characterized a custodian's ability to net settle offsetting transactions as "theoretical."[79]  In the Wade Rebuttal Report, he asserts that "Solo trades could not have been and were not actually ever settled."[80]  He asserts that Solo did not settle because Solo was netting offsetting positions between clients, and the practice "is not one that any reputable custodian would have permitted."[81]

58.    As discussed in detail below, the internalized settlement, including netting offsetting transactions, is a well-accepted and common practice recognized by reputable institutions such as Denmark's central securities VP, ESMA, Bank of England, and the LSE.  The practice is very common and was formally recognized in EU

---

[77] Mr. Wade asserts that "There is no evidence to suggest that Solo itself was a member of VP Securities. **Only JP Morgan, SEB, or Société Generale**, in their roles as sub-custodians, could have settled securities transactions for Solo on behalf of its clients and the confirmations referenced above make clear that they did not." (*Id* at ¶14, emphasis added).  As discussed in the Rebuttal Carr Report, there is no way for the SKAT Experts to be certain that there were only three sub custodians (*i.e.*, JP Morgan, SEB, or Société Generale).  For example, they do not seem to be aware of the National Bank of Abu Dhabi being a sub custodian for Solo Capital.  (Carr Rebuttal Report n. 64).

[78] *See*, *e.g.*, Wade Rebuttal Report p. 6. ("there were no shares"), Dubinsky Rebuttal Report ¶7 ("Carr did not perform a forensic accounting investigation to confirm whether the underlying Danish shares ever existed in the 2 transactions, or for that matter in any of the 2,559 purported Solo Trades") and ("had these trades been real, the underlying Danish shares would have been held in custody at one of the sub-custodians used by Solo Capital, and Solo Capital's extensive records would have contained many documents reflecting such holdings at the sub-custodians").

[79] Wade Report ¶238.

[80] Wade Rebuttal Report ¶18.

[81] *Id* at ¶19 ("It is my understanding that Solo's position is that two offsetting positions between clients justify Solo's unilaterally creating entries in its records as if the Pension Plans had established a real long position in the shares without regard to the existence of shares or cash to support those positions.  This position is plainly wrong and is not one that any reputable custodian would have permitted.  Solo's position overlooks the fact that to create a genuine position the custodian needs to settle the transactions.")

regulations in 2017.[82]  An ESMA report shows that equity trades worth trillions of Euros were settled through internalized settlement.[83]

59.    Further, as recognized by ESMA, there was no requirement for even parallel book entries in Solo Capital's omnibus account with a sub-custodian under the internalized settlements similar to those done by the Solo Custodians.  Therefore, Solo Capital's omnibus accounts would not show any book entries related to the pension plan share purchases.

60.    In contrast, the flex futures contracts that the pension plans traded were required to be reported to BClear for processing and clearing, and, for numerous contracts, I find that Solo Capital fulfilled that requirement through JP Morgan, one of its sub-custodians.  As the SKAT Experts are aware, the contracts are clearly reflected in the statements issued by JP Morgan, a sub-custodian through which Solo Capital accessed BClear.  In other words, the SKAT Experts fail to consider that the pension plans' ownership of Danish securities that should be reflected with a sub-custodian (*i.e.*, flex futures) do appear in Solo Capital's account statement from JP Morgan.  None of the SKAT Experts have provided any evidence that the statements issued by JP Morgan are fake.  In fact, the SKAT Experts rely on the JP Morgan statements and declarations to assert that the omnibus accounts did not have any Danish shares.

    i.    In his initial report, Mr. Wade characterized  the pension plan's trading in BClear flex futures as "fictitious."[84]  In his rebuttal report, Mr. Wade corrects

---

[82] European Banking Federation, "EBF Response to ESMA's CSDR Guidelines on Internalised Settlement Reporting," September 14, 2017, p. 3, *available at* https://www.ebf.eu/press-news/consultations/consultation-guidelines-internalised-settlement-reporting-under-article-9 (last accessed on February 18, 2022) ("Furthermore, Art. 1 para 1 of Regulation (EU) 2017/391 **defines that 'internalised settlement instruction'** means "an instruction by a client of the settlement internaliser to place at the disposal of the recipient an amount of money or to **transfer the title to, or interest in, a security or securities by means of a book entry** on a register, or otherwise, which is settled by the settlement internaliser **in its own books and not through a securities settlement system**.") (emphasis added).

[83] ESMA, "Report to the European Commission: CSDR Internalised Settlement," November 5, 2020, at p. 25 reporting that total internalized settlement in equities was, at a minimum, 15.8 trillion euros per quarter for the period from the second quarter of 2019 through the third quarter of 2020 *available at* https://www.esma.europa.eu/sites/default/files/library/esma70-156-3729_csdr_report_to_ec_-_internalised_settlement.pdf (last accessed on January 31, 2022).

[84] Wade Report ¶256.

himself and characterizes flex futures trading as wash trading instead of fictitious.  As discussed in detail below, contrary to Mr. Wade's assertions, the flex futures trades would not even be wash trades under the regulations that Mr. Wade cites, let alone fake.

**A.    Mr. Wade's Claim That The Stock Trades Were Not and Could Not be Settled Is Fundamentally Flawed And Ignores The Common Practice of Netting In Settlement**

61.    Mr. Wade is incorrect when he asserts that settlement through netting offsetting positions is not a practice any "any reputable custodian would have permitted."[85]  In fact, the settlement model used by VP, Denmark's CSD, is a DVP settlement model that allows for simultaneous net settlement of funds and securities.[86]  As Mr. Wade acknowledges, Solo Capital used a DVP settlement and did simultaneous net settlement of funds and securities.[87]  Therefore, Mr. Wade's assertion that no reputable custodian would do simultaneous net settlement of funds and securities is incorrect and nothing more than his *ipse dixit*.  I assume that the SKAT Experts would consider VP to be a reputable custodian.[88]

---

[85] Wade Rebuttal Report ¶19 ("It is my understanding that Solo's position is that two offsetting positions between clients justify Solo's unilaterally creating entries in its records as if the Pension Plans had established a real long position in the shares without regard to the existence of shares or cash to support those positions. This position is plainly wrong and is not one that any reputable custodian would have permitted.  Solo's position overlooks the fact that to create a genuine position the custodian needs to settle the transactions.")

[86] VP uses DvP Model 3 (for its settlement system) that also allows for net simultaneous settlement of funds and securities.  *See, e.g.*, BIS, "Glossary: DvP Model 3," *available at* https://www.bis.org/cpmi/publ/d00b htm?&selection=125&scope=CPMI&c=a&base=term (last accessed on January 17, 2022).

[87] Wade Rebuttal Report ¶20.

[88] Mr. Wade also asserts that "had the Solo transactions been genuine, independent trades, it is highly unlikely that Solo could have met Denmark's VP Securities' liquidity buffer requirements."  (*Id* at ¶15)  Mr. Wade does not explain what he means by independent trades.  If by independent, he implies that there were no offsetting transactions by other Solo clients, his observation refers to a hypothetical that did not occur and is therefore irrelevant.  For the transactions that the pension plans executed, Mr. Wade's observation is incorrect because the Rule book states that "In each Batch, net purchases must have cash coverage," and then goes on to discuss related liquidity buffers.  (Euronext Securities, "Part 4 – VP Rule Book: Settlement Rules," February 1, 2022, §7.1.3, *available at* https://www.vp.dk/Legal-Framework/VP-Rulebook (last accessed on February 22, 2022))  Since the clients of Solo Custodians engaged in offsetting purchases and sales of shares of Danish stocks, net purchases would be zero, rendering Mr. Wade's observation moot and irrelevant.

**Reply Report of Emre Carr, Ph.D., CFA**

62.    Additionally, as I noted in my rebuttal report, Mr. Wade is aware that a custodian can settle multiple trades simultaneously and net settle offsetting transactions. However, he characterizes it only as a theoretical possibility.[89]  Contrary to Mr. Wade's assertion, "the ability to net settle offsetting" transactions is not theoretical. As I explained in my rebuttal report, the settlement by a custodian without external sourcing of securities is known as internalized settlement and is quite common.  Mr. Wade also fails to consider that internalized settlement is so common that equity trades worth trillions of Euros have been settled through internalized settlement.[90] Even EU Regulations issued in July 2014 specifically recognize internalized settlement,[91] and, as of 2019, ESMA not only explicitly acknowledged internally settled transactions, but it also required them to be reported.[92]

63.    Netting, in general, is very common.  Even SKAT uses netting in assessing its taxes. For example, as SKAT admitted in its responses to an interrogatory:

> *company taxes are paid on a balance principle, in which a company's tax liabilities to SKAT are aggregated and offset by any tax credits/refunds due from SKAT to that company.*[93]

64.    As I noted earlier, SKAT's corporate witness, Mr. Christian Ekstrand too testified that because a company's tax credits and liabilities are netted, there can be a

---

[89] Wade Report ¶189.i discussing simultaneous settlement.  Mr. Wade also acknowledges that it is possible to settle trades by netting when he notes: "Notwithstanding the theoretical ability to **net settle offsetting DVP transactions**..."  *Id* at ¶238 (emphasis added).

[90] ESMA, "Report to the European Commission: CSDR Internalised Settlement," November 5, 2020, p. 25 reporting that total internalized settlement in equities was, at a minimum, 15.8 trillion euros per quarter for the period from the second quarter of 2019 through the third quarter of 2020 *available at* https://www.esma.europa.eu/sites/default/files/library/esma70-156-3729_csdr_report_to_ec_-_internalised_settlement.pdf (last accessed on January 31, 2022).

[91] Regulation (EU) No 909/2014 Of The European Parliament And Of The Council of 23 July 2014 on improving securities settlement in the European Union and on central securities depositories and amending Directives 98/26/EC and 2014/65/EU and Regulation (EU) No 236/2012, Chapter IV, "Internalised Settlement."

[92] ESMA, "Guidelines on Internalised Settlement Reporting Under Article 9 of CSDR," April 30, 2019, pp. 3-4, *available at* https://www.esma.europa.eu/sites/default/files/library/esma70-151-367_csdr_guidelines_on_internalised_settlement_reporting.pdf (last accessed on February 18, 2022).

[93] Plaintiff Skatteforvaltningen's Amended Response And Objections To Interrogatory No. 10 From Defendants' Second Set Of Interrogatories, p. 4.

situation in which SKAT does not receive any money from a company in its bank account, and yet the company is considered to have paid its withholding tax.[94]

65. Mr. Wade also asserts that Solo could not do DVP settlement stipulated in its custody agreements "without first having actual shares in the custodian's possession."[95] In support, Mr. Wade cites an EU regulation that "prohibit[s] the creation or reduction of issued securities."[96] Mr. Wade's assertion is wrong because he conflates legal ownership with economic ownership. Consider an example in which investor A owns 100 shares and lends 100 shares to investor B. If investor B sells 100 shares to investor C, there are economic claims to 200 shares because a) investor A retains its economic exposure,[97] and b) investor C also has an economic exposure because of the purchase.

66. Under Mr. Wade's interpretation of the EU regulation, the transactions described in the example would not be possible. In other words, there would be no security lending or short-selling in any stock in Europe - an incorrect fact that he should be aware of as a structured finance professional.

67. The creation of economic exposure to shares beyond those that a company has issued is quite commonly done through short selling. As discussed in the Initial Carr Report, short interest on GameStop reached a high of over 100% of both the shares outstanding and float in late 2020 and early 2021.[98] Danish shares are also sold short and short positions are reported through the Danish Financial Supervisory Authority.[99]

---

[94] Deposition transcript of Christian Ekstrand, Volume 1, pp. 95-101.

[95] Wade Rebuttal Report ¶20 (internal citations omitted).

[96] *Id* at ¶21.

[97] Initial Carr Report ¶98 ("The lender of the securities maintains his economic exposure to the securities.")

[98] *See id* at ¶107.

[99] *See* Danish Financial Supervisory Authority, "Published Net Short Positions," available at https://www.dfsa.dk/Rules-and-Practice/Short-selling/Published-net-short-positions (last accessed on February 24, 2022). *See, also,* **Exhibit 5** showing the reported short interest for the securities in the Bellwether Plan Transactions as of the relevant ex-dividend dates.

Reply Report of Emre Carr, Ph.D., CFA

68.  Mr. Wade incorrectly asserts that Solo Capital could not settle trades based on its customers' net positions.[100]  Mr. Wade's assertion is contradicted by the LSE Rule book, which explicitly recognizes zero cash and zero stock position as a possible outcome in a net settlement:

> *Under the terms of the central counterparty netting service, a net settlement **which results in a zero cash and zero stock position** may still be created, 'settle' on ISD [intended settlement date] and be time-stamped at the time of settlement.*[101]

69.  I assume that the SKAT Experts would consider the London Stock Exchange to be a reputable institution.

70.  Mr. Wade contends, "Solo could not have settled these transactions because it did not actually have the shares or sufficient cash for all of the transactions it purported to undertake."[102]  Mr. Wade's position is directly contradicted by the Bank of England Policy Statement that I cited in my rebuttal report:

> *4.19 Internalisation: If a PB [Prime Broker] has two clients that are taking opposite positions on the same asset (one long, the other short), the PB may internally **net these amounts to avoid having to fund the positions elsewhere**: a client short position is therefore funding a client long position.  Liquidity risk arises if one client wishes to withdraw from their transaction: the PB will either need to find additional funding or will need to purchase or borrow the asset to match the remaining transaction.*[103]

---

[100] Wade Rebuttal Report ¶19 ("It is my understanding that Solo's position is that two offsetting positions between clients justify Solo's unilaterally creating entries in its records as if the Pension Plans had established a real long position in the shares **without regard to the existence of shares or cash to support those positions**.") (emphasis added)

[101] London Stock Exchange, "Rules of the London Stock Exchange: Rule Book," Effective July 1, 2019, p. 68, available at https://docs.londonstockexchange.com/sites/default/files/documents/rules-lse.pdf (last accessed on February 10, 2022) (emphasis added).

[102] Wade Rebuttal Report ¶24.

[103] Bank of England Prudential Regulation Authority, "Statement of Policy, Pillar 2 Liquidity," June 2019 Updating February 2018, p. 10, *available at* https://www.bankofengland.co.uk/-/media/boe/files/prudential-regulation/statement-of-policy/2019/pillar-2-liquidity-sop-update-june-2019.pdf?la=en&hash=78618B0A466B17BCF86952AAD06AC14AEE3E4FDE (last accessed on January 31, 2022) (emphasis added).

**Reply Report of Emre Carr, Ph.D., CFA**

71. Another paper published by current and former researchers at Federal Reserve Bank of New York explains that a prime broker can internalize trading activities, and there is no need for sourcing funds externally for client needing financing:

> *Dealers achieve yet another source of collateralized financing efficiency by "internalizing" their trading activities, that is, by using offsetting trading positions between two clients or between clients and the dealer bank to "finance" each other. Similar to the concept of matched book, opportunities to "internalize" can arise via the provision of funds by the dealer bank collateralized by client securities. Those **securities are then reused and delivered into another transaction as a means of financing the client position**. Its name refers to the concept that the bank, in some cases, can source financing for a customer internally, without the need to attract additional funding from the external marketplace for funds.*[104]

B. **The SKAT Experts' Ignore That, Under Internalized Settlement, There Would Be No Book Entries Related To Pension Plan Share Purchases At Any Sub Custodian and Ignore the Book Entries Related to Pension Plan Flex Future Trades That Did Exist at JP Morgan**

72. In 2019, ESMA issued guidelines on the reporting of internalized settlement transactions. The ESMA guidelines specifically mention the type of transactions that the SKAT Experts incorrectly assert to be fake. For example, the guidelines mention:

> *All of the following attributes should be present for a settlement instruction to be **in scope of internalised settlement reporting**:*
>
> *a) a settlement internaliser receives a settlement instruction from a client regarding settlement of a securities transaction and the settlement **instruction is not forwarded in its entirety to another entity along the holding chain**;*
>
> *b) such a settlement instruction results or is supposed to result in a transfer of securities from one securities account to another in the*

---

[104] Kirk, Adam, James McAndrews, Parinitha Sastry, Phillip Weed, "Matching Collateral Supply and Financing Demands in Dealer Banks," *FRBNY Economic Policy Review*, December 2014, p. 134 (emphasis added).

**Reply Report of Emre Carr, Ph.D., CFA**

> *books of the settlement internaliser,* **without any external parallel securities movement along the holding chain**.[105]

73.     To clarify, "without any external parallel securities movement" in the guidelines means that when a broker or custodian net settled offsetting trades by a pension plan and made book entries showing shares purchased by the pension plan, there would be no corresponding entry in the omnibus account held by that broker or custodian at its sub-custodian.  As such, there would be no reason for the shares or offsetting book entries regarding share purchases and sales by a pension plan and its counterparty to show up in any sub-custodian accounts.

74.     In short, starting 2019, ESMA not only explicitly acknowledged the types of share purchases that the SKAT Experts incorrectly allege to be fake it also required them to be reported.  Notably, ESMA added the language about parallel movement in response to the comments provided by European Banking Federation ("EBF").[106]  I assume the SKAT Experts would find EBF to be a reputable organization.[107]

---

[105] ESMA, "Guidelines on Internalised Settlement Reporting Under Article 9 of CSDR," April 30, 2019, pp. 3-4, *available at* https://www.esma.europa.eu/sites/default/files/library/esma70-151-367_csdr_guidelines_on_internalised_settlement_reporting.pdf (last accessed on February 18, 2022) (emphasis added).

[106] European Banking Federation, "EBF Response to ESMA's CSDR Guidelines on Internalised Settlement Reporting," September 14, 2017, p. 3, *available at* https://www.esma.europa.eu/press-news/consultations/consultation-guidelines-internalised-settlement-reporting-under-article-9 (last accessed on February 18, 2022) recommending to ESMA (emphasis added):

> *Consequently, wherever*
>
> *1) irrespective of the underlying legal cause,* **a movement of securities between securities accounts takes place in the books of an intermediary**,
>
> *2) such movement would have taken place in an EU-CSD but instead only takes place in the books of the intermediary* **without any external parallel movement along the custody chain and**,
>
> *3) triggered by a client's settlement instruction, such movements are in scope and all other movements are out of scope of the reporting obligation as a matter of principle.*

[107] *See* European Banking Federation, *available at* https://www.ebf.eu/ (last accessed on February 18, 2022).

### Reply Report of Emre Carr, Ph.D., CFA

75. Further, the SKAT Experts fail to consider that Solo Capital had a relationship with the LSE and was contracted to use their UnaVista Transaction Reporting system and prepared daily reports that included pension plan share purchases.[108]

76. In contrast to the stock trades that could be and were cleared and settled by Solo Capital, the pension plans' flex futures contracts were required to be sent to the central counterparty, *i.e.*, BClear, for "confirmation, processing, and clearing."[109]

77. Solo Capital did report the flex futures contracts entered into by the pension plans as well as by its other clients to its sub-custodian JP Morgan, which was a BClear member.[110]  As Mr. Wade is aware, the transactions are reflected in Solo Capital's sub-custodian account with JP Morgan.[111]

78. In other words, the SKAT Experts fail to consider that the pension plan securities transactions and resulting positions that must be reflected with a sub-custodian do

---

[108] *See, e.g.*, ELYSIUM-00359878 and ELYSIUM-000359879 for an executed contract agreement between Solo and LSE for use of the UnaVista reporting system which is a "technology platform from the London Stock Exchange Group.  UnaVista helps firms to reduce operational and regulatory risk through a range regulatory reporting, reference data and analytics solutions."  (London Stock Exchange, "UnaVista," available at https://www.lseg.com/markets-products-and-services/post-trade/unavista (last accessed on February 25, 2022)) *See, also*, files attached in ELYSIUM-02456224.eml and ELYSIUM-04736480.eml. Based on ELYSIUM-04280092 msg, it is my understanding that the email attachments are the end of the day transaction reports that Solo Capital prepared for the LSE reporting.

[109] ISDA, "Central Clearing in the Equity Derivatives Market – An ISDA Study," June 2014, cited at Initial Carr Report n. 94, p. 7 noting (emphasis added):

> *Cleared, flexible exchange-like contracts closely resemble exchange-traded products, except that market participants are able to bilaterally negotiate a limited number of terms, such as contract maturity, exercise price and settlement method. Once the terms are agreed, **the contracts are sent to an exchange or CCP for confirmation, processing and clearing**.*
>
> *The largest provider of these products is NYSE-Euronext's **Bclear** platform, which lists 2,419 unique **flexible single-name futures**, 2,410 flexible single-name options and 16 flexible index options.*

[110] This was discussed in the Initial Carr Report.  *See* Initial Carr Report ¶¶82-83.

[111] Wade Report ¶¶256-257.  *See, e.g.*, SCPADMINISTRATORS_00047101-7 (August 2012 JPMorgan statement showing TDC flex futures trades); SCPADMINISTRATORS_00045387-401 at SCPADMINISTRATORS_00045387 (September 2012 JPMorgan statement showing TDC flex futures trades); ELYSIUM-01460217 (March 2013 JPMorgan statement showing Novo Nordisk flex futures trades); SCPADMINISTRATORS_00041860-2757 (JPMorgan statements throughout 2013 showing flex futures trades for various Danish securities in which the bellwether plans made trades).

Reply Report of Emre Carr, Ph.D., CFA

appear in Solo Capital's subaccount statement for JP Morgan. I assume that the SKAT Experts do not consider JP Morgan's statement as fabricated.

79. Curiously, Mr. Dubinsky fails to perform a forensic analysis of the pension plans' flex futures contracts while examining Solo Capital's account statements with sub-custodians. The SKAT Experts also fail to consider that, from an economic perspective, it is not in pension plans' economic interest to enter flex futures trades to sell the Danish stock at a later date but not simultaneously purchase stocks because, in that situation, the plans would essentially be short-selling those Danish stocks. Mr. Wade has asserted that, due to the size of the positions the pension plans traded, a settlement failure "would have posed an existential risk."[112] Therefore, the presence of flex futures contracts in the sub-custodian accounts demonstrates that the pension plans had a strong economic incentive to make "real" share purchases to offset the economic exposure from the flex futures contracts to avoid creating such an "existential risk" due to unhedged price risk.

## C. Contrary to Mr. Wade's Assertion, There Was No Wash Trading In Futures

80. In his initial report, Mr. Wade incorrectly asserts the trading in flex futures as "fictitious."[113] The JP Morgan statements show both purchases and sales of flex futures on the same date, but do not identify who did the trades. In his opening report, Mr. Wade asserts that the transactions were "**ostensibly**" made on behalf of two separate clients.[114] In both his reports, Mr. Wade has not shown that there is even a single pair of offsetting flex future transactions on the same date where two pension plans (let alone two plans with the same beneficial owner) were involved.

---

[112] Wade Rebuttal Report ¶45. (citation omitted)

[113] Wade Report ¶256.

[114] *Id.* ("While **ostensibly** made on behalf two separate clients, Solo's pairing of a purchase and a sale of a futures in equal lots meant that Solo itself never held an open futures position in its sub-custodian omnibus accounts, even though it booked fictious (sic) open positions in its clients' account statements.") (emphasis added).

Reply Report of Emre Carr, Ph.D., CFA

81. Not surprisingly, in his rebuttal report, he corrects himself and instead characterizes flex futures trading as wash trading.[115]  He is again incorrect because, contrary to Mr. Wade's assertions, wash trading refers to **one investor** doing multiple offsetting trades to create either an artificial volume or market prices without taking any economic risk.  For example, ICE which runs ICE Clear, the London-based derivatives clearinghouse, explains:

> *A wash trade is a transaction or a series of transactions executed in the same Commodity Contract and delivery month or Option series at the same, or a similar, price or premium **for accounts of the same Principal**.*
>
> *The term "Principal" as used herein shall mean an individual or entity with a beneficial interest in an account.*
>
> *The term "same Principal" as used herein shall mean accounts that are owned by the same person, entity, or a parent and its 100% wholly owned subsidiaries, or subsidiaries that are wholly owned by the same parent and shall also include accounts that have common ownership that is less than 100%.[116]*

82. The definition of a wash trade under regulations that Mr. Wade cites is similar to the one by ICE FAQ, *i.e.,* "buy and sell orders for different accounts with common beneficial ownership[.]"[117]  Offsetting flex futures contracts on behalf of "two separate clients" would not be wash trades under the regulations that Mr. Wade cites.[118]

83. As I explained in my rebuttal report, because the JP Morgan statements only show purchases and sales of flex futures on the same date without showing the parties to the trades, JP Morgan inquired whether the trades were for the same beneficial owner, and Solo Capital clarified that they were not.[119]  Notably, there are numerous

---

[115] Wade Rebuttal Report ¶120.

[116] ICE Futures U.S., "Wash Trade FAQ," July 2021, *available at* https://www.theice.com/publicdocs/futures_us/Wash_Sale_FAQ.pdf (last accessed on February 25, 2022) (emphasis added).

[117] Wade Rebuttal Report ¶127.

[118] Wade Report ¶256.

[119] Carr Rebuttal Report ¶46.

Reply Report of Emre Carr, Ph.D., CFA

flex futures trades by the pension plans and Solo Capital's other clients in the JP
Morgan statement after Solo Capital provided the explanation to JP Morgan.[120]

84.    Mr. Wade does not explain why wash trading is even a concern for pension plan
trades because the BClear flex futures that the pension plans traded on any date were
either buy **or** sell, not "buy **and** sell orders."[121]   As I noted earlier, wash trading by
an investor generally involves multiple trades that occur at or around the same time.
The entry and exit of the flex futures trades done by the pension plans were generally
many weeks apart.  In other words, Mr. Wade's assertion about "[w]ash [t]rading in
[f]utures and [n]etting [p]ractices"[122] is without any basis.

     **D.**     **Mr. Wade's Incorrectly Asserts That Solo Had No Authority To Settle
The Trades**

85.    Mr. Wade contends, "From the custody and client agreements that I have seen for
Solo, there was no basis for Solo to step in and settle these transactions for its
clients."[123]   Mr. Wade further adds, "In any event, settling transactions for its clients
is a highly unusual and inappropriate thing for a custodian to do."[124]   Mr. Wade's
assertions are incorrect and quite puzzling because elsewhere in his report, he
himself explains  that "the Solo Client Custody Agreement states that Solo 'will
settle all transactions[.']"[125]   Mr. Wade further explains that even according to the
European Central Bank, one of the custodian's functions is to settle trades.[126]   In
other words, Mr. Wade is curiously characterizing the function that Solo Capital is

---

[120] Solo replied to JP Morgan on May 22, 2013. (ELYSIUM-01746161).  As shown in Solo's JP Morgan
statements, there were flex futures trading after that date.  *See, e.g.*, SCPADMINISTRATORS_00041860 at
SPCADMINISTRATORS_00042438 showing flex futures in MAERSKA traded on June 11, 2013.

[121] Wade Rebuttal Report ¶127.

[122] *Id* at p. 66.

[123] *Id* at ¶24.  (citation omitted)

[124] *Id* at n. 29.

[125] *Id* at ¶20.

[126] *Id*.

expected to perform as a custodian to be a "highly unusual and inappropriate thing[.]"[127]

## VI.    MR. WADE'S ASSERTIONS REGARDING CREDIT TERMS, AND FINANCING ARRANGEMENTS DO NOT DEMONSTRATE THAT THE TRANSACTIONS WERE FAKE

86.    The gravamen of SKAT's allegations against the U.S. pension plans is that they did not own any Danish shares and did not have an economic claim to related dividends. As I discussed earlier in Sections III and IV, the SKAT Experts have failed to demonstrate that the pension plan did not have an economic claim to a) the Danish shares that they purchased and b) related dividends (a part of which came from the tax reclaim).

87.    Mr. Wade makes several other assertions, which I address below.

### A.    Mr. Wade's Assertion That Credit Terms Were Ignored or Not on an Arm's-Length Basis Does Not Demonstrate That The Pension Plan Trades Were Not Real

88.    Mr. Wade states that the pension plans and counterparties are minimally capitalized and therefore could not support the types of transactions at issue.[128]  However, the levels of capitalization of the entities do not indicate whether or not the trades were real.

89.    Furthermore, the pension plans had underlying guarantees from Solo, as Mr. Wade acknowledges.[129]  The IDBs accepted these guarantees and executed the trades relying on them.  Mr. Wade's statements about the guarantees being "of fairly limited value"[130] are not relevant for assessing whether the pension plans' trades were real.

---

[127] *Id* at n. 29.

[128] *Id* at ¶29.

[129] Wade Rebuttal Report ¶30.

[130] *Id*.

90.   Mr. Wade further asserts that the transactions were not "on an Arm's-Length Basis"[131] due to their specific credit terms.  As discussed in the Carr Rebuttal Report, many transactions that are not arm's-length are real transactions.[132]  Furthermore, customized terms are common in structured transactions.  As discussed above, structured transactions "typically result in a final product that is often non-standard and structured to meet the specific financial objectives of a customer."[133]

91.   Mr. Wade states that, absent a pledge of the underlying shares, the forward contracts should have had "initial and daily maintenance margin requirements" that were at least as onerous as the requirements for a future transaction.[134]  Mr. Wade has not provided any support for his assertion that the forward contracts executed by Bellwether Plans should have required margin.  The forward contracts were executed by reference to the 2002 ISDA Master Agreement.[135]  That agreement, commonly used in OTC derivatives transactions, does not include any mention of margin requirements.[136]

92.   Turning to his claim that the pension plans did not settle margin amounts between the parties in stock lending transactions, Mr. Wade notes that "there are three entries in the EUR cash statement for Initial Margin, Variation Margin and Stock Margin which are all zero."[137] .  As an initial matter, Mr. Wade seems to be conflating the margins associated with future transactions with those for stock lending, as the line items "initial margin" and "variation margin" on the account statements refer to

---

[131] *Id* at p. 12.

[132] Carr Rebuttal Report ¶8(h).

[133] U.S. Securities and Exchange Commission, "Policy Statement: Interagency Statement on Sound Practices Concerning Complex Structured Finance Activities," section titled ""II. DEFINITION AND KEY RISKS OF COMPLEX STRUCTURED FINANCE TRANSACTIONS," *available at* https://www.sec.gov/rules/policy/34-49695.htm (last accessed on January 23, 2022).

[134] Wade Rebuttal Report ¶33.

[135] *See, e.g.*, COSTELLO00000169-171 and FWCCAP00000275-277.

[136] *See* ISDA, 2002 Master Agreement, *available at* https://www.gbm hsbc.com/financial-regulation/2002-isda-master-agreement (last accessed on February 21, 2022).

[137] Wade Rebuttal Report ¶35.

Reply Report of Emre Carr, Ph.D., CFA

those required for future contracts. "Stock margin" is the only line item of the three relevant to securities lending transactions.

93. Furthermore, Mr. Wade's support for his claim is a year-end 2013 account statement for the RJM Pension Plan.[138] As of December 31, 2013, it appears that the RJM Pension Plan did not have any open stock lending transactions. As such, it is perfectly logical that the plan's account statement showed that it held zero stock margin, as at this point, it would have returned all of the collateral to the borrowing parties upon ending the loans. This can be confirmed by looking at an earlier RJM Pension Plan account statement that is included in the period of the statement referenced by Mr. Wade. The RJM Pension Plan's account statement for March 7, 2013, through May 31, 2013, shows a stock margin of EUR -24,108,293.76[139] and DKK -180,225,324.50.[140]

94. Mr. Wade also takes issue with the amount of collateral used in the stock lending transactions, noting that, as the stock price moved, the amount of collateral relative to the value of the stock should have changed. Figure 1 to the Wade Rebuttal Report attempts to illustrate this related to the RJM Pension Plan's transaction in MAERSKB in 2013. However, it is simply illustrating that stock prices fluctuate on a daily basis. The pension plans' account statements show that Solo did perform daily mark-to-market calculations on the stock lending transactions.[141]

95. While Solo did perform daily mark-to-market calculations, the industry's standard-form GMSLA that the parties used only required the parties to adjust the actual collateral balances, as needed, pursuant to a "demand" from the counterparty.[142]

---

[138] MPSKAT00135581.

[139] MPSKAT00085536-567 at MPSKAT00085566.

[140] MPSKAT00085536 at MPSKAT00085567.

[141] MPSKAT00085536 at MPSKAT000885553-554.

[142] MPSKAT00070838-879 at MPSKAT00070849-851, ¶¶5.4(b), (c) 5.5(b), (c) (stating that if the value of the collateral and amounts owed under the agreement are such that an adjustment is required, the borrower or lender "shall (on demand) repay and/or deliver, as the case may be, to" the other "such Equivalent Collateral" as needed to "eliminate" the "excess" or "deficiency."

Reply Report of Emre Carr, Ph.D., CFA

96. Mr. Wade also asserts "[i]n view of Roadcraft's limited capital, the absolute minimum collateral amount that a true arm's-length counterparty would have required was a pledge of the shares underlying the forward contract."[143]  Mr. Wade's assertion is nothing more than his *ipse dixit* as he does not provide any support in either the forward contract that Roadcraft executed or elsewhere.

**B.    Mr. Wade's Assertions Regarding Financing Arrangements Are Irrelevant And Fundamentally Flawed**

97. As I explained in my rebuttal report and at the beginning of this report, the Pension Plan Strategy was a structured transaction that the pension plans implemented with the help of Solo Custodians.  To demonstrate that the pension plan trades were not real, Mr. Wade needs to demonstrate that the funding that Solo Custodians arranged was fake, and Mr. Wade has not done so.

    i.    Regarding the initial stock loan-related cash collateral the plans obtained, Mr. Wade's complaint is about the terms stock borrowers accepted and the credit risk the borrowers took.[144]  Mr. Wade has not provided evidence the risk was excessive or that the stock lending transaction did not occur.  Mr. Wade cannot be sure whether the stock borrowers took excessive credit risk as they may have been aware that the pension plans had hedged their positions.

98. Whether the pension plans could have financed the transaction from an alternative source is not relevant for assessing whether the trades were real because Mr. Wade has not presented evidence that shows that there were specific trades for which the plans could not obtain financing from the counterparty identified by Solo Custodians.[145]

---

[143] Wade Rebuttal Report ¶33.

[144] Wade Report ¶247.

[145] Mr. Wade also asserts that "[i]f the Pension Plans' intention was to refinance the shares and use them to fund the purchase, the broker/custodian would have required that such borrowing be confirmed prior to the purchase."  Wade Rebuttal Report ¶44.  Mr. Wade does not provide any basis in support of his assertion. Further, as Mr. Wade himself notes, "the Solo Client Custody Agreements do envisage the theoretical possibility of the Custodian advancing funds to settle transactions." (Wade Rebuttal Report fn. 66)

**Reply Report of Emre Carr, Ph.D., CFA**

99.    Mr. Wade also asserts that the pension plans were not prudent because they did not perform "significant" due diligence on the counterparty from which they purchased shares.[146] Mr. Wade's assertion is flawed and without merit. He incorrectly assumes that the pension plans purchased stock in a direct bilateral transaction and knew the identity of the relevant counterparties. The pension plans did not do a bilateral transaction with another counterparty to purchase shares. Instead, the plans used and relied on external regulated IDBs to locate liquidity.

100.   Citing to Mr. Markowitz's testimony concerning hedging by the plans, Mr. Wade asserts that the testimony supports an inference about "the artificiality of these trades" because "there is no such thing as a 'perfect hedge'."[147] I do not agree with Mr. Wade's conclusion because, even assuming for argument's sake that the hedging was imperfect, the imperfection would impact the net profits of the trades, not make the transactions artificial.

101.   Mr. Wade asserts that "futures exchanges demand initial margin requirements."[148] However, he fails to note that, as I discussed earlier in Section VI.A, the pension plan accounts do show both initial margin and variation margin for their flex futures transactions.[149]

102.   Mr. Wade also raises another hypothetical under which a stock loan is not executed or fails.[150] He does not explain why a plan would need to notify the forward contract counterparty, which is unrelated to the stock purchase transaction.

---

[146] Mr. Wade specifically asserts that "a prudent Pension Plan would not have placed an order for what, at times, was several multiples of the ADTV of the shares of a listed company and extreme multiples of the net assets of the Pension Plan without some significant due diligence on the ability of its counterparty to locate and deliver the shares." *Id* at ¶44 (internal citation omitted). Relatedly, Mr. Wade also asserts that "there would have been significant challenges and stiff competition to locate positions of this size, particularly around Record Date, and yet these hurdles appear to have been completely ignored by the parties." *Id* at ¶45. Mr. Wade's statements have no basis and ignore that the custodian itself was providing a guarantee for financing.

[147] *Id* at ¶¶46-47.

[148] *Id* at ¶47.

[149] *See, e.g.*, JHVM_0005813-30 at JHVM_0005817-8 for the initial and variation margin on the flex futures on MAERSKB in the Analyzed Transaction for RJM.

[150] Wade Rebuttal Report ¶48.

**Reply Report of Emre Carr, Ph.D., CFA**

103. Mr. Wade also discusses settlement risks associated with the plans' share purchases.[151]  Notably, Mr. Wade describes the settlement risk exposure as being equal to "the share purchase price[.]"[152]  He discusses RJM Maersk B 2013 as an example and asserts that "A 5-day settlement delay could easily have seen share price moves of 5% of (sic) more leading to a potential risk of loss of DKK 22.7m on a single transaction. … The **only plausible explanation** for the fact that this risk was ignored entirely is that all the parties knew that they were entering into entirely circular and self-cancelling trades."[153]

104. First, I note that Mr. Wade seems to agree with me that the economic exposure of a pension plan starts on the trade date and not on the settlement date.  If the economic exposure started on the settlement date, then in the above example, the RJM plan would not face any risk.

105. Second, Mr. Wade ignores that there is a plausible explanation that renders his risk assessment fundamentally flawed – the hedging by the flex futures contracts that the RJM Plan concurrently executed.  Mr. Wade curiously ignores that the hypothetical loss of DKK 22.7m on the share position would be almost entirely offset by a similar gain on the RJM Plan's flex futures contracts.

