# Exhibit 72

**Nationality of Corporations—Status of Russian Volunteer Fleet 1918-1922.**

See Case No. 64 (*Russian Volunteer Fleet and Another* v. *The Crown*).

## C. ALIENS

## II.—Position of Aliens

### i.—Subjection to Territorial Sovereignty of the Receiving State

Case No. 146

Aliens—Czechoslovakia—Right of Aliens to Use their Own Language before Courts and Authorities on the same Condition as Members of a National Minority—Bearing of the Minorities Treaty on the Municipal Law—Parliamentary Debates—Influence on Interpretation of Statute.

INNSBRUCK FIRM'S CASE.

*Czechoslovakia, Supreme Administrative Court.*
14 *February*, 1923. (*No.* 2607.)

THE FACTS.—An appeal of the plaintiff, a commercial firm in Innsbruck (Austria), drafted in German, relating to a case tried before the Court of Liberec (Reichenberg)—the jurisdiction of which includes a minority district—was returned by the Court to the plaintiff to be drafted in the official (Czechoslovak) language. The Ministry of Justice upheld this decision, holding that the law gave this right to the use of a foreign language only to Czechoslovak citizens. The plaintiff then applied to the Supreme Administrative Court, claiming that the decision of the Ministry should be quashed.

*Held*: That the application must be granted. The Opinion of the Court as stated in the decision of 5 October, 1921, No. 12.285,[1] must be fully maintained. Even if the Constitu-

---

[1] In the previous decision of 5 October, 1921, No. 12.285 (Boh. 966 adm.), it was held by the Supreme Administrative Court that the provision of paragraph 2 of Law No. 122/1920 applied to aliens as well as to Czechoslovak nationals as being " persons belonging to the language of this minority "; the phrase " Czechoslovak citizens belonging to this minority " used in the original text of the bill was replaced in the Constitutional Commission by the phrase " persons belonging to the language of this minority," and this text was passed by the National Assembly. The law was not a law only for the protection of linguistic minorities, but a law establishing principles for the use of languages before the courts and authorities in general, and consequently fully applies also to aliens for whom no other provisions have been given. The reference to the Treaty of St. Germain did not limit the linguistic protection. See also *Annual Digest*, 1925-1926, Case No. 215.

tion (paragraph 129) and Law No. 122/1920 in their originally proposed text meant to give the linguistic protection only to Czechoslovak citizens, Law No. 122/1920 in its final text as passed by the National Assembly exceeded these limits. The language of the Law cannot be restricted by the consideration that according to the (Minorities) Treaty the legislator had not such a far-reaching obligation and was therefore not bound to determine so widely the persons entitled to the linguistic protection; the stipulations of the Treaty are consequently without any relevance for the interpretation of the Law. The binding force of the text passed by the National Assembly could not be altered even if it could be proved that neither the reporter of the Commission nor the majority of the members of the Parliament voting for the bill realised the significance of the proposed provision, as any law, if promulgated, leads a life of its own independent of the reasons which induced the members of the legislature to vote for it; the Constitutional Commission did not accept the original text limiting the linguistic protection in accordance with the Treaty and with paragraph 129 of the Constitution only to Czechoslovak citizens, but accorded this protection also to aliens whose language is identical with a minority language. [Report: Boh. 1968 adm.]

Case No. 147

Aliens—Taxation in the Home State—Action to Enforce in the Country of Residence—Dismissal of.

BERGEN (CORPORATION OF) *v.* OLSEN.

*Denmark, Eastern Provincial Court.* 23 *October*, 1924.

THE FACTS.—Olsen, a Norwegian national, was the director of a limited company at Bergen (Norway) which went into liquidation and was wound up in 1922. In the summer of 1918 he had moved to Denmark, in which country he had since then been in permanent residence. The City of Bergen claimed that he had taken over the assets of the company without paying the taxes assessed upon the company in the years 1919-1922, and sued him before the Danish Court for payment of a sum of about 13,700 Kroner.

