# Exhibit 80

THIS AGREEMENT is dated                    2014

BETWEEN:

(1)  GOAL TAXBACK LIMITED (No 3701795) whose registered office is at 7th floor, 69 Park Lane, Croydon, Surrey, CR9 1BG, United Kingdom ("GTB"); and

(2)  Roadcraft Technologies LLC Roth 401(K) Plan whose registered office is at State of Delaware, 1811 Silverside Road, Wilmington, DE 19810] ("the Customer")

BACKGROUND

A.  GTB provides a global tax reclamation outsourcing service.

B.  The Customer wishes to engage GTB to carry out such global tax reclamation outsourcing service on behalf of its Clients.

C.  GTB and the Customer agree that the provision of the global tax reclamation outsourcing service by GTB to the Customer shall be provided on the terms and conditions set out in this Agreement

AGREED TERMS

1  INTERPRETATION

1.1  In this Agreement including the recitals, the following words shall have the following meanings:

| | |
|---|---|
| "Beneficial Owner(ship)" | means any individual or entity who is the legal and registered owner of a security and in whose name or, subject to power of attorney acceptable to GTB, on whose behalf a Tax Reclaim can be filed with a foreign or local tax authority. |
| "Tax Reclaim (s)" | means an individual Tax Reclaim on behalf of one Beneficial Owner on an investment income event generated in one country on one payment date at one payment rate per unit of security on one security. |
| "Business Day" | means a working day for GTB |
| "Client" | means those entities including but not limited to individuals, institutions, companies, or other bodies (i) who have bestowed upon the Customer the responsibility and/or authority to custody, manage, administer or operate their securities portfolio, and (ii) to process Beneficial Ownership information for the provision of the Service. |
| "Commencement Date" | means the date of this Agreement. |
| "Confidential Information" | means information of a confidential nature (including trade secrets and information of commercial value) known to the disclosing party and concerning the disclosing party and its products and services including Confidential Information communicated to the recipient by the disclosing party; |
| "Control" | means the ability to direct the affairs of another whether by virtue of the ownership of shares, contract or otherwise; |
| "Intellectual Property" | means any patent, copyright, registered design, unregistered design right, trade mark or other industrial or intellectual property owned or used by GTB or the Customer (as the case may be) together with any current applications for any registerable items of the foregoing; |
| "Location(s)" | means the address at which the Service will be provided which will be 7th Floor, 69 Park Lane, Croydon, Surrey, CR9 1BG, England unless otherwise advised. |

CONFIDENTIAL                                            WH_MDL_00029587

| | |
|---|---|
| "Service" | means the provisions of the global tax reclamation outsourcing service by GTB wholly or partially, either from their offices or in the Customer's offices. The primary service is to outsource the process for Tax Reclaims but could also encompass support for global relief at source outsourcing services and the provision of related tax information services and consultancy services of a related tax or general securities industry operational nature as agreed with the Customer. |
| "Service Level Agreement" | schedule B to this Agreement which defines in greater detail the obligations and responsibilities of GTB and the levels of deliverable services to the Customer. |

1.2  References to clauses and schedules are to the clauses of and schedules to this Agreement.

1.3  Headings are for convenience only and shall be ignored in interpreting this Agreement.

1.4  In this Agreement reference to persons includes legal as well as natural persons (so, for example, a limited company is a "person" for the purposes of this Agreement) and, where the context admits, references to the singular include the plural and vice versa;

1.5  References to a statute or statutory provision include that statute or provision as from time to time modified or re-enacted or consolidated whether before or after the date of this Agreement so far as such modification or re-enactment or consolidation applies or is capable of applying to any transactions entered into in accordance with this Agreement.

2  THE SERVICE

Subject to the compliance and fulfilment by the Customer of its obligations hereunder:

2.1  GTB agrees to provide the Service, subject to appropriate Beneficial Ownership and such investment income data relating to the Customer, the Client and/or any Beneficial Owner as GTB shall reasonably request being available from the Customer to enable GTB to facilitate the Service.

