# Exhibit 4

# LIONBRIDGE

STATE OF NEW YORK        )
                         )
                         )   ss
                         )
COUNTY OF NEW YORK       )

## CERTIFICATION

This is to certify that the attached translation is, to the best of my knowledge and belief, a true and accurate translation from Danish into English of the attached document U.1964.307V. I affirm that the linguist responsible for producing this translation is fluent in both the Danish and English languages.

_____

Lynda Green, Senior Managing Editor
Lionbridge

Sworn to and subscribed before me this 5th day of June, 2022.

ETHAN WIN LY
NOTARY PUBLIC-STATE OF NEW YORK
No. 01LY6323702
Qualified in New York County
My Commission Expires 04-27-2023

259 W 30th Street, 11th Floor  New York, NY 10001  +1.212.631.7432

**U.1964.307V**

**V.L.D. December 19, 1963 in appeal III 1491/1962**
(Toldam, Mikkelsen, Weber (acting judge).

*Mrs. Anna Margrethe Beck, Åbenrå (intermediate court of appeal lawyer Ahlefeldt-Laurvig, in the same place)*
versus
*Mrs. Marie Jensen, Vejbæk (high court lawyer Kristiansen, Gråsten).*

*Surety and bond 1.1*
**A surety commitment was assumed only to apply to a specific loan arrangement, which came to nothing.**

- In 1959, D, who was in financial difficulty, and who was in debt to the person of independent means, R, was promised a loan of DKK 4,000 from R's sister, Mrs. M, to whom D subsequently issued an instrument of debt for the amount and persuaded K, among others, to endorse this as a guarantor. When Mrs. M did not then wish to issue the loan, R used the funds of his daughter, Mrs. B, which he controlled, to settle the loan, and subsequently persuaded Mrs. M to assign the instrument of debt to Mrs. B. In 1961, Mrs. B commenced proceedings and requested that his widow, who retained possession of the estate, be ordered to pay the value of the instrument of debt. As the surety commitment related only to a loan from Mrs. M, which loan had not come into existence as it could not be considered proven that the loan sum had been paid out from Mrs. M's account, and as it had also not been shown that K had agreed that the surety would apply to other loan arrangements, it was found that there were no binding commitments for K. As Mrs. K's objection concerning this could be asserted against Mrs. B as the assignee, see section 27 of the instrument of debt act, the court found for Mrs. K. [1]

# The District Court

### The ruling of Gråsten court of October 23, 1962.

In early 1959, the car dealer Hans Bundesen, of Åbenrå, was in financial difficulties. As a consequence, the person of independent means, Hans Andresen Kriger, of Åbenrå, who had discounted several automobile purchase contracts for Bundesen, and who had an outstanding debt with Bundesen of ca. DKK 2,000, offered Bundesen a loan of DKK 4,000 from his sister, Mrs. Ingeborg Meyhoff, on provision of a surety. After Bundesen had persuaded Friedrich Jensen, farmer of Vejbæk, and Otto Nielsen, a farmer of Øster-Løgen, to sign as guarantors, Kriger issued an instrument of debt as follows:

"The undersigned car dealer, Hans Bundesen, of Skibbrogade 10, Åbenrå, hereby acknowledges receipt of a loan of DKK 4,000 (four thousand kroner) from Mrs. Ingeborg Meyhoff of Vojens. The loan is subject to an interest of 6 per cent per annum and can be mutually terminated with 3 months' notice, though if there is a repayment of DKK 250 every three months, for the first time on May 1, 1959, cancellation lapses on the part of the creditor. Interest payments fall due at the same time as the repayments. Frederik Jensen, farmer, of Vejbæk and Otto Nielsen, farmer, of Øster-Løgen are joint signatories for full and complete payment of the sum itself."

After the instrument of debt was signed by Bundesen and, on his prompting, by the two guarantors on February 10th and 11th 1959, Kriger was also given on the 12th of the same month an authorisation for Kriger to receive the loan that had been drawn up by Kriger and signed by Bundesen.

