# Exhibit 20

# Levels of segregation offered by VP SECURITIES A/S



CSRD art. 38(6)


17 August 2017

VP SECURITIES A/S (VP) is a central securities depository (CSD) who has applied for a European license according to CSDR[1] to provide notary service, central maintenance service and settlement service (core services) and non-banking-type ancillary services.

According to CSDR art. 38(6) VP shall publicly disclose the levels of protection and the costs associated with the different levels of segregation that we provide. The description shall include the main legal implications of the respective levels of segregation offered, including information on applicable insolvency law.

_Levels of segregation_

There are three main degrees of segregation at CSD level:

- Level 1: Omnibus client segregation
- Level 2: Individual client segregation
- Level 3: End-investor segregation

_Ad level 1_

The term "omnibus client segregation" is defined in article 38 of the CSDR. It covers the case where a participant uses separate accounts for holding its own securities and for holding securities on behalf of its clients. The participant holds securities that belong to different clients in one securities account.

_Ad Level 2_

The term "individual client segregation" is defined in article 38 of the CSDR. If a participant offers individual client segregation, the participant maintains separate accounts at the CSD for separate clients. An account is individual segregated if it is set up for one of the participant's clients only. The client may be end-investor, or may be an intermediary holding securities on behalf of other investors.

_Ad Level 3_

End-investor segregation involves the highest degree of segregation.  It requires the opening of a separate securities account for each end-investor, including retail investors.

_Levels of segregation offered by VP_

VP operates an end-investor account model but offers all levels of segregation mentioned above.

The end-investor account model provides a number of benefits:

1) Greater investor protection through asset segregation on end-investor account level;
2) Swift distribution of dividends and corporate actions;
3) Regulatory reporting (tax etc.) including integrated tax withholding and reporting in Denmark;
4) Shareholder/investor reporting;
5) Shareholder rights;
6) Direct distribution of proceeds resulting from corporate actions; and
7) Swift transfer of the account to another participant in case of insolvency proceedings against a participant.

If a CSD operates an omnibus account model the participants only have one account where they gather all securities and keep track of the end-investor themselves. This creates increased risk for the end-investor as well as increased back-office administration for the participants.

---

[1] Regulation no. 909/2014 on improving securities settlement in the European Union and on central securities depositories

### Costs and terms

Only participants who have entered into a participation agreement with VP as a securities account controller are entitled and obliged to undertake book-entry reporting in VP with respect to each securities account maintained by the securities account controller.

No matter what level of segregation is requested, VP offers the same terms and costs[2] for all accounts to the securities account controller. The costs are fixed per securities account. The implication of this is that a participant's total costs will increase corresponding to its clients requests for individual client segregation and end-investor segregation.

All securities accounts with VP are on equal level, hence subaccounts are currently not offered.


Table of Fees is available here
The terms for participating as a securities account controller follows from VP's Participation Agreement and Rulebook [link]


### The main legal implications of the respective levels of segregation offered

Danish law provides that legal ownership of securities vests in the end-investor having acquired title to and received the relevant securities. This means that

(i)      the legal ownership to securities recorded in VP vests in the end-investors and
(ii)     (ii) legal ownership to securities held by and in the name of a participant on behalf of an end-investor also vests in the end-investor.

Securities held in an end-investor account (level 3) or in an individual client account (level 2) are effectively segregated from assets belonging to other investors and VP's participants.

In the event that VP would become subject to insolvency proceedings, any participant will be entitled to retrieve securities held in its own name and securities held on behalf of its clients in Individual Client Segregated Accounts. Accordingly, in the event a participant or VP becomes subject to insolvency proceedings, securities held in these accounts will not form part of the estate of the participant or VP.

For securities held in an end-investor account (level 3) or in an individual client account (level 2) the client may at any time transfer an account to another participant in case of insolvency proceedings against a participant and thereby secure continuous access to the securities regardless of the estate.

As end-investors by default also have legal ownership to securities in an omnibus account securities held in such an account will not form part of the estate of the participant or VP.

However legal ownership to securities kept in an omnibus account requires the investor to be able to prove ownership when the assets have been commingled with similar assets belonging to other investors and/or the participant's own assets. The participant is obliged by Danish law to maintain a register (account) for each client showing such legal ownership to the securities. Provided that the participant has acted prudently the end-investor should be able to provide such proof of ownership. A transfer of an account to another participant cannot be completed before the client has proved ownership to the securities towards the estate.

If the segregation of securities has somehow failed, such securities may not be properly segregated and will in such case be part of the estate. In such case the clients cannot claim the securities as secured creditors. The end-investors may in that case seek their losses up to EUR 20,000 covered by the Depositor and Investor Guarantee Scheme (Da: Indskyder- og investorgarantiordningen) under Danish Law and claim additional losses covered against the estate.


For further information, see Memorandum - Insolvency Proceedings of VP SECURITIES A/S or a Participant here

---

[2] Costs for end-investors will be part of their agreement with their bank and not covered in this memo.