# Exhibit 126

## Print Requests, Duplicating

| | |
|---|---|
| **From:** | Wells, Peter |
| **Sent:** | Monday, August 04, 2014 10:44 PM |
| **To:** | Richard Markowitz; Veillette, Rebecca; ~If 02-01-2017 Gregory, Amy |
| **Cc:** | Robert Klugman; John H. van Merkensteijn, III |
| **Subject:** | RE: Partnership Agreements |
| **Attachments:** | Bareroot Capital Investments LLC - General Partnership Agreement.DOC |

Attached is the sample general partnership agreement for review.

Regards,
Peter


\*\*\*

IRS CIRCULAR 230 DISCLOSURE: To ensure compliance with Treasury Department regulations, we inform you that any U.S. federal tax advice contained in this correspondence (including any attachments) is not intended or written to be used, and cannot be used for the purpose of (i) avoiding penalties that may be imposed under the U.S. Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

Peter Wells
KAYE SCHOLER LLP
425 Park Avenue | New York, New York 10022
T: +1 212.836.8662 | F: +1 212.836.6447
peter.wells@kayescholer.com | www.kayescholer.com

This message may contain confidential and/or legally privileged information from the law firm Kaye Scholer LLP. If delivered to anyone other than the intended recipient, please notify the sender immediately by return email or by telephone (+1 212.836.8662) and delete the message, along with any attachments, from your computer. Thank you.

**From:** Richard Markowitz [mailto:rmarkowitz@argremgt.com]
**Sent:** Friday, August 01, 2014 4:31 PM
**To:** Wells, Peter; Veillette, Rebecca; Gregory, Amy
**Cc:** Robert Klugman; John H. van Merkensteijn, III
**Subject:** Re: Partnership Agreements

For purposes of preparing the Partnership Agreements and also for keeping track on the spreadsheet that Amy and Rebecca are using,

I intend to use Routt Capital Trust as the 70% partner in the 10 Partnerships I will be in.

Also, for the spreadsheet, someone needs to enter the "Tax Reclaim Agent" that will be associated with each Plan (in Peter's email of yesterday).

Thanks and everyone have a great weekend.

------------------------

Richard Markowitz

1

Managing Director
Argre Management LLC
40 West 57th Street
20th Floor
New York, NY 10019

Tel:
(212) 247-2600
Fax:
(212) 247-2753
Mobile:
(917) 848-5675

---

**From:** <Wells>, Peter Wells <peter.wells@kayescholer.com>
**Date:** Friday, August 1, 2014 3:59 PM
**To:** RICHARD MARKOWITZ <rmarkowitz@argremgt.com>, Rebecca Veillette <Rebecca.Veillette@kayescholer.com>, Amy Gregory <Amy.Gregory@kayescholer.com>
**Cc:** Michael Ben-Jacob <michael.ben-jacob@kayescholer.com>, Robert Klugman <rklugman@storcapital.com>, "John Van Merkensteijn, III" <JHVM@Argremgt.com>
**Subject:** RE: Partnership Agreements

Richard,

We will put a sample together for review as noted below.

Regards,
Peter


Peter Wells
Kaye Scholer LLP
425 Park Avenue | New York, New York 10022
T: +1 212.836.8662 | F: +1 212.836.6447
peter.wells@kayescholer.com | www.kayescholer.com

Any U.S. federal tax advice contained in this message (including any attachments) may not be able to be used for purposes of avoiding tax-related penalties imposed under U.S. federal tax laws. This message may contain confidential and/or legally privileged information from the law firm Kaye Scholer LLP. If delivered to anyone other than the intended recipient, please notify the sender immediately by return email or by telephone (+1 212.836.8662) and delete the message, along with any attachments, from your computer. Thank you.

**From:** Richard Markowitz [mailto:rmarkowitz@argremgt.com]
**Sent:** Friday, August 01, 2014 3:56 PM
**To:** Wells, Peter; Veillette, Rebecca; Gregory, Amy
**Cc:** Ben-Jacob, Michael; Robert Klugman; John H. van Merkensteijn, III
**Subject:** Partnership Agreements

Peter, Rebecca and Amy:

I think we would like to get the Partnership agreements in place for the 20 plans.

In all cases, the Pension Plan will receive 5%, Rob's entity will receive 25% (he will need to specify which Plan(s) will be used) and John's Plan(s) or my Plan(s), as the case may be, will receive 70% (and, again, he and I will need to specify).

2

Any partner can advance funds to the Partnership and those monies come out first.

Pursuant to the Partnership Agreement, certain specified accounts will be held by the Plan as agent/nominee for Partnership

Each partnership will use either John or me as an Authorized Trader, and we will be paid $10,000 per partnership (on a 12 month basis).

Maybe you can circulate one agreement for our review so we can finalize them before trading.