106. Finally, even with settlement failure, *i.e.*, when the seller fails to deliver ("FTD") or the buyer fails to receive ("FTR") shares or both, equity purchases can result in economic exposure (*e.g.*, economic claims to dividend payments and right to sell the

---

[151] Mr. Wade asserts that a "settlement failure by either Pension Plan or Broker would have posed an existential risk to the transaction counterparties as well as Solo, but it seems to have been completely disregarded by the participants."  *Id* at ¶45 (internal citation omitted).  While this statement mentions "broker," elsewhere in his rebuttal report, Mr. Wade makes a similar assertion about Solo and claims that "A fail on a single transaction would have required Solo to provide cash liquidity to cover the full settlement balance.  Further, had a transaction fail resulted from a customer credit event, a share price move of 5% in the wrong direction for the relevant Danish shares would have been enough to completely wipe out Solo's equity capital, which is further evidence that these transactions could not and did not really happen."  *Id* at ¶15.

It would be incorrect to assert settlement failure by an executing broker because the executing brokers did not settle trades.  Therefore, I ignore Mr. Wade's assertion regarding settlement failure by broker, and assume that Mr. Wade is referring to a Solo Custodian in his assertion.

[152] *Id* at ¶50.

[153] *Id* at ¶50 (emphasis added).

Reply Report of Emre Carr, Ph.D., CFA

stock).[154]  "Buyers that receive an FTR during settlement rather than the actual shares are unlikely to be aware of this."[155]

107.  In short, Mr. Wade's assertions regarding financing arrangements are irrelevant and fundamentally flawed.

## VII.  MR. WADE'S ASSERTIONS ABOUT THE PENSION PLAN STRATEGY NOT BEING A GENUINE INVESTMENT STRATEGY AND FLAWS IN MY TRADE ANALYSIS ARE WITHOUT ANY MERIT

108.  Mr. Wade criticizes my analysis as being based on a "selective review of parts of the circular Solo trades."[156]  Mr. Wade ignores that the issue in this matter is trading by the pension plans and not the conduct of Solo Custodians or other counterparties. Yet, as I noted in my rebuttal report, the SKAT Experts make assertions about the parties that are not part of this litigation.[157]

109.  Mr. Wade asserts that my analysis of Analyzed Transactions for the RJM Plan and Proper Pacific Plan is incorrect.  As Mr. Wade raises similar issues with both the transactions, I respond below only to his criticism of the RJM Plan.  However, I note

---

[154] Putniņš, Tālis, "Naked Short Sales and Fails-to-Deliver: An Overview of Clearing and Settlement Procedures for Stock Trades in the USA," October 2009, *available at* https://www researchgate net/publication/228260887 at p. 7 explaining:

> *"If a [NSCC] participant is unable to deliver on their net short position . . .the position is called a 'fail to deliver' (FTD) . . . .The failure to deliver may be because the seller does not own the stock . . . .The long positions for which the NSCC is unable to deliver stock remain open long positions called 'fail to receive' (FTR). . . . Dividends are automatically debited from participants with FTD positions and credited to those with FTR positions.*

[155] *Id.* at p. 13; *also see id.* at pp. 8-9 explaining:

> *Most often, the clients of participants with FTR positions are not aware they have been credited an IOU (as opposed to actual stock) because their stock holding account does not distinguish between the two.  Only the NSCC and the participant are aware of the difference. Participants with FTRs are able to sell them just as if they were ordinary shares….*

[156] Wade Rebuttal Report, p. 42.

[157] Carr Rebuttal Report ¶82.  As such, the documentation related to the non-parties may not be comprehensive.

Reply Report of Emre Carr, Ph.D., CFA

that my responses equally apply to Mr. Wade's critiques of my analysis of Proper Pacific Plan's transactions related to Chr Hansen stock.

A.    **Mr. Wade's Assertions About the Counterparties in the Analyzed Transactions Are Irrelevant to the Pension Plans' Trades**

110.    For the RJM plan's transaction in MAERSKB stock, Mr. Wade asserts that I should have analyzed transactions by D.D.C. (Cayman) ("DDC") even though DDC is not a party to this litigation and hence any records related to it are not necessarily complete.

111.    Mr. Wade further asserts that the RJM plan's transactions are circular. First of all, I note that a transaction is not fake simply because the transaction is purportedly circular. There is nothing wrong with having multiple trades with the same counterparty, which is all the notion of "circularity" seems to be as Mr. Wade uses it. The securities lending transactions are economically distinct from and do not undo the positions the counterparties hold in equity and futures or forwards.[158]

112.    Second, the DDC account statement provides additional evidence that the RJM Plan stock trades were real because the share sales are shown in DDC's account statement.[159] In fact, the statement confirms that the Solo settled trades through internalized settlement because DDC's statement also shows stock sale and stock borrowing of the same number of shares. As I explained in Section V, internalized settlement is a common practice explicitly recognized both in EU regulation, by ESMA, and by the Bank of England.

113.    Mr. Wade merely notes that the RJM Plan sold flex futures contracts to FGC Securities, who sold flex futures contracts to DDC and does not assert any problem with those contracts other than the general claim about wash trades he makes elsewhere in his rebuttal report.[160] As I explained in Section V above, the flex

---

[158] Furthermore, as shares and cash are fungible, Mr. Wade's assertions about the counterparties "borrow[ing] the same shares" or "receiv[ing] the same collateral" are meaningless. Wade Rebuttal Report ¶87.

[159] ELYSIUM-01744925.

[160] Wade Rebuttal Report ¶83.

Reply Report of Emre Carr, Ph.D., CFA

futures contracts were required to be sent to BClear for clearing and processing, and all the contracts do appear in the JP Morgan statement for Solo Capital, as they should.

114. Mr. Wade also asserts that "Dr. Carr does not ask or identify how Colbrook came up with the necessary cash. Again, the production record is very clear: Colbrook lent shares to DDC, on the same day and exactly under the same terms"[161] He does not explain as to what is wrong with Colbrook lending shares to DDC and raising money against them.

**B.    Mr. Wade's Assertions About the Transaction Agreements Are Without Basis**

115. In his initial report, Mr. Wade incorrectly asserted that "[t]he terms of the [s]tock [l]oan [a]greements are [h]ighly [i]rregular."[162] In my rebuttal report, I demonstrated that the plans executed security lending agreements that were based on the industry-standard GMSLA. In his rebuttal report, Mr. Wade agreed with my finding and makes an entirely novel argument, namely that the use of the industry-standard GMSLA by the pension plans was problematic because "the parties appear to have had no meaningful negotiation of these GMSLA, and there is no notable departure from the standard GMSLA term."[163] First, I note that Mr. Wade has provided no evidence of what negotiation did or did not occur. Further, Mr. Wade's claim contradicts his assertions expressed throughout both of his reports that the transactions were fabricated because they *did* depart from market standards.[164]

116. Mr. Wade also asserts that "It is also notable that the Equities Annex, which covers various situations that arise in equity security-based stock lending, appears to have been omitted."[165] His assertion is incorrect because he conflates the security borrowing and lending templates that the plans used with the templates parties use

---

[161] *Id* at ¶85.

[162] Wade Report p. 98.

[163] Wade Rebuttal Report ¶86.

[164] *See, e.g.*, Wade Report ¶¶16.a, 258, and 259 and Wade Rebuttal Report ¶33.

[165] Wade Rebuttal Report ¶86.

**CONFIDENTIAL**

when they enter into a repurchase ("repo") agreement for securities, called the Global Master Repurchase Agreement ("GMRA"). The GMRA is issued by International Capital Market Association and has the Equities Annex that Mr. Wade incorrectly asserts should be in GMSLA, a template issued by International Securities Lending Association, a different organization.[166] In fact, the GMRA Equities Annex specifies that "[t]he text of the Agreement was produced primarily with debt securities, and particularly government debt securities, in mind. Its use with other securities often necessitates additional provisions. This is the case with equities (hence the specific exclusion of equities from the Agreement)."[167] Accordingly, the GMRA defines "Securities" as "other than equities and Net Paying Securities."[168] The GMSLA, on the other hand, has no such blanket exclusion of equities, so it is logical that such an equities annex is not needed.[169,170]

### C.    Mr. Wade's Claim That Pension Plan Strategy Was Not A Genuine Investment Strategy Is Fundamentally Flawed And His Alternative Calculations are Partial and Thus Incorrect and Misleading

117. Mr. Wade asserts that Pension Plan Strategy was "strictly part of a tax reclaim generating scheme with no other commercial drivers or opportunities for gain or

---

[166] Clifford Chance, "ICMA Publishes 2011 Global Master Repurchase Agreement," May 2011, *available at* https://www.cliffordchance.com/content/dam/cliffordchance/briefings/2011/05/icma-publishes-2011-global-master-repurchase-agreement.pdf (last accessed on February 21, 2022); ICMA, Global Master Repurchase Agreement (2011 Version) Equities Annex, *available at* https://www.icmagroup.org/assets/documents/Legal/GMRA-2011/GMRA-2011/Equities-Annex-to-GMRA-2011_FINAL.pdf (last accessed on February 21, 2022).

[167] ICMA, Global Master Repurchase Agreement (2011 Version) Equities Annex, *available at* https://www.icmagroup.org/assets/documents/Legal/GMRA-2011/GMRA-2011/Equities-Annex-to-GMRA-2011_FINAL.pdf (last accessed on February 21, 2022).

[168] ICMA, Global Master Repurchase Agreement (2011 Version), *available at* https://www.icmagroup.org/assets/documents/Legal/GMRA-2011/GMRA-2011/GMRA%202011_2011.04.20_formular.pdf (last accessed on February 24, 2022).

[169] ISLA, "GMSLA Title Transfer," available at https://www.islaemea.org/gmsla-title-transfer/ (last accessed on February 24, 2022).

[170] Furthermore, I note that the "Guidance Notes to the Global Master Securities Lending Agreement (2010 Version)," available at https://www.islaemea.org/wp-content/uploads/2019/03/GMSLA_2010_Guidance_Notes_Freshfields.pdf (last accessed February 24, 2022) states that "[t]he Agreement is a master agreement intended to govern securities lending transactions entered into between parties in respect of fixed income and equities," (p. 8) and that the table of contents lists such additional documents as "Agency Annex," "Addendum for Pooled Principal Loans," and "UK Tax Addendum," but no Equities Annex (p. 3).

loss."[171]  In other words, Mr. Wade takes exception to the fact that the rest of the transactions almost netted to zero.[172]  As I explained in my rebuttal report, and explain again below, Mr. Wade's claim is incorrect for multiple reasons.[173]

118.  He also asserts that "[i]t is also apparent that the effective dividend pricing in these transactions was 73% (*i.e.*, the Pension Plan acquired a net dividend compensation payment for consideration equal to the net dividend), which is well below the market level established by the contemporaneous ED&F Man Cum-Cum transactions [*i.e.*, 90%]."[174]

119. Mr. Wade does not explain what his assertion means, *i.e.*, whether share prices were wrong or futures or forward prices were wrong and, if so, what is the right price. Further, in my opinion, the purported market-level compensation (90%) that Mr. Wade relies upon is nothing more than his *ipse dixit*.  As I mentioned in my rebuttal report, Mr. Wade and the SKAT counsel failed to provide the backup data I requested for replication of Mr. Wade's calculation.  Therefore, I cannot ascertain whether his calculations are even accurate, let alone applicable to the pension plan trades.

120. Mr. Wade also asserts that "[h]ad the Pension Plan genuinely acquired Cum-Dividend shares, it would have had to compensate the **seller or lender** around 90% of the gross dividend[.]"[175]  Mr. Wade fails to consider that the pension plans purchased shares at cum-dividend prices that reflected an economic claim to the

---

[171] Wade Rebuttal Report ¶36.

[172] *Id* at Table 1 (showing that two of the transactions had zero profits and two had positive profits before the transaction costs and tax reclaim are considered).

[173] Carr Rebuttal Report ¶¶56-60 explaining Mr. Wade's errors that include, among other things, that "there is no 'market standard' regarding the profit (or loss) a transaction should have."

[174] Wade Rebuttal Report ¶39.

[175] *Id*  ("It is also apparent that the effective dividend pricing in these transactions was 73% (i.e., the Pension Plan acquired a net dividend compensation payment for consideration equal to the net dividend), which is well below the market level established by the contemporaneous ED&F Man Cum-Cum transactions.")

dividends and does not explain why the pension plan would need to return any amount, much less 90% of that dividend, to the seller.[176]

121. Mr. Wade incorrectly asserts that I did "not include the stock loans in [my] profit and loss calculations[.]"[177]  For the Analyzed Transactions, I considered the interest fee and stock loan fee in my profit calculations.[178]  Mr. Wade does not present his alternative version of the profits that I calculated.  Instead, he presents only partial calculations that are different from the calculations I did.  His calculations in Table 1 of the Wade Rebuttal Report exclude tax reclaims that I included in my calculations. In Tables 2 and 3 of the Wade Rebuttal Report, he ignores both the tax reclaims and transaction costs.

122. Based on his partial calculations for the pension plans, Mr. Wade incorrectly  asserts that "these transactions [i.e., transactions by the pension plans and other parties in the purported circle] were entirely circular and the only pre-tax economic consequences for the **parties** were the transaction fees paid to Solo and the IDBs."[179] So far as the pension plans are concerned, their net profits (inclusive of tax reclaim and all transaction costs) were not zero.  It is incorrect and misleading to make assertions based on partial calculations.  Further, Mr. Wade does not even consider whether his partial profit calculations are applicable to all other parties involved in the purported circular loop he asserts.  Therefore, his assertion regarding "economic consequences for the **parties**" is nothing more than his *ipse dixit* so far as parties other than pension plans are concerned. [180]

---

[176] Additionally, Mr. Wade seems to have made a mistake given his assertion that the pension plan needed to make a payment to lender as the plan itself was the lender.

[177] Wade Rebuttal Report ¶37.

[178] *See* Initial Carr Report ¶161 "As shown in Solo's statement for the RJM Plan for the year ending December 31, 2013, the RJM Plan incurred interest charges of DKK 588,401.43 to Colbrook Ltd. and earned stock lending fees of DKK 440,269.76 from Colbrook Ltd. As a result, the RJM Plan paid a net fee of DKK 148,131.67 on the stock lending transaction." (internal citations omitted), ¶173 ("As a result, the Proper Pacific Plan paid a net fee of DKK 43,737.95 on the stock lending transaction.") (internal citation omitted).

[179] Wade Rebuttal Report ¶38 (emphasis added).

[180] *Id* (emphasis added).

**Reply Report of Emre Carr, Ph.D., CFA**

123. Mr. Wade asserts that "Dr. Carr offers a calculation of the profitability of the trade to RJM (which deviates significantly from the calculation made in RJM's annual statement from Solo), yet is silent as to the possible reasons for this difference."[181] Again Mr. Wade is trying to find specious flaws in my calculations or Solo's annual statement. Mr. Wade fails to acknowledge that my calculations are based on the statement that Solo provided, and there is no inconsistency between my calculations and Solo statements. Mr. Wade seems to object to the way Solo prepared the statements noting that the tax reclaim payment is "offset against global invoices from Solo," and that Solo statements treat trading and clearing fees as "separate payments."[182] Mr. Wade does not explain what, if anything, is wrong with the way Solo prepared annual statements. I do not understand what explanation Mr. Wade expects because a) my calculations are based on Solo Statements, and b) I did an economic calculation that was not performed by Solo.

124. More importantly, Mr. Wade agrees that my profit calculations appropriately include "the tax reclaim" and "trading and clearing fees."[183] He goes on to characterize my calculations as "theoretically correct calculation[s]."[184] Yet, he presents an unusual calculation that excludes tax reclaim and transaction costs and repeatedly highlights that all the Solo transactions "net-off to essentially zero."[185]

125. Citing his unusual calculation, Mr. Wade asserts that "It is completely implausible that the Pension Plans or IDBs entered into transactions with notional sizes of DKK200-500m where the net result, excluding the tax reclaim, was no gain or loss, give or take a few basis points."[186] Mr. Wade's claim does not make any sense given the tax-exempt tax status of the pension plans. The objective of the Pension Plan

---

[181] *Id* at ¶89 (internal citations omitted).

[182] *Id* at ¶¶89.1 and 89.2.

[183] *Id* at ¶89.1.

[184] *Id* at ¶90.

[185] *Id.* In his Table 1, Mr. Wade considers transactions costs but not the tax reclaim, and asserts that "each transaction amounted to a loss of between 0 and 3 basis points." (*Id* at ¶40). In other words, Mr. Wade seems to be asserting that the transaction costs were too low without providing any basis in support of his assertion.

[186] *Id* at ¶41.

Reply Report of Emre Carr, Ph.D., CFA

Strategy was not to make profits before a tax reclaim. Rather the objective was to make profits by gaining economic claims to dividends at minimum transaction cost and with mitigation of market risk. Given the tax-exempt status of the pension plans, it is reasonable from an economic perspective for the pension plans to pursue the Pension Plan Strategy.

126. In sum, Mr. Wade's assertions about my trade analysis are fundamentally flawed.

## VIII.  MR. WADE'S ASSERTIONS OF PURPORTED REGULATORY VIOLATIONS DO NOT DEMONSTRATE THAT THE PENSION PLAN TRADES WERE FAKE

127. Without any basis, Mr. Wade makes sweeping statements such as "Any reputable financial institution that had been approached to participate in the Solo transactions would not have been able to simply ignore the then-prevailing securities industry regulatory duties that were in place at the time of the trades."[187] Contrary to his assertion, numerous banks, including Barclays, participated in Cum-Ex transactions.[188] I assume Mr. Wade would consider Barclays a reputable institution.

128. Mr. Wade also asserts that including "[m]ultiple [p]ension [p]lans and IDBs [a]ppears to [h]ave [h]ad [n]o [l]egitimate [p]urpose [o]ther than to [f]urther [c]onceal the [s]cale and [d]eception of the [t]rades." Mr. Wade does not provide support for his assertion, and the IDBs did serve a legitimate purpose in executing

---

[187] *Id* at ¶119.

[188] S&P Global, "Prosecutors Say Barclays, BofA Merrill Lynch Used in Cum-Ex Trade – Bloomberg," March 6, 2020, available at https://www.spglobal.com/marketintelligence/en/news-insights/latest-news-headlines/prosecutors-say-barclays-bofa-merrill-lynch-used-in-cum-ex-trades-8211-bloomberg-57454212 (last accessed on February 21, 2022) noting "Barclays PLC and Bank of America Merrill Lynch were among several companies used by the defunct Maple Bank GmbH in so-called cum-ex trades…"

CONFIDENTIAL

trades.  Mr. Wade fails to examine whether any Solo Custodians could have executed the pension plan trades.[189]

129.    Mr. Wade labels the Solo transactions as "circular" and questions the legitimacy of the Pension Plan Strategy, asserting "no reputable market participant would have considered the Solo trades to be legitimate trading strategies or would have executed them on the basis which Solo purportedly did."[190]  Again this is nothing more than Mr. Wade's sweeping characterization without any basis.

130.    Mr. Wade raises the issue of potential violations of Money Laundering and Know Your Customer ("KYC") rules by some IDBs.[191]  He does not explain why regulatory compliance considerations would invalidate the IDB's trade executions.

131.    Mr. Wade also asserts that "Solo's purported trades involved transaction sizes that would have triggered regulatory scrutiny and reporting requirements relating to substantial holdings."[192]  As I mentioned earlier in ¶75, Solo had an agreement with the LSE to use their UnaVista Transaction Reporting system and, relatedly, prepared the end-of-day transactions reports, which include numerous pension plan share purchases.[193]

132.    Mr. Wade also raises the issue of Solo and some IDBs not meeting the U.K. capital requirements and thereby taking excessive credit risk.  Even if a firm takes an

---

[189] As per Solo Capital's website snapshot in December 2013, December 2014 and February 2015, Solo Capital did not advertise that it was authorised to execute trades, and the SKAT Experts have not shown otherwise. *See, e.g.*, The Wayback Machine, Solo Capital, *available at* https://web.archive.org/web/20131209035413/http://solo-capital.com/securitiesfinance html (last accessed on February 25, 2022); The Wayback Machine, Solo Capital, *available at* https://web.archive.org/web/20141218100151/http://solo-capital.com/ (last accessed on February 25, 2022); and The Wayback Machine, Solo Capital, *available at* https://web.archive.org/web/20150223112418/http://www.solo-capital.com:80/globalsecurities html (last accessed on February 25, 2022).

[190] *See, e.g.*, Wade Rebuttal Report ¶¶6, 43, 120.

[191] *Id* at p. 62.

[192] *Id* at ¶130.

[193] *See, also*, files attached in ELYSIUM-02456224 and ELYSIUM-04736480.  Based on ELYSIUM-04280092, it is my understanding that the email attachments are the end of the day transaction reports that Solo Capital prepared for the LSE reporting.

Reply Report of Emre Carr, Ph.D., CFA

"excessive" risk, that risk exposure does not make its activities fake.  Similarly, even if an investor takes "excessive risk" and is highly leveraged in its trading, the high leverage does not make the trading fake.  Recently, several banks took "excessive" credit risk allowing Archegos Capital Management to do highly leveraged trades.  The level of credit risk, however, did not make Archegos' trading fake.[194]  In fact, the banks extending credit suffered billions of dollars in losses when Archegos' trades suffered losses.[195]

133. Further, even if Solo's regulatory compliance was deficient in some respect, the deficiency does not invalidate the trade executions confirmed by external IDBs.  I am also aware that the RJM Plan, Bareroot Plan, and Roadcraft Plan reported their foreign investments to the U.S. Treasury Department.[196]

## IX.    MR. WADE'S STATEMENTS ABOUT THE ACADEMIC LITERATURE I CITED ARE IRRELEVANT FOR ASSESSING WHETHER THE PENSION PLANS TRADE WERE FAKE

134. At the outset, I note that Mr. Wade agrees with me that:

> ... *dividend arbitrage trading strategies are neither new nor novel. In fact, evidence of dividend arbitrage strategies is well established as a matter of both economic theory and empirical fact, which include the studies cited by Dr. Carr.*[197]

135. In my Initial Report, I stated that "[t]he Pension Plan Strategy is a hedged dividend capture strategy and is **a type of** dividend arbitrage."[198]  I also listed examples of academic research which demonstrate how investors in various countries have engaged in dividend arbitrage strategies.  I did not argue that the Pension Plan Strategy is identical to the dividend arbitrage strategies studied in the academic

---

[194] Archegos Capital Management was a family office that managed the personal assets of Bill Hwang, and had billions of dollars in assets financed through borrowing from several banks. *See* "What Is Archegos and How Did It Rattle the Stock Market?," *The Wall Street Journal*, Updated April 6, 2021.

[195] *Id.*

[196] *See, e.g.,* RJM Capital Pension Plan TIC Form S as of April 30, 2013 (WH_MDL_00375621-31); Bareroot Capital LLC Roth 401(K) Plan TIC Form S as of March 31, 2015 (WH_MDL_00396351-61); and Roadcraft Technologies LLC Roth 401(K) Plan TIC Form S as of March 31, 2015 (WH_MDL_00110605-15).

[197] Wade Rebuttal Report ¶67.

[198] Initial Carr Report ¶ 129 (emphasis added).

literature.  My goal was to demonstrate how investors worldwide have used tax-driven, dividend arbitrage strategies around the ex-dividend day.[199]

136. The point that Mr. Wade misses is that investors commonly engage in trades to take advantage of their tax status and share price changes around ex-dividend days. Dividend arbitrage refers to trading pursued by investors to take advantage of their particular tax situation, and that is what the pension plans did too when they pursued the Pension Plan Strategy.[200]

137. Mr. Wade's discussion of the academic literature contains additional errors.  For example, he states that "Henry and Koski (2017) find the small returns to the [dividend capture] strategy are not significantly positive after including transaction costs, except for trading desks that are highly skilled."[201]  Mr. Wade fails to mention the authors' finding that aggregate dollar profitability (post commission) for dividend capture trading was $3.99 billion.[202]  He also argues that the size of the trading profits found by Rantapuska (2008) "would have been too small to justify the risk associated with the purported Solo trades."[203]  Mr. Wade fails to mention the author's finding that dividend arbitrage trades yielded a 2% overnight return after tax deductions and transaction costs.[204]

138. Setting aside Mr. Wade's errors, I find Mr. Wade's critiques of academic literature irrelevant as they do not in any way demonstrate that the pension plan trades were fake.

---

[199] For additional examples of dividend arbitrage strategies, *see, e.g.*, U.S. Senate Permanent Subcommittee on Investigations, "Dividend Tax Abuse: How Offshore Entities Dodge Taxes on U.S. Stock Dividends," September 11, 2008, *available at* https://www.hsgac.senate.gov/imo/media/doc/REPORT%20-%20Dividend%20Tax%20Abuse%20(Sept%2011%202008).pdf (last accessed on February 21, 2022).

[200] Initial Carr Report n. 151.

[201] Wade Rebuttal Report ¶73.3.

[202] Henry, Tyler R. and Jennifer L. Koski, "Ex-Dividend Profitability and Institutional Trading Skill," *Journal of Finance*, 2017, 72(1), pp. 461-493 at p. 483.

[203] Wade Rebuttal Report ¶ 73.3.

[204] Rantapuska, Elias, "Ex-Dividend Day Trading: Who, How, and Why?: Evidence from the Finnish Market," *Journal of Financial Economics*, 2008, 88(2), pp. 355-374 at p. 366.

**Reply Report of Emre Carr, Ph.D., CFA**

## X.    CONCLUSION

139. For all of the reasons discussed in this report, I find that the core claim of the SKAT Experts that the trading at issue, in this case, was "fake" or "fictitious" is not supported by their reports.

***************

My work is ongoing and my opinions are subject to revision based on new information, which subsequently may be provided to or obtained by me.

_Emre Carr_

Emre Carr, Ph.D., CFA

February 28, 2022

**Reply Report of Emre Carr, Ph.D., CFA**

**APPENDIX A: THE DELVIAN PLAN MARCH 2014 TDC TRANSACTION**

1.  In early 2014, the Delvian Plan made trades in TDC shares issued by TDC Holding A/S, a large Danish company.

2.  On February 4, 2014, TDC declared a semi-annual dividend of DKK 2.20 per share.[205]  The ex-dividend date was March 7, 2014, and the dividend record date was March 11, 2014.[206]

3.  The Delvian Plan's hedged dividend capture strategy in TDC stock involved several transactions.  Solo Capital, which was based in the U.K., was the custodian for these transactions.[207]  **Figure 1** below shows various transactions.

---

[205] **Exhibit 6** (Bloomberg, L.P. screenshot).  Per Solo Capital's Dividend Credit Advice to the Delvian Plan, issued March 12, 2014, the Delvian Plan was notified of a TDC gross dividend of DKK 2.20 per share, which is equal to DKK 7,950,021.20 divided by 3,613,646 shares (WH_MDL_00129024).

[206] **Exhibit 6** (Bloomberg, L.P. screenshot).

[207] *See* Client Custody Agreement between Solo Capital Partners LLP and Delvian LLC Pension Plan (MPSKAT00023973-81).

**Reply Report of Emre Carr, Ph.D., CFA**

**Figure 1: The Delvian Plan 2014 Transactions Related To TDC Stock[208]**



4. On March 6, 2014, the Delvian Plan executed two opening transactions for its hedged dividend capture strategy – purchased the TDC stock and sold forward contracts on the same stock to hedge the price risk.

   a) On March 6, 2014 (*i.e.*, the day before the ex-dividend date), the Delvian Plan asked Novus Capital Markets Ltd. ("Novus Capital") to purchase 3,613,646 shares of TDC stock at the stock's closing price for the day.[209] In e-mails to the Delvian Plan, Solo Capital acknowledged and approved the Delvian Plan's request to Novus Capital to purchase 3,613,646 shares of TDC stock.[210] As shown in the Novus Capital trade confirmation, Novus Capital confirmed the March 6, 2014 execution at DKK 52.65 per share.[211] Novus Capital gave up the trade to Solo Capital for clearing and settlement.[212] Per the trade approval and the broker trade confirmation, the stock

---

[208] Dividend dates from Bloomberg, L.P. Transaction dates from trading documents, as described in this section.

[209] MPSKAT00213206.

[210] MPSKAT00111150; MPSKAT00111172. Note that the price is not listed in the acknowledgement and approval e-mails. Per Bloomberg, L.P., the closing price on March 6, 2014, was DKK 52.65.

[211] MPSKAT00183834.

[212] MPSKAT00111150; MPSKAT00111172. *See, also,* International Uniform Brokerage Execution Services ("Give-Up") Agreement between Novus Capital Markets Limited, Solo Capital Partners LLP, and Delvian LLC Pension Plan (MPSKAT00023982-6).

Reply Report of Emre Carr, Ph.D., CFA

purchase settlement date was March 12, 2014 (*i.e.*, the day after the dividend record date).[213]  The total value of the trade was DKK 190,258,461.90.[214]  The Delvian Plan's economic exposure to 3,613,646 shares of TDC stock began when the trade was executed.  The economic exposure included the claim to a dividend amount as the stock was purchased before the ex-dividend date.

   b) Also on March 6, 2014 (*i.e.*, the same day as the stock purchase date), the Delvian Plan asked Amalthea Enterprises Ltd. to sell forward 3,613,646 shares of TDC stock at DKK 51.0893 per share.[215]  As shown in the March 6, 2014 emails to the Delvian Plan, Solo Capital acknowledged and matched the Delvian Plan's trade with Amalthea Enterprises Ltd. to sell forward 3,613,646 shares of TDC stock for DKK 51.0893 per share.[216]  The total value for the contracts was DKK 184,618,644.5878.[217]  The maturity date for the contracts was June 20, 2014.[218]

5.    The Delvian Plan executed a stock lending transaction with a March 11, 2014, Loan Term start date.[219]

   a) On March 11, 2014, Colbrook Ltd. emailed the Delvian Plan looking to borrow TDC stock.[220]  The Delvian Plan loaned 3,613,646 shares of TDC to Colbrook Ltd. at DKK 52.65 per share in exchange for collateral of DKK 190,258,461.90.[221]  The interest rate on the cash collateral was One Week DKK CIBOR plus 70 basis points.[222]  The stock lending fee was One Week DKK CIBOR plus 39.539 basis

---

[213] MPSKAT00111172; MPSKAT00183834.

[214] MPSKAT00183834.

[215] MPSKAT00183604.

[216] MPSKAT00183704; MPSKAT00183772.

[217] MPSKAT00183772.

[218] *Id.*

[219] MPSKAT00113078; MPSKAT00184400; MPSKAT00213257.

[220] MPSKAT00198507-9 at MPSKAT00198509.

[221] MPSKAT00113078; MPSKAT00184400; MPSKAT00213257.

[222] MPSKAT00113078.

points.[223]  That is, on a net basis, the Delvian Plan had to pay a fee of 30.461 basis points to the stock borrower.[224]

6.   As noted above, the collateral was used to finance the share purchase.[225]

7.   The stock lending agreement that the Delvian Plan entered into was based on the standard security lending agreement template published by ISLA.[226]  The Delvian Plan's economic exposure to the shares did not end after lending the stock as explained in ¶98 of Section V.A of the Initial Carr Report.

8.   On June 4, 2014, the Delvian Plan sold its stock position and purchased an offsetting hedge to terminate its hedged dividend capture strategy.

a)   In a June 4, 2014 email, the Delvian Plan asked TJM Partners ("TJM") to sell 3,613,646 shares of TDC stock at the stock's closing price for the day.[227]  In e-mails to the Delvian Plan, Solo Capital acknowledged and approved the Delvian Plan's request to TJM to sell 3,613,646 shares of TDC stock.[228]  As shown in the TJM trade confirmation, TJM confirmed the June 4, 2014 execution at DKK 52.75 per share.[229]  TJM gave up the trade to Solo Capital for clearing and settlement.[230]  The settlement

---

[223] *Id.*

[224] 70 less 39.539 is equal to 30.461.

[225] MPSKAT00111150; MPSKAT00111172; MPSKAT00183834; MPSKAT00184400; MPSKAT00213257.

[226] ISLA, Global Master Securities Lending Agreement, Version: January 2010, *available at* https://www.islaemea.org/wp-content/uploads/2019/03/GMSLA_2010_amendments_July_2012-1.pdf. (*See, e.g.*, the agreement between Colbrook Ltd. and Delvian LLC Pension Plan (MPSKAT00067417-58)).

[227] MPSKAT00131567.

[228] MPSKAT00218032; MPSKAT00198827.  Note that the price is not listed in the acknowledgement and approval e-mails.  Per Bloomberg, L.P., the closing price on June 4, 2014, was DKK 52.75.

[229] MPSKAT00132514.

[230] MPSKAT00218032; MPSKAT00198827.  Although I have not seen a give-up agreement between Solo Capital, the Delvian Plan, and TJM, the email communications related to the stock sale with TJM as the executing broker suggest the existence of such an agreement.

Reply Report of Emre Carr, Ph.D., CFA

date for the stock trade was June 11, 2014.[231]  The total sale proceeds from the trade were DKK 190,619,826.50.[232]

   b) Also on June 4, 2014, the Delvian Plan asked Amalthea Enterprises Ltd. to buy forward 3,613,646 shares of TDC stock at DKK 52.75 per share.[233]  As shown in the June 4, 2014, emails to the Delvian Plan, Solo Capital acknowledged and matched the Delvian Plan's trade with Amalthea Enterprises Ltd. to buy forward 3,613,646 shares of TDC stock for DKK 52.75 per share.[234]  The total value for the contracts was DKK 190,619,826.50.[235]  The maturity date for the contracts was June 20, 2014.[236]

9. Also on June 4, 2014, the Delvian Plan emailed Colbrook Ltd. requesting to recall the 3,613,646 loaned shares of TDC.[237]  On June 4, 2014, the Delvian Plan's shares were received back from the stock loan while the cash proceeds of the sale were used to pay back the stock loan collateral amount.

10. The Delvian Plan's gross profit from the hedged dividend capture transaction is DKK 0.64 per share (for an aggregate amount of DKK 2,310,203.89), calculated as the sum of the gain or loss on stocks and forward transactions, dividend amount credited by the custodian, and the tax reclaim.

   a) Stock:  The stock trade resulted in a gain of DKK 0.10 per share (DKK 52.75 sale price per share less DKK 52.65 purchase price per share).

---

[231] MPSKAT00198827; MPSKAT00132514.

[232] MPSKAT00132514.

[233] MPSKAT00198300.

[234] MPSKAT00131809; MPSKAT00132011.

[235] *Id.*

[236] *Id.*

[237] MPSKAT00198507-9 at MPSKAT00198507.  Per Solo Capital's acknowledgement and approval emails to the Delvian Plan dated June 4, 2014, the Delvian Plan recalled the 3,613,646 shares that the Delvian Plan loaned to Colbrook Ltd. (MPSKAT00131968; MPSKAT00132089).

**Reply Report of Emre Carr, Ph.D., CFA**

b) Forwards:  The forward trades resulted in a loss of DKK 1.66 per share (DKK 51.0893 sale price per share less DKK 52.75 purchase price per share).

c) Dividends:  Solo Capital credited the Delvian Plan account with dividends of DKK 1.61 per share, which equals 73% of the gross dividend of DKK 2.20 per share.[238]

11.  As shown in Solo Capital's statement for the Delvian Plan for the period ending December 31, 2014, the Delvian Plan incurred interest charges of DKK 336,651.78 to Amalthea Enterprises Ltd. and earned stock lending fees of DKK 190,155.35 from Amalthea Enterprises Ltd.[239]  As a result, the Delvian Plan paid a net fee of DKK 146,496.43 on the stock lending transaction.[240]  Additionally, the Delvian Plan paid other fees (*e.g.*, stockbroker, custody fees, etc.) fees of DKK 56,039.80.[241]  Thus, the Delvian Plan paid a total fee of DKK 202,536.23 (sum of DKK 146,496.43 and DKK 56,039.80).

12.  Subtracting transaction fees of DKK 202,536.23 from the Delvian Plan's gross profit of DKK 2,310,203.89 yields a total net profit of DKK 2,107,667.66.  These calculations are shown in **Table 1** below.

---

[238] MPSKAT00168085-93 at MPSKAT00168085.  The custodian credited the pension plan's account with a dividend amount of DKK 5,803,515.48, which equals 73% of the gross dividend of 7,950,021.20.  The amount of DKK 5,803,515.48 equals DKK 1.61 dividend per share (i.e., 5,803,515.48 divided by 3,613,646 shares).  The gross profit calculation takes into account the tax reclaim of DKK 0.59 per share (i.e., the gross dividend of DKK 2.20 per share less DKK 1.61 per share credited by the custodian to the plan's account).

[239] MPSKAT00168085-93 at MPSKAT00168091.

[240] DKK 336,651.78 minus DKK 190,155.35 equals DKK 149,496.43.

[241] *See* **Exhibit 7** for the calculation of other fees.