*Held*: That it cannot be regarded as accepted definitely by general international legal opinion that a State or a municipality may enforce claims for taxes through the agency of foreign courts. Particularly in Norway it has been estab-

**Case No. 147 contd.** lished that foreign Governments cannot claim payment of taxes in Norwegian courts. The case was consequently dismissed as "unsuitable for decision by the Danish courts." [Report: *Ugeskrift for Retsvæsen*, 1925, pp. 176 *et seq.*]

NOTE.—In the case of *Norwegian Dept. of Finance and Customs* v. *Nielsen* the Supreme Court of Denmark (*Ugeskrift for Retsvæsen*, 1923, pp. 301 *et seq.*) refused, upholding a decision of the Eastern Provincial Court, to enforce a Norwegian tax. But the decision would appear to have been based on the language of the Norwegian law.

**Case No. 148** Aliens—Taxation in the Home State—Action to Enforce in the Country of Residence—Dismissal of.

NORWEGIAN STATE *v.* BRUHN.

*Sweden, Supreme Court. 31 December, 1924.*

THE FACTS.—Bruhn, a Norwegian subject, carried on business in Norway until, in December, 1917, he emigrated to Sweden, where he became domiciled. The Norwegian State brought an action against Bruhn before the Court of Luggude in Sweden claiming a certain sum as war-tax for the budget-year 1917-1918.

Bruhn objected that the Swedish courts were not competent to deal with the case. The Norwegian State contended that, once the taxation had acquired legal force, it was no longer a question of taxation but of an ordinary claim, and that the Norwegian State was not to be treated differently from an ordinary litigant.

The Court of Luggude overruled this objection.

*Held*, on appeal, by the Court of Appeal for Skåne and Blekinge: That the action was not of such a nature that it could be considered by a Swedish court, and the judgment of the lower Court must be reversed.

The Supreme Court upheld the judgment of the Court of Appeal. [Report: *Nytt Juridiskt Arkiv*, 1924, p. 635.][1]

**Aliens—Rights of—Treaty Overriding Municipal Law in the United States.**

See Case No. 183 (*In re Romaris*).

---

[1] See also Case No 81 in this volume.

### ii.—Protection by the National State

**Case No. 149** Aliens—Position of—Right to Own Land—United States—"Equal Protection" Clause of the Fourteenth Amendment—Whether Inconsistent with Disqualification of Aliens to Hold an Interest in Land—Interpretation of Relevant Treaty Provisions—Negotiations Preceding the Treaty.

TERRACE *ET AL.* *v.* THOMPSON, ATTORNEY-GENERAL OF THE STATE OF WASHINGTON.

*United States, Supreme Court. 12 November, 1923.*

(TAFT, C.J.; BUTLER, MCREYNOLDS, BRANDEIS, MCKENNA, HOLMES, VAN DEVANTER, SANFORD, JJ.)

THE FACTS.—A statute of the State of Washington (Laws 1921, c. 50) disqualified aliens who had not declared their intention to become citizens from taking any interest in land for farming or certain other purposes. Heavy penalties were provided. Certain citizens who owned land in Washington State and wished to lease it to a Japanese ineligible for naturalisation brought suit against the Attorney-General of the State to restrain enforcement of the statute. They contended that the law violated the Fourteenth Amendment of the United States Constitution, and that it contravened the Treaty of 1911 between Japan and the United States (37 U.S. Stat. L. 1504), which provided that the citizens of each country might carry on trade within the territories of the other, own or lease warehouses, houses, shops, etc., "lease land for residential and "commercial purposes," and "do anything incidental "to or necessary for trade upon the same terms as "native citizens." The United States District Court dismissed the suit. (274 Fed. 841.) On appeal,

*Held:* That the decree must be affirmed. The regulation of the statute was within the police power of the State. Except as treaties provide otherwise, the State may prohibit entirely the alien ownership of land. There was no violation of the "equal protection" clause[1] of the Fourteenth Amendment, since there was a great difference of interest in the State and

---

[1] Section 1 of the Fourteenth Amendment provides as follows: "... No "State shall make or enforce any law which shall abridge the privileges or "immunities of citizens of the United States; nor shall any State deprive "any person of life, liberty, or property, without due process of law; nor "deny to any person within its jurisdiction the equal protection of the laws."