2.2  GTB shall carry out its duties under this Agreement with reasonable skill and care

2.3  GTB's obligations under this Agreement are owed to the Customer and for the avoidance of doubt nothing in this Agreement shall extend to any Beneficial Owner, Client or other party any rights under this Agreement or entitle any such party to make any claim against GTB. The Customer shall indemnify GTB on demand against any such claim.

2.4  GTB do not guarantee that any Tax Reclaim application will be successful.

2.5  GTB will supply ad hoc and monthly (or for a period as otherwise agreed) reporting of Tax Reclaim activities and other matters provided to the Customer pursuant to the Service Level Agreement carried out on behalf of the Customers Client(s)/Beneficial Owner(s).

2.5  GTB shall not initiate any Tax Reclaim process or set up Clients/Beneficial Owners on GTB's systems until the Customer has signed to agree that the Client/Beneficial Owner static data is complete and accurate.

2.6  The parties agree that notwithstanding the provision of this Agreement, GTB shall be permitted to transfer data received from the Customer (whether relating to such entity or to any third party) to third parties located in the UK or elsewhere in the EU for the purposes of document storage or backup provided always that GTB take all reasonable endeavours to ensure the good reputation and standing of the party holding such information and take such steps as are reasonable to ensure such information is held on a secure and confidential basis.

CONFIDENTIAL                                                                                           WH_MDL_00029588

## 3  SERVICE LEVEL AGREEMENT

3.1   The detailed commercial obligations of both the Customer and GTB are defined in a Service Level Agreement which is incorporated into this Agreement and defines the level of Service delivered and specific obligations of both parties.

3.2   In the event of any dispute as to the meaning or interpretation of such detailed obligations and other matters set out in the Service Level Agreement, the determination of GTB, acting reasonably, shall be final and binding in the absence of manifest error.

## 4  OBLIGATIONS OF GTB

4.1   Where requested by the Customer and subject to compliance by the Customer of its obligations hereunder and to provision of adequate information, dates and proof of beneficial ownership and subject to other provisions of this Agreement, GTB agrees to attempt the Tax Reclaim process, where appropriate, on behalf of the Customer and its Clients/Beneficial Owners, on identifiable over withheld tax and tax credits on global investment income. If the Customer expressly demands GTB should not perform a Tax Reclaim on the Client's/Beneficial Owner(s) over withheld tax, then GTB shall not make any such Tax Reclaim.

4.2   Subject to the compliance by the Customer of the matters set out in this Agreement and subject to other provisions of this Agreement, GTB agrees to allocate reasonable human resources at GTB's cost to ensure that any Tax Reclaim application is, as far as is practicable and subject to the Service Level Agreement, capable of being undertaken.

4.3   GTB agrees to provide such reasonable materials, at its own cost, including computer equipment and software as reasonably necessary to perform the Service subject to other relevant provisions of this Agreement.

## 5  OBLIGATIONS OF THE CUSTOMER

5.1   The Customer agrees to provide such information, data, resources, assistance and original hard copy evidence of tax deducted at source on Clients/Beneficial Owner(s) investment income as are necessary/or requested by GTB and not to hinder the timely and effective delivery of the Service by GTB including but not limited to the Customer's Clients/Beneficial Ownership static data and investment income data in electronic format in addition to assistance to find evidence of tax deductions to support Tax Reclaim applications to enable the provision of the Service by GTB to the Customer.

5.2   The Customer must advise GTB of any discrepancies, errors or inaccurate data identified in the ad hoc or standard monthly reporting within 20 Business Days of receipt of such reports. GTB shall not be liable for any subsequent error or mistake or other consequential loss or damage concerning or relating to such information, whether used in supporting any Tax Reclaim application or otherwise.