With regard to the subsequent events, the plaintiff, Mrs. Anna Margrethe Beck of Åbenrå, who is the daughter of Kriger, stated that her father, with the instrument of debt, approached Mrs. Meyhoff, who however refused to pay any amount, referring to the fact that her money had a period of notice. The plaintiff's father, who administered part of her assets, then, by arrangement with Mrs. Meyhoff, with the intention that this latter would later pay the DKK 4,000, paid the loan from funds that he administered for the plaintiff, as at the time of payment, this was retained such that her father withheld his outstanding debt with Bundesen and paid to this latter the balance.

On March 1, 1959, Bundesen issued to Kriger the following receipt as drawn up by Kriger:

"Received from Kriger DKK 4,000 on instrument of debt DKK 4,000 to Mrs. Ingeborg Meyhoff of Vojens."

In the course of this case, which was instituted by summons of May 29, 1961 against the farm owner Friedrich Jensen, and in which his wife, Mrs. Marie Jensen, née Thomsen, who retains possession of the estate following the death of her spouse on October 1, 1961, has become a party, the plaintiff, who following commencement of the case has received absolute assignment of the instrument of debt from Mrs. Meyhoff, on the ground that, in the circumstances as stated, she has become a party to Mrs. Meyhoff's rights according to the instrument of debt with respect both to Bundesen and the guarantors, has claimed that the defendant be ordered to honour the instrument of debt.

- - -

The defendant has requested dismissal.

In support of her claim, the defendant, who, in view of the existing receipt of March 1, 1959, has not denied that Bundesen received from Kriger some amount or other as residual proceedings from the loan, has stated that the debt for which the deceased had signed a surety, had never come about, as Mrs. Meyhoff had never paid a loan to Kriger or to anyone else. In so saying, the defendant referred to the fact that it was a decisive condition for the guarantee liability that a loan relationship was established with fixed interest and repayment terms regardless of the other accounts between Kriger and Bundesen, and that no such loan relationship had been established. The defendant commented in respect of this that the defendant's and Kriger's assets are so mixed that it would be impossible for an outsider to determine whether there is a loan relationship between Bundesen and Kriger or Bundesen and the defendant.

The defendant has stated as a party that in 1951 she had inherited a sum of ca. DKK 43,000 from her grandmother,

**308**

including a property and a cash sum, and that her assets, which currently have a value of ca. DKK 100,000, are from this inheritance: She transferred the cash portion of the inheritance to her father, who has since managed it as part of the assets. She is aware that her father used part of the assets to finance conditional sale contracts, but she had no further knowledge of where her father had invested her assets. The father's administration of her assets is based on a relationship of trust between her and her father. She left it entirely to her father to make the necessary decisions and had no knowledge of the surety commitments discussed in the case.

The person of independent means, Hans Andresen Kriger, gave testimony to the effect that, having obtained the instrument of debt from Bundesen, he made certain by telephone that the guarantors' signatures were genuine, and that the guarantors accordingly were aware that he was acting as an intermediary in the taking out of the loan. When he approached his sister with the instrument of debt, she, having previously declared herself willing to grant the loan, said that her money had a period of notice. The witness then told the sister that the plaintiff could provide the funds. The instrument of debt remained with the sister. When the loan was issued, Bundesen was told to pay interest and instalments to the sister. The part of the plaintiff's assets administered by the witness was at the time an amount of ca. DKK 20,000. The witness's administration of the plaintiff's

---

[1] See U.1913.364, N. D. 1961 p. 208 (TfR 1962 p. 333) and Ussing: Kaution p. 33, 38-41 and 181-184.

Copyright © 2021 Karnov Group Denmark A/S

assets does not include any bookkeeping, and the plaintiff's money is not kept separate from his own. The plaintiff agrees to approve his actions. The plaintiff has no knowledge of the case as the witness only used her name in administration of her assets.

The car dealer Hans Bundesen gave testimony to the effect that Kriger had said at the time the instrument of debt was signed, that interest and instalment payments were to be paid to Mrs. Meyhoff. Shortly afterwards, on February 12, 1959, the witness Kriger pressed for repayment of the loan. Kriger said on this occasion that the loan would not be issued by Mrs. Meyhoff. In August 1960 the instrument of debt was cancelled. The witness went to see Mrs. Meyhoff about this, who said that she knew nothing about the matter. Mrs. Meyhoff admitted that she did not have any account with the witness and that nor had she lent him any money. However, she was not willing to issue any written declaration to this effect. 2-3 weeks later the witness went to see Mrs. Meyhoff again, this time together with both guarantors. They asked Mrs. Meyhoff to issue a written declaration as documentation of her repeated claim on this occasion of neither having nor having had any outstanding debt with the witness according to the instrument of debt issued by the witness. However, Mrs. Meyhoff was unwilling to issue any written declaration.