Thank you,

Richard

-------------------------

Richard Markowitz
Managing Director
Argre Management LLC
40 West 57th Street
20th Floor
New York, NY 10019

Tel:
(212) 247-2600
Fax:
(212) 247-2753
Mobile:
(917) 848-5675

3

KLUGMAN00059931

# GENERAL PARTNERSHIP AGREEMENT

## OF BAREROOT CAPITAL INVESTMENTS GENERAL PARTNERSHIP

This General Partnership Agreement (this "Agreement") effective as of the ___ day of August, 2014, and entered into by and between Bareroot Capital Investments LLC Roth 401(K) Plan, RAK Investment Trust, and Routt Capital Trust (hereinafter each a "Partner" and collectively the "Partners").

WHEREAS, the parties have agreed to enter into a partnership to invest, hold and dispose of the property contained in the account or accounts listed on the attached Schedule A, and to undertake all activities incidental thereto and to conduct such other activities as are permitted by the laws of the State of New York.

IN CONSIDERATION of the premises and the mutual covenants contained in this Agreement, and other good and valuable consideration (the receipt and sufficiency of which is acknowledged by each of the parties), the parties agree as follows:

Section 1. <u>Formation, Name, Business and Address</u>. The Partners do hereby form a partnership (the "Partnership") named Bareroot Capital Investments General Partnership, a New York general partnership pursuant to the laws of New York. The address of the Partnership shall be Bareroot Capital Investments Partnership, c/o Kaye Scholer LLP, 425 Park Avenue, New York, New York 10022.

Section 2. <u>Capital Contributions and Distributions</u>. The Partners each have made initial contributions to the capital of the Partnership as follows:

| Partner | Initial Capital Contribution |
|---|---|
| Bareroot Capital Investments LLC Roth 401(K) Plan | $5.00 |
| RAK Investment Trust | $25.00 |
| Routt Capital Trust | $70.00 |

1.

Bareroot Capital Investments LLC - General Partnership Agreement.DOC

As of the effective date of this Agreement, Bareroot Capital Investments LLC Roth 401(K) Plan shall own a 5% interest in the Partnership, RAK Investment Trust shall own a 25% interest in the Partnership and Routt Capital Trust shall own a 70% interest in the Partnership. The Partners may each make additional contributions to the capital of the Partnership at such times and in such amounts as the Partners holding at least 80% of the interests in the Partnership may agree upon from time to time.

After the payment of Expenses, as defined in section 3 hereof, distributions of Available Cash by the Partnership to the Partners shall be made at the times and in the aggregate amounts determined by the Partners. As used in this section, the term "Available Cash" shall mean the cash of the Partnership available for distribution from any source, after the payment of Expenses and to the extent not reasonably required for current or anticipated future costs, Expenses, obligations or reserves. Distributions of Available Cash of the Partnership shall be made to the Partners in the following order of priority: (i) first, in proportion to, and to the extent of, any amounts advanced by any Partner for Partnership expenses pursuant to section 3 below; (ii) second, in proportion to, and to the extent of, the capital contributed by each Partner; and (iii) thereafter, in proportion to the respective percentage interests of the Partners under this section.

Section 3.  <u>Expenses</u>. To the extent of Partnership property, the Partnership shall be responsible for all expenses, costs and liabilities arising from the management, organization or operation of the Partnership in accordance with this Agreement including, without limitation, expenses, costs and liabilities arising from the implementation of any trading strategies including, without limitation, investment management fees, advisory fees, trading costs, and legal and accounting fees (all of the foregoing collectively, "Expenses"). Notwithstanding the forgoing, a Partner shall be entitled to receive prompt reimbursement from the Partnership to the extent, if any, that such Partner incurs any Partnership Expenses.

Section 4.  <u>Manager</u>. John H. van Merkensteijn, III shall serve as the Manager of the Partnership. The Manager shall have physical possession of the books and records of the Partnership, shall give such notices to the Partners as may be required or deemed advisable, and shall perform only the necessary ministerial functions of the Partnership. The

2.

Bareroot Capital Investments LLC - General Partnership Agreement.DOC

Manager shall receive compensation for services rendered to the Partnership in the amount of $10,000 per annum (pro-rated for any short year).

Section 5.  <u>Auditors</u>.  The auditors of the Partnership shall be such firm of chartered accountants as may be appointed by the Partners at any meeting of the Partnership or by written resolution executed by all the Partners.

Section 6.  <u>Meetings</u>.  Meetings of the Partnership shall be held from time to time, but not less frequently than annually.  Special meetings may be called by any Partner upon two weeks' notice, unless the Manager determines that less than two weeks' notice is reasonable and practicable.

Section 7.  <u>Fiscal Year</u>.  The fiscal year of the Partnership shall terminate on the last day of December in each year or such other time as the Partners may from time to time determine.