**Reply Report of Emre Carr, Ph.D., CFA**

**Table 1: The Delvian 2014 Transactions Related to TDC Stock Profit Calculations**

| | Profit | | | |
|---|---|---|---|---|
| | *per share* | | *aggregate* | |
| Stock Trade | DKK | 0.10 | DKK | 361,364.60 |
| Forward Trade | DKK | (1.66) | DKK | (6,001,181.91) |
| Dividend Credit by Custodian | DKK | 1.61 | DKK | 5,803,515.48 |
| Tax Reclaim | DKK | 0.59 | DKK | 2,146,505.72 |
| Gross Profit | **DKK** | **0.64** | **DKK** | **2,310,203.89** |
| Less Transaction Fees | DKK | (0.06) | DKK | (202,536.23) |
| Net Profit | **DKK** | **0.58** | **DKK** | **2,107,667.66** |

CONFIDENTIAL

**Exhibit 1**

**Materials Relied Upon**

| Academic Articles |
|---|
| Putniņš, Tālis, "Naked Short Sales and Fails-to-Deliver: An Overview of Clearing and Settlement Procedures for Stock Trades in the USA," October 2009, *available at* https://www.researchgate.net/publication/228260887 |
| **Written Discovery** |
| Plaintiff Skatteforvaltningen's Amended Response And Objections To Interrogatory No. 10 From Defendants' Second Set Of Interrogatories, *In re Customs and Tax Administration of the Kingdom of Denmark (Skatteforvaltningen) Tax Refund Scheme Litigation*, No. 18-md-02865 |
| **Depositions** |
| Christian Ekstrand Deposition (Vols. 1 & 2) and Exhibits |
| **Expert Reports** |
| Rebuttal Expert Report of Felicity Toube QC, February 1, 2022, and all materials cited therein |
| Rebuttal Expert Report of Graham Wade, February 1, 2022, and all materials cited therein |
| Rebuttal Report of Bruce G. Dubinsky, MST, CPA, CFE, CVA, CFF, CAMS, MAFF, February 1, 2022, and all materials cited therein |
| **Publicly Available Documents** |
| Clifford Chance, "ICMA Publishes 2011 Global Master Repurchase Agreement," May 2011, *available at* https://www.cliffordchance.com/content/dam/cliffordchance/briefings/2011/05/icma-publishes-2011-global-master-repurchase-agreement.pdf (last accessed on February 21, 2022) |
| Danish Financial Supervisory Authority, "Published Net Short Positions," *available at* https://www.dfsa.dk/Rules-and-Practice/Short-selling/Published-net-short-positions (last accessed on February 24, 2022) |
| Declaration of Bruce G. Dubinsky in *Irving H. Picard v. Saul B. Katz et al.*, filed January 26, 2012 |
| ESMA, "Guidelines on Internalised Settlement Reporting Under Article 9 of CSDR," April 30, 2019, *available at* https://www.esma.europa.eu/sites/default/files/library/esma70-151-367_csdr_guidelines_on_internalised_settlement_reporting.pdf (last accessed on February 18, 2022) |
| Euronext Securities, "Part 4 – VP Rule Book: Settlement Rules," February 1, 2022, *available at* https://www.vp.dk/Legal-Framework/VP-Rulebook (last accessed on February 22, 2022) |
| European Banking Federation, *available at* https://www.ebf.eu/ (last accessed on February 18, 2022) |
| European Banking Federation, "EBF Response to ESMA's CSDR Guidelines on Internalised Settlement Reporting," September 14, 2017, *available at* https://www.esma.europa.eu/press-news/consultations/consultation-guidelines-internalised-settlement-reporting-under-article-9 (last accessed on February 18, 2022) |
| GlobeNewswire, "Auriga, Distribution of Extraordinary Dividends," June 11, 2015, *available at* https://www.globenewswire.com/fr/news-release/2015/06/11/743743/0/en/Auriga-Distribution-of-Extraordinary-Dividends.html (last accessed on February 21, 2022) |

CONFIDENTIAL

GlobeNewswire, "Coloplast Delivers H1 Interim Report in Line with Guidance after a Good Second Quarter Performance," May 5, 2015, *available at* https://www.globenewswire.com/news-release/2015/05/05/732002/0/en/Coloplast-delivers-H1-interim-report-in-line-with-guidance-after-a-good-second-quarter-performance.html (last accessed on February 21, 2022)

GlobeNewswire, "Coloplast Raises Guidance for Full-Year Growth," May 7, 2014, *available at* https://www.globenewswire.com/news-release/2014/05/07/633909/0/en/Coloplast-raises-guidance-for-full-year-growth.html (last accessed on February 21, 2022)

GlobeNewswire, "Continued Revenue Pressure in Q2; Strong Cash Flow," August 7, 2014, *available at* https://www.globenewswire.com/news-release/2014/08/07/656724/0/en/TDC-Continued-revenue-pressure-in-Q2-strong-cash-flow.html (last accessed on February 21, 2022)

GlobeNewswire, "TDC Confirms 2013 Guidance and Distributes Interim Dividend," August 7, 2013, *available at* https://www.globenewswire.com/en/news-release/2013/08/07/565046/0/en/TDC-TDC-confirms-2013-guidance-and-distributes-interim-dividend.html (last accessed on February 21, 2022)

GlobeNewswire, "TDC Confirms 2015 Guidance and Pays Out Interim Dividend," August 7, 2015, *available at* https://www.globenewswire.com/en/news-release/2015/08/07/758851/0/en/TDC-TDC-confirms-2015-guidance-and-pays-out-interim-dividend.html (last accessed on February 21, 2022)

GlobeNewswire, "TDC Reaffirms 2012 Guidance and Distributes Interim Dividend," August 8, 2012, *available at* https://www.globenewswire.com/news-release/2012/08/08/484834/0/en/TDC-TDC-reaffirms-2012-guidance-and-distributes-interim-dividend.html (last accessed on February 21, 2022)

ICE Futures U.S., "Wash Trade FAQ," July 2021, *available at* https://www.theice.com/publicdocs/futures_us/Wash_Sale_FAQ.pdf (last accessed on February 25, 2022)

ICMA, Global Master Repurchase Agreement (2011 Version), *available at* https://www.icmagroup.org/assets/documents/Legal/GMRA-2011/GMRA-2011/GMRA%202011_2011.04.20_formular.pdf (last accessed on February 24, 2022)

ICMA, Global Master Repurchase Agreement (2011 Version) Equities Annex, *available at* https://www.icmagroup.org/assets/documents/Legal/GMRA-2011/GMRA-2011/Equities-Annex-to-GMRA-2011_FINAL.pdf (last accessed on February 21, 2022)

ISDA, 2002 Master Agreement, *available at* https://www.gbm.hsbc.com/financial-regulation/2002-isda-master-agreement (last accessed on February 21, 2022)

ISLA, "Guidance Notes to the Global Master Securities Lending Agreement (2010 Version)," *available at* https://www.islaemea.org/wp-content/uploads/2019/03/GMSLA_2010_Guidance_Notes_Freshfields.pdf (last accessed February 24, 2022)

London Stock Exchange, "Rules of the London Stock Exchange: Rule Book," Effective July 1, 2019, *available at* https://docs.londonstockexchange.com/sites/default/files/documents/rules-lse.pdf (last accessed on February 10, 2022)

London Stock Exchange, "Stock Exchange Notice: MF Global UK Limited – Revision of Hammer Prices to Reflect Securities Going Ex-Dividend," December 6, 2011, *available at* https://docs.londonstockexchange.com/sites/default/files/documents/n2411.pdf (last accessed on February 18, 2022)

| |
|---|
| London Stock Exchange, "UnaVista," *available at* https://www.lseg.com/markets-products-and-services/post-trade/unavista (last accessed on February 25, 2022) |
| S&P Global, "Prosecutors Say Barclays, BofA Merrill Lynch Used in Cum-Ex Trade – Bloomberg," March 6, 2020, *available at* https://www.spglobal.com/marketintelligence/en/news-insights/latest-news-headlines/prosecutors-say-barclays-bofa-merrill-lynch-used-in-cum-ex-trades-8211-bloomberg-57454212 (last accessed on February 21, 2022) |
| The Wayback Machine, Solo Capital, *available at* https://web.archive.org/web/20131209035413/http://solo-capital.com/securitiesfinance.html (last accessed on February 25, 2022) |
| The Wayback Machine, Solo Capital, *available at* https://web.archive.org/web/20141218100151/http://solo-capital.com/ (last accessed on February 25, 2022) |
| The Wayback Machine, Solo Capital, *available at* https://web.archive.org/web/20150223112418/http://www.solo-capital.com:80/globalsecurities.html (last accessed on February 25, 2022) |
| U.S. Senate Permanent Subcommittee on Investigations, "Dividend Tax Abuse: How Offshore Entities Dodge Taxes on U.S. Stock Dividends," September 11, 2008, *available at* https://www.hsgac.senate.gov/imo/media/doc/REPORT%20-%20Dividend%20Tax%20Abuse%20(Sept%2011%202008).pdf (last accessed on February 21, 2022) |
| "What is Archegos and How Did it Rattle the Stock Market?," *The Wall Street Journal*, Updated April 6, 2021 |
| **Data** |
| Danish Financial Supervisory Authority |

**Documents Produced in Discovery**

| | | |
|---|---|---|
| COSTELLO00000001 | COSTELLO00000015 | COSTELLO00000030 |
| COSTELLO00000002 | COSTELLO00000015 | COSTELLO00000044 |
| COSTELLO00000003 | COSTELLO00000015 | COSTELLO00000044 |
| COSTELLO00000004 | COSTELLO00000016 | COSTELLO00000050 |
| COSTELLO00000005 | COSTELLO00000017 | COSTELLO00000050 |
| COSTELLO00000006 | COSTELLO00000018 | COSTELLO00000050 |
| COSTELLO00000007 | COSTELLO00000019 | COSTELLO00000050 |
| COSTELLO00000008 | COSTELLO00000020 | COSTELLO00000052 |
| COSTELLO00000009 | COSTELLO00000021 | COSTELLO00000052 |
| COSTELLO00000010 | COSTELLO00000022 | COSTELLO00000052 |
| COSTELLO00000010 | COSTELLO00000023 | COSTELLO00000052 |
| COSTELLO00000010 | COSTELLO00000024 | COSTELLO00000052 |
| COSTELLO00000015 | COSTELLO00000025 | COSTELLO00000054 |
| COSTELLO00000015 | COSTELLO00000026 | COSTELLO00000055 |
| COSTELLO00000015 | COSTELLO00000028 | COSTELLO00000055 |
| COSTELLO00000015 | COSTELLO00000029 | COSTELLO00000056 |
| COSTELLO00000015 | COSTELLO00000030 | COSTELLO00000057 |
| COSTELLO00000015 | COSTELLO00000030 | COSTELLO00000059 |
| COSTELLO00000015 | COSTELLO00000030 | COSTELLO00000065 |

CONFIDENTIAL

| | | |
|---|---|---|
| COSTELLO00000084 | COSTELLO00000280 | COSTELLO00001000 |
| COSTELLO00000092 | COSTELLO00000283 | COSTELLO00001001 |
| COSTELLO00000157 | COSTELLO00000286 | COSTELLO00001002 |
| COSTELLO00000160 | COSTELLO00000289 | COSTELLO00001003 |
| COSTELLO00000163 | COSTELLO00000292 | COSTELLO00001005 |
| COSTELLO00000166 | COSTELLO00000295 | COSTELLO00001006 |
| COSTELLO00000169 | COSTELLO00000298 | COSTELLO00001007 |
| COSTELLO00000172 | COSTELLO00000301 | COSTELLO00001008 |
| COSTELLO00000175 | COSTELLO00000304 | COSTELLO00001010 |
| COSTELLO00000178 | COSTELLO00000307 | COSTELLO00001011 |
| COSTELLO00000181 | COSTELLO00000310 | COSTELLO00001014 |
| COSTELLO00000184 | COSTELLO00000527 | COSTELLO00001015 |
| COSTELLO00000187 | COSTELLO00000571 | COSTELLO00001016 |
| COSTELLO00000190 | COSTELLO00000615 | COSTELLO00001017 |
| COSTELLO00000193 | COSTELLO00000659 | COSTELLO00001018 |
| COSTELLO00000196 | COSTELLO00000703 | COSTELLO00001019 |
| COSTELLO00000199 | COSTELLO00000747 | COSTELLO00001020 |
| COSTELLO00000202 | COSTELLO00000797 | COSTELLO00001021 |
| COSTELLO00000205 | COSTELLO00000841 | COSTELLO00001022 |
| COSTELLO00000208 | COSTELLO00000960 | COSTELLO00001023 |
| COSTELLO00000211 | COSTELLO00000963 | COSTELLO00001025 |
| COSTELLO00000214 | COSTELLO00000969 | COSTELLO00001026 |
| COSTELLO00000217 | COSTELLO00000970 | COSTELLO00001027 |
| COSTELLO00000220 | COSTELLO00000972 | COSTELLO00001028 |
| COSTELLO00000223 | COSTELLO00000973 | COSTELLO00001029 |
| COSTELLO00000226 | COSTELLO00000974 | COSTELLO00001030 |
| COSTELLO00000229 | COSTELLO00000975 | COSTELLO00001031 |
| COSTELLO00000232 | COSTELLO00000979 | COSTELLO00001032 |
| COSTELLO00000235 | COSTELLO00000980 | COSTELLO00001033 |
| COSTELLO00000238 | COSTELLO00000981 | COSTELLO00001034 |
| COSTELLO00000241 | COSTELLO00000982 | COSTELLO00001035 |
| COSTELLO00000244 | COSTELLO00000984 | COSTELLO00001036 |
| COSTELLO00000247 | COSTELLO00000985 | COSTELLO00001037 |
| COSTELLO00000250 | COSTELLO00000986 | COSTELLO00001038 |
| COSTELLO00000253 | COSTELLO00000987 | COSTELLO00001039 |
| COSTELLO00000256 | COSTELLO00000989 | COSTELLO00001040 |
| COSTELLO00000259 | COSTELLO00000990 | COSTELLO00001042 |
| COSTELLO00000262 | COSTELLO00000991 | COSTELLO00001043 |
| COSTELLO00000265 | COSTELLO00000992 | COSTELLO00001044 |
| COSTELLO00000268 | COSTELLO00000994 | COSTELLO00001045 |
| COSTELLO00000271 | COSTELLO00000995 | COSTELLO00001046 |
| COSTELLO00000274 | COSTELLO00000998 | COSTELLO00001047 |
| COSTELLO00000277 | COSTELLO00000999 | COSTELLO00001048 |

CONFIDENTIAL

| | | |
|---|---|---|
| COSTELLO00001049 | COSTELLO00001100 | COSTELLO00001146 |
| COSTELLO00001051 | COSTELLO00001101 | COSTELLO00001147 |
| COSTELLO00001052 | COSTELLO00001102 | COSTELLO00001148 |
| COSTELLO00001053 | COSTELLO00001103 | COSTELLO00001149 |
| COSTELLO00001054 | COSTELLO00001104 | COSTELLO00001150 |
| COSTELLO00001056 | COSTELLO00001105 | COSTELLO00001151 |
| COSTELLO00001057 | COSTELLO00001106 | COSTELLO00001243 |
| COSTELLO00001058 | COSTELLO00001107 | COSTELLO00001245 |
| COSTELLO00001059 | COSTELLO00001108 | COSTELLO00001246 |
| COSTELLO00001061 | COSTELLO00001109 | COSTELLO00001248 |
| COSTELLO00001062 | COSTELLO00001110 | COSTELLO00001250 |
| COSTELLO00001063 | COSTELLO00001111 | COSTELLO00001251 |
| COSTELLO00001064 | COSTELLO00001112 | COSTELLO00001252 |
| COSTELLO00001066 | COSTELLO00001113 | COSTELLO00001253 |
| COSTELLO00001067 | COSTELLO00001114 | COSTELLO00001269 |
| COSTELLO00001068 | COSTELLO00001115 | COSTELLO00001272 |
| COSTELLO00001069 | COSTELLO00001116 | COSTELLO00001275 |
| COSTELLO00001070 | COSTELLO00001117 | COSTELLO00001282 |
| COSTELLO00001071 | COSTELLO00001118 | COSTELLO00001283 |
| COSTELLO00001072 | COSTELLO00001119 | COSTELLO00001334 |
| COSTELLO00001073 | COSTELLO00001121 | COSTELLO00001335 |
| COSTELLO00001075 | COSTELLO00001122 | COSTELLO00001336 |
| COSTELLO00001076 | COSTELLO00001123 | COSTELLO00001337 |
| COSTELLO00001077 | COSTELLO00001124 | COSTELLO00001338 |
| COSTELLO00001078 | COSTELLO00001125 | COSTELLO00001339 |
| COSTELLO00001079 | COSTELLO00001126 | COSTELLO00001340 |
| COSTELLO00001080 | COSTELLO00001127 | COSTELLO00001341 |
| COSTELLO00001081 | COSTELLO00001128 | COSTELLO00001342 |
| COSTELLO00001082 | COSTELLO00001129 | COSTELLO00001343 |
| COSTELLO00001083 | COSTELLO00001130 | COSTELLO00001344 |
| COSTELLO00001084 | COSTELLO00001131 | COSTELLO00001345 |
| COSTELLO00001085 | COSTELLO00001132 | COSTELLO00001347 |
| COSTELLO00001086 | COSTELLO00001133 | COSTELLO00001348 |
| COSTELLO00001088 | COSTELLO00001134 | COSTELLO00001349 |
| COSTELLO00001089 | COSTELLO00001135 | COSTELLO00001350 |
| COSTELLO00001090 | COSTELLO00001136 | COSTELLO00001351 |
| COSTELLO00001091 | COSTELLO00001137 | COSTELLO00001352 |
| COSTELLO00001092 | COSTELLO00001139 | COSTELLO00001353 |
| COSTELLO00001093 | COSTELLO00001140 | COSTELLO00001354 |
| COSTELLO00001094 | COSTELLO00001141 | COSTELLO00001355 |
| COSTELLO00001095 | COSTELLO00001142 | COSTELLO00001356 |
| COSTELLO00001097 | COSTELLO00001143 | COSTELLO00001357 |
| COSTELLO00001098 | COSTELLO00001144 | COSTELLO00001358 |

CONFIDENTIAL

| | | |
|---|---|---|
| COSTELLO00001376 | COSTELLO00001465 | COSTELLO00001508 |
| COSTELLO00001378 | COSTELLO00001466 | COSTELLO00001509 |
| COSTELLO00001418 | COSTELLO00001467 | COSTELLO00001510 |
| COSTELLO00001419 | COSTELLO00001468 | COSTELLO00001511 |
| COSTELLO00001420 | COSTELLO00001469 | COSTELLO00001512 |
| COSTELLO00001421 | COSTELLO00001470 | COSTELLO00001513 |
| COSTELLO00001422 | COSTELLO00001471 | COSTELLO00001514 |
| COSTELLO00001423 | COSTELLO00001472 | COSTELLO00001515 |
| COSTELLO00001426 | COSTELLO00001473 | COSTELLO00001516 |
| COSTELLO00001427 | COSTELLO00001474 | COSTELLO00001517 |
| COSTELLO00001428 | COSTELLO00001475 | COSTELLO00001518 |
| COSTELLO00001429 | COSTELLO00001476 | COSTELLO00001519 |
| COSTELLO00001430 | COSTELLO00001477 | COSTELLO00001520 |
| COSTELLO00001432 | COSTELLO00001478 | COSTELLO00001521 |
| COSTELLO00001433 | COSTELLO00001479 | COSTELLO00001522 |
| COSTELLO00001434 | COSTELLO00001480 | COSTELLO00001523 |
| COSTELLO00001435 | COSTELLO00001481 | COSTELLO00001524 |
| COSTELLO00001436 | COSTELLO00001482 | COSTELLO00001525 |
| COSTELLO00001437 | COSTELLO00001483 | COSTELLO00001526 |
| COSTELLO00001438 | COSTELLO00001484 | COSTELLO00001527 |
| COSTELLO00001439 | COSTELLO00001485 | COSTELLO00001528 |
| COSTELLO00001441 | COSTELLO00001486 | COSTELLO00001529 |
| COSTELLO00001442 | COSTELLO00001487 | COSTELLO00001530 |
| COSTELLO00001443 | COSTELLO00001488 | COSTELLO00001532 |
| COSTELLO00001444 | COSTELLO00001489 | COSTELLO00001533 |
| COSTELLO00001446 | COSTELLO00001490 | COSTELLO00001534 |
| COSTELLO00001447 | COSTELLO00001491 | COSTELLO00001535 |
| COSTELLO00001449 | COSTELLO00001492 | COSTELLO00001536 |
| COSTELLO00001450 | COSTELLO00001493 | COSTELLO00001537 |
| COSTELLO00001451 | COSTELLO00001494 | COSTELLO00001538 |
| COSTELLO00001452 | COSTELLO00001495 | COSTELLO00001539 |
| COSTELLO00001453 | COSTELLO00001496 | COSTELLO00001540 |
| COSTELLO00001454 | COSTELLO00001497 | COSTELLO00001541 |
| COSTELLO00001455 | COSTELLO00001498 | COSTELLO00001542 |
| COSTELLO00001456 | COSTELLO00001499 | COSTELLO00001543 |
| COSTELLO00001457 | COSTELLO00001500 | COSTELLO00001544 |
| COSTELLO00001458 | COSTELLO00001501 | COSTELLO00001545 |
| COSTELLO00001459 | COSTELLO00001502 | COSTELLO00001546 |
| COSTELLO00001460 | COSTELLO00001503 | COSTELLO00001547 |
| COSTELLO00001461 | COSTELLO00001504 | COSTELLO00001548 |
| COSTELLO00001462 | COSTELLO00001505 | COSTELLO00001549 |
| COSTELLO00001463 | COSTELLO00001506 | COSTELLO00001550 |
| COSTELLO00001464 | COSTELLO00001507 | COSTELLO00001551 |

CONFIDENTIAL

| | | |
|---|---|---|
| COSTELLO00001552 | COSTELLO00001669 | COSTELLO00001776 |
| COSTELLO00001553 | COSTELLO00001674 | COSTELLO00001778 |
| COSTELLO00001554 | COSTELLO00001677 | COSTELLO00001797 |
| COSTELLO00001555 | COSTELLO00001684 | COSTELLO00001798 |
| COSTELLO00001559 | COSTELLO00001688 | COSTELLO00001799 |
| COSTELLO00001560 | COSTELLO00001692 | COSTELLO00001800 |
| COSTELLO00001561 | COSTELLO00001696 | COSTELLO00001801 |
| COSTELLO00001562 | COSTELLO00001700 | COSTELLO00001802 |
| COSTELLO00001563 | COSTELLO00001704 | COSTELLO00001804 |
| COSTELLO00001564 | COSTELLO00001723 | COSTELLO00001805 |
| COSTELLO00001565 | COSTELLO00001724 | COSTELLO00001806 |
| COSTELLO00001566 | COSTELLO00001725 | COSTELLO00001807 |
| COSTELLO00001567 | COSTELLO00001726 | COSTELLO00001808 |
| COSTELLO00001568 | COSTELLO00001727 | COSTELLO00001809 |
| COSTELLO00001569 | COSTELLO00001728 | COSTELLO00001811 |
| COSTELLO00001570 | COSTELLO00001732 | COSTELLO00001817 |
| COSTELLO00001571 | COSTELLO00001733 | COSTELLO00001819 |
| COSTELLO00001572 | COSTELLO00001735 | COSTELLO00001824 |
| COSTELLO00001573 | COSTELLO00001736 | COSTELLO00001830 |
| COSTELLO00001574 | COSTELLO00001737 | COSTELLO00001833 |
| COSTELLO00001575 | COSTELLO00001738 | COSTELLO00001835 |
| COSTELLO00001576 | COSTELLO00001739 | COSTELLO00001842 |
| COSTELLO00001577 | COSTELLO00001740 | COSTELLO00001846 |
| COSTELLO00001578 | COSTELLO00001741 | COSTELLO00001850 |
| COSTELLO00001579 | COSTELLO00001742 | COSTELLO00001854 |
| COSTELLO00001580 | COSTELLO00001743 | COSTELLO00001858 |
| COSTELLO00001581 | COSTELLO00001744 | COSTELLO00001862 |
| COSTELLO00001582 | COSTELLO00001746 | COSTELLO00001863 |
| COSTELLO00001583 | COSTELLO00001747 | COSTELLO00001865 |
| COSTELLO00001587 | COSTELLO00001748 | COSTELLO00001866 |
| COSTELLO00001590 | COSTELLO00001749 | COSTELLO00001867 |
| COSTELLO00001592 | COSTELLO00001750 | COSTELLO00001868 |
| COSTELLO00001596 | COSTELLO00001751 | COSTELLO00001869 |
| COSTELLO00001597 | COSTELLO00001753 | COSTELLO00001870 |
| COSTELLO00001600 | COSTELLO00001754 | COSTELLO00001873 |
| COSTELLO00001607 | COSTELLO00001756 | COSTELLO00001874 |
| COSTELLO00001613 | COSTELLO00001757 | COSTELLO00001875 |
| COSTELLO00001616 | COSTELLO00001760 | COSTELLO00001876 |
| COSTELLO00001619 | COSTELLO00001763 | COSTELLO00001877 |
| COSTELLO00001622 | COSTELLO00001768 | COSTELLO00001878 |
| COSTELLO00001658 | COSTELLO00001770 | COSTELLO00001894 |
| COSTELLO00001664 | COSTELLO00001772 | COSTELLO00001895 |
| COSTELLO00001666 | COSTELLO00001774 | COSTELLO00001896 |

CONFIDENTIAL

| | | |
|---|---|---|
| COSTELLO00001897 | COSTELLO00002536 | ELYSIUM-04280089 |
| COSTELLO00001900 | COSTELLO00002542 | ELYSIUM-04280090 |
| COSTELLO00001901 | COSTELLO00002543 | ELYSIUM-04280092 |
| COSTELLO00001902 | COSTELLO00002544 | ELYSIUM-04280093 |
| COSTELLO00001903 | COSTELLO00002594 | ELYSIUM-04445614 |
| COSTELLO00001904 | COSTELLO00002598 | ELYSIUM-04446148 |
| COSTELLO00001905 | COSTELLO00002599 | ELYSIUM-04585101 |
| COSTELLO00001907 | COSTELLO00002600 | ELYSIUM-04585165 |
| COSTELLO00001908 | COSTELLO00002607 | ELYSIUM-04585304 |
| COSTELLO00001924 | COSTELLO00002608 | ELYSIUM-04736480 |
| COSTELLO00001925 | COSTELLO00002609 | ELYSIUM-04736481 |
| COSTELLO00001926 | COSTELLO00002625 | ELYSIUM-07699789 |
| COSTELLO00001927 | COSTELLO00002634 | ELYSIUM-07699790 |
| COSTELLO00001928 | COSTELLO00002702 | FWCCAP00000001 |
| COSTELLO00001929 | COSTELLO00002703 | FWCCAP00000002 |
| COSTELLO00001931 | COSTELLO00002704 | FWCCAP00000003 |
| COSTELLO00001932 | COSTELLO00002706 | FWCCAP00000004 |
| COSTELLO00001933 | COSTELLO00002707 | FWCCAP00000005 |
| COSTELLO00001934 | COSTELLO00002708 | FWCCAP00000006 |
| COSTELLO00001935 | COSTELLO00002709 | FWCCAP00000007 |
| COSTELLO00001936 | COSTELLO00002774 | FWCCAP00000008 |
| COSTELLO00001937 | EDGEPNT00001116 | FWCCAP00000009 |
| COSTELLO00001951 | ELYSIUM-00359878 | FWCCAP00000010 |
| COSTELLO00001952 | ELYSIUM-00359879 | FWCCAP00000011 |
| COSTELLO00001960 | ELYSIUM-00363657 | FWCCAP00000012 |
| COSTELLO00001962 | ELYSIUM-00363658 | FWCCAP00000013 |
| COSTELLO00001963 | ELYSIUM-00363659 | FWCCAP00000014 |
| COSTELLO00001964 | ELYSIUM-02456224 | FWCCAP00000015 |
| COSTELLO00001967 | ELYSIUM-02456225 | FWCCAP00000015 |
| COSTELLO00001969 | ELYSIUM-03009935 | FWCCAP00000015 |
| COSTELLO00001974 | ELYSIUM-03009936 | FWCCAP00000015 |
| COSTELLO00001980 | ELYSIUM-03896088 | FWCCAP00000015 |
| COSTELLO00001993 | ELYSIUM-03896089 | FWCCAP00000015 |
| COSTELLO00001996 | ELYSIUM-03910951 | FWCCAP00000015 |
| COSTELLO00002000 | ELYSIUM-03910995 | FWCCAP00000015 |
| COSTELLO00002032 | ELYSIUM-03911000 | FWCCAP00000025 |
| COSTELLO00002085 | ELYSIUM-03911013 | FWCCAP00000025 |
| COSTELLO00002088 | ELYSIUM-03915200 | FWCCAP00000025 |
| COSTELLO00002150 | ELYSIUM-03915387 | FWCCAP00000026 |
| COSTELLO00002151 | ELYSIUM-03915614 | FWCCAP00000027 |
| COSTELLO00002155 | ELYSIUM-03915771 | FWCCAP00000028 |
| COSTELLO00002174 | ELYSIUM-03924395 | FWCCAP00000029 |
| COSTELLO00002532 | ELYSIUM-03928609 | FWCCAP00000030 |

CONFIDENTIAL

| | | |
|---|---|---|
| FWCCAP00000031 | FWCCAP00000299 | FWCCAP00000945 |
| FWCCAP00000032 | FWCCAP00000302 | FWCCAP00000989 |
| FWCCAP00000033 | FWCCAP00000305 | FWCCAP00001033 |
| FWCCAP00000034 | FWCCAP00000308 | FWCCAP00001040 |
| FWCCAP00000035 | FWCCAP00000311 | FWCCAP00001203 |
| FWCCAP00000039 | FWCCAP00000314 | FWCCAP00001209 |
| FWCCAP00000060 | FWCCAP00000317 | FWCCAP00001213 |
| FWCCAP00000060 | FWCCAP00000320 | FWCCAP00001233 |
| FWCCAP00000062 | FWCCAP00000323 | FWCCAP00001236 |
| FWCCAP00000064 | FWCCAP00000326 | FWCCAP00001237 |
| FWCCAP00000064 | FWCCAP00000329 | FWCCAP00001238 |
| FWCCAP00000066 | FWCCAP00000332 | FWCCAP00001239 |
| FWCCAP00000066 | FWCCAP00000335 | FWCCAP00001240 |
| FWCCAP00000076 | FWCCAP00000338 | FWCCAP00001242 |
| FWCCAP00000076 | FWCCAP00000341 | FWCCAP00001243 |
| FWCCAP00000076 | FWCCAP00000344 | FWCCAP00001244 |
| FWCCAP00000076 | FWCCAP00000347 | FWCCAP00001245 |
| FWCCAP00000077 | FWCCAP00000350 | FWCCAP00001246 |
| FWCCAP00000077 | FWCCAP00000353 | FWCCAP00001247 |
| FWCCAP00000078 | FWCCAP00000356 | FWCCAP00001248 |
| FWCCAP00000103 | FWCCAP00000359 | FWCCAP00001249 |
| FWCCAP00000107 | FWCCAP00000362 | FWCCAP00001250 |
| FWCCAP00000133 | FWCCAP00000365 | FWCCAP00001251 |
| FWCCAP00000136 | FWCCAP00000368 | FWCCAP00001252 |
| FWCCAP00000141 | FWCCAP00000371 | FWCCAP00001253 |
| FWCCAP00000156 | FWCCAP00000374 | FWCCAP00001254 |
| FWCCAP00000160 | FWCCAP00000377 | FWCCAP00001255 |
| FWCCAP00000193 | FWCCAP00000380 | FWCCAP00001256 |
| FWCCAP00000194 | FWCCAP00000383 | FWCCAP00001257 |
| FWCCAP00000257 | FWCCAP00000386 | FWCCAP00001259 |
| FWCCAP00000260 | FWCCAP00000389 | FWCCAP00001260 |
| FWCCAP00000263 | FWCCAP00000392 | FWCCAP00001261 |
| FWCCAP00000266 | FWCCAP00000395 | FWCCAP00001262 |
| FWCCAP00000269 | FWCCAP00000398 | FWCCAP00001263 |
| FWCCAP00000272 | FWCCAP00000401 | FWCCAP00001264 |
| FWCCAP00000275 | FWCCAP00000404 | FWCCAP00001265 |
| FWCCAP00000278 | FWCCAP00000630 | FWCCAP00001266 |
| FWCCAP00000281 | FWCCAP00000674 | FWCCAP00001267 |
| FWCCAP00000284 | FWCCAP00000718 | FWCCAP00001268 |
| FWCCAP00000287 | FWCCAP00000762 | FWCCAP00001269 |
| FWCCAP00000290 | FWCCAP00000806 | FWCCAP00001270 |
| FWCCAP00000293 | FWCCAP00000850 | FWCCAP00001271 |
| FWCCAP00000296 | FWCCAP00000894 | FWCCAP00001290 |

CONFIDENTIAL

| | | |
|---|---|---|
| FWCCAP00001291 | FWCCAP00001750 | FWCCAP00001938 |
| FWCCAP00001292 | FWCCAP00001753 | FWCCAP00001939 |
| FWCCAP00001294 | FWCCAP00001815 | FWCCAP00001940 |
| FWCCAP00001296 | FWCCAP00001816 | FWCCAP00001943 |
| FWCCAP00001297 | FWCCAP00001818 | FWCCAP00001944 |
| FWCCAP00001298 | FWCCAP00001824 | FWCCAP00001946 |
| FWCCAP00001299 | FWCCAP00001829 | FWCCAP00001955 |
| FWCCAP00001300 | FWCCAP00001832 | FWCCAP00001957 |
| FWCCAP00001301 | FWCCAP00001838 | FWCCAP00001967 |
| FWCCAP00001302 | FWCCAP00001843 | FWCCAP00001968 |
| FWCCAP00001303 | FWCCAP00001845 | FWCCAP00001969 |
| FWCCAP00001304 | FWCCAP00001848 | FWCCAP00001970 |
| FWCCAP00001305 | FWCCAP00001849 | FWCCAP00001971 |
| FWCCAP00001307 | FWCCAP00001853 | FWCCAP00001972 |
| FWCCAP00001308 | FWCCAP00001866 | FWCCAP00001973 |
| FWCCAP00001309 | FWCCAP00001870 | FWCCAP00001974 |
| FWCCAP00001310 | FWCCAP00001902 | FWCCAP00001975 |
| FWCCAP00001312 | FWCCAP00001906 | FWCCAP00001976 |
| FWCCAP00001313 | FWCCAP00001907 | FWCCAP00001977 |
| FWCCAP00001314 | FWCCAP00001908 | FWCCAP00001978 |
| FWCCAP00001315 | FWCCAP00001909 | FWCCAP00001979 |
| FWCCAP00001316 | FWCCAP00001910 | FWCCAP00001980 |
| FWCCAP00001317 | FWCCAP00001911 | FWCCAP00001981 |
| FWCCAP00001318 | FWCCAP00001912 | FWCCAP00001982 |
| FWCCAP00001319 | FWCCAP00001913 | FWCCAP00001983 |
| FWCCAP00001320 | FWCCAP00001915 | FWCCAP00001986 |
| FWCCAP00001321 | FWCCAP00001916 | FWCCAP00001987 |
| FWCCAP00001322 | FWCCAP00001919 | FWCCAP00001989 |
| FWCCAP00001323 | FWCCAP00001920 | FWCCAP00001991 |
| FWCCAP00001325 | FWCCAP00001921 | FWCCAP00001992 |
| FWCCAP00001326 | FWCCAP00001922 | FWCCAP00001993 |
| FWCCAP00001328 | FWCCAP00001923 | FWCCAP00001994 |
| FWCCAP00001328 | FWCCAP00001924 | FWCCAP00001995 |
| FWCCAP00001329 | FWCCAP00001925 | FWCCAP00001996 |
| FWCCAP00001329 | FWCCAP00001926 | FWCCAP00001997 |
| FWCCAP00001610 | FWCCAP00001927 | FWCCAP00001998 |
| FWCCAP00001656 | FWCCAP00001928 | FWCCAP00001999 |
| FWCCAP00001671 | FWCCAP00001929 | FWCCAP00002001 |
| FWCCAP00001677 | FWCCAP00001933 | FWCCAP00002003 |
| FWCCAP00001697 | FWCCAP00001934 | FWCCAP00002004 |
| FWCCAP00001710 | FWCCAP00001935 | FWCCAP00002005 |
| FWCCAP00001714 | FWCCAP00001936 | FWCCAP00002006 |
| FWCCAP00001746 | FWCCAP00001937 | FWCCAP00002007 |

CONFIDENTIAL

| | | |
|---|---|---|
| FWCCAP00002008 | FWCCAP00002064 | FWCCAP00002120 |
| FWCCAP00002011 | FWCCAP00002065 | FWCCAP00002121 |
| FWCCAP00002013 | FWCCAP00002067 | FWCCAP00002122 |
| FWCCAP00002015 | FWCCAP00002072 | FWCCAP00002123 |
| FWCCAP00002016 | FWCCAP00002074 | FWCCAP00002124 |
| FWCCAP00002017 | FWCCAP00002075 | FWCCAP00002125 |
| FWCCAP00002018 | FWCCAP00002078 | FWCCAP00002126 |
| FWCCAP00002019 | FWCCAP00002079 | FWCCAP00002129 |
| FWCCAP00002020 | FWCCAP00002080 | FWCCAP00002130 |
| FWCCAP00002021 | FWCCAP00002081 | FWCCAP00002131 |
| FWCCAP00002022 | FWCCAP00002082 | FWCCAP00002132 |
| FWCCAP00002025 | FWCCAP00002083 | FWCCAP00002134 |
| FWCCAP00002026 | FWCCAP00002084 | FWCCAP00002160 |
| FWCCAP00002027 | FWCCAP00002085 | FWCCAP00002203 |
| FWCCAP00002028 | FWCCAP00002086 | FWCCAP00002203 |
| FWCCAP00002029 | FWCCAP00002087 | FWCCAP00002203 |
| FWCCAP00002030 | FWCCAP00002088 | FWCCAP00002203 |
| FWCCAP00002031 | FWCCAP00002089 | FWCCAP00002203 |
| FWCCAP00002034 | FWCCAP00002090 | FWCCAP00002203 |
| FWCCAP00002035 | FWCCAP00002091 | FWCCAP00002203 |
| FWCCAP00002036 | FWCCAP00002092 | FWCCAP00002203 |
| FWCCAP00002037 | FWCCAP00002093 | FWCCAP00002215 |
| FWCCAP00002038 | FWCCAP00002094 | FWCCAP00002215 |
| FWCCAP00002039 | FWCCAP00002095 | FWCCAP00002215 |
| FWCCAP00002040 | FWCCAP00002096 | FWCCAP00002217 |
| FWCCAP00002041 | FWCCAP00002097 | FWCCAP00002217 |
| FWCCAP00002042 | FWCCAP00002098 | FWCCAP00002235 |
| FWCCAP00002045 | FWCCAP00002099 | FWCCAP00002241 |
| FWCCAP00002047 | FWCCAP00002100 | FWCCAP00002248 |
| FWCCAP00002048 | FWCCAP00002101 | FWCCAP00002249 |
| FWCCAP00002049 | FWCCAP00002102 | FWCCAP00002250 |
| FWCCAP00002050 | FWCCAP00002103 | FWCCAP00002251 |
| FWCCAP00002051 | FWCCAP00002104 | FWCCAP00002252 |
| FWCCAP00002052 | FWCCAP00002105 | FWCCAP00002253 |
| FWCCAP00002053 | FWCCAP00002106 | FWCCAP00002254 |
| FWCCAP00002054 | FWCCAP00002107 | FWCCAP00002255 |
| FWCCAP00002055 | FWCCAP00002109 | FWCCAP00002256 |
| FWCCAP00002056 | FWCCAP00002110 | FWCCAP00002257 |
| FWCCAP00002057 | FWCCAP00002111 | FWCCAP00002258 |
| FWCCAP00002058 | FWCCAP00002114 | FWCCAP00002259 |
| FWCCAP00002059 | FWCCAP00002116 | FWCCAP00002260 |
| FWCCAP00002060 | FWCCAP00002118 | FWCCAP00002264 |
| FWCCAP00002061 | FWCCAP00002119 | FWCCAP00002341 |