5.3   The Customer undertakes to provide by no later than the date six months prior to the date when the relevant Tax Reclaim would become statute barred, all information and data necessary to enable GTB to make the relevant Tax Reclaim and, should the Customer fail to fulfil this obligation in whole or in part, without prejudice to any other limitation of GTB's liability hereunder, GTB accept no liability in respect of the success or otherwise of the relevant Tax Reclaim.

5.4   The Customer shall act towards GTB conscientiously and in good faith.

5.5   The Customer shall comply with all laws and regulations (and obtain any licences or authorisation) required to enable GTB to carry out its duties hereunder.

CONFIDENTIAL                                                                                                    WH_MDL_00029589

## 6 GTB'S FEES

6.1 The Fees set out in Schedule A shall be due to GTB from the Customer and shall be paid in accordance with such Schedule

6.2 The Customer shall not be entitled to apply any set off or deduction to the Fees or withhold any Fees under any circumstances whatsoever

6.3 GTB shall be entitled to charge interest on any Fees that are not paid in accordance with Schedule A at the rate of 3% per annum over the base rate of Natwest Bank, compounded monthly.

6.4 All sums payable under this Agreement are exclusive of any value added tax or other applicable sales tax, which shall be added to the sum in question.

6.5 In the absence of contrary Agreement, the Fees will be paid to GTB in pounds sterling.

6.6 If any dispute arises as to the amount of the Fees payable by the Customer to GTB, the same shall be referred to the Customer's auditors from time to time for settlement and their certificate shall be final and binding on both parties.

## 7 INTELLECTUAL PROPERTY

7.1 The Customer acknowledges that GTB's rights to the Intellectual Property used by GTB on or in relation to the Service and GTB's business and the goodwill connected with that are GTB's property.

7.2 The Customer shall at no time have any rights whatsoever over the computer software used by GTB. This specifically includes but is not limited to access to or ownership of the design of the software, intellectual property rights, the source code of the software, the tax treaty data and created form designs used by the system to evaluate and process Tax Reclaim(s) on behalf of the Customer, and its Clients/ Beneficial Owners.

## 8 TERM AND TERMINATION

8.1 This Agreement shall commence on the Commencement Date and for an initial term of 3 years subject to any provisions for earlier termination contained herein, shall continue until termination by either party giving to the other not less than three calendar months' prior written notice. Subject to compliance by the Customer of its obligations hereunder GTB will undertake to clear all outstanding Tax Reclaims open at the point of termination and continue to perform its obligations, hereunder, this Agreement irrespective of which party terminated the Agreement until all the outstanding Tax Reclaims have been either, refunded or if it is mutually agreed can be aborted.

8.2 Either party may terminate this Agreement immediately by giving written notice to the other if that other:

8.2.1 commits a material breach of any of its obligations hereunder, and in the event of a breach capable of being remedied, has failed to remedy such breach within 10 Business Days of receipt of notice in writing specifying the nature of the breach; or

8.2.2 shall make an arrangement with or an assignment in favour of its creditors or shall go into liquidation (other than for the purposes of a bona fide amalgamation or reconstruction) or shall have a receiver, manager, administrator or like person appointed over its property or assets or any part thereof or

8.3 Exercise by one party of its right to terminate this Agreement shall be without prejudice to any other rights or remedies it may have and shall not affect any rights accrued or obligations arising on or before the date of termination.

CONFIDENTIAL                                                                                                                                                                                                            WH_MDL_00029590

8.4 Upon termination of this Agreement for any cause whatsoever, GTB shall, at its own expense, as soon as reasonably practicable (allowing for any retention of such documents or copies thereof as GTB may require or be required to retain by reason of any audit, tax authority and/or statutory and/or contractual obligations) deliver up to the Customer all materials and information which are in its possession at the time of termination. The Customer will pay to GTB, within 2 Business Days, fees that have been invoiced by GTB or are accrued due but are un-invoiced and for which payment has not already been made.