Mrs. Ingeborg Meyhoff gave testimony to the effect that, until the witness's brother Kriger approached the witness one day with the signed instrument of debt, there had been no mention that the witness would lend any sum of money to Bundesen. However, her brother did ask, when he approached the witness about the instrument of debt, if he could borrow the DKK 4,000 referred to in the instrument of debt. The witness replied that she did not have any money. The instrument of debt nevertheless remained with the witness. The witness had on no previous occasion made money available to the brother, as this latter could lend it. The instrument of debt remained with the witness for some time but was later collected by the brother, who at a later time obtained the witness's signature on the proof of assignment. The witness had in any case been visited on two occasions by Bundesen and the two guarantors. The first approach was around May 14, 1961. On this first occasion, Hans Bundesen asked the witness to come for a talk with the witness "in private". There was no discussion between the witness and Bundesen alone, but the witness and Bundesen had a discussion in the witness's sitting room in the presence of Friedrich Jensen and Otto Nielsen and the witness's spouse. Bundesen said that he was approaching her about an instrument of debt and asked if the witness had signed it. The witness replied that she knew nothing about this and that Bundesen could ask H.A. Kriger about the situation. The witness remembers one further visit made by Bundesen and the guarantors during which the witness greeted them and during which they spoke with the witness's spouse. During this discussion, Bundesen and the 2 guarantors did not talk about whether they could have an instalment arrangement for the amount of the instrument of debt.

According to the letters of debt of March 23 and May 1, 1959, Bundesen borrowed DKK 2,000 and DKK 2,500 from the plaintiff against a guarantee with assumption of primary liability by Friedrich Jensen, who, according to court settlement of 4th November, paid DKK 4,850 in full settlement of any claim arising from these instruments of debt.

According to an extract from the probate register for the court in Åbenrå, the plaintiff's inheritance from her grandmother is made up as follows:

| | |
|---|---|
| Real estate………….. | DKK    26,000.00 |
| Instruments of debt issued by the father… | DKK 14,000.00 |
| Cash…… | DKK 3,112.39 |
| Savings bank passbook……….. | DKK 1,639.11 |
| | DKK 44,751.83 |

It was not disputed during the case that Mrs. Meyhoff had never issued a loan to Bundesen, and according to her explanation, nor can it be assumed that she had any intention of issuing him a loan. The instrument of debt with the signatures of Bundesen and the guarantors can accordingly only be considered in respect of Mrs. Meyhoff as a non-accepted offer that has lapsed. Mrs. Meyhoff has therefore not been able to transfer any right according to the plaintiff's instrument of debt.

There is nothing in the information indicating that the deceased subsequently assumed guarantor commitments with respect to the plaintiff, or moreover any basis in the details of the case to give reason to assume that the deceased Friedrich Jensen has sanctioned

309

the plaintiff taking over as creditor in accordance with the instrument of debt.

Moreover, as there is no evidence that Kriger, on the plaintiff's behalf, would be entitled to acquire the guarantee proposal made by the deceased to Mrs. Meyhoff, the defendant must be found not liable for the claim according to the instrument of debt.
It is ruled that the plaintiff should pay the defendant DKK 900.00 in costs of the proceedings.

### The Western Division of the Danish High Court

#### *Ruling of the Western Division of the High Court*

It is additionally stated in the presentation of the case in the ruling that the car dealer Hans Bundesen has declared as a witness in the 1st instance that the guarantors said, at the time of providing their signatures, that they would not have signed if the loan had been taken out with H.A. Kriger, and the witness had said that the loan had been arranged with the mediation of Kriger.
The appellant invoked for the High Court a submitted copy of a letter from Kriger dated February 28, 1959, purportedly to the deceased Mrs. Jensen, saying, among other things: "Informing you in accordance with our agreement in the Grænse café that my daughter will now pay Bundesen the DKK 4,000 on an instrument of debt transferred to my sister."