Section 8.  <u>Capital Accounts</u>.  A capital account shall be maintained for each Partner.  Each Partner's capital account shall be: (a) increased by its additional contributions to the capital of the Partnership and by its share of the net realized profits of the Partnership; (b) decreased by its share of the net realized losses of the Partnership and by distributions to it in reduction of its capital; and (c) increased or decreased on each valuation date for its share of any increase or decrease in the net value of the Partnership's assets.  The net value of the Partnership's assets shall be determined as at December 31 of each year, and as at each date on which a Partner either makes a contribution to the capital of the Partnership or withdraws capital from the Partnership, each such date on which the Partnership's assets are so valued to be known as a "valuation date" as used herein.

Section 9.  <u>Allocation</u>.  Profits and losses of the Partnership for financial accounting purposes shall be allocated to and borne by the Partners in proportion to their respective capital accounts on each valuation date.

Section 10.  <u>Books and Records</u>.  Adequate accounting records of all Partnership investments shall be kept and these shall be open to inspection by any of the Partners at all

3.

reasonable times.  The Partnership shall maintain its accounting records on the cash basis of accounting.  The Partnership's auditors shall prepare such accounts in accordance with the instructions of the Manager.  Within 60 days after the end of each calendar year, a complete accounting of the affairs of the Partnership shall be furnished to each Partner.

Section 11.  <u>Management</u>.  The Partners shall establish an Investment Committee to exercise the investment and management powers of the Partnership pursuant to an investment policy, which may include appointing one or more outside discretionary investment managers to implement the Partnership's investment policy, and which policy shall be reviewed at least annually at a meeting of the Partners.  The Investment Committee shall consist of three (3) members: each Partner hereunder shall appoint one (1) member of the Investment Committee.  The Investment Committee shall meet at least annually.  At any such meeting any one or more of the members of the Investment Committee may participate in such meeting by means of a conference telephone or similar communications equipment by means of which all persons participating in the meeting can hear each other.  The Investment Committee shall report to the Partners when and as required and when and as deemed appropriate by the Investment Committee, but in any event, not less frequently than annually. In connection with the performance of its duties, the Investment Committee shall have such assistance from the Partners, and shall be furnished with such resources and support from the Partnership as the Investment Committee shall deem necessary or advisable.

Section 12.  <u>Custody of Securities</u>.  Securities owned by the Partnership and registered in its name shall be in the primary custody of the Partnership.  Securities owned by the Partnership but not registered in its name may be kept in the custody of the bank, brokerage firm, agent or nominee through which they were purchased.  Further to the foregoing, the Partnership is specifically authorized to designate nominees to hold legal title to property on behalf of the Partnership, which nominee may be any person or entity, including a Partner of the Partnership; provided, however, that if a Partner of the Partnership has been so designated as a nominee to act on behalf of the Partnership, the Partner so acting as nominee shall be listed on Schedule A attached hereto and the property held by such Partner on behalf of the Partnership shall be set forth on Schedule A opposite the name of

4.

Bareroot Capital Investments LLC - General Partnership Agreement.DOC

such Partner and such Partner shall confirm the nominee relationship by his, her or its signature on such Schedule A; and provided further, however, that the Partnership shall have no claim of a nominee arrangement with respect to any property of a Partner unless such property is so set forth on Schedule A.

Section 13. Restriction on Partners. No Partner, without the consent of all of the Partners, shall:

(a) Sell, assign, pledge or create a security interest in its interest in the Partnership;

(b) Borrow or lend money on behalf of the Partnership, or purchase any security or bond or make any other investment on behalf of the Partnership except for cash in full;

(c) Assign, transfer, pledge, compromise or release any claim of the Partnership except for full payment, or arbitrate, or consent to the arbitration of, any dispute or controversy on behalf of the Partnership;

(d) Use the name, credit or property, of the Partnership for any purpose other than a proper Partnership purpose; or

(e) Act in any manner that is detrimental to the Partnership investments.

Section 14. Additional Partners. Additional persons may be admitted as Partners only with the unanimous consent of all Partners.

Section 15. Partial Distributions. A Partner may at any time on not less than two weeks' prior notice to the other Partner or Partners withdraw all or any portion of the capital account of such Partner, provided that no Partner's capital account shall be reduced to an amount less than such Partner's initial capital contribution plus such Partner's share of the debts and liabilities of the Partnership. Such withdrawal may be out of the cash or cash equivalents on hand or any particular investment of the Partnership, proportionate to such

DRAFT – 8.4.14

Partner's interest in the Partnership, provided that such investment may be divided and distributed in kind.

Section 16. Termination and Liquidation.