CONFIDENTIAL

| | | |
|---|---|---|
| FWCCAP00002342 | FWCCAP00002541 | FWCCAP00002607 |
| FWCCAP00002343 | FWCCAP00002542 | FWCCAP00002608 |
| FWCCAP00002344 | FWCCAP00002543 | FWCCAP00002609 |
| FWCCAP00002349 | FWCCAP00002545 | FWCCAP00002610 |
| FWCCAP00002350 | FWCCAP00002546 | FWCCAP00002611 |
| FWCCAP00002352 | FWCCAP00002547 | FWCCAP00002612 |
| FWCCAP00002353 | FWCCAP00002553 | FWCCAP00002613 |
| FWCCAP00002358 | FWCCAP00002564 | FWCCAP00002614 |
| FWCCAP00002373 | FWCCAP00002565 | FWCCAP00002615 |
| FWCCAP00002374 | FWCCAP00002568 | FWCCAP00002616 |
| FWCCAP00002377 | FWCCAP00002569 | FWCCAP00002617 |
| FWCCAP00002378 | FWCCAP00002570 | FWCCAP00002618 |
| FWCCAP00002447 | FWCCAP00002571 | FWCCAP00002619 |
| FWCCAP00002448 | FWCCAP00002572 | FWCCAP00002620 |
| FWCCAP00002449 | FWCCAP00002573 | FWCCAP00002621 |
| FWCCAP00002450 | FWCCAP00002574 | FWCCAP00002622 |
| FWCCAP00002451 | FWCCAP00002575 | FWCCAP00002623 |
| FWCCAP00002452 | FWCCAP00002576 | FWCCAP00002624 |
| FWCCAP00002453 | FWCCAP00002577 | FWCCAP00002625 |
| FWCCAP00002454 | FWCCAP00002578 | FWCCAP00002626 |
| FWCCAP00002455 | FWCCAP00002579 | FWCCAP00002627 |
| FWCCAP00002456 | FWCCAP00002583 | FWCCAP00002628 |
| FWCCAP00002457 | FWCCAP00002584 | FWCCAP00002629 |
| FWCCAP00002458 | FWCCAP00002585 | FWCCAP00002630 |
| FWCCAP00002461 | FWCCAP00002586 | FWCCAP00002631 |
| FWCCAP00002463 | FWCCAP00002587 | FWCCAP00002632 |
| FWCCAP00002464 | FWCCAP00002590 | FWCCAP00002633 |
| FWCCAP00002465 | FWCCAP00002591 | FWCCAP00002634 |
| FWCCAP00002466 | FWCCAP00002592 | FWCCAP00002635 |
| FWCCAP00002467 | FWCCAP00002593 | FWCCAP00002636 |
| FWCCAP00002468 | FWCCAP00002594 | FWCCAP00002637 |
| FWCCAP00002472 | FWCCAP00002595 | FWCCAP00002638 |
| FWCCAP00002473 | FWCCAP00002596 | FWCCAP00002639 |
| FWCCAP00002474 | FWCCAP00002597 | FWCCAP00002640 |
| FWCCAP00002475 | FWCCAP00002598 | FWCCAP00002641 |
| FWCCAP00002476 | FWCCAP00002599 | FWCCAP00002642 |
| FWCCAP00002480 | FWCCAP00002600 | FWCCAP00002643 |
| FWCCAP00002530 | FWCCAP00002601 | FWCCAP00002644 |
| FWCCAP00002531 | FWCCAP00002602 | FWCCAP00002645 |
| FWCCAP00002532 | FWCCAP00002603 | FWCCAP00002646 |
| FWCCAP00002533 | FWCCAP00002604 | FWCCAP00002647 |
| FWCCAP00002534 | FWCCAP00002605 | FWCCAP00002648 |
| FWCCAP00002535 | FWCCAP00002606 | FWCCAP00002649 |

CONFIDENTIAL

| | | |
|---|---|---|
| FWCCAP00002650 | FWCCAP00002797 | FWCCAP00002852 |
| FWCCAP00002651 | FWCCAP00002798 | FWCCAP00002853 |
| FWCCAP00002652 | FWCCAP00002799 | FWCCAP00002854 |
| FWCCAP00002653 | FWCCAP00002800 | FWCCAP00002855 |
| FWCCAP00002654 | FWCCAP00002801 | FWCCAP00002856 |
| FWCCAP00002655 | FWCCAP00002802 | FWCCAP00002857 |
| FWCCAP00002658 | FWCCAP00002803 | FWCCAP00002858 |
| FWCCAP00002659 | FWCCAP00002804 | FWCCAP00002859 |
| FWCCAP00002660 | FWCCAP00002805 | FWCCAP00002860 |
| FWCCAP00002661 | FWCCAP00002806 | FWCCAP00002861 |
| FWCCAP00002662 | FWCCAP00002807 | FWCCAP00002862 |
| FWCCAP00002663 | FWCCAP00002808 | FWCCAP00002863 |
| FWCCAP00002664 | FWCCAP00002812 | FWCCAP00002864 |
| FWCCAP00002665 | FWCCAP00002817 | FWCCAP00002865 |
| FWCCAP00002666 | FWCCAP00002818 | FWCCAP00002866 |
| FWCCAP00002667 | FWCCAP00002819 | FWCCAP00002867 |
| FWCCAP00002668 | FWCCAP00002820 | FWCCAP00002868 |
| FWCCAP00002669 | FWCCAP00002821 | FWCCAP00002869 |
| FWCCAP00002672 | FWCCAP00002822 | FWCCAP00002870 |
| FWCCAP00002673 | FWCCAP00002823 | FWCCAP00002874 |
| FWCCAP00002674 | FWCCAP00002825 | FWCCAP00002876 |
| FWCCAP00002675 | FWCCAP00002826 | FWCCAP00002878 |
| FWCCAP00002676 | FWCCAP00002827 | FWCCAP00002879 |
| FWCCAP00002677 | FWCCAP00002829 | FWCCAP00002880 |
| FWCCAP00002678 | FWCCAP00002830 | FWCCAP00002881 |
| FWCCAP00002680 | FWCCAP00002834 | FWCCAP00002882 |
| FWCCAP00002681 | FWCCAP00002835 | FWCCAP00002883 |
| FWCCAP00002682 | FWCCAP00002836 | FWCCAP00002884 |
| FWCCAP00002683 | FWCCAP00002837 | FWCCAP00002885 |
| FWCCAP00002684 | FWCCAP00002838 | FWCCAP00002886 |
| FWCCAP00002703 | FWCCAP00002839 | FWCCAP00002887 |
| FWCCAP00002729 | FWCCAP00002840 | FWCCAP00002888 |
| FWCCAP00002731 | FWCCAP00002841 | FWCCAP00002889 |
| FWCCAP00002733 | FWCCAP00002842 | FWCCAP00002890 |
| FWCCAP00002734 | FWCCAP00002843 | FWCCAP00002891 |
| FWCCAP00002736 | FWCCAP00002844 | FWCCAP00002894 |
| FWCCAP00002744 | FWCCAP00002845 | FWCCAP00002896 |
| FWCCAP00002751 | FWCCAP00002846 | FWCCAP00002897 |
| FWCCAP00002756 | FWCCAP00002847 | FWCCAP00002960 |
| FWCCAP00002759 | FWCCAP00002848 | FWCCAP00002960 |
| FWCCAP00002767 | FWCCAP00002849 | FWCCAP00002960 |
| FWCCAP00002785 | FWCCAP00002850 | FWCCAP00002960 |
| FWCCAP00002795 | FWCCAP00002851 | FWCCAP00002962 |

CONFIDENTIAL

| | | |
|---|---|---|
| FWCCAP00002962 | FWCCAP00003008 | FWCCAP00003131 |
| FWCCAP00002962 | FWCCAP00003009 | FWCCAP00003132 |
| FWCCAP00002962 | FWCCAP00003010 | FWCCAP00003133 |
| FWCCAP00002963 | FWCCAP00003011 | FWCCAP00003137 |
| FWCCAP00002963 | FWCCAP00003012 | FWCCAP00003170 |
| FWCCAP00002963 | FWCCAP00003013 | FWCCAP00003172 |
| FWCCAP00002963 | FWCCAP00003014 | FWCCAP00003173 |
| FWCCAP00002963 | FWCCAP00003015 | FWCCAP00003174 |
| FWCCAP00002963 | FWCCAP00003016 | FWCCAP00003182 |
| FWCCAP00002963 | FWCCAP00003017 | FWCCAP00003183 |
| FWCCAP00002964 | FWCCAP00003018 | FWCCAP00003187 |
| FWCCAP00002964 | FWCCAP00003018 | FWCCAP00003187 |
| FWCCAP00002964 | FWCCAP00003019 | FWCCAP00003188 |
| FWCCAP00002964 | FWCCAP00003019 | FWCCAP00003188 |
| FWCCAP00002964 | FWCCAP00003026 | FWCCAP00003195 |
| FWCCAP00002964 | FWCCAP00003084 | FWCCAP00003195 |
| FWCCAP00002964 | FWCCAP00003085 | FWCCAP00003210 |
| FWCCAP00002966 | FWCCAP00003086 | FWCCAP00003211 |
| FWCCAP00002967 | FWCCAP00003087 | FWCCAP00003212 |
| FWCCAP00002968 | FWCCAP00003088 | FWCCAP00003213 |
| FWCCAP00002969 | FWCCAP00003089 | FWCCAP00003214 |
| FWCCAP00002970 | FWCCAP00003090 | FWCCAP00003215 |
| FWCCAP00002971 | FWCCAP00003091 | FWCCAP00003219 |
| FWCCAP00002978 | FWCCAP00003094 | FWCCAP00003220 |
| FWCCAP00002979 | FWCCAP00003095 | FWCCAP00003222 |
| FWCCAP00002980 | FWCCAP00003096 | FWCCAP00003223 |
| FWCCAP00002981 | FWCCAP00003097 | FWCCAP00003224 |
| FWCCAP00002982 | FWCCAP00003106 | FWCCAP00003226 |
| FWCCAP00002983 | FWCCAP00003109 | FWCCAP00003233 |
| FWCCAP00002984 | FWCCAP00003116 | FWCCAP00003276 |
| FWCCAP00002985 | FWCCAP00003118 | FWCCAP00003277 |
| FWCCAP00002986 | FWCCAP00003118 | FWCCAP00003320 |
| FWCCAP00002987 | FWCCAP00003119 | FWCCAP00003321 |
| FWCCAP00002988 | FWCCAP00003119 | FWCCAP00003364 |
| FWCCAP00002989 | FWCCAP00003120 | FWCCAP00003365 |
| FWCCAP00002990 | FWCCAP00003121 | FWCCAP00003408 |
| FWCCAP00002991 | FWCCAP00003122 | FWCCAP00003409 |
| FWCCAP00002992 | FWCCAP00003123 | FWCCAP00003452 |
| FWCCAP00002993 | FWCCAP00003124 | FWCCAP00003453 |
| FWCCAP00002994 | FWCCAP00003125 | FWCCAP00003496 |
| FWCCAP00002995 | FWCCAP00003128 | FWCCAP00003497 |
| FWCCAP00003004 | FWCCAP00003129 | FWCCAP00003541 |
| FWCCAP00003005 | FWCCAP00003130 | FWCCAP00003542 |

| | | |
|---|---|---|
| FWCCAP00003545 | JHVM_0003755 | KLUGMAN00002166 |
| FWCCAP00003545 | JHVM_0003793 | KLUGMAN00002167 |
| FWCCAP00003546 | JHVM_0003813 | KLUGMAN00002168 |
| FWCCAP00003546 | JHVM_0003820 | KLUGMAN00002169 |
| FWCCAP00003548 | JHVM_0003839 | KLUGMAN00002170 |
| JHVM_0001358 | JHVM_0004011 | KLUGMAN00002171 |
| JHVM_0001400 | JHVM_0004038 | KLUGMAN00002172 |
| JHVM_0001402 | KLUGMAN00000537 | KLUGMAN00002173 |
| JHVM_0001404 | KLUGMAN00000571 | KLUGMAN00002174 |
| JHVM_0001406 | KLUGMAN00000574 | KLUGMAN00002175 |
| JHVM_0001408 | KLUGMAN00000575 | KLUGMAN00002176 |
| JHVM_0001410 | KLUGMAN00000580 | KLUGMAN00002177 |
| JHVM_0001412 | KLUGMAN00000585 | KLUGMAN00002178 |
| JHVM_0001414 | KLUGMAN00000589 | KLUGMAN00002179 |
| JHVM_0001416 | KLUGMAN00000590 | KLUGMAN00002180 |
| JHVM_0001418 | KLUGMAN00000593 | KLUGMAN00002181 |
| JHVM_0001422 | KLUGMAN00000595 | KLUGMAN00002182 |
| JHVM_0001624 | KLUGMAN00000596 | KLUGMAN00002183 |
| JHVM_0001697 | KLUGMAN00000597 | KLUGMAN00002264 |
| JHVM_0001698 | KLUGMAN00002142 | KLUGMAN00002265 |
| JHVM_0001752 | KLUGMAN00002143 | KLUGMAN00002266 |
| JHVM_0001783 | KLUGMAN00002144 | KLUGMAN00002267 |
| JHVM_0001784 | KLUGMAN00002145 | KLUGMAN00002269 |
| JHVM_0001797 | KLUGMAN00002146 | KLUGMAN00002270 |
| JHVM_0001799 | KLUGMAN00002147 | KLUGMAN00002272 |
| JHVM_0001806 | KLUGMAN00002148 | KLUGMAN00002273 |
| JHVM_0001807 | KLUGMAN00002149 | KLUGMAN00002274 |
| JHVM_0001808 | KLUGMAN00002150 | KLUGMAN00002275 |
| JHVM_0001817 | KLUGMAN00002151 | KLUGMAN00002278 |
| JHVM_0001819 | KLUGMAN00002152 | KLUGMAN00002279 |
| JHVM_0001821 | KLUGMAN00002153 | KLUGMAN00002280 |
| JHVM_0003508 | KLUGMAN00002154 | KLUGMAN00002281 |
| JHVM_0003510 | KLUGMAN00002155 | KLUGMAN00002282 |
| JHVM_0003511 | KLUGMAN00002156 | KLUGMAN00002283 |
| JHVM_0003513 | KLUGMAN00002157 | KLUGMAN00002305 |
| JHVM_0003514 | KLUGMAN00002158 | KLUGMAN00002306 |
| JHVM_0003515 | KLUGMAN00002159 | KLUGMAN00002307 |
| JHVM_0003517 | KLUGMAN00002160 | KLUGMAN00002308 |
| JHVM_0003519 | KLUGMAN00002161 | KLUGMAN00002311 |
| JHVM_0003520 | KLUGMAN00002162 | KLUGMAN00002312 |
| JHVM_0003573 | KLUGMAN00002163 | KLUGMAN00002314 |
| JHVM_0003739 | KLUGMAN00002164 | KLUGMAN00002315 |
| JHVM_0003741 | KLUGMAN00002165 | KLUGMAN00002316 |

| | | |
|---|---|---|
| KLUGMAN00002317 | KLUGMAN00005205 | LBR00000027 |
| KLUGMAN00002320 | KLUGMAN00005212 | LBR00000028 |
| KLUGMAN00002321 | KLUGMAN00016065 | LBR00000029 |
| KLUGMAN00002322 | KLUGMAN00025844 | LBR00000033 |
| KLUGMAN00002323 | KLUGMAN00025895 | LBR00000034 |
| KLUGMAN00002324 | KLUGMAN00025981 | LBR00000035 |
| KLUGMAN00002325 | KLUGMAN00026584 | LBR00000036 |
| KLUGMAN00002449 | KLUGMAN00026585 | LBR00000036 |
| KLUGMAN00002451 | KLUGMAN00026603 | LBR00000036 |
| KLUGMAN00002481 | KLUGMAN00026605 | LBR00000046 |
| KLUGMAN00002482 | KLUGMAN00026609 | LBR00000046 |
| KLUGMAN00002483 | KLUGMAN00026610 | LBR00000046 |
| KLUGMAN00005044 | KLUGMAN00026612 | LBR00000046 |
| KLUGMAN00005046 | KLUGMAN00026654 | LBR00000055 |
| KLUGMAN00005067 | KLUGMAN00026814 | LBR00000055 |
| KLUGMAN00005068 | KLUGMAN00026981 | LBR00000057 |
| KLUGMAN00005113 | KLUGMAN00027047 | LBR00000057 |
| KLUGMAN00005132 | KLUGMAN00027208 | LBR00000057 |
| KLUGMAN00005133 | KLUGMAN00027807 | LBR00000059 |
| KLUGMAN00005157 | KLUGMAN00028000 | LBR00000059 |
| KLUGMAN00005164 | LBR00000001 | LBR00000059 |
| KLUGMAN00005165 | LBR00000002 | LBR00000061 |
| KLUGMAN00005166 | LBR00000003 | LBR00000061 |
| KLUGMAN00005167 | LBR00000005 | LBR00000061 |
| KLUGMAN00005168 | LBR00000006 | LBR00000061 |
| KLUGMAN00005169 | LBR00000007 | LBR00000061 |
| KLUGMAN00005170 | LBR00000008 | LBR00000063 |
| KLUGMAN00005171 | LBR00000009 | LBR00000063 |
| KLUGMAN00005172 | LBR00000010 | LBR00000064 |
| KLUGMAN00005173 | LBR00000011 | LBR00000066 |
| KLUGMAN00005174 | LBR00000012 | LBR00000068 |
| KLUGMAN00005175 | LBR00000013 | LBR00000094 |
| KLUGMAN00005176 | LBR00000014 | LBR00000095 |
| KLUGMAN00005177 | LBR00000015 | LBR00000104 |
| KLUGMAN00005178 | LBR00000016 | LBR00000106 |
| KLUGMAN00005179 | LBR00000017 | LBR00000118 |
| KLUGMAN00005180 | LBR00000017 | LBR00000126 |
| KLUGMAN00005181 | LBR00000017 | LBR00000189 |
| KLUGMAN00005182 | LBR00000022 | LBR00000192 |
| KLUGMAN00005189 | LBR00000023 | LBR00000195 |
| KLUGMAN00005192 | LBR00000024 | LBR00000198 |
| KLUGMAN00005195 | LBR00000025 | LBR00000201 |
| KLUGMAN00005199 | LBR00000026 | LBR00000204 |

16

| | | |
|---|---|---|
| LBR00000207 | LBR00000336 | LBR00001198 |
| LBR00000210 | LBR00000548 | LBR00001207 |
| LBR00000213 | LBR00000562 | LBR00001208 |
| LBR00000216 | LBR00000563 | LBR00001274 |
| LBR00000219 | LBR00000564 | LBR00001378 |
| LBR00000222 | LBR00000607 | LBR00001550 |
| LBR00000225 | LBR00000650 | LBR00001595 |
| LBR00000228 | LBR00000693 | LBR00001605 |
| LBR00000231 | LBR00000736 | LBR00001609 |
| LBR00000234 | LBR00000779 | LBR00001622 |
| LBR00000237 | LBR00000822 | LBR00001626 |
| LBR00000240 | LBR00000823 | LBR00001665 |
| LBR00000243 | LBR00000824 | LBR00001668 |
| LBR00000246 | LBR00000825 | LBR00001731 |
| LBR00000249 | LBR00000826 | LBR00001744 |
| LBR00000252 | LBR00000827 | LBR00001780 |
| LBR00000255 | LBR00000833 | LBR00001784 |
| LBR00000258 | LBR00000839 | LBR00001790 |
| LBR00000261 | LBR00000840 | LBR00001795 |
| LBR00000264 | LBR00001141 | LBR00001797 |
| LBR00000267 | LBR00001145 | LBR00001801 |
| LBR00000270 | LBR00001155 | LBR00001809 |
| LBR00000273 | LBR00001156 | LBR00001845 |
| LBR00000276 | LBR00001157 | LBR00001848 |
| LBR00000279 | LBR00001159 | LBR00001849 |
| LBR00000282 | LBR00001162 | LBR00001851 |
| LBR00000285 | LBR00001163 | LBR00001853 |
| LBR00000288 | LBR00001164 | LBR00001891 |
| LBR00000291 | LBR00001165 | LBR00001892 |
| LBR00000294 | LBR00001166 | LBR00001893 |
| LBR00000297 | LBR00001167 | LBR00001894 |
| LBR00000300 | LBR00001169 | LBR00001895 |
| LBR00000303 | LBR00001172 | LBR00001896 |
| LBR00000306 | LBR00001173 | LBR00001897 |
| LBR00000309 | LBR00001184 | LBR00001898 |
| LBR00000312 | LBR00001185 | LBR00001905 |
| LBR00000315 | LBR00001186 | LBR00001906 |
| LBR00000318 | LBR00001188 | LBR00001907 |
| LBR00000321 | LBR00001191 | LBR00001908 |
| LBR00000324 | LBR00001193 | LBR00001909 |
| LBR00000327 | LBR00001194 | LBR00001910 |
| LBR00000330 | LBR00001195 | LBR00001911 |
| LBR00000333 | LBR00001197 | LBR00001912 |

| | | |
|---|---|---|
| LBR00001913 | LBR00001966 | LBR00002019 |
| LBR00001914 | LBR00001967 | LBR00002020 |
| LBR00001915 | LBR00001968 | LBR00002021 |
| LBR00001916 | LBR00001969 | LBR00002022 |
| LBR00001917 | LBR00001970 | LBR00002023 |
| LBR00001918 | LBR00001971 | LBR00002024 |
| LBR00001919 | LBR00001973 | LBR00002025 |
| LBR00001920 | LBR00001976 | LBR00002026 |
| LBR00001923 | LBR00001977 | LBR00002027 |
| LBR00001924 | LBR00001978 | LBR00002028 |
| LBR00001925 | LBR00001979 | LBR00002030 |
| LBR00001926 | LBR00001980 | LBR00002031 |
| LBR00001927 | LBR00001981 | LBR00002032 |
| LBR00001928 | LBR00001982 | LBR00002033 |
| LBR00001929 | LBR00001983 | LBR00002034 |
| LBR00001930 | LBR00001984 | LBR00002035 |
| LBR00001931 | LBR00001986 | LBR00002047 |
| LBR00001932 | LBR00001987 | LBR00002048 |
| LBR00001933 | LBR00001990 | LBR00002049 |
| LBR00001934 | LBR00001991 | LBR00002050 |
| LBR00001937 | LBR00001992 | LBR00002051 |
| LBR00001938 | LBR00001993 | LBR00002052 |
| LBR00001939 | LBR00001994 | LBR00002110 |
| LBR00001940 | LBR00001995 | LBR00002136 |
| LBR00001942 | LBR00001996 | LBR00002256 |
| LBR00001944 | LBR00001997 | LBR00002257 |
| LBR00001945 | LBR00001998 | LBR00002259 |
| LBR00001946 | LBR00001999 | LBR00002260 |
| LBR00001947 | LBR00002000 | LBR00002265 |
| LBR00001950 | LBR00002001 | LBR00002266 |
| LBR00001951 | LBR00002002 | LBR00002267 |
| LBR00001952 | LBR00002003 | LBR00002268 |
| LBR00001953 | LBR00002004 | LBR00002286 |
| LBR00001954 | LBR00002005 | LBR00002288 |
| LBR00001955 | LBR00002006 | LBR00002297 |
| LBR00001956 | LBR00002007 | LBR00002298 |
| LBR00001957 | LBR00002012 | LBR00002369 |
| LBR00001960 | LBR00002013 | LBR00002370 |
| LBR00001961 | LBR00002014 | LBR00002371 |
| LBR00001962 | LBR00002015 | LBR00002372 |
| LBR00001963 | LBR00002016 | LBR00002373 |
| LBR00001964 | LBR00002017 | LBR00002374 |
| LBR00001965 | LBR00002018 | LBR00002377 |

CONFIDENTIAL

| | | |
|---|---|---|
| LBR00002378 | LBR00002516 | LBR00002559 |
| LBR00002379 | LBR00002517 | LBR00002560 |
| LBR00002380 | LBR00002518 | LBR00002561 |
| LBR00002381 | LBR00002519 | LBR00002562 |
| LBR00002389 | LBR00002520 | LBR00002563 |
| LBR00002390 | LBR00002521 | LBR00002564 |
| LBR00002391 | LBR00002522 | LBR00002565 |
| LBR00002392 | LBR00002523 | LBR00002566 |
| LBR00002393 | LBR00002524 | LBR00002568 |
| LBR00002394 | LBR00002525 | LBR00002570 |
| LBR00002395 | LBR00002526 | LBR00002571 |
| LBR00002398 | LBR00002527 | LBR00002572 |
| LBR00002399 | LBR00002528 | LBR00002573 |
| LBR00002400 | LBR00002529 | LBR00002574 |
| LBR00002401 | LBR00002530 | LBR00002575 |
| LBR00002402 | LBR00002531 | LBR00002576 |
| LBR00002408 | LBR00002532 | LBR00002577 |
| LBR00002484 | LBR00002533 | LBR00002578 |
| LBR00002485 | LBR00002534 | LBR00002579 |
| LBR00002486 | LBR00002535 | LBR00002580 |
| LBR00002487 | LBR00002536 | LBR00002581 |
| LBR00002488 | LBR00002537 | LBR00002582 |
| LBR00002489 | LBR00002538 | LBR00002583 |
| LBR00002490 | LBR00002539 | LBR00002584 |
| LBR00002491 | LBR00002540 | LBR00002585 |
| LBR00002494 | LBR00002541 | LBR00002586 |
| LBR00002495 | LBR00002542 | LBR00002587 |
| LBR00002496 | LBR00002543 | LBR00002588 |
| LBR00002497 | LBR00002544 | LBR00002589 |
| LBR00002500 | LBR00002545 | LBR00002590 |
| LBR00002501 | LBR00002546 | LBR00002591 |
| LBR00002502 | LBR00002547 | LBR00002592 |
| LBR00002503 | LBR00002548 | LBR00002593 |
| LBR00002504 | LBR00002549 | LBR00002594 |
| LBR00002505 | LBR00002550 | LBR00002595 |
| LBR00002506 | LBR00002551 | LBR00002596 |
| LBR00002507 | LBR00002552 | LBR00002597 |
| LBR00002508 | LBR00002553 | LBR00002598 |
| LBR00002509 | LBR00002554 | LBR00002599 |
| LBR00002510 | LBR00002555 | LBR00002600 |
| LBR00002511 | LBR00002556 | LBR00002601 |
| LBR00002512 | LBR00002557 | LBR00002602 |
| LBR00002513 | LBR00002558 | LBR00002603 |

| | | |
|---|---|---|
| LBR00002604 | LBR00002738 | LBR00002821 |
| LBR00002605 | LBR00002739 | LBR00002822 |
| LBR00002608 | LBR00002740 | LBR00002823 |
| LBR00002609 | LBR00002746 | LBR00002831 |
| LBR00002610 | LBR00002747 | LBR00002832 |
| LBR00002611 | LBR00002748 | LBR00002833 |
| LBR00002612 | LBR00002749 | LBR00002834 |
| LBR00002613 | LBR00002750 | LBR00002835 |
| LBR00002614 | LBR00002754 | LBR00002836 |
| LBR00002615 | LBR00002757 | LBR00002839 |
| LBR00002616 | LBR00002758 | LBR00002840 |
| LBR00002617 | LBR00002759 | LBR00002854 |
| LBR00002618 | LBR00002760 | LBR00002855 |
| LBR00002619 | LBR00002761 | LBR00002856 |
| LBR00002620 | LBR00002762 | LBR00002857 |
| LBR00002621 | LBR00002765 | LBR00002927 |
| LBR00002622 | LBR00002766 | LBR00002928 |
| LBR00002623 | LBR00002767 | LBR00002929 |
| LBR00002624 | LBR00002768 | LBR00002930 |
| LBR00002625 | LBR00002769 | LBR00002931 |
| LBR00002632 | LBR00002770 | LBR00002932 |
| LBR00002633 | LBR00002771 | LBR00002935 |
| LBR00002634 | LBR00002772 | LBR00002936 |
| LBR00002635 | LBR00002773 | LBR00002937 |
| LBR00002636 | LBR00002777 | LBR00002938 |
| LBR00002637 | LBR00002778 | LBR00002939 |
| LBR00002638 | LBR00002779 | LBR00002940 |
| LBR00002639 | LBR00002781 | LBR00002947 |
| LBR00002640 | LBR00002783 | LBR00002948 |
| LBR00002641 | LBR00002786 | LBR00002949 |
| LBR00002642 | LBR00002788 | LBR00002950 |
| LBR00002643 | LBR00002790 | LBR00002951 |
| LBR00002644 | LBR00002794 | LBR00002952 |
| LBR00002645 | LBR00002801 | LBR00002954 |
| LBR00002646 | LBR00002802 | LBR00002957 |
| LBR00002648 | LBR00002805 | LBR00002958 |
| LBR00002649 | LBR00002806 | LBR00002959 |
| LBR00002650 | LBR00002809 | LBR00002960 |
| LBR00002651 | LBR00002810 | LBR00002961 |
| LBR00002653 | LBR00002813 | LBR00002962 |
| LBR00002735 | LBR00002814 | LBR00002963 |
| LBR00002736 | LBR00002817 | LBR00002965 |
| LBR00002737 | LBR00002818 | LBR00002966 |

CONFIDENTIAL

| | | |
|---|---|---|
| LBR00002968 | LBR00003217 | OAKS00000016 |
| LBR00002969 | LBR00003218 | OAKS00000016 |
| LBR00002970 | LBR00003219 | OAKS00000016 |
| LBR00002971 | LBR00003220 | OAKS00000016 |
| LBR00002975 | LBR00003221 | OAKS00000017 |
| LBR00002976 | LBR00003223 | OAKS00000017 |
| LBR00002977 | LBR00003249 | OAKS00000017 |
| LBR00002978 | LBR00003253 | OAKS00000017 |
| LBR00002979 | LBR00003289 | OAKS00000017 |
| LBR00002980 | LBR00004023 | OAKS00000029 |
| LBR00002987 | LBR00004066 | OAKS00000029 |
| LBR00003023 | LBR00004067 | OAKS00000036 |
| LBR00003024 | LBR00004068 | OAKS00000036 |
| LBR00003025 | LBR00004112 | OAKS00000036 |
| LBR00003026 | LEHMAN00019473 | OAKS00000036 |
| LBR00003031 | LEHMAN00021623 | OAKS00000038 |
| LBR00003032 | LEHMAN00021625 | OAKS00000038 |
| LBR00003033 | LEHMAN00021627 | OAKS00000044 |
| LBR00003034 | LEHMAN00021727 | OAKS00000045 |
| LBR00003035 | LEHMAN00021730 | OAKS00000062 |
| LBR00003038 | MPSKAT00006314 | OAKS00000063 |
| LBR00003050 | MPSKAT00006511 | OAKS00000063 |
| LBR00003051 | MPSKAT00006577 | OAKS00000063 |
| LBR00003075 | MPSKAT00007884 | OAKS00000064 |
| LBR00003076 | MPSKAT00008193 | OAKS00000066 |
| LBR00003077 | MPSKAT00008614 | OAKS00000077 |
| LBR00003078 | MPSKAT00009409 | OAKS00000085 |
| LBR00003079 | MPSKAT00011230 | OAKS00000118 |
| LBR00003080 | MPSKAT00011241 | OAKS00000147 |
| LBR00003083 | OAKS00000001 | OAKS00000150 |
| LBR00003084 | OAKS00000002 | OAKS00000153 |
| LBR00003085 | OAKS00000003 | OAKS00000156 |
| LBR00003086 | OAKS00000004 | OAKS00000159 |
| LBR00003087 | OAKS00000004 | OAKS00000162 |
| LBR00003088 | OAKS00000004 | OAKS00000165 |
| LBR00003089 | OAKS00000004 | OAKS00000168 |
| LBR00003153 | OAKS00000004 | OAKS00000171 |
| LBR00003208 | OAKS00000004 | OAKS00000174 |
| LBR00003209 | OAKS00000012 | OAKS00000177 |
| LBR00003210 | OAKS00000013 | OAKS00000180 |
| LBR00003211 | OAKS00000014 | OAKS00000183 |
| LBR00003212 | OAKS00000014 | OAKS00000186 |
| LBR00003213 | OAKS00000016 | OAKS00000189 |

CONFIDENTIAL

| | | |
|---|---|---|
| OAKS00000192 | SKAT_MDL_001_000828 | SVP00000005 |
| OAKS00000195 | 01 | SVP00000006 |
| OAKS00000198 | SKAT_MDL_001_000851 | SVP00000007 |
| OAKS00000201 | 51 | SVP00000008 |
| OAKS00000204 | SKAT_MDL_001_000888 | SVP00000009 |
| OAKS00000207 | 72 | SVP00000010 |
| OAKS00000210 | SKAT_MDL_001_000893 | SVP00000011 |
| OAKS00000213 | 78 | SVP00000012 |
| OAKS00000216 | SKAT_MDL_001_027929 | SVP00000013 |
| OAKS00000219 | SKAT_MDL_001_035653 | SVP00000013 |
| OAKS00000222 | SKAT_MDL_001_039115 | SVP00000013 |
| OAKS00000225 | STOR00001630 | SVP00000013 |
| OAKS00000228 | STOR00001797 | SVP00000019 |
| OAKS00000231 | STOR00001800 | SVP00000019 |
| OAKS00000234 | STOR00001801 | SVP00000019 |
| OAKS00000237 | STOR00001802 | SVP00000019 |
| OAKS00000240 | STOR00001805 | SVP00000019 |
| OAKS00000243 | STOR00001806 | SVP00000020 |
| OAKS00000246 | STOR00001807 | SVP00000021 |
| OAKS00000249 | STOR00001810 | SVP00000022 |
| OAKS00000252 | STOR00001811 | SVP00000023 |
| OAKS00000255 | STOR00001812 | SVP00000027 |
| OAKS00000258 | STOR00001815 | SVP00000028 |
| OAKS00000261 | STOR00001816 | SVP00000029 |
| OAKS00000264 | STOR00001817 | SVP00000030 |
| OAKS00000267 | STOR00001820 | SVP00000031 |
| OAKS00000270 | STOR00001821 | SVP00000032 |
| OAKS00000273 | STOR00001822 | SVP00000033 |
| OAKS00000276 | STOR00001825 | SVP00000035 |
| OAKS00000279 | STOR00001826 | SVP00000035 |
| OAKS00000282 | STOR00001828 | SVP00000035 |
| OAKS00000285 | STOR00001844 | SVP00000048 |
| OAKS00000288 | STOR00001851 | SVP00000055 |
| OAKS00000291 | STOR00001854 | SVP00000055 |
| OAKS00000581 | STOR00001855 | SVP00000055 |
| OAKS00000623 | STOR00001865 | SVP00000055 |
| OAKS00000667 | STOR00001880 | SVP00000057 |
| OAKS00000711 | STOR00001919 | SVP00000057 |
| OAKS00000753 | STOR00002146 | SVP00000057 |
| OAKS00000797 | SVP00000001 | SVP00000057 |
| OAKS00000841 | SVP00000002 | SVP00000057 |
| OAKS00000885 | SVP00000003 | SVP00000059 |
| OAKS00000929 | SVP00000004 | SVP00000059 |

CONFIDENTIAL

| | | |
|---|---|---|
| SVP00000059 | SVP00000249 | SVP00000932 |
| SVP00000061 | SVP00000252 | SVP00000933 |
| SVP00000065 | SVP00000255 | SVP00000934 |
| SVP00000065 | SVP00000258 | SVP00000935 |
| SVP00000065 | SVP00000261 | SVP00000938 |
| SVP00000066 | SVP00000264 | SVP00000939 |
| SVP00000066 | SVP00000267 | SVP00000940 |
| SVP00000066 | SVP00000270 | SVP00000941 |
| SVP00000086 | SVP00000273 | SVP00000943 |
| SVP00000120 | SVP00000276 | SVP00000944 |
| SVP00000150 | SVP00000279 | SVP00000945 |
| SVP00000153 | SVP00000282 | SVP00000946 |
| SVP00000156 | SVP00000285 | SVP00000948 |
| SVP00000159 | SVP00000288 | SVP00000949 |
| SVP00000162 | SVP00000291 | SVP00000950 |
| SVP00000165 | SVP00000294 | SVP00000951 |
| SVP00000168 | SVP00000297 | SVP00000952 |
| SVP00000171 | SVP00000300 | SVP00000953 |
| SVP00000174 | SVP00000303 | SVP00000954 |
| SVP00000177 | SVP00000306 | SVP00000957 |
| SVP00000180 | SVP00000309 | SVP00000958 |
| SVP00000183 | SVP00000491 | SVP00000959 |
| SVP00000186 | SVP00000535 | SVP00000960 |
| SVP00000189 | SVP00000579 | SVP00000961 |
| SVP00000192 | SVP00000623 | SVP00000962 |
| SVP00000195 | SVP00000667 | SVP00000965 |
| SVP00000198 | SVP00000711 | SVP00000966 |
| SVP00000201 | SVP00000755 | SVP00000967 |
| SVP00000204 | SVP00000809 | SVP00000968 |
| SVP00000207 | SVP00000906 | SVP00000969 |
| SVP00000210 | SVP00000907 | SVP00000970 |
| SVP00000213 | SVP00000916 | SVP00000973 |
| SVP00000216 | SVP00000917 | SVP00000974 |
| SVP00000219 | SVP00000918 | SVP00000975 |
| SVP00000222 | SVP00000919 | SVP00000976 |
| SVP00000225 | SVP00000920 | SVP00000977 |
| SVP00000228 | SVP00000921 | SVP00000978 |
| SVP00000231 | SVP00000922 | SVP00000979 |
| SVP00000234 | SVP00000923 | SVP00000980 |
| SVP00000237 | SVP00000924 | SVP00000981 |
| SVP00000240 | SVP00000925 | SVP00000982 |
| SVP00000243 | SVP00000929 | SVP00000984 |
| SVP00000246 | SVP00000930 | SVP00000985 |