## 9 LIMITATION OF LIABILITY AND INDEMNITIES

9.1 The Customer shall indemnify GTB in respect of all costs, claims, damages, losses or fines suffered by GTB as a result of any breach of the provision of the UK Data Protection Act 1998 or any amendment thereof which arises as a result of negligence, recklessness or default or fraud of the Customer or its officers employees, agents or consultants.

9.2 This Agreement shall constitute the entire understanding and Agreement and is in substitution for any previous Agreement or arrangement between the parties hereto and no representations or warranties express or implied, statutory or otherwise made by or on behalf of any of the parties hereto to the other party in connection with or arising out of the subject matter hereof and which are not contained in this Agreement shall give rise to any liability on the part of the maker or makers hereof.

9.3 GTB will accept information and materials into its custody and will process such information from the Customer or its Clients/Beneficial Owner(s) with all reasonable care. GTB accepts no liability whatsoever for the veracity or accuracy or fullness of information supplied by the Customer or its Client(s)/Beneficial Owner(s) nor for the consequential intent on the party for the Customer or its Client(s)/Beneficial Owners that may be implied by the nature of the information. If any officer, employee, agent or consultant of GTB has reason to believe that information or materials have been supplied by the Customer or its Client(s)/Beneficial Owner(s) to GTB, whether knowingly or otherwise, which are in breach of any regulations, statute or other legal instrument or this Agreement, GTB reserves the right to return such information to the Customer and/or to decline to process the Tax Reclaim(s) so affected. Declination to process Tax Reclaim(s) on this basis shall not be deemed to be grounds for termination or variance of this Agreement.

9.4 GTB shall not be liable to the Customer for any damages, losses, compensation or expenses, arising directly or indirectly from any act, default or negligence of GTB in connection with this Agreement, nor for any actions, claims, demands or proceedings in respect thereof in relation thereto, provided that this shall not apply to the extent that the losses, damages, compensations and/or expenses are caused by gross negligence, wilful misconduct or fraud of GTB, or that of its employees, officers, or agents GTB shall not be liable for any consequential or indirect damages or losses arising out of or in connection with the Agreement, including, without limitation, loss of profits or of contracts.

9.5 It is a fundamental understanding between the parties in this Agreement that GTB's Tax Reclaim procedures are one of several elements in the overall processing of Tax Reclaims and GTB has no control over some elements. Subject to the right at any time for GTB in its discretion to cease to process such Tax Reclaim(s) by serving written notice on the Customer to such effect, GTB may continue to process such Tax Reclaims until such time as GTB shall in its discretion determine or until such time as such Tax Reclaim is refused.

9.6 GTB accepts no liability to the Customer or otherwise arising out of: -

9.6.1 any failure of any Tax Reclaim application arising out of such application becoming statute barred otherwise than due to the gross negligence of GTB;

9.6.2 any failure of any Tax Reclaim application arising out of any inaccurate or incomplete information or data provided by the Customer, the Client, the Beneficial Owner or otherwise;

9.6.3 any failure of any Tax Reclaim application arising out of any change (retrospective or otherwise) of relevant tax legislation;

9.6.4 any failure of any Tax Reclaim application arising out of any failure by the Customer to inform GTB of any mistake or inaccurate information or data contained in GTB's ad hoc and/or standard monthly reporting supplied to the Customer pursuant to the Service Level Agreement if GTB is not advised within 20 Business Days of receipt of such reporting;

9.6.5    the failure of any party, including tax authorities or any agent, to repay tax save when due to the gross negligence of GTB; and/or

9.6.6    the completion of the relevant tax documentation and/or provision on a timely, accurate basis, of the relevant information to facilitate the Tax Reclaim process

9.7    The failure of either party at any time to enforce any provision of the Agreement shall in no way affect its right thereafter to require complete performance by the other party nor shall waiver of any breach of any provision be taken or held to be a waiver of the provision itself. Any waiver, to be effective, must be in writing.