The respondent has protested against this letter, which had not been submitted until during the trial, being taken into account, for the very reason that the identity of the addressee is not shown and is disputed, and because an assessment of its evidential value is not possible without the examination of witnesses other than Kriger who were not present during the trial.

According to the content of the guarantee, the commitment was entered into solely to secure a loan from the witness, Mrs. Meyhoff to Bundesen, and as the case has been presented to the high court, it cannot be considered proven that the deceased Mrs. Jensen has shown that his commitment changed to concern other loans. As the available evidence provides no ground for assuming that the loan sum in question was, as claimed by the appellant before the high court, issued from Mrs. Meyhoff's account according to authorisation, and since, apart from this, it is not disputed that the loan at issue did not come about, it is ruled that there was no binding commitment on the part of Mrs. Jensen, and the respondent's objection in this respect may be claimed against the appellant as assignee, see Section 27 of the instrument of debt act.

With these comments, the ruling will, in accordance with the grounds set out elsewhere herein, be upheld.
It is ruled that the appellant should pay the respondent the costs of the proceedings in this court, being DKK 900.00.

Copyright © 2021 Karnov Group Denmark A/S

**U.1964.307V**

**V. L. D. 19. december 1963 i anke III 1491/1962**
(Toldam, Mikkelsen, Weber (kst.).

*Fru Anna Margrethe Beck, Åbenrå (ors. Ahlefeldt-Laurvig, smst.)*
mod
*fru Marie Jensen, Vejbæk (lrs. Kristiansen, Gråsten).*

*Kaution og garanti 1.1*
***Kautionstilsagn antoges alene at angå et bestemt låneforhold, som ikke blev til noget.***

- ♦ I 1959 fik D, der var i økonomiske vanskeligheder, og som stod i gældsforhold til rentier R, af denne tilsagn om et lån Pa 4000 kr. fra R's søster fru M, til hvem D derefter udstedte gældsbrev for beløbet og formåede bl.a. K til at påtegne dette som kautionist. Da fru M ikke ville yde lånet, anvendte R sin datter fru B's midler, som han bestyrede, til afregning af lånebeløbet, og senere formåede han fru M til at transportere gældsbrevet til fru B. Fru B anlagde i 1961 sag og påstod hans enke, der sad i uskiftet bo dømt til betaling af gældsbrevets pålydende. Da kautionsforpligtelsen kun angik et lån fra fru M, hvilket lån ikke var kommet til eksistens, idet det ikke kunne anses godtgjort, at lånebeløbet var udbetalt for fru M's regning, og da det heller ikke var bevist, at K havde godkendt, at kautionen skulle gælde andre låneforhold, fandtes der ikke at være opstået nogen for K bindende forpligtelse. Da fru K's indsigelse herom kunne gøres gældende over for fru B som transporthaver, jfr. gældsbrevslovens § 27, frifandtes fru K. [1]

## Byretten

### Gråsten rets dom 23. oktober 1962.

I begyndelsen af 1959 kom autohandler Hans Bundesen, Åbenra, i økonomiske vanskeligheder. I den anledning tilbød rentier Hans Andresen Kr|ger, Abenrå, der havde diskonteret flere automobilkøbekontrakter for Bundesen, og som havde et tilgodehavende hos Bundesen på ca. 2000 kr., Bundesen et lån på 4000 kr. fra sin søster, fru Ingeborg Meyhoff, mod kaution. Efter at Bundesen havde formået gårdejer Friedrich Jensen, Vejbæk, og landmand Otto Nielsen, Øster-Løgun, til at tegne sig som kautionister, udfærdigede Kr|ger et sålydende gældsbevis:

"Undertegnede automobilhandler Hans Bundesen, Skibbrogade 10, af Åbenrå erkender herved at have modtaget lån kr. 4000,- (fire tusinde kroner) af fru Ingeborg Meyhoff af Vojens. Lånet forrentes med 6 pct. p. a. rente og kan gensidig opsiges med 3 måneders varsel, dog såfremt der hver 3 måneder, første gang den 1. maj 1959 afdrages 250 kr., bortfalder opsigelsen fra kreditors side. Renterne forfalder samtidig med afdragene. Som selv dum for fuld og skadesløs betaling medunderskrevne Landmand Frederik Jensen af Vejbæk, landmand Otto Nielsen af Øster-Løgum."