(a) The Partnership shall not be dissolved by the admission of a new Partner, the death, disability or insolvency of a Partner, any assignment or charging of an interest to a permitted lender or the giving by any Partner of a notice purporting to dissolve the Partnership. To the fullest extent permitted by law, each Partner hereby irrevocably waives any right such Partner may have to give any notice dissolving or otherwise determining the Partnership and agrees that such Partner shall not apply to any court seeking to dissolve or otherwise wind up the affairs of the Partnership.

(b) The Partnership shall be dissolved on the first to occur of the following: (x) upon the written agreement of the Partner or Partners who own a majority in amount of the total capital accounts of the Partners; (y) upon the happening of any event that makes it unlawful for the business of the Partnership to be carried on or for the Partners to carry it on in partnership; or (z) upon December 31, 2050.

(c) Upon the dissolution of the Partnership pursuant to section 16(b), and notwithstanding the dissolution, the business of the Partnership shall continue to be operated pursuant to this Agreement so far as may be necessary to wind up the affairs of the Partnership and to complete transactions begun but unfinished at the time of dissolution, but not otherwise, and any authority which, pursuant to this Agreement, a Partner may have to bind the Partnership shall continue (except in the case of a Partner who is bankrupt or insolvent) and the other rights and obligations of the Partners under this Agreement shall continue, notwithstanding the dissolution, for such limited purposes.

(d) Upon the dissolution of the Partnership pursuant to section 16(b), the Partners shall promptly wind up the affairs of the Partnership by discharging all debts and liabilities of the Partnership and by distributing all investments and remaining assets, in cash or in kind or partly in cash and partly in kind, to the Partners or their representatives. Each investment which can be distributed to the Partners in kind shall be so distributed, unless

6.

Bareroot Capital Investments LLC - General Partnership Agreement.DOC

otherwise unanimously agreed by the Partners. All other investments shall be sold and the net proceeds therefrom distributed to the Partners in cash in satisfaction of their respective capital accounts on the date of final liquidation.

(e) This Agreement shall terminate on the completion of the winding-up of the affairs of the Partnership pursuant to section 16(d).

(f) The termination of this Agreement shall not affect or prejudice any rights or obligations which have accrued or arisen under this Agreement prior to the time of termination and such rights and obligations shall survive the termination.

Section 17. <u>Notices</u>. Any notice which is required or permitted to be given under this Agreement to any Partner shall be in writing and signed by or on behalf of the person giving such notice and shall be deemed to have been given when delivered by personal delivery or mail, mailed by registered or certified mail, postage prepaid, return receipt requested and addressed to the intended recipient Partner as follows:

> Bareroot Capital Investments General Partnership
> c/o Kaye Scholer LLP
> 425 Park Avenue
> New York, NY 10022

Section 18. <u>General Provisions.</u>

(a) Each of the provisions contained in this Agreement is distinct and severable and a declaration of invalidity or unenforceability of any such provision or part thereof by a court of competent jurisdiction shall not affect the validity or enforceability of any other provision hereof. To the extent permitted by applicable law, the parties waive any provision of law which renders any provision of this Agreement invalid or unenforceable in any respect.

(b) This Agreement constitutes the entire agreement between the parties pertaining to the subject matter of this Agreement.

7.

(c) Except as expressly provided in this Agreement, no amendment or waiver of this Agreement shall be binding unless executed in writing by the party to be bound thereby. No waiver of any provision of this Agreement shall constitute, a waiver of any other provision nor shall any waiver of any provision of this Agreement constitute a continuing waiver unless otherwise expressly provided.

(d) This Agreement shall be governed by and construed in accordance with the laws of New York applicable therein.

(e) This Agreement shall enure to the benefit of and be binding upon the parties hereto and their respective successors and legal personal representatives.

*{Remainder of Page Intentionally Left Blank}*

8.

Bareroot Capital Investments LLC - General Partnership Agreement.DOC

KLUGMAN00059939

DRAFT – 8.4.14

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date and year first above written.

**GENERAL PARTNERS:**

Bareroot Capital Investments LLC Roth 401(K) Plan

_____
By: David Zelman, Trustee

RAK Investment Trust

_____
By: Robert Klugman, Trustee

Routt Capital Trust

_____
By: Richard Markowitz, Trustee

9.

Bareroot Capital Investments LLC - General Partnership Agreement.DOC

DRAFT – 8.4.14

## SCHEDULE A -- NOMINEES

**Name of Nominee Partner**                **Property Held as Nominee**

Bareroot Capital Investments LLC Roth 401(K) Plan         Account No. _____

All property held in Account
_____ at Wells Fargo Bank

Confirmed and agreed:

Bareroot Capital Investments LLC Roth 401(K) Plan

_____

By: David Zelman, Trustee

10.

Bareroot Capital Investments LLC - General Partnership Agreement.DOC

KLUGMAN00059941