CONFIDENTIAL

| | | |
|---|---|---|
| SVP00000986 | SVP00001032 | SVP00001079 |
| SVP00000987 | SVP00001033 | SVP00001080 |
| SVP00000988 | SVP00001034 | SVP00001083 |
| SVP00000989 | SVP00001036 | SVP00001084 |
| SVP00000990 | SVP00001037 | SVP00001085 |
| SVP00000991 | SVP00001038 | SVP00001086 |
| SVP00000992 | SVP00001039 | SVP00001087 |
| SVP00000993 | SVP00001040 | SVP00001088 |
| SVP00000994 | SVP00001041 | SVP00001089 |
| SVP00000995 | SVP00001042 | SVP00001090 |
| SVP00000996 | SVP00001043 | SVP00001091 |
| SVP00000997 | SVP00001044 | SVP00001092 |
| SVP00000998 | SVP00001045 | SVP00001093 |
| SVP00000999 | SVP00001046 | SVP00001094 |
| SVP00001001 | SVP00001047 | SVP00001095 |
| SVP00001002 | SVP00001050 | SVP00001096 |
| SVP00001003 | SVP00001051 | SVP00001097 |
| SVP00001004 | SVP00001052 | SVP00001098 |
| SVP00001005 | SVP00001053 | SVP00001099 |
| SVP00001006 | SVP00001054 | SVP00001100 |
| SVP00001007 | SVP00001055 | SVP00001101 |
| SVP00001008 | SVP00001056 | SVP00001102 |
| SVP00001009 | SVP00001057 | SVP00001103 |
| SVP00001009 | SVP00001058 | SVP00001104 |
| SVP00001011 | SVP00001059 | SVP00001105 |
| SVP00001012 | SVP00001060 | SVP00001106 |
| SVP00001013 | SVP00001062 | SVP00001108 |
| SVP00001014 | SVP00001063 | SVP00001109 |
| SVP00001016 | SVP00001064 | SVP00001110 |
| SVP00001017 | SVP00001065 | SVP00001111 |
| SVP00001018 | SVP00001066 | SVP00001112 |
| SVP00001019 | SVP00001067 | SVP00001113 |
| SVP00001020 | SVP00001068 | SVP00001207 |
| SVP00001021 | SVP00001069 | SVP00001208 |
| SVP00001022 | SVP00001070 | SVP00001209 |
| SVP00001023 | SVP00001071 | SVP00001211 |
| SVP00001024 | SVP00001072 | SVP00001213 |
| SVP00001025 | SVP00001073 | SVP00001214 |
| SVP00001027 | SVP00001074 | SVP00001215 |
| SVP00001028 | SVP00001075 | SVP00001216 |
| SVP00001029 | SVP00001076 | SVP00001230 |
| SVP00001030 | SVP00001077 | SVP00001233 |
| SVP00001031 | SVP00001078 | SVP00001236 |

CONFIDENTIAL

| | | |
|---|---|---|
| SVP00001243 | SVP00001399 | SVP00001442 |
| SVP00001244 | SVP00001400 | SVP00001443 |
| SVP00001315 | SVP00001401 | SVP00001444 |
| SVP00001317 | SVP00001402 | SVP00001445 |
| SVP00001319 | SVP00001403 | SVP00001446 |
| SVP00001322 | SVP00001404 | SVP00001447 |
| SVP00001323 | SVP00001405 | SVP00001448 |
| SVP00001324 | SVP00001406 | SVP00001449 |
| SVP00001332 | SVP00001407 | SVP00001450 |
| SVP00001335 | SVP00001408 | SVP00001451 |
| SVP00001338 | SVP00001409 | SVP00001452 |
| SVP00001341 | SVP00001410 | SVP00001453 |
| SVP00001342 | SVP00001411 | SVP00001454 |
| SVP00001343 | SVP00001412 | SVP00001455 |
| SVP00001355 | SVP00001413 | SVP00001456 |
| SVP00001358 | SVP00001414 | SVP00001457 |
| SVP00001360 | SVP00001415 | SVP00001458 |
| SVP00001362 | SVP00001416 | SVP00001459 |
| SVP00001364 | SVP00001417 | SVP00001460 |
| SVP00001365 | SVP00001418 | SVP00001461 |
| SVP00001366 | SVP00001419 | SVP00001462 |
| SVP00001369 | SVP00001420 | SVP00001463 |
| SVP00001370 | SVP00001421 | SVP00001464 |
| SVP00001371 | SVP00001422 | SVP00001465 |
| SVP00001372 | SVP00001423 | SVP00001466 |
| SVP00001375 | SVP00001424 | SVP00001467 |
| SVP00001378 | SVP00001425 | SVP00001468 |
| SVP00001380 | SVP00001426 | SVP00001469 |
| SVP00001381 | SVP00001427 | SVP00001470 |
| SVP00001382 | SVP00001428 | SVP00001471 |
| SVP00001383 | SVP00001429 | SVP00001472 |
| SVP00001386 | SVP00001430 | SVP00001473 |
| SVP00001387 | SVP00001431 | SVP00001474 |
| SVP00001388 | SVP00001432 | SVP00001475 |
| SVP00001389 | SVP00001433 | SVP00001476 |
| SVP00001390 | SVP00001434 | SVP00001477 |
| SVP00001391 | SVP00001435 | SVP00001478 |
| SVP00001393 | SVP00001436 | SVP00001479 |
| SVP00001394 | SVP00001437 | SVP00001480 |
| SVP00001395 | SVP00001438 | SVP00001481 |
| SVP00001396 | SVP00001439 | SVP00001482 |
| SVP00001397 | SVP00001440 | SVP00001484 |
| SVP00001398 | SVP00001441 | SVP00001488 |

CONFIDENTIAL

| | | |
|---|---|---|
| SVP00001489 | SVP00001600 | SVP00001661 |
| SVP00001494 | SVP00001601 | SVP00001662 |
| SVP00001495 | SVP00001602 | SVP00001663 |
| SVP00001497 | SVP00001603 | SVP00001664 |
| SVP00001501 | SVP00001606 | SVP00001665 |
| SVP00001503 | SVP00001607 | SVP00001666 |
| SVP00001506 | SVP00001609 | SVP00001668 |
| SVP00001509 | SVP00001612 | SVP00001669 |
| SVP00001513 | SVP00001613 | SVP00001670 |
| SVP00001514 | SVP00001614 | SVP00001671 |
| SVP00001515 | SVP00001619 | SVP00001672 |
| SVP00001522 | SVP00001621 | SVP00001673 |
| SVP00001523 | SVP00001623 | SVP00001674 |
| SVP00001524 | SVP00001625 | SVP00001707 |
| SVP00001529 | SVP00001627 | SVP00001710 |
| SVP00001530 | SVP00001630 | SVP00001711 |
| SVP00001536 | SVP00001631 | SVP00001713 |
| SVP00001537 | SVP00001633 | SVP00001717 |
| SVP00001539 | SVP00001634 | SVP00001720 |
| SVP00001544 | SVP00001635 | SVP00001724 |
| SVP00001545 | SVP00001636 | SVP00001726 |
| SVP00001547 | SVP00001637 | SVP00001729 |
| SVP00001552 | SVP00001638 | SVP00001732 |
| SVP00001553 | SVP00001639 | SVP00001735 |
| SVP00001555 | SVP00001640 | SVP00001738 |
| SVP00001560 | SVP00001641 | SVP00001741 |
| SVP00001561 | SVP00001642 | SVP00001772 |
| SVP00001563 | SVP00001643 | SVP00001773 |
| SVP00001568 | SVP00001644 | SVP00001774 |
| SVP00001569 | SVP00001645 | SVP00001775 |
| SVP00001571 | SVP00001646 | SVP00001776 |
| SVP00001576 | SVP00001648 | SVP00001777 |
| SVP00001577 | SVP00001649 | SVP00001778 |
| SVP00001579 | SVP00001650 | SVP00001780 |
| SVP00001584 | SVP00001651 | SVP00001781 |
| SVP00001591 | SVP00001652 | SVP00001785 |
| SVP00001592 | SVP00001653 | SVP00001786 |
| SVP00001593 | SVP00001654 | SVP00001787 |
| SVP00001594 | SVP00001655 | SVP00001788 |
| SVP00001595 | SVP00001656 | SVP00001791 |
| SVP00001596 | SVP00001657 | SVP00001792 |
| SVP00001598 | SVP00001658 | SVP00001793 |
| SVP00001599 | SVP00001659 | SVP00001794 |

| | | |
|---|---|---|
| SVP00001795 | SVP00001916 | SVP00002465 |
| SVP00001796 | SVP00001916 | SVP00002465 |
| SVP00001798 | SVP00001917 | SVP00002465 |
| SVP00001799 | SVP00001918 | SVP00002478 |
| SVP00001800 | SVP00001928 | SVP00002479 |
| SVP00001801 | SVP00001929 | SVP00002480 |
| SVP00001802 | SVP00001932 | SVP00002481 |
| SVP00001803 | SVP00001934 | SVP00002483 |
| SVP00001804 | SVP00001939 | SVP00002483 |
| SVP00001831 | SVP00001945 | SVP00002483 |
| SVP00001832 | SVP00001946 | SVP00002483 |
| SVP00001833 | SVP00001959 | SVP00002489 |
| SVP00001834 | SVP00001962 | SVP00002490 |
| SVP00001835 | SVP00001966 | SVP00002491 |
| SVP00001836 | SVP00002050 | SVP00002492 |
| SVP00001838 | SVP00002052 | SVP00002498 |
| SVP00001839 | SVP00002053 | SVP00002508 |
| SVP00001840 | SVP00002057 | SVP00002518 |
| SVP00001841 | SVP00002076 | SVP00002544 |
| SVP00001842 | SVP00002119 | SVP00002586 |
| SVP00001843 | SVP00002162 | SVP00002586 |
| SVP00001846 | SVP00002205 | SVP00002586 |
| SVP00001847 | SVP00002248 | SVP00002586 |
| SVP00001848 | SVP00002291 | SVP00002586 |
| SVP00001849 | SVP00002292 | SVP00002587 |
| SVP00001850 | SVP00002335 | SVP00002587 |
| SVP00001851 | SVP00002378 | SVP00002587 |
| SVP00001852 | SVP00002433 | SVP00002587 |
| SVP00001874 | SVP00002434 | SVP00002593 |
| SVP00001878 | SVP00002435 | SVP00002594 |
| SVP00001879 | SVP00002435 | SVP00002595 |
| SVP00001880 | SVP00002435 | SVP00002599 |
| SVP00001881 | SVP00002435 | SVP00002600 |
| SVP00001888 | SVP00002435 | SVP00002602 |
| SVP00001889 | SVP00002437 | SVP00002603 |
| SVP00001895 | SVP00002437 | SVP00002604 |
| SVP00001896 | SVP00002437 | SVP00002605 |
| SVP00001897 | SVP00002439 | SVP00002613 |
| SVP00001898 | SVP00002439 | SVP00002614 |
| SVP00001899 | SVP00002439 | SVP00002615 |
| SVP00001900 | SVP00002445 | SVP00002616 |
| SVP00001908 | SVP00002446 | SVP00002617 |
| SVP00001916 | SVP00002458 | SVP00002618 |

| | | |
|---|---|---|
| SVP00002638 | VALER00001908 | VALER00001984 |
| SVP00002639 | VALER00001909 | VALER00001985 |
| SVP00002640 | VALER00001910 | VALER00001987 |
| SVP00002641 | VALER00001911 | VALER00001989 |
| SVP00002642 | VALER00001912 | VALER00001989 |
| SVP00002643 | VALER00001913 | VALER00001991 |
| SVP00002644 | VALER00001914 | VALER00001993 |
| SVP00002645 | VALER00001915 | VALER00001994 |
| SVP00002666 | VALER00001917 | VALER00001995 |
| SVP00002673 | VALER00001917 | VALER00001996 |
| VALER00000065 | VALER00001918 | VALER00001997 |
| VALER00000066 | VALER00001919 | VALER00002006 |
| VALER00000067 | VALER00001920 | VALER00002006 |
| VALER00000098 | VALER00001921 | VALER00002007 |
| VALER00000126 | VALER00001922 | VALER00002007 |
| VALER00000132 | VALER00001925 | VALER00002008 |
| VALER00000137 | VALER00001925 | VALER00002008 |
| VALER00000142 | VALER00001926 | VALER00002009 |
| VALER00000143 | VALER00001927 | VALER00002010 |
| VALER00000147 | VALER00001928 | VALER00002011 |
| VALER00000169 | VALER00001956 | VALER00002011 |
| VALER00000194 | VALER00001957 | VALER00002012 |
| VALER00000196 | VALER00001958 | VALER00002012 |
| VALER00000199 | VALER00001961 | VALER00002013 |
| VALER00000202 | VALER00001963 | VALER00002013 |
| VALER00000205 | VALER00001967 | VALER00002014 |
| VALER00000599 | VALER00001967 | VALER00002018 |
| VALER00000623 | VALER00001967 | VALER00002018 |
| VALER00000643 | VALER00001967 | VALER00002020 |
| VALER00000665 | VALER00001967 | VALER00002020 |
| VALER00000672 | VALER00001967 | VALER00002038 |
| VALER00000683 | VALER00001967 | VALER00002039 |
| VALER00000725 | VALER00001968 | VALER00002044 |
| VALER00000767 | VALER00001968 | VALER00002045 |
| VALER00000768 | VALER00001968 | VALER00002047 |
| VALER00001791 | VALER00001968 | VALER00002048 |
| VALER00001822 | VALER00001968 | VALER00002049 |
| VALER00001874 | VALER00001968 | VALER00002050 |
| VALER00001901 | VALER00001968 | VALER00002051 |
| VALER00001902 | VALER00001980 | VALER00002054 |
| VALER00001903 | VALER00001981 | VALER00002057 |
| VALER00001906 | VALER00001982 | VALER00002062 |
| VALER00001907 | VALER00001983 | VALER00002063 |

| | | |
|---|---|---|
| VALER00002064 | VALER00002743 | VALER00002817 |
| VALER00002065 | VALER00002744 | VALER00002818 |
| VALER00002066 | VALER00002745 | VALER00002818 |
| VALER00002068 | VALER00002746 | VALER00002819 |
| VALER00002699 | VALER00002747 | VALER00002819 |
| VALER00002700 | VALER00002748 | VALER00002821 |
| VALER00002702 | VALER00002749 | VALER00002822 |
| VALER00002703 | VALER00002750 | VALER00002824 |
| VALER00002704 | VALER00002751 | VALER00002825 |
| VALER00002705 | VALER00002752 | VALER00002826 |
| VALER00002706 | VALER00002753 | VALER00002827 |
| VALER00002707 | VALER00002754 | VALER00002831 |
| VALER00002708 | VALER00002755 | VALER00002832 |
| VALER00002709 | VALER00002756 | VALER00002834 |
| VALER00002710 | VALER00002757 | VALER00002835 |
| VALER00002711 | VALER00002758 | VALER00002836 |
| VALER00002712 | VALER00002759 | VALER00002837 |
| VALER00002713 | VALER00002760 | VALER00002838 |
| VALER00002714 | VALER00002761 | VALER00002839 |
| VALER00002715 | VALER00002762 | VALER00002840 |
| VALER00002716 | VALER00002763 | VALER00002841 |
| VALER00002721 | VALER00002764 | VALER00002842 |
| VALER00002722 | VALER00002765 | VALER00002843 |
| VALER00002723 | VALER00002766 | VALER00002844 |
| VALER00002724 | VALER00002767 | VALER00002845 |
| VALER00002725 | VALER00002768 | VALER00002846 |
| VALER00002726 | VALER00002769 | VALER00002847 |
| VALER00002727 | VALER00002772 | VALER00002848 |
| VALER00002728 | VALER00002773 | VALER00002849 |
| VALER00002729 | VALER00002776 | VALER00002850 |
| VALER00002730 | VALER00002777 | VALER00002851 |
| VALER00002731 | VALER00002780 | VALER00002852 |
| VALER00002732 | VALER00002781 | VALER00002853 |
| VALER00002733 | VALER00002784 | VALER00002854 |
| VALER00002734 | VALER00002786 | VALER00002855 |
| VALER00002735 | VALER00002787 | VALER00002856 |
| VALER00002736 | VALER00002788 | VALER00002858 |
| VALER00002737 | VALER00002790 | VALER00002858 |
| VALER00002738 | VALER00002795 | VALER00002859 |
| VALER00002739 | VALER00002800 | VALER00002859 |
| VALER00002740 | VALER00002801 | VALER00002860 |
| VALER00002741 | VALER00002803 | VALER00002861 |
| VALER00002742 | VALER00002816 | VALER00002862 |

CONFIDENTIAL

| | | |
|---|---|---|
| VALER00002863 | VALER00003106 | VALER00003150 |
| VALER00002864 | VALER00003106 | VALER00003151 |
| VALER00002865 | VALER00003108 | VALER00003152 |
| VALER00002866 | VALER00003110 | VALER00003153 |
| VALER00002867 | VALER00003111 | VALER00003154 |
| VALER00002868 | VALER00003112 | VALER00003155 |
| VALER00002869 | VALER00003113 | VALER00003156 |
| VALER00002870 | VALER00003114 | VALER00003157 |
| VALER00002871 | VALER00003115 | VALER00003158 |
| VALER00002872 | VALER00003116 | VALER00003159 |
| VALER00002873 | VALER00003117 | VALER00003160 |
| VALER00002874 | VALER00003118 | VALER00003161 |
| VALER00002875 | VALER00003119 | VALER00003163 |
| VALER00002876 | VALER00003120 | VALER00003164 |
| VALER00002877 | VALER00003121 | VALER00003165 |
| VALER00002878 | VALER00003122 | VALER00003166 |
| VALER00002879 | VALER00003123 | VALER00003167 |
| VALER00002880 | VALER00003124 | VALER00003171 |
| VALER00002883 | VALER00003125 | VALER00003171 |
| VALER00002901 | VALER00003126 | VALER00003171 |
| VALER00002902 | VALER00003127 | VALER00003171 |
| VALER00003002 | VALER00003128 | VALER00003171 |
| VALER00003008 | VALER00003129 | VALER00003172 |
| VALER00003013 | VALER00003130 | VALER00003172 |
| VALER00003015 | VALER00003131 | VALER00003172 |
| VALER00003061 | VALER00003132 | VALER00003172 |
| VALER00003062 | VALER00003133 | VALER00003172 |
| VALER00003063 | VALER00003134 | VALER00003175 |
| VALER00003064 | VALER00003135 | VALER00003209 |
| VALER00003065 | VALER00003136 | VALER00003209 |
| VALER00003066 | VALER00003137 | VALER00003210 |
| VALER00003067 | VALER00003138 | VALER00003210 |
| VALER00003068 | VALER00003139 | VALER00003211 |
| VALER00003069 | VALER00003140 | VALER00003211 |
| VALER00003070 | VALER00003141 | VALER00003212 |
| VALER00003071 | VALER00003142 | VALER00003213 |
| VALER00003072 | VALER00003143 | VALER00003214 |
| VALER00003073 | VALER00003144 | VALER00003215 |
| VALER00003074 | VALER00003145 | VALER00003216 |
| VALER00003075 | VALER00003146 | VALER00003216 |
| VALER00003076 | VALER00003147 | VALER00003217 |
| VALER00003102 | VALER00003148 | VALER00003217 |
| VALER00003104 | VALER00003149 | VALER00003219 |

CONFIDENTIAL

| | | |
|---|---|---|
| VALER00003220 | VALER00003260 | VALER00003399 |
| VALER00003221 | VALER00003261 | VALER00003400 |
| VALER00003222 | VALER00003262 | VALER00003410 |
| VALER00003223 | VALER00003263 | VALER00003411 |
| VALER00003224 | VALER00003264 | VALER00003412 |
| VALER00003225 | VALER00003265 | VALER00003413 |
| VALER00003226 | VALER00003266 | VALER00003414 |
| VALER00003227 | VALER00003267 | VALER00003415 |
| VALER00003228 | VALER00003268 | VALER00003416 |
| VALER00003229 | VALER00003269 | VALER00003417 |
| VALER00003230 | VALER00003270 | VALER00003418 |
| VALER00003231 | VALER00003271 | VALER00003419 |
| VALER00003232 | VALER00003272 | VALER00003420 |
| VALER00003233 | VALER00003273 | VALER00003421 |
| VALER00003234 | VALER00003274 | VALER00003422 |
| VALER00003235 | VALER00003276 | VALER00003423 |
| VALER00003236 | VALER00003277 | VALER00003425 |
| VALER00003237 | VALER00003278 | VALER00003426 |
| VALER00003238 | VALER00003279 | VALER00003427 |
| VALER00003239 | VALER00003279 | VALER00003428 |
| VALER00003240 | VALER00003280 | VALER00003429 |
| VALER00003241 | VALER00003281 | VALER00003430 |
| VALER00003242 | VALER00003354 | VALER00003431 |
| VALER00003243 | VALER00003354 | VALER00003432 |
| VALER00003244 | VALER00003354 | VALER00003433 |
| VALER00003245 | VALER00003354 | VALER00003434 |
| VALER00003245 | VALER00003355 | VALER00003435 |
| VALER00003246 | VALER00003355 | VALER00003436 |
| VALER00003247 | VALER00003355 | VALER00003437 |
| VALER00003248 | VALER00003355 | VALER00003438 |
| VALER00003248 | VALER00003384 | VALER00003439 |
| VALER00003249 | VALER00003385 | VALER00003440 |
| VALER00003250 | VALER00003386 | VALER00003441 |
| VALER00003251 | VALER00003387 | VALER00003442 |
| VALER00003253 | VALER00003390 | VALER00003444 |
| VALER00003253 | VALER00003391 | VALER00003445 |
| VALER00003254 | VALER00003392 | VALER00003446 |
| VALER00003254 | VALER00003393 | VALER00003466 |
| VALER00003255 | VALER00003394 | VALER00003467 |
| VALER00003256 | VALER00003395 | VALER00003468 |
| VALER00003257 | VALER00003396 | VALER00003469 |
| VALER00003257 | VALER00003397 | VALER00003471 |
| VALER00003259 | VALER00003398 | VALER00003473 |

CONFIDENTIAL

| | | |
|---|---|---|
| VALER00003474 | WH_MDL_00012882 | WH_MDL_00020957 |
| VALER00003475 | WH_MDL_00012908 | WH_MDL_00020959 |
| VALER00003476 | WH_MDL_00012932 | WH_MDL_00020978 |
| VALER00003477 | WH_MDL_00013003 | WH_MDL_00020990 |
| VALER00003478 | WH_MDL_00014046 | WH_MDL_00021059 |
| VALER00003479 | WH_MDL_00014069 | WH_MDL_00021060 |
| VALER00003480 | WH_MDL_00014092 | WH_MDL_00021061 |
| VALER00003481 | WH_MDL_00014115 | WH_MDL_00021062 |
| VALER00003482 | WH_MDL_00014138 | WH_MDL_00021075 |
| VALER00003483 | WH_MDL_00014161 | WH_MDL_00021076 |
| VALER00003484 | WH_MDL_00014521 | WH_MDL_00021187 |
| VALER00003485 | WH_MDL_00017598 | WH_MDL_00021211 |
| VALER00003486 | WH_MDL_00017641 | WH_MDL_00021473 |
| VALER00003487 | WH_MDL_00017684 | WH_MDL_00021495 |
| VALER00003490 | WH_MDL_00017727 | WH_MDL_00021511 |
| VALER00003491 | WH_MDL_00017770 | WH_MDL_00021740 |
| VALER00003494 | WH_MDL_00017813 | WH_MDL_00021741 |
| VALER00003495 | WH_MDL_00017856 | WH_MDL_00021742 |
| VALER00003496 | WH_MDL_00017899 | WH_MDL_00021743 |
| VALER00003497 | WH_MDL_00017942 | WH_MDL_00021744 |
| VALER00003498 | WH_MDL_00017985 | WH_MDL_00021745 |
| VALER00003499 | WH_MDL_00018028 | WH_MDL_00021758 |
| VALER00003500 | WH_MDL_00018071 | WH_MDL_00021759 |
| VALER00003501 | WH_MDL_00018114 | WH_MDL_00021760 |
| VALER00003502 | WH_MDL_00019834 | WH_MDL_00021776 |
| VALER00003505 | WH_MDL_00019853 | WH_MDL_00021957 |
| VALER00003505 | WH_MDL_00019883 | WH_MDL_00022019 |
| VALER00003507 | WH_MDL_00019888 | WH_MDL_00022030 |
| VALER00003519 | WH_MDL_00019938 | WH_MDL_00022100 |
| VALER00003519 | WH_MDL_00020492 | WH_MDL_00022106 |
| VALER00003535 | WH_MDL_00020766 | WH_MDL_00022134 |
| VALER00003535 | WH_MDL_00020781 | WH_MDL_00022145 |
| VALER00003554 | WH_MDL_00020794 | WH_MDL_00022146 |
| VALER00003554 | WH_MDL_00020796 | WH_MDL_00022174 |
| WH_MDL_00001529 | WH_MDL_00020798 | WH_MDL_00022212 |
| WH_MDL_00001552 | WH_MDL_00020799 | WH_MDL_00022218 |
| WH_MDL_00002753 | WH_MDL_00020800 | WH_MDL_00022230 |
| WH_MDL_00002796 | WH_MDL_00020834 | WH_MDL_00022232 |
| WH_MDL_00002839 | WH_MDL_00020838 | WH_MDL_00022252 |
| WH_MDL_00002882 | WH_MDL_00020845 | WH_MDL_00022285 |
| WH_MDL_00002925 | WH_MDL_00020850 | WH_MDL_00022313 |
| WH_MDL_00002971 | WH_MDL_00020953 | WH_MDL_00022318 |
| WH_MDL_00003014 | WH_MDL_00020954 | WH_MDL_00022344 |

CONFIDENTIAL

| | | |
|---|---|---|
| WH_MDL_00022347 | WH_MDL_00024445 | WH_MDL_00027536 |
| WH_MDL_00022351 | WH_MDL_00024468 | WH_MDL_00027579 |
| WH_MDL_00022664 | WH_MDL_00024491 | WH_MDL_00027579 |
| WH_MDL_00022665 | WH_MDL_00024514 | WH_MDL_00027622 |
| WH_MDL_00022666 | WH_MDL_00024537 | WH_MDL_00027622 |
| WH_MDL_00022667 | WH_MDL_00024560 | WH_MDL_00027749 |
| WH_MDL_00022668 | WH_MDL_00024583 | WH_MDL_00027749 |
| WH_MDL_00022669 | WH_MDL_00024606 | WH_MDL_00027963 |
| WH_MDL_00022673 | WH_MDL_00024629 | WH_MDL_00028006 |
| WH_MDL_00022674 | WH_MDL_00024652 | WH_MDL_00028049 |
| WH_MDL_00022675 | WH_MDL_00024685 | WH_MDL_00028092 |
| WH_MDL_00022784 | WH_MDL_00024692 | WH_MDL_00028135 |
| WH_MDL_00022837 | WH_MDL_00026807 | WH_MDL_00028178 |
| WH_MDL_00022838 | WH_MDL_00026807 | WH_MDL_00028221 |
| WH_MDL_00022839 | WH_MDL_00026850 | WH_MDL_00028264 |
| WH_MDL_00022840 | WH_MDL_00026850 | WH_MDL_00029712 |
| WH_MDL_00022841 | WH_MDL_00026893 | WH_MDL_00029717 |
| WH_MDL_00022848 | WH_MDL_00026893 | WH_MDL_00029732 |
| WH_MDL_00022849 | WH_MDL_00026936 | WH_MDL_00029807 |
| WH_MDL_00022850 | WH_MDL_00026936 | WH_MDL_00029924 |
| WH_MDL_00022914 | WH_MDL_00026979 | WH_MDL_00029932 |
| WH_MDL_00022915 | WH_MDL_00026979 | WH_MDL_00031023 |
| WH_MDL_00022916 | WH_MDL_00027106 | WH_MDL_00031272 |
| WH_MDL_00022917 | WH_MDL_00027106 | WH_MDL_00034875 |
| WH_MDL_00022918 | WH_MDL_00027149 | WH_MDL_00034909 |
| WH_MDL_00022919 | WH_MDL_00027149 | WH_MDL_00034927 |
| WH_MDL_00022929 | WH_MDL_00027192 | WH_MDL_00035080 |
| WH_MDL_00022930 | WH_MDL_00027192 | WH_MDL_00035128 |
| WH_MDL_00022931 | WH_MDL_00027235 | WH_MDL_00035160 |
| WH_MDL_00023156 | WH_MDL_00027235 | WH_MDL_00035237 |
| WH_MDL_00023457 | WH_MDL_00027278 | WH_MDL_00035269 |
| WH_MDL_00023662 | WH_MDL_00027278 | WH_MDL_00035270 |
| WH_MDL_00023667 | WH_MDL_00027321 | WH_MDL_00035344 |
| WH_MDL_00023784 | WH_MDL_00027321 | WH_MDL_00035345 |
| WH_MDL_00023809 | WH_MDL_00027364 | WH_MDL_00035347 |
| WH_MDL_00023826 | WH_MDL_00027364 | WH_MDL_00035348 |
| WH_MDL_00023835 | WH_MDL_00027407 | WH_MDL_00036066 |
| WH_MDL_00023932 | WH_MDL_00027407 | WH_MDL_00036077 |
| WH_MDL_00024201 | WH_MDL_00027450 | WH_MDL_00036093 |
| WH_MDL_00024258 | WH_MDL_00027450 | WH_MDL_00036150 |
| WH_MDL_00024261 | WH_MDL_00027493 | WH_MDL_00036274 |
| WH_MDL_00024399 | WH_MDL_00027493 | WH_MDL_00036374 |
| WH_MDL_00024422 | WH_MDL_00027536 | WH_MDL_00036406 |

| | | |
|---|---|---|
| WH_MDL_00036420 | WH_MDL_00039999 | WH_MDL_00041459 |
| WH_MDL_00036465 | WH_MDL_00040006 | WH_MDL_00041460 |
| WH_MDL_00036466 | WH_MDL_00040106 | WH_MDL_00041465 |
| WH_MDL_00036499 | WH_MDL_00040107 | WH_MDL_00041675 |
| WH_MDL_00038161 | WH_MDL_00040117 | WH_MDL_00041676 |
| WH_MDL_00038162 | WH_MDL_00040186 | WH_MDL_00041677 |
| WH_MDL_00038219 | WH_MDL_00040187 | WH_MDL_00041678 |
| WH_MDL_00038232 | WH_MDL_00040218 | WH_MDL_00041679 |
| WH_MDL_00038303 | WH_MDL_00040220 | WH_MDL_00041680 |
| WH_MDL_00038342 | WH_MDL_00040306 | WH_MDL_00041681 |
| WH_MDL_00038352 | WH_MDL_00040307 | WH_MDL_00041682 |
| WH_MDL_00038509 | WH_MDL_00040329 | WH_MDL_00041700 |
| WH_MDL_00038610 | WH_MDL_00040412 | WH_MDL_00041994 |
| WH_MDL_00038800 | WH_MDL_00040414 | WH_MDL_00041996 |
| WH_MDL_00038850 | WH_MDL_00040415 | WH_MDL_00042062 |
| WH_MDL_00038907 | WH_MDL_00040418 | WH_MDL_00042064 |
| WH_MDL_00038946 | WH_MDL_00040539 | WH_MDL_00042066 |
| WH_MDL_00038976 | WH_MDL_00040540 | WH_MDL_00042068 |
| WH_MDL_00038980 | WH_MDL_00040550 | WH_MDL_00042105 |
| WH_MDL_00038985 | WH_MDL_00040596 | WH_MDL_00042106 |
| WH_MDL_00038999 | WH_MDL_00040598 | WH_MDL_00042107 |
| WH_MDL_00039002 | WH_MDL_00040599 | WH_MDL_00042119 |
| WH_MDL_00039004 | WH_MDL_00040602 | WH_MDL_00043096 |
| WH_MDL_00039341 | WH_MDL_00040946 | WH_MDL_00043101 |
| WH_MDL_00039345 | WH_MDL_00040947 | WH_MDL_00043102 |
| WH_MDL_00039350 | WH_MDL_00040948 | WH_MDL_00043103 |
| WH_MDL_00039356 | WH_MDL_00040949 | WH_MDL_00043138 |
| WH_MDL_00039368 | WH_MDL_00040969 | WH_MDL_00043140 |
| WH_MDL_00039564 | WH_MDL_00041076 | WH_MDL_00043142 |
| WH_MDL_00039571 | WH_MDL_00041077 | WH_MDL_00043143 |
| WH_MDL_00039572 | WH_MDL_00041082 | WH_MDL_00043207 |
| WH_MDL_00039574 | WH_MDL_00041091 | WH_MDL_00043216 |
| WH_MDL_00039591 | WH_MDL_00041154 | WH_MDL_00043217 |
| WH_MDL_00039604 | WH_MDL_00041155 | WH_MDL_00043281 |
| WH_MDL_00039607 | WH_MDL_00041259 | WH_MDL_00043315 |
| WH_MDL_00039619 | WH_MDL_00041283 | WH_MDL_00043317 |
| WH_MDL_00039786 | WH_MDL_00041284 | WH_MDL_00043330 |
| WH_MDL_00039791 | WH_MDL_00041311 | WH_MDL_00043331 |
| WH_MDL_00039805 | WH_MDL_00041330 | WH_MDL_00043415 |
| WH_MDL_00039808 | WH_MDL_00041359 | WH_MDL_00043419 |
| WH_MDL_00039824 | WH_MDL_00041363 | WH_MDL_00044297 |
| WH_MDL_00039931 | WH_MDL_00041378 | WH_MDL_00044298 |
| WH_MDL_00039936 | WH_MDL_00041449 | WH_MDL_00044299 |

| | | |
|---|---|---|
| WH_MDL_00044300 | WH_MDL_00046258 | WH_MDL_00047320 |
| WH_MDL_00044301 | WH_MDL_00046259 | WH_MDL_00047326 |
| WH_MDL_00044302 | WH_MDL_00046260 | WH_MDL_00047327 |
| WH_MDL_00044383 | WH_MDL_00046261 | WH_MDL_00047328 |
| WH_MDL_00044384 | WH_MDL_00046268 | WH_MDL_00047337 |
| WH_MDL_00044385 | WH_MDL_00046286 | WH_MDL_00047338 |
| WH_MDL_00044387 | WH_MDL_00046390 | WH_MDL_00047371 |
| WH_MDL_00044394 | WH_MDL_00046409 | WH_MDL_00047377 |
| WH_MDL_00045034 | WH_MDL_00046465 | WH_MDL_00047378 |
| WH_MDL_00045048 | WH_MDL_00046480 | WH_MDL_00047379 |
| WH_MDL_00045049 | WH_MDL_00046509 | WH_MDL_00047382 |
| WH_MDL_00045050 | WH_MDL_00046515 | WH_MDL_00047383 |
| WH_MDL_00045057 | WH_MDL_00046534 | WH_MDL_00047445 |
| WH_MDL_00045058 | WH_MDL_00046552 | WH_MDL_00047446 |
| WH_MDL_00045064 | WH_MDL_00046617 | WH_MDL_00047447 |
| WH_MDL_00045065 | WH_MDL_00046619 | WH_MDL_00047448 |
| WH_MDL_00045066 | WH_MDL_00046624 | WH_MDL_00047449 |
| WH_MDL_00045067 | WH_MDL_00046649 | WH_MDL_00047450 |
| WH_MDL_00045068 | WH_MDL_00046650 | WH_MDL_00047482 |
| WH_MDL_00045069 | WH_MDL_00046651 | WH_MDL_00047496 |
| WH_MDL_00045100 | WH_MDL_00046652 | WH_MDL_00047501 |
| WH_MDL_00045101 | WH_MDL_00046660 | WH_MDL_00047580 |
| WH_MDL_00045103 | WH_MDL_00046984 | WH_MDL_00047589 |
| WH_MDL_00045104 | WH_MDL_00046985 | WH_MDL_00047590 |
| WH_MDL_00045105 | WH_MDL_00046986 | WH_MDL_00047591 |
| WH_MDL_00045106 | WH_MDL_00046987 | WH_MDL_00047593 |
| WH_MDL_00045114 | WH_MDL_00046988 | WH_MDL_00047594 |
| WH_MDL_00045133 | WH_MDL_00046989 | WH_MDL_00047642 |
| WH_MDL_00045134 | WH_MDL_00046990 | WH_MDL_00047643 |
| WH_MDL_00045879 | WH_MDL_00046991 | WH_MDL_00047644 |
| WH_MDL_00045918 | WH_MDL_00046992 | WH_MDL_00047645 |
| WH_MDL_00045982 | WH_MDL_00046993 | WH_MDL_00047646 |
| WH_MDL_00045999 | WH_MDL_00046994 | WH_MDL_00047647 |
| WH_MDL_00046003 | WH_MDL_00046995 | WH_MDL_00047675 |
| WH_MDL_00046053 | WH_MDL_00046996 | WH_MDL_00047676 |
| WH_MDL_00046064 | WH_MDL_00046997 | WH_MDL_00047677 |
| WH_MDL_00046103 | WH_MDL_00046998 | WH_MDL_00047687 |
| WH_MDL_00046108 | WH_MDL_00046999 | WH_MDL_00047807 |
| WH_MDL_00046125 | WH_MDL_00047000 | WH_MDL_00047812 |
| WH_MDL_00046152 | WH_MDL_00047001 | WH_MDL_00047931 |
| WH_MDL_00046213 | WH_MDL_00047002 | WH_MDL_00047935 |
| WH_MDL_00046219 | WH_MDL_00047003 | WH_MDL_00047936 |
| WH_MDL_00046221 | WH_MDL_00047005 | WH_MDL_00047937 |