9.8    Without prejudice to the generality of the foregoing, the maximum aggregate liability of GTB to the Customer or otherwise under this Agreement shall be limited to the lesser of (1) £1,000,000 or (2) the amount received by GTB by way of payments for its Services in the one year period (or lesser period if under one year from the date of commencement of this Agreement) ending on the date of the first particular matter which gives rise to a claim.

9.9    It is hereby agreed that except as expressly set out in this Agreement all conditions or warranties express or implied statutory or otherwise including but not limited to any concerning the quality or fitness for a particular purpose of the Services or any data included therein are hereby excluded.

## 10 CONFIDENTIALITY

10.1    Save as set out in this Agreement each party agrees (on behalf of itself, its employees, its agents and Consultants) that it will at all times (both during the term of this Agreement and after its termination) keep confidential, and will not use (other than strictly for the purposes of this Agreement) and will not without the prior written consent of the other disclose to any third party any Confidential Information, unless the information:

10.1.1 was public knowledge or already known to the recipient at the time of disclosure; or

10.1.2 subsequently becomes public knowledge other than by breach of this Agreement by the recipient; or

10.1.3 subsequently comes lawfully into the possession of the recipient from a third party.

10.2    To the extent necessary to implement the provisions of this Agreement (but not further or otherwise), GTB may disclose the Confidential Information to any tax authority and to any employees of GTB

10.3    Notwithstanding any other clause in this Agreement, GTB will be permitted to list the Customer's name only for inclusion on the client list of GTB in printed format and on the GTB web site. GTB will not use the client's name for any other publicity or promotional purposes without first obtaining the Customer's consent.

10.4    The parties agree that notwithstanding the provision of this Agreement, GTB shall be permitted to transfer data received from the Customer (whether relating to such entity or to any third party) to third parties located in the UK or Belgium for the purposes of document storage or backup provided always that GTB take all reasonable endeavours to ensure the good reputation and standing of the party holding such information and take such steps as are reasonable to ensure such information is held on a secure and confidential basis.

CONFIDENTIAL         WH_MDL_00029592

## 11 FORCE MAJEURE

11.1 The obligations of each party under this Agreement shall be suspended during the period and to the extent that that party is prevented or hindered from complying with them by any cause beyond its reasonable control including (insofar as beyond such control but without prejudice to the generality of the foregoing expression) strikes, lock-outs, labour disputes, act of God, war, riot, civil commotion, malicious damage, compliance with any law or governmental order, rule, regulation or direction, accident, breakdown of plant or machinery, fire, flood, storm, difficulty or increased expense in obtaining workmen, materials, goods or raw materials in connection with the performance of this Agreement.

11.2 In the event of either party being so hindered or prevented, the party concerned shall give notice of suspension as soon as reasonably possible to the other party stating the date and extent of the suspension and its cause and the omission to give such notice shall forfeit the rights of that party to claim suspension. Any party whose obligations have been suspended as aforesaid shall resume the performance of those obligations as soon as reasonably possible after the removal of the cause and shall so notify the other party. In the event that the cause continues for more than six months either party may terminate this Agreement by giving the other party 20 Business Days' notice.

## 12 AMENDMENTS

Save as expressly provided in this Agreement, no amendment or variation of this Agreement shall be effective unless in writing and signed by a duly authorised representative of each of the parties to it.

## 13 ASSIGNMENT

13.1 The Customer shall not, without the prior written consent of GTB, transfer, charge or deal in any other manner with this Agreement or its rights under it or part of it, or obligations, or purport to do any of the same.

13.2.1 GTB may sub-contract its obligations hereunder

## 14 FREEDOM TO CONTRACT

The parties declare that they each have the right, power and authority and have taken all action necessary to execute and deliver, and to exercise their rights and perform their obligations under this Agreement.

## 15 SEVERABILITY

If any part of this Agreement becomes invalid, illegal or unenforceable the parties shall in such an event negotiate in good faith in order to agree the terms of a mutually satisfactory provision to be substituted for the invalid, illegal or unenforceable provision which as nearly as possible gives effect to their intentions as expressed in this Agreement. Failure to agree on such a provision within six months of commencement of those negotiations shall result in automatic termination of this Agreement. The obligations of the parties under any invalid, illegal or unenforceable provision of the Agreement shall be suspended during such a negotiation.