Gældsbeviset blev, efter at det den 10. og 11 februar 1959 var underskrevet af Bundesen og på dennes foranledning af de to kautionister, den 12. s. md. overgivet Kr|ger tilligemed en af Kr|ger udfærdiget og af Bundesen underskrevet fuldmagt for Kr|ger til at modtage lånet.

Om det videre passerede har sagsøgerinden, fru Anna Margrethe Beck, Åbenrå, der er datter af Kr|ger, anført, at hendes fader med gældsbeviset henvendte sig til fru Meyhoff, der imidlertid afslog at udbetale noget beløb idet hun henviste til, at hendes penge stod på opsigelse. Sagsøgerindens fader, der administrerede en del af hendes formue, havde herefter efter aftale med fru Meyhoff, idet det var meningen, at denne senere skulle betale de 4000 kr., udbetalt lånet af midler, han bestyrede for sagsøgerinden, idet der ved udbetalingen blev forholdt på den måde, at hendes fader tilbageholdt sit tilgodehavende hos Bundesen og udbetalte denne det overskydende beløb.

Den 1. marts 1959 afgav Bundesen til Kr|ger følgende af Kr|ger affattede kvittering:

"Modtaget af Kr|ger kr. 4.000,- på gældsbrev kr. 4.000,- til fru Ingeborg Meyhoff, Vojens."

Under denne sag, der er anlagt ved stævning af 29. maj 1961 mod gårdejer Friedrich Jensen, og hvori hans hustru, fru Marie Jensen, født Thomsen, der hensidder i uskiftet bo efter ægtefællens død den 1. oktober 1961, er indtrådt, har sagsøgerinden, der efter sagens anlæg har fået formelig transport på gældsbeviset fra fru Meyhoff, under anbringende af, at hun under de anførte omstændigheder er indtrådt i fru Meyhoffs rettigheder efter gældsbeviset over for såvel Bundesen som kautionisterne, påstået sagsøgte dømt til at indfri gældsbeviset.

- - -

Sagsøgte har - - - påstået frifindelse.

Til støtte for sin påstand har sagsøgte, der ikke efter den foreliggende kvittering af 1. marts 1959 har bestridt, at Bundesen af Kr|ger har fået udbetalt et eller andet beløb som lånets restprovenu, anført, at det gældsforhold, for hvilket afdøde har tegnet kaution, aldrig er kommet til eksistens, idet fru Meyhoff aldrig har udbetalt noget lån til Kr|ger eller andre. Sagsøgte har herved henvist til, at det var en afgørende forudsætning for kautionsforpligtelsen, at der stiftedes et låneforhold med faste rente- og afdragsvilkår uafhængigt af de øvrige mellemværender mellem Kr|ger og Bundesen, og at et sådant låneforhold ikke er stiftet. Sagsøgte har herved bemærket, at sagsøgerindens og Kr|gers formuer er således sammenblandede, at det for en udenforstående er umuligt at afgøre, om der består et låneforhold mellem Bundesen og Kr|ger eller Bundesen og sagsøgerinden.

Sagsøgerinden har som part forklaret, at hun i 1951 efter sin mormoder arvede en formue på ca. 43.000 kr.,

**308**

herunder en fast ejendom samt et kontant beløb, og at hendes formue, der nu er på ca. 100.000 kr., stammer fra denne arv: Den kontante del af arven overlod hun til sin fader, der siden har forvaltet denne del af formuen. Hun ved, at faderen har benyttet en del af formuen til finansiering af afbetalingskontrakter, men hun har intet nærmere kendskab til, hvorledes faderen har placeret hendes midler. Faderens forvaltning af hendes midler beror på et tillidsforhold mellem hende og faderen. Hun overlader helt faderen at træffe de nødvendige bestemmelser og har ikke haft kendskab til de i sagen omhandlede låneforhold.