| | | |
|---|---|---|
| WH_MDL_00047940 | WH_MDL_00048454 | WH_MDL_00065107 |
| WH_MDL_00047941 | WH_MDL_00048455 | WH_MDL_00065107 |
| WH_MDL_00047967 | WH_MDL_00048456 | WH_MDL_00065130 |
| WH_MDL_00047968 | WH_MDL_00048457 | WH_MDL_00065130 |
| WH_MDL_00047969 | WH_MDL_00048458 | WH_MDL_00065432 |
| WH_MDL_00047975 | WH_MDL_00048466 | WH_MDL_00065463 |
| WH_MDL_00048250 | WH_MDL_00048490 | WH_MDL_00065500 |
| WH_MDL_00048251 | WH_MDL_00048528 | WH_MDL_00065524 |
| WH_MDL_00048252 | WH_MDL_00048607 | WH_MDL_00065588 |
| WH_MDL_00048253 | WH_MDL_00048608 | WH_MDL_00066647 |
| WH_MDL_00048254 | WH_MDL_00048609 | WH_MDL_00066876 |
| WH_MDL_00048255 | WH_MDL_00048610 | WH_MDL_00070688 |
| WH_MDL_00048256 | WH_MDL_00048612 | WH_MDL_00070688 |
| WH_MDL_00048257 | WH_MDL_00048613 | WH_MDL_00071172 |
| WH_MDL_00048258 | WH_MDL_00048679 | WH_MDL_00072008 |
| WH_MDL_00048259 | WH_MDL_00048680 | WH_MDL_00072008 |
| WH_MDL_00048260 | WH_MDL_00048681 | WH_MDL_00072492 |
| WH_MDL_00048261 | WH_MDL_00048688 | WH_MDL_00072968 |
| WH_MDL_00048291 | WH_MDL_00049330 | WH_MDL_00072968 |
| WH_MDL_00048292 | WH_MDL_00051411 | WH_MDL_00075304 |
| WH_MDL_00048293 | WH_MDL_00051412 | WH_MDL_00075304 |
| WH_MDL_00048294 | WH_MDL_00051413 | WH_MDL_00075788 |
| WH_MDL_00048295 | WH_MDL_00051414 | WH_MDL_00076410 |
| WH_MDL_00048296 | WH_MDL_00051415 | WH_MDL_00076410 |
| WH_MDL_00048302 | WH_MDL_00051430 | WH_MDL_00076725 |
| WH_MDL_00048325 | WH_MDL_00051431 | WH_MDL_00077940 |
| WH_MDL_00048326 | WH_MDL_00051432 | WH_MDL_00077940 |
| WH_MDL_00048387 | WH_MDL_00051436 | WH_MDL_00078255 |
| WH_MDL_00048388 | WH_MDL_00051563 | WH_MDL_00079470 |
| WH_MDL_00048389 | WH_MDL_00053434 | WH_MDL_00079470 |
| WH_MDL_00048390 | WH_MDL_00056788 | WH_MDL_00079785 |
| WH_MDL_00048391 | WH_MDL_00060198 | WH_MDL_00082100 |
| WH_MDL_00048392 | WH_MDL_00060294 | WH_MDL_00082402 |
| WH_MDL_00048413 | WH_MDL_00061164 | WH_MDL_00082660 |
| WH_MDL_00048414 | WH_MDL_00061164 | WH_MDL_00086006 |
| WH_MDL_00048415 | WH_MDL_00063013 | WH_MDL_00087021 |
| WH_MDL_00048416 | WH_MDL_00063782 | WH_MDL_00087498 |
| WH_MDL_00048417 | WH_MDL_00063998 | WH_MDL_00087999 |
| WH_MDL_00048418 | WH_MDL_00064310 | WH_MDL_00099237 |
| WH_MDL_00048450 | WH_MDL_00064412 | WH_MDL_00100104 |
| WH_MDL_00048451 | WH_MDL_00064491 | WH_MDL_00100200 |
| WH_MDL_00048452 | WH_MDL_00064527 | WH_MDL_00100918 |
| WH_MDL_00048453 | WH_MDL_00064550 | WH_MDL_00102812 |

| | | |
|---|---|---|
| WH_MDL_00103424 | WH_MDL_00111016 | WH_MDL_00133186 |
| WH_MDL_00103640 | WH_MDL_00111039 | WH_MDL_00133862 |
| WH_MDL_00104058 | WH_MDL_00111425 | WH_MDL_00134666 |
| WH_MDL_00104081 | WH_MDL_00111436 | WH_MDL_00135342 |
| WH_MDL_00104638 | WH_MDL_00111458 | WH_MDL_00136875 |
| WH_MDL_00104661 | WH_MDL_00111469 | WH_MDL_00136920 |
| WH_MDL_00108833 | WH_MDL_00111480 | WH_MDL_00136923 |
| WH_MDL_00108855 | WH_MDL_00111491 | WH_MDL_00137163 |
| WH_MDL_00108866 | WH_MDL_00111525 | WH_MDL_00141137 |
| WH_MDL_00108877 | WH_MDL_00111559 | WH_MDL_00141338 |
| WH_MDL_00108911 | WH_MDL_00111711 | WH_MDL_00141596 |
| WH_MDL_00108945 | WH_MDL_00111722 | WH_MDL_00141629 |
| WH_MDL_00108979 | WH_MDL_00111756 | WH_MDL_00141728 |
| WH_MDL_00109131 | WH_MDL_00111790 | WH_MDL_00141840 |
| WH_MDL_00109142 | WH_MDL_00111824 | WH_MDL_00141873 |
| WH_MDL_00109176 | WH_MDL_00111847 | WH_MDL_00141994 |
| WH_MDL_00109210 | WH_MDL_00112312 | WH_MDL_00142821 |
| WH_MDL_00109244 | WH_MDL_00112323 | WH_MDL_00142887 |
| WH_MDL_00109267 | WH_MDL_00112334 | WH_MDL_00148774 |
| WH_MDL_00109897 | WH_MDL_00112345 | WH_MDL_00148818 |
| WH_MDL_00109919 | WH_MDL_00112356 | WH_MDL_00155547 |
| WH_MDL_00109976 | WH_MDL_00112380 | WH_MDL_00155547 |
| WH_MDL_00109987 | WH_MDL_00112391 | WH_MDL_00155676 |
| WH_MDL_00110021 | WH_MDL_00112454 | WH_MDL_00157297 |
| WH_MDL_00110055 | WH_MDL_00112491 | WH_MDL_00157737 |
| WH_MDL_00110089 | WH_MDL_00112502 | WH_MDL_00157737 |
| WH_MDL_00110241 | WH_MDL_00112526 | WH_MDL_00157825 |
| WH_MDL_00110252 | WH_MDL_00112550 | WH_MDL_00157825 |
| WH_MDL_00110286 | WH_MDL_00112574 | WH_MDL_00158617 |
| WH_MDL_00110320 | WH_MDL_00112690 | WH_MDL_00159013 |
| WH_MDL_00110354 | WH_MDL_00112701 | WH_MDL_00159013 |
| WH_MDL_00110377 | WH_MDL_00112712 | WH_MDL_00159273 |
| WH_MDL_00110605 | WH_MDL_00112746 | WH_MDL_00159353 |
| WH_MDL_00110627 | WH_MDL_00112757 | WH_MDL_00159401 |
| WH_MDL_00110661 | WH_MDL_00112791 | WH_MDL_00159541 |
| WH_MDL_00110672 | WH_MDL_00112825 | WH_MDL_00159564 |
| WH_MDL_00110683 | WH_MDL_00112836 | WH_MDL_00159628 |
| WH_MDL_00110717 | WH_MDL_00112870 | WH_MDL_00159651 |
| WH_MDL_00110751 | WH_MDL_00118295 | WH_MDL_00159715 |
| WH_MDL_00110903 | WH_MDL_00120455 | WH_MDL_00159738 |
| WH_MDL_00110914 | WH_MDL_00121748 | WH_MDL_00159889 |
| WH_MDL_00110948 | WH_MDL_00125283 | WH_MDL_00159912 |
| WH_MDL_00110982 | WH_MDL_00133127 | WH_MDL_00160213 |

CONFIDENTIAL

| | | |
|---|---|---|
| WH_MDL_00160223 | WH_MDL_00174415 | WH_MDL_00194038 |
| WH_MDL_00160243 | WH_MDL_00174889 | WH_MDL_00213763 |
| WH_MDL_00160248 | WH_MDL_00174975 | WH_MDL_00213805 |
| WH_MDL_00160578 | WH_MDL_00174975 | WH_MDL_00219361 |
| WH_MDL_00160583 | WH_MDL_00180951 | WH_MDL_00219457 |
| WH_MDL_00160593 | WH_MDL_00181041 | WH_MDL_00219850 |
| WH_MDL_00160598 | WH_MDL_00181131 | WH_MDL_00220141 |
| WH_MDL_00160603 | WH_MDL_00181581 | WH_MDL_00221480 |
| WH_MDL_00160608 | WH_MDL_00181581 | WH_MDL_00222214 |
| WH_MDL_00160613 | WH_MDL_00182436 | WH_MDL_00222247 |
| WH_MDL_00160628 | WH_MDL_00182571 | WH_MDL_00222368 |
| WH_MDL_00160633 | WH_MDL_00182616 | WH_MDL_00223085 |
| WH_MDL_00160856 | WH_MDL_00182751 | WH_MDL_00223151 |
| WH_MDL_00160904 | WH_MDL_00183156 | WH_MDL_00223184 |
| WH_MDL_00160996 | WH_MDL_00183156 | WH_MDL_00223725 |
| WH_MDL_00161111 | WH_MDL_00183874 | WH_MDL_00223758 |
| WH_MDL_00161180 | WH_MDL_00184815 | WH_MDL_00223879 |
| WH_MDL_00161295 | WH_MDL_00185376 | WH_MDL_00235027 |
| WH_MDL_00161510 | WH_MDL_00185505 | WH_MDL_00235027 |
| WH_MDL_00161533 | WH_MDL_00185763 | WH_MDL_00235115 |
| WH_MDL_00161655 | WH_MDL_00186065 | WH_MDL_00235115 |
| WH_MDL_00161678 | WH_MDL_00186238 | WH_MDL_00235819 |
| WH_MDL_00161916 | WH_MDL_00186367 | WH_MDL_00235863 |
| WH_MDL_00161939 | WH_MDL_00186625 | WH_MDL_00236836 |
| WH_MDL_00162577 | WH_MDL_00187056 | WH_MDL_00236836 |
| WH_MDL_00168843 | WH_MDL_00187056 | WH_MDL_00236879 |
| WH_MDL_00171080 | WH_MDL_00187401 | WH_MDL_00238288 |
| WH_MDL_00171123 | WH_MDL_00187962 | WH_MDL_00238313 |
| WH_MDL_00171166 | WH_MDL_00188091 | WH_MDL_00238447 |
| WH_MDL_00171727 | WH_MDL_00188349 | WH_MDL_00238470 |
| WH_MDL_00172373 | WH_MDL_00188780 | WH_MDL_00238502 |
| WH_MDL_00172373 | WH_MDL_00188780 | WH_MDL_00238525 |
| WH_MDL_00172503 | WH_MDL_00190325 | WH_MDL_00238778 |
| WH_MDL_00172589 | WH_MDL_00190884 | WH_MDL_00238939 |
| WH_MDL_00172632 | WH_MDL_00191181 | WH_MDL_00239008 |
| WH_MDL_00173106 | WH_MDL_00191254 | WH_MDL_00239129 |
| WH_MDL_00173192 | WH_MDL_00191265 | WH_MDL_00239134 |
| WH_MDL_00173192 | WH_MDL_00191306 | WH_MDL_00239139 |
| WH_MDL_00173510 | WH_MDL_00191317 | WH_MDL_00239144 |
| WH_MDL_00174156 | WH_MDL_00192293 | WH_MDL_00239247 |
| WH_MDL_00174156 | WH_MDL_00193422 | WH_MDL_00239270 |
| WH_MDL_00174286 | WH_MDL_00193444 | WH_MDL_00239305 |
| WH_MDL_00174372 | WH_MDL_00194027 | WH_MDL_00239328 |

| | | |
|---|---|---|
| WH_MDL_00239528 | WH_MDL_00343095 | WH_MDL_00375727 |
| WH_MDL_00246987 | WH_MDL_00343427 | WH_MDL_00375915 |
| WH_MDL_00247073 | WH_MDL_00343556 | WH_MDL_00375948 |
| WH_MDL_00247116 | WH_MDL_00344203 | WH_MDL_00376177 |
| WH_MDL_00247331 | WH_MDL_00345108 | WH_MDL_00376210 |
| WH_MDL_00247374 | WH_MDL_00345280 | WH_MDL_00376302 |
| WH_MDL_00247417 | WH_MDL_00345840 | WH_MDL_00376335 |
| WH_MDL_00248522 | WH_MDL_00348058 | WH_MDL_00376445 |
| WH_MDL_00248522 | WH_MDL_00349036 | WH_MDL_00376512 |
| WH_MDL_00269228 | WH_MDL_00349430 | WH_MDL_00376578 |
| WH_MDL_00308579 | WH_MDL_00349991 | WH_MDL_00376611 |
| WH_MDL_00308624 | WH_MDL_00350378 | WH_MDL_00376733 |
| WH_MDL_00312119 | WH_MDL_00351111 | WH_MDL_00376799 |
| WH_MDL_00312124 | WH_MDL_00351284 | WH_MDL_00376832 |
| WH_MDL_00312129 | WH_MDL_00351413 | WH_MDL_00376956 |
| WH_MDL_00312134 | WH_MDL_00351671 | WH_MDL_00376989 |
| WH_MDL_00317999 | WH_MDL_00352447 | WH_MDL_00377974 |
| WH_MDL_00318042 | WH_MDL_00353008 | WH_MDL_00378007 |
| WH_MDL_00318300 | WH_MDL_00353395 | WH_MDL_00378128 |
| WH_MDL_00324786 | WH_MDL_00372935 | WH_MDL_00378195 |
| WH_MDL_00326543 | WH_MDL_00373744 | WH_MDL_00378228 |
| WH_MDL_00326544 | WH_MDL_00373777 | WH_MDL_00378349 |
| WH_MDL_00326545 | WH_MDL_00373898 | WH_MDL_00378421 |
| WH_MDL_00326546 | WH_MDL_00373965 | WH_MDL_00378454 |
| WH_MDL_00326547 | WH_MDL_00373998 | WH_MDL_00378652 |
| WH_MDL_00326548 | WH_MDL_00374119 | WH_MDL_00378685 |
| WH_MDL_00326549 | WH_MDL_00374197 | WH_MDL_00379966 |
| WH_MDL_00326550 | WH_MDL_00374230 | WH_MDL_00379999 |
| WH_MDL_00326553 | WH_MDL_00374418 | WH_MDL_00380120 |
| WH_MDL_00326555 | WH_MDL_00374451 | WH_MDL_00380256 |
| WH_MDL_00326557 | WH_MDL_00374787 | WH_MDL_00380289 |
| WH_MDL_00335098 | WH_MDL_00374820 | WH_MDL_00381458 |
| WH_MDL_00337169 | WH_MDL_00374941 | WH_MDL_00381491 |
| WH_MDL_00337299 | WH_MDL_00375008 | WH_MDL_00381682 |
| WH_MDL_00337346 | WH_MDL_00375041 | WH_MDL_00381715 |
| WH_MDL_00337543 | WH_MDL_00375162 | WH_MDL_00382240 |
| WH_MDL_00337761 | WH_MDL_00375244 | WH_MDL_00382273 |
| WH_MDL_00341505 | WH_MDL_00375277 | WH_MDL_00382985 |
| WH_MDL_00341528 | WH_MDL_00375398 | WH_MDL_00383018 |
| WH_MDL_00341896 | WH_MDL_00375467 | WH_MDL_00383909 |
| WH_MDL_00342006 | WH_MDL_00375500 | WH_MDL_00383986 |
| WH_MDL_00342633 | WH_MDL_00375621 | WH_MDL_00385867 |
| WH_MDL_00342995 | WH_MDL_00375694 | WH_MDL_00385944 |

| | | |
|---|---|---|
| WH_MDL_00386551 | WH_MDL_00431636 | WH_MDL_00441590 |
| WH_MDL_00386628 | WH_MDL_00431636 | WH_MDL_00442457 |
| WH_MDL_00387959 | WH_MDL_00433116 | WH_MDL_00442457 |
| WH_MDL_00388036 | WH_MDL_00433289 | WH_MDL_00442501 |
| WH_MDL_00388482 | WH_MDL_00433462 | WH_MDL_00442630 |
| WH_MDL_00388559 | WH_MDL_00433462 | WH_MDL_00442888 |
| WH_MDL_00389746 | WH_MDL_00433678 | WH_MDL_00443190 |
| WH_MDL_00389823 | WH_MDL_00433678 | WH_MDL_00443751 |
| WH_MDL_00390813 | WH_MDL_00436221 | WH_MDL_00443751 |
| WH_MDL_00390890 | WH_MDL_00436244 | WH_MDL_00443795 |
| WH_MDL_00391666 | WH_MDL_00436267 | WH_MDL_00443924 |
| WH_MDL_00391743 | WH_MDL_00436589 | WH_MDL_00444182 |
| WH_MDL_00396031 | WH_MDL_00436681 | WH_MDL_00444700 |
| WH_MDL_00396351 | WH_MDL_00437085 | WH_MDL_00445906 |
| WH_MDL_00397250 | WH_MDL_00437363 | WH_MDL_00445928 |
| WH_MDL_00400474 | WH_MDL_00437502 | WH_MDL_00476315 |
| WH_MDL_00403040 | WH_MDL_00437560 | WH_MDL_00497583 |
| WH_MDL_00403063 | WH_MDL_00437666 | WH_MDL_00497584 |
| WH_MDL_00403086 | WH_MDL_00437742 | WH_MDL_00497585 |
| WH_MDL_00403455 | WH_MDL_00437763 | WH_MDL_00497586 |
| WH_MDL_00403616 | WH_MDL_00437789 | WH_MDL_00498067 |
| WH_MDL_00405996 | WH_MDL_00437841 | WH_MDL_00498070 |
| WH_MDL_00406041 | WH_MDL_00437883 | WH_MDL_00504996 |
| WH_MDL_00422424 | WH_MDL_00440814 | WH_MDL_00505006 |
| WH_MDL_00424489 | WH_MDL_00440814 | WH_MDL_00505007 |
| WH_MDL_00424547 | WH_MDL_00440858 | WH_MDL_00505008 |
| WH_MDL_00431420 | WH_MDL_00440987 | WH_MDL_00505011 |
| WH_MDL_00431420 | WH_MDL_00441245 | WH_MDL_00505012 |

CONFIDENTIAL

**Exhibit 2**
**List of Bellwether Transactions**

| Pension Plan | Security Name | Ticker | Opening Trade Month |
|---|---|---|---|
| RJM Plan | A.P. Møller Mærsk A/S - B | MAERSKB DC | April 2013 |
| Proper Pacific Plan | Chr. Hansen Holding A/S | CHR DC | November 2014 |
| Bernina Plan | TDC A/S | TDC DC | March 2013 |
| Bernina Plan | Novozymes A/S - B | NZYMB DC | February 2014 |
| Delvian Plan | Tryg A/S | TRYG DC | April 2013 |
| Delvian Plan | TDC A/S | TDC DC | March 2014 |
| Basalt Plan | Carlsberg A/S - B | CARLB DC | March 2015 |
| Basalt Plan | Pandora A/S | PNDORA DC | March 2015 |
| Avanix Plan | TDC A/S | TDC DC | August 2014 |
| Avanix Plan | Coloplast A/S - B | COLOB DC | May 2015 |
| Stor Plan | A.P. Møller Mærsk A/S - B | MAERSKB DC | March 2015 |
| Stor Plan | FLSmidth & Co. A/S | FLS DC | March 2015 |
| Bareroot Plan | Pandora A/S | PNDORA DC | March 2015 |
| Bareroot Plan | DSV A/S | DSV DC | March 2015 |
| Roadcraft Plan | TDC A/S | TDC DC | August 2014 |
| Roadcraft Plan | Coloplast A/S - B | COLOB DC | May 2015 |
| Loggerhead Plan | Tryg A/S | TRYG DC | March 2015 |
| Loggerhead Plan | Danske Bank A/S | DANSKE DC | March 2015 |
| FWC Capital Plan | Chr. Hansen Holding A/S | CHR DC | November 2014 |
| FWC Capital Plan | Carlsberg A/S - B | CARLB DC | March 2015 |
| LBR Capital Plan | A.P. Møller Mærsk A/S - B | MAERSKB DC | March 2015 |
| LBR Capital Plan | Vestas Wind Systems A/S | VWS DC | March 2015 |
| Costello Plan | TDC A/S | TDC DC | March 2015 |
| Costello Plan | Tryg A/S | TRYG DC | March 2015 |
| SVP Plan | Novozymes A/S - B | NZYMB DC | February 2015 |
| SVP Plan | TDC A/S | TDC DC | March 2015 |
| Oaks Group Plan | Tryg A/S | TRYG DC | March 2015 |
| Oaks Group Plan | FLSmidth & Co. A/S | FLS DC | March 2015 |

**Exhibit 3**
**Summary of the Other Analyzed Transactions**

| | General | | | Transaction 1 (Opening Equity Purchase) | | | | | Transaction 2 (Opening Derivative Sale) | | | | | | | Transaction 3 (Equity Loan) | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Pension Plan | Ticker | Ex-Div Date | Trade Date | Settlement Date | IDB | Share Quantity | Per Share Price (DKK) | Trade Date | Counterparty / IDB * | Security Type | Settlement Type ** | Maturity Date | Contract Quantity | Per Contract Price (DKK) | Loan Term Start Date | Counterparty | Quantity |
| | [A1] | [B1] | [C1] | [A2] | [B2] | [C2] | [D2] | [E2] | [A3] | [B3] | [C3] | [D3] | [E3] | [F3] | [G3] | [A4] | [B4] | [C4] |
| [1] | Bernina Plan | TDC | 3/8/2013 | 3/7/2013 | 3/13/2013 | FGC Securities | 4,500,000 | 45 7892 | 3/7/2013 | FGC Securities | Flex Futures | Cash | 6/21/2013 | 45,000 | 44 1500 | 3/13/2013 | Colbrook Ltd | 4,500,000 |
| [2] | Bernina Plan | NZYMB | 2/27/2014 | 2/26/2014 | 3/4/2014 | Novus Capital | 911,726 | 254 0000 | 2/26/2014 | Amalthea Enterprises Ltd | Forward | Physical | 6/20/2014 | 911,726 | 252 4300 | 3/4/2014 | Colbrook Ltd | 911,726 |
| [3] | Delvian Plan | TRYG | 4/19/2013 | 4/18/2013 | 4/24/2013 | FGC Securities | 155,000 | 479 3033 | 4/18/2013 | FGC Securities | Flex Futures | Cash | 9/20/2013 | 1,550 | 461 1300 | 4/24/2013 | Amalthea Enterprises Ltd | 155,000 |
| [4] | Delvian Plan | TDC | 3/7/2014 | 3/6/2014 | 3/12/2014 | Novus Capital | 3,613,646 | 52 6500 | 3/6/2014 | Amalthea Enterprises Ltd | Forward | Physical | 6/20/2014 | 3,613,646 | 51 0893 | 3/12/2014 | Colbrook Ltd | 3,613,646 |
| [5] | Basalt Plan | CARLB | 3/27/2015 | 3/26/2015 | 3/31/2015 | Sunrise Brokers | 178,044 | 571 5000 | 3/26/2015 | Connaught Global Ltd | Forward | Physical | 6/19/2015 | 178,044 | 564 7130 | 3/31/2015 | Prince Solutions Ltd | 178,044 |
| [5'] | Basalt Plan | | | | | | | | 6/16/2015 | Connaught Global Ltd | Forward | Physical | 9/18/2015 | 178,044 | 619 2044 | | | |
| [6] | Basalt Plan | PNDORA | 3/19/2015 | 3/18/2015 | 3/23/2015 | Sunrise Brokers | 450,631 | 614 5000 | 3/18/2015 | Connaught Global Ltd | Forward | Physical | 6/19/2015 | 450,631 | 607 6807 | 3/23/2015 | Prince Solutions Ltd | 450,631 |
| [6'] | Basalt Plan | | | | | | | | 6/16/2015 | Connaught Global Ltd | Forward | Physical | 9/18/2015 | 450,631 | 691 6698 | | | |
| [7] | Avanix Plan | TDC | 8/8/2014 | 8/7/2014 | 8/13/2014 | Bastion Capital | 2,805,836 | 51 3500 | 8/7/2014 | Amalthea Enterprises Ltd | Forward | Physical | 12/19/2014 | 2,805,836 | 50 3500 | 8/13/2014 | Gnosis Capital Ltd | 2,805,836 |
| [8] | Avanix Plan | COLOB | 5/7/2015 | 5/6/2015 | 5/11/2015 | Bastion Capital | 1,457,204 | 510 0000 | 5/6/2015 | Lyall Capital Ltd | Forward | Physical | 9/18/2015 | 1,457,204 | 506 5282 | 5/11/2015 | Prince Solutions Ltd | 1,457,204 |
| [9] | Stor Plan | MAERSKB | 3/31/2015 | 3/30/2015 | 4/7/2015 | Bastion Capital | 7,903 | 16,410 0000 | 3/30/2015 | Connaught Global Ltd | Forward | Physical | 6/19/2015 | 7,903 | 14,965 5352 | 4/7/2015 | Trance Services Ltd | 7,903 |
| [9'] | Stor Plan | | | | | | | | 6/16/2015 | Connaught Global Ltd | Forward | Physical | 9/18/2015 | 7,903 | 12,064 2405 | | | |
| [10] | Stor Plan | FLS | 3/27/2015 | 3/26/2015 | 3/31/2015 | TJM Partnership | 80,425 | 314 0000 | 3/26/2015 | Allitsen Asset Ltd | Forward | Physical | 6/19/2015 | 80,425 | 307 3119 | 3/31/2015 | Neoteric Ltd | 80,425 |
| [10'] | Stor Plan | | | | | | | | 6/16/2015 | Allitsen Asset Ltd | Forward | Physical | 9/18/2015 | 80,425 | 330 3423 | | | |
| [11] | Bareroot Plan | PNDORA | 3/19/2015 | 3/18/2015 | 3/23/2015 | Bastion Capital | 487,693 | 614 5000 | 3/18/2015 | Lyall Capital Ltd | Forward | Physical | 6/19/2015 | 487,693 | 607 6807 | 3/23/2015 | Diverse Vision Ltd | 487,693 |
| [11'] | Bareroot Plan | | | | | | | | 6/16/2015 | Lyall Capital Ltd | Forward | Physical | 9/18/2015 | 487,693 | 691 6698 | | | |
| [12] | Bareroot Plan | DSV | 3/13/2015 | 3/12/2015 | 3/17/2015 | TJM Partnership | 793,958 | 219 2000 | 3/12/2015 | Allitsen Asset Ltd | Forward | Physical | 6/19/2015 | 793,958 | 217 9241 | 3/17/2015 | Treehurst Ltd | 793,958 |
| [12'] | Bareroot Plan | | | | | | | | 6/16/2015 | Allitsen Asset Ltd | Forward | Physical | 9/18/2015 | 793,958 | 223 8931 | | | |
| [13] | Roadcraft Plan | TDC | 8/8/2014 | 8/7/2014 | 8/13/2014 | Bastion Capital | 2,803,027 | 51 3500 | 8/7/2014 | Cork Oak Capital Ltd | Forward | Physical | 12/19/2014 | 2,803,027 | 50 3500 | 8/13/2014 | Gnosis Capital Ltd | 2,803,027 |
| [14] | Roadcraft Plan | COLOB | 5/7/2015 | 5/6/2015 | 5/11/2015 | Bastion Capital | 1,473,168 | 510 0000 | 5/6/2015 | Allitsen Asset Ltd | Forward | Physical | 9/18/2015 | 1,473,168 | 506 5282 | 5/11/2015 | Equal Services Ltd | 1,473,168 |
| [15] | Loggerhead Plan | TRYG | 3/26/2015 | 3/25/2015 | 3/30/2015 | Sunrise Brokers | 176,360 | 868 5000 | 3/25/2015 | Connaught Global Ltd | Forward | Physical | 6/19/2015 | 176,360 | 846 9944 | 3/30/2015 | Treehurst Ltd | 176,360 |
| [15'] | Loggerhead Plan | | | | | | | | 6/16/2015 | Connaught Global Ltd | Forward | Physical | 9/18/2015 | 881,800 | 136 4349 | | | |
| [16] | Loggerhead Plan | DANSKE | 3/19/2015 | 3/18/2015 | 3/23/2015 | TJM Partnership | 3,290,372 | 175 3000 | 3/18/2015 | Gartside Global Ltd | Forward | Physical | 6/19/2015 | 3,290,372 | 171 2147 | 3/23/2015 | Prince Solutions Ltd | 3,290,372 |
| [17] | FWC Capital Plan | CHR | 11/28/2014 | 11/27/2014 | 12/2/2014 | Bastion Capital | 846,864 | 258 9000 | 11/27/2014 | Amalthea Enterprises Ltd | Forward | Physical | 3/20/2015 | 846,864 | 256 4200 | 12/2/2014 | Gnosis Capital Ltd | 846,864 |
| [18] | FWC Capital Plan | CARLB | 3/27/2015 | 3/26/2015 | 3/31/2015 | TJM Partnership | 903,635 | 571 5000 | 3/26/2015 | Allitsen Asset Ltd | Forward | Physical | 6/19/2015 | 903,635 | 564 7130 | 3/31/2015 | Diverse Vision Ltd | 903,635 |
| [18'] | FWC Capital Plan | | | | | | | | 6/16/2015 | Allitsen Asset Ltd | Forward | Physical | 9/18/2015 | 903,635 | 619 2044 | | | |
| [19] | LBR Capital Plan | MAERSKB | 3/31/2015 | 3/30/2015 | 4/7/2015 | TJM Partnership | 7,884 | 16,410 0000 | 3/30/2015 | Connaught Global Ltd | Forward | Physical | 6/19/2015 | 7,884 | 14,965 5352 | 4/7/2015 | Equal Services Ltd | 7,884 |
| [19'] | LBR Capital Plan | | | | | | | | 6/16/2015 | Connaught Global Ltd | Forward | Physical | 9/18/2015 | 7,884 | 12,064 2405 | | | |
| [20] | LBR Capital Plan | VWS | 3/31/2015 | 3/30/2015 | 4/7/2015 | Sunrise Brokers | 375,802 | 290 0000 | 3/30/2015 | Allitsen Asset Ltd | Forward | Physical | 6/19/2015 | 375,802 | 287 2448 | 4/7/2015 | Principle Markets Ltd | 375,802 |
| [20'] | LBR Capital Plan | | | | | | | | 6/16/2015 | Allitsen Asset Ltd | Forward | Physical | 9/18/2015 | 375,802 | 323 4456 | | | |
| [21] | Costello Plan | TDC | 3/6/2015 | 3/5/2015 | 3/10/2015 | TJM Partnership | 3,215,984 | 54 0000 | 3/5/2015 | Connaught Global Ltd | Forward | Physical | 6/19/2015 | 3,215,984 | 53 2397 | 3/10/2015 | Trance Services Ltd | 3,215,984 |
| [21'] | Costello Plan | | | | | | | | 6/16/2015 | Connaught Global Ltd | Forward | Physical | 9/18/2015 | 3,215,984 | 50 9257 | | | |
| [22] | Costello Plan | TRYG | 3/26/2015 | 3/25/2015 | 3/30/2015 | TJM Partnership | 35,294 | 868 5000 | 3/25/2015 | Lyall Capital Ltd | Forward | Physical | 6/19/2015 | 35,294 | 846 9944 | 3/30/2015 | Principle Markets Ltd | 35,294 |
| [22'] | Costello Plan | | | | | | | | 6/16/2015 | Lyall Capital Ltd | Forward | Physical | 9/18/2015 | 176,470 | 136 4349 | | | |
| [23] | SVP Plan | NZYMB | 2/26/2015 | 2/25/2015 | 3/2/2015 | Bastion Capital | 806,895 | 322 5000 | 2/25/2015 | Allitsen Asset Ltd | Forward | Physical | 6/19/2015 | 806,895 | 320 1105 | 3/2/2015 | Equal Services Ltd | 806,895 |
| [24] | SVP Plan | TDC | 3/6/2015 | 3/5/2015 | 3/10/2015 | Sunrise Brokers | 2,997,556 | 54 0000 | 3/5/2015 | Gartside Global Ltd | Forward | Physical | 6/19/2015 | 2,997,556 | 53 2397 | 3/10/2015 | Treehurst Ltd | 2,997,556 |
| [24'] | SVP Plan | | | | | | | | 6/16/2015 | Gartside Global Ltd | Forward | Physical | 9/18/2015 | 2,997,556 | 50 9257 | | | |
| [25] | Oaks Group Plan | TRYG | 3/26/2015 | 3/25/2015 | 3/30/2015 | Sunrise Brokers | 174,086 | 868 5000 | 3/25/2015 | Allitsen Asset Ltd | Forward | Physical | 6/19/2015 | 174,086 | 846 9944 | 3/30/2015 | Neoteric Ltd | 174,086 |
| [25'] | Oaks Group Plan | | | | | | | | 6/16/2015 | Allitsen Asset Ltd | Forward | Physical | 9/18/2015 | 870,430 | 136 4349 | | | |
| [26] | Oaks Group Plan | FLS | 3/27/2015 | 3/26/2015 | 3/31/2015 | TJM Partnership | 400,182 | 314 0000 | 3/26/2015 | Gartside Global Ltd | Forward | Physical | 6/19/2015 | 400,182 | 307 3119 | 3/31/2015 | Equal Services Ltd | 400,182 |