CONFIDENTIAL                                                                                   WH_MDL_00029593

## 16 RIGHTS OF THIRD PARTIES

16.1 No term of this Agreement shall be enforceable under the Contracts (Rights of Third Parties) Act 1999 by a third party, but this does not affect any right or remedy of a third party which exists or is available apart from under that Act.

16.2 The terms of this Agreement or any of them may be varied, amended or modified or this Agreement may be suspended, cancelled or terminated by Agreement in writing between the Parties or this Agreement may be rescinded (in each case), without the consent of any such third party.

## 17 NOTICES

17.1 Any notice required to be given pursuant to this Agreement shall be in writing and shall be given by delivering the notice by hand at, or by sending the same by prepaid first class post (airmail if to an address outside the country of posting) to the address of the relevant party set out in this Agreement or such other address as either party notifies to the other from time to time. Any notice given according to the above procedure shall be deemed to have been given at the time of delivery (if delivered by hand) and 2 Business Days after posting (if sent by post).

17.2 Notices to GTB should be addressed to the Chief Executive Officer at the address shown below.

17.3 Any communication, notice, notification, instruction to GTB shall be as follows:

| | |
|---|---|
| Name: | **Goal TaxBack Ltd** |
| Mailing Address: | 7th Floor, 69 Park Lane, Croydon, Surrey, CR9 1BG |
| E-mail Address: | clientservices@goalgroup.com |
| Telephone: | +44 (0)20 8760 7130 or +800 3456 7888 |
| Facsimile: | +44 (0)20 8681 2854 |

For operational and administrative functions please contact:

| | |
|---|---|
| Name: | **Goal TaxBack Ltd** |
| Mailing Address: | 7$^{th}$Floor, 69 Park Lane, Croydon, Surrey, CR9 1BG |
| Authorized Representative: | Marie Nimmo, Director of Operations |
| E-mail Address: | clientservices@goalgroup.com |
| Telephone: | +44 (0)20 8760 7130 |
| Facsimile: | +44 (0)20 8681 2854 |

CONFIDENTIAL                                                              WH_MDL_00029594

17.4 Any communication, notice, notification, instruction to the Client shall be as follows:

Name: Ronald Altbach
Mailing Address: Roadcraft Technologies LLC
C/O Kaye Scholer LLP
425 Park Avenue
New York, NY 10022-3598
E-Mail Address: Admin@RoadcraftPension.com
Telephone: (212) 616-8082
Facsimile:

For operational and administrative functions please contact:

Authorized Representative: Ronald Altbach
E-mail Address: Admin@RoadcraftPension.com
Telephone: (212) 616-8082
Facsimile:

17.5 Invoices shall be addressed to:

Name: Roadcraft Technologies LLC
Mailing Address: C/O Kaye Scholer LLP
425 Park Avenue
New York, NY 10022-3598
E-mail Address: Admin@RoadcraftPension.com
Telephone: (212) 616-8082
Facsimile:

Either party can substitute a named party by written notice to the other.

17.6 The parties agree that the primary and preferred method of communication shall be by e-mail. Where an Authorized Representative's signature is required, the primary and preferred method of communication shall be by facsimile and by registered post to the mailing address given above.

**CONFIDENTIAL**　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　**WH_MDL_00029595**

9

U:\GTB Agreement\GTB Standard SLA.doc

CONFIDENTIAL  WH_MDL_00029596

U:\GTB Agreement\GTB Standard SLA.doc

## 18   GOVERNING LAW AND JURISDICTION

This Agreement shall be governed by and construed in accordance with English law and each party hereby irrevocably submits to the exclusive jurisdiction of the English Courts.

This Agreement has been entered into on the date stated at the beginning of this Agreement.