Rentier Hans Andresen Kr|ger har som vidne forklaret, at han efter at have fået gældsbeviset fra Bundesen telefonisk sikrede sig, at kautionisternes underskrifter var ægte, og at kautionisterne således vidste, at han virkede som mellemmand ved lånets optagelse. Da han henvendte sig til sin søster med gældsbeviset, sagde denne der tidligere havde erklæret sig villig til at yde lånet, at hendes penge stod på opsigelse. Vidnet tilbød så søsteren, at sagsøgerinden kunne lægge pengene ud. Gældsbeviset blev liggende hos søsteren. Bundesen fik ved lånets udbetaling besked om at betale renter og afdrag til søsteren Den del af sagsøgerindens formue, som vidnet administrerer, omfattede på det pågældende tidspunkt et beløb på ca. 20.000 kr. Vidnets administration af

---

[1] Jfr. U.1913.364, N. D. 1961 s. 208 (TfR 1962 s. 333) og Ussing: Kaution s. 33, 38-41 og 181-184.

Copyright © 2021 Karnov Group Denmark A/S                                    side 1

sagsøgerindens formue omfatter ikke nogen bogføring, og sagsøgerindens penge holdes ikke adskilt fra hans egne. Sagsøgerinden er indforstået med at godkende hans dispositioner. Sagsøgerinden har intet kendskab til sagen, idet vidnet blot har brugt hendes navn som led i forvaltningen af hendes formue.

Autohandler Hans Bundesen har som vidne bl.a. forklaret, at Kr|ger ved gældsbevisets underskrift sagde, at renter og afdrag skulle betales til fru Meyhoff. Kort efter den 12. februar 1959 rykkede vidnet Kr|ger for lånet. Kr|ger oplyste ved denne lejlighed, at lånet ikke ville blive udbetalt af fru Meyhoff. I august 1960 blev gældsbeviset opsagt. Vidnet opsøgte i den anledning fru Meyhoff, der erklærede intet at kende til forholdet. Fru Meyhoff indrømmede, at hun ikke havde noget mellemværende med vidnet og heller ikke havde lånt vidnet penge. Hun ville imidlertid ikke afgive skriftlig erklæring herom 2-3 uger senere besøgte vidnet påny fru Meyhoff, denne gang sammen med begge kautionister. De bad da fru Meyhoff om at udstede en skriftlig erklæring som dokumentation for hendes også ved denne lejlighed fremsatte udtalelse om ikke at have eller have haft noget tilgodehavende hos vidnet i henhold til det af vidnet udstedte gældsbevis. Fru Meyhoff ville imidlertid ikke udfærdige nogen skriftlig erklæring.

Fru Ingeborg Meyhoff har som vidne forklaret, at det ikke, inden vidnets broder Kr|ger en dag henvendte sig til vidnet med det underskrevne gældsbevis, havde været på tale, at vidnet skulle udlåne noget pengebeløb til Bundesen, derimod spurgte broderen, da han henvendte sig med gældsbeviset til vidnet, om hvorvidt han kunne låne de i gældsbeviset omhandlede 4000 kr. Vidnet svarede, at hun ingen penge havde. Gældsbrevet forblev desuagtet hos vidnet. Vidnet havde ikke ved nogen tidligere lejlighed stillet penge til rådighed for broderen, for at denne kunne udlåne dem. Gældsbrevet forblev nogen tid hos vidnet, men blev senere afhentet af broderen, der på et senere tidspunkt fik vidnets underskrift på transportpåtegningen. Vidnet har i hvert fald 2 gange haft besøg af Bundesen og de to kautionister. Den første henvendelse fandt sted omkring den 14. maj 1961 Ved den første henvendelse bad Hans Bundesen vidnet om at komme til at tale med vidnet "under 4 øjne". Nogen samtale mellem vidnet og Bundesen alene kom ikke i stand, men vidnet og Bundesen talte sammen i vidnets stue i overværelse af Friedrich Jensen og Otto Nielsen samt vidnets ægtefælle. Bundesen sagde, at han henvendte sig om et gældsbevis og spurgte, om vidnet havde underskrevet dette. Vidnet svarede, at det kendte vidnet ikke noget til, og at Bundesen kunne henvende sig til H. A. Kr|ger om forholdet. Vidnet husker et af Bundesen og kautionisterne endnu engang aflagt besøg, hvorunder vidnet blot hilste på dem, og hvorunder de talte med vidnets ægtefælle. Bundesen og de 2 kautionister har ikke ved denne samtale med vidnet talt om, hvorvidt de kunne opnå en afdragsordning med hensyn til det beløb, gældsbrevet lød på.