**Exhibit 3**
**Summary of the Other Analyzed Transactions**

| | General | | | Transaction 4 (Closing Equity Sale) | | | | | Transaction 5 (Closing Derivative Purchase) | | | | | | | Transaction 6 (Recall Equity Loan) | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Pension Plan | Ticker | Ex-Div Date | Trade Date | Settlement Date | IDB | Share Quantity | Per Share Price (DKK) | Trade Date | Counterparty / IDB * | Security Type | Settlement Type ** | Maturity Date | Contract Quantity | Per Contract Price (DKK) | Loan Term End Date | Counterparty | Quantity |
| | [A1] | [B1] | [C1] | [A5] | [B5] | [C5] | [D5] | [E5] | [A6] | [B6] | [C6] | [D6] | [E6] | [F6] | [G6] | [A7] | [B7] | [C7] |
| [1] | Bernina Plan | TDC | 3/8/2013 | 6/3/2013 | 6/7/2013 | FGC Securities | 4,500,000 | 44 6477 | 6/3/2013 | FGC Securities | Flex Futures | Cash | 6/21/2013 | 45,000 | 44 6500 | 6/7/2013 | Colbrook Ltd | 4,500,000 |
| [2] | Bernina Plan | NZYMB | 2/27/2014 | 6/3/2014 | 6/10/2014 | TJM Partnership | 911,726 | 267 4000 | 6/3/2014 | Amalthea Enterprises Ltd | Forward | Physical | 6/20/2014 | 911,726 | 267 4200 | 6/10/2014 | Colbrook Ltd | 911,726 |
| [3] | Delvian Plan | TRYG | 4/19/2013 | 8/21/2013 | 8/26/2013 | FGC Securities | 155,000 | 493 5706 | 8/21/2013 | FGC Securities | Flex Futures | Cash | 9/20/2013 | 1,550 | 493 6200 | 8/26/2013 | Amalthea Enterprises Ltd | 155,000 |
| [4] | Delvian Plan | TDC | 3/7/2014 | 6/4/2014 | 6/11/2014 | TJM Partnership | 3,613,646 | 52 7500 | 6/4/2014 | Amalthea Enterprises Ltd | Forward | Physical | 6/20/2014 | 3,613,646 | 52 7500 | 6/11/2014 | Colbrook Ltd | 3,613,646 |
| [5] | Basalt Plan | CARLB | 3/27/2015 | 6/30/2015 | 7/2/2015 | Bastion Capital | 178,044 | 607 5000 | 6/16/2015 | Connaught Global Ltd | Forward | Physical | 6/19/2015 | 178,044 | 619 4686 | 7/2/2015 | Prince Solutions Ltd | 178,044 |
| [5'] | Basalt Plan | | | | | | | | 6/30/2015 | Connaught Global Ltd | Forward | Physical | 9/18/2015 | 178,044 | 607 2009 | | | |
| [6] | Basalt Plan | PNDORA | 3/19/2015 | 6/30/2015 | 7/2/2015 | TJM Partnership | 450,631 | 719 0000 | 6/16/2015 | Connaught Global Ltd | Forward | Physical | 6/19/2015 | 450,631 | 691 9649 | 7/2/2015 | Prince Solutions Ltd | 450,631 |
| [6'] | Basalt Plan | | | | | | | | 6/30/2015 | Connaught Global Ltd | Forward | Physical | 9/18/2015 | 450,631 | 718 6460 | | | |
| [7] | Avanix Plan | TDC | 8/8/2014 | 11/5/2014 | 11/7/2014 | Ballygate Capital | 2,805,836 | 45 0000 | 11/5/2014 | Amalthea Enterprises Ltd | Forward | Physical | 12/19/2014 | 2,805,836 | 45 0100 | 11/7/2014 | Gnosis Capital Ltd | 2,805,836 |
| [8] | Avanix Plan | COLOB | 5/7/2015 | 6/22/2015 | 6/24/2015 | TJM Partnership | 1,457,204 | 448 5000 | 6/22/2015 | Lyall Capital Ltd | Forward | Physical | 9/18/2015 | 1,457,204 | 448 2758 | 6/24/2015 | Prince Solutions Ltd | 1,457,204 |
| [9] | Stor Plan | MAERSKB | 3/31/2015 | 6/19/2015 | 6/23/2015 | Sunrise Brokers | 7,903 | 12,060 0000 | 6/16/2015 | Connaught Global Ltd | Forward | Physical | 6/19/2015 | 7,903 | 12,069 3881 | 6/23/2015 | Trance Services Ltd | 7,903 |
| [9'] | Stor Plan | | | | | | | | 6/19/2015 | Connaught Global Ltd | Forward | Physical | 9/18/2015 | 7,903 | 12,054 2640 | | | |
| [10] | Stor Plan | FLS | 3/27/2015 | 6/19/2015 | 6/23/2015 | Sunrise Brokers | 80,425 | 334 2000 | 6/16/2015 | Allitsen Asset Ltd | Forward | Physical | 6/19/2015 | 80,425 | 330 4832 | 6/23/2015 | Neoteric Ltd | 80,425 |
| [10'] | Stor Plan | | | | | | | | 6/19/2015 | Allitsen Asset Ltd | Forward | Physical | 9/18/2015 | 80,425 | 334 0410 | | | |
| [11] | Bareroot Plan | PNDORA | 3/19/2015 | 6/30/2015 | 7/2/2015 | Sunrise Brokers | 487,693 | 719 0000 | 6/16/2015 | Lyall Capital Ltd | Forward | Physical | 6/19/2015 | 487,693 | 691 9649 | 7/2/2015 | Diverse Vision Ltd | 487,693 |
| [11'] | Bareroot Plan | | | | | | | | 6/30/2015 | Lyall Capital Ltd | Forward | Physical | 9/18/2015 | 487,693 | 718 6460 | | | |
| [12] | Bareroot Plan | DSV | 3/13/2015 | 7/10/2015 | 7/14/2015 | Sunrise Brokers | 793,958 | 226 0000 | 6/16/2015 | Allitsen Asset Ltd | Forward | Physical | 6/19/2015 | 793,958 | 223 9886 | 7/14/2015 | Treehurst Ltd | 793,958 |
| [12'] | Bareroot Plan | | | | | | | | 7/10/2015 | Allitsen Asset Ltd | Forward | Physical | 9/18/2015 | 793,958 | 225 9088 | | | |
| [13] | Roadcraft Plan | TDC | 8/8/2014 | 11/5/2014 | 11/7/2014 | Ballygate Capital | 2,803,027 | 45 0000 | 11/5/2014 | Cork Oak Capital Ltd | Forward | Physical | 12/19/2014 | 2,803,027 | 45 0100 | 11/7/2014 | Gnosis Capital Ltd | 2,803,027 |
| [14] | Roadcraft Plan | COLOB | 5/7/2015 | 7/8/2015 | 7/10/2015 | Bastion Capital | 1,473,168 | 430 9000 | 7/8/2015 | Allitsen Asset Ltd | Forward | Physical | 9/18/2015 | 1,473,168 | 430 7192 | 7/10/2015 | Equal Services Ltd | 1,473,168 |
| [15] | Loggerhead Plan | TRYG | 3/26/2015 | 7/7/2015 | 7/9/2015 | Bastion Capital | 881,800 | 137 9000 | 6/16/2015 | Connaught Global Ltd | Forward | Physical | 6/19/2015 | 881,800 | 136 4931 | 7/9/2015 | Treehurst Ltd | 881,800 |
| [15'] | Loggerhead Plan | | | | | | | | 7/7/2015 | Connaught Global Ltd | Forward | Physical | 9/18/2015 | 881,800 | 137 8440 | | | |
| [16] | Loggerhead Plan | DANSKE | 3/19/2015 | 5/28/2015 | 6/1/2015 | Sunrise Brokers | 3,290,372 | 200 7000 | 5/28/2015 | Gartside Global Ltd | Forward | Physical | 6/19/2015 | 3,290,372 | 200 6646 | 6/1/2015 | Prince Solutions Ltd | 3,290,372 |
| [17] | FWC Capital Plan | CHR | 11/28/2014 | 12/15/2014 | 12/17/2014 | Bastion Capital | 846,864 | 261 0000 | 12/15/2014 | Amalthea Enterprises Ltd | Forward | Physical | 3/20/2015 | 846,864 | 261 2200 | 12/17/2014 | Gnosis Capital Ltd | 846,864 |
| [18] | FWC Capital Plan | CARLB | 3/27/2015 | 7/22/2015 | 7/24/2015 | Bastion Capital | 903,635 | 628 5000 | 6/16/2015 | Allitsen Asset Ltd | Forward | Physical | 9/18/2015 | 903,635 | 619 4686 | 7/24/2015 | Diverse Vision Ltd | 903,635 |
| [18'] | FWC Capital Plan | | | | | | | | 7/22/2015 | Allitsen Asset Ltd | Forward | Physical | 9/18/2015 | 903,635 | 628 2905 | | | |
| [19] | LBR Capital Plan | MAERSKB | 3/31/2015 | 6/22/2015 | 6/24/2015 | Bastion Capital | 7,884 | 12,290 0000 | 6/16/2015 | Connaught Global Ltd | Forward | Physical | 6/19/2015 | 7,884 | 12,069 3881 | 6/24/2015 | Equal Services Ltd | 7,884 |
| [19'] | LBR Capital Plan | | | | | | | | 6/22/2015 | Connaught Global Ltd | Forward | Physical | 9/18/2015 | 7,884 | 12,283 8550 | | | |
| [20] | LBR Capital Plan | VWS | 3/31/2015 | 7/2/2015 | 7/6/2015 | Bastion Capital | 375,802 | 345 5000 | 6/16/2015 | Allitsen Asset Ltd | Forward | Physical | 6/19/2015 | 375,802 | 323 5836 | 7/6/2015 | Principle Markets Ltd | 375,802 |
| [20'] | LBR Capital Plan | | | | | | | | 7/2/2015 | Allitsen Asset Ltd | Forward | Physical | 9/18/2015 | 375,802 | 345 3565 | | | |
| [21] | Costello Plan | TDC | 3/6/2015 | 6/22/2015 | 6/24/2015 | Bastion Capital | 3,215,984 | 51 6500 | 6/16/2015 | Connaught Global Ltd | Forward | Physical | 6/19/2015 | 3,215,984 | 50 9474 | 6/24/2015 | Trance Services Ltd | 3,215,984 |
| [21'] | Costello Plan | | | | | | | | 6/22/2015 | Connaught Global Ltd | Forward | Physical | 9/18/2015 | 3,215,984 | 51 6242 | | | |
| [22] | Costello Plan | TRYG | 3/26/2015 | 6/22/2015 | 6/24/2015 | Bastion Capital | 176,470 | 138 9000 | 6/16/2015 | Lyall Capital Ltd | Forward | Physical | 6/19/2015 | 176,470 | 136 4931 | 6/24/2015 | Principle Markets Ltd | 176,470 |
| [22'] | Costello Plan | | | | | | | | 6/22/2015 | Lyall Capital Ltd | Forward | Physical | 9/18/2015 | 176,470 | 138 8306 | | | |
| [23] | SVP Plan | NZYMB | 2/26/2015 | 6/1/2015 | 6/3/2015 | Sunrise Brokers | 806,895 | 326 2000 | 6/1/2015 | Allitsen Asset Ltd | Forward | Physical | 6/19/2015 | 806,895 | 324 1403 | 6/3/2015 | Equal Services Ltd | 806,895 |
| [24] | SVP Plan | TDC | 3/6/2015 | 6/19/2015 | 6/23/2015 | Bastion Capital | 2,997,556 | 49 3900 | 6/16/2015 | Gartside Global Ltd | Forward | Physical | 6/19/2015 | 2,997,556 | 50 9474 | 6/23/2015 | Treehurst Ltd | 2,997,556 |
| [24'] | SVP Plan | | | | | | | | 6/19/2015 | Gartside Global Ltd | Forward | Physical | 9/18/2015 | 2,997,556 | 49 3665 | | | |
| [25] | Oaks Group Plan | TRYG | 3/26/2015 | 6/25/2015 | 6/29/2015 | Bastion Capital | 870,430 | 140 7000 | 6/16/2015 | Allitsen Asset Ltd | Forward | Physical | 6/19/2015 | 870,430 | 136 4931 | 6/29/2015 | Neoteric Ltd | 870,430 |
| [25'] | Oaks Group Plan | | | | | | | | 6/25/2015 | Allitsen Asset Ltd | Forward | Physical | 9/18/2015 | 870,430 | 140 6324 | | | |
| [26] | Oaks Group Plan | FLS | 3/27/2015 | 6/10/2015 | 6/12/2015 | Sunrise Brokers | 400,182 | 341 5000 | 6/10/2015 | Gartside Global Ltd | Forward | Physical | 6/19/2015 | 400,182 | 341 4641 | 6/12/2015 | Equal Services Ltd | 400,182 |

CONFIDENTIAL

**Exhibit 3**
**Summary of the Other Analyzed Transactions**

Notes and Sources:

[*]    These are the counterparties for forward contracts and executing IDBs for flex futures

[**]    All contracts were closed before maturity so settlement did not occur

[1]    [C1] per Bloomberg; [A2] - [E2] per MPSKAT00072018, MPSKAT00072198, MPSKAT00072308; [A3] - [G3] per MPSKAT00072018, MPSKAT00072198, MPSKAT00072308; [A4] - [C4] per MPSKAT00073804, MPSKAT00073965; [A5] - [E5] per MPSKAT00083825, MPSKAT00083826; [A6] - [G6] per MPSKAT00083823, MPSKAT00083824; [A7] - [C7] per MPSKAT00084008

[2]    [C1] per Bloomberg; [A2] - [E2] per MPSKAT00181290, MPSKAT00181484, MPSKAT00107292; [A3] - [G3] per MPSKAT00106524, MPSKAT00181574, MPSKAT00108715; [A4] - [C4] per MPSKAT00108619, MPSKAT00182456; [A5] - [E5] per MPSKAT00197588, MPSKAT00197967, MPSKAT00198058; [A6] - [G6] per MPSKAT00197949; [A7] - [C7] per MPSKAT00131461

[3]    [C1] per Bloomberg; [A2] - [E2] per MPSKAT00183834; [A3] - [G3] per MPSKAT00078479-80, MPSKAT00078311-2; [A3] - [G3] per MPSKAT00078479-80, MPSKAT00166249-330; [A4] - [C4] per MPSKAT00079632; [A5] - [E5] per MPSKAT00088281, MPSKAT00088409; [A6] - [G6] per MPSKAT00088411; [A7] - [C7] per MPSKAT00088425

[4]    [C1] per Bloomberg; [A2] - [E2] per MPSKAT00183834; [A4] - [C4] per MPSKAT00213257; [A5] - [E5] per MPSKAT00132514; [A6] - [G6] per MPSKAT00132011; [A7] - [C7] per MPSKAT00132089

[5]    [C1] per Bloomberg; [A2] - [E2] per WH_MDL_00040949, JHVM_0003573; [A3] - [G3] per WH_MDL_00040948; [A4] - [C4] per WH_MDL_00041680; [A5] - [E5] per WH_MDL_00048452; [A6] - [G6] per WH_MDL_00046987; [A7] - [C7] per WH_MDL_00048458

[5']   [C1] per Bloomberg; [A3] - [G3] per WH_MDL_00046991; [A6] - [G6] per WH_MDL_00048454

[6]    [C1] per Bloomberg; [A2] - [E2] per WH_MDL_00039345 and WH_MDL_00136875; [A3] - [G3] per WH_MDL_00039356; [A4] - [C4] per WH_MDL_00040107; [A5] - [E5] per WH_MDL_00048451, WH_MDL_00048528; [A6] - [G6] per WH_MDL_00047001; [A7] - [C7] per WH_MDL_00048457

[6']   [C1] per Bloomberg; [A3] - [G3] per WH_MDL_00046997; [A6] - [G6] per WH_MDL_00048453

[7]    [C1] per Bloomberg; [A2] - [E2] per WH_MDL_00035165, price per WH_MDL_00065520; [A3] - [G3] per WH_MDL_00035144; [A4] - [C4] per WH_MDL_00035342; [A5] - [E5] per WH_MDL_00036481, price per WH_MDL_00036281; [A6] - [G6] per WH_MDL_00036416; [A7] - [C7] per WH_MDL_00036501

[8]    [C1] per Bloomberg; [A2] - [E2] per WH_MDL_00051563-76 and WH_MDL_00049330-9; [A3] - [G3] per WH_MDL_00051563-76; [A4] - [C4] per WH_MDL_00051563-76; [A5] - [E5] per WH_MDL_00047807; [A6] - [G6] per WH_MDL_00051563-76; [A7] - [C7] per WH_MDL_00051563-76

[9]    [C1] per Bloomberg; [A2] - [E2] per KLUGMAN00002146; [A3] - [G3] per KLUGMAN00002147; [A4] - [C4] per KLUGMAN00002150; [A5] - [E5] per KLUGMAN00002163; [A6] - [G6] per KLUGMAN00002155; [A7] - [C7] per KLUGMAN00002165

[9']   [C1] per Bloomberg; [A2] - [E2] per KLUGMAN00002156; [A6] - [G6] per KLUGMAN00002164

[10]   [C1] per Bloomberg; [A2] - [E2] per KLUGMAN00002264, KLUGMAN00002268, KLUGMAN00005189-215; [A3] - [G3] per KLUGMAN00002267, KLUGMAN00005189-215; [A4] - [C4] per KLUGMAN00002270, KLUGMAN00005189-215; [A5] - [E5] per KLUGMAN00002279, KLUGMAN00005189-215; [A6] - [G6] per KLUGMAN00002275, KLUGMAN00005189-215; [A7] - [C7] per KLUGMAN00002283, KLUGMAN00005189-215

[10']  [C1] per Bloomberg; [A3] - [G3] per KLUGMAN00002274, KLUGMAN00005189-215; [A6] - [G6] per KLUGMAN00002281, KLUGMAN00005189-215

[11]   [C1] per Bloomberg; [A2] - [E2] per WH_MDL_00020845; [A3] - [G3] per WH_MDL_00002850; [A4] - [C4] per WH_MDL_00020990; [A5] - [E5] per WH_MDL_00022673; [A6] - [G6] per WH_MDL_00022347; [A7] - [C7] per WH_MDL_00022675

[11']  [C1] per Bloomberg; [A3] - [G3] per WH_MDL_00022344; [A6] - [G6] per WH_MDL_00022674

[12]   [C1] per Bloomberg; [A2] - [E2] per WH_MDL_00029732; [A3] - [G3] per ELYSIUM-03915614; [A4] - [C4] per WH_MDL_00020781; [A5] - [E5] per WH_MDL_00022929; [A6] - [G6] per WH_MDL_00022351; [A7] - [C7] per WH_MDL_00022931

[12']  [C1] per Bloomberg; [A3] - [G3] per WH_MDL_00029807; [A6] - [G6] per WH_MDL_00022930

[13]   [C1] per Bloomberg; [A2] - [E2] per WH_MDL_00020232, WH_MDL_00065568; [A3] - [G3] per WH_MDL_00020216; [A4] - [C4] per WH_MDL_00020284; [A5] - [E5] per WH_MDL_00020494, WH_MDL_00066663; [A6] - [G6] per WH_MDL_00020482; [A7] - [C7] per WH_MDL_00020505

[14]   [C1] per Bloomberg; [A2] - [E2] per WH_MDL_00021596; [A3] - [G3] per WH_MDL_00021597; [A4] - [C4] per WH_MDL_00021631; [A5] - [E5] per WH_MDL_00022874; [A6] - [G6] per WH_MDL_00022875; [A7] - [C7] per WH_MDL_00022878

[15]   [C1] per Bloomberg; [A2] - [E2] per WH_MDL_00021076; [A3] - [G3] per WH_MDL_00021075; [A4] - [C4] per WH_MDL_00021211; [A5] - [E5] per WH_MDL_00022849; [A6] - [G6] per WH_MDL_00022318; [A7] - [C7] per WH_MDL_00022850

[15']  [C1] per Bloomberg; [A3] - [G3] per WH_MDL_00022313; [A6] - [G6] per WH_MDL_00022848

[16]

[17]   [C1] per Bloomberg; [A2] - [E2] per WH_MDL_00020834; [A3] - [G3] per WH_MDL_00020838; [A4] - [C4] per WH_MDL_00020978; [A5] - [E5] per WH_MDL_00021758; [A6] - [G6] per WH_MDL_00021759 with amendment WH_MDL_00022030; [A7] - [C7] per WH_MDL_00021760

[17]   [C1] per Bloomberg; [A2] - [E2] per FWCCAP00001240, FWCCAP00000013, FWCCAP00001243; [A3] - [G3] per FWCCAP00001246; [A4] - [C4] per FWCCAP00001252; [A5] - [E5] per FWCCAP00000011, FWCCAP00001300; [A6] - [G6] per FWCCAP00001301; [A7] - [C7] per FWCCAP00001298, FWCCAP00000990

[18]   [C1] per Bloomberg; [A2] - [E2] per FWCCAP00002055, FWCCAP00000035; [A3] - [G3] per FWCCAP00002057, FWCAAP00000398; [A4] - [C4] per FWCCAP00002111; [A5] - [E5] per FWCCAP00002987, FWCCAP00000006; [A6] - [G6] per FWCCAP00002630, FWCCAP00000299; [A7] - [C7] per FWCCAP00002988

[18']  [C1] per Bloomberg; [A3] - [G3] per FWCCAP00000314, FWCCAP00003011; [A6] - [G6] per FWCCAP00000377, FWCCAP00002990

[19]   [C1] per Bloomberg; [A2] - [E2] per LBR00001998, LBR00000033; [A3] - [G3] per LBR00002002, LBR00000270; [A4] - [C4] per LBR00002034; [A5] - [E5] per LBR00000005, LBR00002616; [A6] - [G6] per LBR00000261, LBR00002587; [A7] - [C7] per LBR00002619

[19']  [C1] per Bloomberg; [A3] - [G3] per LBR00000263, LBR00002597; [A6] - [G6] per LBR00002622

[20]   [C1] per Bloomberg; [A2] - [E2] per LBR00001996, LBR00002028; [A3] - [G3] per LBR00000336; [A4] - [C4] per LBR00002035; [A5] - [E5] per LBR00000011, LBR00002777; [A6] - [G6] per LBR00000330; [A7] - [C7] per LBR00002779

[20']  [C1] per Bloomberg; [A3] - [G3] per LBR00000333; [A6] - [G6] per LBR00000327

[21]   [C1] per Bloomberg; [A2] - [E2] per COSTELLO00000985, COSTELLO00000021; [A3] - [G3] per COSTELLO00000157; [A4] - [C4] per COSTELLO00000994; [A5] - [E5] per COSTELLO00000003; [A6] - [G6] per COSTELLO00000193; [A7] - [C7] per COSTELLO00001542

[21']  [C1] per Bloomberg; [A3] - [G3] per COSTELLO00000184; [A6] - [G6] per COSTELLO00000250

[22]   [C1] per Bloomberg; [A2] - [E2] per COSTELLO00000026, COSTELLO00001070; [A3] - [G3] per COSTELLO00000301; [A4] - [C4] per COSTELLO00001097; [A5] - [E5] per COSTELLO00000002; [A6] - [G6] per COSTELLO00000238; [A7] - [C7] per COSTELLO00000092

[22']  [C1] per Bloomberg; [A3] - [G3] per COSTELLO00000214; [A6] - [G6] per COSTELLO00000262

[23]   [C1] per Bloomberg; [A2] - [E2] per SVP00000930; [A3] - [G3] per SVP00000935; [A4] - [C4] per SVP00000939; [A5] - [E5] per SVP00001323; [A6] - [G6] per SVP00001324; [A7] - [C7] per SVP00001322

[24]   [C1] per Bloomberg; [A2] - [E2] per SVP00000945; [A3] - [G3] per SVP00000946; [A4] - [C4] per SVP00000953; [A5] - [E5] per SVP00001506; [A6] - [G6] per SVP00001473; [A7] - [C7] per SVP00001515

[24']  [C1] per Bloomberg; [A3] - [G3] per SVP00001480; [A6] - [G6] per SVP00001524

[25]   [C1] per Bloomberg; [A2] - [E2] per OAKS00000009; [A3] - [G3] per OAKS00000162; [A4] - [C4] per OAKS00000085-117; [A5] - [E5] per OAKS00000085-117; [A6] - [G6] per OAKS00000216; [A7] - [C7] per OAKS00000085-117

[25']  [C1] per Bloomberg; [A3] - [G3] per OAKS00000222; [A6] - [G6] per OAKS00000246

[26]   [C1] per Bloomberg; [A2] - [E2] per OAKS00000045; [A3] - [G3] per OAKS00000169; [A4] - [C4] per OAKS00000085-117; [A5] - [E5] per OAKS00000027; [A6] - [G6] per OAKS00000202; [A7] - [C7] per OAKS00000085-117

**Exhibit 4**
**Annual General Meeting Dates of Issuers Related to All Bellwether Plan Transactions**

| | Pension Plan | Security Name | Ticker | Equity Purchase Trade Date | AGM Date [32] | Ex-Dividend Date per Bloomberg |
|---|---|---|---|---|---|---|
| [1] | RJM Plan | TDC A/S | TDC DC | 3/7/2013 | 3/7/2013 | 3/8/2013 |
| [1] | RJM Plan | Novo Nordisk A/S - B | NOVOB DC | 3/20/2013 | 3/20/2013 | 3/21/2013 |
| [1] | RJM Plan | Carlsberg A/S - B | CARLB DC | 3/21/2013 | 3/21/2013 | 3/22/2013 |
| [1] | RJM Plan | DSV A/S | DSV DC | 3/21/2013 | 3/21/2013 | 3/22/2013 |
| [1] | RJM Plan | H. Lundbeck A/S | LUN DC | 3/21/2013 | 3/21/2013 | 3/22/2013 |
| [1] | RJM Plan | FLSmidth & Co. A/S | FLS DC | 4/5/2013 | 4/5/2013 | 4/8/2013 |
| [1] | RJM Plan | A.P. Møller Mærsk A/S - A | MAERSKA DC | 4/11/2013 | 4/11/2013 | 4/12/2013 |
| [1] | RJM Plan | A.P. Møller Mærsk A/S - B | MAERSKB DC | 4/11/2013 | 4/11/2013 | 4/12/2013 |
| [1] | RJM Plan | Tryg A/S | TRYG DC | 4/18/2013 | 4/18/2013 | 4/19/2013 |
| [1], [33] | RJM Plan | TDC A/S | TDC DC | 8/7/2013 | 3/7/2013 | 8/8/2013 |
| [1] | RJM Plan | Chr. Hansen Holding A/S | CHR DC | 11/26/2013 | 11/26/2013 | 11/27/2013 |
| [1] | RJM Plan | Chr. Hansen Holding A/S | CHR DC | 11/26/2013 | 11/26/2013 | 11/27/2013 |
| [1] | RJM Plan | Coloplast A/S - B | COLOB DC | 12/5/2013 | 12/5/2013 | 12/6/2013 |
| [2] | RJM Plan | Novozymes A/S - B | NZYMB DC | 2/26/2014 | 2/26/2014 | 2/27/2014 |
| [2] | RJM Plan | TDC A/S | TDC DC | 3/6/2014 | 3/6/2014 | 3/7/2014 |
| [2] | RJM Plan | Danske Bank A/S | DANSKE DC | 3/18/2014 | 3/18/2014 | 3/19/2014 |
| [2] | RJM Plan | Pandora A/S | PNDORA DC | 3/19/2014 | 3/19/2014 | 3/20/2014 |
| [2] | RJM Plan | Carlsberg A/S - B | CARLB DC | 3/20/2014 | 3/20/2014 | 3/21/2014 |
| [2] | RJM Plan | Novo Nordisk A/S - B | NOVOB DC | 3/20/2014 | 3/20/2014 | 3/21/2014 |
| [2] | RJM Plan | A.P. Møller Mærsk A/S - A | MAERSKA DC | 3/31/2014 | 3/31/2014 | 4/1/2014 |
| [2] | RJM Plan | A.P. Møller Mærsk A/S - B | MAERSKB DC | 3/31/2014 | 3/31/2014 | 4/1/2014 |
| [2] | RJM Plan | Tryg A/S | TRYG DC | 4/3/2014 | 4/3/2014 | 4/4/2014 |
| [2], [33] | RJM Plan | Coloplast A/S - B | COLOB DC | 5/8/2014 | 12/4/2014 | 5/9/2014 |
| [2], [33] | RJM Plan | TDC A/S | TDC DC | 8/7/2014 | 3/6/2014 | 8/8/2014 |
| [3] | Bernina Plan | TDC A/S | TDC DC | 3/7/2013 | 3/7/2013 | 3/8/2013 |
| [3] | Bernina Plan | Novo Nordisk A/S - B | NOVOB DC | 3/20/2013 | 3/20/2013 | 3/21/2013 |
| [3] | Bernina Plan | H. Lundbeck A/S | LUN DC | 3/21/2013 | 3/21/2013 | 3/22/2013 |
| [3] | Bernina Plan | Carlsberg A/S - B | CARLB DC | 3/21/2013 | 3/21/2013 | 3/22/2013 |
| [3] | Bernina Plan | DSV A/S | DSV DC | 3/21/2013 | 3/21/2013 | 3/22/2013 |

**Exhibit 4**
**Annual General Meeting Dates of Issuers Related to All Bellwether Plan Transactions**

| | Pension Plan | Security Name | Ticker | Equity Purchase Trade Date | AGM Date [32] | Ex-Dividend Date per Bloomberg |
|---|---|---|---|---|---|---|
| [3] | Bernina Plan | FLSmidth & Co. A/S | FLS DC | 4/5/2013 | 4/5/2013 | 4/8/2013 |
| [3] | Bernina Plan | A.P. Møller Mærsk A/S - A | MAERKSA DC | 4/11/2013 | 4/11/2013 | 4/12/2013 |
| [3] | Bernina Plan | A.P. Møller Mærsk A/S - B | MAERKSB DC | 4/11/2013 | 4/11/2013 | 4/12/2013 |
| [3] | Bernina Plan | Tryg A/S | TRYG DC | 4/18/2013 | 4/18/2013 | 4/19/2013 |
| [4], [33] | Bernina Plan | TDC A/S | TDC DC | 8/7/2013 | 3/7/2013 | 8/8/2013 |
| [5] | Bernina Plan | Chr. Hansen Holding A/S | CHR DC | 11/26/2013 | 11/26/2013 | 11/27/2013 |
| [6] | Bernina Plan | Coloplast A/S - B | COLOB DC | 12/5/2013 | 12/5/2013 | 12/6/2013 |
| [7] | Bernina Plan | Novozymes A/S - B | NZYMB DC | 2/26/2014 | 2/26/2014 | 2/27/2014 |
| [7] | Bernina Plan | TDC A/S | TDC DC | 3/6/2014 | 3/6/2014 | 3/7/2014 |
| [7] | Bernina Plan | A.P. Møller Mærsk A/S - A | MAERKSA DC | 3/31/2014 | 3/31/2014 | 4/1/2014 |
| [7] | Bernina Plan | A.P. Møller Mærsk A/S - B | MAERKSB DC | 3/31/2014 | 3/31/2014 | 4/1/2014 |
| [7] | Bernina Plan | Carlsberg A/S - B | CARLB DC | 3/20/2014 | 3/20/2014 | 3/21/2014 |
| [7] | Bernina Plan | Danske Bank A/S | DANSKE DC | 3/18/2014 | 3/18/2014 | 3/19/2014 |
| [7] | Bernina Plan | Novo Nordisk A/S - B | NOVOB DC | 3/20/2014 | 3/20/2014 | 3/21/2014 |
| [7] | Bernina Plan | Pandora A/S | PNDORA DC | 3/19/2014 | 3/19/2014 | 3/20/2014 |
| [7] | Bernina Plan | Tryg A/S | TRYG DC | 4/3/2014 | 4/3/2014 | 4/4/2014 |
| [8], [33] | Bernina Plan | Coloplast A/S - B | COLOB DC | 5/8/2014 | 12/4/2014 | 5/9/2014 |
| [9], [33] | Bernina Plan | TDC A/S | TDC DC | 8/7/2014 | 3/6/2014 | 8/8/2014 |
| [10], [33] | Delvian Plan | TDC A/S | TDC DC | 8/8/2012 | 3/8/2012 | 8/9/2012 |
| [10] | Delvian Plan | Chr. Hansen Holding A/S | CHR DC | 11/27/2012 | 11/27/2012 | 11/28/2012 |
| [10] | Delvian Plan | Coloplast A/S - B | COLOB DC | 12/11/2012 | 12/11/2012 | 12/12/2012 |
| [10] | Delvian Plan | Novozymes A/S - B | NZYMB DC | 2/28/2013 | 2/28/2013 | 3/1/2013 |
| [10] | Delvian Plan | TDC A/S | TDC DC | 3/7/2013 | 3/7/2013 | 3/8/2013 |
| [10] | Delvian Plan | Novo Nordisk A/S - B | NOVOB DC | 3/20/2013 | 3/20/2013 | 3/21/2013 |
| [10] | Delvian Plan | Carlsberg A/S - B | CARLB DC | 3/21/2013 | 3/21/2013 | 3/22/2013 |
| [10] | Delvian Plan | DSV A/S | DSV DC | 3/21/2013 | 3/21/2013 | 3/22/2013 |
| [10] | Delvian Plan | H. Lundbeck A/S | LUN DC | 3/21/2013 | 3/21/2013 | 3/22/2013 |
| [10] | Delvian Plan | FLSmidth & Co. A/S | FLS DC | 4/5/2013 | 4/5/2013 | 4/8/2013 |
| [10] | Delvian Plan | A.P. Møller Mærsk A/S - A | MAERKSA DC | 4/11/2013 | 4/11/2013 | 4/12/2013 |

**Exhibit 4**
**Annual General Meeting Dates of Issuers Related to All Bellwether Plan Transactions**

| | Pension Plan | Security Name | Ticker | Equity Purchase Trade Date | AGM Date [32] | Ex-Dividend Date per Bloomberg |
|---|---|---|---|---|---|---|
| [10] | Delvian Plan | A.P. Møller Mærsk A/S - B | MAERKSB DC | 4/11/2013 | 4/11/2013 | 4/12/2013 |
| [10] | Delvian Plan | Tryg A/S | TRYG DC | 4/18/2013 | 4/18/2013 | 4/19/2013 |
| [10], [33] | Delvian Plan | TDC A/S | TDC DC | 8/7/2013 | 3/7/2013 | 8/8/2013 |
| [10] | Delvian Plan | Chr. Hansen Holding A/S | CHR DC | 11/26/2013 | 11/26/2013 | 11/27/2013 |
| [10] | Delvian Plan | Coloplast A/S - B | COLOB DC | 12/5/2013 | 12/5/2013 | 12/6/2013 |
| [11] | Delvian Plan | Novozymes A/S - B | NZYMB DC | 2/26/2014 | 2/26/2014 | 2/27/2014 |
| [11] | Delvian Plan | TDC A/S | TDC DC | 3/6/2014 | 3/6/2014 | 3/7/2014 |
| [11] | Delvian Plan | Danske Bank A/S | DANSKE DC | 3/18/2014 | 3/18/2014 | 3/19/2014 |
| [11] | Delvian Plan | Pandora A/S | PNDORA DC | 3/19/2014 | 3/19/2014 | 3/20/2014 |
| [11] | Delvian Plan | Carlsberg A/S - B | CARLB DC | 3/20/2014 | 3/20/2014 | 3/21/2014 |
| [11] | Delvian Plan | Novo Nordisk A/S - B | NOVOB DC | 3/20/2014 | 3/20/2014 | 3/21/2014 |
| [11] | Delvian Plan | A.P. Møller Mærsk A/S - A | MAERKSA DC | 3/31/2014 | 3/31/2014 | 4/1/2014 |
| [11] | Delvian Plan | A.P. Møller Mærsk A/S - B | MAERKSB DC | 3/31/2014 | 3/31/2014 | 4/1/2014 |
| [11] | Delvian Plan | Tryg A/S | TRYG DC | 4/3/2014 | 4/3/2014 | 4/4/2014 |
| [11], [33] | Delvian Plan | Coloplast A/S - B | COLOB DC | 5/8/2014 | 12/4/2014 | 5/9/2014 |
| [11], [33] | Delvian Plan | TDC A/S | TDC DC | 8/7/2014 | 3/6/2014 | 8/8/2014 |
| [12], [33] | Basalt Plan | TDC A/S | TDC DC | 8/7/2014 | 3/6/2014 | 8/8/2014 |
| [13] | Basalt Plan | A.P. Møller Mærsk A/S - A | MAERSKA DC | 3/30/2015 | 3/30/2015 | 3/31/2015 |
| [13] | Basalt Plan | A.P. Møller Mærsk A/S - B | MAERSKB DC | 3/30/2015 | 3/30/2015 | 3/31/2015 |
| [13] | Basalt Plan | Novo Nordisk A/S - B | NOVOB DC | 3/19/2015 | 3/19/2015 | 3/20/2015 |
| [13] | Basalt Plan | Carlsberg A/S - B | CARLB DC | 3/26/2015 | 3/26/2015 | 3/27/2015 |
| [13] | Basalt Plan | Danske Bank A/S | DANSKE DC | 3/18/2015 | 3/18/2015 | 3/19/2015 |
| [13] | Basalt Plan | DSV A/S | DSV DC | 3/12/2015 | 3/12/2015 | 3/13/2015 |
| [13] | Basalt Plan | FLSmidth & Co. A/S | FLS DC | 3/26/2015 | 3/26/2015 | 3/27/2015 |
| [13] | Basalt Plan | Novozymes A/S - B | NZYMB DC | 2/25/2015 | 2/25/2015 | 2/26/2015 |
| [13] | Basalt Plan | TDC A/S | TDC DC | 3/5/2015 | 3/5/2015 | 3/6/2015 |
| [13] | Basalt Plan | Tryg A/S | TRYG DC | 3/25/2015 | 3/25/2015 | 3/26/2015 |
| [13] | Basalt Plan | GN Store Nord AS | GN DC | 3/19/2015 | 3/19/2015 | 3/20/2015 |
| [13] | Basalt Plan | Pandora A/S | PNDORA DC | 3/18/2015 | 3/18/2015 | 3/19/2015 |

**Exhibit 4**
**Annual General Meeting Dates of Issuers Related to All Bellwether Plan Transactions**

|  | Pension Plan | Security Name | Ticker | Equity Purchase Trade Date | AGM Date [32] | Ex-Dividend Date per Bloomberg |
|---|---|---|---|---|---|---|
| [13] | Basalt Plan | Vestas Wind Systems A/S | VWS DC | 3/30/2015 | 3/30/2015 | 3/31/2015 |
| [13], [14] | Basalt Plan | Auriga Industries A/S | AURIB DC | 6/11/2015 | 6/11/2015 | 6/12/2015 |
| [13], [33] | Basalt Plan | Coloplast A/S - B | COLOB DC | 5/6/2015 | 12/9/2015 | 5/7/2015 |
| [13] | Basalt Plan | TDC A/S | TDC DC | 8/7/2015 | 3/5/2015 | 8/10/2015 |
| [15], [33] | Avanix Plan | TDC A/S | TDC DC | 8/7/2014 | 3/6/2014 | 8/8/2014 |
| [16] | Avanix Plan | Novozymes A/S - B | NZYMB DC | 2/25/2015 | 2/25/2015 | 2/26/2015 |
| [16] | Avanix Plan | TDC A/S | TDC DC | 3/5/2015 | 3/5/2015 | 3/6/2015 |
| [16] | Avanix Plan | DSV A/S | DSV DC | 3/12/2015 | 3/12/2015 | 3/13/2015 |
| [16] | Avanix Plan | Pandora A/S | PNDORA DC | 3/18/2015 | 3/18/2015 | 3/19/2015 |
| [16] | Avanix Plan | Danske Bank A/S | DANSKE DC | 3/18/2015 | 3/18/2015 | 3/19/2015 |
| [16] | Avanix Plan | GN Store Nord AS | GN DC | 3/19/2015 | 3/19/2015 | 3/20/2015 |
| [16] | Avanix Plan | Novo Nordisk A/S - B | NOVOB DC | 3/19/2015 | 3/19/2015 | 3/20/2015 |
| [16] | Avanix Plan | Tryg A/S | TRYG DC | 3/25/2015 | 3/25/2015 | 3/26/2015 |
| [16] | Avanix Plan | FLSmidth & Co. A/S | FLS DC | 3/26/2015 | 3/26/2015 | 3/27/2015 |
| [16] | Avanix Plan | Carlsberg A/S - B | CARLB DC | 3/26/2015 | 3/26/2015 | 3/27/2015 |
| [16] | Avanix Plan | A.P. Møller Mærsk A/S - A | MAERSKA DC | 3/30/2015 | 3/30/2015 | 3/31/2015 |
| [16] | Avanix Plan | Vestas Wind Systems A/S | VWS DC | 3/30/2015 | 3/30/2015 | 3/31/2015 |
| [16] | Avanix Plan | A.P. Møller Mærsk A/S - B | MAERSKB DC | 3/30/2015 | 3/30/2015 | 3/31/2015 |
| [16], [33] | Avanix Plan | Coloplast A/S - B | COLOB DC | 5/6/2015 | 12/9/2015 | 5/7/2015 |
| [16], [14] | Avanix Plan | Auriga Industries A/S | AURIB DC | 6/11/2015 | 6/11/2015 | 6/12/2015 |
| [16], [33] | Avanix Plan | TDC A/S | TDC DC | 8/7/2015 | 3/5/2015 | 8/10/2015 |
| [17] | Stor Plan | Novozymes A/S - B | NZYMB DC | 2/25/2015 | 2/25/2015 | 2/26/2015 |
| [17] | Stor Plan | TDC A/S | TDC DC | 3/5/2015 | 3/5/2015 | 3/6/2015 |
| [17] | Stor Plan | DSV A/S | DSV DC | 3/12/2015 | 3/12/2015 | 3/13/2015 |
| [17] | Stor Plan | Pandora A/S | PNDORA DC | 3/18/2015 | 3/18/2015 | 3/19/2015 |
| [17] | Stor Plan | Danske Bank A/S | DANSKE DC | 3/18/2015 | 3/18/2015 | 3/19/2015 |
| [17] | Stor Plan | Novo Nordisk A/S - B | NOVOB DC | 3/19/2015 | 3/19/2015 | 3/20/2015 |
| [17] | Stor Plan | GN Store Nord AS | GN DC | 3/19/2015 | 3/19/2015 | 3/20/2015 |
| [17] | Stor Plan | Tryg A/S | TRYG DC | 3/25/2015 | 3/25/2015 | 3/26/2015 |