Made in two originals, on ................................., each party acknowledging receipt of one original of this Agreement including the Schedules.


SIGNED BY




Director

For and on behalf of GOAL TaxBack Limited




SIGNED BY

*MBY, attorney-in-fact*


Position: Trustee

For and on behalf of........Roadcraft Technologies LLC Roth 401(K) Plan

10

CONFIDENTIAL

WH_MDL_00029597

## Schedule A to the Agreement: Fees

The prices of the Service rendered to the Customer by GTB are detailed below and are exclusive of VAT.

- Transaction Fees:
  0.85% of amounts recovered, per beneficiary, per claim (capped at €10,000 per reclaim)

These fees are invoiced at the time of receipt of the reclaim from the relevant national tax authority and GTB reserves the right to deduct our fees from amounts received.

Invoices are due for payment within 15 Business Days of invoice date

CONFIDENTIAL                                                                                       WH_MDL_00029598

Schedule B to the Agreement: Service Level Agreement

In the event of any conflict with the provisions of the Global Tax Reclamation Outsourcing Agreement, the provision of the Global Tax Reclamation Outsourcing Agreement shall apply.

This document sets out the commercial details of the global tax reclamation outsourcing service (the Service) that GTB provides as standard. This Agreement should be construed as forming a Schedule to the Agreement for the provision of the Service. Acceptance of the Agreement is deemed as acceptance of the Service Level Agreement.

This Service Level Agreement assumes that the Beneficial Owners, on whose behalf the Service is provided, fall under the standard tax categories (i.e. single beneficial owner who/which is either a charity, corporate body, individual, international organisation, pension fund, sovereign entity, SICAV, SICAF, mutual fund or other client type/ legal entity as per the current GOAL client type list as updated from time to time). Other client types that are identified, on an ongoing basis, should be referred to GTB in order to determine what, if any, Service Level commitments can be made.

1    GOAL TaxBack will, subject to compliance of the Customer with their obligations under the Service Level Agreement, and under the Global Tax Reclamation Outsourcing Agreement:

- Agree a format and methodology with the Customer for the receipt of Client/Beneficial Owner investment income entitlement data to enable potential Tax Reclaims to be identified.

- Prepare, collate and submit Tax Reclaims to the relevant tax authorities and/or sub-custodian network.

- If required produce tax vouchers for the Customer for its Clients/Beneficial Owners investment income to back up the Tax Reclaim process with fees to be negotiated under separate agreement.

- Ensure, as a matter of record, that all Tax Reclaims are processed onto the GTB system to facilitate tracking and resolution and to enable a full audit of all transactions at all times.

- Use reasonable efforts to pursue overdue Tax Reclaims with tax authorities and /or sub-custodian network.

- Process Tax Reclaim refunds from the relevant tax authorities/sub-custodian network and credit the Customer's account or as instructed in the Customer/Client set up process.

- If required and at extra cost produce for the Customer fee charging schedules for its Clients/Beneficial Owners. Fees for this service to be negotiated under separate agreement.

- Produce Tax Reclaim status reports in such format as GTB shall decide and use reasonable endeavours to distribute to the Customer and/or its Clients/Beneficial Owners (as instructed in the Client set up process.) electronically within 10 business days of each month end.

- When reasonably requested provide ad hoc reporting at Customer or Clients/Beneficial Owner expense.

- Use reasonable efforts to investigate any noted discrepancies, and liase with the Customer and/or its Clients/Beneficial Owners and relevant tax authority and/or sub-custodian where any adjustment is reasonably necessary under advice to the Customer and/ or its Clients/Beneficial Owners.

- Use reasonable efforts to credit Customer and/or its Clients/Beneficial Owners with Tax Reclaim refunds within 5 business days of receipt of funds.

- Transact foreign exchange transactions as directed and/or instructed by the Customer and/or its Clients/Beneficial Owners. Fees for this service to be negotiated under separate agreement.

- Hold and maintain confidentially electronic backup files of Tax Reclaim data.