Ifølge gældsbeviser af 23. marts og 1. maj 1959 lånte Bundesen henholdsvis 2000 kr. og 2500 kr. af sagsøgerinden mod selvskyldnerkaution af Friedrich Jensen, der i henhold til retsforlig af 4. november 1960 har betalt 4850 kr. til fuld afgørelse af ethvert krav efter disse gældsbreve.

Ifølge udskrift af skiftebogen for retten i Abenrå er sagsøgerindens arv efter mormoderen udlagt således:

```
Fast ejendom ...................     26.000 kr. 00 øre
Gældsbrev udstedt af faderen ...     14.000 -    00 -
Kontant ........................      3.112 -    39 -
Sparekassebog ..................      1.639 -    44 -
                                     ------------------
                                     44.751 kr. 83 øre
                                     ------------------
```

Det er under sagen ubestridt, at fru Meyhoff aldrig har ydet Bundesen noget lån, og det kan efter hendes forklaring ej heller lægges til grund, at hun har stillet i udsigt at yde ham noget lån. Gældsbeviset med Bundesens og kautionisternes underskrifter kan herefter alene i forhold til fru Meyhoff anses som et ikke accepteret tilbud, der er bortfaldet. Fru Meyhoff har derfor ikke kunnet overføre nogen ret efter gældsbeviset til sagsøgerinden.

Der findes ikke ved oplysningerne om, at afdøde senere har påtaget sig kautionsforpligtelser over for sagsøgerinden, eller i sagens oplysninger i øvrigt grundlag for at antage, at afdøde Friedrich Jensen har godkendt,

**309**

at sagsøgerinden indtrådte som kreditor efter gældsbeviset.

Da der endvidere ikke er grundlag for, at Kr|ger på sagsøgerindens vegne ensidigt skulle have ret til at tilegne sig det af afdøde over for fru Meyhoff afgivne kautionstilbud, vil sagsøgte være at frifinde for kravet efter gældsbeviset. - - -

Sagens omkostninger findes sagsøgerinden at burde godtgøre sagsøgte med 900 kr. - - -

### Vestre Landsret

### *Vestre Landsrets dom.*

Til sagsfremstillingen i dommen føjes, at autohandler Hans Bundesen i 1. instans som vidne har forklaret, at kautionisterne ved underskrifternes afgivelse havde udtalt. at de ikke ville have underskrevet, hvis lånet var optaget hos H. A. Kr|ger, og vidnet havde sagt, at lånet var opnået ved Kr|gers mellemkomst.

Appellanten har for landsretten påberåbt sig en fremlagt genpart af et brev fra Kr|ger, dateret 28. februar 1959, angiveligt til afdøde Fr. Jensen, hvori bl.a. udtales: "Meddeler Dem i Henhold til vor Aftale i Grænsekaffeen, at min Datter nu udbetaler til Bundesen de 4.000.- Kr. paa Gældsbrevet hl min Søster. - - -

Indstævnte har protesteret imod, at der tages hensyn til dette først under domsforhandlingen fremlagte brev, allerede fordi adressatens identitet ikke fremgår heraf og bestrides, og fordi en bedømmelse af dets bevisværdi ikke er mulig uden vidneafhøring foruden af Kr|ger af personer, som ikke var til stede ved domsforhandlingen.

Efter kautionserklæringens indhold er forpligtelsen alene indgået til sikring af et lån fra vidnet fru Meyhoff til Bundesen, og det kan ikke, som sagen er forelagt landsretten, anses godtgjort, at afdøde Fr. Jensen har godkendt, at hans forpligtelse ændredes til at angå andre låneforhold. Da det foreliggende ikke giver noget grundlag for at antage, at det pågældende lånebeløb, som af appellanten for landsretten gjort gældende, er udbetalt for fru Meyhoffs regning ifølge fuldmagt, og da det bortset herfra er ubestridt, at det omhandlede låneforhold ikke er kommet til eksistens, findes der ikke at være opstået nogen for Fr. Jensen bindende forpligtelse, og indstævntes indsigelse herom kan gøres gældende over for appellanten som transporthaver, jfr. gældsbrevslovens § 27.

Med disse bemærkninger vil dommen i henhold til de i denne i øvrigt anførte grunde være at stadfæste.

Sagens omkostninger her for retten findes appellanten at burde betale til indstævnte med 900 kr. - - -