**Exhibit 4**
**Annual General Meeting Dates of Issuers Related to All Bellwether Plan Transactions**

| | Pension Plan | Security Name | Ticker | Equity Purchase Trade Date | AGM Date [32] | Ex-Dividend Date per Bloomberg |
|---|---|---|---|---|---|---|
| [17] | Stor Plan | Carlsberg A/S - B | CARLB DC | 3/26/2015 | 3/26/2015 | 3/27/2015 |
| [17] | Stor Plan | FLSmidth & Co. A/S | FLS DC | 3/26/2015 | 3/26/2015 | 3/27/2015 |
| [17] | Stor Plan | A.P. Møller Mærsk A/S - B | MAERSKB DC | 3/30/2015 | 3/30/2015 | 3/31/2015 |
| [17] | Stor Plan | Vestas Wind Systems A/S | VWS DC | 3/30/2015 | 3/30/2015 | 3/31/2015 |
| [17] | Stor Plan | A.P. Møller Mærsk A/S - A | MAERSKA DC | 3/30/2015 | 3/30/2015 | 3/31/2015 |
| [17], [33] | Stor Plan | Coloplast A/S - B | COLOB DC | 5/6/2015 | 12/9/2015 | 5/7/2015 |
| [17], [14] | Stor Plan | Auriga Industries A/S | AURIB DC | 6/11/2015 | 6/11/2015 | 6/12/2015 |
| [17], [33] | Stor Plan | TDC A/S | TDC DC | 8/7/2015 | 3/5/2015 | 8/10/2015 |
| [18], [33] | Roadcraft Plan | TDC A/S | TDC DC | 8/7/2014 | 3/6/2014 | 8/8/2014 |
| [19] | Roadcraft Plan | A.P. Møller Mærsk A/S - A | MAERSKA DC | 3/30/2015 | 3/30/2015 | 3/31/2015 |
| [19] | Roadcraft Plan | A.P. Møller Mærsk A/S - B | MAERSKB DC | 3/30/2015 | 3/30/2015 | 3/31/2015 |
| [19] | Roadcraft Plan | Novo Nordisk A/S - B | NOVOB DC | 3/19/2015 | 3/19/2015 | 3/20/2015 |
| [19] | Roadcraft Plan | Carlsberg A/S - B | CARLB DC | 3/26/2015 | 3/26/2015 | 3/27/2015 |
| [19] | Roadcraft Plan | Danske Bank A/S | DANSKE DC | 3/18/2015 | 3/18/2015 | 3/19/2015 |
| [19] | Roadcraft Plan | DSV A/S | DSV DC | 3/12/2015 | 3/12/2015 | 3/13/2015 |
| [19] | Roadcraft Plan | FLSmidth & Co. A/S | FLS DC | 3/26/2015 | 3/26/2015 | 3/27/2015 |
| [19] | Roadcraft Plan | Novozymes A/S - B | NZYMB DC | 2/25/2015 | 2/25/2015 | 2/26/2015 |
| [19] | Roadcraft Plan | TDC A/S | TDC DC | 3/5/2015 | 3/5/2015 | 3/6/2015 |
| [19] | Roadcraft Plan | Tryg A/S | TRYG DC | 3/25/2015 | 3/25/2015 | 3/26/2015 |
| [19] | Roadcraft Plan | GN Store Nord AS | GN DC | 3/19/2015 | 3/19/2015 | 3/20/2015 |
| [19] | Roadcraft Plan | Pandora A/S | PNDORA DC | 3/18/2015 | 3/18/2015 | 3/19/2015 |
| [19] | Roadcraft Plan | Vestas Wind Systems A/S | VWS DC | 3/30/2015 | 3/30/2015 | 3/31/2015 |
| [19], [33] | Roadcraft Plan | Coloplast A/S - B | COLOB DC | 5/6/2015 | 12/9/2015 | 5/7/2015 |
| [20] | Bareroot Plan | Novozymes A/S - B | NZYMB DC | 2/25/2015 | 2/25/2015 | 2/26/2015 |
| [20] | Bareroot Plan | TDC A/S | TDC DC | 3/5/2015 | 3/5/2015 | 3/6/2015 |
| [20] | Bareroot Plan | DSV A/S | DSV DC | 3/12/2015 | 3/12/2015 | 3/13/2015 |
| [20] | Bareroot Plan | Danske Bank A/S | DANSKE DC | 3/18/2015 | 3/18/2015 | 3/19/2015 |
| [20] | Bareroot Plan | Pandora A/S | PNDORA DC | 3/18/2015 | 3/18/2015 | 3/19/2015 |
| [20] | Bareroot Plan | Novo Nordisk A/S - B | NOVOB DC | 3/19/2015 | 3/19/2015 | 3/20/2015 |

**Exhibit 4**
**Annual General Meeting Dates of Issuers Related to All Bellwether Plan Transactions**

| | Pension Plan | Security Name | Ticker | Equity Purchase Trade Date | AGM Date [32] | Ex-Dividend Date per Bloomberg |
|---|---|---|---|---|---|---|
| [20] | Bareroot Plan | GN Store Nord AS | GN DC | 3/19/2015 | 3/19/2015 | 3/20/2015 |
| [20] | Bareroot Plan | Tryg A/S | TRYG DC | 3/25/2015 | 3/25/2015 | 3/26/2015 |
| [20] | Bareroot Plan | Carlsberg A/S - B | CARLB DC | 3/26/2015 | 3/26/2015 | 3/27/2015 |
| [20] | Bareroot Plan | FLSmidth & Co. A/S | FLS DC | 3/26/2015 | 3/26/2015 | 3/27/2015 |
| [20] | Bareroot Plan | Vestas Wind Systems A/S | VWS DC | 3/30/2015 | 3/30/2015 | 3/31/2015 |
| [20] | Bareroot Plan | A.P. Møller Mærsk A/S - A | MAERSKA DC | 3/30/2015 | 3/30/2015 | 3/31/2015 |
| [20] | Bareroot Plan | A.P. Møller Mærsk A/S - B | MAERSKB DC | 3/30/2015 | 3/30/2015 | 3/31/2015 |
| [20], [33] | Bareroot Plan | Coloplast A/S - B | COLOB DC | 5/6/2015 | 12/9/2015 | 5/7/2015 |
| [20], [14] | Bareroot Plan | Auriga Industries A/S | AURIB DC | 6/11/2015 | 6/11/2015 | 6/12/2015 |
| [20], [33] | Bareroot Plan | TDC A/S | TDC DC | 8/7/2015 | 3/5/2015 | 8/10/2015 |
| [21] | Loggerhead Plan | Novozymes A/S - B | NZYMB DC | 2/25/2015 | 2/25/2015 | 2/26/2015 |
| [21] | Loggerhead Plan | TDC A/S | TDC DC | 3/5/2015 | 3/5/2015 | 3/6/2015 |
| [21] | Loggerhead Plan | DSV A/S | DSV DC | 3/12/2015 | 3/12/2015 | 3/13/2015 |
| [21] | Loggerhead Plan | Pandora A/S | PNDORA DC | 3/18/2015 | 3/18/2015 | 3/19/2015 |
| [21] | Loggerhead Plan | Danske Bank A/S | DANSKE DC | 3/18/2015 | 3/18/2015 | 3/19/2015 |
| [21] | Loggerhead Plan | Novo Nordisk A/S - B | NOVOB DC | 3/19/2015 | 3/19/2015 | 3/20/2015 |
| [21] | Loggerhead Plan | GN Store Nord AS | GN DC | 3/19/2015 | 3/19/2015 | 3/20/2015 |
| [21] | Loggerhead Plan | Tryg A/S | TRYG DC | 3/25/2015 | 3/25/2015 | 3/26/2015 |
| [21] | Loggerhead Plan | Carlsberg A/S - B | CARLB DC | 3/26/2015 | 3/26/2015 | 3/27/2015 |
| [21] | Loggerhead Plan | FLSmidth & Co. A/S | FLS DC | 3/26/2015 | 3/26/2015 | 3/27/2015 |
| [21] | Loggerhead Plan | A.P. Møller Mærsk A/S - B | MAERSKB DC | 3/30/2015 | 3/30/2015 | 3/31/2015 |
| [21] | Loggerhead Plan | Vestas Wind Systems A/S | VWS DC | 3/30/2015 | 3/30/2015 | 3/31/2015 |
| [21] | Loggerhead Plan | A.P. Møller Mærsk A/S - A | MAERSKA DC | 3/30/2015 | 3/30/2015 | 3/31/2015 |
| [21], [33] | Loggerhead Plan | Coloplast A/S - B | COLOB DC | 5/6/2015 | 12/9/2015 | 5/7/2015 |
| [21], [14] | Loggerhead Plan | Auriga Industries A/S | AURIB DC | 6/11/2015 | 6/11/2015 | 6/12/2015 |
| [21], [33] | Loggerhead Plan | TDC A/S | TDC DC | 8/7/2015 | 3/5/2015 | 8/10/2015 |
| [22] | FWC Capital Plan | Chr. Hansen Holding A/S | CHR DC | 11/27/2014 | 11/27/2014 | 11/28/2014 |
| [22] | FWC Capital Plan | Coloplast A/S - B | COLOB DC | 12/4/2014 | 12/4/2014 | 12/5/2014 |
| [23] | FWC Capital Plan | Novozymes A/S - B | NZYMB DC | 2/25/2015 | 2/25/2015 | 2/26/2015 |

**Exhibit 4**
**Annual General Meeting Dates of Issuers Related to All Bellwether Plan Transactions**

| | Pension Plan | Security Name | Ticker | Equity Purchase Trade Date | AGM Date [32] | Ex-Dividend Date per Bloomberg |
|---|---|---|---|---|---|---|
| [23] | FWC Capital Plan | TDC A/S | TDC DC | 3/5/2015 | 3/5/2015 | 3/6/2015 |
| [23] | FWC Capital Plan | DSV A/S | DSV DC | 3/12/2015 | 3/12/2015 | 3/13/2015 |
| [23] | FWC Capital Plan | Danske Bank A/S | DANSKE DC | 3/18/2015 | 3/18/2015 | 3/19/2015 |
| [23] | FWC Capital Plan | Pandora A/S | PNDORA DC | 3/18/2015 | 3/18/2015 | 3/19/2015 |
| [23] | FWC Capital Plan | Novo Nordisk A/S - B | NOVOB DC | 3/19/2015 | 3/19/2015 | 3/20/2015 |
| [23] | FWC Capital Plan | GN Store Nord AS | GN DC | 3/19/2015 | 3/19/2015 | 3/20/2015 |
| [23] | FWC Capital Plan | Tryg A/S | TRYG DC | 3/25/2015 | 3/25/2015 | 3/26/2015 |
| [23] | FWC Capital Plan | FLSmidth & Co. A/S | FLS DC | 3/26/2015 | 3/26/2015 | 3/27/2015 |
| [23] | FWC Capital Plan | Carlsberg A/S - B | CARLB DC | 3/26/2015 | 3/26/2015 | 3/27/2015 |
| [23] | FWC Capital Plan | Vestas Wind Systems A/S | VWS DC | 3/30/2015 | 3/30/2015 | 3/31/2015 |
| [23] | FWC Capital Plan | A.P. Møller Mærsk A/S - B | MAERSKB DC | 3/30/2015 | 3/30/2015 | 3/31/2015 |
| [23] | FWC Capital Plan | A.P. Møller Mærsk A/S - A | MAERSKA DC | 3/30/2015 | 3/30/2015 | 3/31/2015 |
| [23], [33] | FWC Capital Plan | Coloplast A/S - B | COLOB DC | 5/6/2015 | 12/9/2015 | 5/7/2015 |
| [23], [14] | FWC Capital Plan | Auriga Industries A/S | AURIB DC | 6/11/2015 | 6/11/2015 | 6/12/2015 |
| [23], [33] | FWC Capital Plan | TDC A/S | TDC DC | 8/7/2015 | 3/5/2015 | 8/10/2015 |
| [24] | LBR Capital Plan | Chr. Hansen Holding A/S | CHR DC | 11/27/2014 | 11/27/2014 | 11/28/2014 |
| [24] | LBR Capital Plan | Coloplast A/S - B | COLOB DC | 12/4/2014 | 12/4/2014 | 12/5/2014 |
| [25] | LBR Capital Plan | Novozymes A/S - B | NZYMB DC | 2/25/2015 | 2/25/2015 | 2/26/2015 |
| [25] | LBR Capital Plan | TDC A/S | TDC DC | 3/5/2015 | 3/5/2015 | 3/6/2015 |
| [25] | LBR Capital Plan | DSV A/S | DSV DC | 3/12/2015 | 3/12/2015 | 3/13/2015 |
| [25] | LBR Capital Plan | Danske Bank A/S | DANSKE DC | 3/18/2015 | 3/18/2015 | 3/19/2015 |
| [25] | LBR Capital Plan | Pandora A/S | PNDORA DC | 3/18/2015 | 3/18/2015 | 3/19/2015 |
| [25] | LBR Capital Plan | Novo Nordisk A/S - B | NOVOB DC | 3/19/2015 | 3/19/2015 | 3/20/2015 |
| [25] | LBR Capital Plan | GN Store Nord AS | GN DC | 3/19/2015 | 3/19/2015 | 3/20/2015 |
| [25] | LBR Capital Plan | Tryg A/S | TRYG DC | 3/25/2015 | 3/25/2015 | 3/26/2015 |
| [25] | LBR Capital Plan | FLSmidth & Co. A/S | FLS DC | 3/26/2015 | 3/26/2015 | 3/27/2015 |
| [25] | LBR Capital Plan | Carlsberg A/S - B | CARLB DC | 3/26/2015 | 3/26/2015 | 3/27/2015 |
| [25] | LBR Capital Plan | Vestas Wind Systems A/S | VWS DC | 3/30/2015 | 3/30/2015 | 3/31/2015 |
| [25] | LBR Capital Plan | A.P. Møller Mærsk A/S - B | MAERSKB DC | 3/30/2015 | 3/30/2015 | 3/31/2015 |

CONFIDENTIAL

**Exhibit 4**
**Annual General Meeting Dates of Issuers Related to All Bellwether Plan Transactions**

|  | Pension Plan | Security Name | Ticker | Equity Purchase Trade Date | AGM Date [32] | Ex-Dividend Date per Bloomberg |
|---|---|---|---|---|---|---|
| [25] | LBR Capital Plan | A.P. Møller Mærsk A/S - A | MAERSKA DC | 3/30/2015 | 3/30/2015 | 3/31/2015 |
| [25], [33] | LBR Capital Plan | Coloplast A/S - B | COLOB DC | 5/6/2015 | 12/9/2015 | 5/7/2015 |
| [25], [14] | LBR Capital Plan | Auriga Industries A/S | AURIB DC | 6/11/2015 | 6/11/2015 | 6/12/2015 |
| [25], [33] | LBR Capital Plan | TDC A/S | TDC DC | 8/7/2015 | 3/5/2015 | 8/10/2015 |
| [26] | Costello Plan | Novozymes A/S - B | NZYMB DC | 2/25/2015 | 2/25/2015 | 2/26/2015 |
| [26] | Costello Plan | TDC A/S | TDC DC | 3/5/2015 | 3/5/2015 | 3/6/2015 |
| [26] | Costello Plan | DSV A/S | DSV DC | 3/12/2015 | 3/12/2015 | 3/13/2015 |
| [26] | Costello Plan | Danske Bank A/S | DANSKE DC | 3/18/2015 | 3/18/2015 | 3/19/2015 |
| [26] | Costello Plan | Pandora A/S | PNDORA DC | 3/18/2015 | 3/18/2015 | 3/19/2015 |
| [26] | Costello Plan | GN Store Nord AS | GN DC | 3/19/2015 | 3/19/2015 | 3/20/2015 |
| [26] | Costello Plan | Novo Nordisk A/S - B | NOVOB DC | 3/19/2015 | 3/19/2015 | 3/20/2015 |
| [26] | Costello Plan | Tryg A/S | TRYG DC | 3/25/2015 | 3/25/2015 | 3/26/2015 |
| [26] | Costello Plan | FLSmidth & Co. A/S | FLS DC | 3/26/2015 | 3/26/2015 | 3/27/2015 |
| [26] | Costello Plan | Carlsberg A/S - B | CARLB DC | 3/26/2015 | 3/26/2015 | 3/27/2015 |
| [26] | Costello Plan | Vestas Wind Systems A/S | VWS DC | 3/30/2015 | 3/30/2015 | 3/31/2015 |
| [26] | Costello Plan | A.P. Møller Mærsk A/S - B | MAERSKB DC | 3/30/2015 | 3/30/2015 | 3/31/2015 |
| [26] | Costello Plan | A.P. Møller Mærsk A/S - A | MAERSKA DC | 3/30/2015 | 3/30/2015 | 3/31/2015 |
| [26], [33] | Costello Plan | Coloplast A/S - B | COLOB DC | 5/6/2015 | 12/9/2015 | 5/7/2015 |
| [26], [14] | Costello Plan | Auriga Industries A/S | AURIB DC | 6/11/2015 | 6/11/2015 | 6/12/2015 |
| [26], [33] | Costello Plan | TDC A/S | TDC DC | 8/7/2015 | 3/5/2015 | 8/10/2015 |
| [27] | Proper Pacific Plan | Chr. Hansen Holding A/S | CHR DC | 11/27/2014 | 11/27/2014 | 11/28/2014 |
| [27] | Proper Pacific Plan | Coloplast A/S - B | COLOB DC | 12/4/2014 | 12/4/2014 | 12/5/2014 |
| [28] | Proper Pacific Plan | Novozymes A/S - B | NZYMB DC | 2/25/2015 | 2/25/2015 | 2/26/2015 |
| [28] | Proper Pacific Plan | TDC A/S | TDC DC | 3/5/2015 | 3/5/2015 | 3/6/2015 |
| [28] | Proper Pacific Plan | DSV A/S | DSV DC | 3/12/2015 | 3/12/2015 | 3/13/2015 |
| [28] | Proper Pacific Plan | Danske Bank A/S | DANSKE DC | 3/18/2015 | 3/18/2015 | 3/19/2015 |
| [28] | Proper Pacific Plan | Pandora A/S | PNDORA DC | 3/18/2015 | 3/18/2015 | 3/19/2015 |
| [28] | Proper Pacific Plan | GN Store Nord AS | GN DC | 3/19/2015 | 3/19/2015 | 3/20/2015 |
| [28] | Proper Pacific Plan | Novo Nordisk A/S - B | NOVOB DC | 3/19/2015 | 3/19/2015 | 3/20/2015 |

**Exhibit 4**
**Annual General Meeting Dates of Issuers Related to All Bellwether Plan Transactions**

| | Pension Plan | Security Name | Ticker | Equity Purchase Trade Date | AGM Date [32] | Ex-Dividend Date per Bloomberg |
|---|---|---|---|---|---|---|
| [28] | Proper Pacific Plan | Tryg A/S | TRYG DC | 3/25/2015 | 3/25/2015 | 3/26/2015 |
| [28] | Proper Pacific Plan | Carlsberg A/S - B | CARLB DC | 3/26/2015 | 3/26/2015 | 3/27/2015 |
| [28] | Proper Pacific Plan | FLSmidth & Co. A/S | FLS DC | 3/26/2015 | 3/26/2015 | 3/27/2015 |
| [28] | Proper Pacific Plan | A.P. Møller Mærsk A/S - A | MAERKSA DC | 3/30/2015 | 3/30/2015 | 3/31/2015 |
| [28] | Proper Pacific Plan | A.P. Møller Mærsk A/S - B | MAERKSB DC | 3/30/2015 | 3/30/2015 | 3/31/2015 |
| [28] | Proper Pacific Plan | Vestas Wind Systems A/S | VWS DC | 3/30/2015 | 3/30/2015 | 3/31/2015 |
| [28], [33] | Proper Pacific Plan | Coloplast A/S - B | COLOB DC | 5/6/2015 | 12/9/2015 | 5/7/2015 |
| [28], [14] | Proper Pacific Plan | Auriga Industries A/S | AURIB DC | 6/11/2015 | 6/11/2015 | 6/12/2015 |
| [28] | Proper Pacific Plan | TDC A/S | TDC DC | 8/7/2015 | 3/5/2015 | 8/10/2015 |
| [29] | SVP Plan | Novozymes A/S - B | NZYMB DC | 2/25/2015 | 2/25/2015 | 2/26/2015 |
| [29] | SVP Plan | TDC A/S | TDC DC | 3/5/2015 | 3/5/2015 | 3/6/2015 |
| [29] | SVP Plan | DSV A/S | DSV DC | 3/12/2015 | 3/12/2015 | 3/13/2015 |
| [29] | SVP Plan | Danske Bank A/S | DANSKE DC | 3/18/2015 | 3/18/2015 | 3/19/2015 |
| [29] | SVP Plan | Pandora A/S | PNDORA DC | 3/18/2015 | 3/18/2015 | 3/19/2015 |
| [29] | SVP Plan | Novo Nordisk A/S - B | NOVOB DC | 3/19/2015 | 3/19/2015 | 3/20/2015 |
| [29] | SVP Plan | GN Store Nord AS | GN DC | 3/19/2015 | 3/19/2015 | 3/20/2015 |
| [29] | SVP Plan | Tryg A/S | TRYG DC | 3/25/2015 | 3/25/2015 | 3/26/2015 |
| [29] | SVP Plan | FLSmidth & Co. A/S | FLS DC | 3/26/2015 | 3/26/2015 | 3/27/2015 |
| [29] | SVP Plan | Carlsberg A/S - B | CARLB DC | 3/26/2015 | 3/26/2015 | 3/27/2015 |
| [29] | SVP Plan | Vestas Wind Systems A/S | VWS DC | 3/30/2015 | 3/30/2015 | 3/31/2015 |
| [29] | SVP Plan | A.P. Møller Mærsk A/S - B | MAERSKB DC | 3/30/2015 | 3/30/2015 | 3/31/2015 |
| [29] | SVP Plan | A.P. Møller Mærsk A/S - A | MAERSKA DC | 3/30/2015 | 3/30/2015 | 3/31/2015 |
| [29], [33] | SVP Plan | Coloplast A/S - B | COLOB DC | 5/6/2015 | 12/9/2015 | 5/7/2015 |
| [29], [14] | SVP Plan | Auriga Industries A/S | AURIB DC | 6/11/2015 | 6/11/2015 | 6/12/2015 |
| [29], [33] | SVP Plan | TDC A/S | TDC DC | 8/7/2015 | 3/5/2015 | 8/10/2015 |
| [30] | Oaks Group Plan | Chr. Hansen Holding A/S | CHR DC | 11/27/2014 | 11/27/2014 | 11/28/2014 |
| [30] | Oaks Group Plan | Coloplast A/S - B | COLOB DC | 12/4/2014 | 12/4/2014 | 12/5/2014 |
| [31] | Oaks Group Plan | Novozymes A/S - B | NZYMB DC | 2/25/2015 | 2/25/2015 | 2/26/2015 |
| [31] | Oaks Group Plan | TDC A/S | TDC DC | 3/5/2015 | 3/5/2015 | 3/6/2015 |

**Exhibit 4**
**Annual General Meeting Dates of Issuers Related to All Bellwether Plan Transactions**

| | Pension Plan | Security Name | Ticker | Equity Purchase Trade Date | AGM Date [32] | Ex-Dividend Date per Bloomberg |
|---|---|---|---|---|---|---|
| [31] | Oaks Group Plan | DSV A/S | DSV DC | 3/12/2015 | 3/12/2015 | 3/13/2015 |
| [31] | Oaks Group Plan | Danske Bank A/S | DANSKE DC | 3/18/2015 | 3/18/2015 | 3/19/2015 |
| [31] | Oaks Group Plan | Pandora A/S | PNDORA DC | 3/18/2015 | 3/18/2015 | 3/19/2015 |
| [31] | Oaks Group Plan | Novo Nordisk A/S - B | NOVOB DC | 3/19/2015 | 3/19/2015 | 3/20/2015 |
| [31] | Oaks Group Plan | GN Store Nord AS | GN DC | 3/19/2015 | 3/19/2015 | 3/20/2015 |
| [31] | Oaks Group Plan | Tryg A/S | TRYG DC | 3/25/2015 | 3/25/2015 | 3/26/2015 |
| [31] | Oaks Group Plan | FLSmidth & Co. A/S | FLS DC | 3/26/2015 | 3/26/2015 | 3/27/2015 |
| [31] | Oaks Group Plan | Carlsberg A/S - B | CARLB DC | 3/26/2015 | 3/26/2015 | 3/27/2015 |
| [31] | Oaks Group Plan | Vestas Wind Systems A/S | VWS DC | 3/30/2015 | 3/30/2015 | 3/31/2015 |
| [31] | Oaks Group Plan | A.P. Møller Mærsk A/S - B | MAERSKB DC | 3/30/2015 | 3/30/2015 | 3/31/2015 |
| [31] | Oaks Group Plan | A.P. Møller Mærsk A/S - A | MAERSKA DC | 3/30/2015 | 3/30/2015 | 3/31/2015 |
| [31], [33] | Oaks Group Plan | Coloplast A/S - B | COLOB DC | 5/6/2015 | 12/9/2015 | 5/7/2015 |
| [31], [14] | Oaks Group Plan | Auriga Industries A/S | AURIB DC | 6/11/2015 | 6/11/2015 | 6/12/2015 |
| [31], [33] | Oaks Group Plan | TDC A/S | TDC DC | 8/7/2015 | 3/5/2015 | 8/10/2015 |

**Notes and Sources:**

[1]    MPSKAT00135581.
[2]    MPSKAT00000357.
[3]    MPSKAT00085694.
[4]    MPSKAT00091525.
[5]    MPSKAT00173846.
[6]    MPSKAT00099975.
[7]    MPSKAT00201538.
[8]    MPSKAT00129218.
[9]    MPSKAT00203269.
[10]   MPSKAT00166249.
[11]   MPSKAT00168085.
[12]   WH_MDL_00035237.

**Exhibit 4**
**Annual General Meeting Dates of Issuers Related to All Bellwether Plan Transactions**

| Pension Plan | Security Name | Ticker | Equity Purchase Trade Date | AGM Date [32] | Ex-Dividend Date per Bloomberg |
|---|---|---|---|---|---|

[13]   JHVM_0004011.

[14]   "Auriga, Distribution of Extraordinary Dividends," NASDAQ OMX Nordic Exchanges - Company Notices, dated June 11, 2015.

[15]   WH_MDL_00035165.

[16]   WH_MDL_00089027-52.

[17]   KLUGMAN00005189-215.

[18]   WH_MDL_00035254.

[19]   MPSKAT00008759.

[20]   WH_MDL_00023457-83.

[21]   MPSKAT00008614-40.

[22]   FWCCAP00001033.

[23]   FWCCAP00000194.

[24]   LBR00004112.

[25]   LBR00000126.

[26]   COSTELLO00000092.

[27]   PROPPACIF00000955.

[28]   PROPPACIF00000113.

[29]   SVP00000086.

[30]   OAKS00000066.

[31]   OAKS00000085.

[32]   Annual General Meeting dates are per Bloomberg, unless stated otherwise.

[33]   TDC A/S and Coloplast A/S-B paid semi-annual dividends, with one considered "interim" and the other "final." The final dividends of each company were declared at the AGM, while the interim dividends were declared by the board at a date apart from the AGM. TDC A/S announced their interim dividends each August, and Coloplast A/S-B each May. *See* (TDC Interim Financial Report January-June 2012, dated August 8, 2012; TDC Interim Financial Report January-June 2013, dated August 7, 2013; TDC Interim Financial Report January-June 2014, dated August 7, 2014; TDC Interim Financial Report January-June 2015, dated August 7, 2015; Coloplast Interim Financial Report, H1 2013/14, dated May 7, 2014; Coloplast Interim Financial Report, H1 2013/14, dated May 5, 2015).

Exhibit 5
**Equity Price Analysis of Bellwether Plan Transactions**

| | Pension Plan | Security Name | Ticker | Reported Short Interest as a Percentage of Shares Outstanding [29] | Trade Date | Ex-Div Date per Bloomberg | Transaction Price (DKK) | Equity Purchase Closing Price as of Trade Date per Bloomberg (DKK) | High Price as of Trade Date per Bloomberg (DKK) | Low Price as of Trade Date per Bloomberg (DKK) | Whether Transaction Price Is Consistent With The Market Price |
|---|---|---|---|---|---|---|---|---|---|---|---|
| [1] | Bernina Plan | TDC A/S | TDC DC | 0 20% | 3/7/2013 | 3/8/2013 | 45 79 | 45 97 | 46 09 | 45 39 | Yes |
| [2] | Bernina Plan | Novozymes A/S - B | NZYMB DC | 0 59% | 2/26/2014 | 2/27/2014 | 254 00 | 254 00 | 254 40 | 251 60 | Yes |
| [3] | Delvian Plan | Tryg A/S | TRYG DC | 0 00% | 4/18/2013 | 4/19/2013 | 479 30 | 480 90 | 483 40 | 477 30 | Yes |
| [4] | Delvian Plan | TDC A/S | TDC DC | 0 20% | 3/6/2014 | 3/11/2014 | 52 65 | 52 65 | 53 15 | 52 25 | Yes |
| [5] | Basalt Plan | Carlsberg A/S - B | CARLB DC | 3 09% | 3/26/2015 | 3/27/2015 | 571 50 | 571 50 | 573 00 | 564 00 | Yes |
| [6] | Basalt Plan | Pandora A/S | PNDORA DC | 0 46% | 3/18/2015 | 3/19/2015 | 614 50 | 614 50 | 621 00 | 610 00 | Yes |
| [7] | Avanix Plan | TDC A/S | TDC DC | 0 22% | 8/7/2014 | 8/8/2014 | 51 35 | 51 35 | 56 50 | 51 20 | Yes |
| [8] | Avanix Plan | Coloplast A/S - B | COLOB DC | 0 50% | 5/6/2015 | 5/7/2015 | 510 00 | 510 00 | 528 50 | 508 50 | Yes |
| [9] | Stor Plan | A P Moller Mærsk A/S - B | MAERSKB DC | 0 00% | 3/30/2015 | 3/31/2015 | 16,410 00 | 16,410 00 | 16,450 00 | 16,260 00 | Yes |
| [10] | Stor Plan | FLSmidth & Co A/S | FLS DC | 11 30% | 3/26/2015 | 3/27/2015 | 314 00 | 314 00 | 315 90 | 309 10 | Yes |
| [11] | Bareroot Plan | Pandora A/S | PNDORA DC | 0 46% | 3/18/2015 | 3/19/2015 | 614 50 | 614 50 | 621 00 | 610 00 | Yes |
| [12] | Bareroot Plan | DSV A/S | DSV DC | 0 21% | 3/12/2015 | 3/13/2015 | 219 20 | 219 20 | 221 90 | 218 30 | Yes |
| [13] | Roadcraft Plan | TDC A/S | TDC DC | 0 22% | 8/7/2014 | 8/8/2014 | 51 35 | 51 35 | 56 50 | 51 20 | Yes |
| [14] | Roadcraft Plan | Coloplast A/S - B | COLOB DC | 0 50% | 5/6/2015 | 5/7/2015 | 510 00 | 510 00 | 528 50 | 508 50 | Yes |
| [15] | Loggerhead Plan | Tryg A/S | TRYG DC | 0 00% | 3/25/2015 | 3/26/2015 | 868 50 | 868 50 | 872 50 | 863 00 | Yes |
| [16] | Loggerhead Plan | Danske Bank A/S | DANSKE DC | 0 00% | 3/18/2015 | 3/19/2015 | 175 30 | 175 30 | 176 80 | 174 70 | Yes |
| [17] | FWC Capital Plan | Chr Hansen Holding A/S | CHR DC | 0 49% | 11/27/2014 | 11/28/2014 | 258 90 | 258 90 | 261 90 | 258 90 | Yes |
| [18] | FWC Capital Plan | Carlsberg A/S - B | CARLB DC | 3 09% | 3/26/2015 | 3/27/2015 | 571 50 | 571 50 | 573 00 | 564 00 | Yes |
| [19] | LBR Capital Plan | A P Moller Mærsk A/S - B | MAERSKB DC | 0 00% | 3/30/2015 | 3/31/2015 | 16,410 00 | 16,410 00 | 16,450 00 | 16,260 00 | Yes |
| [20] | LBR Capital Plan | Vestas Wind Systems A/S | VWS DC | 0 87% | 3/30/2015 | 3/31/2015 | 290 20 | 290 20 | 293 00 | 288 00 | Yes |
| [21] | Costello Plan | TDC A/S | TDC DC | 0 43% | 3/5/2015 | 3/6/2015 | 54 00 | 54 00 | 54 05 | 53 30 | Yes |
| [22] | Costello Plan | Tryg A/S | TRYG DC | 0 00% | 3/25/2015 | 3/26/2015 | 868 50 | 868 50 | 872 50 | 863 00 | Yes |
| [23] | SVP Plan | Novozymes A/S - B | NZYMB DC | 0 66% | 2/25/2015 | 2/26/2015 | 322 50 | 322 50 | 328 70 | 320 50 | Yes |
| [24] | SVP Plan | TDC A/S | TDC DC | 0 43% | 3/5/2015 | 3/6/2015 | 54 00 | 54 00 | 54 05 | 53 30 | Yes |
| [25] | Oaks Group Plan | Tryg A/S | TRYG DC | 0 00% | 3/25/2015 | 3/26/2015 | 868 50 | 868 50 | 872 50 | 863 00 | Yes |
| [26] | Oaks Group Plan | FLSmidth & Co A/S | FLS DC | 11 30% | 3/26/2015 | 3/27/2015 | 314 00 | 314 00 | 315 90 | 309 10 | Yes |
| [27] | RJM Plan | A P Moller Mærsk A/S - B | MAERSKB DC | 0 00% | 4/11/2013 | 4/12/2013 | 43,680 29 | 43,760 00 | 43,920 00 | 43,560 00 | Yes |
| [28] | Proper Pacific Plan | Chr Hansen Holding A/S | CHR DC | 0 49% | 11/27/2014 | 11/28/2014 | 258 90 | 258 90 | 261 90 | 258 90 | Yes |

**Notes and Sources:**

[1]  MPSKAT00085694
[2]  MPSKAT00201538
[3]  MPSKAT00166249
[4]  MPSKAT00168085
[5]  JHVM_0004011
[6]  JHVM_0004011
[7]  WH_MDL_00035165, WH_MDL_00065520
[8]  WH_MDL_00089027-52
[9]  KLUGMAN00005189-215
[10]  KLUGMAN00005189-215
[11]  WH_MDL_00023457-83
[12]  WH_MDL_00023457-83
[13]  WH_MDL_00035254
[14]  MPSKAT00008759
[15]  MPSKAT00008614-40
[16]  MPSKAT00008614-40
[17]  FWCCAP00001033
[18]  FWCCAP00000194
[19]  LBR00000126
[20]  LBR00000126
[21]  COSTELLO00000092
[22]  COSTELLO00000092
[23]  SVP00000086
[24]  SVP00000086
[25]  OAKS00000085
[26]  OAKS00000085
[27]  MPSKAT00135581
[28]  PROPPACIF00000955
[29]  Reported Short Interest as a Percentage of Shares Outstanding is the sum of net short positions at or above 0 1% of the issued share capital on the ex-dividend date per the Danish Financial Supervisory Authority (www dfsa dk)  The data does not separate A P  Moller Mærsk A/S by Class A and Class B shares

CONFIDENTIAL

**Exhibit 6**

**TDC Dividend Dates, March 2014 Semi-Annual Dividend**



CONFIDENTIAL

**Exhibit 7**
**Summary of Trading and Clearing Fees**
**The Delvian Plan March 2014 TDC Transaction**

| | Security | Trade Type | Trade Date | Fee Type | Fee (USD) | Exchange Rate (USD/DKK) [1] | Fee (DKK) |
|---|---|---|---|---|---|---|---|
| [2] | Stock | Purchase | 3/6/2014 | Executing Broker | - | - | 2,378.23 |
| [3] | Stock | Purchase | 3/6/2014 | Clearing | 20.79 | 0.1857 | 111.95 |
| [4] | Stock | Sale | 6/4/2014 | Executing Broker | - | - | 2,382.75 |
| [5] | Stock | Sale | 6/4/2014 | Clearing | 20.41 | 0.1822 | 112.02 |
| | | | | | | | 4,984.95 |
| [6] | Forward | Sale | 3/6/2014 | Clearing | 4,157.70 | 0.1857 | 22,389.34 |
| [7] | Forward | Purchase | 6/4/2014 | Clearing | 4,082.40 | 0.1822 | 22,406.15 |
| | | | | | | | 44,795.48 |
| [8] | Stock | Loan | 3/11/2014 | Clearing | | | N/A |
| [9] | Stock | Recall | 6/4/2014 | Clearing | 680.40 | 0.1822 | 3,734.36 |
| | | | | | | | 3,734.36 |
| [10] | N/A | N/A | 3/31/2014 | Platform | 196.74 | 0.1844 | 1,066.94 |
| [11] | N/A | N/A | 6/30/2014 | Platform | 267.85 | 0.1837 | 1,458.07 |
| | | | | | | | 2,525.01 |
| | | | | | | **Total** | **56,039.80** |

**Notes and Sources:**

[1]: USD/DKK exchange rate on trade date. For platform fees, the exchange rate is from month's settle date on the Solo Capital invoice.

[2]: MPSKAT00183834.

[3]: MPSKAT00195081-4 at MPSKAT00195082.

[4]: MPSKAT00202065.

[5]: MPSKAT00202254-9 at MPSKAT00202257.

[6]: MPSKAT00195081-4 at MPSKAT00195083.

[7]: MPSKAT00202254-9 at MPSKAT00202258.

[8]: The Q1 2015 invoice (MPSKAT00195081-4) does not list clearing fees for the initial stock loan.

[9]: MPSKAT00202254-9 at MPSKAT00202259.

[10]: MPSKAT00195081-4 at MPSKAT00195082. The Delvian Plan incurred total platform fees of $2,065.80 in March 2014 for 21 trades, including those involving TDC. Because platform fees are presented as a total and not apportioned by each security, a pro-rata apportionment based on the number of TDC trades as a percentage of total trades has been applied ($2,065.80 * (2/21) = $196.74).

[11]: MPSKAT00202254-9 at MPSKAT00202255. The Delvian Plan incurred total platform fees of $2,053.50 in June 2014 for 23 trades, including those involving TDC. Because platform fees are presented as a total and not apportioned by each security, a pro-rata apportionment based on the number of TDC trades as a percentage of total trades has been applied ($2,053.50 * (3/23) = $267.85).