- Maintain data according to the principles of the UK Data Protection Act under which GTB is registered.

CONFIDENTIAL        WH_MDL_00029599

- Appoint a Client Services Representative responsible for overseeing and maintaining the proper reasonable application of this Agreement externally with the Customer and it's Client(s)/Beneficial Owners and internally with the GTB operations department.

- Maintain all data, communications (of whatever nature) secure and separate from all other Customer and Client information.

- Return in confidence unprocessed any data which in the opinion of GTB's compliance adviser would result in a Tax Reclaim which would contravene any relevant Regulations or Statutes.

- Facilitate any reasonable administrative or consultancy requests over and above those defined in this Agreement by the Customer (or the Client) and charge under the Standard Terms of Business £1000.00 per day (plus VAT if applicable) and as may be increased from time to time by GTB by notice in writing to the Customer.

2   **For the avoidance of doubt GOAL TaxBack will not:**

- Initiate the Tax Reclaim process or set up Clients/Beneficial Owners on GTB systems until both the Customer and GTB have signed to agree that the Client/Beneficial Owner static data is complete and accurate.

- Be responsible for any failure of any Tax Reclaim application arising out of any failure by the Customer to inform GTB of any mistake or inaccurate information or data contained in GTB's ad hoc and/or standard monthly reporting supplied to the Customer if GTB is not advised within 20 days of receipt of such reporting.

- Be responsible for any failure of any competent party (Revenue or Agent) to repay Tax Reclaim(s) save for any gross negligence on the part of GTB.

- Be responsible for any failure by the Customer or its Clients/Beneficial Owners to complete relevant tax documentation and/or provide relevant information on a timely and accurate basis, to facilitate the Tax Reclaim process.

3   **The Customer will:**

- Arrange for the Clients/Beneficial Owner(s) to complete all relevant and related tax documentation required by GTB in order to effect the Tax Reclaim or avoidance or reduction of double taxation on investment income from securities. The Tax Reclaim form must include certification from the Beneficial Owners local tax office together with any other required residency documentation; or

- Obtain a Power of Attorney executed by the Client or Beneficial Owners or any other authorised person as appropriate in order for either the Customer or GTB to complete all necessary forms, documentation and formalities for the Tax Reclaim or avoidance or reduction of double taxation on investment income from securities.

- Be responsible for the accuracy and timeliness of data transmission, in whatever Media to GTB.

- Reconcile the reports provided by GTB, relating to the Service, to their records and advise GTB of any noted discrepancies within 20 business days of receipt.

- Submit the original tax voucher or any other acceptable hard copy documentation to GTB within 60 calendar days of the original distribution to facilitate the Tax Reclaim or recovery of double taxation on investment income from securities.

- Prior to provision of the Service, provide an appropriate and acceptable Spanish Power of Attorney for each Beneficial Owner in the predefined standard form, if reclaims for the Spanish market are required.

- Act as required to achieve resolution, in the event that GTB encounters difficulty in resolving tax-related matters due to issues between the Client/Beneficial Owner and its own tax office. Open Tax Reclaim(s) may be deleted and closed if after a period of one year issues raised to the Customer and/or Client's attention have not been resolved satisfactorily to allow progression of the Tax Reclaim(s) with the relevant Tax Authorities.

13

CONFIDENTIAL                                                                                                                    WH_MDL_00029600

U:\GTB Agreement\GTB Standard SLA.doc

- Be responsible for all fees that may be charged by paying agents, correspondent banks, or local custodian banks in respect of the Service.

- Authorise GTB to use the Customer logo for printing the "Client Payment Advice Letters" on Customer letter headed paper. GTB will not use this letter headed paper and the electronic stamp for any other purpose than sending the "Client Payment Advice Letters".

- Comply in a timely and accurate fashion with any other reasonable requests that GTB may make in the course of providing the Service.

14

CONFIDENTIAL                                                                                           WH_MDL_00029601